1   SARAH PREIS (D.C. Bar No. 997387)
2   (*Pro Hac Vice application pending*)
    sarah.preis@cfpb.gov
3   Tel.: (202) 435-9318
    JESSE STEWART (N.Y. Bar No. 5145495)
4   (*Pro Hac Vice application pending*)
    jesse.stewart@cfpb.gov
5   Tel.: (202) 435-9641
    1700 G Street, NW
6   Washington, DC 20552
    Fax: (202) 435-5471
7   LEANNE E. HARTMANN (CA Bar No. 264787) – Local Counsel
8   leanne.hartmann@cfpb.gov
    301 Howard Street, Suite 1200
9   San Francisco, CA 94105
    Tel: (415) 844-9787
10  Fax: (415) 844-9788

11  *Attorneys for Plaintiff*
    *Bureau of Consumer Financial Protection*

12              **UNITED STATES DISTRICT COURT**

13        **FOR THE CENTRAL DISTRICT OF CALIFORNIA**

14                   **SOUTHERN DIVISION**

| | |
|---|---|
| Bureau Of Consumer Financial Protection, et al. | Case No: |
| Plaintiffs, | **DECLARATION OF SARAH PREIS IN SUPPORT OF** |
| vs. | **(1) PLAINTIFF'S *EX PARTE* APPLICATION FOR TEMPORARY RESTRAINING ORDER WITH ASSET FREEZE AND OTHER EQUITABLE RELIEF AND ORDER TO SHOW CAUSE WHY PRELIMINARY INJUNCTION SHOULD NOT ISSUE; AND** |
| Consumer Advocacy Center Inc., d/b/a Premier Student Loan Center, et al. | |
| Defendants, and | |
| and | **(2) PLAINTIFF'S *EX PARTE* APPLICATION FOR LEAVE TO FILE CASE UNDER TEMPORARY SEAL** |
| Infinite Management Corp., f/k/a Infinite Management Solutions Inc., et al. | |
| Relief Defendants. | [FILED UNDER TEMPORARY SEAL] |

15
16
17
18
19
20
21
22
23
24
25
26
27
28

DECL. OF SARAH PREIS ISO *EX PARTE* APP. FOR TRO AND *EX PARTE* APP. TO FILE CASE UNDER TEMPORARY SEAL

                    ORIGINAL

I, Sarah Preis, pursuant to 28 U.S.C. § 1746, hereby declare as follows:

1.     I am an attorney for the Bureau of Consumer Financial Protection (Bureau), an agency of the United States and one of the Plaintiffs in this lawsuit. I am licensed to practice law and am an attorney in good standing in the District of Columbia. I am appearing in this matter under Civil Local Rule 83-2.1.3.1. My business address is Consumer Financial Protection Bureau, 1700 G Street, N.W., Washington, D.C. 20552. The facts set forth in this declaration are based on my personal knowledge or information made known to me in the course of my official duties.

2.     Under Federal Rule of Civil Procedure 65(b)(1), the Bureau is applying for an *ex parte* Temporary Restraining Order and Order to Show Cause why a Preliminary Injunction Should Not Issue (TRO Application). The Bureau is also applying *ex parte* for leave to temporarily seal the entire file and docket. Along with these applications, under Federal Rule of Civil Procedure 65(b)(1) and Civil Local Rule 7.19-2, the Bureau is also applying for an order waiving the requirement to notify the defendants and relief defendants of the TRO Application.

3.     The Bureau has not attempted to provide notice to the Defendants and Relief Defendants, nor should notice be required, for the reasons set forth in this declaration. The necessity for this emergency hearing was not caused by the Bureau's lack of diligence, but rather has been brought about by the circumstances of this case.

