ORIGINAL

SARAH PREIS (D.C. Bar No. 997387)
(*Pro Hac Vice Application pending*)
sarah.preis@cfpb.gov
JESSE STEWART (N.Y. Bar No. 5145495)
(*Pro Hac Vice Application pending*)
jesse.stewart@cfpb.gov
1700 G Street, NW
Washington, DC 20552
Tel.: (202) 435-9318
Fax: (202) 435-5471

LEANNE E. HARTMANN (CA Bar No. 264787) — Local Counsel
leanne.hartmann@cfpb.gov
301 Howard Street, Suite 1200
San Francisco, CA 94105
Tel.: (415) 844-9787
Fax: (415) 844-9788

FILED 2019 OCT 21 AM 10: 28

*Attorneys for Plaintiff*
*Bureau of Consumer Financial Protection*

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
### SOUTHERN DIVISION

Bureau of Consumer Financial Protection, et al.

    Plaintiffs,

v.

Consumer Advocacy Center Inc., d/b/a Premier Student Loan Center,

    Defendants.

CASE NO. **8:19-cv-01998 JVS (JDEx)**

**PLAINTIFF'S EXHIBITS IN SUPPORT OF PLAINTIFF'S *EX PARTE* APPLICATION FOR TEMPORARY RESTRAINING ORDER WITH ASSET FREEZE AND OTHER EQUITABLE RELIEF AND ORDER TO SHOW CAUSE WHY PRELIMINARY INJUNCTION SHOULD NOT ISSUE**

**VOL. III OF VII (EXS. 30-36)**

**[FILED UNDER TEMPORARY SEAL]**

# Exhibit

BEFORE THE
CONSUMER FINANCIAL PROTECTION BUREAU

| In re Civil Investigative Demand ("CID") | ) | |
|---|---|---|
| dated May 10, 2019 served on June 5, 2019 | ) | DECLARATION OF |
| on Electronic Merchant Systems | ) | JULIE VRAJA |

Pursuant to 28 U.S.C. § 1746, the undersigned JULIE VRAJA declares:

1.  I am Assistant Manager Risk/Operations for Francis David Corporation, an Ohio corporation doing business as Electronic Merchant Systems ("EMS"), which provides credit and debit card transaction processing services for merchants. EMS is located at 250 West Huron Road, Suite 400, in Cleveland, Ohio 44113. My phone number at EMS is (800) 726-2117, ext. 1453.

2.  By reason of my position, I have knowledge of the matters described in this declaration and am authorized and qualified to certify the authenticity of the records contained in the following merchant files that are produced herewith:

| Merchant ID No. ("MID") | Merchant DBA | Pages |
|---|---|---|
| ████8157 | Consumer Advocacy Center Inc. d/b/a Premier Student Loan Center ("PSL") | PSL-1 - PSL-170 |
| ████9144 | True Count Staffing Inc. d/b/a SL Acct Mgmt ("SL1") | SL1-1 - SL1-74 |
| ████5266 | True Count Staffing Inc. d/b/a SL Acct Mgmt ("SL2") | SL2-1 - SL2-124 |

3.  Pursuant to Rules 902(11) and 803(6) of the Federal Rules of Evidence, I hereby certify that the foregoing documents:

    A.  were made at or near the time of the occurrence of the matters set forth in the records, by, or from information transmitted by, a person with knowledge of those matters;

    B.  were kept by EMS in the course of regularly conducted business activity; and

    C.  were made by the regularly conducted business activity as a regular practice by EMS.

4.  The following is intended to respond to the Written Interrogatories included in the CID and includes references to the relevant pages in the accompanying materials:

**INTERROGATORY 1:**

Identify the Company and all of its Affiliates, including:

a.  all trade/fictitious names under which it has done business;

b.  the nature of the relationship within the corporate structure (e.g., parent or subsidiary to the Company);

c.  all officers, directors, and owners; and

d.  the goods or services the Company provides.

