CONFIDENTIAL In re Consumer Advocacy Center Inc. d/b/a Premier Student Loan Center ("PSL") UNREDACTED PER 12 USC 3413

DocuSign Envelope ID: 5659C9E9-65AE-46E9-8503-878A878C83FB

electronic
merchant
systems

## MERCHANT AGREEMENT ROLLING RESERVE ADDENDUM

In addition to all of the provisions set forth in the Merchant Agreement between the parties hereto, the undersigned merchant (hereinafter "Merchant) agrees to the following additional terms and conditions:

1. Merchant agrees that Electronic Merchant Systems (EMS) will establish a cumulative, rolling reserve balance (herein referred to as the "Secured Amount") equal to 10 % of all Visa/MasterCard sale transactions processed through Merchant's bankcard processing account (the "Account") until the Secured amount reaches $ ________. The secured amount will be held at MSI for a period of not less than 270 days after termination date of the Merchant Agreement, or until the liability period for chargebacks has expired.

2. Merchant's bankcard processing volume shall not exceed $ 40000.00 in any 30-day period. Merchant understands that it is Merchant's responsibility to monitor and adhere to volume restriction. If it is exceeded, MSI may, in its sole discretion and without notice to Merchant, interrupt Merchant's processing service, withhold funds, conduct a security review, and or terminate the Merchant Agreement.

3. Merchant acknowledges that MSI will not consider any modification to the volume limit set forth above until MSI determines, in its sole discretion, that the Merchant's Account is in good standing.

4. Merchant acknowledges that any increase in Merchant's volume restriction must be evidenced by a writing signed by MSI, and that any increase may also result in an increase in Merchant's secured deposit.

5. Merchant agrees to immediately inform MSI in writing of any changes and or occurrences that may result in an increased risk of loss to Merchant's Account. These changes include, but are not limited to the following: a) any change in location of the Merchant's business, b) any change in the Merchant's banking information, c) any change in Merchant's product type, d) new or additional services provided by Merchant, e) any change in business ownership, or f) any other change that MSI, in its sole discretion, deems significant. Merchant's failure to promptly provide such information or failure to accurately provide such information may, at MSI's discretion, result in termination of the Merchant Agreement.

6. Merchant represents and covenants to MSI that Merchant is solvent (as that term is understood in generally accepted business and accounting practice), and neither Merchant nor any of its principals have been advised to, nor have contemplated, the filing of any action seeking the protection of bankruptcy laws of the United States or any jurisdiction.

7. MSI may, in satisfaction of any Merchant's obligations pursuant to this Agreement or the Merchant Agreement, without notice to Merchant, take any or all of the following actions:

A) Resort to the Secured Amount for the payment of any of the Merchant's liabilities, whether or not MSI shall have first resorted to any other property securing the Merchant's liabilities, and whether or not MSI shall have first proceeded against any party primarily or secondarily liable on any of the Merchant's liabilities.

B) Apply the Secured Amount, or any portion thereof, as a set-off against any all liabilities owing from Merchant to MSI.

8. Merchant hereby waives notice of the existence or creation of all or any liabilities, and agrees that no action of MSI permitted hereunder, or in the Merchant Agreement, shall impair or affect the rights of MSI in and to the Secured Amount.

Merchant Business Name: Premier Student Loan Center Date: 11/10/2015

Owner's Name Kaine Wen Date: 11/10/2015

Owners Signature DocuSigned by: Kaine Wen 8743AE8A34E4C8... Date: 11/10/2015

In no way does this acceptance of this agreement exclude merchant from any section of the merchant processing agreement or exclude said merchant from account monitoring.*

Response of Electronic Merchant Systems to CFPB Civil Investigative Demand dated 5/10/2019 - received 6/10/2019
EMS CID response
PSL - 23
Pl. Ex. 30
p. 505
R-013763-00000033

Case 8:19-cv-01998-MWF-KS Document 33-3 Filed 10/21/19 Page 2 of 6 Page ID #:1171
CONFIDENTIAL
In re Consumer Advocacy Center Inc. d/b/a
Premier Student Loan Center ("PSL")
REDACTED PER 12 USC 3413



0415 AR

DocuSign Envelope ID: DEC01BE6-0424-4D9A-AB20-DB5C0AF9717A

# MERCHANT AGREEMENT

## DEBIT / CREDIT AUTHORIZATION

MERCHANT hereby authorizes BANK and EMS in accordance with this MERCHANT Agreement to initiate debit/credit entries to MERCHANTS' checking account as indicated below. This authority is to remain in full force and effect during the term of the Agreement. This authorization extends to such entries in said account concerning lease, rental or purchase agreement applying to POS terminal, accompanying equipment, check guarantee fees and/or gift/loyalty card fees.

STAPLE CHECK HERE

**DO NOT USE A DEPOSIT TICKET**
**MAKE SURE CHECK IS VOIDED PROPERLY**
**CHECK MUST BE MICR ENCODED WITH ABA ROUTING NUMBER AND ACCOUNT NUMBER**
**MAKE SURE CHECK IS PRE-PRINTED WITH MERCHANT BUSINESS NAME**

## AMERICAN EXPRESS CARD ACCEPTANCE

☐ By checking this box, Merchant elects to accept payments via American Express (Ineligible Merchants will not be enrolled). Merchant may opt out of accepting American Express Cards at any time without directly or indirectly affecting its rights to accept other Cards.

☐ By checking this box, Merchant opts out of receiving future commercial marketing communications from American Express. Note that you may continue to receive marketing communications while American Express updates its records to reflect your choice. Opting out of commercial marketing communications will not preclude you from receiving important transactional or relationship messages from American Express.

## SCHEDULE OF FEES

☐ VISA*/MasterCard*/Discover* Discount 2.75 % + .20 c Transaction $0.30 Batch Headers
☐ American Express* Discount ___ % + ___ c Transaction $0.60 Voice ARU
☐ Interchange Plus Discount ___ % + ___ c Transaction $15.00 Monthly 100K Data and Breach Protection 5.00
☐ Pin Debit Network Discount ___ % + ___ c Transaction $25.00 Monthly Minimum (Visa*/MasterCard*/Discover*/American Express* Discount)
☐ Quote Rates ___ % + ___ c Transaction $75.00 Semi-Annual Technology Upgrade and Update
☐ Quote Rates ___ % + ___ c Transaction $XXX Monthly Access and Online Statements 5.00
☐ Quote Rates ___ % + ___ c Transaction $0.25 Third party authorizations per Transaction
☐ Quote Rates Authorize.Net ___ % + ___ c Transaction
☐ eCommerce Monthly $ 19.00 ___ % + ___ c Transaction

