# IRVINE OFFICE AND STORAGE
## 8 Whatney, Suite 100
## Irvine, CA 92618
## (949) 334-8600 Phone – (949) 334-8699 Fax

## SERVICE LICENSE AGREEMENT

Date: July 17, 2018

**Licensee Information**

| | |
|---|---|
| Name: | Kaine Wen |
| Company Name: | SL Account Mgmt |
| Address: | 8 Whatney, Suite 100, Irvine, CA 92618 |
| Phone: | 424.333.8290 |
| Fax: | |
| Email Address: | |
| License to Use: | 8 Whatney, Workstation 8, Irvine, CA 92618 |
| Term: | 6 Months-As specified in Exhibit 1 |
| Start Date/ Termination Date: | Start Date: September 1, 2018 Termination Date: February 28, 2019 *Upon thirty (30) days written notice. |

1. **LICENSE AGREEMENT.** THIS LICENSE AGREEMENT (hereinafter "Agreement") IS NOT A LEASE NOR DOES IT CREATE ANY POSSESSORY INTEREST IN REAL PROPERTY. IT IS A CONTRACTUAL ARRANGEMENT THAT CREATES A REVOCABLE LICENSE FOR THE USE OF OFFICE SPACE. Irvine Office and Storage, LLC (hereinafter Irvine Office and Storage) retains legal possession and control of the Center and the office(s) and/ or cubicle(s) assigned to Licensee. Any square footage listed on the first page of this Agreement for Licensee's office(s) and/ or cubicle(s) are approximations and may include a portion of the common area of the Center.

2. **SERVICES LICENSED.** Pursuant to this Agreement, Licensee has a license to use the office(s) assigned to it as well as shared use of common areas in the Center including conference rooms, lobby and kitchen areas. Irvine Office and Storage shall provide office cleaning, maintenance services, electric, lighting, heating and air conditioning to the Center during normal business hours (Monday through Friday 8 AM to 5 PM and additionally on Saturday from 11 AM to 3 PM) as determined by Irvine Office and Storage. In addition to an office(s), Licensee will be provided with certain services on an as requested basis. The fee schedule for these services is available upon request. The fee schedule will be updated from time to time. Licensee will be obligated to pay for the recurring services listed on the first day of the next calendar month. Licensee agrees to pay all charges authorized by Licensee and its employees. Irvine Office and Storage and vendors designated by Irvine Office and Storage are the only service providers authorized to provide services in the Center. Licensee agrees that neither Licensee nor its employees will solicit other clients of the Center to provide any service provided by Irvine Office and Storage or its designated vendors, or otherwise.

3. **FEES.** Licensee hereby agrees to pay the Monthly License Fee and all other monthly recurring fees on the first business day of each month. Additional services, word processing, fax service, postage including but not limited to phone equipment rental, local and long distance phone charges and other business support functions will be billed on an as used basis. If Licensee disputes any portion of the charges on the bill, Licensee must still pay the full amount due on the first business day of the month and only after paying the full amount may Licensee dispute any amount thereunder. Charges must be disputed in writing within 30 days or Licensee waives the right to dispute such fees. If Licensee's payment is not received by the fifth day of the month, Licensee may be charged a service charge of 10% of the late payment or $50, whichever is greater. Licensee may also be charged interest at the highest rate permitted by applicable law. Licensee will be charged $25 for each returned check.

Upon execution of this Agreement, Licensee is required to pay the first month's Basic Monthly Fee and all Set Up Fees. No acceptance of a lesser amount than the amounts payable by Licensee under this Agreement shall be deemed a waiver of Irvine Office And Storage right to receive the full amount due, nor shall any endorsement or statement on any check or payment or any letter accompanying such check or payment be deemed an accord and satisfaction, and Irvine Office And Storage may accept such check or payment without prejudice to Irvine Office And Storage right to recover the full amount due.

4. **SECURITY DEPOSIT.** Licensee shall deposit with Irvine Office and Storage prior to commencing use of the office(s), the Security Deposit set forth on page 1 of this Agreement. If at any time during the term of this Agreement (or any renewal or extension term), Licensee's Monthly License Fee and/or other monthly recurring fees are increased, then the amount of the Security Deposit will be increased by said amount, which increase shall be payable to Irvine Office And Storage upon request. The Security Deposit will not be kept in a separate account from other funds of Irvine Office and Storage and no interest will be paid to Licensee. The Security Deposit may be applied to outstanding fees or charges at any time, at Irvine Office and Storage discretion. If Irvine Office And Storage applies any amount of the Security Deposit to Licensee's account, Licensee shall immediately upon written demand replenish the amount applied to Licensee's account. At the end of the term of this Agreement, if Licensee has paid all amounts due, Irvine Office and Storage shall refund the Security Deposit minus any necessary repairs, including but not limited to painting, carpet cleaning and/or replacement, wall patching, replacing missing or broken blinds, outlets or keys within 60 days.

5. **RULES AND REGULATIONS.** Licensee agrees to comply with all rules and regulations (hereinafter "Rules") of the Building, a copy of which are attached to this Agreement. Irvine Office and Storage has the right to reasonably amend the Rules and supplement the same with other reasonable Rules, and all such amendments or new Rules shall be binding upon Licensee after 15 days written notice. Nothing herein shall be construed to give Licensee or any other person or entity any claim, demand or cause of action against Irvine Office and Storage arising out of the violation of such Rules by any other licensee, occupant or visitor of the Center, or out of the enforcement or waiver of the Rules by Irvine Office and Storage in any particular instance. To the extent there is a conflict between the Rules and this Agreement, this Agreement will control.

