(c) To add additional buildings and improvements to the Common Areas;
(d) To use the Common Areas while engaged in making additional improvements, repairs or alterations to the Project, or any portion thereof; and
(e) To do and perform such other acts and make such other changes in, to or with respect to the Common Areas and Project as Sublessor may, in the exercise of sound business judgment, deem to be appropriate.

3. Possession.

3.1 Early Possession. Any provision herein granting Sublessee Early Possession of the Premises is subject to and conditioned upon the Premises being available for such possession prior to the Commencement Date. Any grant of Early Possession only conveys a non-exclusive right to occupy the Premises. If Sublessee totally or partially occupies the Premises prior to the Commencement Date, the obligation to pay Base Rent shall be abated for the period of such Early Possession. All other terms of this Sublease (including but not limited to the obligations to pay Sublessee's Share of Common Area Operating Expenses, Real Property Taxes and Insurance premiums and to maintain the Premises) shall, however, be in effect during such period. Any such Early Possession shall not affect the Expiration Date.

3.2 Delay in Commencement. ~~Sublessor agrees to use its best commercially reasonable efforts to deliver possession of the Premises by the Commencement Date. If, despite said efforts, Sublessor is unable to deliver possession as agreed, the rights and obligations of Sublessor and Sublessee shall be as set forth in Paragraph 3.3 of the Master Lease (as modified by Paragraph 5.3 of this Sublease).~~

Sublessor agrees to use commercially reasonable efforts to deliver possession of the Premises to Sublessee by the Commencement Date. Excluding any Delay in Commencement caused by the acts or omissions of Sublessee, if a Delay in Commencement is the direct result of Sublessor being unable to deliver the Premises by the Commencement Date, Sublessor shall not be subject to any liability therefor, nor shall such failure affect the validity of this Sublease or change the Expiration Date. Sublessee shall not, however, be obligated to pay Rent or perform its other obligations until Sublessor delivers the Premises; and any Delay in Commencement shall not alter Sublessee's Base Rent Abatement during the Second (2nd) Month of the Sublease Term. BY November 30, 2018 SUBLESSEE SHALL HAVE THE OPTION TO TERMINATE THIS SUBLEASE. If as a direct result of Sublessor's Delay in Commencement, the Term does not commence by November 30, 2018 then Sublessee shall have the option to terminate this Sublease without further obligation to Sublessor. Notwithstanding anything to the contrary contained in this Sublease, if Sublessor is unable to deliver the Premises to Sublessee by November 1, 2018, then Sublessor shall abate one (1) day of Base Rent for every one (1) day of delay that Sublessor fails to deliver the Premises to Sublessee beyond November 1, 2018.

3.3 Sublessee Compliance. Sublessor shall not be required to tender possession of the Premises to Sublessee until Sublessee complies with its obligation to provide evidence of Insurance. Pending delivery of such evidence, Sublessee shall be required to perform all of its obligations under this Sublease from and after the Start Date, including the payment of Rent, notwithstanding Sublessor's election to withhold possession pending receipt of such evidence of Insurance. Further, if Sublessee is required to perform any other conditions prior to or concurrent with the Start Date, the Start Date shall occur but Sublessor may elect to withhold possession until such conditions are satisfied.

4. Rent and Other Charges.

4.1 Rent Defined. All monetary obligations of Sublessee to Sublessor under the terms of this Sublease (except for the Security Deposit) are deemed to be rent ("Rent"). Rent shall be payable in lawful money of the United States to Sublessor at the address stated herein or to such other persons or at such other places as Sublessor may designate in writing.

4.2 Common Area Operating Expenses. Sublessee shall pay to Sublessor during the term hereof, in addition to the Base Rent, Sublessee's Share of all Common Area Operating Expenses, as hereinafter defined, during each calendar year of the term of this Sublease, in accordance with the following provisions:

(a) "Common Area Operating Expenses" are defined, for purposes of this Sublease, as those costs incurred by Sublessor relating to the operation of the Project, which are included in the following list:

(i) Costs related to the operation, repair and maintenance, in neat, clean, good order and condition, but not the replacement of the following:

(aa) The Common Areas and Common Area Improvements, including parking areas, loading and unloading areas, trash areas, roadways, parkways, walkways, driveways, landscaped areas, bumpers, irrigation systems, Common Area lighting facilities, fences and gates, elevators, roofs, and roof drainage systems.

(bb) Exterior signs and any tenant directories.
(cc) Any fire sprinkler systems.

(ii) The cost of water, gas, electricity and telephone to service the Common Areas and any utilities not separately metered.
(iii) The cost of trash disposal, pest control services, property management, security services, and the costs of any environmental inspections.
(iv) Reserves set aside for maintenance and repair of Common Areas.
(v) Real Property Taxes.
(vi) Insurance premiums.
(vii) Any deductible portion of an insured loss concerning the Building or the Common Areas.

(b) The inclusion of the improvements, facilities and services set forth in Subparagraph 4.2(a) shall not be deemed to impose an obligation upon Sublessor to either have said improvements or facilities or to provide those services unless Sublessor already provides the services, or Sublessor has agreed elsewhere in this Sublease to provide the same or some of them.

