DocuSign Envelope ID: 80E73FF2-532C-4B57-8637-51AC1EF4F14E

12. **Address for Payments and Notices:**

| LANDLORD | TENANT |
|---|---|
| Payment Address: | |
| DISCOVERY BUSINESS CENTER LLC<br>P.O. Box #846547<br>Los Angeles, CA  90084-8547 | PRIME CONSULTING LLC<br>15281 Laguna Canyon Road, Suite 200<br>Irvine, CA  92618 |
| Notice Address: | |
| The Irvine Company LLC<br>550 Newport Center Drive<br>Newport Beach, CA  92660<br>Attn: Senior Vice President, Property Operations<br>    Irvine Office Properties | |

**LIST OF LEASE EXHIBITS** (All exhibits, riders and addenda attached to this Lease are hereby incorporated into and made a part of this Lease):

| Exhibit A | Description of Premises |
|---|---|
| Exhibit B | Operating Expenses |
| Exhibit C | Utilities and Services |
| Exhibit D | Tenant's Insurance |
| Exhibit E | Rules and Regulations |
| Exhibit F | Parking |
| Exhibit G | Additional Provisions |
| Exhibit G-1 | Existing Furniture |
| Exhibit H | Landlord's Disclosures |
| Exhibit X | Work Letter |
| Exhibit Y | Project Description |

00003

Evers Decl. - Attachment F

Pl. Ex. 63
p. 1778

## ARTICLE 2. PREMISES

**2.1. LEASED PREMISES.** Landlord leases to Tenant and Tenant leases from Landlord the Premises shown in Exhibit A (the "**Premises**"), containing approximately the floor area set forth in Item 8 of the Basic Lease Provisions (the "**Floor Area**"). The Premises are located in the building identified in Item 2 of the Basic Lease Provisions (the "**Building**"), which is a portion of the project described in Item 2 (the "**Project**"). Landlord and Tenant stipulate and agree that the Floor Area of Premises set forth in Item 8 of the Basic Lease Provisions is correct.

**2.2. ACCEPTANCE OF PREMISES.** Tenant acknowledges that neither Landlord nor any representative of Landlord has made any representation or warranty with respect to the Premises, the Building or the Project or the suitability or fitness of either for any purpose, except as set forth in this Lease. Tenant acknowledges that the flooring materials which may be installed within portions of the Premises located on the ground floor of the Building may be limited by the moisture content of the Building slab and underlying soils. The taking of possession or use of the Premises by Tenant for any purpose other than construction shall conclusively establish that the Premises and the Building were in satisfactory condition and in conformity with the provisions of this Lease in all respects, except for those matters which Tenant shall have brought to Landlord's attention on a written punch list. The punch list shall be limited to any items required to be accomplished by Landlord under the Work Letter (if any) attached as Exhibit X, and shall be delivered to Landlord within 30 days after the Commencement Date (as defined herein). If there is no Work Letter, or if no items are required of Landlord under the Work Letter, by taking possession of the Premises Tenant accepts the improvements in their existing condition, and waives any right or claim against Landlord arising out of the condition of the Premises. Nothing contained in this Section 2.2 shall affect the commencement of the Term or the obligation of Tenant to pay rent. Landlord shall diligently complete all punch list items of which it is notified as provided above.

**2.3. GOOD WORKING ORDER WARRANTY.** Landlord warrants to Tenant that the fire sprinkler system, lighting, heating, ventilation and air conditioning systems and electrical systems serving the Premises shall be in good operating condition as of the day the Premises are delivered to Tenant.

## ARTICLE 3. TERM

**3.1. GENERAL.** The term of this Lease ("**Term**") shall be for the period shown in Item 5 of the Basic Lease Provisions. The Term shall commence ("**Commencement Date**") on October 15, 2018. Promptly following request by Landlord, the parties shall memorialize on a form provided by Landlord (the "**Commencement Memorandum**") the actual Commencement Date and the expiration date ("**Expiration Date**") of this Lease; should Tenant fail to execute and return the Commencement Memorandum to Landlord within 5 business days (or provide specific written objections thereto within that period), then Landlord's determination of the Commencement and Expiration Dates as set forth in the Commencement Memorandum shall be conclusive.

**3.2. DELAY IN POSSESSION.** If Landlord, for any reason whatsoever, cannot deliver possession of the Premises to Tenant on or before the Estimated Commencement Date set forth in Item 4 of the Basic Lease Provisions, this Lease shall not be void or voidable nor shall Landlord be liable to Tenant for any resulting loss or damage. However, Tenant shall not be liable for any rent until the Commencement Date occurs as provided in Section 3.1 above

## ARTICLE 4. RENT AND OPERATING EXPENSES

**4.1. BASIC RENT.** From and after the Commencement Date, Tenant shall pay to Landlord without deduction or offset, except as provided in this Lease, a Basic Rent for the Premises in the total amount shown (including subsequent adjustments, if any) in Item 6 of the Basic Lease Provisions (the "**Basic Rent**"). If the Commencement Date is other than the first day of a calendar month, any rental adjustment shown in Item 6 shall be deemed to occur on the first day of the next calendar month following the specified monthly anniversary of the Commencement Date. The Basic Rent shall be due and payable in advance commencing on the Commencement Date and continuing thereafter on the first day of each successive calendar month of the Term, as prorated for any partial month. No demand, notice or invoice shall be required. An installment in the amount of 1 full month's Basic Rent, at the initial rate specified in Item 6 of the Basic Lease Provisions, and 1 month's estimated Tenant's Share of Operating Expenses shall be delivered to Landlord concurrently with Tenant's execution of this Lease and shall be applied against the Basic Rent first due hereunder; the next installment of Basic Rent shall be due on the first day of the second calendar month of the Term, which installment shall, if applicable, be appropriately prorated to reflect the amount prepaid for that calendar month. ' '

**4.2. OPERATING EXPENSES.** Tenant shall pay Tenant's Share of Operating Expenses in accordance with Exhibit B of this Lease.

**4.3. SECURITY DEPOSIT.** Concurrently with Tenant's delivery of this Lease, Tenant shall deposit with Landlord the sum, if any, stated in Item 9 of the Basic Lease Provisions (the "**Security Deposit**"), to be held by Landlord as security for the full and faithful performance of Tenant's obligations under this Lease, to pay any rental sums, including without limitation such additional rent as may be owing under any provision hereof, and to maintain the Premises as required by Sections 7.1 and 15.2 or any other provision of this Lease. Upon any breach of the foregoing obligations by Tenant, Landlord may apply all or part of the Security Deposit as full or partial compensation. If any portion of the Security Deposit is so applied, Tenant shall within 5 business days after written demand by Landlord deposit cash or check with

Landlord in an amount sufficient to restore the Security Deposit to its original amount. Landlord shall not be required to keep the Security Deposit separate from its general funds, and Tenant shall not be entitled to interest on the Security Deposit. In no event may Tenant utilize all or any portion of the Security Deposit as a payment toward any rental sum due under this Lease. Any unapplied balance of the Security Deposit shall be returned to Tenant or, at Landlord's option, to the last assignee of Tenant's interest in this Lease within 30 days following the termination of this Lease and Tenant's vacation of the Premises. Tenant hereby waives the provisions of Section 1950.7 of the California Civil Code, or any similar or successor laws now or hereafter in effect, in connection with Landlord's application of the Security Deposit to prospective rent that would have been payable by Tenant but for the early termination due to Tenant's Default (as defined herein).

## ARTICLE 5. USES

**5.1. USE.** Tenant shall use the Premises only for the purposes stated in Item 3 of the Basic Lease Provisions and for no other use whatsoever. The uses prohibited under this Lease shall include, without limitation, use of the Premises or a portion thereof for (i) offices of any agency or bureau of the United States or any state or political subdivision thereof; (ii) offices or agencies of any foreign governmental or political subdivision thereof; or (iii) schools, temporary employment agencies or other training facilities which are not ancillary to corporate, executive or professional office use. Tenant shall not do or permit anything to be done in or about the Premises which will in any way interfere with the rights or quiet enjoyment of other occupants of the Building or the Project, or use or allow the Premises to be used for any unlawful purpose, nor shall Tenant permit any nuisance or commit any waste in the Premises or the Project. Tenant shall not perform any work or conduct any business whatsoever in the Project other than inside the Premises. Tenant shall comply at its expense with all present and future laws, ordinances and requirements of all governmental authorities that pertain to Tenant or its use of the Premises, and with all energy usage reporting requirements of Landlord. Pursuant to California Civil Code § 1938, Landlord hereby states that the Premises have not undergone inspection by a Certified Access Specialist (CASp) (defined in California Civil Code § 55.52(a)(3)). Pursuant to Section 1938 of the California Civil Code, Landlord hereby provides the following notification to Tenant: "A Certified Access Specialist (CASp) can inspect the subject premises and determine whether the subject premises comply with all of the applicable construction-related accessibility standards under state law. Although state law does not require a CASp inspection of the subject premises, the commercial property owner or lessor may not prohibit the lessee or tenant from obtaining a CASp inspection of the subject premises for the occupancy or potential occupancy of the lessee or tenant, if requested by the lessee or tenant. The parties shall mutually agree on the arrangements for the time and manner of the CASp inspection, the payment of the fee for the CASp inspection, and the cost of making any repairs necessary to correct violations of construction related accessibility standards within the premises." If Tenant requests to perform a CASp inspection of the Premises, Tenant shall, at its cost, retain a CASp approved by Landlord (provided that Landlord may designate the CASp, at Landlord's option) to perform the inspection of the Premises at a time agreed upon by the parties. Tenant shall provide Landlord with a copy of any report or certificate issued by the CASp (the "CASp Report") and Tenant shall, at its cost, promptly complete any modifications necessary to correct violations of construction related accessibility standards identified in the CASp Report, notwithstanding anything to the contrary in this Lease. Tenant agrees to keep the information in the CASp Report confidential except as necessary for the Tenant to complete such modifications. During the Term, Landlord shall be responsible, at its cost (except to the extent properly included in Project Costs), for correcting any violations of Title III of the Americans with Disabilities Act ("ADA") in which it is notified by governmental authorities with respect to the Common Areas of the Building except for any obligations specifically imposed upon Tenant pursuant to this Lease. Notwithstanding the foregoing, Landlord shall have the right to contest any alleged violation in good faith, including, without limitation, the right to apply for and obtain a waiver or deferment of compliance, the right to assert any and all defenses allowed by law and the right to appeal any decisions, judgments or rulings to the fullest extent permitted by law. Landlord, after the exhaustion of any and all rights to appeal or contest, will make all repairs, additions, alterations or improvements necessary to comply with the terms of any final order or judgment. Notwithstanding the foregoing, Tenant, not Landlord, shall be responsible for the correction of any violations that arise out of or in connection with any claims brought under any provision of the Americans with Disabilities Act other than Title III, the specific nature of Tenant's business in the Premises (other than general office use), the acts or omissions of Tenant, its agents, employees or contractors, Tenant's arrangement of any furniture, equipment or other property in the Premises, any repairs, alterations, additions or improvements performed by or on behalf of Tenant (including the Tenant Improvements) and any design or configuration of the Premises specifically requested by Tenant after being informed that such design or configuration may not be in strict compliance with the ADA.

