# Exhibit

## DECLARATION OF Mansour Heidari
## PURSUANT TO 28 U.S.C. § 1746

I, Mansour Heidari, hereby state that I have personal knowledge of the facts as set forth below. If called as a witness, I could and would testify as follows:

1.     I am a citizen of the United States and am over eighteen (18) years of age. I am an employee of the Bureau of Consumer Financial Protection (Bureau). I am a forensic accountant working in the Office of Enforcement within the Bureau in Washington, D.C. As an employee with the Bureau, my current duties include conducting financial and data analysis as evidence for investigations. I have been an employee of the Bureau since November 6, 2011.

2.     I am assigned to work on the Bureau's investigation of Consumer Advocacy Center Inc., d/b/a Premier Student Loan Center (CAC or PSLC); True Count Staffing Inc., d/b/a SL Account Management (True Count or SLAM); Prime Consulting LLC, d/b/a Financial Preparation Services (Prime Consulting or FPS); Albert Kim, a/k/a Albert King; Kaine Wen, a/k/a Wenting Kaine Dai, Wen Ting Dai, and Kaine Wen Dai; and Tuong Nguyen, a/k/a Tom Nelson; Infinite Management Corp. f/k/a Infinite Management Solutions Inc. (Infinite Management); Hold The Door, Corp. (Hold the Door); and TN Accounting Inc. (TN Accounting) (collectively, Defendants).

1

3. During the course of the investigation, I analyzed financial records that the Bureau received from Bank of America, N.A.; JP Morgan Chase & Co.; Wells Fargo Bank, N.A., and Capital One Financial Corporation related to accounts controlled by the Defendants. The purpose of this analysis was to determine the sources and uses of funds received by the accounts. I reviewed financial records for the following accounts:

| Account Holder's Name | Bank Name | Account Type | Account Number | Date of First / Last Known Transaction | Name (Date) of Signatory / Authorized User on Account |
|---|---|---|---|---|---|
| CAC | JP Morgan Chase & Co. | Checking | x0786 | 1/17/17 - 9/25/18 | Wen (1/24/17) |
| CAC | JP Morgan Chase & Co. | Checking | x1522 | 1/4/16 - 10/4/18 | Kim (9/23/15); Wen (9/23/15); Nguyen (10/28/16) |
| CAC | JP Morgan Chase & Co. | Checking | x2261 | 1/17/17 - 9/21/18 | Kim (1/17/17); Nguyen (1/17/17); Wen (1/24/17) |
| CAC | JP Morgan Chase & Co. | Checking | x1651 | 1/17/17 - 9/21/18 | Wen (1/17/17); Kim (1/17/17); Nguyen (1/17/17) |
| CAC | Capital One Financial Corp. | Credit | x9036 | 2/20/17 - 4/23/19 | Wen (2/1/17), Judy Dai (2/1/17), Diana Dai (2/1/17) |
| CAC | Capital One Financial Corp. | Credit | x1006 | 6/12/17 - 2/2/19 | Kim (2/1/17) |
| Hold the Door | Bank of America, N.A. | Checking | x6799 | 1/30/17 - 9/5/18 | Wen (1/28/17) |
| Hold the Door | JP Morgan Chase & Co. | Checking | x5886 | 8/30/18 - 8/29/19 | Wen (8/21/18) |
| Infinite Management | JP Morgan Chase & Co. | Checking | x3880 | 10/25/16 - 8/30/19 | Kim (10/25/16) |
| Prime Consulting LLC | JP Morgan Chase & Co. | Checking | x0325 | 4/27/18 - 8/30/19 | Le Ho (4/27/18) |
| TN Accounting | JP Morgan Chase & Co. | Checking | x7163 | 3/10/17 - 8/29/19 | Nguyen (3/10/17) |
| True Count | JP Morgan Chase & Co. | Checking | x1126 | 5/3/17 - 8/30/19 | Wen (4/13/17); Nguyen (4/13/17); Kim (8/27/18); |
| Albert Kim | JP Morgan Chase & Co. | Checking | x0166 | 12/17/15 - 2/11/19 | Kim (1/21/11) |
| Albert Kim | JP Morgan Chase & Co. | Credit | x3905 | 12/15/18 - 2/3/19 | Kim (12/15/18) |
| Albert Kim | JP Morgan Chase & Co. | Credit | x2691 | 9/9/16 - 10/25/18 | Kim (9/9/16) |

| Albert Kim | JP Morgan Chase & Co. | Credit | x2286 | 10/17/18 - 12/15/18 | Kim (10/15/18) |
| Kaine Wen 2017 Trust | JP Morgan Chase & Co. | Checking | x1984 | 8/30/18 - 2/19/19 | Wen (8/21/18) |
| Kaine Wen 2017 Trust | Bank of America, N.A. | Checking | x9645 | 1/4/16 - 9/4/18 | Wen (6/8/15) |
| Tuong Nguyen | JP Morgan Chase & Co. | Checking | x1352 | 12/22/15 - 2/25/19 | Nguyen (4/19/1999) |
| Tuong Nguyen | JP Morgan Chase & Co. | Credit | x7606 | 12/22/15 - 1/23/19 | Nguyen (12/22/15) |
| Tuong Nguyen | JP Morgan Chase & Co. | Credit | x7272 | 5/12/17 - 8/21/18 | Nguyen (5/12/17) |
| Tuong Nguyen | JP Morgan Chase & Co. | Credit | x8574 | 9/1/18 - 1/23/19 | Nguyen (9/1/18) |

