FILED

VENABLE LLP
Witt W. Chang (SBN 281721)
    wwchang@venable.com
2049 Century Park East, Suite 2300
Los Angeles, CA 90067
Telephone: (310) 229-9900
Facsimile:  (310) 229-9901

2019 OCT 28  PM 12: 00

CLERK U.S. DISTRICT COURT
CENTRAL DIST. OF CALIF.
SANTA ANA
BY_____

Allyson B. Baker (*Pro Hac Vice Application forthcoming*)
    abbaker@venable.com
Gerald S. Sachs (*Pro Hac Vice Application forthcoming*)
    gssachs@venable.com
600 Massachusetts Ave., NW
Washington, D.C. 20001
Telephone: (202) 344-4000
Facsimile:  (202) 344-8300

Attorneys for Defendants

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA - SANTA ANA DIVISION

Bureau of Consumer Financial Protection; State of Minnesota, by its Attorney General, Keith Ellison; State of North Carolina, *ex rel.* Joshua H. Stein, Attorney General; and The People of The State of California, Michael N. Feuer, Los Angeles City Attorney,

Plaintiffs,

v.

Consumer Advocacy Center Inc., d/b/a Premier Student Loan Center; True Count Staffing Inc., d/b/a SL Account Management; Prime Consulting LLC, d/b/a Financial Preparation Services; Albert Kim, a/k/a Albert King; Kaine Wen, a/k/a Wenting Kaine Dai, Wen Ting Dai, and Kaine Wen Dai; and Tuong Nguyen, a/k/a Tom Nelson,

Defendants, and

Infinite Management Corp., f/k/a Infinite Management Solutions Inc.; Hold The Door, Corp.; and TN Accounting Inc.,

Relief Defendants.

CASE NO. 8:19-cv-01998-JVS(JDEx)

Hon. James V. Selna
Courtroom 10C

**DECLARATION OF JIMMY LAI IN SUPPORT OF DEFENDANTS' RESPONSE TO ORDER TO SHOW CAUSE WHY PRELIMINARY INJUNCTION SHOULD NOT ISSUE**

Date:      November 4, 2019
Time:      3:00 p.m.
Crtrm:     10C

Action Filed:  October 21, 2019
Trial Date:    None set

VENABLE LLP
2049 CENTURY PARK EAST, SUITE 2300
LOS ANGELES, CA 90067
310-229-9900

BY FAX

ORIGINAL

DECLARATION ISO RESPONSE TO OSC WHY PRELIMINARY INJUNCTION SHOULD NOT ISSUE

VENABLE LLP
2049 CENTURY PARK EAST, SUITE 2300
LOS ANGELES, CA 90067
310-229-9900

## DECLARATION OF JIMMY LAI

I, Jimmy Lai, declare as follows:

1.     I am the Managing Member and the majority owner of TAS 2019 LLC, also known as Trusted Account Services ("TAS"), and have been so since September 1, 2019. I have personal knowledge of the facts stated herein, and if called as a witness, I could and would testify competently thereto.

2.     I have approximately 20 years of experience in the payment processing and merchant account industry. Prior to becoming the Managing Member at TAS, I started my own payment processing companies, called LL Merchant Solutions and Quantum Electronic Payments. From approximately 2009-2014, I worked as the Director of Risk and Underwriting at National Merchant Center, a merchant account provider affiliated with Wells Fargo. Through my decades of experience, I have established many business relationships in the payment processing and merchant account industries.

3.     TAS is a dedicated account provider that provides escrow services. Based on my knowledge of the industry, there are very few companies that are able to provide the same services on the scale that TAS provides them. TAS is able to do this in large part due to the business relationships I have created over the years with acquiring banks, including, among others, my former employer.

4.     On September 1, 2019, TAS entered into a contract with True Count Staffing, Inc. ("TCS"), pursuant to which TAS is in charge of processing payments made by TCS clients and holds those funds in escrow for the benefit of TCS's clients. A true and correct copy of that contract is attached hereto as Exhibit A.

5.     TAS processes payments made by TCS clients through payment processing companies. TAS holds those funds in escrow for the benefit of TCS's clients pursuant to a contract between TAS and each of those clients. A true and correct copy of this form contract is attached hereto as Exhibit B.

1

VENABLE LLP
2049 CENTURY PARK EAST, SUITE 2300
LOS ANGELES, CA 90067
310-229-9900

6.      TAS is not owned or controlled (and has never been owned or controlled) by any Defendant[1] or Relief Defendant.[2]  Since I have been involved with TAS, the only connection that TAS has had to any Defendant or Relief Defendant is that TAS was formed as a result of discussions I had with Mr. Wen regarding TCS's need to escrow its clients' funds, and TAS worked with TCS and Mr. Wen to establish the software portal through which TAS's systems could integrate with TCS's systems.  This is to ensure visibility into the client funds held in escrow, provide a mechanism for TCS to submit the documentation required for TAS to release client funds to TCS, and permit customer service calls to be routed to the appropriate company.

7.      While TCS is TAS's first client, the services provided by TAS are entirely independent and distinct from the business of any Defendant or Relief Defendant.  TAS's business relationship with TCS is a "proof of concept" for TAS before TAS is able to expand its client list.  Indeed, I have already discussed with an acquiring bank the possibility of offering TAS's unique services to other businesses.