4.     The evidence set forth in the TRO Application, the supporting memorandum, and the accompanying declarations and exhibits demonstrates that Defendants have engaged in an illegal federal student loan debt relief operation using a series of interrelated companies that has resulted in tens of millions of dollars in harm to tens of thousands of consumers nationwide in violation of the Consumer Financial Protection Act of 2010 (CFPA), 12 U.S.C. §§ 5531, 5536, 5564, and 5565, and the Telemarketing and Consumer Fraud and Abuse Prevention Act (Telemarketing Act), 15 U.S.C. §§ 6101-6108, and its implementing regulation, the Telemarketing Sales Rule

1    (TSR), 16 C.F.R. Part 310. That harm is ongoing.

2        5.    There are compelling reasons to believe that the Court's ability to provide

3    effective final relief will be irreparably compromised if this matter is not sealed. There is

4    good cause to believe that the same harm would occur if the Defendants and Relief

5    Defendants receive notice of the Bureau's *ex parte* TRO Application (or other papers)

6    before the Court can enter an order on the TRO Application.

7        6.    Defendants have demonstrated their willingness to abuse the bankruptcy

8    process to evade law enforcement, misrepresent the status of their operations to the

9    Bankruptcy Court, and ignore an order by the Bankruptcy Court to turn over documents

10   and other information. *See* Memorandum of Points and Authorities in Support of TRO

11   Application, Statement of Facts, Section C.

12       7.    Defendant Consumer Advocacy Center Inc. (CAC) ignored the Bureau's

13   Civil Investigative Demand (CID) issued on September 10, 2018, and failed to provide

14   any of the information or documents requested in the CID despite several requests. To

15   date, CAC has not produced any documents or information to the Bureau in response to

16   the CID. After CAC filed for bankruptcy, counsel for Defendants Kim, Wen, True Count,

17   and Prime reached out to the Bureau regarding the CID issued to CAC. Although counsel

18   initially indicated a willingness to produce responsive documents, they have not, several

19   months later, provided a complete response to that CID, nor given any indication that

20   they actually intend to do so. *See* Memorandum of Points and Authorities in Support of

21   TRO Application, Statement of Facts, Section C.

22       8.    Defendants have transferred tens of millions of dollars in assets among each

23   other and to the relief defendants, including leading up to the bankruptcy proceeding. In

24   particular, prior to filing for bankruptcy, defendants drained assets out of CAC and

25   represented to the Bankruptcy Court that it had no assets to distribute to consumers.

26   Defendant Albert Kim testified in the bankruptcy proceeding that consumers only paid

27   fees for 5-6 months and that there were no incoming fees when CAC filed for

28

1  bankruptcy. In fact, defendant True Count Staffing Inc. has continued to collect monthly
2  fees from CAC consumers. *See* Memorandum of Points and Authorities in Support of
3  TRO Application, Statement of Facts, Section C, and Argument, Section B.

4      9.    These facts demonstrate defendants' willingness to immediately dissipate
5  and hide assets if given notice of this action.

6      10.   Further, defendants have disregarded orders by the Bankruptcy Court. The
7  Bankruptcy Court appointed a trustee to assume control of CAC on July 31, 2019, citing
8  concerns about fraud and apparent insider payments. CAC's failure to comply with the
9  Bankruptcy Court's order to produce documents necessitated an expedited emergency
10  motion to compel the turnover of documents, information, and property by the trustee
11  against CAC and its owner, defendant Kim, which the Bankruptcy Court granted.

12      11.   In federal courts, an *ex parte* TRO is appropriate to serve the "underlying
13  purpose of preserving the status quo and preventing irreparable harm." *Granny Goose*
14  *Foods, Inc. v. Brotherhood of Teamsters & Auto Truck Drivers Local No. 70*, 415 U.S.
15  423, 439 (1974). In this district and others, courts have frequently granted *ex parte* TROs
16  in federal law enforcement actions, including actions brought by the Bureau:

17          a. *FTC v. Alliance Document Preparation LLC*, No. 17-cv-07048-SJO-KS
18             (C.D. Cal. Sept. 28, 2017) (granting *ex parte* TRO with asset freeze,
19             temporary receiver, immediate access, and other equitable relief against
20             student loan debt relief operation);