*EMS's Response to CFPB's 5/10/19 CID*

EMS CID response

Pl. Ex. 30
p. 484
R-013763-00000007

**Response:**

Response to be provided.

**INTERROGATORY 2:**

Identify and describe for each Subject:

a. all products and services the Company has provided to the Subject;

b. the dates during which the Company provided each product or service; and

c. if applicable, the reason(s) for the termination of each product or service.

**Response:**

a. The Company provided card processing services for the Subjects.

b. For PSL, EMS provided services between November 2015 and November 2018. For SL1 and SL2, EMS provided services between March 2018 and July 2019.

c. EMS notified PSL and SL2 in writing on June 7, 2019 that in 30 days their accounts were being terminated for excessive chargebacks.

**INTERROGATORY 3:**

For each Subject, state whether the Company has entered into any Custodial Account Agreement(s) and:

a. describe the purpose of the Custodial Account Agreements;

b. describe the services the Company provides pursuant to the Custodial Account Agreements, including but not limited to services involving the receipt and processing of payments from consumers and the disbursement of funds to the Subject;

c. describe the process by which consumers are informed about and sign Custodial Account Agreements, including who is involved in that process ( e.g., employees of the Company or of the Subject);

d. describe any fees that the Company collects from consumers relating to services offered by the Subject, including the amount, reason for, and timing of any such fees;

e. identify each financial institution where funds in Custodial Accounts are held, the number of Custodial Accounts held at each identified financial institution, and the dates during which each Custodial Account was held at the financial institution;

f. describe the circumstances or conditions under which the Company disburses funds held in a Custodial Account to the Subject;

g. identify the financial institutions to which the Company has sent funds disbursed to the Subject, and identify the account holders and account numbers for the Subject's accounts to which those funds were disbursed;

h. identify the time period during which the Company entered into new Custodial Account Agreements; and

1. if applicable, describe the reasons why the Company ceased entering into new Custodial Account Agreements.

   Response:

   Response to be provided.

**INTERROGATORY 4:**

Identify for each Subject:

a. the employee(s) or representative(s) of the Subject with whom the Company has communicated regarding each Company product or service, including the employee's or representative's title or role at or for the Subject; and

b. any known principals, directors, officers, and owners.

Response:

The employees, principals, and officers of the Subjects are identified on the Merchant Application / Agreement executed by them. See PSL-1; SL1-1, SL1-SL-22; SL2-1.

In addition, contacts between EMS and the Subjects are shown on each Subject's Merchant Comment history which also identify employees of the Subjects with whom EMS had communications. PSL1-163 - PSL-170; SL1-72 - SL1-74; SL2-121 - SL2-124.

**INTERROGATORY 5:**

To the extent not already provided in response to Interrogatory 2, identify all products and services the Company provided to any Person known to be associated with any individual identified in response to Interrogatory 4.

Response:

**INTERROGATORY 6:**

Identify the Person(s) at the Company most knowledgeable of the Company's business dealings with each Subject.

Response:

Julie Vraja; Annette Valenzisi; Dan Moenich.

**INTERROGATORY 7:**

Identify every enforcement action, investigation, or litigation relating to any Subject or to products or services the Company has provided to any Subject, and describe the Company's role in the enforcement action, investigation, or litigation (e.g., named party, recipient of third-party subpoena, etc.).

### Response:

EMS provided documents and information to the North Carolina Attorney General's office in response to a Civil Investigative Demand issued dated December 20, 2018. As the Bureau's CID does, the North Carolina AG's CID requested confidentiality and secrecy.

### INTERROGATORY 8:

If, for any request, there are types or categories of Documents that would have been responsive but that are now unavailable, identify each type or category of Document and its last known location or custodian, and explain why the Document cannot be produced.

### Response:

EMS does not keep customer card numbers. But other documents it issues and receives are available generally.

5.  In the event EMS locates additional documents and information relating to the CID, this Declaration will be supplemented.