Additional charge of $.10 and 2.35% of sales amount for International, commercial, or Transactions that do not meet the best qualified Interchange rate qualification criteria for credit card and unregulated signature debit transactions. Fees of $25.00 per retrieval request, $45.00 per chargeback and $45.00 per returned ACH item. For restaurants, supermarkets, hotel, passenger transport and gas station merchants, standard, reward, enhanced, and world Visa/MasterCard credit cards and unregulated signature debit cards will be surcharged .95%. Card association's network transaction fees, assessments and $.10 will be charged to the merchant on every transaction. PIN debit network fees include base switch, acquirer, interchange and authorization expenses. All signature debit card sales will be surcharged $.10 per transaction. Regulated signature debit card transactions will process at the lowest qualified credit card rate unless otherwise specified. Unregulated signature debit card transactions will process at the corresponding credit card rate unless otherwise specified. Merchant will pay all applicable Card Brand registration fees. Section 9 of this Agreement provides more detail as to how Merchant fees contained in this Schedule of Fees are calculated. This Schedule of Fees does not provide all information pertinent to this Merchant Agreement. Merchant is advised to thoroughly review this Agreement, including the attached terms and conditions, and to contact EMS or Bank with any questions. THE ABOVE SCHEDULE OF FEES IS PREDICATED ON THE BUSINESS':

MAX MONTHLY SALES VOLUME: $ 150,000   AVERAGE TICKET SIZE: $ 450   HIGHEST TICKET SIZE: $ 4,500

OFFICERS AND OWNERS OF MERCHANT WARRANT THAT THE AVERAGE MONTHLY SALES VOLUME AND AVERAGE TICKET SIZE ARE ACCURATE AND ACKNOWLEDGE THAT ANY VARIANCE MAY RESULT IN THE DELAY OR THE WITHHOLDING OF FUNDS SETTLEMENT OR TERMINATION OF THE MERCHANT AGREEMENT. All information contained in the attached Merchant Application was completed by owners and/or authorized officers of Merchant, who hereby represent and warrant that all such information and documentation submitted in connection with this Merchant Application is true, complete and correct No spaces were left incomplete. N/A or None is to be filled in any space where applicable.

Merchant acknowledges having received and read a copy of this agreement, including the attached Terms and Conditions which are incorporated herein by reference, that it agrees to be bound by the agreement and all of its terms, and that the agreement shall not be effective until approved by Bank and EMS. THIS IS AN AUTOMATICALLY RENEWABLE 24 MONTH MERCHANT CONTRACT. CANCELLATION DURING THE TERM WILL RESULT IN A $595 EARLY TERMINATION FEE. MERCHANT AGREES TO COMPLY WITH PCI COUNCIL DATA SECURITY STANDARDS (HEREINAFTER DEFINED) WITHIN 90 DAYS AFTER SIGNING THIS AGREEMENT. FAILURE TO DO SO WILL RESULT IN AN ADDITIONAL $50.00 MONTHLY FEE UNTIL MERCHANT BECOMES COMPLIANT. AN INVESTIGATIVE CONSUMER REPORT MAY BE MADE IN CONNECTION WITH THE ATTACHED APPLICATION. MERCHANT AUTHORIZES BANK, EMS, AND THEIR AGENTS AND AFFILIATES, OR ANY CREDIT REPORTING AGENCY EMPLOYED BY THEM TO INVESTIGATE THE REFERENCES GIVEN OR ANY OTHER STATEMENTS OR DATA OBTAINED FROM MERCHANT, OR ANY OF THE UNDERSIGNED PRINCIPALS, FOR THE PURPOSE OF THIS APPLICATION OR ANY APPLICATION FOR ACCOMPANYING POS EQUIPMENT FINANCING.

## AGREED AND ACCEPTED

IMPORTANT INFORMATION ABOUT PROCEDURES FOR OPENING A NEW ACCOUNT. To help the government fight the funding of terrorism and money laundering activities, Federal law requires all financial institutions to obtain, verify, and record information that identifies each person who opens an account. What this means for you. When you open an account, we will ask for your name, address, date of birth, and other information that will allow us to identify you. We may also ask to see your driver's license or other identifying documents.

Print Merchant Name: Premier Student Loan Center
(1) Sign X: Kaine Wen   General Counsel   11/2/2015
87483AE9A34E4C8   Title   Date

(2) Sign X: _____   _____   _____
Title   Date

## CORPORATE RESOLUTION

The officers identified as #1 and #2 have the authority to execute the Merchant Agreement with BANK and EMS on behalf of the corporation.

Sign X: Kaine Wen   General Counsel   11/2/2015
87483AE9A34E4C8   Title   Date

By my signature, I verify that I already own a manual imprinter and will provide imprinted sales drafts whenever necessary.

Sign X: _____   _____   _____
Title   Date

## PERSONAL GUARANTY FROM OWNER/OFFICER

In consideration of BANK and EMS entering into this Merchant Agreement ("Agreement") with the above named Merchant, the undersigned (jointly and severally if more than one) hereby absolutely and unconditionally guarantee(s) the full and prompt payment by MERCHANT of any and all amounts it owes to BANK and EMS, and the performance of all MERCHANT's obligations, under this Agreement as may be subsequently amended from time to time, whether before or after termination or expiration of the Agreement. This Guaranty is a guaranty of payment, and not of collection, and a debt of the undersigned guarantor(s) for his or her own account. The undersigned guarantor(s) agree(s) to pay or perform upon demand and waive(s) any notice, presentment, demand, collection from others or any delay in enforcement. This Guaranty includes (i) any amount returned by the BANK and EMS after receipt due to any bankruptcy or similar law and (ii) BANK's and EMS' expenses including attorney fees and costs. Any sums owing by the MERCHANT to the undersigned guarantor(s) shall be subordinated to sums owed to BANK and EMS. This Guaranty is continuing, binding upon heirs and successors and may not be changed except in writing and signed by BANK and EMS. The undersigned hereby authorize(s) BANK and EMS to obtain from any credit reporting agency [illegible] pertaining to the undersigned and give(s) BANK and EMS continuing authority to obtain such information in connection with the maintenance, renewal or extension of the Agreement. Guarantor(s) acknowledge(s) and agree(s) this guaranty is made as part of a transaction that is solely for business and commercial purposes and is not primarily for personal, family, or household purposes.

(1) Sign X: Kaine Wen   11/2/2015   Kaine Wen
87483AE9A34E4C8   NO TITLE PERMITTED   Date   PLEASE PRINT NAME

(2) Sign X: _____   _____   _____
NO TITLE PERMITTED   Date   PLEASE PRINT NAME

**EMS AND BANK USE ONLY**

EMS Approval
Signature   Title   Date

Bank Approval
Signature   Title   Date

Merchant Setup _____ (Initial)

Declined By
Signature   Title   Date

TERMINAL ID NUMBER _____
MERCHANT NUMBER _____

©2015 Electronic Merchant Systems   Electronic Merchant Systems is a registered ISO/MSP of Chesapeake Bank, and Merrick Bank.