Initials _KW_

**6. DAMAGES AND INSURANCE.** Licensee is respor·    or any damage Licensee, its agents, employees or assignees m·    'se to the Building or office(s) beyond normal wear and tear. Licensee is responsible for any damage caused to the building or its parking facilities or common areas. Irvine Office and    .age has the right to inspect the condition of the office(s) from time to time and make any necessary repairs. Licensee is required to maintain general commercial liability insurance at all times relevant herein. Such policy shall have minimum liability limits of $1,000,000 per incident and/or $2,000,000 aggregate. Licensee shall name Irvine Office and Storage and ESDI, Inc. as an additional insured under any and all such liability policies. Prior to commencing use of the office(s), Licensee shall provide Irvine Office and Storage proof of such insurance and shall provide written evidence of such continued coverage within 5 days of receiving such written request from Irvine Office and Storage.

**7. DEFAULT.** Any of the following shall constitute a default under this Agreement if: (I) the failure to pay any amount payable hereunder on the designated payment date; (ii) the failure to abide by, or to cause your employees, agents or invitees to abide by, the Rules of the Building (iii) the failure to otherwise comply with the terms of this Agreement. Any default under section (i) above shall terminate this Agreement if such payment is not made within 3 days of Licensee receiving written notice of such default. Licensee shall be entitled to 10 days upon receiving written notice of any default under sections (ii) or (iii) above unless that default cannot be corrected, in which event no notice period will apply. Irvine Office and Storage has the right to terminate this Agreement early: (1) If Licensee fails to correct a default within the applicable cure period or if the default cannot be corrected; (2) If Licensee is found to be in default under this Agreement three or more times in any calendar year, in which case no cure period shall apply; or (3) If Licensee uses the Center for any illegal operations or purposes. If this Agreement is terminated due to Licensee's default, Licensee will remain liable for the Monthly License Fee which would have been payable for the remainder of the term had this Agreement not been terminated. Licensee agrees that Irvine Office and Storage may cease to provide any and all services, including without limitation access to office(s), telephone and internet services, without notice or the need to initiate legal process should licensee be in default under this Agreement.

**8. ATTORNEYS' FEES AND COSTS.** Should either party institute legal action to enforce any provision of this Agreement, the prevailing party shall be entitled to recovery its reasonable attorneys' fees and costs associated with such litigation from the losing party.

**9. LIMITATION OF LIABILITY.** Licensee acknowledges that due to the imperfect nature of verbal, written and electronic communications, neither Irvine Office and Storage nor any of their respective officers, directors, employees, shareholders, members, partners, agents or representatives shall be responsible for damages, direct or consequential, that may result from the failure of Irvine Office and Storage to furnish any service, including but not limited to the service of conveying messages, communications (including but not limited to telephone and internet service) or any other utility or services. Licensee agrees that Irvine Office and Storage shall not be responsible for any damages, direct or consequential, resulting from any error or omission in providing, any failure to provide or any delay in providing, any computer or information technology services. Licensee's sole remedy and Irvine Office and Storage sole obligation for any failure to render any service, any error or omission, or any delay or interruption of any service, is limited to an adjustment to your bill in an amount equal to the charge for such service for the period during which the failure, delay or interruption continues. **WITH THE SOLE EXCEPTION OF THE REMEDY DESCRIBED ABOVE, LICENSEE EXPRESSLY AND SPECIFICALLY AGREE TO WAIVE, AND AGREE NOT TO MAKE, ANY CLAIM FOR DAMAGES, DIRECT OR CONSEQUENTIAL, INCLUDING, WITHOUT LIMITATION, LOST BUSINESS OR PROFITS (WHETHER IN AN ACTION IN CONTRACT, WARRANTY, TORT, INCLUDING, WITHOUT LIMITATION, NEGLIGENCE, OR STRICT LIABILITY, EVEN IF IRVINE OFFICE AND STORAGE HAS BEEN ADVISED OF THE POSSIBILITY OF SUCH LIABILITIES), ARISING FROM ANY FAILURE TO FURNISH ANY SERVICE, ANY ERROR OR OMISSION WITH RESPECT THERETO, OR ANY DELAY OR INTERRUPTION OF SERVICES. WITH REGARD TO ANY SERVICES PROVIDED BY IRVINE OFFICE AND STORAGE, IRVINE OFFICE AND STORAGE DISCLAIMS ANY WARRANTY OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE. ADDITIONALLY, IRVINE OFFICE AND STORAGE MAKES NO REPRESENTATIONS OR WARRANTIES REGARDING THE AVAILABILITY OF PARKING AT THE CENTER.**

---

Initial

**10. RENEWAL/ NOTICE REQUIREMENT.** If Licensee does not want to renew this Agreement, Licensee must provide Irvine Office and Storage written notice of Licensee's desire to terminate the Agreement. Such termination notice must be in writing and given to Irvine Office and Storage no later than 30 days prior to the termination of this Agreement. Notices will always be in affect from the first to the end of the following month, even if notice is given on any other date. Notwithstanding the foregoing, Irvine Office and Storage may terminate this Agreement after the expiration of the initial term for any reason upon 30 days written notice to Licensee. Should the number of offices and/ or cubicle exceed 3, then a 60 days written notice is required.

**11. TERMINATION OF AGREEMENT.** Landlord at any time during the term of this agreement shall have the right to give a thirty (30) day written notice to vacate the premises. Upon the termination of this Agreement for any reason, Licensee's license to enter the Building and/or the office(s) is immediately revoked. Licensee hereby agrees to remove its personal property and leave the office(s) as of the date of termination. Irvine Office and Storage is not responsible for any of Licensee's property left in the office(s) after termination. Any property remaining in the office(s) following the termination of this Agreement shall be conclusively deemed to have been abandoned. Irvine Office and Storage, at Irvine Office and Storage sole option, may sell such personal property or may remove and store same. If Irvine Office and Storage elects to remove and store such property, Licensee shall pay to Irvine Office and Storage upon demand all costs of such removal and storage. The delivery of keys to the office(s) to Irvine Office and Storage or any agent or employee of Irvine Office and Storage shall not constitute a surrender of the office(s) licensed by Licensee or effect a termination of this Agreement, whether or not the keys are thereafter retained by Irvine Office and Storage.