(c) Sublessee's Share of Common Area Operating Expenses is payable monthly on the same day as the Base Rent is due hereunder. The amount of such payments shall be based on Sublessor's estimate of the Common Area Operating Expenses. Within 60 days after written request (but not more than once each year) Sublessor shall deliver to Sublessee a reasonably detailed statement showing Sublessee's Share of the actual Common Area Operating Expenses incurred during the preceding year. If Sublessee's payments under this Paragraph 4.2(c) during the preceding year exceed Sublessee's Share as indicated on such statement, Sublessor shall credit the amount of such overpayment against Sublessee's Share of Common Area Operating Expenses next becoming due. If Sublessee's payments under this Paragraph 4.2(c) during the preceding year were less than Sublessee's Share as indicated on such statement, Sublessee shall pay to Sublessor the amount of the deficiency within 10 days after delivery by Sublessor to Sublessee of the statement.

4.3 Utilities. Sublessee shall pay for all water, gas, heat, light, power, telephone, trash disposal and other utilities and services supplied to the Premises, together with any taxes thereon. Notwithstanding the provisions of Paragraph 4.2, if at any time in Sublessor's sole judgment, Sublessor determines that Sublessee is using a disproportionate amount of water, electricity or other commonly metered utilities, or that Sublessee is generating such a large volume of trash as to require an increase in the size of the dumpster and/or an increase in the number of times per month that the dumpster is emptied, then Sublessor may increase Sublessee's Base Rent by an amount equal to such increased costs.

5. Security Deposit. The rights and obligations of Sublessor and Sublessee as to said Security Deposit shall be as set forth in Paragraph 5 of the Master Lease (as modified by Paragraph 7.3 of this Sublease).

6. Master Lease.

INITIALS

Page 3 of 8
Last Edited: 9/4/2018 10:07 AM

*KW*
INITIALS

© 2017 AIR CRE. All Rights Reserved.

SBMT-8.01, Revised 07-28-2017

Evers Decl. - Attachment E

Pl. Ex. 63
p. 1767

6.1 Sublessor is the lessee of the Premises by virtue of the "Master Lease", dated May 20, 2009, as assigned on March 27, 2012 and amended on August 24, 2010 and September 1, 2014, wherein  The Irvine Company, LLC  is the lessor, hereinafter the "Master Lessor" and the Master Sublease, dated August 7, 2015, wherein Discover Home Loans, Inc. is the sublessor, hereinafter the "Master Tenant".

6.2 This Sublease is and shall be at all times subject and subordinate to the Master Lease and Master Sublease.

6.3 ~~The terms, conditions and respective obligations of Sublessor and Sublessee to each other under this Sublease shall be the terms and conditions of the Master Lease except for those provisions of the Master Lease which are directly contradicted by this Sublease in which event the terms of this Sublease document shall control over the Master Lease. Therefore, for the purposes of this Sublease, wherever in the Master Lease the word "Lessor" is used it shall be deemed to mean the Sublessor herein and wherever in the Master Lease the word "Lessee" is used it shall be deemed to mean the Sublessee herein.~~
The terms, conditions and respective obligations of Sublessor and Sublessee to each other under this Sublease shall be the terms and conditions of the Master Lease and Master Sublease except for those provisions of the Master Lease and Master Sublease which are directly contradicted by this Sublease in which event the terms of this Sublease document shall control over the Master Lease and Master Sublease. Therefore, for the purposes of this Sublease, wherever in the Master Lease the word "Lessor" or wherever in the Master Sublease the word "Sublessor" is used it shall be deemed to mean the Sublessor herein and wherever in the Master Lease the word "Lessee" or wherever in the Master Sublease the word "Sublessee" is used it shall be deemed to mean the Sublessee herein.

6.4 ~~During the term of this Sublease and for all periods subsequent for obligations which have arisen prior to the termination of this Sublease, Sublessee does hereby expressly assume and agree to perform and comply with, for the benefit of Sublessor and Master Lessor, each and every obligation of Sublessor under the Master Lease except for the following paragraphs which are excluded therefrom:~~ During the term of this Sublease and for all periods subsequent for obligations which have arisen prior to the termination of this Sublease, Sublessee does hereby expressly assume and agree to perform and comply with, for the benefit of Sublessor, Master Tenant and Master Lessor, each and every obligation of Sublessor under the Master Lease and Master Sublease except for the following paragraphs which are excluded therefrom: _____.

6.5 The obligations that Sublessee has assumed under paragraph 6.4 hereof are hereinafter referred to as the "Sublessee's Assumed Obligations". The obligations that sublessee has not assumed under paragraph 6.4 hereof are hereinafter referred to as the "Sublessor's Remaining Obligations".

6.6 Sublessee shall hold Sublessor free and harmless from all liability, judgments, costs, damages, claims or demands, including reasonable attorneys fees, arising out of Sublessee's failure to comply with or perform Sublessee's Assumed Obligations.

6.7 ~~Sublessor agrees to maintain the Master Lease during the entire term of this Sublease, subject, however, to any earlier termination of the Master Lease without the fault of the Sublessor, and to comply with or perform Sublessor's Remaining Obligations and to hold Sublessee free and harmless from all liability, judgments, costs, damages, claims or demands arising out of Sublessor's failure to comply with or perform Sublessor's Remaining Obligations.~~
Sublessor agrees to maintain the Master Lease, as applicable, and the Master Sublease during the entire term of this Sublease, subject, however, to any earlier termination of the Master Lease or Master Sublease, without the fault of the Sublessor, and to comply with or perform Sublessor's Remaining Obligations and to hold Sublessee free and harmless from all liability, judgments, costs, damages, claims or demands arising out of Sublessor's failure to comply with or perform Sublessor's Remaining Obligations.