**5.2. SIGNS.** Except for Landlord's standard suite signage identifying Tenant's name and/or logo, and building standard lobby directory signage, which suite entry and lobby directory signage shall be installed at Landlord's sole cost and expense, Tenant shall have no right to maintain signs in any location in, on or about the Premises, the Building or the Project and shall not place or erect any signs that are visible from the exterior of the Building. The size, design, graphics, material, style, color and other physical aspects of any permitted sign shall be subject to Landlord's written determination, as determined solely by Landlord, prior to installation, that signage is in compliance with any covenants, conditions or restrictions encumbering the Premises and Landlord's signage program for the Project, as in effect from time to time and approved by the City in which the Premises are located ("Signage Criteria"). Prior to placing or erecting any such signs, Tenant shall obtain and deliver to Landlord a copy of any applicable municipal or other governmental permits and approvals, except to Landlord's standard suite signage. Tenant shall be responsible for all costs of any permitted sign, including, without limitation, the fabrication,

IOPLEGAL-4-47

4

10/9/2018 - 250850 - 1 3

installation, maintenance and removal thereof and the cost of any permits therefor, except that Landlord shall pay for the initial installation costs only of the standard suite signage. If Tenant fails to maintain its sign in good condition, or if Tenant fails to remove same upon termination of this Lease and repair and restore any damage caused by the sign or its removal, Landlord may do so at Tenant's expense. Landlord shall have the right to temporarily remove any signs in connection with any repairs or maintenance in or upon the Building. The term "sign" as used in this Section shall include all signs, designs, monuments, displays, advertising materials, logos, banners, projected images, pennants, decals, pictures, notices, lettering, numerals or graphics.

**5.3 HAZARDOUS MATERIALS.** Tenant shall not generate, handle, store or dispose of hazardous or toxic materials (as such materials may be identified in any federal, state or local law or regulation) in the Premises or Project without the prior written consent of Landlord; provided that the foregoing shall not be deemed to proscribe the use by Tenant of customary office supplies in normal quantities so long as such use comports with all applicable laws. Tenant acknowledges that it has read, understands and, if applicable, shall comply with the provisions of Exhibit H to this Lease, if that Exhibit is attached. Except as otherwise disclosed in this Lease, Landlord, to the best of its knowledge, represents to Tenant that except for normal janitorial, maintenance and office supplies and except as otherwise disclosed herein, no hazardous or toxic materials are present in or about the Building. Should any such materials be discovered and should their remediation be legally required, then unless such materials were introduced by Tenant, its agents, employees, subtenants, vendors, licensees, invitees or contractors, Landlord shall remediate same at its expense and shall hold Tenant harmless from any cost in connection therewith.

## ARTICLE 6. LANDLORD SERVICES

**6.1. UTILITIES AND SERVICES.** Landlord and Tenant shall be responsible to furnish those utilities and services to the Premises to the extent provided in Exhibit C, subject to the conditions and payment obligations and standards set forth in this Lease. Landlord shall not be liable for any failure to furnish any services or utilities when the failure is the result of any accident or other cause beyond Landlord's reasonable control, nor shall Landlord be liable for damages resulting from power surges or any breakdown in telecommunications facilities or services. Landlord's temporary inability to furnish any services or utilities shall not entitle Tenant to any damages, relieve Tenant of the obligation to pay rent or constitute a constructive or other eviction of Tenant, except that Landlord shall diligently attempt to restore the service or utility promptly. However, if the Premises, or a material portion of the Premises, are made untenantable for a period in excess of 5 consecutive business days as a result of a service interruption or repair that is reasonably within the control of Landlord to correct and through no fault of Tenant and for reasons other than as contemplated in Article 11, then Tenant, as its sole remedy, shall be entitled to receive an abatement of Rent payable hereunder during the period beginning on the 6th consecutive business day of the service interruption or repair and ending on the day the service has been restored. Tenant shall comply with all rules and regulations which Landlord may reasonably establish for the provision of services and utilities, and shall cooperate with all reasonable conservation practices established by Landlord. Landlord shall at all reasonable times have free access to all electrical and mechanical installations of Landlord.

**6.2. OPERATION AND MAINTENANCE OF COMMON AREAS.** During the Term, Landlord shall operate all Common Areas within the Building and the Project in a first-class manner. The term "Common Areas" shall mean all areas within the Building and other buildings in the Project which are not held for exclusive use by persons entitled to occupy space, including without limitation parking areas and structures, driveways, sidewalks, landscaped and planted areas, hallways and interior stairwells not located within the premises of any tenant, common electrical rooms, entrances and lobbies, elevators, and restrooms not located within the premises of any tenant.

**6.3. USE OF COMMON AREAS.** The occupancy by Tenant of the Premises shall include the use of the Common Areas in common with Landlord and with all others for whose convenience and use the Common Areas may be provided by Landlord, subject, however, to compliance with Rules and Regulations described in Article 17 below. Landlord shall at all times during the Term have exclusive control of the Common Areas, and may restrain or permit any use or occupancy, except as otherwise provided in this Lease or in Landlord's rules and regulations. Tenant shall keep the Common Areas clear of any obstruction or unauthorized use related to Tenant's operations. Landlord may temporarily close any portion of the Common Areas for repairs, remodeling and/or alterations, to prevent a public dedication or the accrual of prescriptive rights, or for any other reasonable purpose. Landlord's temporary closure of any portion of the Common Areas for such purposes shall not deprive Tenant of reasonable access to the Premises.

**6.4. CHANGES AND ADDITIONS BY LANDLORD.** Landlord reserves the right to make alterations or additions to the Building or the Project or to the attendant fixtures, equipment and Common Areas, and such change shall not entitle Tenant to any abatement of rent or other claim against Landlord. No such change shall deprive Tenant of reasonable access to or use of the Premises.

## ARTICLE 7. REPAIRS AND MAINTENANCE

**7.1. TENANT'S MAINTENANCE AND REPAIR.** Subject to Articles 11 and 12, Tenant at its sole expense shall make all repairs necessary to keep the Premises and all Improvements and fixtures therein in good condition and repair. Notwithstanding Section 7.2 below, Tenant's maintenance obligation shall include without limitation all appliances, interior glass, doors, door closures, hardware, fixtures, electrical, plumbing, fire extinguisher equipment and other equipment installed in the Premises and all Alterations

00006

Evers Decl. - Attachment F                              Pl. Ex. 63
                                                        p. 1781

constructed by Tenant pursuant to Section 7.3 below, together with any supplemental HVAC equipment servicing only the Premises. All repairs and other work performed by Tenant or its contractors shall be subject to the terms of Sections 7.3 and 7.4 below. Alternatively, should Landlord or its management agent agree to make a repair on behalf of Tenant and at Tenant's request, Tenant shall promptly reimburse Landlord as additional rent for all reasonable costs incurred (including the standard supervision fee) upon submission of an invoice.

7.2.  **LANDLORD'S MAINTENANCE AND REPAIR.**  Subject to Articles 11 and 12, Landlord shall provide service, maintenance and repair with respect to the heating, ventilating and air conditioning ("HVAC") equipment of the Building (exclusive of any supplemental HVAC equipment servicing only the Premises) and shall maintain in good repair the Common Areas, roof, foundations, footings, the exterior surfaces of the exterior walls of the Building (including exterior glass), and the structural, electrical, mechanical and plumbing systems of the Building (including elevators, if any, serving the Building), except to the extent provided in Section 7.1 above. Landlord need not make any other improvements or repairs except as specifically required under this Lease, and nothing contained in this Section 7.2 shall limit Landlord's right to reimbursement from Tenant for maintenance, repair costs and replacement costs as provided elsewhere in this Lease. Notwithstanding any provision of the California Civil Code or any similar or successor laws to the contrary, Tenant understands that it shall not make repairs at Landlord's expense or by rental offset. Except as provided in Section 11.1 and Article 12 below, there shall be no abatement of rent and no liability of Landlord by reason of any injury to or interference with Tenant's business arising from the making of any repairs, alterations or improvements to any portion of the Building, including repairs to the Premises, nor shall any related activity by Landlord constitute an actual or constructive eviction; provided, however, that in making repairs, alterations or improvements, Landlord shall interfere as little as reasonably practicable with the conduct of Tenant's business in the Premises. Tenant hereby waives any and all rights under and benefits of subsection 1 of Section 1932, and Sections 1941 and 1942 of the California Civil Code, or any similar or successor laws now or hereafter in effect.

7.3.  **ALTERATIONS.**  Except for cosmetic alteration projects that do not exceed $100,000.00 during each calendar year and that satisfy the criteria in the next following sentence (which work shall require notice to Landlord but not Landlord's consent), Tenant shall make no alterations, additions, decorations or improvements (collectively referred to as "**Alterations**") to the Premises without the prior written consent of Landlord. Landlord's consent shall not be unreasonably withheld as long as the proposed Alterations do not affect the structural, electrical or mechanical components or systems of the Building, are not visible from the exterior of the Premises, do not change the basic floor plan of the Premises, and utilize only Landlord's building standard materials ("**Standard Improvements**"). Landlord may impose, as a condition to its consent, any requirements that Landlord in its discretion may deem reasonable or desirable. Without limiting the generality of the foregoing, Tenant shall use Landlord's designated mechanical and electrical contractors for all Alterations work affecting the mechanical or electrical systems of the Building. Should Tenant perform any Alterations work that would necessitate any ancillary Building modification or other expenditure by Landlord, then Tenant shall promptly fund the cost thereof to Landlord. Tenant shall obtain all required permits for the Alterations and shall perform the work in compliance with all applicable laws, regulations and ordinances with contractors reasonably acceptable to Landlord, and except for cosmetic Alterations not requiring a permit, Landlord shall be entitled to a supervision fee in the amount of 5% of the cost of the Alterations. Any request for Landlord's consent shall be made in writing and shall contain architectural plans describing the work in detail reasonably satisfactory to Landlord. Landlord may elect to cause its architect to review Tenant's architectural plans, and the reasonable cost of that review shall be reimbursed by Tenant. Should the Alterations proposed by Tenant and consented to by Landlord change the floor plan of the Premises, then Tenant shall, at its expense, furnish Landlord with as-built drawings and CAD disks compatible with Landlord's systems. Alterations shall be constructed in a good and workmanlike manner using materials of a quality reasonably approved by Landlord. Unless Landlord otherwise agrees in writing, all Alterations affixed to the Premises, including without limitation all Tenant Improvements constructed pursuant to the Work Letter (except as otherwise provided in the Work Letter), but excluding moveable trade fixtures and furniture, shall become the property of Landlord. Such Alterations shall be surrendered with the Premises at the end of the Term, except that Landlord may, by notice to Tenant given at the time of Landlord's approval, require Tenant to remove by the Expiration Date, or sooner termination date of this Lease, all or any Alterations (including without limitation all telephone and data cabling) installed either by Tenant or by Landlord at Tenant's request (collectively, the "**Required Removables**") and to replace any non-Standard Improvements with the applicable Standard Improvements. Tenant, at the time it requests approval for a proposed Alteration, may request in writing that Landlord advise Tenant whether the Alteration or any portion thereof, is a Required Removable. Within 10 days after receipt of Tenant's request, Landlord shall advise Tenant in writing as to which portions of the subject Alterations are Required Removables. In connection with its removal of Required Removables, Tenant shall repair any damage to the Premises arising from that removal and shall restore the affected area to its pre-existing condition, reasonable wear and tear excepted.