4.     Additionally, during the course of the investigation, I analyzed payment processor records relating to the Defendants that the Bureau received from Allied Wallet, Inc.; Electronic Payment Systems, LLC; Francis David Corp. d/b/a Electronic Merchant Systems; Maverick BankCard, Inc.; National Merchant Center, Inc.; and Quantum Electronic Payments LLC (collectively, Payment Processors). These companies process electronic payments for merchants, such as the Defendants. The purpose of this analysis was to determine the sources and recipients of funds received through the Payment Processors. I reviewed the following Payment Processor accounts:

| Account Holder's Name | Payment Processor Name | Defendant Deposit Bank / Account Number | Defendant Merchant Account Number | Person Signing Merchant Contract |
|---|---|---|---|---|
| CAC dba PSLC | Maverick BankCard, Inc. | JP Morgan Chase & Co. / x1522; SunWest / 1689 (after 9/18) | x8640 | Kim (10/16/17); Wen (10/16/17). |
| CAC dba PSLC | Electronic Payment Systems, LLC | JP Morgan Chase & Co. / x1522 | x3257 | Kim (3/25/16) |

Pl. Ex. 65
p. 1823

| CAC dba PSLC | Francis David Corp., dba Electronic Merchant Systems | JP Morgan Chase & Co. / x1522 | x8157 | Wen (11/2/15) |
|---|---|---|---|---|
| CAC dba PSLC | National Merchant Center, Inc. | JP Morgan Chase & Co. / x1522; Sunwest / 1689 (after 9/18) | x5723 | Kim (8/4/17) |
| CAC dba PSLC and Premier Student Loan Center Limited (starting 7/2017) | Allied Wallet, Inc. | P Morgan Chase & Co. / x1522 | x989b; x1386 | Wen (4/18/16) |
| Natural Nine Staffing for the benefit of CAC | Allied Wallet, Inc. | JP Morgan Chase & Co. / x1522 | x31815 | Nguyen (6/7/17) |
| True Count dba SLAM and dba Student Loan Mgmt. | Quantum Electronic Payments LLC | JP Morgan Chase & Co. / x1126; Sunwest Bank x1069 | x1149 | Wen (undated) |
| True Count dba PSLC for the benefit of CAC | Allied Wallet, Inc. | JP Morgan Chase & Co. / x1522 | x31864 | Wen (7/31/17); |
| True Count dba PSLC | National Merchant Center, Inc. | JP Morgan Chase & Co. / x1126 | x6283 | Wen ( 2/20/18) |
| True Count dba SLAM | Francis David Corp., dba Electronic Merchant Systems | JP Morgan Chase & Co. / x1126 | x9144; x8055 | Wen (2/12/18) |
| True Count dba SLAM | Francis David Corp., dba Electronic Merchant Systems | JP Morgan Chase & Co. / x1522 | x5266 | Wen (3/5/18) |
| True Count dba SLAM | National Merchant Center, Inc. | JP Morgan Chase & Co. / x1126 | x6317 | Wen ( 2/20/18) |

5.    The financial and payment processor records are further described in

the Declaration of Dani Schneider, Exhibit 6 6 .

6.    The payment processor records identify CAC and True Count as companies that charged consumers fees in exchange for purported student debt relief services.

7.    During the periods specified below, CAC account ending in x1522 received net electronic deposits, after accounting for electronic refunds and chargebacks, in the following approximate amounts through the below payment processors:

a.  From April 6, 2016, to April 24, 2018, $9,719,900 processed by Allied Wallet, Inc.;

b.  From April 22, 2016, to August 31, 2018, $88,000 processed by Electronic Payment Systems, LLC;

c.  From January 4, 2016, to September 21, 2018, $2,439,900 processed by Francis David Corp. d/b/a Electronic Merchant Systems;

d.  From June 2, 2017, to August 18, 2017, $111,000 processed by Group ISO Merchant Services a/k/a MERCH SVS BKCRD;

e.  From November 30, 2017, to September 21, 2018, $2,396,500 processed by Maverick BankCard, Inc.; and

f.  From August 2, 2017, to September 10, 2018, $4,780,600 processed by National Merchant Center, Inc a/k/a BANKCARD.

8. From January 4, 2016, to September 21, 2018, CAC received approximately $19,535,900 in total net electronic deposits to its account ending in x1522, after accounting for electronic refunds and chargebacks, through the payment processors identified in paragraph 7.

9. During the periods specified below, True Count account ending in x1126 received net electronic deposits, after accounting for electronic refunds and chargebacks, in the following approximate amounts through the below payment processors:

a. From March 16, 2018, to February 20, 2019, $738,700 processed by Francis David Corporation d/b/a Electronic Merchant Systems;

b. From March 2, 2018, to February 28, 2019, $34,640,700 processed by National Merchant Center, Inc.; and

c. From February 4, 2019, to February 28, 2019, $978,000 processed by Quantum Electronic Payments LLC.

10. From March 2, 2018, to February 20, 2019, True Count received approximately $36,357,400 in total net electronic deposits to its account ending in x1126, after accounting for electronic refunds and chargebacks, through the payment processors identified in paragraph 9.

11. Based on my analysis of bank accounts and payment processor records for the accounts identified in paragraphs 3-4, CAC and True Count

received at least approximately $55,893,300 in net electronic payments from consumers from January 4, 2016, to February 28, 2019.

12.    From March 2019 through August 2019, True Count received an additional approximately $16,000,000 in total gross electronic deposits, not including refunds and chargebacks, to its account ending in x1126 from the payment processors identified in paragraph 9, including approximately $3,800,000 in August 2019 alone.