8.      No Defendant or Relief Defendant has access to or control over the funds TAS holds in escrow for the benefit of TCS's clients until TCS submits proof to TAS that the client services relating to which the funds were escrowed have been performed.  For instance, for TCS clients that apply for loan consolidation, TAS requires TCS to submit each client's final repayment letter and proof that the first payment under the client's new repayment plan has been made.  TAS also requires that the client affirm on a call that they are satisfied with services rendered prior to funds being released to TCS.

---

[1] "Defendant," as used herein, refers to Consumer Advocacy Center, Inc.; TCS; Prime Consulting, LLC; Albert Kim; Kaine Wen; and Tuong Nguyen.

[2] "Relief Defendant," as used herein, refers to Infinite Management Corporation, Hold the Door Corp., and TN Accounting Inc.

2

9.    TAS established its original merchant account in July 2019, and worked on building its payment processing relationships and software integration with TCS until approximately September 16, 2019. Since that date, TAS has been holding TCS client funds in escrow for the benefit of TCS's clients. It currently holds approximately $2.8 million in escrow for the benefit of TCS clients.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on October 27, 2019, at Tustin, California.

Jimmy Lai

DECLARATION ISO RESPONSE TO OSC WHY PRELIMINARY INJUNCTION SHOULD NOT ISSUE

# EXHIBIT A



**THIS AGREEMENT** (this "Agreement") is entered into by and between TAS 2019 LLC d/b/a Trusted Account Services ("TAS") and   True Count Staffing DBA Student Loan Mgmt   (the "Company").

**WHEREAS**, TAS is in the business of providing the services described in Section 1 of this Agreement (collectively, the "Services"), which services relate to establishing accounts (the "Accounts") that are owned, controlled, and used by clients of financial service companies (the "Clients) to accumulate and disburse funds in connection with the payment for services; and

**WHEREAS**, Company desires to make the Services available to the Clients of Company and/or other entities working in concert with or contracting with Company and TAS desires to provide the Services, all in accordance with the terms and conditions of this Agreement.

**NOW, THEREFORE**, for and in consideration of the promises and undertakings set forth below, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, TAS and Company agree as follows:

## SECTION I – SERVICES

### 1(a) Establishing Client Accounts

TAS will arrange for each Client who desires to utilize the Services to have an Account that is maintained on the TAS account management system (the "TAS System"), with the funds in such Account held at a FDIC insured bank of TAS's choosing (the "Bank"). Company may (a) register each such Client on the TAS System and (b) allow for the Client to submit an Account application containing, among other things, the Client's name, physical address, social security number and date of birth and such other documentation as TAS or the Bank may request from time to time, including, without limitation, any and all other information that may be necessary to verify the Client's identity as required under the USA Patriot Act and other applicable laws relating to the Account. Upon such registration and application, TAS will verify the Client's identity and perform such other due diligence with respect to the Client as TAS deems appropriate to open the Account. **The Account will be owned by and under the control of the Client at all times. All transactions involving the account will be initiated by or otherwise authorized by the Client. The Client may withdraw the Net funds from the Account and/or close the Account at any time, after all Client agreed TAS fees are deducted from the Account.**

### 1(b) Deposits to Accounts

Each Client will provide instructions from time to time designating the amount the Client elects to deposit into his or her Account. TAS, or is designee, will initiate the transfer of funds from the Client's authorized method of payment to his or her Account pursuant to such instruction, minus all fees owed to TAS. A deposit may be made into an Account by either an electronic transfer, i.e. an ACH from a Client's bank account, or a debit or credit card. All deposits will be treated as pending deposit items for up to five banking days.

### 1(c) Returned Deposit Items

Any item deposited into an Account that is dishonored or otherwise returned for any reason will be charged back against the Account, along with a fee for processing the returned item, if applicable. In consideration for TAS providing the Services to the Clients, at the prices set forth on Exhibit A, Company will pay for any resulting deficiency in a Client Account via an offset to Company's account upon demand because such prices do not include a provision for TAS to absorb the cost of returned item. Company will not be charged for any returned item processing fees that may be included in the deficiency.

1



**1(d) Disbursements from Accounts**

All disbursements from the Accounts will be initiated or otherwise authorized by the Clients, to be paid to the Company or returned back to the Client, after all TAS fees are deducted from the Client's balance. Each Client will provide instructions from time to time designating the disbursements the Client elects to make from his or her Account and in the same manner in which such disbursement were made; these disbursements will be returned, minus any fees owed to TAS; if such disbursements are not authorized, by the Client, to be paid to the Company, minus all fees owed to TAS. Pursuant to such instructions, TAS will then cause funds to be disbursed from the Account to a designated payee provided the Account contains sufficient "good" funds to cover the amount of the requested disbursement. TAS shall not be responsible for determining when a payment is due, nor shall TAS be responsible for determining whether a payment is for the correct amount or otherwise proper. The sole obligation of TAS in this regard will be to execute the Client's payment instructions in a commercially reasonable manner as soon as practical after receipt of the instructions; and if TAS performs in such manner, TAS shall not be responsible for any late payment fee, penalty, or other charge levied by a Client's creditor, for any failure of a Client's creditor to honor a settlement or for any other action taken or not taken by a Client's creditor or any other party.