21          b. *CFPB v. Jalan*, No. 8:12-cv-02088-AG-AN (C.D. Cal. Dec. 4, 2012)
22             (granting *ex parte* motion to seal and *ex parte* TRO with asset freeze,
23             temporary receiver, and expedited discovery);

24          c. *CFPB v. Gordon*, No. 2:12-cv-06147-RSWL-MRW (C.D. Cal. July 18,
25             2012) (granting *ex parte* motion to seal and *ex parte* TRO with asset freeze,
26             temporary receiver, and expedited discovery);

27
28

d. *FTC v. Consumer Advocates Group Experts, LLC*, No. CV12-04736 DDP(CWx) (C.D. Cal. May 30, 2012) (granting *ex parte* TRO with asset freeze, appointment of temporary receiver, and other equitable relief);

e. *FTC v. Universal Premium Servs., Inc.*, No. CV 06-0849 SJO (OPx) (C.D. Cal. Feb. 21, 2006) (granting *ex parte* TRO with asset freeze, appointment of temporary receiver, and other equitable relief);

f. *CFPB v. Orion Processing, LLC*, No. 1:15-cv-23070-MGC (S.D. Fla. Aug. 9, 2015, and Aug. 19, 2015) (granting *ex parte* TRO with asset freeze, appointment of temporary receiver, and other equitable relief and *ex parte* motion to temporarily seal entire file and docket);

g. *CFPB v. Moseley*, No. 4:14-00789-CV-W-DW (W.D. MO., Sept. 9, 2014) (granting *ex parte* motion to seal flings and granting TRO with asset freeze and temporary receiver);

h. *CFPB v. Harper,* No. 9:14-cv-80931-JIC (S.D. Fla. July 16, 2014) (granting ex parte motion to seal filings and granting TRO with asset freeze and temporary receiver);

12.   In addition to seeking temporary injunctive relief on an *ex parte* basis, Plaintiff also seeks to file this case under seal until the earlier of seven days after the TRO is issued, or until all defendants and relief defendants have been served. The Bureau further requests that portions of the docket remain sealed for an additional 21 days after the unsealing of the docket to allow third parties to move the Court for protection of any confidential information that may be contained in those filings. Absent the seal order, it is likely that defendants may learn of the action before they are served with a TRO. Thus, the seal order is necessary to prevent the likely dissipation or concealment of assets and evidence by defendants.

13.   The Bureau is under intense media scrutiny. We anticipate any Bureau court filings will attract media attention. One website tracks and publicizes every enforcement

1  action that the Bureau takes. *See* www.cfpbmonitor.com.  Additionally, news reporters

2  check district court filings for matters of interest, and the student loan debt relief

3  operation that is the subject of this action, as well as the Bureau's service of a subpoena

4  on several entities, including some of the defendants in CAC's bankruptcy proceeding,

5  were reported on in a recent Wall Street Journal article.[1] If the file in this matter is not

6  sealed, the fact that the Bureau has filed this action may therefore come to the attention

7  of, and be published in, a newspaper or on the internet, and Defendants may learn of the

8  issuance of the requested TRO before they have been served.

9    14.   Therefore, the Bureau submits that there are compelling reasons to order

10  sealed all papers filed in this case for a limited period of time until service of the *ex parte*

11  temporary restraining order can be effected.

12    15.   The Bureau is unaware of any opposition to this Application.

13

14  I declare under penalty of perjury that the foregoing is true and correct and that this

15  declaration was executed on this 21ˢᵗ day of October, 2019, in Irvine, California.

16

17    Respectfully submitted,

18

19

20    Sarah Preis (D.C. Bar No. 997387)

21

22

23

24

25

26  [1] Eaglesham, Jean, Michael Tobin, and Coulter Jones, *Soaring Student Debt Opens Door to Relief Scams*, Wall Street Journal (Aug. 26, 2019), *available at* https://www.wsj.com/articles/soaring-student-debt-opens-door-to-relief-scams-11566826805 (last visited Oct. 18, 2019).

27

28