I certify under penalty of perjury that the foregoing is true and correct.

Executed this 8th day of July, 2019.

_____
Julie Vraja, Assistant Manager Risk/Operations
EMS

Case 8:19-cv-01998-MWF-KS Document 33 Filed 10/21/19 Page 7 of 9 Page ID #:1153
CONFIDENTIAL
In re Consumer Advocacy Center Inc. a/k/a
Premier Student Loan Center ("PSL")
UNREDACTED
PER 12 USC 3413

DocuSign Envelope ID: DEC01BE6-0424-4D9A-AB20-DB5C0AF9717A

0415 AR

**electronic merchant systems**
5005 Rockside Road, Penthouse 100,
Independence, Ohio 44131
Phone: 800-726-2117
Fax: 216-674-3110
www.emscorporate.com

**Merrick Bank** CHESAPEAKE BANK
**MERCHANT AGREEMENT**
Merchant acknowledges that its obligations to EMS and Bank under this agreement relate to processing of transactions on behalf of Merchant and that, as such, this agreement is solely commercial and business purposes, and not for personal, family or household purposes.

☐ Chesapeake Bank Kilmarnock, VA ☐ Merrick Bank South Jordan, UT
Merrick Bank
135 Crossways Park Drive North, Suite A,
Woodbury, NY 11797   800-267-2256
Chesapeake Bank
5000 Foundation St, Williamsburg, VA
23188   757-941-1333

Merchant Number: ▮▮▮▮8157

MCC: 
MN:

Office Number: 160
Account Mgr: Michael Anthony
Account Rep: Stephanie Preidis

**BUSINESS NAME (S)**
Corporate or Legal Name: Consumer Advocacy Center Inc.
No. Locations: 2
Doing Business As: Premier Student Loan Center

Corporate Address: 29901 Santa Margarita Pkwy Suite 200F
Same As Corporate ☐ Location Address:

City: Rancho Santa Margarita  State: CA  Zip: 92688
City:   State:   Zip:

Telephone Number: (888) 548-0476  Fax Number: (  )
Telephone Number: (  )   Alternate Phone: (  )

Federal Tax ID: 47-1590303
Contact Person:
Email Address: kaine@premierstudentloancenter.com
Mail To: ☐ Corporate ☐ Location

**MERCHANT PROFILE**

Type of Ownership: ☐ Sole Proprietor ☒ Corporation ☐ Partnership ☐ LLC
Type of Goods Sold: _____ (Fill in only SIC/MCC)

Length of Ownership: YRS 15  MOS
Length at Location: YRS 1  MOS
Year Business Established: 2014

Web Address: http:premierstudentloancenter.com/

**PROCESSING HISTORY**
Has the business or any associated owner ever been terminated as a VISA®/MasterCard®/Discover®/American Express® merchant? No  ☐ YES ☐ NO
Do you currently accept VISA®/MasterCard®/Discover®/American Express®? If YES, please submit 3 most current monthly statements. No  ☐ YES ☐ NO
Are there third parties/payment applications involved with your payment process? If YES, identify. NO  ☐ YES ☐ NO
Is your business PCI compliant? YES  ☐ YES ☐ NO
Has your business had any ongoing or prior data compromise investigations? NO  ☐ YES ☐ NO
Additional Services  Merchant Number
American Express _____ ☐ EDC ☐ Auth
Diners Club _____ ☐ EDC ☐ Auth

**CREDIT CARD TRANSACTION PROFILE**
☐ Retail
☐ Restaurant w/Tip
☐ Lodging
☐ Trade/Craft Shows
☐ Mail/Phone Order
☒ Internet
☐ Service

On Premise Sales ___ %
Off Premise Sales ___ %
Mail Order ___ %
Telephone Order ___ %
Internet 100 %
MUST TOTAL 100%

Sales Swiped Through POS terminal ___ %
Sales Keyed Into POS terminal 100 %
MUST TOTAL 100%