Response of Electronic Merchant Systems to CFPB Civil Investigative Demand dated 6/10/2019, received 6/10/2019
EMS CID response
PSL - 33
Pl. Ex. 30
p. 506
R-013763-00000043

CONFIDENTIAL

In re Consumer Advocacy Center Inc. d/b/a Premier Student Loan Center ("PSL")

UNREDACTED PER 12 USC 3413

# MERCHANT CHANGE NOTICE

electronic merchant systems

FAX TO: 216.674.3110

Copy fwd to Gift Cards: Please circle: Yes or No

FAX TO: 216.674.3110 TICKET # 1458609 CSR REP:

MERCHANT #: [redacted]3157 (15 digits) DBA: Consumer Advocacy Center DBA Premier Student Loan Center (please print)

**DOING BUSINESS AS (DBA) NAME**
FROM:
TO:

**PHYSICAL ADDRESS (PLACE OF BUSINESS)**
FROM: ADDRESS: 29901 Santa Margarita Pkwy Suite 200F
CITY, STATE, ZIP: Rancho Santa Margarita, CA 92688
TO: ADDRESS: 173 Technology Drive Suite 202
CITY, STATE, ZIP: Irvine CA 92618 ☒ MAILING ADDRESS

We have

**CORPORATE/LEGAL ADDRESS (If different than place of business)**
FROM: ADDRESS:
CITY, STATE, ZIP:
TO: ADDRESS:
CITY, STATE, ZIP: ☐ MAILING ADDRESS

TELEPH[ONE]

FAX NU[MBER]

IF CHAN[GING] ... OTHER
CHANGE ... LISTED
ON THIS ...

MERCHANT ... checking account as ... to such entries in s...

AT... Y

If voided c...

CONSUMER ADVOCACY CENTER
DBA PREMIER STUDENT LOAN CENTER
173 TECHNOLOGY DR. SUITE 202
IRVINE, CA 92618

1008
90-2800/1222

Date

Pay to the Order of Void $

Dollars

Sunwest Bank

For

⑆[redacted]8003⑆1008⑈[redacted]1689⑈

9-24-18 pd

**CHANGES CAN NOT BE MADE WITHOUT THE AUTHORIZED SIGNATURE**

OWNER'S SIGNATURE Kuo Wei DATE: 9/21/18

PRINT OWNER'S NAME Kaing Wei

CUSTOMER SERVICE APPROVAL DATE:

audite 9/25/18 MV updated dextrg 9/25/18 OO

Response of Electronic Merchant Systems to CFPB Civil Investigative Demand dated 5/10/2019, received 6/10/2019

EMS CID response

PSL - 21

Pl. Ex. 30
p. 507

R-013763-00000031

In re True Count Staffing Inc. d/b/a SL Account Mgmt ("SL1")
UNREDACTED FER 12 USC 3413
CONFIDENTIAL

564400001159144
601127001338055

DocuSign Envelope ID: 3A7EDE38-E65B-4ED6-B2CB-725ADBD6EB24

1215D

electronic merchant systems

# Merrick Bank CHESAPEAKE BANK

# MERCHANT AGREEMENT

*Merchant acknowledges that its obligations to EMS and Bank under this agreement relate to EMS' processing of transactions on behalf of Merchant and that, as such, this agreement is solely for commercial and business purposes, and not for personal, family or household purposes.*

5005 Rockside Road, Penthouse 100, Independence, Ohio 44131
Phone: 800-726-2117
Fax: 216-674-3110
www.emscorporate.com

SPONSORED BY: ☐ Chesapeake Bank Kilmarnock, VA ☐ Merrick Bank South Jordan, UT

Merrick Bank 135 Crossways Park Drive North, Suite A, Woodbury, NY 11797 800-267-2258
Chesapeake Bank 5000 Foundation St, Williamsburg, VA 23188 757-941-1335

| MCC | | MN | |
|---|---|---|---|
| Office Number 160 | Account Mgr | Account Rep Stephanie Preidis | |

## BUSINESS NAME (S)

| Field | Value | Field | Value |
|---|---|---|---|
| Corporate or Legal Name | True Count Staffing Inc | No. Locations | |
| Doing Business As | SL Account Mgmt | | |
| Corporate Address | 8 Hughes, #210 | Same As Corporate ☐ Location Address | |
| City | Irvine | City | |
| State | California | State | |
| Zip | 92618 | Zip | |
| Telephone Number | (888) 314-0801 | Telephone Number | ( ) |
| Fax Number | ( ) | Alternate Phone | ( ) |
| Federal Tax ID (Nine Digits) | 82-0854249 | Email Address | kaine@slaccountmgmt.com |
| Contact Person | Kaine Wen | Mail To: | ☐ Corporate ☐ Location |

## MERCHANT PROFILE

Type of Ownership: ☐ Sole Proprietor ☒ Corporation ☐ Partnership ☐ LLC

Type of Goods Sold: collect payments for doc. prep
(EMS use only) SIC/MCC

Length of Ownership: YRS MOS | Length at Location: YRS MOS | Year Business Established: 3-2018

Web Address: slaccountmgmt.com

## PROCESSING HISTORY

| Question | Answer |
|---|---|
| Has the business or any associated owner ever been terminated as a VISA®/MasterCard®/Discover®/American Express® merchant? | ☐ YES ☒ NO |
| Do you currently accept VISA®/MasterCard®/Discover®/American Express®? *If YES, please submit 3 most current monthly statements.* | ☐ YES ☒ NO |
| Are there third parties/payment applications involved with your payment process? *If YES, identify.* | ☐ YES ☒ NO |
| Is your business PCI compliant? | ☒ YES ☐ NO |
| Has your business had any ongoing or prior data compromise investigations? | ☐ YES ☒ NO |

*Additional Services* — *Merchant Number*
American Express ________ ☐ EDC ☐ Auth
Diners Club ________ ☐ EDC ☐ Auth

## CREDIT CARD TRANSACTION PROFILE

| Type | Sales | Processing |
|---|---|---|
| ☐ Retail | On Premise Sales ___ % | Sales Swiped Through POS terminal ___ % |
| ☐ Restaurant w/Tip | Off Premise Sales ___ % | |
| ☐ Lodging | Mail Order ___ % | Sales Keyed Into POS terminal 100 % |
| ☐ Trade/Craft Shows | Telephone Order ___ % | |
| ☐ Mail/Phone Order | Internet 100 % | |
| ☒ Internet | MUST TOTAL 100% | MUST TOTAL 100% |
| ☐ Service | | |