**12. RELOCATION.** Irvine Office and Storage reserves the right to relocate Licensee to another office in the Building for any reason. If Irvine Office and Storage exercises such right it will only be to an office of equal or larger square footage and shall be at Irvine Office and Storage expense.

**13. RETAINED EMPLOYMENT/ SOLICITING CLIENTS.** Licensee acknowledges that if Licensee hires anyone employed by Irvine Office and Storage, a five thousand dollar ($5,000.00) fee will be paid to Irvine Office and Storage's upon termination of such employee(s). Licensee agrees not to solicit or cause any other clients of the Center to move.

**14. NOTICES.** All notices must be in writing and may be given by registered or certified mail, postage prepaid, overnight delivery service or hand delivered with proof of delivery. Notices to Irvine Office and Storage, to be effective, must be sent to Irvine Office and Storage address of the Center listed on the first page of this Agreement. Notices to Licensee may be sent to Licensee at the office address listed on the first page of this Agreement. Thirty day notices will not be prorated, they will apply to the 1st of the month to the last day of the month.

**15. MEDIATION; GOVERNING LAW.** In the event of a dispute under this Agreement, Licensee agrees to submit the dispute to non-binding mediation with the parties to split the fee for mediation. Such mediation shall occur within 30 days of receipt of written demand for such mediation. Only after submitting the matter to good-faith mediation shall either party be entitled to resort to arbitration. Nothing in this paragraph will prohibit Irvine Office and Storage from seeking equitable relief, including without limitation, any action for removal of Licensee from the Center after the license has been terminated or revoked. This Agreement is governed by the laws of the State of California.

**16. MISCELLANEOUS.** Licensee may not assign this Agreement without Irvine Office and Storage prior written consent, which consent will not be unreasonably withheld. No assignment shall release Licensee from Licensee's liability under this Agreement. This Agreement is the entire agreement between Licensee and Irvine Office and Storage. It supersedes all prior agreements. This Agreement may not be modified, except in writing signed by both parties. If more than one party signs this Agreement as Licensee, the obligations of such parties shall be joint and several. The terms of this Agreement are confidential. Licensee may not disclose the terms of this Agreement to a third party without Irvine Office and Storage consent, unless in connection with legal proceedings or unless required to do so by law or an official authority. Disclosure of the terms of this Agreement to another Licensee or a third party without our written approval may result in the immediate termination of this Agreement.

Licensee acknowledges having received, reviewed and understood the above agreement and attached fee schedule and rules and regulation. Licensee agrees to comply with those terms and obligations as set out in them.

**IRVINE OFFICE AND STORAGE, LLC**

a California limited liability company

By: _____

Date: _____

**LICENSEE**

By: _____

Date: 7/18/18

Initials KW

## RULES AND REGULATIONS

1. Noise levels shall be conducive to a professional environment and shall not interfere with or annoy other Licensees. Licensee and their guests shall conduct themselves in a businesslike manner, and proper attire will be worn at all times. Licensee shall not use, keep or permit to be used or kept any foul or noxious gas or substance in Licensee's office(s) or other portions of the Center, or permit Licensee's office(s) or other portions of the Center to be occupied or used in a manner tending to create a nuisance or to disturb any other occupant of any part of the Center or the Building or interfere in any way with other occupants or those having business therein.

2. Canvassing, soliciting and peddling in the Center or Building are prohibited. Licensee shall not provide or offer any services to Irvine Office and Storage's customers, if such services are available from Irvine Office and Storage.

3. No advertisement, identifying signs, personal items or artwork or other notices shall be inscribed, painted or affixed on any part of the corridors, doors, public areas or cubicles. Additionally, Licensee shall not erect or install or otherwise utilize signs, light symbols, canopies, awnings, window coverings or other advertising or decorative matter on the windows, walls, and exterior doors, or areas otherwise visible from the exterior of the Center or Licensee's office(s).

4. Without Irvine Office and Storage's prior written permission, Licensee is not permitted to place "mass market", direct mail or advertising (i.e. newspaper, classified advertisements, billboards) using Irvine Office and Storage's assigned phone number or take any such action that would generate an excessive amount of incoming calls.

5. Neither Licensee nor Licensee's employees, agents, representatives or invitees shall participate in any type of harassment or other disruptive behavior, whether verbal or physical, in the Center or Building. Irvine Office and Storage and the Building Landlord reserves the right to exclude or expel from the Center and the Building any person who, in the judgment of Irvine Office and Storage or the Building Landlord is under the influence of liquor or drugs, or who shall in any manner do any act in violation of any of the rules and regulations of the Building.

6. Licensee shall not use or permit to be used in Licensee's office(s) or elsewhere in the Center anything that will increase the rate of insurance on the Building or any part thereof, nor permit anything that may be dangerous to life or limb. (Example: Skateboarding)

7. Licensee and its employees and invitees shall obey all traffic and parking regulations as posted throughout the Building by the Building Landlord. Irvine Office and Storage does not authorize any overnight parking, no commercial truck parking, no trailer parking, non-operating vehicles, no handicap parking without valid handicap placard, no non-passenger vehicle parking, or over-sized vehicle parking taking up more than one parking spot without an executed Parking & Service Agreement on file. Licensee is responsible for informing its employees, visitors, and Licensees of parking regulations. Neither Irvine Office and Storage nor the Building Landlord shall be held responsible for towing a visitor, Licensee or employee who does not comply or who is unaware of these regulations. No parking is allowed adjacent to Ste. 200 (North of the fire hydrant).