6.8 Sublessor represents to Sublessee that the Master Lease and Master Sublease is in full force and effect and that no default exists on the part of any Party to the Master Lease or Master Sublease.

6.9 All references hereinafter to the Master Lease shall also refer to the Master Sublease. All references hereinafter to the Master Lessor shall also refer to the Master Tenant.

7. **Assignment of Sublease and Default.**

7.1 Sublessor hereby assigns and transfers to Master Lessor the Sublessor's interest in this Sublease, subject however to the provisions of Paragraph 8.2 hereof.

7.2 Master Lessor, by executing this document, agrees that until a Default shall occur in the performance of Sublessor's Obligations under the Master Lease, that Sublessor may receive, collect and enjoy the Rent accruing under this Sublease. However, if Sublessor shall Default in the performance of its obligations to Master Lessor then Master Lessor may, at its option, receive and collect, directly from Sublessee, all Rent owing and to be owed under this Sublease. Master Lessor shall not, by reason of this assignment of the Sublease nor by reason of the collection of the Rent from the Sublessee, be deemed liable to Sublessee for any failure of the Sublessor to perform and comply with Sublessor's Remaining Obligations.

7.3 Sublessor hereby irrevocably authorizes and directs Sublessee upon receipt of any written notice from the Master Lessor stating that a Default exists in the performance of Sublessor's obligations under the Master Lease, to pay to Master Lessor the Rent due and to become due under the Sublease. Sublessor agrees that Sublessee shall have the right to rely upon any such statement and request from Master Lessor, and that Sublessee shall pay such Rent to Master Lessor without any obligation or right to inquire as to whether such Default exists and notwithstanding any notice from or claim from Sublessor to the contrary and Sublessor shall have no right or claim against Sublessee for any such Rent so paid by Sublessee.

7.4 No changes or modifications shall be made to this Sublease without the consent of Master Lessor.

8. **Consent of Master Lessor.**

8.1 In the event that the Master Lease requires that Sublessor obtain the consent of Master Lessor to any subletting by Sublessor then, this Sublease shall not be effective unless, within 10 days of the date hereof, Master Lessor signs this Sublease thereby giving its consent to this Subletting.

8.2 In the event that the obligations of the Sublessor under the Master Lease have been guaranteed by third parties, then neither this Sublease, nor the Master Lessor's consent, shall be effective unless, within 10 days of the date hereof, said guarantors sign this Sublease thereby giving their consent to this Sublease.

8.3 In the event that Master Lessor does give such consent then:

(a) Such consent shall not release Sublessor of its obligations or alter the primary liability of Sublessor to pay the Rent and perform and comply with all of the obligations of Sublessor to be performed under the Master Lease.

(b) The acceptance of Rent by Master Lessor from Sublessee or any one else liable under the Master Lease shall not be deemed a waiver by Master Lessor of any provisions of the Master Lease.

(c) The consent to this Sublease shall not constitute a consent to any subsequent subletting or assignment.

(d) In the event of any Default of Sublessor under the Master Lease, Master Lessor may proceed directly against Sublessor, any guarantors or any one else liable under the Master Lease or this Sublease without first exhausting Master Lessor's remedies against any other person or entity liable thereon to Master Lessor.

(e) Master Lessor may consent to subsequent sublettings and assignments of the Master Lease or this Sublease or any amendments or modifications thereto without notifying Sublessor or any one else liable under the Master Lease and without obtaining their consent and such action shall not relieve such persons from liability.

(f) In the event that Sublessor shall Default in its obligations under the Master Lease, then Master Lessor, at its option and without being obligated to do so, may require Sublessee to attorn to Master Lessor in which event Master Lessor shall undertake the obligations of Sublessor under this Sublease from the time of

© 2017 AIR CRE. All Rights Reserved.                                                                 SBMT-8.01, Revised 07-28-2017

Evers Decl. - Attachment E                          Pl. Ex. 63
                                                     p. 1768

the exercise of said option to termination of this Sublease but Master Lessor shall not be liable for any prepaid Rent nor any Security Deposit paid by Sublessee, nor shall Master Lessor be liable for any other Defaults of the Sublessor under the Sublease.

8.4 The signatures of the Master Lessor and any Guarantors of Sublessor at the end of this document shall constitute their consent to the terms of this Sublease.

8.5 Master Lessor acknowledges that, to the best of Master Lessor's knowledge, no Default presently exists under the Master Lease of obligations to be performed by Sublessor and that the Master Lease is in full force and effect.

8.6 In the event that Sublessor Defaults under its obligations to be performed under the Master Lease by Sublessor, Master Lessor agrees to deliver to Sublessee a copy of any such notice of default. Sublessee shall have the right to cure any Default of Sublessor described in any notice of default if Sublessee does so within the same number of days set forth in the notice of default given to Sublessor. If such Default is cured by Sublessee then Sublessee shall have the right of reimbursement and offset from and against Sublessor.

9. **Additional Brokers Commissions.**

9.1 Sublessor agrees that if Sublessee exercises any option or right of first refusal as granted by Sublessor herein, or any option or right substantially similar thereto, either to extend the term of this Sublease, to renew this Sublease, to purchase the Premises, or to lease or purchase adjacent property which Sublessor may own or in which Sublessor has an interest, then Sublessor shall pay to Broker a fee in accordance with the schedule of Broker in effect at the time of the execution of this Sublease. Notwithstanding the foregoing, Sublessor's obligation under this Paragraph is limited to a transaction in which Sublessor is acting as a Sublessor, lessor or seller.