7.4.  **MECHANIC'S LIENS.**  Tenant shall keep the Premises free from any liens arising out of any work performed, materials furnished, or obligations incurred by or for Tenant. Upon request by Landlord, Tenant shall promptly cause any such lien to be released by posting a bond in accordance with California Civil Code Section 8424 or any successor statute. In the event that Tenant shall not, within 15 days following the imposition of any lien, cause the lien to be released of record by payment or posting of a proper bond, Landlord shall have, in addition to all other available remedies, the right to cause the lien to be released by any means it deems proper, including payment of or defense against the claim giving rise to the lien. All expenses so incurred by Landlord, including Landlord's attorneys' fees, shall be

00007

Evers Decl. - Attachment F                      Pl. Ex. 63
                                                p. 1782

DocuSign Envelope ID: B0E73FF2-332C-4B67-9B37-51AC1EFAF444

reimbursed by Tenant promptly following Landlord's demand, together with interest from the date of payment by Landlord at the maximum rate permitted by law until paid. Tenant shall give Landlord no less than 20 days' prior notice in writing before commencing construction of any kind on the Premises.

**7.6.   ENTRY AND INSPECTION.**  Landlord shall at all reasonable times, upon at least 24 hours advance, written or verbal notice given by Landlord (except in emergencies, when no notice shall be required), have the right to enter the Premises to inspect them, to supply services in accordance with this Lease, to make repairs and renovations as reasonably deemed necessary by Landlord, and to submit the Premises to prospective or actual purchasers or encumbrance holders (or, during the final twelve months of the Term or when an uncured Default exists, to prospective tenants), all without being deemed to have caused an eviction of Tenant and without abatement of Rent except as provided elsewhere in this Lease. If reasonably necessary, Landlord may temporarily close all or a portion of the Premises to perform repairs, alterations and additions. Except in emergencies or to provide Building services, Landlord shall provide Tenant with reasonable prior verbal notice of entry and shall use reasonable efforts to minimize any interference with Tenant's use of the Premises.

## ARTICLE 8.  SPACE PLANNING AND SUBSTITUTION

Landlord shall have the right, upon providing not less than 45 days prior written notice, to move Tenant to other space of comparable size in the Building or in the Project or in other space owned by Landlord or its affiliate(s) within 3 miles of the Building.  The new space shall be provided with improvements of comparable quality to those within the Premises. Landlord shall pay the reasonable out-of-pocket costs to relocate and reconnect Tenant's personal property and equipment within the new space; provided that Landlord may elect to cause such work to be done by its contractors. Landlord shall also reimburse Tenant for such other reasonable out-of-pocket costs that Tenant may incur in connection with the relocation, including without limitation necessary stationery revisions. Within 10 days following request by Landlord, Tenant shall execute an amendment to this Lease prepared by Landlord to memorialize the relocation. Should Tenant fail timely to execute and deliver the amendment to Landlord, or should Tenant thereafter fail to comply with the terms thereof, then Landlord may at its option elect to terminate this Lease upon not less than 60 days prior written notice to Tenant.  Notwithstanding the foregoing, Landlord hereby agrees that it shall not exercise its right to relocate Tenant hereunder during the initial 24 month Lease Term

## ARTICLE 9.  ASSIGNMENT AND SUBLETTING

**9.1.   RIGHTS OF PARTIES.**

(a)   Except as otherwise specifically provided in this Article 9, Tenant may not, either voluntarily or by operation of law, assign, sublet, encumber, or otherwise transfer all or any part of Tenant's interest in this Lease, or permit the Premises to be occupied by anyone other than Tenant (each, a "Transfer"), without Landlord's prior written consent, which consent shall not unreasonably be withheld, conditioned or delayed in accordance with the provisions of Section 9.1(b).  For purposes of this Lease, references to any subletting, sublease or variation thereof shall be deemed to apply not only to a sublease effected directly by Tenant, but also to a sub-subletting or an assignment of subtenancy by a subtenant at any level.  Except as otherwise specifically provided in this Article 9, no Transfer (whether voluntary, involuntary or by operation of law) shall be valid or effective without Landlord's prior written consent and, at Landlord's election, such a Transfer shall constitute a material default of this Lease.

(b)   Except as otherwise specifically provided in this Article 9, if Tenant or any subtenant hereunder desires to transfer an interest in this Lease, Tenant shall first notify Landlord in writing and shall request Landlord's consent thereto. Tenant shall also submit to Landlord in writing: (i) the name and address of the proposed transferee; (ii) the nature of any proposed subtenant's or assignee's business to be carried on in the Premises; (iii) the terms and provisions of any proposed sublease or assignment (including without limitation the rent and other economic provisions, term, improvement obligations and commencement date); (iv) evidence that the proposed assignee or subtenant will comply with the requirements of Exhibit D to this Lease; and (v) any other information requested by Landlord and reasonably related to the Transfer.  Landlord shall not unreasonably withhold its consent, provided: (1) the use of the Premises will be consistent with the provisions of this Lease and with Landlord's commitment to other tenants of the Building and Project; (2) any proposed subtenant or assignee demonstrates that it is financially responsible by submission to Landlord of all reasonable information as Landlord may request concerning the proposed subtenant or assignee, including, but not limited to, a balance sheet of the proposed subtenant or assignee as of a date within 90 days of the request for Landlord's consent and statements of income or profit and loss of the proposed subtenant or assignee for the two-year period preceding the request for Landlord's consent; (3) the proposed assignee or subtenant is neither an existing tenant or occupant of the Building or Project nor a prospective tenant with whom Landlord or Landlord's affiliate has been actively negotiating to become a tenant at the Building or Project; and (4) the proposed transferee is not an SDN (as defined below) and will not impose additional burdens or security risks on Landlord.  If Landlord consents to the proposed Transfer, then the Transfer may be effected within 90 days after the date of the consent upon the terms described in the information furnished to Landlord; provided that any material change in the terms shall be subject to Landlord's consent as set forth in this Section 9.1(b).  Landlord shall approve or disapprove any requested Transfer within 30 days following receipt of Tenant's written notice and the information set forth above. Except in connection with a Permitted Transfer (as defined below), if Landlord approves the Transfer Tenant shall pay a transfer fee of $1,000.00 to Landlord concurrently with Tenant's execution of a Transfer consent prepared by Landlord.

00008

Evers Decl. - Attachment F                                              Pl. Ex. 63
                                                                          p. 1783

(c)    Notwithstanding the provisions of Subsection (b) above, and except in connection with a "Permitted Transfer" (as defined below), in lieu of consenting to a proposed assignment or subletting, Landlord may elect to terminate this Lease in its entirety in the event of an assignment, or terminate this Lease as to the portion of the Premises proposed to be subleased with a proportionate abatement in the rent payable under this Lease, such termination to be effective on the date that the proposed sublease or assignment would have commenced. Landlord may thereafter, at its option, assign or re-let any space so recaptured to any third party, including without limitation the proposed transferee identified by Tenant.

(d)    Should any Transfer occur, Tenant shall, except in connection with a Permitted Transfer, promptly pay or cause to be paid to Landlord, as additional rent, 50% of any amounts paid by the assignee or subtenant, however described and whether funded during or after the Lease Term, to the extent such amounts are in excess of the sum of (i) the scheduled Basic Rent payable by Tenant hereunder (or, in the event of a subletting of only a portion of the Premises, the Basic Rent allocable to such portion as reasonably determined by Landlord) and (ii) the direct out-of-pocket costs, as evidenced by third party invoices provided to Landlord, incurred by Tenant to effect the Transfer, which costs shall be amortized over the remaining Term of this Lease or, if shorter, over the term of the sublease.

(e)    The sale of all or substantially all of the assets of Tenant (other than bulk sales in the ordinary course of business), the merger or consolidation of Tenant, the sale of Tenant's capital stock, or any other direct or indirect change of control of Tenant, including, without limitation, change of control of Tenant's parent company or a merger by Tenant or its parent company, shall be deemed a Transfer within the meaning and provisions of this Article. Notwithstanding the foregoing, Tenant may assign this Lease to a successor to Tenant by merger, consolidation or the purchase of substantially all of Tenant's assets, or assign this Lease or sublet all or a portion of the Premises to an Affiliate (defined below), without the consent of Landlord but subject to the provisions of Section 9.2, provided that all of the following conditions are satisfied (a "Permitted Transfer"): (i) Tenant is not then in Default hereunder; (ii) Tenant gives Landlord written notice at least 10 business days before such Permitted Transfer; and (iii) the successor entity resulting from any merger or consolidation of Tenant or the sale of all or substantially all of the assets of Tenant, has a net worth (computed in accordance with generally accepted accounting principles, except that intangible assets such as goodwill, patents, copyrights, and trademarks shall be excluded in the calculation ("Net Worth")) at the time of the Permitted Transfer that is at least equal to the Net Worth of Tenant immediately before the Permitted Transfer. Tenant's notice to Landlord shall include reasonable information and documentation evidencing the Permitted Transfer and showing that each of the above conditions has been satisfied. If requested by Landlord, Tenant's successor shall sign and deliver to Landlord a commercially reasonable form of assumption agreement. "Affiliate" shall mean an entity controlled by, controlling or under common control with Tenant.

**9.2.   EFFECT OF TRANSFER.**  No subletting or assignment, even with the consent of Landlord, shall relieve Tenant, or any successor-in-interest to Tenant hereunder, of its obligation to pay rent and to perform all its other obligations under this Lease. Each assignee, other than Landlord, shall be deemed to assume all obligations of Tenant under this Lease and shall be liable jointly and severally with Tenant for the payment of all rent, and for the due performance of all of Tenant's obligations, under this Lease. Such joint and several liability shall not be discharged or impaired by any subsequent modification or extension of this Lease. Consent by Landlord to one or more transfers shall not operate as a waiver or estoppel to the future enforcement by Landlord of its rights under this Lease.

**9.3.   SUBLEASE REQUIREMENTS.**  Any sublease, license, concession or other occupancy agreement entered into by Tenant shall be subordinate and subject to the provisions of this Lease, and if this Lease is terminated during the term of any such agreement, Landlord shall have the right to: (i) treat such agreement as cancelled and repossess the subject space by any lawful means, or (ii) require that such transferee attorn to and recognize Landlord as its landlord (or licensor, as applicable) under such agreement. Landlord shall not, by reason of such attornment or the collection of sublease rentals, be deemed liable to the subtenant for the performance of any of Tenant's obligations under the sublease. If Tenant is in Default (hereinafter defined), Landlord is irrevocably authorized to direct any transferee under any such agreement to make all payments under such agreement directly to Landlord (which Landlord shall apply towards Tenant's obligations under this Lease) until such Default is cured. No collection or acceptance of rent by Landlord from any transferee shall be deemed a waiver of any provision of Article 9 of this Lease, an approval of any transferee, or a release of Tenant from any obligation under this Lease, whenever accruing. In no event shall Landlord's enforcement of any provision of this Lease against any transferee be deemed a waiver of Landlord's right to enforce any term of this Lease against Tenant or any other person.