13.    I identified transfers to and among the corporate Defendants' accounts listed in paragraph 3 and below in the following approximate amounts:

a.  From May 12, 2017, to September 21, 2018, CAC account ending in x1522 received $11,513,300 in net transfers from True Count account ending in x1126;

b.  From September 21, 2018, to February 27, 2019, Prime Consulting received $16,830,500 in net transfers from True Count account ending in x1126;

c.  From March 20, 2017, to January 14, 2019, Hold the Door accounts ending in x6799 and x5886 received $1,192,300 in net transfers from CAC account ending in x1522 and True Count account ending in x1126 and $1,678,200 in total deposits from all sources;

d.  From January 6, 2017, to January 23, 2019, Infinite Management account ending in x3880 received $1,554,900 in net transfers from CAC account ending in x1522 and True Count account ending in x1126 and $1,569,907 in total deposits from all sources; and

e.  From March 20, 2017, to December 24, 2018, TN Accounting account ending in x7163 received $272,800 in net transfers from CAC account ending in x1522 and True Count account ending in x1126 and $322,300 in total deposits from all sources.

14.  From March 2019 through August 2019, True Count transferred additional funds from its account ending in x1126 to several accounts identified in paragraph 13, including approximately:

a.  $9,018,800 to Prime Consulting account ending in x0325,

b.  $341,000 to Hold the Door account ending in x5886,

c.  $282,400 to Infinite Management account ending in x3880; and

d.  $76,000 to TN Accounting account ending in x7163.

15.  After receiving the transfers identified in paragraph 13-14, Infinite Management, Hold the Door, and TN Accounting spent all or most of the funds transferred.  Many expenditures appear to be for personal and not business expenses.

16.     Based on my review of the bank records identified in paragraph 3, I also identified the following transfers from the corporate Defendants' accounts to the benefit of the individual Defendants:

a.  From October 25, 2016, to February 25, 2019, Kim received hundreds of thousands of dollars in payments to his personal accounts or to his benefit from Infinite Management, including over $300,000 to pay his personal credit cards, over $200,000 for apparent luxury car purchases, as well as wedding expenses and dental payments;

b.  From March 20, 2017, to February 25, 2019, Wen received hundreds of thousands of dollars in payments to his personal accounts or to his benefit from Hold the Door, including over $200,000 in direct transfers to Wen, as well as Tesla and Mercedes Benz payments and art purchases; and

c.  From March 10, 2017, to February 11, 2019, Nguyen received tens of thousands of dollars in payments to his personal accounts or to his benefit from TN Accounting, including over $100,000 in transfers to Nguyen's personal accounts, as well as payments on Nguyen's personal credit cards and a Tesla.

17.     A true and accurate summary of many of the transactions described above is attached as Table 1.

18.     I identified $3,833,000 in domestic wire transfers from True Count account ending in x1126 to accounts at Sunwest Bank, Irvine CA from September 18, 2018, to February 26, 2019.  Of these wire transfers, $2,750,000 went to an account apparently held by True Count at Sunwest Bank, $283,000 went to an account held by CAC at Sunwest Bank, and $800,000 went to Sunwest Bank but the ultimate recipient is not identifiable in the account ending in x1126.

19.     I also identified a number of significant credits and debits in several Defendant accounts but was unable to identify the other party to the transaction; it is possible that the Defendants transferred additional funds to each other or to their benefit.

20.     Further, I have reviewed transaction data for CAC's corporate credit cards, which show that Kaine Wen and Albert Kim were authorized users on those accounts. Based on this review, the majority of the transactions on the corporate credit cards appear to pay for personal expenses, such as overseas and Las Vegas trips, purchases at apparent jewelry stores, medical and cosmetic expenses, many of them benefitting the individual Defendants.

21.     Based on my review of bank account information for CAC and True Count, it appears that each company paid several of the same individuals as employees or contractors for the companies.

22.     I reviewed transactional data provided by the two identified payment processors that both CAC and True Count used.  My review indicates that many consumers who paid CAC likely also paid True Count.  Specifically, when I reviewed the recurrence of the first six and last four digits of credit card numbers in the transactional data, over 50 percent of the matching numbers were charged at least once through a CAC payment processor account and later charged at least once through a True Count payment processor account.

23.     I reviewed transactional data provided by Allied Wallet and Maverick for CAC's and True Count's accounts with them identified in paragraph 4 and noted the following relating to consumer transactions:

a.  I identified transactions for these payment processing accounts from June 28, 2017, to November 27, 2018;

b.  For this period, there were a total of approximately 55,000 payment processor transactions involving payments to or from CAC and True Count totaling approximately $9,743,300;

c.  Of the transactions identified in subparagraph (b), approximately 1,050 resulted in $189,800 in chargebacks (approximately 2 percent by transaction volume dollar amount).

11
Heidari Decl.

d. Of the transactions identified in subparagraph (b), approximately 3,500 resulted in $761,500 in consumer refunds (approximately 6 percent by transaction volume and 8 percent by dollar amount).

e. Of these transactions, approximately 330 resulted in $67,100 in null transactions (less than 1 percent by transaction volume and dollar amount).

24. I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

25. Executed on _____October /0&,_ 2019.

Mansour Heidari
Washington, D.C.

12
Heidari Decl.

Pl. Ex. 65
p. 1832

Table 1

# Defendants' and Relief Defendants' Student Loan Debt Relief Revenue

**Defendants' Consumer Fee Revenue**
>$71M from 1/2016 to 8/2019*
>$16M from 3/2019 to 8/2019**
>$3M in 8/2019

**True Count Staffing Inc. dba SL Account Management (TCS)**
(Wen, owner)
>$52M in consumer fee revenue 3/2018 – 8/2019

**Prime Consulting LLC dba Financial Preparation Services**
(Ho, owner)
>$25M in transfers from TCS from 9/2018 to 8/2019

\* Net electronic deposits, except for fees collected since 3/2019, which are gross; does not include refunds by check.
\*\*Gross electronic deposits.