**1(e) Information/Customer Service**

Subject to the provisions of Section 6(d), TAS will give Company as applicable access to the TAS System via the Internet to update certain Client information and review the Accounts. TAS will also provide electronic reports to supplement such access at mutually determined times and in mutually determined formats. Clients will have access to operator assisted customer service during normal business hours. Clients may contact TAS customer service by mail, e-mail and fax, and TAS will provide each Client with an electronic statement of his or her Account, on a monthly basis, at a cost to the Client.

**1(f) Banking Rules and Regulations**

The accounts and all transactions involving the accounts shall be subject to such terms and conditions as may be established by the Bank from time to time, and to the rules and regulations of the Federal Reserve System, the National Automated Clearing House Association, the Office of the Comptroller of the Currency, the Federal Deposit Insurance Corporation, any applicable state banking authority and/or any other applicable regulatory or governmental authority.

**SECTION II – TAS LIABILITY**

TAS will exercise reasonable care in providing the Services, consistent with industry practices; provided, however, in addition to the limitations on TAS's liability provided for elsewhere in this Agreement, neither TAS, the Bank, nor any service provider to TAS or the Bank shall be liable to Company, a Client, or any other party for any reason other than their respective willful misconduct, bad faith or gross negligence; and provided further, however, without limiting the foregoing, neither TAS, the Bank, nor any such service provider shall be liable for any damage, loss, cost, or expense to Company, a Client, or any other party arising out of the act or omission of any third party, including, but not limited to, those of ACH, merchant account provider, or other processors, the National Automated Clearing House Association, the Federal Reserve System, any other bank, or the directive of any regulatory authority. Moreover, neither TAS, the Bank, nor any such service provider makes any representation or warranty that the Services meet the regulatory requirements of any particular jurisdiction that may be applicable to the Company of student loan programs (the "Service"), or that the use of the Services will result in a determination by any regulatory authority that a particular licensing or regulatory scheme will not be applicable to the Company or the Service.

**SECTION III – FEES AND CHARGES**

**3(a) TAS Fees and Charges**



A schedule of the fees and charges for the Services is attached to this Agreement as Exhibit A. TAS shall be entitled to increase such fees and charges for any increase in the third-party cost of providing the Services, but TAS shall not otherwise increase the fees and charges for the term of this Agreement. Any permitted increase in the fees and charges shall become effective thirty days after the date TAS notifies Company and the Clients of such increase.

**3(b) Payment of TAS Fees and Charges**

The TAS fees and charges provided for in Section 3(a) shall be invoiced to Clients on a monthly basis. The TAS merchant account fees, at a pass-through rate, shall be invoiced to Client on a monthly basis. Net payment transactions are defined as the difference between all approved payment transactions and all refunded and charged back debits that were initiated, to reverse the original transaction and all TAS Fees and merchant account pass-through fees. Other fees and charges shall be deemed earned at the time of the transaction or the event that gives rise to the fee or charge. The Company is responsible for covering and paying the difference in merchant processing fees; should fees exceed the flat rate processing fee that TAS charges the client.

**3(c) Service Fees**

If authorized by the Clients, Service fees payable by the Clients, to Company, may also be deducted from the Accounts and deposited into a Bank Account established by the Company, after all TAS fees are deducted from the total. All, Client approved and authorized, Service fees processed by TAS shall be transferred to Company and, at the direction of Company, without any recourse to TAS, with respect to items that may be dishonored, otherwise returned, or contested by the Clients. Additionally, Company shall be responsible for and promptly pay upon demand any deficiency in an Account resulting from the payment of a Service fee and the subsequent reversal of a deposit from which such fee was paid.

**SECTION IV – RELATIONSHIP, INDEMNIFICATION AND DISPUTE RESOLUTION**

**4(a) Relationship**

TAS is an independent contractor, and no agency, partnership, joint venture, or similar relationship with Company is intended to be, or is, created as a result of the execution, delivery or performance of this Agreement.

**4(b) Indemnification** Subject to the limitations on TAS's liability provided for elsewhere in this Agreement and the limitation on each party's liability provided for below in this Section 4(b), TAS and Company, on behalf of itself, each hereby agree to indemnify the other, as well as the other's principals, directors, managers, officers, employees, agents, other representatives and, with respect to TAS, the Bank (collectively, "Related Parties"), defend the other and its Related Parties and hold the other and its Related Parties harmless from and against any and all liabilities, claims, suits, other legal actions and proceedings, demands, damages, losses, costs and expenses of any kind or nature, including, without limitation, reasonable legal fees and expenses (collectively, "Claims and Damages"), arising out of or otherwise relating to (i) the conduct of the indemnifying party's business and affairs, and (ii) any material breach or violation of any representation, warranty, covenant, or other provision of this Agreement by the indemnifying party; provided, however, any liability of TAS or Company hereunder shall be limited to actual Claims and Damages and, in no event, shall either of them ever be liable to the other for any incidental, consequential, punitive, or other damages of any kind or nature other than actual money damages (collectively "Special Damages") unless the Special Damages are payable to a third-party due to the indemnifying party's actions or inactions. Without limiting the generality of the foregoing indemnification, the indemnification provided to TAS and the Bank by Company, on behalf of itself, is expressly intended to cover any claim, demand, suit, or other action whereby any regulatory or governmental authority, any Client or any group of Clients seeks rescission or cancellation, the refund of fees, charges or other amounts paid, restitution for damages sustained and/or any other form of compensation, penalty, fine, or other payment with respect to any aspect of the Service.