**OWNERS AND OFFICERS**

| Name (1) Please Print | Title | Residential Address, City, State, Zip, County | Drivers License Number |
|---|---|---|---|
| Kaine Wen | Gen Counsel | | |
| SSN ▮▮▮-▮▮-3143 | Equity Ownership 47.5% | Time at Residence YRS MOS ☐ Own ☒ Rent | Date of Birth ▮▮/▮▮/1977 | Residence Telephone ( ) |
| Name (2) Please Print | Title | Residential Address, City, State, Zip, County | Drivers License Number |
| | | | |
| SSN | Equity Ownership % | Time at Residence YRS MOS ☐ Own ☐ Rent | Date of Birth / / | Residence Telephone ( ) |

BANK REFERENCE: JP Morgan Chase Bank  Account # ▮▮▮▮1522  Telephone Number ( )  Contact
TRADE REFERENCE: Jay LaRue  Account #  Telephone Number ▮▮▮▮▮▮▮  Contact
TRADE REFERENCE:  Account #  Telephone Number ( )  Contact
TRADE REFERENCE:  Account #  Telephone Number ( )  Contact

**MERCHANT SITE INSPECTION REPORT** (must be completed by sales representative)

Merchant Location: ☐ Shopping Center ☐ Retail Storefront ☐ Residence ☐ Mobile Merchant ☐ Office Building
Area Is Zoned: ☐ Commercial ☐ Residential ☐ Industrial
Square Footage: ☐ 0-250 ☐ 251-500 ☐ 501-2000 ☐ 2001+
Does the inventory, merchandise, and staff appear to be consistent with the type of business? ☐ YES ☐ NO  If no, please explain:

The Merchant ☐ Owns ☐ Leases  Landlord's Name Or Mortgage Holder:  Telephone Number ( )
General Comments by Inspector:

I hereby verify that I ☐ have ☐ have not physically inspected the business premises of the merchant at this address and the information stated above is correct to the best of my knowledge.
Signature of Rep/Insp: *Stephanie Preidis*  Date: 10.31.15

©2015 Electronic Merchant Systems   Electronic Merchant Systems is a registered ISO/MSP of Chesapeake Bank, and Merrick Bank.

Response of Electronic Merchant Systems to CFPB Civil Investigative Demand
dated 5/10/2019, received 6/10/2019
EMS CID response
PSL - 1
Pl. Ex. 30
p. 488
R-013763-00000011

Case 8:19-cv-01998-MWF-KS Document 33 Filed 10/21/19 Page 8 of 9 Page ID #:1154

In re Consumer Advocacy Center, Inc. et al.
Premier Student Loan Center ("PSL")

CONFIDENTIAL | REDACTED PER 12 USC 3413

# MERCHANT AGREEMENT

DocuSign Envelope ID: DEC01BE6-0424-4D9A-AB20-DB5C0AF9717A

0415 AR

## DEBIT / CREDIT AUTHORIZATION

MERCHANT hereby authorizes BANK and EMS in accordance with this MERCHANT Agreement to initiate debit/credit entries to MERCHANTS' checking account as indicated below. This authority is to remain in full force and effect during the term of the Agreement. This authorization extends to such entries in said account concerning lease, rental or purchase agreement applying to POS terminal, accompanying equipment, check guarantee fees and/or gift/loyalty card fees.

**STAPLE CHECK HERE**

DO NOT USE A DEPOSIT TICKET
MAKE SURE CHECK IS VOIDED PROPERLY
CHECK MUST BE MICR ENCODED WITH ABA ROUTING NUMBER AND ACCOUNT NUMBER
MAKE SURE CHECK IS PRE-PRINTED WITH MERCHANT BUSINESS NAME

## AMERICAN EXPRESS CARD ACCEPTANCE

☐ By checking this box, Merchant elects to accept payments via American Express (Ineligible Merchants will not be enrolled). Merchant may opt out of accepting American Express Cards at any time without directly or indirectly affecting its rights to accept other Cards.