## OWNERS AND OFFICERS

| Name (1) Please Print | Title | Residential Address, City, State, Zip, County | Drivers License Number |
|---|---|---|---|
| Kaine Wen | Owner | [redacted] Azusa, CA [redacted] | |
| SSN [redacted]3143 | Equity Ownership 100% | Time at Residence YRS MOS ☐ Own ☐ Rent | Date of Birth [redacted]/77 / Residence Telephone ([redacted] |
| Name (2) Please Print | Title | Residential Address, City, State, Zip, County | Drivers License Number |
| SSN | Equity Ownership % | Time at Residence YRS MOS ☐ Own ☐ Rent | Date of Birth / / Residence Telephone ( ) |

| Reference | Account # | Telephone Number | Contact |
|---|---|---|---|
| BANK REFERENCE J P Morgan | [redacted]1126 | ( ) | |
| TRADE REFERENCE | | ( ) | |
| TRADE REFERENCE | | ( ) | |
| TRADE REFERENCE | | ( ) | |

## MERCHANT SITE INSPECTION REPORT (must be completed by sales representative)

Merchant Location: ☐ Shopping Center ☐ Retail Storefront ☐ Residence ☐ Mobile Merchant ☐ Office Building
Area Is Zoned: ☐ Commercial ☐ Residential ☐ Industrial
Square Footage: ☐ 0-250 ☐ 251-500 ☐ 501-2000 ☐ 2001+

Does the inventory, merchandise, and staff appear to be consistent with the type of business? ☐ YES ☐ NO If no, please explain:

| The Merchant ☐ Owns ☐ Leases | Landlord's Name Or Mortgage Holder | Telephone Number ( ) |
|---|---|---|

General Comments by Inspector

I hereby verify that I ☐ have ☒ have not physically inspected the business premises of the merchant at this address and the information stated above is correct to the best of my knowledge.

Signature of Rep/Inspector: [signature] Stephanie Preidis — Date 2/13/2017

©2015 Electronic Merchant Systems — Electronic Merchant Systems is a registered ISO/MSP of Chesapeake Bank, and Merrick Bank.

BANK COPY

Response of Electronic Merchant Systems to CFPB Civil Investigative Demand dated 5/10/2019 - received 6/10/2019
SL1 - 1
EMS CID response
Pl. Ex. 30
p. 508
R-013763-00000181

Case 8:19-cv-01998-MWF-KS  Document 33-3  Filed 10/21/19  Page 5 of 6  Page ID #:1174

In re True Count Staffing Inc. d/b/a
SL Account Mgmt (SL1)

UNREDACTED
PER 12 USC 3413

CONFIDENTIAL

DocuSign Envelope ID: A6882224-067C-4687-B504-35F4772D6832

# MERCHANT AGREEMENT



1215D

## DEBIT / CREDIT AUTHORIZATION

MERCHANT hereby authorizes BANK and EMS in accordance with this MERCHANT Agreement to initiate debit/credit entries to MERCHANTS' checking account as indicated below. This authority is to remain in full force and effect during the term of the Agreement. This authorization extends to such entries in said account concerning lease, rental or purchase agreement applying to POS terminal, accompanying equipment, check guarantee fees and/or gift/loyalty card fees.

STAPLE CHECK HERE

**DO NOT USE A DEPOSIT TICKET, MAKE SURE CHECK IS VOIDED PROPERLY
CHECK MUST BE MICR ENCODED WITH ABA ROUTING NUMBER AND ACCOUNT NUMBER
MAKE SURE CHECK IS PRE-PRINTED WITH MERCHANT BUSINESS NAME**

## AMERICAN EXPRESS CARD ACCEPTANCE

☐ By checking this box, Merchant elects to accept payments via American Express (Ineligible Merchants will not be enrolled). Merchant may opt out of accepting American Express Cards at any time without directly or indirectly affecting its rights to accept other Cards.

☐ By checking this box, Merchant opts out of receiving future commercial marketing communications from American Express. Note that you may continue to receive marketing communications while American Express updates its records to reflect your choice. Opting out of commercial marketing communications will not preclude you from receiving important transactional or relationship messages from American Express.

## SCHEDULE OF FEES

| | | | | |
|---|---|---|---|---|
| ☐ VISA®/MasterCard®/Discover® | Discount | ___ % + ___ ¢ Transaction | $425.00 Application/Set Up Fee |
| ☐ American Express® | Discount | 3.50 % + 20 ¢ Transaction | $15.00 Monthly Access |
| ☐ Pin Debit Network | Discount | ___ % + ___ ¢ Transaction | $22.50 Monthly Access with Debit or Online Statements |
| ☐ Quote Rates Same rates & fees | ___ % + ___ ¢ Transaction | $30.00 Monthly Access with Debit and Online Statements |
| ☐ Quote Rates | ___ % + ___ ¢ Transaction | $25.00 Monthly Cellular Transaction Fee + $0.10/Transaction |
| ☐ Quote Rates 564400000878157 | ___ % + ___ ¢ Transaction | $0.60 Voice ARU / $0.30 Batch Headers |
| ☐ Quote Rates | ___ % + ___ ¢ Transaction | $15.00 Monthly 100K Data and Breach Protection |
| ☐ eCommerce | Monthly $___ Trans $___ | $25.00 Monthly Minimum (Visa®/MasterCard®/Discover®/American Express® Discount) |
| ☐ Platinum Service Club $10.00 | ☐ WebPak Professional $99.00 Monthly | $75.00 Semi-Annual Technology Upgrade and Update |
| ☐ Web Hosting Professional $59.00 Monthly | ☐ WebPak Premier $139.00 Monthly | Third Party Authorization Fee 25¢ Transaction |
| ☐ Web Hosting Premier $89.00 Monthly | ☐ Flok $59.00 Monthly | ☐ iMenu |
| ☐ E-Commerce Cart Plus $49.00 Monthly | ☐ Flok $79.00 Monthly | ☐ IMenu VPOS $29.00 Monthly |

Additional charge of $.10 and 2.35% of sales amount for international, commercial, or Transactions that do not meet the best qualified interchange rate qualification criteria for credit card and unregulated signature debit transactions. Fees of $25.00 per retrieval request, $45.00 per chargeback and $25.00 per returned ACH item. For restaurants, supermarkets, hotel, passenger transport and gas station merchants, standard, reward, enhanced, and world Visa/MasterCard credit cards and unregulated signature debit cards will be surcharged .95%. Card association's network transaction fees, assessments and $.10 will be charged to the merchant on every transaction. PIN debit network fees include base switch, acquirer, interchange and authorization expenses. All signature debit card sales will be surcharged $.10 per transaction. Regulated signature debit card transactions will process at the lowest qualified credit card rate unless otherwise specified. Unregulated signature debit card transactions will process at the corresponding credit card rate unless otherwise specified. Merchant will pay all applicable Card Brand registration fees. Section 9 of this Agreement provides more detail as to how Merchant fees contained in this Schedule of Fees are calculated. This Schedule of Fees does not provide all information pertinent to this Merchant Agreement. Merchant is advised to thoroughly review this Agreement, including the attached terms and conditions, and to contact EMS or Bank with any questions. THE ABOVE SCHEDULE OF FEES IS PREDICATED ON THE BUSINESS:

AVERAGE MONTHLY SALES VOLUME: $ **150,000**  AVERAGE TICKET SIZE: $ **450.00**  HIGHEST TICKET SIZE: $ **4,500.00**

OFFICERS AND OWNERS OF MERCHANT WARRANT THAT THE AVERAGE MONTHLY SALES VOLUME AND AVERAGE TICKET SIZE ARE ACCURATE AND ACKNOWLEDGE THAT ANY VARIANCE MAY RESULT IN THE DELAY OR THE WITHHOLDING OF FUNDS SETTLEMENT OR TERMINATION OF THE MERCHANT AGREEMENT. All information contained in the attached Merchant Application was completed by owners and/or authorized officers of Merchant, who hereby represent and warrant that all such information and documentation submitted in connection with this Merchant Application is true, complete and correct. No spaces were left incomplete. N/A or None is to be filled in any space where applicable.

Merchant acknowledges having received and read a copy of this agreement, including the attached Terms and Conditions which are incorporated herein by reference, that it agrees to be bound by the agreement and all of its terms, and that the agreement shall not be effective until approved by Bank and EMS. THIS IS AN AUTOMATICALLY RENEWABLE 24 MONTH MERCHANT CONTRACT. CANCELLATION DURING THE TERM WILL RESULT IN A $595 EARLY TERMINATION FEE. MERCHANT AGREES TO COMPLY WITH PCI COUNCIL DATA SECURITY STANDARDS (HEREINAFTER DEFINED) WITHIN 90 DAYS AFTER SIGNING THIS AGREEMENT. FAILURE TO DO SO WILL RESULT IN AN ADDITIONAL $50.00 MONTHLY FEE UNTIL MERCHANT BECOMES COMPLIANT. AN INVESTIGATIVE CONSUMER REPORT MAY BE MADE IN CONNECTION WITH THE ATTACHED APPLICATION. MERCHANT AUTHORIZES BANK, EMS AND THEIR AGENTS AND AFFILIATES, OR ANY CREDIT REPORTING AGENCY EMPLOYED BY THEM TO INVESTIGATE THE REFERENCES GIVEN OR ANY OTHER STATEMENTS OR DATA OBTAINED FROM MERCHANT, OR ANY OF THE UNDERSIGNED PRINCIPALS, FOR THE PURPOSE OF THIS APPLICATION OR ANY APPLICATION FOR ACCOMPANYING POS EQUIPMENT FINANCING.

## AGREED AND ACCEPTED | CORPORATE RESOLUTION

IMPORTANT INFORMATION ABOUT PROCEDURES FOR OPENING A NEW ACCOUNT. To help the government fight the funding of terrorism and money laundering activities, Federal law requires all financial institutions to obtain, verify, and record information that identifies each person who opens an account. What this means for you: When you open an account, we will ask for your name, address, date of birth, and other information that will allow us to identify you. We may also ask to see your driver's license or other identifying documents.

SL Account Mgmt

The officers identified in #1 and #2 have the authority to execute the Merchant Agreement with BANK and EMS on behalf of the corporation.

Print Merchant Name: Kaine Wen

Sign X: Kaine Wen  Owner  2/12/2018

(1) Sign X: Kaine Wen  Owner  2/12/2018
Title  Date

By my signature, I verify that I already own a manual imprinter and will provide imprinted sales drafts whenever necessary.

(2) Sign X _____
Title  Date

Sign X _____
Title  Date

## PERSONAL GUARANTY FROM OWNER/OFFICER

In consideration of BANK and EMS entering into this Merchant Agreement ("Agreement") with the above named Merchant, the undersigned (jointly and severally if more than one) hereby absolutely and unconditionally guarantee(s) the full and prompt payment by MERCHANT of any and all amounts it owes to BANK and EMS, and the performance of all MERCHANT'S obligations, under this Agreement as may be subsequently amended from time to time, whether before or after termination or expiration of the Agreement. This Guaranty is a guaranty of payment, and not of collection, and a debt of the undersigned guarantor(s) for his or her own account. The undersigned guarantor(s) agree(s) to pay or perform upon demand and waive(s) any notice, presentment, demand, collection from others or any delay in enforcement. This Guaranty includes (i) any amount returned by the BANK and EMS after receipt due to any bankruptcy or similar law and (ii) BANK's and EMS's expenses including attorney fees and costs. Any sums owing by the MERCHANT to the undersigned guarantor(s) shall be subordinated to sums owed to BANK and EMS. This Guaranty is continuing, binding upon heirs and successors and may not be changed except in writing and signed by BANK and EMS. The undersigned hereby authorize(s) BANK and EMS to obtain from any credit reporting agency financial or credit information pertaining to the undersigned and give(s) BANK and EMS continuing authority to obtain such information in connection with the maintenance, renewal or extension of the Agreement. Guarantor(s) acknowledge(s) and agree(s) that this guaranty is made as part of a transaction that is solely for business and commercial purposes and is not primarily for personal, family or household purposes.

(1) Sign X: Kaine Wen  2/12/2018
NO TITLE PERMITTED  Date

Kaine Wen
PLEASE PRINT NAME

(2) Sign X _____
NO TITLE PERMITTED  Date

_____
PLEASE PRINT NAME

### EMS AND BANK USE ONLY

EMS Approval _____
Signature  Title  Date

Bank Approval _____
Signature  Title  Date

Merchant Setup _____

Declined By _____
Signature  Title  Date

TERMINAL ID NUMBER _____

MERCHANT NUMBER _____

©2015 Electronic Merchant Systems

Electronic Merchant Systems is a registered ISO/MSP of Chesapeake Bank, and Merrick Bank.

BANK COPY

Response of Electronic Merchant Systems to CFPB Civil Investigative Demand dated 5/10/2019, received 6/10/2019
EMS CID response
SL1 - 2
Pl. Ex. 30
p. 509
R-013763-00000182

In re True Count Staffing Inc. d/b/a SL Account Mgmt ("SL1")

UNREDACTED PER 12 USC 3413

CONFIDENTIAL

SL Account Mgmt

DocuSign Envelope ID: A0882224-067C-4687-B504-35F4772D6832

THIS MERCHANT AGREEMENT (the "Agreement"), which includes the attached Merchant Application (the "Application"), is made and entered into by and among Chesapeake Bank, a national banking association, or Merrick Bank, a national banking association, depending upon which such institution is settling Transactions for Merchant ("Bank"), Francis David Corporation, an Ohio corporation doing business as Electronic Merchant Systems ("EMS"), and the undersigned Merchant ("Merchant") and its guarantor(s).