8. Licensee shall not conduct any activity within the Center or Building, which in the sole judgment of Irvine Office and Storage or the Building Landlord will create excessive traffic or is inappropriate to the executive office suite environment.

9. Licensee shall not use cooking equipment at the Center other than the microwave oven in the Center's kitchen.

10. Licensee shall not use the Center for manufacturing or storage of merchandise, except as such storage may be incidental to general office purposes.

11. Licensee shall not use or sell liquor, narcotics or tobacco in any form in the Center or Building.

12. Before leaving the office(s) unattended for an extended period of time, Licensee shall close and securely lock all doors and shut off all lights and other electrical apparatus. Any damage resulting from failure to do so shall be paid by Licensee.

13. Licensee shall not modify existing locks or install additional locks or bolts of any kind on any of the doors or windows of the Center.

14. Licensee shall not use or store or bring into the Center or Building oil, burning fluids (or candles), gasoline, kerosene, explosives or any other inflammable, combustible or hazardous materials.

15. Licensee shall not remove furniture, fixtures or decorative material from offices or common areas without the written consent of Irvine Office and Storage.

16. Licensee shall use chair mats in the office(s) and any damage from failure to use the same shall be the responsibility of the Licensee.

17. Licensee shall not bring any animals (except Seeing Eye dogs) into the Center or Building, nor shall any bicycles or vehicles be brought in or kept in or about the Center or the Building.

18. Licensee shall deposit all garbage in the receptacles Irvine Office and Storage and the Building Landlord provide for garbage and will not leave or accumulate any boxes, packaging material, or other trash of any kind on the premises or common areas. Licensee shall not throw anything out of doors, windows, or skylight or down the passageways of the Building.

19. No furniture, packages, supplies, equipment or merchandise will be received in the Building or carried up or down in the elevator except between such hours and in such elevators as shall be designated by the Building Landlord. Neither Irvine Office and Storage nor the Building Landlord shall be responsible for loss or damage to any of the items above referred to, and Licensee will be responsible for the cost of repairing any damage done to the Center or the Building by moving or maintaining any of such items.

20. Irvine Office and Storage shall not be responsible for any loss, damage or theft of any property belonging to Licensee or any employee, agent or invitee of Licensee.

21. Irvine Office and Storage and the Building Landlord shall have the right to limit the weight, size and to designate the locations of all safes, file rooms, libraries and other heavy property in Licensee's office(s). Maximum uniform floor loading allowed is 85 pounds per square foot.

22. The toilet rooms, urinals, wash bowls and other apparatus shall not be used for any purpose other than that for which they were constructed, and no foreign substance of any kind whatsoever shall be thrown therein. The expense of any breakage, stoppage, or damage resulting from the violation of this rule shall be borne by the Licensee who, or whose employees or invitees, have caused it.

23. Licensee shall not conduct business in the corridors or any other areas, except in its designated office(s), storage unit or conference rooms. Licensee shall not block or congregate in the common areas and those areas must be kept neat and attractive at all times. Licensee shall not prop open any corridor doors, exit doors or doors connecting corridors during or after business hours. All corridors, halls, elevators and stairways shall not be obstructed by Licensee or used for any purpose other than normal egress and ingress.

24. Licensee shall use only telecommunications systems and service (including local, long distance and international service), internet service and copy machine equipment and services as provided by Irvine Office and Storage at Irvine Office and Storage's standard rates.

25. Licensee shall have the right to mark, drive nails, screw, paint or affix anything to walls of Licensee's office(s).The expense of remedying any breakage or damage resulting from such actions shall be borne by Licensee..

26. Licensee shall not use the office(s) for lodging or sleeping or for any immoral or illegal purposes.

27. No auction, quitting business, bankruptcy, fire, or similar sale shall be conducted on the premises.

28. On Saturdays, Sundays and legal holidays, and after the normal business hours established by the Building Landlord, access to the Building or to the halls, corridors, elevators or stairways in the Building, or to the Center may be refused unless the person seeking access has a pass or is properly identified. Neither Irvine Office and Storage nor the Building Landlord shall in no case be liable for damages for any error with regard to the admission to or exclusion from the Building of any person. In case of invasion, mob, riot, public disturbance or other commotion, the Building Landlord reserves the right to prevent access to the Building during the continuance of tha same by closing the doors or otherwise, for the safety of the tenants and protection of the property in the Buildings.

29. Immediately following Licensee's use of the lobby, conference room, (or day office) and/or audio/visual equipment Licensee shall clean up and return the space(s) to the state and condition it was prior to Licensee's use. If not, Irvine Office and Storage may charge Licensee for any expenses required to restore the space and/or equipment to its original condition.

30. The electrical current shall be used for ordinary lighting purposes, to run desktop computers, and facsimile equipment only unless written permission to do otherwise shall first have been obtained from Irvine Office and Storage at an agreed charge to Licensee.

31. Internet service and any other service provided by IOS may only be used for lawful purposes. Transmission or storage of any information, data or material in violation of any US federal, state or local law is prohibited. Licensee is prohibited from using the IOS internet access to transmit threatening material or transmit or receive obscene material. Licensee must pay services fees for each device connected to the Internet Service. IOS has the right to suspend internet service at any time if Licensee's use violates this policy.

Irvine Office and Storage reserves the right to make such other Rules and Regulations that in its judgment may from time to time be needed for the safety, care and cleanliness of the Center. Irvine Office and Storage shall not be responsible for the failure of any other Licensee or their guests to comply with any of the Rules and Regulations, but shall use reasonable efforts to uniformly enforce all Rules and Regulations.