9.2 If a separate brokerage fee agreement is attached then Master Lessor agrees that if Sublessee shall exercise any option or right of first refusal granted to Sublessee by Master Lessor in connection with this Sublease, or any option or right substantially similar thereto, either to extend or renew the Master Lease, to purchase the Premises or any part thereof, or to lease or purchase adjacent property which Master Lessor may own or in which Master Lessor has an interest, or if Broker is the procuring cause of any other lease or sale entered into between Sublessee and Master Lessor pertaining to the Premises, any part thereof, or any adjacent property which Master Lessor owns or in which it has an interest, then as to any of said transactions, Master Lessor shall pay to Broker a fee, in cash, in accordance with the schedule attached to such brokerage fee agreement.

9.3 Any fee due from Sublessor or Master Lessor hereunder shall be due and payable upon the exercise of any option to extend or renew, upon the execution of any new lease, or, in the event of a purchase, at the close of escrow.

9.4 Any transferee of Sublessor's interest in this Sublease, or of Master Lessor's interest in the Master Lease, by accepting an assignment thereof, shall be deemed to have assumed the respective obligations of Sublessor or Master Lessor under this Paragraph 9. Broker shall be deemed to be a third-party beneficiary of this paragraph 9.

10. **Representations and Indemnities of Broker Relationships.** The Parties each represent and warrant to the other that it has had no dealings with any person, firm, broker or finder (other than the Brokers, if any) in connection with this Sublease, and that no one other than said named Brokers is entitled to any commission or finder's fee in connection herewith. Sublessee and Sublessor do each hereby agree to indemnify, protect, defend and hold the other harmless from and against liability for compensation or charges which may be claimed by any such unnamed broker, finder or other similar party by reason of any dealings or actions of the indemnifying Party, including any costs, expenses, attorneys' fees reasonably incurred with respect thereto.

11. **Attorney's fees.** If any Party or Broker brings an action or proceeding involving the Premises whether founded in tort, contract or equity, or to declare rights hereunder, the Prevailing Party (as hereafter defined) in any such proceeding, action, or appeal thereon, shall be entitled to reasonable attorneys' fees. Such fees may be awarded in the same suit or recovered in a separate suit, whether or not such action or proceeding is pursued to decision or judgment. The term, "Prevailing Party" shall include, without limitation, a Party or Broker who substantially obtains or defeats the relief sought, as the case may be, whether by compromise, settlement, judgment, or the abandonment by the other Party or Broker of its claim or defense. The attorneys' fees award shall not be computed in accordance with any court fee schedule, but shall be such as to fully reimburse all attorneys' fees reasonably incurred. In addition, Sublessor shall be entitled to attorneys' fees, costs and expenses incurred in the preparation and service of notices of Default and consultations in connection therewith, whether or not a legal action is subsequently commenced in connection with such Default or resulting Breach ($200 is a reasonable minimum per occurrence for such services and consultation).

12. **No Prior or Other Agreements; Broker Disclaimer.** This Sublease contains all agreements between the Parties with respect to any matter mentioned herein, and no other prior or contemporaneous agreement or understanding shall be effective. Sublessor and Sublessee each represents and warrants to the Brokers that it has made, and is relying solely upon, its own investigation as to the nature, quality, character and financial responsibility of the other Party to this Sublease and as to the use, nature, quality and character of the Premises. Brokers have no responsibility with respect thereto or with respect to any default or breach hereof by either Party. The liability (including court costs and attorneys' fees), of any Broker with respect to negotiation, execution, delivery or performance by either Sublessor or Sublessee under this Sublease or any amendment or modification hereto shall be limited to an amount up to the fee received by such Broker pursuant to this Sublease; provided, however, that the foregoing limitation on each Broker's liability shall not be applicable to any gross negligence or willful misconduct of such Broker.

13. **Accessibility; Americans with Disabilities Act.**
   (a) The Premises:

☐ have not undergone an inspection by a Certified Access Specialist (CASp). Note: A Certified Access Specialist (CASp) can inspect the subject premises and determine whether the subject premises comply with all of the applicable construction-related accessibility standards under state law. Although state law does not require a CASp inspection of the subject premises, the commercial property owner or lessor may not prohibit the lessee or tenant from obtaining a CASp inspection of the subject premises for the occupancy or potential occupancy of the lessee or tenant, if requested by the lessee or tenant. The parties shall mutually agree on the arrangements for the time and manner of the CASp inspection, the payment of the fee for the CASp inspection, and the cost of making any repairs necessary to correct violations of construction-related accessibility standards within the premises.

☐ have undergone an inspection by a Certified Access Specialist (CASp) and it was determined that the Premises met all applicable construction-related accessibility standards pursuant to California Civil Code §55.51 et seq. Lessee acknowledges that it received a copy of the inspection report at least 48 hours prior to executing this Lease and agrees to keep such report confidential.

☐ have undergone an inspection by a Certified Access Specialist (CASp) and it was determined that the Premises did not meet all applicable construction-related accessibility standards pursuant to California Civil Code §55.51 et seq. Lessee acknowledges that it received a copy of the inspection report at least 48 hours prior to executing this Lease and agrees to keep such report confidential except as necessary to complete repairs and corrections of violations of construction related accessibility standards.