## ARTICLE 10. INSURANCE AND INDEMNITY

**10.1.   TENANT'S INSURANCE.**  Tenant, at its sole cost and expense, shall provide and maintain in effect the insurance described in Exhibit D. Evidence of that insurance must be delivered to Landlord prior to the Commencement Date.

**10.2.   LANDLORD'S INSURANCE.**  Landlord shall provide the following types of insurance, with or without deductible and in amounts and coverages as may be determined by Landlord in its discretion: property insurance, subject to standard exclusions (such as, but not limited to, earthquake and flood exclusions), covering the Building or Project. In addition, Landlord may, at its election, obtain insurance coverages for such other risks as Landlord or its Mortgagees may from time to time deem appropriate, including earthquake, terrorism and commercial general liability coverage. Landlord shall not be required

00009

Evers Decl. - Attachment F                          Pl. Ex. 63
                                                    p. 1784

to carry insurance of any kind on any tenant Improvements or Alterations in the Premises installed by Tenant or its contractors or otherwise removable by Tenant (collectively, "Tenant Installations"), or on any trade fixtures, furnishings, equipment, interior plate glass, signs or items of personal property in the Premises, and Landlord shall not be obligated to repair or replace any of the foregoing items should damage occur. All proceeds of insurance maintained by Landlord upon the Building and Project shall be the property of Landlord, whether or not Landlord is obligated to or elects to make any repairs.

**10.3. INDEMNITY.** To the fullest extent permitted by law, but subject to Section 10.5 below, Tenant shall defend, indemnify and hold harmless Landlord, its agents, lenders, and any and all affiliates of Landlord (collectively, "**Landlord Parties**"), from and against any and all claims, liabilities, costs or expenses (collectively, "**Claims**") arising either before or after the Commencement Date from Tenant's use or occupancy of the Premises, the Building or the Common Areas, or from the conduct of its business, or from any activity, work, or thing done, permitted or suffered by Tenant or its agents, employees, subtenants, vendors, contractors, invitees or licensees in or about the Premises, the Building or the Common Areas, or from any Default in the performance of any obligation on Tenant's part to be performed under this Lease, or from any act or negligence of Tenant or its agents, employees, subtenants, vendors, contractors, invitees or licensees. Landlord may, at its option, require Tenant to assume Landlord's defense in any action covered by this Section through counsel reasonably satisfactory to Landlord. Notwithstanding the foregoing, if and to the extent it is ultimately determined that the Claim was caused by the negligence or willful misconduct of any Landlord Party, then Tenant's indemnification obligation shall not apply and Landlord shall indemnify and hold Tenant harmless from same. The provisions of this Section 10.3 shall survive the expiration or sooner termination of this Lease with respect to any Claims or liability arising in connection with any event occurring prior to such expiration or termination.

**10.4. LANDLORD'S NONLIABILITY.** Unless caused by the negligence or intentional misconduct of Landlord, its agents, employees or contractors but subject to Section 10.5 below, Landlord shall not be liable to Tenant, its employees, agents and invitees, and Tenant hereby waives all claims against Landlord, its employees and agents for loss of or damage to any property, or any injury to any person, resulting from any condition including, but not limited to, acts or omissions (criminal or otherwise) of third parties and/or other tenants of the Project, or their agents, employees or invitees, fire, explosion, falling plaster, steam, gas, electricity, water or rain which may leak or flow from or into any part of the Premises or from the breakage, leakage, obstruction or other defects of the pipes, sprinklers, wires, appliances, plumbing, air conditioning, electrical works or other fixtures in the Building, whether the damage or injury results from conditions arising in the Premises or in other portions of the Building. It is understood that any such condition may require the temporary evacuation or closure of all or a portion of the Building. Should Tenant elect to receive any service from a concessionaire, licensee or third party tenant of Landlord, Tenant shall not seek recourse against Landlord for any breach or liability of that service provider. Notwithstanding anything to the contrary contained in this Lease, in no event shall Landlord be liable for Tenant's loss or interruption of business or income (including without limitation, Tenant's consequential damages, lost profits or opportunity costs), or for interference with light or other similar intangible interests.

**10.5. WAIVER OF SUBROGATION.** Landlord and Tenant each hereby waives all rights of recovery against the other on account of loss and damage occasioned to the property of such waiving party to the extent that the waiving party is entitled to proceeds for such loss and damage under any property insurance policies carried or otherwise required to be carried by this Lease; provided however, that the foregoing waiver shall not apply to the extent of Tenant's obligation to pay deductibles under any such policies and this Lease. By this waiver it is the intent of the parties that neither Landlord nor Tenant shall be liable to any insurance company (by way of subrogation or otherwise) insuring the other party for any loss or damage insured against under any property insurance policies, even though such loss or damage might be occasioned by the negligence of such party, its agents, employees, contractors or invitees. The foregoing waiver by Tenant shall also inure to the benefit of Landlord's management agent for the Building.

## ARTICLE 11. DAMAGE OR DESTRUCTION

### 11.1. RESTORATION.

(a)     If the Building of which the Premises are a part is damaged as the result of an event of casualty, then subject to the provisions below, Landlord shall repair that damage as soon as reasonably possible unless Landlord reasonably determines that: (i) the Premises have been materially damaged and there is less than 1 year of the Term remaining on the date of the casualty; (ii) any Mortgagee (defined in Section 13.1) requires that the insurance proceeds be applied to the payment of the mortgage debt; or (iii) proceeds necessary to pay the full cost of the repair are not available from Landlord's insurance, including without limitation earthquake insurance. Should Landlord elect not to repair the damage for one of the preceding reasons, Landlord shall so notify Tenant in the "Casualty Notice" (as defined below), and this Lease shall terminate as of the date of delivery of that notice.

(b)     As soon as reasonably practicable following the casualty event but not later than 60 days thereafter, Landlord shall notify Tenant in writing ("Casualty Notice") of Landlord's election, if applicable, to terminate this Lease. If this Lease is not so terminated, the Casualty Notice shall set forth the anticipated period for repairing the casualty damage. If the anticipated repair period exceeds 180 days and if the damage is so extensive as to reasonably prevent Tenant's substantial use and enjoyment of the Premises, then either party may elect to terminate this Lease by written notice to the other within 10 days

00010

Evers Decl. - Attachment F                                    Pl. Ex. 63
                                                              p. 1785

DocuSign Envelope ID: B0E73FF2-332C-4B87-8837-51AC1EFA4414

following delivery of the Casualty Notice. If Tenant was entitled to but elected not to exercise its right to terminate the Lease and Landlord does not substantially complete the repair and restoration of the Premises within 2 months after expiration of the estimated period of time set forth in the Casualty Notice, which period shall be extended to the extent of any Reconstruction Delays (defined below), then Tenant may terminate this Lease by written notice to Landlord within 15 days after the expiration of such period, as the same may be extended. For purposes of this Lease, the term "Reconstruction Delays" shall mean: (i) any delays caused by the insurance adjustment process; (ii) any delays caused by Tenant; and (iii) any delays caused by events of force majeure.

(c)     In the event that neither Landlord nor Tenant terminates this Lease pursuant to Section 11.1(b), Landlord shall repair all material damage to the Premises or the Building as soon as reasonably possible and this Lease shall continue in effect for the remainder of the Term. Upon notice from Landlord, Tenant shall assign or endorse over to Landlord (or to any party designated by Landlord) all property insurance proceeds payable to Tenant under Tenant's insurance with respect to any Tenant Installations; provided if the estimated cost to repair such Tenant Installations exceeds the amount of insurance proceeds received by Landlord from Tenant's insurance carrier, the excess cost of such repairs shall be paid by Tenant to Landlord prior to Landlord's commencement of repairs. Within 15 days of demand, Tenant shall also pay Landlord for any additional excess costs that are determined during the performance of the repairs to such Tenant Installations.

(d)     From and after the 6th business day following the casualty event, the rental to be paid under this Lease shall be abated in the same proportion that the Floor Area of the Premises that is rendered unusable by the damage from time to time bears to the total Floor Area of the Premises.

(e)     Notwithstanding the provisions of subsections (a), (b) and (c) of this Section 11.1, but subject to Section 10.5, the cost of any repairs shall be borne by Tenant, and Tenant shall not be entitled to rental abatement or termination rights, if the damage is due to the fault or neglect of Tenant or its employees, subtenants, contractors, invitees or representatives. In addition, the provisions of this Section 11.1 shall not be deemed to require Landlord to repair any Tenant Installations, fixtures and other items that Tenant is obligated to insure pursuant to Exhibit D or under any other provision of this Lease.

**11.2. LEASE GOVERNS.** Tenant agrees that the provisions of this Lease, including without limitation Section 11.1, shall govern any damage or destruction and shall accordingly supersede any contrary statute or rule of law.

## ARTICLE 12. EMINENT DOMAIN

Either party may terminate this Lease if any material part of the Premises is taken or condemned for any public or quasi-public use under Law, by eminent domain or private purchase in lieu thereof (a "Taking"). Landlord shall also have the right to terminate this Lease if there is a Taking of any portion of the Building or Project which would have a material adverse effect on Landlord's ability to profitably operate the remainder of the Building. The termination shall be effective as of the effective date of any order granting possession to, or vesting legal title in, the condemning authority. If this Lease is not terminated, Basic Rent and Tenant's Share of Operating Expenses shall be appropriately adjusted to account for any reduction in the square footage of the Building or Premises. All compensation awarded for a Taking shall be the property of Landlord and the right to receive compensation or proceeds in connection with a Taking are expressly waived by Tenant; provided, however, Tenant may file a separate claim for Tenant's personal property and Tenant's reasonable relocation expenses, provided the filing of the claim does not diminish the amount of Landlord's award. If only a part of the Premises is subject to a Taking and this Lease is not terminated Landlord, with reasonable diligence, will restore the remaining portion of the Premises as nearly as practicable to the condition immediately prior to the Taking. Tenant agrees that the provisions of this Lease shall govern any Taking and shall accordingly supersede any contrary statute or rule of law.