>$11M from 5/2017 to 9/2018

**Consumer Advocacy Center Inc. dba Premier Student Loan Center (CAC)**
(Kim, owner)
>$19M in consumer fee revenue 1/2016 – 9/2018
CAC bankruptcy petition 1/2019 listing <$50K in assets

**Relief Defendants**
>$3.5M in transfers to all Relief Defendants from CAC and TCS
1. >$1.5M to Hold the Door, Corp. (Wen, owner)
2. >$1.8M to Infinite Management Corp. f/k/a Infinite Management Solutions (Kim, owner)
3. >$300K to TN Accounting Inc. (Nguyen)

**Albert Kim**
Hundreds of thousands of dollars in payments to Kim's benefit from Infinite Management

**Kaine Wen**
Hundreds of thousands of dollars in payments to Wen's benefit from Hold the Door

**Tuong Nguyen**
Tens of thousands of dollars in payments to Tuong's benefit from TN Accounting

Exhibit

## DECLARATION OF DANI SCHNEIDER

## PURSUANT TO 28 U.S.C. §1746

I, Dani Schneider, hereby state that I have personal knowledge of the facts set forth below. If
called as a witness, I could and would testify as follows:

1.  I am a citizen of the United States and am over the age of eighteen (18) years old. I am
    employed as an Investigator with the Consumer Financial Protection Bureau ("CFPB" or
    "Bureau") in the Office of Enforcement. My mailing address is 1700 G Street NW,
    Washington, DC 20522.

2.  I began working as an Investigator at the CFPB in August 2013. Prior to joining the CFPB, I
    worked as an Investigator at the Federal Trade Commission ("FTC") for five years.  In that
    position, I investigated violations of the FTC Act.  I have a Certified Fraud Examiner's
    License from the Association of Certified Fraud Examiners. As a Bureau Investigator, I
    research and investigate persons and entities that may be violating the Consumer Financial
    Protection Act and other statutes enforced by the Bureau.

3.  In August 2018, I was assigned to work on the Bureau's investigation of Consumer
    Advocacy Center Inc. ("CAC") dba Premier Student Loan Center ("Premier"), True Count
    Staffing Inc. dba SL Account Management, Prime Consulting LLC dba Financial
    Preparation Services, Albert Kim (aka Albert King), Kaine Wen (aka Wenting Kaine Dai,
    Wen Ting Dai, Kaine Wen Dai), and Tuong Nguyen (aka Tom Nelson), Infinite Management
    Corporation (fka Infinite Management Solutions, Inc.), Hold the Door, Corp., and TN
    Accounting, Inc. (collectively, "Defendants"). As part of my work on this matter, I
    performed the following tasks, which I describe in detail below: (1) searching and reviewing
    public records, databases, websites, and consumer complaints; (2) reviewing documents
    responsive to Civil Investigative Demands ("CID(s)") regarding the Defendants; (3) review

of enforcement proceedings and litigation related to the Defendants; and (4) calling Premier

Student Loan Center to inquire about student loan forgiveness programs.

4. Through my investigation, which is outlined in this declaration and its attachments, I learned

that Defendants operate through several interrelated companies. For example:

    a. Premier Student Loan Center, Student Loan Account Management, and Financial

       Preparation Services all use the same address – 173 Technology Road, Suite 202,

       Irvine, CA 92618 (*see,* Table 1; Pl. Ex. 1; Pl. Ex. 53, p. 1498; and Pl. Ex. 54, p.

       1572);

    b. Kaine Wen for Consumer Advocacy Center signed as the guarantor for True

       Count's leases (Pl. Ex. 63 ¶¶ 6, 17) and Albert Kim for Consumer Advocacy

       Center signed as the guarantor for Prime Consulting's lease (Pl. Ex. 63 ¶ 20);

    c. Many of Defendants' financial accounts have overlapping signatories (Pl. Ex. 65

       ¶¶ 3,4);

    d. When I called the phone number on Premier Student Loan Center's website, the

       person who answered the phone identified herself as a representative for Student

       Loan Account Management (paragraph 53 below);

    e. Premier Student Loan Center, Student Loan Account Management, and Financial

       Preparation Services use substantially similar Client Agreements (*see,* Pl. Ex. 53,

       p. 1486; Pl. Ex. 54, p. 1559; and Pl. Ex. 28, p. 451);

    f. Sales agents from Premier Student Loan Center and Financial Preparation

       Services use the same fax number, (888) 302-3033 (*see,* Pl. Ex. 53, p. 1505; Pl.

       Ex. 54, p. 1557); and

    g.  Corporate Defendants share many of the same employees (*see,* Table 3 herein and paragraph 25 below).

5.  Through my investigation, which is outlined in this declaration and its attachments, I learned that the Defendants use numerous dba's:

    a.  Consumer Advocacy Center Inc. dba Premier Student Loan Center, which offers or provides student loan debt relief services (*see,* Pl. Exs. 1, 9, 13, 21);

    b.  True Count Staffing Inc. dba SL Account Management, which offers or provides student loan debt relief services (*see,* Pl. Exs. 2, 10, 14);

    c.  Prime Consulting LLC dba Financial Preparation Services, which offers or provides student loan debt relief services (*see,* Pl. Exs. 11, 15); and

    d.  As set forth in Table 4 herein, I identified an additional twenty websites used by the Defendants that utilize identical consumer testimonials. The dbas of these websites are generic, such as Administrative Financial, Account Preparation Services, Direct Account Services, and Pacific Palm Financial Group (*see*, Pl. Ex. 16-19). Many of these websites appear to be substantially similar.