3



## SECTION V – TERM AND TERMINATION

**5(a) Term**

This Agreement shall have an initial term of one year (the "Initial Term"), commencing with the effective date of this Agreement shown on the signature page. Upon expiration of the Initial Term, the term of this Agreement shall be automatically extended on a year- by-year basis, unless and until either party gives written notice to the other at least 90 days prior to the expiration of the Initial Term or any such extended term that this Agreement shall not be so extended, in which case this Agreement shall terminate upon the expiration of the Initial Term or the applicable extended term, as the case may be.

**5(b) Early Termination**

Notwithstanding the term set forth in Section 5(a), TAS or Company, as the case may be, may terminate this Agreement for cause (i) upon 30 days' prior written notice if the other party becomes the subject of a voluntary bankruptcy petition or any other voluntary proceeding relating to insolvency, (ii) upon 60 day's prior written notice if the other party becomes the subject of an involuntary bankruptcy petition or any other involuntary proceeding relating to insolvency, and such involuntary petition or proceeding is not dismissed within such 60-day notice period, and (iii) upon 90 days' prior written notice if the other party materially breaches or violates any representation, warranty, covenant or other provision of this Agreement and the breach or violation is not remedied in all material respects within such 90-day notice period; provided, however, a breach of any representation, warranty or covenant contained in Section VI shall be grounds for an immediate termination of this Agreement.  The Company must notify TAS of any Bankruptcy petition or involuntary Bankruptcy or Judgement, resulting from a Lawsuit, within 5 days that Company becomes aware of this fact.  TAS will not be held liable for withholding any Client payments as a result of disclosure of Voluntary or Involuntary Bankruptcy or Judgement. In addition, TAS may terminate this Agreement immediately (i) if any regulatory or governmental authority or any court of competent jurisdiction ever determines that any of aspect of the Services, and/or any practice, process, or procedure provided for in this Agreement, violates any applicable rule, regulation, ordinance or law, (ii) if TAS reasonably believes that any such determination can or may be made, (iii) if TAS discovers that the Company is not properly managing any material aspect of the Service, and (iv) as provided in Section 7(i) Authority. Any default notice shall describe the nature of the breach or violation with specificity and in reasonable detail.

**5(c) Survival**

The financial and indemnity obligations of the parties to one another and any other provision of this Agreement that would by their nature continue beyond its termination shall survive the expiration or any other termination of this Agreement.

## SECTION VI – CERTAIN COMPANY REPRESENTATIONS, WARRANTIES AND COVENANTS

**6(a) Bona Fide Clients**

Company represents and warrants to TAS that (i) each Client will be a bona fide customer, will be enrolled in Service and will authorize all transactions in connection therewith that involve the Account established for the Client, (ii) Company will request and obtain documentation verifying the identity of each Client, and (iii) to the best of Company's knowledge and belief, each Client will be the person that he or she claims to be in the Application.

**6(b) Service Materials**

The Company shall provide TAS, upon request, with true, accurate, and complete copies of all materials Company or any other party uses in connection with the Service that describes or mentions the Services or which names or otherwise refers to TAS or the Bank; and Company acknowledges that TAS has the right to approve any and all such materials with respect to the description or mention the Services or the mention or reference to TAS or the Bank.

4



**6(c) Other Information**

Company shall provide such other information as TAS or the Bank may reasonably request from time to time relating to the business that is the subject of this Agreement; and all such information shall be true, accurate, and complete to the best of Company's knowledge or belief.

**6(d) Privacy and Other Laws**

It will be necessary for Company to have access to information regarding the Accounts from time to time to fulfill duties and obligations relating to the Service that have been authorized by the Clients. Accordingly, Company represents and warrants to TAS that Company will comply with all applicable privacy laws, and with any and all other laws, ordinances, rules, and regulations that are applicable to any aspect of Company's business, including, without limitation, those applicable to the Service.

**6(e) Governmental Actions, Etc.**

Company represents and warrants to TAS that neither it nor any of its principals, directors, managers, or executive officers (i) has ever been the subject of any federal, state, or local governmental action, or any civil lawsuit relating to consumer fraud or misrepresentation, (ii) has ever had a license or bond of any kind refused, revoked or cancelled, or (iii) has ever been charged with a felony of any kind. In addition, Company represents and warrants to TAS that it will promptly notify TAS in writing if any such matter should ever occur in the future.

**SECTION VII – GENERAL PROVISIONS**

**7(a) Confidentiality**

TAS and Company shall each hold the proprietary and confidential information of the other, as well as that of the Clients, in strict confidence by exercising at least the same degree of diligence and care that the party receiving such information uses to avoid disclosure or dissemination of its own highly confidential information, but in no event less than a reasonable standard of diligence and care. Without limiting the generality of the foregoing, TAS and Company agree that non-public personal information of the Clients shall be held in strict confidence and securely as required by applicable law, and that the transfer of such non-public personal information shall only be accomplished as permitted by applicable law. Moreover, TAS hereby acknowledges that it shall have no right to use the information received from Company about the Clients, or information TAS receives directly from the Clients, other than for the purpose contemplated by this Agreement. The terms and conditions of this Agreement, including, without limitation, the prices, and the practices, processes, and procedures utilized by TAS to provide the Services hereunder shall be deemed confidential information for purposes of this Section 7(a).