☐ By checking this box, Merchant opts out of receiving future commercial marketing communications from American Express. Note that you may continue to receive marketing communications while American Express updates its records to reflect your choice. Opting out of commercial marketing communications will not preclude you from receiving important transactional or relationship messages from American Express.

## SCHEDULE OF FEES

☐ VISA*/MasterCard*/Discover*   Discount  2.75 % + .20 ¢ Transaction   $0.30 Batch Headers
☐ American Express*             Discount ____ % + ____ ¢ Transaction   $0.60 Voice ARU
☐ Interchange Plus              Discount ____ % + ____ ¢ Transaction   $15.00 Monthly 100K Data and Breach Protection 5.00
☐ Pin Debit Network             Discount ____ % + ____ ¢ Transaction   $25.00 Monthly Minimum (Visa*/MasterCard*/Discover*/American Express* Discount)
☐ Quote Rates                   ____ % + ____ ¢ Transaction            $75.00 Semi-Annual Technology Upgrade and Update
☐ Quote Rates                   ____ % + ____ ¢ Transaction            $20.00 Monthly Access and Online Statements 5.00
☐ Quote Rates                   ____ % + ____ ¢ Transaction            $0.25 Third party authorizations per Transaction
☐ Quote Rates Authorize.Net     19.00 % + ____ ¢ Transaction
☐ eCommerce ____ Monthly $ ____ + ____ ¢ Transaction

Additional charge of $.10 and 2.35% of sales amount for International, commercial, or Transactions that do not meet the best qualified Interchange rate qualification criteria for credit card and unregulated signature debit transactions. Fees of $25.00 per retrieval request, $45.00 per chargeback and $45.00 per returned ACH item. For restaurants, supermarkets, hotel, passenger transport and gas station merchants, standard, reward, enhanced, and world Visa/MasterCard credit cards and unregulated signature debit cards will be surcharged .95%. Card association's network transaction fees, assessments and $.10 will be charged to the merchant on every transaction. PIN debit network fees include base switch, acquirer, interchange and authorization expenses. All signature debit card sales will be surcharged $.10 per transaction. Regulated signature debit card transactions will process at the lowest qualified credit card rate unless otherwise specified. Unregulated signature debit card transactions will process at the corresponding credit card rate unless otherwise specified. Merchant will pay all applicable Card Brand registration fees. Section 9 of this Agreement provides more detail as to how Merchant fees contained in this Schedule of Fees are calculated. This Schedule of Fees does not provide all information pertinent to this Merchant Agreement. Merchant is advised to thoroughly review this Agreement, including the attached terms and conditions, and to contact EMS or Bank with any questions. **THE ABOVE SCHEDULE OF FEES IS PREDICATED ON THE BUSINESS':**

MAX MONTHLY SALES VOLUME: $ **150,000**     AVERAGE TICKET SIZE: $ **450**     HIGHEST TICKET SIZE: $ **4,500**

OFFICERS AND OWNERS OF MERCHANT WARRANT THAT THE AVERAGE MONTHLY SALES VOLUME AND AVERAGE TICKET SIZE ARE ACCURATE AND ACKNOWLEDGE THAT ANY VARIANCE MAY RESULT IN THE DELAY OR THE WITHHOLDING OF FUNDS SETTLEMENT OR TERMINATION OF THE MERCHANT AGREEMENT. All information contained in the attached Merchant Application was completed by owners and/or authorized officers of Merchant, who hereby represent and warrant that all such information and documentation submitted in connection with this Merchant Application is true, complete and correct No spaces were left incomplete, N/A or None is to be filled in any space where applicable.