WHEREAS, Bank is engaged in the business of providing settlement services to Merchants that accept a valid credit card or valid off-line debit card (hereinafter, each a "Card") of Visa® U.S.A., Inc. ("Visa"), MasterCard® International, Inc. ("MasterCard"), Discover® Financial Services ("Discover"), American Express® Travel Related Services Company, Inc. ("American Express") or other credit card brands (hereinafter, each a "Card Brand", and, collectively, the "Card Brands") for payment for goods and/or services sold, rented or rendered by Merchant; and

WHEREAS, EMS is registered with Visa as an Independent Sales Organization, with MasterCard as a Member Service Provider, and with American Express as an OptBlue® Participant Sales Entity and has agreed with the Bank to provide credit card processing, authorization and related services for Merchants that use Bank's settlement services for Card transactions (individually, a "Transaction" and, collectively, "Transactions"); and

WHEREAS, Merchant desires to use the services of Bank and EMS to authorize, process and settle Transactions undertaken by any authorized user of a Card (collectively, the "Services") in accordance with the rules, regulations, procedures and requirements imposed or adopted by Visa, MasterCard, American Express or other Card Brands as amended from time to time (the "Rules") and on the terms and conditions hereinafter set forth;

NOW, THEREFORE, in consideration of the foregoing and of the representations, covenants and agreements set forth in this Agreement, the parties hereby agree as follows:

**1. Honoring/Acceptance of Cards.** Merchant shall honor and accept, without discrimination, all valid Cards when properly presented as payment by a cardholder or authorized user and upon obtaining authorization for each Transaction in advance from the authorization center in accordance with the terms and conditions of this Agreement. Merchant shall not accept a Card for any unlawful transaction. Merchant will submit all authorized Transactions for its business exclusively to Bank and EMS. Merchant will pay all Card Brand fines, fees, penalties and all other assessments or indebtedness levied by Card Brands and/or regulatory agencies to Bank or EMS which are attributable, at the Bank's or EMS' discretion, to Merchant's transaction processing or business. Merchant shall not indicate that Visa, MasterCard, American Express or any other Card Brand endorses its goods or services. Merchant has no right to use the proprietary name and/or symbol of Bank, Visa, MasterCard or American Express except during the term of this Agreement, or until Merchant is notified by Bank, Visa, MasterCard or American Express to cease such usage, and only to the extent the materials containing such are provided to Merchant by EMS or Bank and/or are approved in advance by EMS or Bank. Merchant and its guarantor(s) are jointly and severally liable for the obligations of Merchant's establishments under this Agreement.

**2. Point of Sale Devices.** (a) Merchant shall utilize and maintain, at Merchant's expense, Point of Sale ("POS") devices and terminal(s), proprietary software and related equipment approved by Bank and EMS for all Transactions, in a format and medium of transmission acceptable to Bank and EMS. Merchant will implement the Integrated Circuit Card Specifications for Payment Systems (global payment industry specifications that describe the requirements for interoperability between chip based consumer payment applications and acceptance terminals to enable payment, also referred to as "EMV") when required by EMS, Bank or a Card Brand, and such implementation may require upgrade or replacement of terminal or point of sale hardware and software. Bank and EMS shall have no liability or responsibility for any negligent design or manufacture of any POS terminal or printer, or for any proprietary software or related equipment; EMS' entire liability, if any, and Merchant's exclusive remedy in all situations, shall be to perform repair services on any inoperative POS terminal or printer sold or leased by EMS. (b) Merchant shall record each transaction by "swiping" the card through the POS terminal whenever possible. Merchant acknowledges that each outlet, retail location, or business entity will have its own POS terminal and Merchant identification number. Merchant understands and agrees that sales completed at one location cannot be processed through a terminal at another location. (c) In the event of breakdown of the POS terminal or other system failure, Merchant shall immediately contact the designated Merchant Help Desk. In such case, Merchant shall imprint each sales draft with the embossed data from each card and Merchant's imprinter plate and obtain the cardholder's or authorized user's signature which must match the signature on the card. If Merchant uses an electronic printer connected to a POS terminal, Merchant must still obtain the cardholder's or authorized user's signature on the printed sales draft. As soon as a POS Terminal is operable, Merchant will enter all transactions engaged in during such period. Failure to comply with these requirements may result in a Chargeback. (d) Merchant is responsible for all telephone and communication fees and charges with respect to POS terminals.