Initials___KW___

## FEE SCHEDULE

**Conference Room**

| | |
|---|---|
| Conference Room: (w/ White Board/ internet) | $35/ hour |
| HD Flat Screen TV: | $10/ hour |
| | |
| LCD Projector: | $50/ hour |
| Coffee Service: | $10/ pot |
| Bottle Water: | $1/ bottle |

**Secretarial Services**

| | |
|---|---|
| Word Processing: | $30 / hour |
| Mail/ Courier Service: | Cost plus 30% |
| Mail Overage Per Company: | $5/ company |
| Fax Transmission: | $50/ month |
| Incoming/ Outgoing Faxes and scanning: | $1/ page |
| Photocopying at copy machine | $0.15/ copy- B/W, $.99/copy - color |
| (Made by Center Manager) | $0.20/ copy- B/W, $0.99/copy - color |

**Telecom Services**

| | |
|---|---|
| Additional Voice Mail Box: | $25/ month- $50 set up |
| Voice Mail Tree: | $25/ month- $50 set up |
| Call Forwarding: | $50/ month- first phone number |
| | $25/ month- additional phone number |
| 411 Directory: | $10/ month/ listing  $30 set up |

**Tech Services**

| | |
|---|---|
| Hardware Installation: | $85/ hour |
| Computer Networking: | $150/ hour |
| Custom Programming: | $150/ hour |
| Computer Troubleshooting: | $150/ hour |
| Static IP Address: | $100/ month/ user |
| Domain/ URL: | $25/ year |
| Website Development: | $150/ hour |
| Website Hosting | |
| Basic: | $25/ month |
| Enhanced: | $45/ month |
| Shared: | $85/ month |
| Email Address (Exchange) | |
| Basic (500 MB)* | $17/ month -$50 set up |
| Enhanced (1,000 MB)* | $22/ month- $50 set up |
| Premium (3,000 MB)* | $55/ month- $50 set up |
| Blackberry Enterprise Server: | $20/ month |
| Email Archiving (36 mo) | $30/ month |
| Spam Filter | $6/ month |

**Other Services & Fees**

| | |
|---|---|
| After hours Air Conditioning upon request: | $40/hour |
| Change Business Name | $85 Processing Fee |
| Transfer from one space to another within the facility: | $80 Processing Fee |
| Delivery Acceptance Fee in Warehouse | $5 per 15 minutes |
| Dumpster Fee | $25/Mo |
| Cleaning Fee | $25 |
| Lock Out Assistance Fee During Office Hours | $5 |

Initials___Kw

# IRVINE OFFICE AND STORAGE
## 8 Whatney, Suite 100
## Irvine, CA 92618
## (949) 334-8600 Phone - (949) 334-8699 Fax

**Exhibit 1**

| | |
|---|---|
| **Date:** | July 17, 2018 |
| **Name:** | Kaine Wen |
| **Company:** | SL Account Mgmt |
| **Telephone #:** | 424.333.8290 |
| **Fax #:** | |
| **Email:** | kaine@slaccountmgmt.com |
| **Office #:** | Workstation 8 |
| **Term:** | 6 Months |
| **Start Date:** | September 1, 2018 |
| **Termination Date:** | February 28, 2019 *Upon 30 days written notice required. |
| | *Renewal |

| MONTHLY INVESTMENT | QUANTITY | AMOUNT |
|---|---|---|
| Monthly License Fee: | 1 | $200.00 |
| IT System Package (1 Phone, 1 Shared Internet connection, 1 Fax Line) ($225/Package)* | 0 | $0.00 |
| Telephone Equipment, Lines and Voice Mail ($125/ phone set) * | 0 | $0.00 |
| Dedicated Fax Line ($50 each)* | 0 | $0.00 |
| Additional Mail Service ($50 each)* | 1 | $50.00 |
| Shared Internet Connection ($75 each) | 0 | $0.00 |
| Additional Voice Mail Box or Voice Mail Tree ($25 each) | 0 | $0.00 |
| Static IP Address ($100 each) | 0 | $0.00 |
| Call Forwarding to Outside Number ($50 first number, $25 each additional number) | 0 | $0.00 |
| Beverage/Lounge Fee ($25 per office) | 1 | $25.00 |
| **TOTAL MONTHLY INVESTMENT:** | | **$275.00** |

| ONE TIME INVESTMENT | | |
|---|---|---|
| Telephone Installation and Programming ($300/ each) | 0 | $0.00 |
| Dedicated Fax Installation ($100/ each) | 0 | $0.00 |
| Shared Internet Connection ($150 per port) | 0 | $0.00 |
| Additional Voice Mail or Voice Mail Tree Programming ($50 each) | 0 | $0.00 |
| Set-Up/Transfer Fee ($80 per office/workstation/storage) | 0 | $0.00 |
| Additional Key ($15 per key) | 0 | $0.00 |
| Credit Report ($25 for individual/ $100 for corporation) | 0 | $0.00 |
| **TOTAL ONE TIME INVESTMENT:** | | **$0.00** |

| REFUNDABLE SECURITY DEPOSITS | | |
|---|---|---|
| **REFUNDABLE** Access Card Deposit ($40 per card) | 2 | $80.00 |
| **REFUNDABLE** Telephone Deposit ($100 per phone) | 0 | $0.00 |
| **REFUNDABLE** Security Deposit (Equal to last month's charges) | 2 | $510.00 |
| **TOTAL REFUNDABLE SECURITY DEPOSITS:** | | **$590.00** |
| | Less security deposit on file | -$590.00 |
| | | $0.00 |

| | |
|---|---|
| **TOTAL MOVE-IN:** | **$275.00** |

* Phone/Fax usage additional

| *Must receive signed renewal by August 1, 2018 to avoid market rate rent/services increase. |

**AGREED AND ACCEPTED:**

IOS:_____

Date:_____7/31/18

Licensee: _____

Date: 7/18/18

IOSD1

---

Evers Decl. - Attachment C



**EXHIBIT**

**D**

# Universal Virtual Agreement

**CENTER INFORMATION**
Universal Virtual Office
2522 Chambers Road, Suite 100
Tustin, California 92780
Phone: (714) 573-4000 Fax: (714) 573-4001