In the event that the Premises have been issued an inspection report by a CASp the Lessor shall provide a copy of the disability access inspection certificate to Lessee

_____   Page 5 of 8   KW
INITIALS    Last Edited: 9/4/2018 10:07 AM    _____
© 2017 AIR CRE. All Rights Reserved.   INITIALS
                                       SBMT-8.01, Revised 07-28-2017

Evers Decl. - Attachment E    Pl. Ex. 63
                              p. 1769

within 7 days of the execution of this Lease.

        (b) Since compliance with the Americans with Disabilities Act (ADA) or other state and local accessibility statutes are dependent upon Lessee's specific use of the Premises, Lessor makes no warranty or representation as to whether or not the Premises comply with ADA or any similar legislation. In the event that Lessee's use of the Premises requires modifications or additions to the Premises in order to be in compliance with ADA or other accessibility statutes, Lessee agrees to make any such necessary modifications and/or additions at Lessee's expense.

Paragraph 14: *Base Rent Schedule*

| Months of Sublease Term | Monthly Base Rent |
|---|---|
| 1-16 | $19,968.00 |

**Subject to Paragraph 19: Base Rent Abatement, below**

Paragraph 15: Security Deposit
Simultaneously with Sublessee's execution and delivery of this Sublease to Sublessor, Sublessee shall deposit with Sublessor a Security Deposit equal to the sum of Fifty-Nine Thousand Nine Hundred Four and 00/100 Dollars ($59,904.00); which is equal to three (3) months Base Rent. Sublessor shall not be required to keep the Security Deposit separate from its general accounts. Within sixty (60) days following the Expiration Date of this Sublease Term, Sublessor shall return that portion of the Security Deposit not used or applied by Sublessor, as provided in this Sublease. Sublessor shall upon written request provide Lessee with an accounting showing how that portion of the Security Deposit that was not returned was applied. No part of the Security Deposit shall be considered to be held in trust, to bear interest or to be prepayment for any monies to be paid by Sublessee under this Lease. THE SECURITY DEPOSIT SHALL NOT BE USED BY SUBLESSEE IN LIEU OF PAYMENT OF ANY MONTH'S RENT. Sublessor's obligations and Sublessee's right with respect to the Security Deposit shall be governed by the terms of this Sublease, and Sublessee hereby waives all rights it may otherwise have under California Civil Code Section 1950.7 or any similar or successor laws.

Paragraph 16:
Intentionally Omitted

Paragraph 17: Consent of Master Tenant
17.1 In the event that the Master Sublease requires that Sublessor obtain the consent of Master Tenant to any subletting by Sublessor then, this Sublease shall not be effective unless, within 10 days of the date hereof, Master Tenant signs this Sublease or otherwise consents to this Sublease in writing, thereby giving its consent to this Subletting.
17.2 In the event that the obligations of the Sublessor under the Master Sublease have been guaranteed by third parties then neither this Sublease, nor the Master Tenant's consent, shall be effective unless, within 10 days of the date hereof, said guarantors sign this Sublease or otherwise consents to this Sublease in writing thereby giving their consent to this Sublease.
17.3 In the event that Master Tenant does give such consent then:
(a) Such consent shall not release Sublessor of its obligations or alter the primary liability of Sublessor to pay the Rent and perform and comply with all of the obligations of Sublessor to be performed under the Master Sublease.
(b) The acceptance of Rent by Master Tenant from Sublessee or any one else liable under the Master Sublease shall not be deemed a waiver by Master Tenant of any provisions of the Master Sublease.
(c) The consent to this Sublease shall not constitute a consent to any subsequent subletting or assignment.
(d) In the event of any Default of Sublessor under the Master Sublease, Master Tenant may proceed directly against Sublessor, any guarantors or any one else liable under the Master Sublease or this Sublease without first exhausting Master Tenant's remedies against any other person or entity liable thereon to Master Tenant.
(e) Master Tenant may consent to subsequent sublettings and assignments of the Master Sublease or this Sublease or any amendments or modifications thereto without notifying Sublessor or any one else liable under the Master Sublease and without obtaining their consent and such action shall not relieve such persons from liability.
(f) In the event that Sublessor shall Default in its obligations under the Master Sublease, then Master Tenant, at its option and without being obligated to do so, may require Sublessee to attorn to Master Tenant in which event Master Tenant shall undertake the obligations of Sublessor under this Sublease from the time of the exercise of said option to termination of this Sublease but Master Tenant shall not be liable for any prepaid Rent nor any Security Deposit paid by Sublessee, nor shall Master Tenant be liable for any other Defaults of the Sublessor under the Sublease.
17.4 The signatures of the Master Tenant and any Guarantors of Sublessor at the end of this document shall constitute their consent to the terms of this Sublease.
17.5 Master Tenant acknowledges that, to the best of Master Tenant's knowledge, no Default presently exists under the Master Sublease of obligations to be performed by Sublessor and that the Master Sublease is in full force and effect.
17.6 In the event that Sublessor Defaults under its obligations to be performed under the Master Sublease by Sublessor, Master Tenant agrees to deliver to Sublessee a copy of any such notice of default. Sublessee shall have the right to cure any Default of Sublessor described in any notice of default if Sublessee does so within the same number of days set forth in the notice of default given to Sublessor. If such Default is cured by Sublessee then Sublessee shall have the right of reimbursement and offset from and against Sublessor.