## ARTICLE 13. SUBORDINATION; ESTOPPEL CERTIFICATE

**13.1. SUBORDINATION.** Tenant accepts this Lease subject and subordinate to any mortgage(s), deed(s) of trust, ground lease(s) or other lien(s) now or subsequently arising upon the Premises, the Building or the Project, and to renewals, modifications, refinancings and extensions thereof (collectively referred to as a "Mortgage"). The party having the benefit of a Mortgage shall be referred to as a "Mortgagee". This clause shall be self-operative, but upon request from a Mortgagee, Tenant shall execute a commercially reasonable subordination and attornment agreement in favor of the Mortgagee, provided such agreement provides a non-disturbance covenant benefiting Tenant. Alternatively, a Mortgagee shall have the right at any time to subordinate its Mortgage to this Lease. Upon request, Tenant, without charge, shall attorn to any successor to Landlord's interest in this Lease in the event of a foreclosure of any mortgage. Tenant agrees that any purchaser at a foreclosure sale or lender taking title under a deed in lieu of foreclosure shall not be responsible for any act or omission of a prior landlord, shall not be subject to any offsets or defenses Tenant may have against a prior landlord, and shall not be liable for the return of the Security Deposit not actually recovered by such purchaser nor bound by any rent paid in advance of the calendar month in which the transfer of title occurred; provided that the foregoing shall not release the applicable prior landlord from any liability for those obligations. Tenant acknowledges that Landlord's Mortgagees and their successors-in-interest are intended third party beneficiaries of this Section 13.1

00011

Evers Decl. - Attachment F                                            Pl. Ex. 63
                                                                          p. 1786

DocuSign Envelope ID: B0E73FF2-332C-4B87-8B37-91A6YEFAF4E4

**13.2. ESTOPPEL CERTIFICATE.** Tenant shall, within 15 days after receipt of a written request from Landlord, execute and deliver a commercially reasonable estoppel certificate in favor of those parties as are reasonably requested by Landlord (including a Mortgagee or a prospective purchaser of the Building or the Project).

## ARTICLE 14. DEFAULTS AND REMEDIES

**14.1. TENANT'S DEFAULTS.** In addition to any other event of default set forth in this Lease, the occurrence of any one or more of the following events shall constitute a "Default" by Tenant:

(a)    The failure by Tenant to make any payment of Rent required to be made by Tenant, as and when due, where the failure continues for a period of 5 business days after written notice from Landlord to Tenant.  The term "Rent" as used in this Lease shall be deemed to mean the Basic Rent and all other sums required to be paid by Tenant to Landlord pursuant to the terms of this Lease.

(b)    The assignment, sublease, encumbrance or other Transfer of the Lease by Tenant, either voluntarily or by operation of law, whether by judgment, execution, transfer by intestacy or testacy, or other means, without the prior written consent of Landlord unless otherwise authorized in Article 9 of this Lease.

(c)    The discovery by Landlord that any financial statement provided by Tenant, or by any affiliate, successor or guarantor of Tenant, was materially false.

(d)    Except where a specific time period is otherwise set forth for Tenant's performance in this Lease (in which event the failure to perform by Tenant within such time period shall be a Default), the failure or inability by Tenant to observe or perform any of the covenants or provisions of this Lease to be observed or performed by Tenant, other than as specified in any other subsection of this Section 14.1, where the failure continues for a period of 30 days after written notice from Landlord to Tenant.  However, if the nature of the failure is such that more than 30 days are reasonably required for its cure, then Tenant shall not be deemed to be in Default if Tenant commences the cure within 30 days, and thereafter diligently pursues the cure to completion.

The notice periods provided herein are in lieu of, and not in addition to, any notice periods provided by law, and Landlord shall not be required to give any additional notice under California Code of Civil Procedure Section 1161, or any successor statute, in order to be entitled to commence an unlawful detainer proceeding.

**14.2. LANDLORD'S REMEDIES.**

(a)    Upon the occurrence of any Default by Tenant, then in addition to any other remedies available to Landlord, Landlord may exercise the following remedies:

(i)    Landlord may terminate Tenant's right to possession of the Premises by any lawful means, in which case this Lease shall terminate and Tenant shall immediately surrender possession of the Premises to Landlord.  Such termination shall not affect any accrued obligations of Tenant under this Lease.  Upon termination, Landlord shall have the right to reenter the Premises and remove all persons and property.  Landlord shall also be entitled to recover from Tenant:

(1)    The worth at the time of award of the unpaid Rent which had been earned at the time of termination;

(2)    The worth at the time of award of the amount by which the unpaid Rent which would have been earned after termination until the time of award exceeds the amount of such loss that Tenant proves could have been reasonably avoided;

(3)    The worth at the time of award of the amount by which the unpaid Rent for the balance of the Term after the time of award exceeds the amount of such loss that Tenant proves could be reasonably avoided;

(4)    Any other amount necessary to compensate Landlord for all the detriment proximately caused by Tenant's failure to perform its obligations under this Lease or which in the ordinary course of things would be likely to result from Tenant's default, including, but not limited to, the cost of recovering possession of the Premises, commissions and other expenses of reletting, including necessary repair, renovation, improvement and alteration of the Premises for a new tenant, reasonable attorneys' fees, and any other reasonable costs; and

(5)    At Landlord's election, all other amounts in addition to or in lieu of the foregoing as may be permitted by law.  Any sum, other than Basic Rent, shall be computed on the basis of the average monthly amount accruing during the 24 month period immediately prior to Default, except that if it becomes necessary to compute such rental before the 24 month period has occurred, then the computation shall be on the basis of the average monthly amount during the shorter period.  As used in subparagraphs (1) and (2) above, the "worth at the time of award" shall be computed by allowing interest at the rate of 10% per annum.  As used in subparagraph (3) above, the "worth at the time of award" shall be computed by discounting the amount at the discount rate of the Federal Reserve Bank of San Francisco at the time of award plus 1%.

00012

Evers Decl. - Attachment F                                   Pl. Ex. 63
                                                             p. 1787

DocuSign Envelope ID: B0E73FF2-332C-4B87-8B37-57AC1EFAF444

(ii)   Landlord may elect not to terminate Tenant's right to possession of the Premises, in which event Landlord may continue to enforce all of its rights and remedies under this Lease, including the right to collect all rent as it becomes due. Efforts by the Landlord to maintain, preserve or relet the Premises, or the appointment of a receiver to protect the Landlord's interests under this Lease, shall not constitute a termination of the Tenant's right to possession of the Premises. In the event that Landlord elects to avail itself of the remedy provided by this subsection (ii), Landlord shall not unreasonably withhold its consent to an assignment or subletting of the Premises subject to the reasonable standards for Landlord's consent as are contained in this Lease.

(b)   The various rights and remedies reserved to Landlord in this Lease or otherwise shall be cumulative and, except as otherwise provided by California law, Landlord may pursue any or all of its rights and remedies at the same time. No delay or omission of Landlord to exercise any right or remedy shall be construed as a waiver of the right or remedy or of any breach or Default by Tenant. The acceptance by Landlord of rent shall not be a (i) waiver of any preceding breach or Default by Tenant of any provision of this Lease, other than the failure of Tenant to pay the particular rent accepted, regardless of Landlord's knowledge of the preceding breach or Default at the time of acceptance of rent, or (ii) a waiver of Landlord's right to exercise any remedy available to Landlord by virtue of the breach or Default. The acceptance of any payment from a debtor in possession, a trustee, a receiver or any other person acting on behalf of Tenant or Tenant's estate shall not waive or cure a Default under Section 14.1. No payment by Tenant or receipt by Landlord of a lesser amount than the rent required by this Lease shall be deemed to be other than a partial payment on account of the earliest due stipulated rent, nor shall any endorsement or statement on any check or letter be deemed an accord and satisfaction and Landlord shall accept the check or payment without prejudice to Landlord's right to recover the balance of the rent or pursue any other remedy available to it. Tenant hereby waives any right of redemption or relief from forfeiture under California Code of Civil Procedure Section 1174 or 1179, or under any successor statute, in the event this Lease is terminated by reason of any Default by Tenant. No act or thing done by Landlord or Landlord's agents during the Term shall be deemed an acceptance of a surrender of the Premises, and no agreement to accept a surrender shall be valid unless in writing and signed by Landlord. No employee of Landlord or of Landlord's agents shall have any power to accept the keys to the Premises prior to the termination of this Lease, and the delivery of the keys to any employee shall not operate as a termination of the Lease or a surrender of the Premises.

**14.3.   LATE PAYMENTS.**   Any Rent due under this Lease that is not paid to Landlord within 5 business days of the date when due shall bear interest at the maximum rate permitted by law from the date due until fully paid. The payment of interest shall not cure any Default by Tenant under this Lease. In addition, Tenant acknowledges that the late payment by Tenant to Landlord of rent will cause Landlord to incur costs not contemplated by this Lease, the exact amount of which will be extremely difficult and impracticable to ascertain. Those costs may include, but are not limited to, administrative, processing and accounting charges, and late charges which may be imposed on Landlord by the terms of any ground lease, mortgage or trust deed covering the Premises. Accordingly, if any rent due from Tenant shall not be received by Landlord or Landlord's designee within 5 business days after the date due, then Tenant shall pay to Landlord, in addition to the interest provided above, a late charge for each delinquent payment equal to the greater of (i) 5% of that delinquent payment or (ii) $100.00. Acceptance of a late charge by Landlord shall not constitute a waiver of Tenant's Default with respect to the overdue amount, nor shall it prevent Landlord from exercising any of its other rights and remedies.

**14.4.   RIGHT OF LANDLORD TO PERFORM.**   If Tenant is in Default of any of its obligations under the Lease, Landlord shall have the right to perform such obligations. Tenant shall reimburse Landlord for the cost of such performance upon demand together with an administrative charge equal to 10% of the cost of the work performed by Landlord.

**14.5.   DEFAULT BY LANDLORD.**   Landlord shall not be deemed to be in default in the performance of any obligation under this Lease unless and until it has failed to perform the obligation within 30 days after written notice by Tenant to Landlord specifying in reasonable detail the nature and extent of the failure; provided, however, that if the nature of Landlord's obligation is such that more than 30 days are required for its performance, then Landlord shall not be deemed to be in default if it commences performance within the 30 day period and thereafter diligently pursues the cure to completion. Tenant hereby waives any right to terminate or rescind this Lease as a result of any default by Landlord hereunder or any breach by Landlord of any promise or inducement relating hereto, and Tenant agrees that its remedies shall be limited to a suit for actual damages and/or injunction and shall in no event include any consequential damages, lost profits or opportunity costs.

**14.6.   EXPENSES AND LEGAL FEES.**   Should either Landlord or Tenant bring any action in connection with this Lease, the prevailing party shall be entitled to recover as a part of the action its reasonable attorneys' fees, and all other reasonable costs. The prevailing party for the purpose of this paragraph shall be determined by the trier of the facts.