Based on my experience, companies that use numerous dbas often do so to reduce consumer complaints.

6.  Through the course of the investigation, which is outlined in this declaration and its attachments, I learned that Defendants use numerous addresses:

    a.  8 Hughes Parkway, Suite 210, Irvine, CA 92618, see, Pl. Exs. 10, 28, 30, 31;

    b.  173 Technology Dr., Suite 202, Irvine, CA 92618, *see*, Pl. Exs. 1, 12, 13, 24, 25, 27, 29, 30, 31, 35, 37, 49, 50, Donaldson Dec.; and

    c.  15261 Laguna Canyon Road, Suite 200, Irvine, CA 92618 (*see,* Pl. Ex. 63).

**Table 1** attached hereto is a spreadsheet summarizing each address used by the Defendants and the individual and corporate defendant associated with that address, along with the source document that identifies the defendant and address.

## I. Searching and Reviewing Public Records, Databases, Websites, and Consumer Complaints

### Corporate Filings

7.  **Plaintiff's Exhibits 1-4** are true and correct certified copies of the Articles of Incorporation for the corporate defendants and related entities, which I obtained from the California Secretary of State.

|                                   |                        |
| --------------------------------- | ---------------------- |
| Consumer Advocacy Center          | Plaintiff's Exhibit 1  |
| True Count Staffing, Inc.         | Plaintiff's Exhibit 2  |
| Hold the Door, Corp.              | Plaintiff's Exhibit 3  |
| Natural Nine Staffing, Inc.       | Plaintiff's Exhibit 4  |

8.  **Plaintiff's Exhibits 5-8** are true and correct copies of the Articles of Incorporation for the corporate defendants and related entities, which I obtained from the California Secretary of State website.

|                                    |                        |
| ---------------------------------- | ---------------------- |
| Prime Consulting LLC               | Plaintiff's Exhibit 5  |
| Infinite Management Solutions Inc. | Plaintiff's Exhibit 6  |
| TN Accounting, Inc.                | Plaintiff's Exhibit 7  |
| First Priority, LLC                | Plaintiff's Exhibit 8  |

**Table 2** attached hereto is a summary chart of the California Secretary of State corporate records, Pl. Exs. 1-8.

9. **Plaintiff's Exhibits 9-11** are true and correct certified copies of the Fictitious Business Name Statement for the corporate defendants, which I obtained from the Orange County Business Records Clerk.

| | |
|---|---|
| Premier Student Loan Center | Plaintiff's Exhibit 9 |
| SL Account Mgmt | Plaintiff's Exhibit 10 |
| Financial Preparation Services | Plaintiff's Exhibit 11 |

10. Plaintiff's Exhibit 9 contains proof of publication showing that Premier Student Loan Center was registered by Consumer Advocacy Center in November 2015.

11. Plaintiff's Exhibit 10 contains Fictitious Business Name Statements showing that SL Account Mgmt was registered by both Kaine Wen and True Count Staffing.

12. Plaintiff's Exhibit 11 contains Fictitious Business Name Statements showing that Financial Preparation Services was registered by both Le Ho and Prime Consulting LLC.

13. In February 2019, I reached out to the North Dakota Department of Financial Institutions (DFI) requesting all documents filed by the Defendants. **Plaintiff's Exhibit 12** is a true and correct copy of documents included in North Dakota DFI's response to my request. Plaintiff's Exhibit 12 includes a letter authorizing the Bureau to disclose these documents publicly.

14. **Table 3** attached hereto is a summary chart detailing the relationship between the corporate entities and related individuals.

### Defendants' Websites

15. During the course of the investigation, I accessed the Defendants' websites and printed the web pages from those websites. **Table 4** attached hereto is a summary chart of the twenty-eight corporate websites that I identified during the course of this investigation, as well as

contact information listed on the websites, consumer testimonials, and the date of website capture.

16. **Plaintiff's Exhibits 13-20** are true and correct copies of excerpts of the webpages that I printed during the course of this investigation. Full printouts of these websites and all of defendants' websites are available to the court upon request.

17. Many of the defendants' websites are substantially similar to each other. Plaintiff's Exhibits 15 and 16, for example, both state that the company "specializes in federal student loan document preparation and processing services to help each borrower identify and gain approval for one or multiple government debt relief programs. Once your financial analysis is complete our agents will help you find a repayment solution that works best for you and fits your specific financial situation." Additionally, many of the Defendants' websites include identical consumer testimonials from Dean Edelman, Dawn Robinson and Anthony Zwichirowski, *see Table 4 herein*.

18. On April 15, 2019, I visited the website www.archive.org ("Archive.org"). Archive.org is a website that offers a utility called the "Wayback Machine," a service that allows people to visit archived versions of websites.

19. I viewed and printed at least one copy of the archived versions of Defendants' websites for each year in which a version was archived. The attached website printouts identify the URL where the archived website is located. This URL, in turn, contains an identifier that corresponds to the date on which the site was archived. **Plaintiff's Exhibit 21** is a true and correct copy of selected pages from the Wayback Machine results for *www.premierstudentloancenter.com* on December 30, 2015. Plaintiff's Exhibit 21 is a true and correct copy of the Wayback Machine results as they appeared when I viewed them.

Schneider Decl.