**7(b) Advertising and Publicity**

Neither party shall use the name, trade names, trademarks, logos, service marks or other forms of unique identification of the other or the Bank in connection with any representation, solicitation, advertisement, promotion, or press release, or for any other purpose, without the prior written consent of the other, and, if applicable, the Bank.

**7(c) Exercise of Rights and Waivers**

All rights, powers, and privileges of the parties under this Agreement are separate, cumulative and exercisable concurrently or successively at the exercising party's discretion. Any waiver of any such right, power, or privilege must be in writing to be effective and shall not be construed as a continuing waiver unless expressly stated in such writing. No delay or failure to insist upon the strict adherence to and performance of the terms of this Agreement, nor any delay or failure in the exercise of any other right, power, or privilege hereunder, shall operate as a waiver of the right to subsequently compel such adherence or performance, or to subsequently exercise any such other right, power, or

5



privilege, with respect to the matter in question or any other matter, including, without limitation, any continuing or subsequent breach or violation hereof.

**7(d) Notices**

All notices must be in writing to be effective and may be personally delivered or sent by certified mail or recognized courier (e.g., FedEx) to the applicable address noted on the signature page, in which event any such notice shall be deemed received if and when delivered personally or to such address, as the case may be. Either party may change its address for notice purposes by providing written notice of such change to the other party in the manner set forth above.

**7(e) Governing Law, Jurisdiction and Venue**

This Agreement shall be governed and construed in accordance with the laws of the State of California, without reference to choice of law or conflict of law statutes that would otherwise require reference to the laws of another jurisdiction. If Company or any other person or entity obtains a binding determination that the mandatory arbitration provision is unenforceable, then the parties agree that the federal and state Courts located in Santa Ana, California shall have exclusive jurisdiction to hear and determine any claims, disputes, actions, or suits which may arise under or out of this Agreement.

**7(g) Due Diligence**

Company hereby authorizes TAS and its designees to conduct due diligence with respect to Company, as well as its principals, directors, managers, and executive officers, and the Service; and in connection therewith, to investigate the background, business, and financial affairs of Company and any such other party to whatever extent and utilizing whatever means TAS or its designees may determine appropriate. If permitted by law, TAS will advise Company of any objectionable matter that arises during any such due diligence. TAS and Company will then work in good faith to resolve such matter. However, if such matter is not resolved to TAS's satisfaction, TAS may elect to terminate this Agreement.

**7(h) Entire Agreement / Modifications**

This Agreement constitutes the entire agreement between the parties with respect to the subject matter and supersedes any and all prior or contemporaneous understandings relating thereto, whether written or oral as of the effective date of this Agreement; the Prior Agreement (the Agreement in place prior to the effective date of this Agreement), if any, remains effective for those Companies and/or Clients who utilize those Companies which are subject to the terms of the Prior Agreement. Modifications to this Agreement must be in writing and signed by each party to be effective; provided, however, if any provision of this Agreement is found to be invalid or unenforceable, to the extent permitted by law, such provision may be reduced in scope or otherwise modified to render the subject provision reasonable and enforceable. Otherwise, if any such invalid or unenforceable provision cannot be or is not so modified, such provision shall be deemed severed from this Agreement and all of the other provisions hereof shall remain in full force and effect as if such provision had never been included herein.

**7(i) Authority**

Each party hereby represents and warrants to the other that its execution, delivery, and performance of this Agreement has been duly authorized and approved in every respect, and neither its execution or delivery of this Agreement, nor its performance hereunder, will violate or conflict with any term or condition of its organizational or other governing documents, or any other agreement or directive of any kind or nature to which it is a party or by which it is otherwise bound.

**IN WITNESS WHEREOF,** the parties have hereunto caused this instrument to be executed by their duly authorized officers, all as of the day and date last signed below.



**TAS**

TAS 2019 LLC d/b/a Trusted Account Services

By: _____

Officer Title: _____ Managing Member_____

Date: _____ 9/1/2019_____


**COMPANY**

True Count Staffing Inc
DBA Student Loan Mgmt
_____ {COMPANY}

_____ {MAILING ADDRESS}

_____ {CITY, STATE, ZIP CODE}

By: __Kaine Wen_____

Officer Title: __Managing Member_____

Date: __September 1, 2019_____

7



## EXHIBIT A

### Schedule of Fees and Charges

<u>Paid By CLIENT:</u>

**Client SHALL PAY TAS $1 PER NET PAYMENT TRANSACTION** (Net = Approved Payment Transactions minus merchant processing fees and $1 TAS Service Fee). A 3.50% Processing Fee and a $1 TAS Service Fee will be deducted from each Client and the Net Amount paid to Company, after Client approves the payment.