Merchant acknowledges having received and read a copy of this agreement, including the attached Terms and Conditions which are incorporated herein by reference, that it agrees to be bound by the agreement and all of its terms, and that the agreement shall not be effective until approved by Bank and EMS, **THIS IS AN AUTOMATICALLY RENEWABLE 24 MONTH MERCHANT CONTRACT. CANCELLATION DURING THE TERM WILL RESULT IN A $595 EARLY TERMINATION FEE. MERCHANT AGREES TO COMPLY WITH PCI COUNCIL DATA SECURITY STANDARDS (HEREINAFTER DEFINED) WITHIN 90 DAYS AFTER SIGNING THIS AGREEMENT, FAILURE TO DO SO WILL RESULT IN AN ADDITIONAL $50.00 MONTHLY FEE UNTIL MERCHANT BECOMES COMPLIANT.** AN INVESTIGATIVE CONSUMER REPORT MAY BE MADE IN CONNECTION WITH THE ATTACHED APPLICATION. MERCHANT AUTHORIZES BANK, EMS, AND THEIR AGENTS AND AFFILIATES, OR ANY CREDIT REPORTING AGENCY EMPLOYED BY THEM TO INVESTIGATE THE REFERENCES GIVEN OR ANY OTHER STATEMENTS OR DATA OBTAINED FROM MERCHANT, OR ANY OF THE UNDERSIGNED PRINCIPALS, FOR THE PURPOSE OF THIS APPLICATION OR ANY APPLICATION FOR ACCOMPANYING POS EQUIPMENT FINANCING.

## AGREED AND ACCEPTED | CORPORATE RESOLUTION

IMPORTANT INFORMATION ABOUT PROCEDURES FOR OPENING A NEW ACCOUNT. To help the government fight the funding of terrorism and money laundering activities, Federal law requires all financial institutions to obtain, verify, and record information that identifies each person who opens an account. What this means for you: When you open an account, we will ask for your name, address, date of birth, and other information that will allow us to identify you. We may also ask to see your driver's license or other identifying documents.

Premier Student Loan Center
Print Merchant Name: Kaine Wen
(1) Sign X: [DocuSigned by Kaine Wen, 87483AE9A34E4C8...]
Title: General Counsel    Date: 11/2/2015

(2) Sign X ____  Title ____  Date ____

The officers identified as #1 and #2 have the authority to execute the Merchant Agreement with BANK and EMS on behalf of the corporation.
Sign X: [DocuSigned by Kaine Wen, 87483AE9A34E4C8]
Title: General Counsel    Date: 11/2/2015
By my signature, I verify that I already own a manual imprinter and will provide imprinted sales drafts whenever necessary.

Sign X ____ Title ____ Date ____

## PERSONAL GUARANTY FROM OWNER/OFFICER

In consideration of BANK and EMS entering into this Merchant Agreement ("Agreement") with the above named Merchant, the undersigned (jointly and severally if more than one) hereby absolutely and unconditionally guarantee(s) the full and prompt payment by MERCHANT of any and all amounts it owes to BANK and EMS, and the performance of all MERCHANT's obligations, under this Agreement as may be subsequently amended from time to time, whether before or after termination or expiration of the Agreement. This Guaranty is a guaranty of payment, and not of collection, and a debt of the undersigned guarantor(s) for his or her own account. The undersigned guarantor(s) agree(s) to pay or perform upon demand and waive(s) any notice, presentment, demand, collection from others or any delay in enforcement. This Guaranty includes (i) any amount returned by the BANK and EMS after receipt due to any bankruptcy or similar law and (ii) BANK's and EMS's expenses including attorney fees and costs. Any sums owing by the MERCHANT to the undersigned guarantor(s) shall be subordinated to sums owed to BANK and EMS. This Guaranty is continuing, binding upon heirs and successors and may not be changed except in writing and signed by BANK and EMS. The undersigned hereby authorize(s) BANK and EMS to obtain from any credit reporting agency financial or other information pertaining to the undersigned and give(s) BANK and EMS continuing authority to obtain such information in connection with the maintenance, renewal or extension of the Agreement. Guarantor(s) acknowledge(s) and agree(s) that this guaranty is made as part of a transaction that is solely for business and commercial purposes and is not primarily for personal, family, or household purposes.