**3. Card Brand and Payment Card Industry Rules.** (a) Merchant shall fully comply with and abide by the Rules including without limitation the following which Merchant acknowledges are strictly enforced by Visa, MasterCard and American Express: (i) any use of a mark by a Merchant in acceptance advertising, acceptance decals, or signs, must be in accordance with the Rules as may be in effect from time to time; (ii) the Merchant's use or display of any mark will terminate effective with the termination of the Merchant Agreement or upon notification by the Card Brand to discontinue such use or display; (iii) Merchant will adequately display the Visa, MasterCard or American Express service marks, and, if applicable, on promotional materials to inform the public which Cards are to be honored at Merchant's place of business; (iv) Merchant will refrain from establishing or implementing procedures that discourage, favor, or discriminate against the use of any particular Card; (v) Merchant will refrain from establishing minimum or maximum transaction amounts as a condition for accepting Cards; (vi) Merchant will refrain from imposing any surcharge or fee or any other special conditions for accepting a Card (except as permitted by the Rules); (vii) unless permitted under the Rules, Merchant will refrain from requiring a cardholder to provide any personal information, such as a home or business address or telephone number, or a driver's license or other proof of identification as a condition of honoring a Card, unless instructed by the authorization center (with exceptions for a mail/telephone order or delivery required transaction and zip code for a card-present key-entered transaction in order to obtain address verification); (viii) Merchant shall not require a cardholder to complete a postcard or similar device that includes the cardholder's account number, card expiration date, signature, or any other card account data in plain view when mailed; (ix) Merchant shall not resubmit any transaction that was previously charged back to the merchant, irrespective of cardholder approval; (x) Merchant shall not accept a Card to collect or refinance existing debt that has been deemed uncollectible or that represents collection of a dishonored check; (xi) Merchant shall not request or use a customer's card number of any purpose other than for payment for its goods or services; (xii) Merchant shall not disburse funds in the form of travelers cheques, if the sole purpose is to allow the cardholder to make a cash purchase of goods or services from the Merchant; (xiii) Merchant shall not disburse funds in the form of cash, unless permitted by the Rules; (xiv) Merchant will include any taxes and any handling or other fees that Merchant collects in the total transaction amount as opposed to collecting them separately in cash or processing them as additional transactions (it being understood that Merchant is responsible for the payment of all taxes applicable to Transactions); (xv) Merchant will refrain from accepting a Card for any unlawful Internet gambling transaction; (xvi) Merchant may not accept cardholder payments for previous Card charges incurred at the merchant location; (xvii) Merchant may not accept a card for the purchase of Scrip; (xviii) Merchant will comply with the Rules relating to cardholder information security issues, non-disclosure of cardholder information and Transaction documents, retention and storage of cardholder and Transaction information, and other security procedures adopted by the Card Brands or the Payment Card Industry Security Standards Council (the "PCI Council"), and (xix) all indebtedness arising from Transactions will be for bona fide sales of goods and services (or both) at Merchant's establishments and free of all liens, claims, and encumbrances other than ordinary sales taxes. (b) The PCI Council has implemented programs and standards to protect cardholder data. The PCI Council Data Security Standards ("DSS") as they change from time to time apply to Merchant. A copy of the complete PCI Council DSS can be obtained online at www.pcisecuritystandards.org. (c) Visa, MasterCard and American Express have implemented programs to protect cardholder data. The Visa Cardholder Information Security Program ("CISP") and MasterCard Site Data Protection Program ("SDP") apply to Merchant if Merchant processes or stores cardholder data as a result of Internet or mail/telephone acceptance of Visa or MasterCard card account information. A copy of the complete Visa CISP manual and a Self-Assessment Worksheet can be obtained online at www.visa.com/cisp. Along with the MasterCard SDP, these materials can also be obtained from EMS's customer service department. A copy of the American Express Data Security Requirements ("DSR") can be obtained online at www.americanexpress.com/dsr. (d) Merchant shall abide by and fully comply with the Rules, DSS, CISP, SDP, DSR, and any other applicable Card Brand programs and standards. To the extent they require Merchant to do so, but without limiting any other requirements imposed by the foregoing, Merchant agrees to: (i) install and maintain a working network firewall to protect data accessible via the Internet; (ii) keep security patches up-to-date; (iii) encrypt stored data; (iv) encrypt data sent across networks; (v) use and regularly update anti-virus software; (vi) restrict access to data by business "need to know"; (vii) assign a unique ID to each person with computer access to data; (viii) refrain from using vendor-supplied defaults for system passwords and other security parameters; (ix) track and monitor access to data by unique user ID; (x) maintain a policy that addresses information security for employees and contractors; (xi) restrict physical access to cardholder information; and (xii) regularly test security systems and processes. If Merchant does not comply with such programs, then, among other things, Visa, MasterCard, American Express and other Card Brands may impose restrictions and/or fines on Merchant, and/or prohibit Merchant from participating in Visa, MasterCard, American Express or other Card programs. Merchant may be required to submit to an audit to verify compliance with security procedures. (e) Merchant acknowledges that the sale or disclosure of cardholder account numbers, personal information, or other Transaction information to third parties is strictly prohibited by the Rules. Unless Merchant obtains consents from Bank and EMS, and each applicable Card Brand, issuing bank and cardholder, Merchant must not use, disclose, sell or disseminate any cardholder information obtained in connection with a Transaction (including without limitation, the names, addresses and Card account numbers of cardholders, copies of imprinted sales drafts and/or credit records, mailing lists, tapes or other media obtained in connection with a sales draft and/or credit record) except for purposes of authorizing, completing, and settling Transactions, and resolving any Chargebacks, retrieval requests, or similar issues involving Transactions, other than pursuant to a court or governmental agency request, subpoena or order. (f) Merchant shall use proper controls for discarding all records containing cardholder account numbers and Card imprints, and shall limit access to, and render unreadable, such records prior to their being discarded. Merchant may not retain or store magnetic stripe data after a Transaction has been authorized. If Merchant stores any electronically captured signature of a cardholder, Merchant may not reproduce such signature except upon the specific request of Bank or EMS. Merchant shall store all media containing cardholder names, cardholder account information, and other personal information, as well as Card imprints (such as sales drafts and credit records, auto rental agreements, and carbons) in an area limited to selected personnel. Merchant further warrants and agrees that in the event of its failure, including bankruptcy, insolvency, or other suspension of business operations, it will not sell, transfer or disclose any materials that contain cardholder account numbers, personal information, or Transaction information to third parties, and shall return the information to Bank or EMS and provide acceptable proof of destruction to Bank and EMS. Merchant agrees to keep all information it receives from its customers confidential and only use it in connection with the transactions processed under this Agreement. Merchant further agrees to refrain from disclosing or distributing, in any way, any such information to any third party for any purpose except with the prior express consent of the customer.

MERCHANT AGREEMENT 12/.. 