UNIVERSAL VIRTUAL OFFICE


| | | | | |
|---|---|---|---|---|
| Date of Agreement: | 16-May-18 | Initial Term: | Month. to.Month | |
| Client: | Prime Consulting LLC | Start Date: | 5/16/2018 | |
| Address: | 2522 Chambers Rd. | Initial Term Expiration Date: | N/A | |
| City: | Tustin | Contact: | Le Ho | |
| State: | CA | Telephone: | 909-525-8857 | |
| E-Mail: | calvin.ho@slaccountmgmt.com | Fax: | N/A | |
| Total # of Offices: | UVO | Prorated for: | N/A | |
| No. of People: | N/A | UVOVIP #: | | |

| MONTHLY RECURRING CHARGES | | First Month | Due Monthly |
|---|---|---|---|
| **IRES Basic Mailbox Package:** Mail Handling, Free Coffee, Free Parking, Free Wi-Fi, Discounted Meeting Room/Office Pricing | MTM | $59.00 | $59.00 |
| **IRES Virtual Office Bronze:** Prestigious business address, proffesional personalized phone answering, call forwarding **(PLUS BASIC)** | MTM | $150.00 | $150.00 |
| **IRES Virtual Office Silver:** Prestigious business address, (4) hours access to meeting room/office **(PLUS BASIC)** | MTM | $175.00 | $175.00 |
| **IRES Virtual Office Gold:** Prestigious business address, professional personalized phone answering, (8) hours access to meeting room/office, free local and long distance calls **(PLUS BASIC)** | MTM | $225.00 | $225.00 |
| **IRES Virtual Office Platinum:** Prestigious business address, proffesional personalized phone answering, dedicated phone number, call forwarding, personalized 24 hour voice mail, free local and long distance, (16) hours access to meeting room/office **(PLUS BASIC)** | MTM | $325.00 | $325.00 |
| | SUBTOTAL | | $0.00 |
| | FORWARDING FEE | | $0.00 |
| | TOTAL MONEY-IN CHARGES | | $59.00 |

**Miscellaneous:**

North Hill Products Group

| CLIENT: | Universal Virtual Office |
|---|---|
| x _signature_  05/16/18 | _signature_  5-16-18 |
| SIGNATURE          DATE | BY: Kurt Soderling   DATE |
| | MANAGER |

DAVID ~

Pl. Ex. 63
p. 1763

# Irvine Ranch Executive Suites
2522 Chambers Rd. Tustin, Ca 92780

## CREDIT CARD AUTHORIZATION FORM
American, Express, MasterCard, Visa

Card Number: ███████████

Expiration Date: ████████

CODE ON FRONT/BACK OF CARD ████

Card Holders Name: Le Trong Hieu Ho

Billing Address ████████████████

City El Monte, CA

State CA          Zip ████

Card Holder Phone Number: ████████

Charge Authorized Amount: $ 59.⁰⁰

Card Holder Signature: W_____

Card Holder Name (Print) LE TRONG HIEU HO

I, LE HO, hereby authorize Irvine Ranch Executive Suites, to make charges in the amount of $ 59.⁰⁰ to my Credit Card in consideration for services requested by me.



**EXHIBIT**

**E**



**AIRCRE**

## STANDARD SUBLEASE
## MULTI-TENANT

1.   **Basic Provisions ("Basic Provisions").**

    1.1   **Parties:** This Sublease ("Sublease"), dated for reference purposes only _August 8, 2018_ , is made by and between _Guaranteed_ _Rate, Inc., a Delaware corporation_ ("Sublessor") and _True Count Staffing, Inc._ ("Sublessee"), (collectively the "Parties", or individually a "Party").

    1.2(a)   **Premises:** That certain portion of the Project (as defined below), commonly known as (street address, unit/suite, city, state) _173_ _Technology Drive, Suite-201, Irvine, CA 92618-2489_ ("Premises"). The Premises are located in the County of _Orange_ and consist of approximately _16,640_ square feet. In addition to Sublessee's rights to use and occupy the Premises as hereinafter specified, Sublessee shall have nonexclusive rights to the Common Areas (as defined below) as hereinafter specified, but shall not have any rights to the roof, the exterior walls, or the utility raceways of the building containing the Premises ("Building") or to any other buildings in the Project. The Premises, the Building, the Common Areas, the land upon which they are located, along with all other buildings and improvements thereon, are herein collectively referred to as the "Project." Per CAD plan, Suite 201 is 16,769 usf. We have inserted 16,640 rsf for Suite 201 because the Suite 202 Lease is estimated at 15,000 rsf and the entire 2nd floor is 31,640 rsf per the Master Lease.

    1.2(b)   **Parking:** _68_ unreserved and _0_ reserved vehicle parking spaces.

    1.3   **Term:** _1_ years and _4_ months commencing _November 1, 2018_ ("Commencement Date") and ending _February 29, 2020_ ("Expiration Date").

    1.4   **Early Possession:** If the Premises are available Sublessee may have non-exclusive possession of the Premises commencing _five business_ _days prior to the Commencement Date_ ("Early Possession Date"). In addition to the early access period of five (5) business days prior to the Commencement Date, Sublessee shall be entitled to reasonable prior access for the sole purpose(s) of the installation of its IT/Telco services and equipment; Sublessee's prior access during any such installation shall be supervised by Sublessor (or an agent of Sublessor) and shall in no way cause a nuisance or disturbance to Sublessor's business operations during any such prior access by Sublessee.

    1.5   **Base Rent:** _$19,968.00_ per month ("Base Rent"), payable on the _first (1)_ day of each month commencing _November 1, 2018_ .