Paragraph 18: Furniture, Fixtures & Equipment
Sublessee shall have the right to use the furniture, fixtures, equipment and cabling depicted on Exhibit A (collectively, "FF&E") during the Term for no additional cost; provided, however, that (i) Sublessee acknowledges that Tenant has made no representation or warranty concerning the safety, condition, functionality, or fitness for a particular use of the FF&E and Sublessee assumes the risk for the use of the same by its employees, agents and guests and any personal property or physical injury that may result therefrom. (ii) Sublessee shall maintain such FF&E in the same condition as such FF&E is on the Commencement Date, reasonable wear and tear excepted, and shall be responsible for any damage to such FF&E, (iii) Sublessor shall retain ownership and title to such FF&E throughout the Term, but last day of the Term, ownership and title to the FF&E (other than any cabling included therein) shall become the property of Sublessee's on the Expiration Date, for One and 00/100 Dollars ($1.00), per the terms of a separate bill of sale so long as an Event of Default is not existing as of the first anniversary of the Term, and (iv) if the ownership and title to the FF&E (other than any cabling included therein) so vests in Sublessee, Sublessee shall remove the FF&E (other than any cabling included therein) from the Premises upon the expiration of the Term. Sublessee acknowledges that the FF&E shall be conveyed "AS IS," "WHERE IS," AND "WITH ALL FAULTS" as of the last day of the Term, without any express or implied representation or warranty of any kind whatsoever, including but not limited to, condition, fitness for use, fitness for any particular purpose, merchantability, or as to compliance with specification, suitability, performance, design, absence of defects, operation

                                                                                                                        KW

Evers Decl. - Attachment E        Pl. Ex. 63
                                         p. 1770

or non-infringement or patent, copyright, trademark or other intellectual property rights of the FF&E (or any part thereof), or any other warranty, express or implied, and that Sublessee shall rely solely on its own independent investigations and inspections of the FF&E and not in reliance on any information provided by Sublessor or Sublessor's agents. Sublessor will leave cubes, desks, chairs, kitchen appliances, conference room tables/chairs. Sublessor intends to remove TVs, computer equipment and AV equipment. No less than ninety (90) days prior to the Expiration Date of the Term of this Sublease, Sublessee shall be required to provide Sublessor with written notice to inform Sublessor that Sublessee is electing not to retain the FF&E located within Suite 201.

Paragraph 19: Base Rent Abatement
Provided that Sublessee is not in Default, Sublessor shall provide Sublessee with Base Rent Abatement for the Second (2nd) Month of the Sublease Term, equal to Nineteen Thousand Nine Hundred Sixty-Eight and 00/100 Dollars ($19,968.00). During the Base Rent Abatement, Sublessee's obligations to pay its share of CAM/Operating Expenses, Utilities and any other monetary obligations as required by this Sublease shall remain in full force and effect during the Base Rent Abatement.

Paragraph 20: Notices
All notices, consents, requests, demands and other communications required or permitted hereunder (a) shall be in writing; (b) shall be sent (unless otherwise provided) by messenger, certified U.S. mail, or a reliable overnight courier service such as Federal Express, charges prepaid as applicable, to the appropriate address(es) or number(s) set forth below; and (c) shall be deemed to have been given on the date of receipt (or refusal) by the addressee (or, if the date of receipt is not a business day, on the first business day after the date of receipt), as evidenced by a receipt executed by the addressee (or a responsible person in his or her office), the records of the person or entity delivering such communication or a notice to the effect that such addressee refused to claim or accept such communication, if sent by messenger, U.S. mail or overnight courier service. The parties acknowledge that notices may be sent by electronic means, but must be sent concurrently by messenger, certified U.S. mail, or a reliable overnight courier service as provided in this section. All such communications shall be sent to the respective parties at their address below, or to such other addresses or numbers as any party may inform the other by giving five (5) business days' prior written notice.

**ATTENTION:** NO REPRESENTATION OR RECOMMENDATION IS MADE BY AIR CRE OR BY ANY REAL ESTATE BROKER AS TO THE LEGAL SUFFICIENCY, LEGAL EFFECT, OR TAX CONSEQUENCES OF THIS SUBLEASE OR THE TRANSACTION TO WHICH IT RELATES. THE PARTIES ARE URGED TO:
1. SEEK ADVICE OF COUNSEL AS TO THE LEGAL AND TAX CONSEQUENCES OF THIS SUBLEASE.
2. RETAIN APPROPRIATE CONSULTANTS TO REVIEW AND INVESTIGATE THE CONDITION OF THE PREMISES. SAID INVESTIGATION SHOULD INCLUDE BUT NOT BE LIMITED TO: THE POSSIBLE PRESENCE OF HAZARDOUS SUBSTANCES, THE ZONING OF THE PROPERTY, THE STRUCTURAL INTEGRITY, THE CONDITION OF THE ROOF AND OPERATING SYSTEMS, AND THE SUITABILITY OF THE PREMISES FOR SUBLESSEE'S INTENDED USE.