**14.7.   WAIVER OF JURY TRIAL/JUDICIAL REFERENCE.**

(a)   LANDLORD AND TENANT EACH ACKNOWLEDGES THAT IT IS AWARE OF AND HAS HAD THE ADVICE OF COUNSEL OF ITS CHOICE WITH RESPECT TO ITS RIGHT TO TRIAL BY JURY, AND EACH PARTY DOES HEREBY EXPRESSLY AND KNOWINGLY WAIVE AND RELEASE ALL SUCH RIGHTS TO TRIAL BY JURY IN ANY ACTION, PROCEEDING OR COUNTERCLAIM BROUGHT BY EITHER PARTY HERETO AGAINST THE OTHER (AND/OR AGAINST ITS OFFICERS,

00013

Evers Decl. - Attachment F

Pl. Ex. 63
p. 1788

DocuSign Envelope ID: B0E73FF2-332C-4B67-8B37-51AC1EFAF444

DIRECTORS, EMPLOYEES, AGENTS, OR SUBSIDIARY OR AFFILIATED ENTITIES) ON ANY MATTERS WHATSOEVER ARISING OUT OF OR IN ANY WAY CONNECTED WITH THIS LEASE, TENANT'S USE OR OCCUPANCY OF THE PREMISES, AND/OR ANY CLAIM OF INJURY OR DAMAGE.

(b)    In the event that the jury waiver provisions of Section 14.7(a) are not enforceable under California law, then, unless otherwise agreed to by the parties, the provisions of this Section 14.7(b) shall apply.  Landlord and Tenant agree that any disputes arising in connection with this Lease (including but not limited to a determination of any and all of the issues in such dispute, whether of fact or of law) shall be resolved (and a decision shall be rendered) by way of a general reference as provided for in Part 2, Title 8, Chapter 6 (§§ 638 et. seq.) of the California Code of Civil Procedure, or any successor California statute governing resolution of disputes by a court appointed referee.  Nothing within this Section 14.7 shall apply to an unlawful detainer action.

**14.8   SATISFACTION OF JUDGMENT.**  The obligations of Landlord do not constitute the personal obligations of the individual partners, trustees, directors, officers, members or shareholders of Landlord or its constituent partners or members. Should Tenant recover a money judgment against Landlord, such judgment shall be satisfied only from the interest of Landlord in the Project and out of the rent or other income from such property receivable by Landlord, and no action for any deficiency may be sought or obtained by Tenant.

## ARTICLE 15. END OF TERM

**15.1.   HOLDING OVER.**  If Tenant holds over for any period after the Expiration Date (or earlier termination of the Term) without the prior written consent of Landlord, such tenancy shall constitute a tenancy at sufferance only and a Default by Tenant; such holding over with the prior written consent of Landlord shall constitute a month-to-month tenancy commencing on the 1st day following the termination of this Lease and terminating 30 days following delivery of written notice of termination by either Landlord or Tenant to the other. In either of such events, possession shall be subject to all of the terms of this Lease, except that the monthly rental shall be 150 % of the total monthly rental for the month immediately preceding the date of termination, subject to Landlord's right to modify same upon 30 days notice to Tenant. The acceptance by Landlord of monthly hold-over rental in a lesser amount shall not constitute a waiver of Landlord's right to recover the full amount due unless otherwise agreed in writing by Landlord. If Tenant fails to vacate the Premises within 15 days after Landlord notifies Tenant that Landlord has entered into a lease for the Premises or has received a bona fide offer to lease the Premises and that Landlord will be unable to deliver possession or perform improvements due to Tenant's holdover, and if Landlord is unable to deliver possession of the Premises to a new tenant or to perform improvements for a new tenant as a result of Tenant's holdover, then Tenant shall be liable for all damages that Landlord suffers from the holdover. Tenant shall also indemnify and hold Landlord harmless from all loss or liability, including without limitation, any claims made by any succeeding tenant relating to such failure to surrender.  The foregoing provisions of this Section 15.1 are in addition to and do not affect Landlord's right of re-entry or any other rights of Landlord under this Lease or at law.

**15.2.   SURRENDER OF PREMISES; REMOVAL OF PROPERTY.**  Upon the Expiration Date or upon any earlier termination of this Lease, Tenant shall quit and surrender possession of the Premises to Landlord in as good order, condition and repair as when received or as hereafter may be improved by Landlord or Tenant, reasonable wear and tear and repairs which are Landlord's obligation excepted, and shall remove or fund to Landlord the cost of removing all wallpapering, voice and/or data transmission cabling installed by or for Tenant and Required Removables, together with all personal property and debris, and shall perform all work required under Section 7.3 of this Lease.  If Tenant shall fail to comply with the provisions of this Section 15.2, Landlord may effect the removal and/or make any repairs, and the cost to Landlord shall be additional rent payable by Tenant upon demand.

## ARTICLE 16. PAYMENTS AND NOTICES

All sums payable by Tenant to Landlord shall be paid, without deduction or offset, in lawful money of the United States to Landlord at its address set forth in Item 12 of the Basic Lease Provisions, or at any other place as Landlord may designate in writing.  Unless this Lease expressly provides otherwise, as for example in the payment of rent pursuant to Section 4.1, all payments shall be due and payable within 5 business days after written demand. All payments requiring proration shall be prorated on the basis of the number of days in the pertinent calendar month or year, as applicable. Any notice, election, demand, consent, approval or other communication to be given or other document to be delivered by either party to the other may be delivered to the other party, at the address set forth in Item 12 of the Basic Lease Provisions, by personal service, or by any courier or "overnight" express mailing service. Either party may, by written notice to the other, served in the manner provided in this Article, designate a different address.  The refusal to accept delivery of a notice, or the inability to deliver the notice (whether due to a change of address for which notice was not duly given or other good reason), shall be deemed delivery and receipt of the notice as of the date or attempted delivery.  If more than one person or entity is named as Tenant under this Lease, service of any notice upon any one of them shall be deemed as service upon all of them.

## ARTICLE 17. RULES AND REGULATIONS

Tenant agrees to comply with the Rules and Regulations attached as Exhibit E, and any reasonable and nondiscriminatory amendments, modifications and/or additions as may be adopted and published by

00014

Evers Decl. - Attachment F

Pl. Ex. 63
p. 1789

written notice to tenants by Landlord for the safety, care, security, good order, or cleanliness of the Premises, Building, Project and/or Common Areas. Landlord shall not be liable to Tenant for any violation of the Rules and Regulations or the breach of any covenant or condition in any lease or any other act or conduct by any other tenant, and the same shall not constitute a constructive eviction hereunder. One or more waivers by Landlord of any breach of the Rules and Regulations by Tenant or by any other tenant(s) shall not be a waiver of any subsequent breach of that rule or any other. Tenant's failure to keep and observe the Rules and Regulations shall constitute a default under this Lease. In the case of any conflict between the Rules and Regulations and this Lease, this Lease shall be controlling.

### ARTICLE 18. BROKER'S COMMISSION

The parties recognize as the broker(s) who negotiated this Lease the firm(s) whose name(s) is (are) stated in Item 10 of the Basic Lease Provisions, and agree that Landlord shall be responsible for the payment of brokerage commissions to those broker(s) unless otherwise provided in this Lease. It is understood that Landlord's Broker represents only Landlord in this transaction and Tenant's Broker (if any) represents only Tenant. Each party warrants that it has had no dealings with any other real estate broker or agent in connection with the negotiation of this Lease, and agrees to indemnify and hold the other party harmless from any cost, expense or liability (including reasonable attorneys' fees) for any compensation, commissions or charges claimed by any other real estate broker or agent employed or claiming to represent or to have been employed by the indemnifying party in connection with the negotiation of this Lease. The foregoing agreement shall survive the termination of this Lease.

### ARTICLE 19. TRANSFER OF LANDLORD'S INTEREST

In the event of any transfer of Landlord's interest in the Premises, the transferor shall be automatically relieved of all obligations on the part of Landlord accruing under this Lease from and after the date of the transfer, provided that Tenant is duly notified of the transfer. Any funds held by the transferor in which Tenant has an interest, including without limitation, the Security Deposit, shall be turned over, subject to that interest, to the transferee. No Mortgagee to which this Lease is or may be subordinate shall be responsible in connection with the Security Deposit unless the Mortgagee actually receives the Security Deposit. It is intended that the covenants and obligations contained in this Lease on the part of Landlord shall, subject to the foregoing, be binding on Landlord, its successors and assigns, only during and in respect to their respective successive periods of ownership.

### ARTICLE 20. INTERPRETATION

**20.1.  NUMBER.**  Whenever the context of this Lease requires, the words "Landlord" and "Tenant" shall include the plural as well as the singular.

**20.2.  HEADINGS.**  The captions and headings of the articles and sections of this Lease are for convenience only, are not a part of this Lease and shall have no effect upon its construction or interpretation.

**20.3.  JOINT AND SEVERAL LIABILITY.**  If more than one person or entity is named as Tenant, the obligations imposed upon each shall be joint and several and the act of or notice from, or notice or refund to, or the signature of, any one or more of them shall be binding on all of them with respect to the tenancy of this Lease, including, but not limited to, any renewal, extension, termination or modification of this Lease.

**20.4.  SUCCESSORS.**  Subject to Sections 13.1 and 22.3 and to Articles 9 and 19 of this Lease, all rights and liabilities given to or imposed upon Landlord and Tenant shall extend to and bind their respective heirs, executors, administrators, successors and assigns. Nothing contained in this Section 20.4 is intended, or shall be construed, to grant to any person other than Landlord and Tenant and their successors and assigns any rights or remedies under this Lease.

**20.5.  TIME OF ESSENCE.**  Time is of the essence with respect to the performance of every provision of this Lease in which time of performance is a factor.

**20.6.  CONTROLLING LAW/VENUE.**  This Lease shall be governed by and interpreted in accordance with the laws of the State of California. Should any litigation be commenced between the parties in connection with this Lease, such action shall be prosecuted in the applicable State Court of California in the county in which the Building is located.

**20.7.  SEVERABILITY.**  If any term or provision of this Lease, the deletion of which would not adversely affect the receipt of any material benefit by either party or the deletion of which is consented to by the party adversely affected, shall be held invalid or unenforceable to any extent, the remainder of this Lease shall not be affected and each term and provision of this Lease shall be valid and enforceable to the fullest extent permitted by law.

**20.8.  WAIVER.**  One or more waivers by Landlord or Tenant of any breach of any term, covenant or condition contained in this Lease shall not be a waiver of any subsequent breach of the same or any other term, covenant or condition. Consent to any act by one of the parties shall not be deemed to render unnecessary the obtaining of that party's consent to any subsequent act. No breach of this Lease shall be deemed to have been waived unless the waiver is in a writing signed by the waiving party.

00015

Evers Decl. - Attachment F                    Pl. Ex. 63
p. 1790

DocuSign Envelope ID: B0E73FF2-332C-4B87-8837-51AC1EFAF444

**20.9.  INABILITY TO PERFORM.**  In the event that either party shall be delayed or hindered in or prevented from the performance of any work or in performing any act required under this Lease by reason of any cause beyond the reasonable control of that party, then the performance of the work or the doing of the act shall be excused for the period of the delay and the time for performance shall be extended for a period equivalent to the period of the delay.  The provisions of this Section 20.9 shall not operate to excuse Tenant from the prompt payment of Rent.

**20.10.  ENTIRE AGREEMENT.**  This Lease and its exhibits and other attachments cover in full each and every agreement of every kind between the parties concerning the Premises, the Building, and the Project, and all preliminary negotiations, oral agreements, understandings and/or practices, except those contained in this Lease, are superseded and of no further effect.  Tenant waives its rights to rely on any representations or promises made by Landlord or others which are not contained in this Lease.  No verbal agreement or implied covenant shall be held to modify the provisions of this Lease, any statute, law, or custom to the contrary notwithstanding.