Pl. Ex. 66
p. 1839

20. On April 15, 2019, the Wayback Machine identified 33 archived versions of *www.premierstudentloancenter.com*, which were archived between November 20, 2015 and December 27, 2018. Plaintiff's Exhibit 21 is an archived version of the www.premierstudentloancenter.com website, which is located at https://web.archive.org/web/20151230140017/http://premierstudentloancenter.com, where "20151230" corresponds to December 30, 2015, the date on which this website version was archived.

## **Additional Websites**

21. On September 12, 2019, I accessed the State of California's Division of Consumer Affairs website, https://search.dca.ca.gov/, and searched for licensed accountants in the state of California. This website provides the public with the ability to look up any individual or corporation licensed with the California Board of Accountancy. Neither Tuong Nguyen nor TN Accounting are registered with the California Board of Accountancy.

22. **Plaintiff's Exhibit 22** are true and correct copies of press releases that I printed during the course of this investigation.

| Press Release | Pl. Ex. # |
|---|---|
| March 14, 2019 Globe News Wire "Premier Student Loan Center: Maintaining Customer Service" | Pl. Ex. 22-1 |
| April 16, 2019 AccessWire "Premier Student Loan Center is a Premier Provider of Cutting-Edge Services | Pl. Ex. 22-2 |
| April 19, 2019 Globe News Wire "Premier Student Loan Center Focusing on Giving the Best Customer Service" | Pl. Ex. 22-3 |
| July 16, 2019 Globe News Wire "Premier Student Loan Center Sticks By No New Clients Announcement" | Pl. Ex. 22-4 |

## **Consumer Complaints**

Schneider Decl.

Pl. Ex. 66
p. 1840

23. Over the course of this investigation, I accessed the complaint section of the FTC's Consumer Sentinel Network (Sentinel). Sentinel provides law enforcement members with access to over 18 million fraud and identity theft consumer complaints. Sentinel allows members to access consumer complaints submitted directly to the FTC, as well as to complaints shared by over 40 data contributors, including the Bureau, the Internal Revenue Service, over 20 State Attorneys General, and all North American Better Business Bureaus. Over 2,500 federal, state, local, and international law enforcement have access to Sentinel; hundreds of individual members access the system each week.

24. On September 16, 2019 and October 2, 2019, I searched Sentinel for complaints filed against the Defendants and dozens of other DBAs used by those companies. I identified over 1,300 Fraud complaints in the Sentinel database related to these entities, as well as 34 Identify Theft complaints relating to entities logging into student loan websites as the consumer. These consumer complaints come from consumers in all 50 states and the District of Columbia. The complaints were filed between December 12, 2015, through October 2, 2019. Of the complaints I reviewed, 240 complaints were filed within the past six months.

25. Through my review of the Sentinel complaints, I discovered that consumers mention employee "Christian Stark" in complaints filed against both Premier Student Loan Center and Financial Preparation Services.  I also discovered that consumers mention employee "London Anderson" in complaints filed against Premier Student Loan Center, SL Account Management, and Financial Preparation Services.  In these complaints, many consumers named more than one of the corporate defendants or their dbas in their complaint.

### Sentinel Complaint Summary Chart

| Entity Name | Total Complaints | Complaint Date Range | # of Complaints |
|---|---|---|---|

| | | | filed within the past 6 months |
|---|---|---|---|
| Consumer Advocacy Center dba Premier Student Loan Center | 749 | 12/22/2015 – 10/2/2019 | 84 |
| SL Account Management | 46 | 6/13/2018 – 9/27/2019 | 6 |
| Financial Preparation Services | 165 | 9/24/2018 – 9/13/2019 | 19 |
| Account Preparation Services | 6 | 2/15/2019 – 5/30/2019 | 1 |
| Administrative Account Services | 16 | 3/28/2019 – 8/13/2019 | 10 |
| Administrative Financial | 12 | 3/1/2019 – 5/11/2019 | 2 |
| Best Choice Financial Center | 4 | 7/19/2019 – 8/12/2019 | 4 |
| Coastal Shores Financial Group | 11 | 11/19/2018 – 6/4/2019 | 3 |
| Direct Account Services | 14 | 2/22/2019 – 6/7/2019 | 5 |
| EDU Doc Support | 4 | 4/2/2019 – 7/5/2019 | 4 |
| Global Direct Accounting Solutions | 5 | 7/31/2019 – 8/27/2019 | 5 |
| Keystone Document Center | 15 | 6/25/2019 – 9/23/2019 | 15 |
| Pacific Palm Financial | 4 | 7/9/2019 – 8/6/2019 | 4 |
| Pacific Shores Advisory | 10 | 6/17/2019 – 8/10/2019 | 10 |
| Tangible Saving Solutions | 6 | 4/2/2019 – 6/5/2019 | 5 |
| Yellowstone Account Services | 10 | 6/20/2019 – 8/30/2019 | 10 |

I identified additional dbas after my Sentinel query that are not included in this summary, such as Student Services Plus, *see paragraph 54 herein*. The complaint summary above includes complaints made to the Bureau, the FTC, the BBB, and numerous other agencies.

26. I reviewed one hundred consumer complaints filed with the Bureau against the defendants. This review reveals that many consumers were told that their student loan monthly payments would be lowered. Of these complaints, 56 consumers thought that their student loans would be forgiven and 19 consumers stated that Defendants provided false information to their student loan provider, including falsely increasing the size of their families or number of dependents.