<u>Paid By COMPANY:</u>

Chargeback
Pre-Chargeback Notification
NSF (Insufficient Funds)

**COMPANY SHALL PAY ALL TAS MERCHANT ACCOUNT FEES, SHOULD A DIFFEREENCE BETWEEN THE 3.50% PROCESSING COST TO THE CLIENT EXCEEDS THE MERCHANT ACCOUNT PROCESSING FEES CHARGED TO TAS.**

**COMPANY SHALL MAINTAIN A CLIENT REFUND RESERVE FUND WITH TAS** (at a mutually agreed upon amount.  The Refund Reserve Fund will be calculated as follows: Total Monthly Refunds Plus Total Chargeback losses processed through any of the TAS Merchant Accounts).

Company Officer Initial:  _KW_____

**Acknowledged by:**

**TAS 2019 LLC d/b/a Trusted Account Services**:

**{Company Officer}**:

Date: _____9/1/2019_____

____ **(initial)** _____ **(initial)**

8

**EXHIBIT B**



## ACCOUNT SERVICING AGREEMENT

This Agreement sets forth the terms of the account management services offered to the person or persons signing below ("Customer") by Trusted Account Services ("TAS").

TAS is in the business of processing payments to and from a trust account (including electronic and automatic transfers), making disbursements as directed, and providing online transaction and accounting information related thereto (collectively "Services"), for client's student loan modification company ("SLC" or "Agent"). TAS is not an owner, employee, or partner of any student loan modification companies and provides the Services to Customer as an independent third party.

## TRANSACTION, ACCOUNT INFORMATION, AND COMMUNICATIONS

Customer and Agent will be provided internet access to Customer's account and transaction information. Customer agrees that disclosures, accounting and transaction statements, disbursement verification, and any other communications may be distributed by electronic mail or through TAS's website at www.trustedaccountservices.com. Customer acknowledges that Customer is able to electronically receive, download and print such information and communications, unless Customer and TAS agree otherwise. If Customer is unable to communicate electronically, Customer will notify TAS and reasonable alternative means of communication will be established. Customer may provide notice to TAS at 109 E. 17th St Suite #5656, Cheyenne, WY 92001 or email at support@trustedaccoutservices.com.

## SERVICE FEES

Customer authorizes TAS to charge the following fees for services rendered:

- Monthly Fee - $6.50
- Monthly Fee for certification draft $1.50
  Other charges as applicable
- NSF/Return Item $8.50
- Convenience fee: $2.75% per successful transaction
- No interest will be paid to you on or with respect to the Account.

## MISCELLANEOUS

Customer agrees to indemnify and hold harmless, TAS, its officers, directors, agents, and employees, from any and all claims, demands, and damages arising out of a dispute between Customer and any third party. Customer agrees to hold harmless, TAS, its officers, directors, agents, and employees, from any and all claims, demands, and damages in any situation where TAS has complied with the directives from Customer or Agent, provided that Customer has not provided notice of revocation of TAS's or Agent's authority under this Agreement.

Customer understands that TAS may share information with its depository institutions, its affiliates, Agent, and with any other party legally entitled to facilitate the transactions contemplated by this Agreement.

Customer authorize TAS to imitate Automatic Clearing House (ACH) debits from my designated bank account as set forth below. I authorize TAS to debit my designated bank account according to the schedule of debits provided to TAS by me or on my behalf or as otherwise provided by agreement. Customer agrees that sufficient funds will be available in my designated account at least three (3) business days prior to the date of debit transfer. TAS is not liable to any person for not completing a transaction as a result of any limit on my designated bank account, or if a financial institution fails to honor any debit from such account. Customer agrees to notify TAS immediately if a scheduled debit will not or does not occur. Customer authorizes TAS to recover funds in the event of an error or in the event that a prior debit is returned for any reason, including non-sufficient funds.

## DISPUTES

Customer agrees that it will not file a claim for arbitration or with any regulatory or enforcement agency without providing TAS with written notice detailing the nature of its complaint and allowing 20 business days for TAS to resolve or respond the complaint. Customer hereby agrees that any dispute arising between or among the parties shall be heard before a certified mediator with venue exclusively located in Cheyenne, Wyoming. Mediation may be attended telephonically or in person. In the event there is no resolution through mediation, any claim or dispute shall be submitted to arbitration with venue in Cheyenne, Wyoming and conducted in accordance with the commercial rules of the American Arbitration Association. Judgement upon any award may be entered into any court having jurisdiction. Even if arbitration is not permitted, Customer specifically waives any right to trial by jury, participation in a class action lawsuit and consolidation of claims with any other party. Total damages in the event of litigation will be limited to the fees collected by TAS under this agreement. This AGREEMENT shall be governed by and interpreted in accordance with the Laws of the State of Wyoming. However, in the event of any litigation, venue shall be exclusively in Cheyenne, Wyoming, without reference of the rules of conflicts of laws there under, irrespective of the place of residence, or domicile, or business of the Parties hereto. Customer understands that TAS may share information with its depository institutions, its affiliates, and with any other party legally entitled to facilitate the transactions contemplated by this Agreement.

## TERMINATION OF AGREEMENT

You may terminate this Agreement and close the Account at any time by sending a written notice to TAS customer service. In addition, this Agreement may be terminated, and the Account cancelled at any time without notice for inactivity, if the Account is improperly maintained or used, or if you otherwise violate any provision of this Agreement. If this Agreement is terminated for any reason, the collected balance in the Account will be sent to you by check within a reasonable period of time.