(1) Sign X: [Kaine Wen 87483AE9A34E4C8] NO TITLE PERMITTED    Date: 11/2/2015
PLEASE PRINT NAME: Kaine Wen

(2) Sign X ____  NO TITLE PERMITTED  Date ____
PLEASE PRINT NAME ____

## EMS AND BANK USE ONLY

EMS Approval: Signature ____ Title ____ Date ____
Bank Approval: Signature ____ Title ____ Date ____
Merchant Setup ____ (Initial)

Declined By: Signature ____ Title ____ Date ____
TERMINAL ID NUMBER ____
MERCHANT NUMBER ____

©2015 Electronic Merchant Systems    Electronic Merchant Systems is a registered ISO/MSP of Chesapeake Bank, and Merrick Bank.

Response of Electronic Merchant Systems to CFPB Civil Investigative Demand
dated 5/10/2019, received 6/10/2019
EMS CID response

PSL - 2
Pl. Ex. 30
p. 489
R-013763-00000012

Case 8:19-cv-01998-MWF-KS Document 33 Filed 10/21/19 Page 9 of 9 Page ID #:1155

In re Consumer Advocacy Center Inc. d/b/a
Premier Student Loan Center ("PSL")

UNREDACTED
PER 12 USC 3413

CONFIDENTIAL

# Premier Student Loan Center

DocuSign Envelope ID: DEC01BE5-0424-4D9A-AB20-DB5C0AF9717A

MERCHANT AGREEMENT 04/15 AR

THIS MERCHANT AGREEMENT (the "Agreement"), which includes the attached Merchant Application (the "Application"), is made and entered into by and among Chesapeake Bank, a national banking association, or Merrick Bank, a national banking association, depending upon which such institution is settling Transactions for Merchant ("Bank"), France David Corporation, an Ohio corporation doing business as Electronic Merchant Systems ("EMS"), and the undersigned Merchant ("Merchant") and its guarantor(s).

WHEREAS, Bank is engaged in the business of providing settlement services to Merchants that accept a valid credit card or valid off-line debit card (hereinafter, each a "Card") of Visa, U.S.A., Inc. ("Visa"), MasterCard® International, Inc. ("MasterCard"), Discover® Financial Services ("Discover"), American Express® Travel Related Services Company, Inc. ("American Express") or other credit card brands (hereinafter, each a "Card Brand"; and, collectively, the "Card Brands") for payment for goods and/or services sold, rented or rendered by Merchant; and

WHEREAS, EMS is registered with Visa as an Independent Sales Organization, with MasterCard as a Member Service Provider, and with American Express as an OptBlue® Participant Sales Entity and has agreed with the Bank to provide credit card processing, authorization and related services for Merchants that use Bank's settlement services for Card transactions (individually, a "Transaction" and, collectively, "Transactions"); and

WHEREAS, Merchant desires to use the services of Bank and EMS to authorize, process and settle Transactions undertaken by any authorized user of a Card (collectively, the "Services") in accordance with the rules, regulations, procedures and requirements imposed or adopted by Visa, MasterCard, American Express or other Card Brands as Amended from time to time (the "Rules") and on the terms and conditions hereinafter set forth.

NOW, THEREFORE, in consideration of the foregoing and of the representations, covenants and agreements set forth in this Agreement, the parties hereby agree as follows.

[Body of agreement continues in small print, covering sections 1–6: Honoring/Acceptance of Cards; Point of Sale Devices; Card Brand and Payment Card Industry Rules; Mail, Telephone, E-Commerce (Internet), Recurring and Pre-Authorized Transactions; Fraudulent Sales, Factoring or Laundering; Authorization.]

Response of Electronic Merchant Systems to CFPB Civil Investigative Demand
dated 5/10/2019 received 6/10/2019
EMS CID response

PSL - 3

Pl. Ex. 30
p. 490
R-013763-00000013