**4. Mail, Telephone, E-Commerce (Internet), Recurring and Pre-Authorized Transactions.** (a) Merchant understands that mail, telephone and e-commerce (Internet) Transactions have a substantially higher risk of Chargeback and cardholder dispute than Card "present" Transactions, as Merchant will not have an imprinted or magnetically "swiped" Transaction with the cardholder's signature on the sales draft. Bank and EMS discourage accepting mail or telephone orders and other Transactions in which the Card is not presented by the cardholder in person. Merchant may engage in mail, telephone and e-commerce Transactions only if it requested to do so in the Application and only for the approved percentage of Merchant's total monthly sales volume limit reflected for such Transactions on the Application, or as may otherwise have been approved in writing by Bank and EMS. If Merchant exceeds the approved percentages, payment for said Transactions may be withheld by Bank or EMS pending further review. Bank and EMS may make payment of these Transactions at their sole discretion. Bank and EMS reserve the right to establish a Reserve Account pursuant to Section 15 below to fund Chargebacks that may arise from said Transactions. Merchant acknowledges that its failure to disclose true and accurate percentages as part of the Application may result in the establishment by Bank and EMS of a Reserve Account, increased discount rate or fees and transaction fees, or the termination of this Agreement. Merchant hereby covenants that all of its Transactions will comply fully with all applicable provisions of Federal consumer protection and other laws including, without limitation, the Electronic Fund Transfer Act, 15 U.S.C. §1601, et seq., the Telemarketing and Consumer Fraud and Abuse Prevention Act, 15 U.S.C. § 6101, et seq., the Fair Debt Collection Practices Act, 15 U.S.C. § 1692a, et seq., the Federal Trade Commission Act, 15 U.S.C. §45(a), and any regulations adopted under or in accordance with any such laws. (b) In connection with all mail order Transactions, telephone order Transactions, periodic charges for recurring goods or services to be provided by Merchant ("Recurring Transactions"), preauthorized order Transactions, and e-commerce (Internet) Transactions, Merchant will take reasonable precautions to protect against Chargebacks, including, but not limited to the following: (i) delivering merchandise only to the cardholder's billing address where the issuing bank sends the cardholder's billing statement; (ii) using a delivery service that maintains shipping logs and requires signatures by a person receiving merchandise; (iii) using AVS and not processing sales unless all information matches the AVS; (iv) obtaining CVV2/CVC2 verification from the issuing bank; (v) obtaining the expiration date of the Card; and (vi) on the sales draft, clearly print the cardholder's account number, effective and expiration dates, date of Transaction, description of the goods and services, amount of the Transaction (including shipping, handling, insurance, etc.), cardholder's name, billing address and shipping address, Authorization code, and Merchant's name and address. (c) If Merchant processes Recurring Transactions and charges a cardholder's account periodically for recurring products or services (e.g., monthly insurance premiums, yearly subscriptions, annual membership fees, etc.), then in addition to other applicable procedures and the Rules, Merchant must do the following: (i) have the cardholder complete and deliver to Merchant a written request and consent for such products or services to be charged to cardholder's account (such request to specify, at a minimum, the transaction amounts, the frequency of recurring charges, and the duration of time for which the cardholder's consent or permission is granted, and must be provided promptly in response to a cardholder's request for a copy); (ii) if the Recurring Transaction is renewed, the cardholder must complete and deliver to Merchant a subsequent written request for the continuation of such products or services to be charged to the cardholder's account; (iii) Merchant may not complete a Recurring Transaction after receiving a cancellation notice from the cardholder or issuing bank or after a request for Authorization has been denied; (iv) Merchant must obtain an Authorization for each Transaction and type or print legibly on the signature line of the sales draft for Recurring Transactions the words "Recurring Transaction" (and "PO" for MasterCard Transaction) in lieu of the cardholder's signature, and must provide both an invoice number and the appropriate "Recurring Transaction" indicator with each Authorization request; (v) Merchant must perform an AVS inquiry for at least the first Transaction and then annually thereafter, if applicable (Merchant understands that penalties can be assessed by the Card Brands for failure to use the Recurring Payment Indicator); (vi) a Recurring Transaction or Pre-authorized order may not include partial payments for products or services purchased in a single Transaction; and (vii) no finance charge may be imposed in connection with a Recurring Transaction or Pre-authorized order. Pre-authorized Transactions may be submitted if Merchant advises the cardholder that it will be immediately billing his or her Card at the time of the transaction for prepayment of services or for full prepayment of custom-ordered merchandise to be manufactured to the cardholder's specifications. Merchant acknowledges that Transactions with an Authorization date more than thirty (30) days prior to shipping date or date of service are subject to an increased risk of Chargeback. (d) If Merchant is an e-commerce merchant and accepts orders via the Internet, in addition to other applicable procedures and the Rules, Merchant must do the following: (i) post its privacy and security policies on its websites, where such policies shall be clearly marked for consumers to see and review; (ii) prominently display the name of the Merchant (as both the identity of the Merchant and as the name that will appear on the Cardholder Statement) on its website along with all the following information: (A) complete description of the products or services offered, (B) returned merchandise and refund policy, (C) method for the cardholder to acknowledge his acceptance of the terms and conditions for returned merchandise or for the refund policy (this acknowledgment to comply with Card Brand guidelines for proper disclosure), (D) customer service contact, including e-mail address and/or telephone number, (E) Transaction currency (U.S. dollars, unless permission is otherwise received from Bank and EMS), (F) any applicable export or legal restrictions, (G) delivery policy, (H) consumer data privacy policy, and (I) a description of the Transaction security used on Merchant's website. Merchant acknowledges that the Electronic Commerce Indicator must be used to identify e-commerce Transactions in the Authorization request and clearing record. Penalties may be assessed for failure to use the correct Electronic Commerce Indicator.

**5. Fraudulent Sales, Factoring or Laundering.** Merchant shall never accept or deposit or enter into its POS terminal a Transaction not authorized by the Cardholder, or a Transaction made by any entity other than the Merchant. Should Merchant do so, Bank or EMS may immediately terminate this Agreement, have all funds placed into a Reserve Account pursuant to Section 15 above and be placed on the "Combined Terminated Merchant File" as required by the Rules. Said action may result in Merchant's being restricted from settling Transactions with any bank in the future. Merchant hereby releases Bank and EMS and agrees to hold Bank and EMS harmless from any claims, liabilities, losses or damages arising out of or resulting from Merchant's being placed on any such restrictive list.

**6. Authorization.** Approval by, or on behalf of, a cardholder's bank or the bank that issued the Card (hereinafter, "Authorization") is required on all Transactions. Merchant understands and acknowledges that an Authorization only confirms the availability of the cardholder's credit at the time of the Authorization; it does not warrant that the person presenting the Card is the rightful cardholder, nor is it an unconditional promise, guarantee or representation by Bank or EMS that a Transaction is or will be deemed valid and not subject to dispute, debit or Chargeback (as hereinafter defined). Merchant acknowledges and understands that its floor limit shall be Zero and that all Transactions must be authorized in advance through the authorization center. Merchant shall request Authorization for the exact amount of the Transaction on the date the Transaction takes place by swiping the Card through the terminal or keying the account number, expiration date, amount and address verification ("AVS") information into the terminal. If the electronic Card terminal is not functioning, Merchant may obtain Authorization by telephone, calling the voice authorization phone number provided by Bank or EMS. Merchant must provide the voice authorization center the Card account number, expiration date and the amount of the sale. In order to process any approved voice authorization, when the electronic credit card terminal is functioning, the transaction must be key entered utilizing the "force," "offline," or "post authorization" function. Merchant agrees that in connection with the acceptance of Cards (in addition to, and not in lieu of, other applicable procedures and Rules) it will comply with the following procedures and Rules: (a) it will not accept any Card that is not yet valid or has expired; (b) it will verify that the Card is not stolen, fraudulent or counterfeit; (c) it will use due diligence to verify that a Cardholder is authorized to use the Card presented; (d) at the point of sale, it will (i) carefully examine the signature on every Card presented and carefully compare the signature on the Card to the sales record, and (ii) check the date on which the Card becomes valid and the date on which the Card expires; (e) for Card present Transactions when the signature panel for a Visa Card is not signed Merchant shall in addition to requesting an Authorization (i) review positive identification bearing the Cardholder's signature to validate the cardholder's identity, (ii) indicate the positive identification, including any serial number and expiration date, on the Transaction receipt, and (iii) require the cardholder to sign the signature panel of the Card prior to completing the Transaction; (f) when the signature panel for a MasterCard Card is not signed and the Cardholder refuses to sign the Card, Merchant shall not accept it for a Transaction, but if the cardholder is willing to sign the Card in the presence of Merchant, Merchant shall request two pieces of valid and current identification; and (g) for Visa and MasterCard, a signature panel bearing the words "See I.D." or equivalent language shall be deemed to be blank, and in either case, if such identification is uncertain, or if Merchant otherwise questions or has suspicions regarding the validity of the Card, Merchant shall contact Bank's designated authorization center for instructions. If Authorization is denied, the Transaction shall not be completed and Merchant

Response of Electronic Merchant Systems to CFPB Civil Investigative Demand dated 5/10/2019 - received 6/10/2019

SL1 - 3

EMS CID response

Pl. Ex. 30
p. 510

R-013763-00000183