☐ If this box is checked, there are provisions in this Sublease for the Base Rent to be adjusted.

    1.6   **Sublessee's Share of Operating Expenses:** _One Hundred Percent_ percent ( _100_ %) ("Sublessee's Share"). Sublessee is responsible only for its share of Operating Expenses as they relate to the Sublease Premises, and not to Sublessor's operating expenses in regards to other leased space in the Building or Project. In the event that that size of the Premises and/or the Project are modified during the term of this Lease, Lessor shall recalculate Lessee's Share to reflect such modification.

    1.7   **Base Rent and Other Monies Paid Upon Execution:**

        (a)   **Base Rent:** _$19,968.00_ for the period _first month's Base Rent_ .

        (b)   **Security Deposit:** _$59,904.00_ ("Security Deposit").

        (c)   **Other:** _____ for _____ .

        (d)   **Total Due Upon Execution of this Lease:** _$79,872.00_ .

    1.8   **Agreed Use:** The Premises shall be used and occupied only for _office use_ and for no other purposes.

    1.9   **Real Estate Brokers:**

        (a)   Representation: The following real estate brokers ( the "Brokers") and brokerage relationships exist in this transaction (check applicable boxes):

☑ _Cushman & Wakefield of California, Inc._ represents Sublessor exclusively ("Sublessor's Broker");

☑ _Hughes Marino, Inc._ represents Sublessee exclusively ("Sublessee's Broker"); or

☐ _____ represents both Sublessor and Sublessee ("Dual Agency").

        (b)   ~~Payment to Brokers: Upon execution and delivery of this Sublease by both Parties, Sublessor shall pay to the Brokers the brokerage fee agreed to in a separate written agreement (or if there is no such agreement, the sum of _____ or _____ % of the total Base Rent) for the brokerage services rendered by the Brokers.~~

Sublessor shall pay a Brokers commission per the terms of a separate agreement between Sublessor and Sublessor's Broker; Sublessor's Broker shall be responsible for the payment of a cooperating Brokers approximate commission to Sublessee's Broker equal to Fourteen Thousand Nine Hundred Seventy-Six and 00/100 Dollars ($14,976.00), which is equal to Five Percent (5%) of Sublessee's Total Base Rent Obligation; Commission to Sublessee's Broker shall be paid in two equal installments, each equal to Fifty Percent (50%) of the total Brokers commission due to Sublessee's Broker.

    1.10   **Guarantor.** The obligations of the Sublessee under this Sublease shall be guaranteed under the terms and conditions of Exhibit A - Guaranty of Sublease, attached hereto, by _Consumer Advocacy Center, Inc_ ("Guarantor").

    1.11   **Attachments.** Attached hereto are the following, all of which constitute a part of this Sublease:

☐ ~~an Addendum consisting of Paragraphs _____ through _____;~~

☐ ~~a plot plan depicting the Premises and/or Project;~~

☐ ~~a current set of the Rules and Regulations;~~

☐ ~~a Work Letter;~~

☐ ~~a copy of the Master Lease and any and all amendments to such lease (collectively the "Master Lease");~~

_____
**INITIALS**

_KW_
**INITIALS**

© 2017 AIR CRE. All Rights Reserved.

SBMT-8.01, Revised 07-28-2017

Evers Decl. - Attachment E

Pl. Ex. 63

p. 1765

☐ other (specify): - __FF&E,    Guaranty of Sublease__ .

**2    Premises.**

2.1    **Letting.** Sublessor hereby subleases to Sublessee, and Sublessee hereby subleases from Sublessor, the Premises, for the term, at the rental, and upon all of the terms, covenants and conditions set forth in this Sublease. While the approximate square footage of the Premises may have been used in the marketing of the Premises for purposes of comparison, the Base Rent stated herein is NOT tied to square footage and is not subject to adjustment should the actual size be determined to be different. Note: Sublessee is advised to verify the actual size prior to executing this Sublease.

2.2    **Condition.** Sublessor shall deliver the Premises to Sublessee broom clean and free of debris on the Commencement Date or the Early Possession Date, whichever first occurs ("Start Date"), and warrants that the existing electrical, plumbing, fire sprinkler, lighting, heating, ventilating and air conditioning systems ("HVAC"), and any items which the Sublessor is obligated to construct pursuant to the Work Letter attached hereto, if any, other than those constructed by Sublessee, shall be in good operating condition on said date. If a non-compliance with such warranty exists as of the Start Date, or if one of such systems or elements should malfunction or fail within the appropriate warranty period, Sublessor shall, as Sublessor's sole obligation with respect to such matter, except as otherwise provided in this Sublease, promptly after receipt of written notice from Sublessee setting forth with specificity the nature and extent of such non-compliance, malfunction or failure, rectify same at Sublessor's expense. The warranty periods shall be as follows: (i) 6 months as to the HVAC systems, and (ii) 30 days as to the remaining systems and other elements. If Sublessee does not give Sublessor the required notice within the appropriate warranty period, correction of any such non-compliance, malfunction or failure shall be the obligation of Sublessee at Sublessee's sole cost and expense.

2.3    **Compliance.** Sublessor warrants that any improvements, alterations or utility installations made or installed by or on behalf of Sublessor to or on the Premises comply with all applicable covenants or restrictions of record and applicable building codes, regulations and ordinances ("**Applicable Requirements**") in effect on the date that they were made or installed. Sublessor makes no warranty as to the use to which Sublessee will put the Premises or to modifications which may be required by the Americans with Disabilities Act or any similar laws as a result of Sublessee's use. NOTE: Sublessee is responsible for determining whether or not the zoning and other Applicable Requirements are appropriate for Sublessee's intended use, and acknowledges that past uses of the Premises may no longer be allowed. If the Premises do not comply with said warranty, Sublessor shall, except as otherwise provided, promptly after receipt of written notice from Sublessee setting forth with specificity the nature and extent of such non-compliance, rectify the same.