**WARNING:** IF THE SUBJECT PROPERTY IS LOCATED IN A STATE OTHER THAN CALIFORNIA, CERTAIN PROVISIONS OF THE SUBLEASE MAY NEED TO BE REVISED TO COMPLY WITH THE LAWS OF THE STATE IN WHICH THE PROPERTY IS LOCATED.

| | |
|---|---|
| Executed At: _____ | Executed At: _____ |
| On: _____ | On: _____ |
| By Sublessor: | By Sublessee: |
| _Guaranteed Rate, Inc., a Delaware corporation_ | _True Count Staffing, Inc._ |
| By: _____ | By: _____ |
| Name Printed: _Scott Ubersox with Copy to General Counsel_ | Name Printed: _KAINE WEN_ |
| Title: _____ | Title: _____ |
| Phone: _____ | Phone: _____ |
| Fax: _____ | Fax: _____ |
| Email: _____ | Email: _____ |
| By: _____ | By: _____ |
| Name Printed: _John Elias_ | Name Printed: _____ |
| Title: _Chief Revenue + Strategy Officer_ | Title: _____ |
| Phone: _____ | Phone: _____ |
| Fax: _____ | Fax: _____ |
| Email: _____ | Email: _____ |
| Address: _____ | Address: _____ |
| Federal ID No.: _____ | Federal ID No.: _____ |

BROKER

Attn: _____
Title: _____

BROKER

Attn: _____
Title: _____

KW

INITIALS

© 2017 AIR CRE. All Rights Reserved.

Page 7 of 8
Last Edited: 9/4/2018 10:07 AM

INITIALS

SBMT-8.01, Revised 07-28-2017

Address: _____  
Phone: _____  
Fax: _____  
Email: _____  
Federal ID No.: _____  
Broker/Agent BRE License #: _____

Address: _____  
Phone: _____  
Fax: _____  
Email: _____  
Federal ID No.: _____  
Broker/Agent BRE License #: _____

Consent to the above Sublease is hereby given.

Executed At: _____  
Executed On: _____  
By Master Lessor:  
_The Irvine Company, LLC_

By: _____  
Name Printed: _____  
Title: _____  
Phone: _____  
Fax: _____  
Email: _____

By: _____  
Name Printed: _____  
Title: _____  
Phone: _____  
Fax: _____  
Email: _____

Address: _____  
Federal ID No.: _____

Executed At: _____  
Executed On: _____  
By Guarantor:  
_____

By: _____  
Name Printed: _____  
Title: _____  
Address: _____

By: _____  
Name Printed: _____  
Title: _____  
Address: _____

AIR CRE. 500 North Brand Blvd, Suite 900, Glendale, CA 91203, Tel 213-687-8777, Email contracts@aircre.com
NOTICE: No part of these works may be reproduced in any form without permission in writing.

INITIALS
© 2017 AIR CRE. All Rights Reserved.

Page 8 of 8
Last Edited: 9/4/2018 10:07 AM

KW
INITIALS
SBMT-8.01, Revised 07-28-2017

Evers Decl. - Attachment E

Pl. Ex. 63
p. 1772



# GUARANTY OF SUBLEASE

WHEREAS, Guaranteed Rate, Inc., hereinafter "Sublessor", and "True Count Staffing, Inc., dba First Priority Inc., and dba Premiere Student Loan Center, hereinafter "Sublessee", intend to execute a document entitled "Sublease" dated August __, 2018, whereby Sublessor intends to sublet that certain portion of the premises consisting of approximately 16,640 Rentable Square Feet, located in Suite 201 on the Second (2nd) Floor of the Building located at 173 Technology Drive, Irvine, CA 92618 ("Sublease Premises"), wherein Sublessor will Sublease the Sublease Premises to Sublessee, and; WHEREAS, Consumer Advocacy Center, Inc. hereinafter "Guarantors" have a financial interest in Sublessee, and WHEREAS, Sublessor would not execute the Sublease if Guarantors did not execute and deliver to Sublessor this Guaranty of Sublease.

NOW THEREFORE, in consideration of the execution of said Sublease by Sublessor and as a material inducement to Sublessor to execute said Sublease, Guarantors hereby jointly, severally, unconditionally and irrevocably guarantee the prompt payment by Sublessee of all rents and all other sums payable by Sublessee under said Sublease and the faithful and prompt performance by Sublessee of each and every one of the terms, conditions and covenants of said Sublease to be kept and performed by Sublessee.

It is specifically agreed by Sublessor and Guarantors that: (i) the terms of the foregoing Sublease may be modified by agreement between Sublessor and Sublessee, or by a course of conduct, and (ii) said Sublease may be assigned by Sublessor or any assignee of Sublessor without consent or notice to Guarantors and that this Guaranty shall guarantee the performance of said Sublease as so modified.

This Guaranty shall not be released, modified or affected by the failure or delay on the part of Sublessor to enforce any of the rights or remedies of the Sublessor under said Sublease.

No notice of default by Sublessee under the Sublease need be given by Sublessor to Guarantors, it being specifically agreed that the guarantee of the undersigned is a continuing guarantee under which Sublessor may proceed immediately against Sublessee and/or against Guarantors following any breach or default by Sublessee or for the enforcement of any rights which Sublessor may have as against Sublessee under the terms of the Sublease or at law or in equity.

Sublessor shall have the right to proceed against Guarantors following any breach or default by Sublessee under the Sublease without first proceeding against Sublessee and without previous notice to or demand upon either Sublessee or Guarantors.

Guarantors hereby waive (a) notice of acceptance of this Guaranty. (b) demand of payment, presentation and protest, (c) all right to assert or plead any statute of limitations relating to this Guaranty or the Sublease, (d) any right to require the Sublessor to proceed against the Sublessee or any other

Guarantor or any other person or entity liable to Sublessor, (e) any right to require Sublessor to apply to any default any security deposit or other security it may hold under the Sublease, (f) any right to require Sublessor to proceed under any other remedy Sublessor may have before proceeding against Guarantors, (g) any right of subrogation that Guarantors may have against Sublessee.