**20.11.  QUIET ENJOYMENT.**  Upon the observance and performance of all the covenants, terms and conditions on Tenant's part to be observed and performed, and subject to the other provisions of this Lease, Tenant shall have the right of quiet enjoyment and use of the Premises for the Term without hindrance or interruption by Landlord or any other person claiming by or through Landlord.

**20.12.  SURVIVAL.**  All covenants of Landlord or Tenant which reasonably would be intended to survive the expiration or sooner termination of this Lease, including without limitation any warranty or indemnity hereunder, shall so survive and continue to be binding upon and inure to the benefit of the respective parties and their successors and assigns.

## ARTICLE 21.  EXECUTION AND RECORDING

**21.1.  COUNTERPARTS; DIGITAL SIGNATURES.**  This Lease may be executed in one or more counterparts, each of which shall constitute an original and all of which shall be one and the same agreement.  The parties agree to accept a digital image (including but not limited to an image in the form of a PDF, JPEG, GIF file, or other e-signature) of this Lease, if applicable, reflecting the execution of one or both of the parties, as a true and correct original.

**21.2.  CORPORATE AND PARTNERSHIP AUTHORITY.**  If Tenant is a corporation, limited liability company or partnership, each individual executing this Lease on behalf of the entity represents and warrants that such individual is duly authorized to execute and deliver this Lease and that this Lease is binding upon the corporation, limited liability company or partnership in accordance with its terms.  Tenant shall, at Landlord's request, deliver a certified copy of its organizational documents or an appropriate certificate authorizing or evidencing the execution of this Lease.

**21.3.  EXECUTION OF LEASE; NO OPTION OR OFFER.**  The submission of this Lease to Tenant shall be for examination purposes only, and shall not constitute an offer to or option for Tenant to lease the Premises.  Execution of this Lease by Tenant and its return to Landlord shall not be binding upon Landlord, notwithstanding any time interval, until Landlord has in fact executed and delivered this Lease to Tenant, it being intended that this Lease shall only become effective upon execution by Landlord and delivery of a fully executed counterpart to Tenant.

**21.4.  RECORDING.**  Tenant shall not record this Lease without the prior written consent of Landlord.  Tenant, upon the request of Landlord, shall execute and acknowledge a "short form" memorandum of this Lease for recording purposes.

**21.5.  AMENDMENTS.**  No amendment or mutual termination of this Lease shall be effective unless in writing signed by authorized signatories of Tenant and Landlord, or by their respective successors in interest.  No actions, policies, oral or informal arrangements, business dealings or other course of conduct by or between the parties shall be deemed to modify this Lease in any respect.

**21.6.  BROKER DISCLOSURE.**  By the execution of this Lease, each of Landlord and Tenant hereby acknowledge and confirm (a) receipt of a copy of a Disclosure Regarding Real Estate Agency Relationship conforming to the requirements of California Civil Code 2079.16, and (b) the agency relationships specified in Item 10 of the Basic Lease Provisions, which acknowledgement and confirmation is expressly made for the benefit of Tenant's Broker identified in Item 10 of the Basic Lease Provisions.  If there is no Tenant's Broker so identified in Item 10 of the Basic Lease Provisions, then such acknowledgement and confirmation is expressly made for the benefit of Landlord's Broker.  By the execution of this Lease, Landlord and Tenant are executing the confirmation of the agency relationships set forth in Item 10 of the Basic Lease Provisions.

## ARTICLE 22.  MISCELLANEOUS

**22.1.  NONDISCLOSURE OF LEASE TERMS.**  Tenant acknowledges that the content of this Lease and any related documents are confidential information.  Except to the extent disclosure is required by law, Tenant shall keep such confidential information strictly confidential and shall not disclose such confidential information to any person or entity other than Tenant's financial, legal and space-planning consultants, provided, however, that Tenant may disclose the terms to prospective subtenants or assignees under this Lease or pursuant to legal requirement.

00016

Evers Decl. - Attachment F

**22.2. TENANT'S FINANCIAL STATEMENTS.** The application, financial statements and tax returns, if any, submitted and certified to by Tenant as an accurate representation of its financial condition have been prepared, certified and submitted to Landlord as an inducement and consideration to Landlord to enter into this Lease. Tenant shall during the Term furnish Landlord with current annual financial statements accurately reflecting Tenant's financial condition upon written request from Landlord within 10 days following Landlord's request; provided, however, that so long as Tenant is a publicly traded corporation on a nationally recognized stock exchange, the foregoing obligation to deliver the statements shall be waived.

**22.3. MORTGAGEE PROTECTION.** No act or failure to act on the part of Landlord which would otherwise entitle Tenant to be relieved of its obligations hereunder or to terminate this Lease shall result in such a release or termination unless (a) Tenant has given notice by registered or certified mail to any Mortgagee of a Mortgage covering the Building whose address has been furnished to Tenant and (b) such Mortgagee is afforded a reasonable opportunity to cure the default by Landlord (which shall in no event be less than 60 days), including, if necessary to effect the cure, time to obtain possession of the Building by power of sale or judicial foreclosure provided that such foreclosure remedy is diligently pursued. Tenant shall comply with any written directions by any Mortgagee to pay Rent due hereunder directly to such Mortgagee without determining whether a default exists under such Mortgagee's Mortgage.

**22.4. SDN LIST.** Landlord and Tenant hereby represent and warrant that neither it nor any officer, director, partner, member or other principal is listed as a Specially Designated National and Blocked Person ("SDN") on the list of such persons and entities issued by the U.S. Treasury Office of Foreign Assets Control (OFAC). In the event Tenant or any Tenant Party is or becomes listed as an SDN, Tenant shall be deemed in breach of this Lease and Landlord shall have the right to terminate this Lease immediately upon written notice to Tenant.

**LANDLORD:**                                    **TENANT:**

**DISCOVERY BUSINESS CENTER LLC,**              **PRIME CONSULTING LLC,**
a Delaware limited liability company            a Wyoming limited liability company

By _Steven M. Case_                             By _____
   F2AE8205FE85486                                 12EE0E7051A945F

Steven M. Case                                  Printed Name   Calvin Ho

Executive Vice President                        Title   Operations Director


By _Holly McManus_                              By _____
   23858600F144482

Holly McManus                                   Printed Name

Vice President, Operations                      Title


JM

00017

Evers Decl. - Attachment F                    Pl. Ex. 63
                                              p. 1792

DocuSign Envelope ID: 8B512B66-77CF-43E6-8D9C-891DF2C4095F

## GUARANTEE OF LEASE

### ARTICLE 1.  PARTIES

The undersigned (hereinafter collectively "Guarantor"), whose address is hereinafter set forth, as a material inducement to and in consideration of DISCOVERY BUSINESS CENTER LLC, a Delaware limited liability company (hereinafter "Landlord") entering into a written lease (hereinafter, the "Lease") with PRIME CONSULTING LLC, a Wyoming limited liability company (hereinafter "Tenant"), of approximately even date herewith, for lease of that certain space located at 15261 Laguna Canyon Road, Suite 200, Irvine, California, and more particularly described in the Lease, pursuant to the provisions of this Guarantee of Lease (the "Guarantee") unconditionally guarantees and promises to and for the benefit of Landlord full payment and performance of each and all of the terms, covenants and conditions of the Lease by Tenant, all as more specifically set forth hereinafter.

### ARTICLE 2.  GUARANTOR'S DUTIES

#### Section 2.1.  Guarantee of Tenant's Performance

Guarantor hereby unconditionally guarantees to Landlord the full and complete performance of each and all of the terms, covenants and conditions of the Lease as required to be performed by Tenant, including, but not limited to, the payment of all rental, property taxes, operating expenses, and any and all other charges or sums, or any portion thereof, to accrue or become due from Tenant to Landlord pursuant to the terms of the Lease.

#### Section 2.2.  Tenant's Failure to Perform

2.2.1.  Payment of Rental and Other Sums.  In the event that Tenant shall fail to pay any rental, property taxes, operating expenses, or any other sums or charges, or any portion thereof, accrued or due pursuant to the terms of said Lease, including without limitation any obligations incurred by Tenant, including as to a hold-over beyond the term of the Lease, then upon written notice to Guarantor by Landlord as herein provided, Guarantor shall within 5 business days pay to Landlord or Landlord's designated agent any and all such amounts as may be due and owing from Tenant to Landlord by reason of Tenant's failure to perform.

2.2.2.  Other Provisions.  In the event that Tenant shall fail to perform any covenants, terms or conditions of the Lease as required to be performed, other than as provided for in Section 2.2.1. above, then upon written notice to Guarantor by Landlord, as provided herein, Guarantor shall commence and complete performance of such conditions, covenants and terms within 5 business days after the date of Landlord's notice to Guarantor of such failure by Tenant to so perform, and in the event such performance by Guarantor cannot be completed within said 5 business days, Guarantor shall commence performance within said time and shall diligently pursue completion thereof within a reasonable time duly set forth hereinafter.

2.2.3.  Interest and Additional Damages.  In addition to the payment of rental and other sums, and the performance of any and all other provisions, conditions and terms of the Lease which may be required of Guarantor by reason of Tenant's failure to perform, Guarantor agrees to pay to Landlord any and all reasonable and necessary incidental damages and expenses incurred by Landlord as a direct and proximate result of Tenant's failure to perform.  Guarantor further agrees to pay to Landlord interest on any and all sums due and owing Landlord, by reason of Tenant's failure to pay same, at the highest rate as allowed by law at the time of payment thereof.

#### Section 2.3.  Statements of Guarantor.

Guarantor shall deliver to Landlord, prior to the execution of this Guarantee and thereafter at any time upon Landlord's request, Guarantor's current tax returns and financial statements, certified true, accurate and complete by the chief financial officer of Guarantor, including a balance sheet and profit and loss statement for the most recent prior year or, in the event Guarantor is a publicly traded corporation on a nationally recognized stock exchange, Tenant's current financial reports filed with the Securities and Exchange Commission (collectively, the "Statements"), which Statements shall accurately and completely reflect the financial condition of Guarantor.  Landlord agrees that it will keep the Statements confidential, except that Landlord shall have the right to deliver the same to any proposed purchaser or encumbrancer of the premises described in the Lease.

### ARTICLE 3.  LANDLORD'S RIGHTS

#### Section 3.1.  Enforcement

Notwithstanding the provisions of Section 2.2.1. above, Landlord reserves the right, in the event of any failure of Tenant to pay rental, property taxes, operating expenses and other sums which may become due and owing pursuant to the terms of the Lease, to proceed against Tenant or Guarantor, or both, and to enforce against Guarantor or Tenant, or both, any and all rights that Landlord may have to said rental, property taxes, operating expenses and other sums accrued pursuant to the terms of the Lease, without giving prior notice to Tenant or Guarantor, and without issuing demands therefor on either of them.  Guarantor understands and agrees that its liability under this Guarantee shall be primary (and joint and several with Tenant) and that, in any right of action which may accrue to Landlord under the Lease or this Guarantee, Landlord at its option may proceed against Guarantor without having taken any action or obtained any judgment against Tenant.