27. I also reviewed Better Business Bureau complaints (*see,* Pl. Ex. 50), and identified that Albert Kim and Tom Nelson replied to consumer complaints on behalf of the Defendants. The consumer complaints contained in Plaintiff's Exhibit 50 are summarized below:

### BBB Complaint Summary Chart

| Entity Name | Total Complaints | Complaint Date Range | # of Complaints filed within the past 6 months |
|---|---|---|---|
| Premier Student Loan Center (Pl. Ex. 50, Att. A) | 193 | 7/13/2016 – 9/5/2019 | 42 |
| SL Account Management (Pl. Ex. 50, Att. B) | 80 | 5/31/2018 – 9/21/2019 | 13 |
| Financial Preparation Services (Pl. Ex. 50, Att. C) | 55 | 10/20/2018 – 9/10/2019 | 20 |
| Direct Account Services (Pl. Ex. 50, Att. D) | 1 | 6/12/2019 | 1 |
| Coastal Shores Financial Group (Pl. Ex. 50, Att. E) | 2 | 2/22/2019 – 6/3/2019 | 1 |
| Global Direct Accounting Solution (Pl. Ex. 50, Att. F) | 1 | 8/19/2019 | 1 |

28. I reviewed consumer declarations, Plaintiff's Exhibits 51-61 herein, and identified that kwen@slaccountmgmt.com corresponded with a consumer who had requested a refund from the company (*see,* Pl. Ex. 61).

### II. Review of Civil Investigative Demands

### Review of Domain Registrations

29. On November 20, 2018, the Bureau issued a CID to Wild West Domains requesting information relating to registration information for the domain name slaccountmgmt.com from January 1, 2016, to the date of the CID. On May 14, 2019, Wild West Domains produced responsive documents bates stamped as WWD 000001 through WWD 000021 and additional documents that the Bureau bates stamped R-012220-00000001 through R-012220-

00000003. The Wild West Domains CID Response shows that *www.slaccountmgmt.com* is registered to Kaine Wen, and contact information is listed as 777 Sierra Madre Ave., Azusa, CA 91702.

30. On November 20, 2018, the Bureau issued a CID to Privacy Protect, LLC requesting information relating to registration information for the domain name premierstudentloancenter.com from January 1, 2016, to the date of the CID. On November 20, 2018, the Bureau issued a CID to Launchpad, Inc. requesting information relating to registration information for the domain name premierstudentloancenter.com from January 1, 2016, to the date of the CID. On December 18, 2019, Privacy Protect and Launchpad produced a joint CID response which the Bureau bates stamped as R-009683-00000001 through R-009683-00000028. The CID response shows that premierstudentloancenter.com is registered to Albert Kim, and contact information is listed as his home address, Mission Viejo, CA 92691, khu@premierstudentloancenter.com.

**Review of Civil Investigative Demands to Payment Processors and Financial Institutions**

**Bank of America**

31. On March 5, 2019, the Bureau issued a CID to Bank of America requesting financial account information pertaining to the Corporate Defendants or related persons, from January 1, 2016, to the date of the CID. On April 9, 2019, Bank of America produced responsive documents bates stamped BANA_CFPB_WEN_000001 through BANA_CFPB_WEN_001526 and additional documents which the Bureau bates stamped R-011628-00000001 through R-011628-00000005. **Plaintiff's Exhibit 23** contains selected documents produced by Bank of America in response to the CID.

**JP Morgan Chase & Co.**

32. On March 6, 2019 and September 20, 2019, the Bureau issued CIDs to JP Morgan Chase &

Co. requesting financial account information pertaining to the Corporate Defendants or

related persons, from January 1, 2016, to the date of the CID. On April 4, 2019 and October

1, 2019, JP Morgan Chase & Co. produced responsive documents which the Bureau bates

stamped T-011558-00000001 through T-011558-00010361, R-011559-00000001 through R-

011559-00000003, R-011560-00000001 through R-011560-00000002, R-011567-00000001

through R-011567-00000047, and R-015713-00000001 through R-015713-00002741.

**Plaintiff's Exhibit 24** contains selected documents produced by JP Morgan Chase & Co. in

response to the CID.

## Allied Wallet

33. On March 8, 2019 and May 9, 2019, the Bureau issued CIDs to Allied Wallet, Inc. requesting

financial account information pertaining to the Corporate Defendants or related persons from

January 1, 2016, to the date of the CIDs. Between April 24, 2019 and July 1, 2019, Allied

Wallet produced responsive documents bates stamped as AW-0000001 through AW-

00000453 and ALLIED_0000001 through ALLIED_0000198, and additional documents

which the Bureau bates stamped R-011859-00000001 through R-011859-00000004 and R-

013375-00000001 through R-013375-00000004. **Plaintiff's Exhibit 25** contains selected

documents produced by Allied Wallet in response to the CIDs.

## Electronic Payment Systems

34. On March 8, 2019, the Bureau issued a CID to Electronic Payment Systems, LLC requesting

financial account information pertaining to the Corporate Defendants or related persons from

January 1, 2016, to the date of the CID. Between March 28, 2019 and April 25, 2019,

Electronic Payment Systems produced responsive documents which the Bureau bates

stamped R-011630-00000001 through R-011630-00000294 and R-011929-00000001 through R-011929-00000102. **Plaintiff's Exhibit 26** contains selected documents produced by Electronic Payment Systems in response to the CID.

## Maverick Bankcard

35. On March 8, 2019 and May 9, 2019, the Bureau issued CIDs to Maverick Bankcard, Inc. requesting financial account information pertaining to the Corporate Defendants or related persons from January 1, 2016, to the date of the CIDs. Between April 16, 2019 and June 18, 2019, Maverick Bankcard produced responsive documents which the Bureau bates stamped as R-011726-00000001 through R-011726-00000612 and R-013065-00000001 through R-013065-00000037. **Plaintiff's Exhibit 27** contains selected documents produced by Maverick Bankcard in response to the CIDs.