## DEFAULT AND COLLECTION OF ACCOUNTS

If the Account is suspended, cancelled or otherwise terminated for any reason and the Account has a negative balance, you agree to pay the negative balance upon demand. Should you fail to remit the full amount of such negative balance, you shall remain responsible for the deficit and collection actions may be pursued against you. If any such collection action is undertaken, you agree to pay all court costs and collection fees including reasonable attorney's fees, to the extent permitted by applicable law.

## USA PATRIOT ACT COMPLIANCE

In order to assist in combating terrorism and preventing the TAS system and the banking system from being used for money laundering purposes, you authorize TAS to take those steps that are reasonable and practical to identify you and any information about you, including, without limitation, securing or accessing a credit report on you, obtaining other information about you and otherwise verifying your identity as required by the USA Patriot Act.

## CONSUMER LIABLITY AND ERROR RESOLUTION PROCEDURES

If you believe someone has transferred or may transfer money from the Account without your permission, contact TAS customer service immediately. Telephoning is the best way to keep your possible losses down.

In case of errors or questions about transactions involving the Account, call or write TAS customers service no later than sixty days after the transaction in question has been reflected on your monthly statement. Please provide the following information:

1. Your name and Account number.
2. Date and amount of the transaction.
3. Type of transaction and descriptions of the suspected error. Please explain as clearly as possible why you believe there is an error or why you need additional information.
4. Dollar amount of the suspected error.

If you provide this information orally, you also may be required to provide it in writing within ten business days. You will be told of the results of the investigation of the suspected error within ten business days after you submit the information and any error will be promptly corrected. However, if more time is required to investigate suspected error, it may take up to an additional thirty days to complete the investigation. If it is determined that there is no error, you will be provided with a written explanation within three business days of such determination; and you may ask for and receive copies of the documents used in making any such determination.

## PRIVACY POLICY

Personal information may be collected from the Account Application, any updated information you may provide from time to time and the transaction processed through the Account. A description of the Privacy Policy applicable to your Account is provided below. If you have additional questions regarding the privacy of your personal information, please contact TAS customer service.

## COLLECTION / USE OF PERSONAL INFORMATION

Collection of your personal information is designed to protect access to the Account and to assist in providing you with products and services you have requested. All personal information collected and stored by TAS, on or their behalf, is used for specific business purposes to protect and administer your Account and initiate your authorized transactions, to help to design or improve the applicable products and services and to comply with state and federal banking regulations. Only approved personnel will have access to your personal information. Furthermore, auditing mechanisms have been put into place to further protect your information by identifying the personnel who may have accessed and in any way modified, e.g., updated or added to, your personal information.

## MAINTENANCE OF ACCURATE INFORMATION

It is your best interest to maintain accurate records concerning your personal information. For this reason, you are allowed to update your personal information online, at any time, by using your Password to log into the TAS website or by contacting TAS customer service.

## LIMITED ACCESS TO PERSONAL INFORMATION

Access is limited to your personal information to only those personnel with a business reason for knowing such information. In addition, all personnel are educated about the importance of confidentiality and customer privacy. Individual user names and passwords are used by approved personnel to access your personal information, providing audit trails to further safeguard the privacy of your personnel information.

## THIRD-PARTY DISCLOSURE RESTRICTIONS

All third parties with a business need to access your personal information are required to adhere to stringent privacy policies. Your personal information may be supplied to a third party in order to process a transaction you have authorized or if the disclosure is allowed or required by law, e.g., the exchange of information with reputable reporting agencies in response to a subpoena, in connection with the investigation of fraudulent activity, etc.

**Additional Information:** If you have any questions regarding this Privacy Policy, please contact TAS customer service.

## APPOINTMENT

Customer authorizes TAS to collect and deposit payments customer has agreed to make under Customer's SLC. The fees shall be debited from Customer's bank account or charged on Customer's credit or debit card as elected and authorized by Customer below. TAS will initiate transfers from Customer's bank account, credit or debit card as authorized by Customer, and deposit and hold Customer's funds in a trust account established and serviced by TAS. Customer authorizes TAS to share information with Agent about account balances and transactions, answer questions, and have access electronically to review all Customer information without involvement of Customer. Fees due to Agent may be a draft separate and distinct from the draft of any other amounts that may be drafted under Customer's student loan/document prep. Program. Customer agrees the trust account is non-interest bearing and may be located in Wyoming or any other state of TAS's choice. Customer agrees that TAS will disburse from Customer funds the current service fees as stated below and those fees of Agent based upon TAS's reasonable determination that the fees have been earned by Agent pursuant to the terms of Customer's agreement with Agent. Customer may withdraw approval for any specific disbursement either directly or through Agent by providing written notice three (3) days before the scheduled disbursement. If Customer fails to notify TAS timely, or TAS does not receive actual notice, the disbursement will be automatically processed, and TAS will have no liability for the payment made. Customer may revoke this appointment with a minimum of five (5) banking days notice to TAS in the manner set forth below. Customer acknowledges that the origination of Automatic Clearing House (ACH) transactions to my account must comply with the provisions of U.S laws.