2.4    **Acknowledgements.** Sublessee acknowledges that: (a) it has been given an opportunity to inspect and measure the Premises, (b) it has been advised by Sublessor and/or Brokers to satisfy itself with respect to the condition of the Premises (including but not limited to the electrical, HVAC and fire sprinkler systems, security, environmental aspects, and compliance with Applicable Requirements and the Americans with Disabilities Act), and their suitability for Sublessee's intended use, (c) Sublessee has made such investigation as it deems necessary with reference to such matters and assumes all responsibility therefor as the same relate to its occupancy of the Premises, (d) it is not relying on any representation as to the size of the Premises made by Brokers or Sublessor, (e) the square footage of the Premises was not material to Sublessee's decision to sublease the Premises and pay the Rent stated herein, and (f) neither Sublessor, Sublessor's agents, nor Brokers have made any oral or written representations or warranties with respect to said matters other than as set forth in this Sublease. In addition, Sublessor acknowledges that: (i) Brokers have made no representations, promises or warranties concerning Sublessee's ability to honor the Sublease or suitability to occupy the Premises, and (ii) it is Sublessor's sole responsibility to investigate the financial capability and/or suitability of all proposed tenants.

2.5    **Americans with Disabilities Act.** In the event that as a result of Sublessee's use, or intended use, of the Premises the Americans with Disabilities Act or any similar law requires modifications or the construction or installation of improvements in or to the Premises, Building, Project and/or Common Areas, the Parties agree that such modifications, construction or improvements shall be made at: ☐ Sublessor's expense ☐ Sublessee's expense.

2.6    **Vehicle Parking.** Sublessee shall be entitled to use the number of Unreserved Parking Spaces and Reserved Parking Spaces specified in Paragraph 1.2(b) on those portions of the Common Areas designated from time to time for parking. Sublessee shall not use more parking spaces than said number. Said parking spaces shall be used for parking by vehicles no larger than full-size passenger automobiles or pickup trucks, herein called "**Permitted Size Vehicles**." Sublessor may regulate the loading and unloading of vehicles by adopting Rules and Regulations as provided in Paragraph 2.9. No vehicles other than Permitted Size Vehicles may be parked in the Common Area without the prior written permission of Sublessor.

(a)    Sublessee shall not permit or allow any vehicles that belong to or are controlled by Sublessee or Sublessee's employees, suppliers, shippers, customers, contractors or invitees to be loaded, unloaded, or parked in areas other than those designated by Sublessor for such activities.

(b)    Sublessee shall not service or store any vehicles in the Common Areas.

(c)    If Sublessee permits or allows any of the prohibited activities described in this Paragraph 2.6, then Sublessor shall have the right, without notice, in addition to such other rights and remedies that it may have, to remove or tow away the vehicle involved and charge the cost to Sublessee, which cost shall be immediately payable upon demand by Sublessor.

2.7    **Common Areas - Definition.** The term "Common Areas" is defined as all areas and facilities outside the Premises and within the exterior boundary line of the Project and interior utility raceways and installations within the Premises that are provided and designated by the Sublessor from time to time for the general nonexclusive use of Sublessor, Sublessee and other tenants of the Project and their respective employees, suppliers, shippers, customers, contractors and invitees, including parking areas, loading and unloading areas, trash areas, roofs, roadways, walkways, driveways and landscaped areas.

2.8    **Common Areas - Sublessee's Rights.** Sublessor grants to Sublessee, for the benefit of Sublessee and its employees, suppliers, shippers, contractors, customers and invitees, during the term of this Sublease, the nonexclusive right to use, in common with others entitled to such use, the Common Areas as they exist from time to time, subject to any rights, powers, and privileges reserved by Sublessor under the terms hereof or under the terms of any rules and regulations or restrictions governing the use of the Project. Under no circumstances shall the right herein granted to use the Common Areas be deemed to include the right to store any property, temporarily or permanently, in the Common Areas. Any such storage shall be permitted only by the prior written consent of Sublessor or Sublessor's designated agent, which consent may be revoked at any time. In the event that any unauthorized storage shall occur then Sublessor shall have the right, without notice, in addition to such other rights and remedies that it may have, to remove the property and charge the cost to Sublessee, which cost shall be immediately payable upon demand by Sublessor.

2.9    **Common Areas - Rules and Regulations.** Sublessor or such other person(s) as Sublessor may appoint shall have the exclusive control and management of the Common Areas and shall have the right, from time to time, to establish, modify, amend and enforce reasonable rules and regulations ("Rules and Regulations") for the management, safety, care, and cleanliness of the grounds, the parking and unloading of vehicles and the preservation of good order, as well as for the convenience of other occupants or tenants of the Building and the Project and their invitees. Sublessee agrees to abide by and conform to all such Rules and Regulations, and to cause its employees, suppliers, shippers, customers, contractors and invitees to so abide and conform. Sublessor shall not be responsible to Sublessee for the noncompliance with said Rules and Regulations by other tenants of the Project.

2.10    **Common Areas - Changes.** Sublessor shall have the right, in Sublessor's sole discretion, from time to time:

(a)    To make changes to the Common Areas, including, without limitation, changes in the location, size, shape and number of driveways, entrances, parking spaces, parking areas, loading and unloading areas, ingress, egress, direction of traffic, landscaped areas, walkways and utility raceways;

(b)    To close temporarily any of the Common Areas for maintenance purposes so long as reasonable access to the Premises remains available;

_kw_

---

**INITIALS**

Page 2 of 8
Last Edited: 9/4/2018 10:07 AM

**INITIALS**

© 2017 AIR CRE. All Rights Reserved.                                                                SBMT-8.01, Revised 07-28-2017