# GUARANTY OF SUBLEASE

Guarantors do hereby subordinate all existing or future indebtedness of Sublessee to Guarantors to the obligations owed to Sublessor under the Sublease and this Guaranty.

If a Guarantor is married, such Guarantor expressly agrees that recourse may be had against his or her separate property for all of the obligations hereunder.

The obligations of Sublessee under the Sublease to execute and deliver estoppel statements and financial statements, as therein provided, shall be deemed to also require the Guarantors to do and provide the same to Sublessor. The failure of the Guarantors to provide the same to Sublessor shall constitute a default under the Sublease.

The term "Sublessor" refers to and means the Sublessor named in the Sublease and also Sublessor's successors and assigns. So long as Sublessor's interest in the Sublease, the Subleased premises or the rents, issues and profits therefrom, are subject to any mortgage or deed of trust or assignment for security, no acquisition by Guarantors of the Sublessor's interest shall affect the continuing obligation of Guarantors under this Guaranty which shall nevertheless continue in full force and effect for the benefit of the mortgagee, beneficiary, trustee or assignee under such mortgage, deed of trust or assignment and their successors and assigns.

The term "Sublessee" refers to and means the Sublessee named in the Sublease and also Sublessee's affiliates, entities, successors and assigns.

Any recovery by Sublessor from any other guarantor or insurer shall first be credited to the portion of Sublessee's indebtedness to Sublessor which exceeds the maximum liability of Guarantors under this Guaranty.

No provision of this Guaranty or right of the Sublessor can be waived, nor can the Guarantors be released from their obligations except in writing signed by the Sublessor.

Any litigation concerning this Guaranty shall be initiated in a state court of competent jurisdiction in the county in which the Subleased premises are located and the Guarantors consent to the jurisdiction of such court. This Guaranty shall be governed by the laws of the State in which the Subleased premises are located and for the purposes of any rules regarding conflicts of law the parties shall be treated as if they were all residents or domiciles of such State.

In the event any action be brought by said Sublessor against Guarantors hereunder to enforce the obligation of Guarantors hereunder, the unsuccessful party in such action shall pay to the prevailing party therein a reasonable attorney's fee. The attorney's fee award shall not be computed in accordance with any court fee schedule, but shall be such as to full reimburse all attorney's fees reasonably incurred.

If any Guarantor is a corporation, partnership, or limited liability company, each individual executing this Guaranty on said entity's behalf represents and warrants that he or she is duly authorized to execute this Guaranty on behalf of such entity.

Provided no event of default exists, this Guaranty shall terminate and be of no further force and effect when the Term of the Sublease expires at 11:59 PM Pacific Time on February 29, 2020, or on such other day and time if and when the Sublease is terminated.

Date:
By:            "Guarantor" [signature]
Name:


EXHIBIT
F

# LEASE

# BETWEEN

# DISCOVERY BUSINESS CENTER LLC

# AND

# PRIME CONSULTING LLC

# LEASE

THIS LEASE is made as of October 10, 2018, by and between **DISCOVERY BUSINESS CENTER LLC**, a Delaware limited liability company, hereafter called "Landlord," and **PRIME CONSULTING LLC**, a Wyoming limited liability company, hereafter called "Tenant."

### ARTICLE 1. BASIC LEASE PROVISIONS

Each reference in this Lease to the "Basic Lease Provisions" shall mean and refer to the following collective terms, the application of which shall be governed by the provisions in the remaining Articles of this Lease.

1. **Tenant's Trade Name:** N/A

2. **Premises:** Suite No. 200 (The Premises are more particularly described in Section 2.1)
   **Address of Building:** 15261 Laguna Canyon Road, Irvine, CA 92618
   **Project Description:** Discovery Park (as shown on Exhibit Y to this Lease)

3. **Use of Premises:** General office and for no other use.

4. **Commencement Date:** October 15, 2018

5. **Lease Term:** 24 months, plus such additional days as may be required to cause this Lease to expire on the final day of the calendar month

6. **Basic Rent:**

| Months of Term or Period | Monthly Rate Per Rentable Square Foot | Monthly Basic Rent (rounded to the nearest dollar) |
|---|---|---|
| 1 to 12 | $2.25 | $50,166.00 |
| 13 to 24 | $2.35 | $52,396.00 |

7. **Expense Recovery Period:** Every twelve month period during the Term (or portion thereof during the first and last Lease years) ending June 30.

8. **Floor Area of Premises:** approximately 22,296 rentable square feet

   **Floor Area of Building:** approximately 44,592 rentable square feet

9. **Security Deposit:** $157,967.00

   **Guarantor(s):** Consumer Advocacy Center, Inc. Concurrent with Tenant's execution and delivery of this Lease, Tenant shall cause Guarantor to execute and deliver a guarantee in favor of Landlord on a form provided by Landlord.

10. **Broker(s):** Irvine Management Company ("Landlord's Broker") is the agent of Landlord exclusively and Hughes Marino, Inc. ("Tenant's Broker") is the agent of Tenant exclusively.

11. **Parking:** Up to 79 parking spaces in accordance with the provisions set forth in Exhibit F to this Lease.