00034

Evers Decl. - Attachment F                                          Pl. Ex. 63
                                                                                p. 1793

DocuSign Envelope ID: 8B512B66-77CF-43E6-BD9C-891DF204095F

### Section 3.2. Guarantor's Waivers

In addition to any other waiver herein and except as otherwise specifically provided in this Guarantee, Guarantor hereby waives:

(a) any and all notices, presentments, notice of nonpayment or nonperformance;

(b) all defenses by reason of any disability of Tenant;

(c) any and all rights it may have now or in the future, whether pursuant to Section 2845 of the California Civil Code or otherwise, to require or demand that Landlord pursue any right or remedy Landlord may have against Tenant or any other third party;

(d) until such time as all obligations of Tenant under the Lease have been satisfied in full, any and all rights it may have for subrogation against, or reimbursement from, Tenant with respect to any sums paid hereunder; and

(e) any and all right to the benefit of, or to participate in, any security held by Landlord now or in the future, or to require that such security be applied by Landlord either (i) prior to any action against Guarantor hereunder or (ii) as a credit or offset against sums owing hereunder.

## ARTICLE 4. ALTERATION, MODIFICATION, OR ASSIGNMENT

### Section 4.1. Effect of Extension, Modification, or Alteration of Lease

Guarantor understands and agrees that notwithstanding the provisions of Section 2819 of the California Civil Code, the obligations of Guarantor under this Guarantee shall in no way be affected by any extension, modification or alteration of the Lease, including, but not limited to, Tenant entering into any sublease thereunder, or Tenant's obligations under the Lease and each of its provisions, and any such extension, modification or alteration of the Lease, including Tenant entering into any sublease thereunder, shall in no way release or discharge Guarantor from any obligations accruing under this Guarantee. The term "Lease" shall include all amendments, modifications, alterations and extensions of the Lease.

### Section 4.2. Assignment

Guarantor understands and agrees that any assignment of the Lease, or any rights or obligations accruing thereunder, shall in no way affect Guarantor's obligations under this Guarantee.

### Section 4.3. Delay in Enforcement/Settlements

Guarantor understands and agrees that any failure or delay of Landlord to enforce any of its rights under the Lease or this Guarantee shall in no way affect Guarantor's obligations under this Guarantee, nor shall any settlement or release with Tenant or any third party release or discharge Guarantor from its obligations hereunder.

## ARTICLE 5. TENANT'S INSOLVENCY

### Section 5.1. Liability upon Tenant's Insolvency

Guarantor understands and agrees that in the event Tenant shall become insolvent or be adjudicated bankrupt, whether by voluntary or involuntary petition, or shall a petition for organization, arrangement, or similar relief be filed against it, or if a receiver of any part of its property or assets is appointed by any court, Guarantor will remain obligated to pay to Landlord the amount of all unpaid rent, property taxes, operating expenses, and any other sums accrued and thereafter accruing under the Lease.

### Section 5.2. Effect of Operation of Law

Any operation of any present or future debtor's relief act or similar act or law, or decision of any court, shall in no way abrogate or otherwise limit the obligation of Guarantor to perform any of the terms, covenants or conditions of this Guarantee.

## ARTICLE 6. MISCELLANEOUS

### Section 6.1. Notices

Any and all notices required under this Guarantee shall be made in writing, and shall be personally delivered, sent by reputable courier or overnight delivery service, or mailed, first-class mail, postage prepaid, to the party who is designated to receive such notice at the address set forth after their respective signatures on this Guarantee, or at such other place as may be designated by said party upon written notice from time to time hereafter.

00035

Evers Decl. - Attachment F

Pl. Ex. 63
p. 1794

### Section 6.2. Extent of Obligations

Notwithstanding anything to the contrary in this Guarantee, it is understood and agreed that this Guarantee shall extend to any and all obligations of Tenant under the Lease.

### Section 6.3. Assignability

This agreement may be assigned in whole or in part by Landlord at any time to any successor to Landlord's interest in the leased premises and/or to any lender of Landlord.

### Section 6.4. Successors and Assigns

The terms and provisions of this Guarantee shall be binding upon and inure to the benefit of the successors and assigns of the parties hereto.

### Section 6.5. Modification of Guarantee

This Guarantee constitutes the full and complete agreement between the parties hereto, and it is understood and agreed that the provisions hereof may only be modified by a writing executed by both parties hereto.

### Section 6.6. Number and Gender

As used herein the singular shall include the plural, and as used herein the masculine shall include the feminine and neuter genders.

### Section 6.7. Captions/Headings

Any captions or headings used in this Guarantee are for reference purposes only and are in no way to be construed as part of this Guarantee.

### Section 6.8. Invalidity

If any term, provision, covenant or condition of this Guarantee is held to be void, invalid, or unenforceable, the remainder of the provisions shall remain in full force and effect and shall in no way be affected, impaired, or invalidated.

### Section 6.9. Jurisdiction

The validity of this agreement and of any of its terms or provisions, as well as the rights and duties of the parties hereunder, shall be interpreted and construed pursuant to and in accordance with the laws of the State of California.  Guarantor consents to the jurisdiction of any competent state or federal court in California where Landlord may elect to initiate an action to enforce its rights hereunder.

### Section 6.10. Joint and Several

Should more than one party execute this instrument as Guarantor, then the obligations of each such party shall be joint and several.

### Section 6.11. Attorney's Fees

In the event it becomes necessary to enforce any of the terms and provisions of this Guarantee, whether or not suit be instituted, the prevailing party shall be entitled to its reasonable costs and expenses incurred with respect thereto, including, but not limited to, reasonable attorney's fees, and such other costs and expenses as may be allowed by law.

### Section 6.12. Guarantee of Payment and Performance

It is understood and agreed that this Guarantee is unconditional and continuing, and a guarantee of payment and performance and not of collection.

### Section 6.13. WAIVER OF JURY TRIAL/JUDICIAL REFERENCE   LANDLORD AND GUARANTOR HEREBY ACKNOWLEDGE AND AGREE THAT THE PROVISIONS OF 14.7 OF THE LEASE SHALL BE INCORPORATED BY REFERENCE INTO THIS GUARANTEE, AND THAT ALL REFERENCES TO "TENANT" IN THAT SECTION SHALL BE DEEMED TO REFER TO GUARANTOR FOR PURPOSES HEREOF.

### Section 6.14. COUNTERPARTS; DIGITAL SIGNATURES. This Guarantee may be executed in one or more counterparts, if applicable, each of which shall constitute an original and all of which shall be one and the same agreement. The parties agree to accept a digital image (including but not limited to an image in the form of a PDF, JPEG, GIF file, or other e-signature) of this Guarantee, if applicable, reflecting the execution of one or both of the parties, as a true and correct original.

**[SIGNATURES ON FOLLOWING PAGE]**

00036

Evers Decl. - Attachment F                    Pl. Ex. 63
p. 1795

## ARTICLE 7. EXECUTION

IN WITNESS WHEREOF, the undersigned have executed this Guarantee and made it effective as of October 10, 2018

**CONSUMER ADVOCACY CENTER INC.**
a California corporation

By _Albert Kim_
— 126AD6637817436
Printed Name   Alber Kim

Title  Owner


By

**Printed Name**

Title


Address

_____
_____
_____

Guarantee - IOPLEGAL-10-29943

4

10/6/2018 - 250850 - 0.2

00037

Evers Decl. - Attachment F

Pl. Ex. 63
p. 1796

# IRVINE COMPANY | OFFICE PROPERTIES
Since 1864

## ACCEPTANCE OF PREMISES
## COMMENCEMENT MEMORANDUM

| | | | |
|---|---|---|---|
| Date: | 10/11/2018 | Floor: | Second |
| Building ID: | 662155000 | Suite #: | 200 |
| Address: | 15261 Laguna Canyon Road | Lease ID: | |
| City: | Irvine | | |

I have today inspected the lease premises referenced above, which is leased to:

**Prime Consulting LLC**

and hereby acknowledge and agree to the following:

(a) The date of tender of posession by Landlord of these premises is

**October 12, 2018**

(b) Rent will commence on **10/15/18**

(c) The lease term will commence on **10/15/18**

and expire on **10/31/20** and, if necessary, said dates may be

inserted by the Tenant and Landlord on the Basic Lease Provisions

page of each copy of the lease.

SAID PREMISES ARE SATISFACTORY AND COMPLETE AND ARE HEREBY ACCEPTED
SUBJECT TO CORRECTION OF THE FOLLOWING ITEMS (IF ANY):

Insurance Certificate Received:   no

Tenant signature

Print Name

Landlord representative

Jimmy Kim
Print Name

*A copy of the fully executed form must be sent to the Tenant, Accounting, Construction, and Leasing with the original maintained in the Lease file.*

**00038**



| Item ID | Item Type | Check Account Number | RTN | Check No./ Aux-On-Us | Item Status | Item Amount |
|---------|-----------|----------------------|-----|----------------------|-------------|-------------|
| 101118783087904 | Check | | | 006007 | Deposit Complete | $221,511.00 |
| **Building ID:** | **662155** | | **Lease ID:** | | **250036** | |

**End of Report**

© Copyright 2005 - 2018 Wells Fargo  All rights reserved

00050

Evers Decl. - Attachment F

Pl. Ex. 63
p. 1798

**Exhibit**

Declaration of Anneliese Simmons

Pursuant to 28 U.S.C. § 1746

I, Anneliese Simmons, hereby declare and state as follows:

1.      I am competent to make this declaration and have personal knowledge of the following facts.

2.      I am the Stakeholder Services Manager in the Office of Consumer Response (Consumer Response) at the Bureau of Consumer Financial Protection (Bureau).

3.      Under the Dodd-Frank Wall Street Reform and Consumer Protection Act, the Bureau is required to "facilitate the centralized collection of, monitoring of, and response to consumer complaints regarding consumer financial products or services."[1]

4.      Consumers can submit complaints to the Bureau on the Bureau's website or by phone, email, mail, fax, or through a referral. After review, complaints are forwarded via a secure web portal called the "Company Portal" to the appropriate company for response. The Company Portal allows companies to view and respond to complaints submitted to the Bureau, supports the efficient routing of consumer complaints to companies, and enables a timely and secure response by companies to the Bureau and consumers.

5.      Companies register for access to the Company Portal through completing the Boarding Form. The Boarding Form, available on the CFPB's website, provides details about the company's structure, organization, affiliates and subsidiaries. During the boarding process, companies are instructed on how to

---

[1]  Codified at 12 U.S.C. 5493(b)(3)(A). *See also* Dodd-Frank Act, Section 1034 (discussing responses to consumer complaints), codified at 12 U.S.C. 5534; Section 1021(c)(2) (noting that one of the Bureau's primary functions is "collecting, investigating, and responding to consumer complaints"), codified at 12 U.S.C. 5511(c)(2).

1