## Quantum Electronic Payments

36. On May 9, 2019, the Bureau issued a CID to Quantum Electronic Payments, LLC requesting financial account information pertaining to the Corporate Defendants or related persons from January 1, 2016, to the date of the CID. On June 13, 2019, Quantum Electronic Payments produced responsive documents which the Bureau bates stamped T-013088-0000001 through T-013088-0000310. **Plaintiff's Exhibit 28** contains selected documents produced by Quantum Electronic Payments in response to the CID.

## Capital One Financial Corporation

37. On May 10, 2019, the Bureau issued a CID to Capital One Financial Corp. requesting financial account information pertaining to the Corporate Defendants or related persons from January 1, 2016, to the date of the CID. Between June 10, 2019, and August 2, 2019, Capital One Financial produced responsive documents bate stamped COFC000000001 through

COFC000001271 and additional documents which the Bureau bate stamped R-012914-00000001 through R-012914-00000013, T-012983-00000001 through T-012983-00000009 and R-013902-00000001 through R-013902-00000005. **Plaintiff's Exhibit 29** contains selected documents produced by Capital One Financial Corp. in response to the CID.

### Electronic Merchant Systems

38. On May 10, 2019, the Bureau issued a CID to Francis David Corporation dba Electronic Merchant Systems requesting financial account information pertaining to the Corporate Defendants or related persons from January 1, 2016, to the date of the CID. Between July 8, 2019, and July 29, 2019, Electronic Merchant Systems produced responsive documents which the Bureau bates stamped R-013762-00000001 through R-013762-00000007, R-013763-00000001 through R-013763-00001148, and T-013764-00000001 through T-013764-00000416. **Plaintiff's Exhibit 30** contains selected documents produced by Electronic Merchant Systems in response to the CID.

### National Merchant Center, Inc.

39. On May 10, 2019, the Bureau issued a CID to National Merchant Center, Inc. requesting financial account information pertaining to the Corporate Defendants or related persons. On June 21, 2019, National Merchant Center, Inc. produced responsive documents which the Bureau bates stamped T-0131345-0000001 through T-0131345-00001631 and R-013719-00000001. **Plaintiff's Exhibit 31** contains selected documents produced by National Merchant Center, Inc. in response to the CID.

### <u>Review of Civil Investigative Demands to Other Service Providers</u>

### Debt Pay, Inc.

40. On May 15, 2019, the Bureau issued a CID to Debt Pay, Inc. requesting information about cloud-based customer relationship management accounts pertaining to the Corporate Defendants or related persons  from January 1, 2016, to the date of the CID. On June 14, 2019, Debt Pay, Inc. produced responsive documents which the Bureau bates stamped R-013139-0000001 through R-013139-00000006. **Plaintiff's Exhibit 32** contains selected documents produced by Debt Pay, Inc. in response to the CID.

**Review of Civil Investigative Demands to Defendant's Former Employees**

41. On June 25, 2019, the Bureau issued a CID to Maxwell Camp seeking testimony to determine whether student debt relief companies or associated persons, in connection with the marketing, selling, and providing of student debt relief services, have made false or misleading representations to consumers or made unauthorized changes to or requests for data concerning consumers' student loan accounts. **Plaintiff's Exhibit 33** is a true and correct copy of excerpted pages of Mr. Camp's testimony.

42. On June 27, 2019, the Bureau issued a CID to Jovani Ortuno seeking testimony to determine whether student debt relief companies or associated persons, in connection with the marketing, selling, and providing of student debt relief services, have made false or misleading representations to consumers or made unauthorized changes to or requests for data concerning consumers' student loan accounts. **Plaintiff's Exhibit 34** is a true and correct copy of excerpted pages of Mr. Ortuno's testimony.

**Review of Civil Investigative Demand Issued to Defendant CAC and Related Correspondence**

43. On September 10, 2018, the Bureau issued a CID to Consumer Advocacy Center, Inc. dba Premier Student Loan Center, c/o Albert Kim seeking interrogatory responses and documents to determine whether student debt relief companies or associated persons, in connection with

the marketing, selling, and providing of student debt relief services, have made false or misleading representations to consumers or made unauthorized changes to or requests for data concerning consumers' student loan accounts.

44. On September 11, 2018, CAC refused to accept service of the CID by UPS.  On September 13, 2018, a process server personally served the CID on CAC.

45. CAC did not comply with the CID instructions to meet and confer with the Bureau within 10 days of receipt of the CID and failed to provide a complete response to the CID by October 8, 2018, the response date contained in the CID.

46. On October 29, 2018, Bureau counsel sent a letter to CAC, c/o Albert Kim, notifying CAC that it had failed to comply with the CID.  The Bureau did not receive any response.

47. On January 25, 2019, Bureau counsel sent a second letter to CAC, c/o Albert Kim, reiterating that CAC that had failed to comply with the CID.  The Bureau did not receive any response.

48. On February 27, 2019, Brian Behar, an attorney representing CAC, wrote Bureau counsel regarding the CID issued to CAC and invoked the automatic stay in the bankruptcy proceeding. The Bureau responded on March 27, 2019 regarding CAC's continued failure to comply with the CID and explained that the automatic stay does not apply to the Bureau's CID.  Mr. Behar provided a response on April 10, 2019, which indicated that CAC did not intend to respond to the Bureau's CID. To date, CAC has not complied with the Bureau's CID.

### III. Review of Enforcement Proceedings and Litigation Related to Defendants

49. In August 2019, I reviewed a Final Order to Cease and Desist, Entered by Default, issued by the State of Oregon Department of Consumer and Business Services in the Matter of: Consumer Advocacy Center Inc. dba Premier Student Loan Center, Case No. DM-19.0014.