## CUSTOMER SERVICE INFORMATION

**Website Address:** www.trustedaccountservices.com

**Physical Address:** 109 E. 17th St Suite #5656, Cheynne, WY 82001

**Email:** support@trustedaccountservices.com

**Business hours:** Mon  - Sat    8:00am – 05:00pm MDT

## REFUND POLICY

TAS stands behind our services and your satisfaction is important to us. However, because our services are rendered in advance of your payments, we generally offer no refunds. If you change your mind about our services, we will gladly cancel your account, discontinue our services, and stop any future scheduled payments.

Before you cancel your accounting services, we highly recommend that you consult with your Product or Servicing Company to ensure you have a full understanding of how closing your account may impact current agreements that have been made with your Payee.

# SELECTION OF METHOD OF PAYMENT

**ACCOUNT AGREEMENT & APPLICATION**

I hereby apply for and agree to establish a non-interest bearing account (the "Account") with Trusted Account Services (TAS). I understand that this Application is subject to a customer identification program, as required the USA Patriot Act and other applicable laws; and accordingly, I hereby represent that the following information is true and complete to the best of my knowledge and belief. In addition, I understand that I may be required to provide a copy of driver's license and/or other information from time to time for use in connection with the verification of my identity and the administration of the Account.

**Furthermore, I understand that the Account is governed by the terms of this Agreement and that I am bound by all of its terms and conditions.**

**ACCOUNT OWNERSHIP, CONTROL AND USE**

I understand that the Account, established in accordance with this Application and Account Agreement, will contain my sole and exclusive property; that only I (or Authorized Contact, if any) may authorize deposits to and disbursements from the Account; and that I (or Authorized Contact, if any) may withdraw funds from and/or close the Account at any time as provided for in the Agreement. I hereby authorize (a) periodic deposits to be made to the Account pursuant to the authorization provided below and (b) periodic disbursements to be made from the Account pursuant to instructions that I may give from time to time. In this regard, I hereby authorize payment from the Account of the fees and charges provided for this Application and the Agreement.

**PERMISSION TO SHARE DATA**

I hereby grant permission for the bank selected by TAS, TAS and the Sponsor to share information regarding the Account and my Program with each other to facilitate the transactions I may initiate that involve the Account, and with any other party that is essential to the administration of the Account and/or my Program. I understand that the Agreement provides additional information relating to privacy.

_____        _____
Name                            Date of Birth

_____        _____
Street Address                  Phone Number

_____  _____  _____      _____
City        State   Zip         Email Address

_____  _____
Applicant Signature       Date

## AUTHORIZATION AGREEMENT FOR DIRECT DEPOSITS (ACH DEBITS)

I (we) hereby authorize TAS, to initiate debit entries to my (our) Checking Account / Saving Account (select one) indicated below at the depository financial institution named below, hereafter called DEPOSITORY, and to debit the same to such account. I (we) acknowledge that the origination of ACH transactions to my (our) account must comply with the provisions of U.S. laws.
This authorization is to remain in full force and effect until TAS has received written notification from me (or either of us) of its termination no fewer than three (3) days to afford TAS and DEPOSITORY a reasonable opportunity to act on it, or until the schedule of debits is completed.

**Customer One**

Name _____        Date of Birth _____

Street Address _____     Phone Number _____

City _____ State _____ Zip _____    Email Address _____

**Customer Two**

Name _____        Date of Birth _____

Street Address _____     Phone Number _____

City _____ State _____ Zip _____    Email Address _____

**Banking Information**

Bank Name _____       First Draft Amount _____

City _____ State _____ Zip _____    First Draft Date _____

Bank Name
Bank Routing Number _____
                     (e.g. nine-digit ABA number)

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

Tip*      *Your bank may have separate routing number for ACH transactions. Please verify the routing number with your financial institution to prevent delays.*

Bank Account Number _____

Type of Account (please check one)       ☐ Checking                ☐ Savings

Bank Account Holders Name _____

Note:     TAS may run a test of the ACH processor (i.e. pre note) to be sure it is working properly. You may a transaction on the account with a $0 charge.

**I am the authorized signer, or otherwise have authority to act, this funding authorization on the account identified above.**

_____        _____        _____        _____
Customer One Signature          Date                Customer Two Signature          Date

## CREDIT CARD AUTHORIZATION

I, _____, the Customer, hereby authorize TAS to charge my credit card all payments processed pursuant to this Agreement, including Service Fees payable to TAS.

☐ I authorize the TAS to charge a one-time charge to my credit card for the entire payment. I understand that charges declined by the credit card issuer could constitute ground for cancellation of the services to be provided by TAS.

☐ I authorize the Company to charge my credit card pursuant to the scheduled detailed in my agreement with Agent. I also authorize charges to my credit card for any Service Fees payable to TAS or additional as they may occur including but not limited to such charges as Late Fees and/or Reissuance Fees. I understand that charges declined by the credit card issuer could constitute ground for cancellation of the services to be provided by Agent and TAS.

===================================================
Please complete all of the following information.
Your account cannot be processed if incomplete.

Check the type of credit card          MC ☐          VISA ☐          Discover ☐          Amex ☐

CC number: _____     Expiration Date: _____ / _____     Security Code: _____

Name of Credit Card Holder: _____

Billing Address: _____     City: _____     State: ____     Zip: _____

_____                                     _____
Signature of Credit Card Holder                              Date

===================================================