

Select Language ▼

**Kaine Wen #255420**
License Status: Active
Address: 777 E Sierra Madre Ave, Azusa, CA 91702-6869
County: Los Angeles County
Phone Number: Not Available
Fax Number: Not Available
Email: Not Available
Law School: UC Davis SOL King Hall; Davis CA

**Below you will find all changes of license status due to both non-disciplinary administrative matters and disciplinary actions.**

| Date | License Status | Discipline | Administrative Action |
|---|---|---|---|
| Present | Active | | |
| 11/22/2018 | | Discipline, probation; no actual susp. 15-O-15791 | |
| 7/15/2014 | Active | | |
| 1/31/2012 | Inactive | | |
| 3/28/2008 | Admitted to The State Bar of California | | |

**CLA Sections:** None
California Lawyers Association (CLA) is an independent organization and is not part of The State Bar of California.

**State Bar Court Cases:**
Below you will find documents filed in State Bar Court cases. For additional documents, you must request them from the State Bar Court.

| Effective Date | Case Number | Description |
|---|---|---|
| 11/22/2018 | 15-O-15791 | Stipulation [PDF] |

**Additional Information:**
- Explanation of licensee status
- Explanation of disciplinary system
- Explanation of disciplinary actions
- Copies of official licensee discipline records are available upon request

**NOTE:** *The State Bar Court began posting public discipline* documents *online in 2005. The format and pagination of documents posted on this site may vary from the originals in the case file as a result of their translation from the original format into Word and PDF. Copies of additional related documents in a case are* available upon request. *Only* opinions designated for publication *in the State Bar Court Reporter may be cited or relied on as precedent in State Bar Court proceedings. For further information about a case that is displayed here, please refer to the State Bar Court's online docket.*

**DISCLAIMER:** *Any posted Notice of Disciplinary Charges, Conviction Transmittal or other initiating document, contains only allegations of professional misconduct. The licensee is presumed to be innocent of any misconduct warranting discipline until the charges have been proven.*

© 2019 The State Bar of California

(Do not write above this line.)         ORIGINAL

# State Bar Court of California
## Hearing Department
## Los Angeles
### STAYED SUSPENSION

| Counsel For The State Bar<br><br>**Esther Fallas**<br>**Deputy Trial Counsel**<br>845 S. Figueroa St.<br>Los Angeles, CA 90017<br>(213) 756-1071<br><br>Bar # 307348 | Case Number(s):<br>**15-O-15791** | For Court use only<br><br>**PUBLIC MATTER**<br><br>**FILED**<br>JUL 11 2018<br>STATE BAR COURT<br>CLERK'S OFFICE<br>LOS ANGELES |
|---|---|---|
| Counsel For Respondent<br><br>**Ellen Pansky**<br>**Pansky Markle LLP**<br>1010 Sycamore Ave Unit 308<br>South Pasadena, CA 91030<br>(213) 626-7300<br><br>Bar # 77688 | Submitted to: **Settlement Judge**<br><br>STIPULATION RE FACTS, CONCLUSIONS OF LAW AND DISPOSITION AND ORDER APPROVING | |
| In the Matter of:<br>**KAINE WEN**<br><br>Bar # 255420<br><br>A Member of the State Bar of California (Respondent) | **STAYED SUSPENSION; NO ACTUAL SUSPENSION**<br><br>☐ PREVIOUS STIPULATION REJECTED | |

Note: All information required by this form and any additional information which cannot be provided in the space provided, must be set forth in an attachment to this stipulation under specific headings, e.g., "Facts," "Dismissals," "Conclusions of Law," "Supporting Authority," etc.

## A. Parties' Acknowledgments:

(1) Respondent is a member of the State Bar of California, admitted **March 28, 2008**.

(2) The parties agree to be bound by the factual stipulations contained herein even if conclusions of law or disposition are rejected or changed by the Supreme Court.

(3) All investigations or proceedings listed by case number in the caption of this stipulation are entirely resolved by this stipulation and are deemed consolidated. Dismissed charge(s)/count(s) are listed under "Dismissals." The stipulation consists of **11** pages, not including the order.

(4) A statement of acts or omissions acknowledged by Respondent as cause or causes for discipline is included under "Facts."

kwiktag® 197 149 619

(Effective July 1, 2015)

(Do not write above this line.)

(5) Conclusions of law, drawn from and specifically referring to the facts are also included under "Conclusions of Law".

(6) The parties must include supporting authority for the recommended level of discipline under the heading "Supporting Authority."

(7) No more than 30 days prior to the filing of this stipulation, Respondent has been advised in writing of any pending investigation/proceeding not resolved by this stipulation, except for criminal investigations.

(8) Payment of Disciplinary Costs—Respondent acknowledges the provisions of Bus. & Prof. Code §§6086.10 & 6140.7. (Check one option only):

☒ Costs are added to membership fee for calendar year following effective date of discipline.
☐ Costs are to be paid in equal amounts prior to February 1 for the following membership years: (Hardship, special circumstances or other good cause per rule 5.132, Rules of Procedure). If Respondent fails to pay any installment as described above, or as may be modified by the State Bar Court, the remaining balance is due and payable immediately.
☐ Costs are waived in part as set forth in a separate attachment entitled "Partial Waiver of Costs".
☐ Costs are entirely waived.

## B. Aggravating Circumstances [Standards for Attorney Sanctions for Professional Misconduct, standards 1.2(h) & 1.5]. Facts supporting aggravating circumstances are required.

(1) ☐ **Prior record of discipline**

    (a) ☐ State Bar Court case # of prior case

    (b) ☐ Date prior discipline effective

    (c) ☐ Rules of Professional Conduct/ State Bar Act violations:

    (d) ☐ Degree of prior discipline

    (e) ☐ If Respondent has two or more incidents of prior discipline, use space provided below or a separate attachment entitled "Prior Discipline.

(2) ☐ **Intentional/Bad Faith/Dishonesty:** Respondent's misconduct was dishonest, intentional, or surrounded by, or followed by bad faith.

(3) ☐ **Misrepresentation:** Respondent's misconduct was surrounded by, or followed by misrepresentation.

(4) ☐ **Concealment:** Respondent's misconduct was surrounded by, or followed by concealment.

(5) ☐ **Overreaching:** Respondent's misconduct was surrounded by, or followed by overreaching.

(6) ☐ **Uncharged Violations:** Respondent's conduct involves uncharged violations of the Business and Professions Code, or the Rules of Professional Conduct.

(7) ☐ **Trust Violation:** Trust funds or property were involved and Respondent refused or was unable to account to the client or person who was the object of the misconduct for improper conduct toward said funds or property..

WT
6-19-18

(Do not write above this line.)

(8) ☐ **Harm:** Respondent's misconduct harmed significantly a client, the public, or the administration of justice.

(9) ☐ **Indifference:** Respondent demonstrated indifference toward rectification of or atonement for the consequences of his or her misconduct.

(10) ☐ **Candor/Lack of Cooperation:** Respondent displayed a lack of candor and cooperation to victims of his/her misconduct, or to the State Bar during disciplinary investigations or proceedings.

(11) ☒ **Multiple Acts:** Respondent's current misconduct evidences multiple acts of wrongdoing. See page 7.

(12) ☐ **Pattern:** Respondent's current misconduct demonstrates a pattern of misconduct.

(13) ☐ **Restitution:** Respondent failed to make restitution.

(14) ☐ **Vulnerable Victim:** The victim(s) of Respondent's misconduct was/were highly vulnerable.

(15) ☐ **No aggravating circumstances** are involved.

**Additional aggravating circumstances**

## C. Mitigating Circumstances [see standards 1.2(i) & 1.6]. Facts supporting mitigating circumstances are required.

(1) ☐ **No Prior Discipline:** Respondent has no prior record of discipline over many years of practice coupled with present misconduct which is not likely to recur.

(2) ☐ **No Harm:** Respondent did not harm the client, the public, or the administration of justice.

(3) ☐ **Candor/Cooperation:** Respondent displayed spontaneous candor and cooperation with the victims of his/her misconduct or to the State Bar during disciplinary investigations and proceedings.

(4) ☐ **Remorse:** Respondent promptly took objective steps demonstrating spontaneous remorse and recognition of the wrongdoing, which steps were designed to timely atone for any consequences of his/her misconduct.

(5) ☐ **Restitution:** Respondent paid $_____ on _____ in restitution to _____ without the threat or force of disciplinary, civil or criminal proceedings.

(6) ☐ **Delay:** These disciplinary proceedings were excessively delayed. The delay is not attributable to Respondent and the delay prejudiced him/her.

(7) ☐ **Good Faith:** Respondent acted with a good faith belief that was honestly held and objectively reasonable.

(8) ☐ **Emotional/Physical Difficulties:** At the time of the stipulated act or acts of professional misconduct Respondent suffered extreme emotional difficulties or physical or mental disabilities which expert testimony would establish was directly responsible for the misconduct. The difficulties or disabilities were not the product of any illegal conduct by the member, such as illegal drug or substance abuse, and the difficulties or disabilities no longer pose a risk that Respondent will commit misconduct.

WT
6-19-18

(Do not write above this line.)

(9) ☐ **Severe Financial Stress:** At the time of the misconduct, Respondent suffered from severe financial stress which resulted from circumstances not reasonably foreseeable or which were beyond his/her control and which were directly responsible for the misconduct.

(10) ☐ **Family Problems:** At the time of the misconduct, Respondent suffered extreme difficulties in his/her personal life which were other than emotional or physical in nature.

(11) ☐ **Good Character:** Respondent's extraordinarily good character is attested to by a wide range of references in the legal and general communities who are aware of the full extent of his/her misconduct.

(12) ☐ **Rehabilitation:** Considerable time has passed since the acts of professional misconduct occurred followed by subsequent rehabilitation.

(13) ☐ **No mitigating circumstances** are involved.

**Additional mitigating circumstances**

No Prior Record of Discipline, see pages 7-8.

Good Character, see page 8.

Prefiling Stipulation, see page 8.

## D. Discipline:

(1) ☒ **Stayed Suspension:**

    (a) ☒ Respondent must be suspended from the practice of law for a period of **one year**.

        i. ☐ and until Respondent shows proof satisfactory to the State Bar Court of rehabilitation and fitness to practice and present learning and ability in the general law pursuant to standard 1.2(c)(1), Standards for Attorney Sanctions for Professional Misconduct.

        ii. ☐ and until Respondent pays restitution as set forth in the Financial Conditions form attached to this stipulation.

        iii. ☐ and until Respondent does the following:

The above-referenced suspension is stayed.

(2) ☒ **Probation:**

Respondent is placed on probation for a period of **one year**, which will commence upon the effective date of the Supreme Court order in this matter. (See rule 9.18 California Rules of Court.)

## E. Additional Conditions of Probation:

(1) ☒ During the probation period, Respondent must comply with the provisions of the State Bar Act and Rules of Professional Conduct.

(2) ☒ Within ten (10) days of any change, Respondent must report to the Membership Records Office of the State Bar and to the Office of Probation of the State Bar of California ("Office of Probation"), all changes of information, including current office address and telephone number, or other address for State Bar purposes, as prescribed by section 6002.1 of the Business and Professions Code.

WT
6-19-18

(Do not write above this line.)

(3) ☒ Within thirty (30) days from the effective date of discipline, Respondent must contact the Office of Probation and schedule a meeting with Respondent's assigned probation deputy to discuss these terms and conditions of probation. Upon the direction of the Office of Probation, Respondent must meet with the probation deputy either in-person or by telephone. During the period of probation, Respondent must promptly meet with the probation deputy as directed and upon request.

(4) ☒ Respondent must submit written quarterly reports to the Office of Probation on each January 10, April 10, July 10, and October 10 of the period of probation. Under penalty of perjury, Respondent must state whether Respondent has complied with the State Bar Act, the Rules of Professional Conduct, and all conditions of probation during the preceding calendar quarter. Respondent must also state whether there are any proceedings pending against him or her in the State Bar Court and if so, the case number and current status of that proceeding. If the first report would cover less than 30 days, that report must be submitted on the next quarter date, and cover the extended period.

In addition to all quarterly reports, a final report, containing the same information, is due no earlier than twenty (20) days before the last day of the period of probation and no later than the last day of probation.

(5) ☐ Respondent must be assigned a probation monitor. Respondent must promptly review the terms and conditions of probation with the probation monitor to establish a manner and schedule of compliance. During the period of probation, Respondent must furnish to the monitor such reports as may be requested, in addition to the quarterly reports required to be submitted to the Office of Probation. Respondent must cooperate fully with the probation monitor.

(6) ☒ Subject to assertion of applicable privileges, Respondent must answer fully, promptly and truthfully any inquiries of the Office of Probation and any probation monitor assigned under these conditions which are directed to Respondent personally or in writing relating to whether Respondent is complying or has complied with the probation conditions.

(7) ☒ Within one (1) year of the effective date of the discipline herein, Respondent must provide to the Office of Probation satisfactory proof of attendance at a session of the State Bar Ethics School, and passage of the test given at the end of that session.

☐ No Ethics School recommended. Reason:

(8) ☐ Respondent must comply with all conditions of probation imposed in the underlying criminal matter and must so declare under penalty of perjury in conjunction with any quarterly report to be filed with the Office of Probation.

(9) ☐ The following conditions are attached hereto and incorporated:

☐ Substance Abuse Conditions      ☐ Law Office Management Conditions

☐ Medical Conditions      ☐ Financial Conditions

## F. Other Conditions Negotiated by the Parties:

(1) ☒ **Multistate Professional Responsibility Examination:** Respondent must provide proof of passage of the Multistate Professional Responsibility Examination ("MPRE"), administered by the National Conference of Bar Examiners, to the Office of Probation within one year. **Failure to pass the MPRE results in actual suspension without further hearing until passage. But see rule 9.10(b), California Rules of Court, and rule 5.162(A) & (E), Rules of Procedure.**

☐ No MPRE recommended. Reason:

(2) ☐ **Other Conditions:**

wT
6-19-18

(Effective July 1, 2015)

CA bar – Wen
5

Stayed Suspension
Pl. Ex. 36
p. 741

# ATTACHMENT TO

## STIPULATION RE FACTS, CONCLUSIONS OF LAW AND DISPOSITION

IN THE MATTER OF:     KAINE WEN

CASE NUMBER:          15-O-15791

**FACTS AND CONCLUSIONS OF LAW.**

Respondent admits that the following facts are true and that he is culpable of violations of the specified statutes and/or Rules of Professional Conduct.

### Case No. 15-O-15791 (Complainant: John Grass)

FACTS:

1. On August 8, 2014, respondent registered Stone Law Group ("SLG") as a California professional corporation by filing Articles of Incorporation with the California Secretary of State. Respondent outsourced primary tasks of marketing, customer acquisition and service, data collection, verification, and document preparation to the owner of Consumer Advocacy Center ("CAC"). CAC is not a law firm, and its owner is not a lawyer.

2. On January 8, 2015, CAC's owner telephoned John Grass ("Grass") at Grass's home in Phoenixville, Pennsylvania on behalf of respondent. Grass told CAC's owner that he lived in Pennsylvania, where his property was located; Grass had no connection to California.

3. On January 8, 2015, Grass hired SLG through CAC's owner. Respondent provided two retainer agreements to Grass through CAC; the first included evaluation of Grass's options and both the preparation and delivery of a Qualified Written Request to Grass's home mortgage lender. The second retainer was to process and draft documents for a loan modification and prepare a loan modification package to Grass's lender. The retainer agreements stated that Grass must pay for legal services and expert fees at a flat rate of $1450 for each retainer directly to SLG.

4. Respondent did not disclose to Grass in either retainer agreement that respondent was not admitted to practice law in Pennsylvania, nor did respondent take any steps to comply with Pennsylvania's multi-jurisdictional practice rule, Rules of Professional Conduct, rule 5.5.

5. Grass paid SLG a total of $2,900 in four payments of $725 paid on January 23, 2015; February 23, 2015; March 31, 2015; and April 8, 2015. For each payment that SLG received from Grass, SLG kept $72.50 and paid CAC $652.50.

6. After Grass signed the retainer agreements with SLG, Grass's only contact with SLG was through CAC; Grass had no way of contacting SLG directly, and all of CAC's contacts with Grass were on behalf of SLG.

7. On May 8, 2015, SLG's CAC representative emailed a request for third party authorization to Bank of America. The authorization, which Grass signed, authorized SLG to represent Grass.

8. In July 2015, Grass tried to telephone CAC but the phone number was not in service. Additionally, Grass attempted to visit SLG's website, but the website was unavailable. CAC never again contacted Grass.

9. In July 2015, respondent also lost all communication with CAC, and on September 21, 2015, respondent dissolved SLG by filing a Certificate of Dissolution with the California Secretary of State.

10. Grass ultimately obtained a loan modification with Bank of America, without the aid of SLG, after Grass lost contact with CAC.

11. On December 19, 2017, after the Office of Chief Trial Counsel advised respondent of pending charges, respondent paid Grass $3,600. This amount included $2,900 in restitution for advance legal fees Grass paid SLG, plus $700 in interest at an annual rate of 10% calculated from January 23, 2015 to December 19, 2017.

12. On December 27, 2017, respondent paid an additional $120.00 in interest on the previously-refunded advance fees.

CONCLUSIONS OF LAW:

13. By representing Grass, a resident of Pennsylvania, from January 8, 2015 through July 2015 regarding Grass's residential property in Pennsylvania, without disclosing to Grass that respondent was not admitted to practice law in Pennsylvania, respondent held himself out as entitled to practice law in Pennsylvania when to do so was in violation of Pennsylvania Rules of Professional Conduct, Rule 5.5(b)(2), and therefore in willful violation of Rules of Professional Conduct, rule 1-300(B).

14. By entering into an agreement with Grass on January 8, 2015, charging and collecting a fee of $2,900 to perform legal services in a jurisdiction in which respondent held himself out as admitted to practice law in Pennsylvania despite not being admitted to practice law in that jurisdiction, respondent entered into an agreement for, charged, and collected an illegal fee, in willful violation of the Rules of Professional Conduct, rule 4-200(A).

15. By sharing with the owner of Consumer Advocacy Center legal fees received from Grass, for legal services provided to Grass, respondent shared legal fees with a person who was not a lawyer, in willful violation of Rules of Professional Conduct, Rule 1-320(A).

AGGRAVATING CIRCUMSTANCES.

**Multiple Acts of Wrongdoing (Std. 1.5(b)):** Respondent committed the unauthorized practice of law in Pennsylvania by holding himself out as entitled to practice law in Pennsylvania without being licensed to practice law in Pennsylvania; collected an illegal fee for services that constituted the unauthorized practice of law; and split legal fees with a non-attorney.

MITIGATING CIRCUMSTANCES.

**No Prior Discipline:** The State Bar of California admitted respondent to the practice of law on March 28, 2008. Respondent was active from March 28, 2008 until January 30, 2012. Beginning January 31, 2012, respondent voluntary placed himself on inactive status, but later returned to active

WT
6-19-18

7

CA bar – Wen

Pl. Ex. 36
p. 743

status on July 15, 2014. Respondent has no prior record of discipline, but practiced law for only five of the seven years since his admission. Thus, the mitigating weight available to respondent's five years of discipline-free practice is only nominal. (See *In the Matter of Duxbury* (Review Dept. 1999) 4 Cal. State Bar Ct. Rptr. 61, 66; see also *In re Distefano* (Review Dept. 1975) 13 Cal. 3d 476, 481 [five years of practice without prior discipline is entitled to nominal weight in mitigation].)

**Good Character:** Respondent provided eight character letters from both the legal and general communities. All of the individuals are aware of the misconduct. Six of the letters were from friends who have known respondent from 10 to 28 years. The individuals described respondent as honest, smart, caring, and loyal. Despite their knowledge of the misconduct, they stated that respondent is of good moral character, possesses integrity, and is trustworthy.

Two attorneys submitted letters on respondent's behalf. One attorney has known respondent for 20 years. He described respondent as a responsible, accountable, quality attorney who is a value to the legal community. The other attorney attested that respondent is highly respected both professionally and socially. He described respondent as an attorney with integrity, professionalism, and high moral character. Respondent's eight character letters provide significant mitigation weight. (See *Porter v. State Bar* (1990) 52 Cal.3d 518, 529 [where evidence of good character warranted lesser discipline].)

**Prefiling Stipulation:** By entering into this stipulation, respondent has acknowledged misconduct and is entitled to mitigation for recognition of wrongdoing and saving the State Bar significant resources and time. (*Silva-Vidor v. State Bar* (1989) 49 Cal.3d 1071, 1079 [where mitigative credit was given for entering into a stipulation as to facts and culpability]; *In the Matter of Spaith* (Review Dept. 1996) 3 Cal. State Bar Ct. Rptr. 511, 521 [where the attorney's stipulation to facts and culpability was held to be a mitigating circumstance].)

## AUTHORITIES SUPPORTING DISCIPLINE.

The Standards for Attorney Sanctions for Professional Misconduct "set forth a means for determining the appropriate disciplinary sanction in a particular case and to ensure consistency across cases dealing with similar misconduct and surrounding circumstances." (Rules Proc. of State Bar, tit. IV, Stds. for Atty. Sanctions for Prof. Misconduct, std. 1.1. All further references to standards are to this source.) The standards help fulfill the primary purposes of discipline, which include: protection of the public, the courts and the legal profession; maintenance of the highest professional standards; and preservation of public confidence in the legal profession. (See std. 1.1; *In re Morse* (1995) 11 Cal.4th 184, 205.)

Although not binding, the standards are entitled to "great weight" and should be followed "whenever possible" in determining level of discipline. (*In re Silverton* (2005) 36 Cal.4th 81, 92, quoting *In re Brown* (1995) 12 Cal.4th 205, 220 and *In re Young* (1989) 49 Cal.3d 257, 267, fn. 11.) Adherence to the standards in the great majority of cases serves the valuable purpose of eliminating disparity and assuring consistency, that is, the imposition of similar attorney discipline for instances of similar attorney misconduct. (*In re Naney* (1990) 51 Cal.3d 186, 190.) If a recommendation is at the high end or low end of a standard, an explanation must be given as to how the recommendation was reached. (Std. 1.1.) "Any disciplinary recommendation that deviates from the Standards must include clear reasons for the departure." (Std. 1.1; *Blair v. State Bar* (1989) 49 Cal.3d 762, 776, fn. 5.)

In determining whether to impose a sanction greater or less than that specified in a given standard, in addition to the factors set forth in the specific standard, consideration is to be given to the

primary purposes of discipline; the balancing of all aggravating and mitigating circumstances; the type of misconduct at issue; whether the client, public, legal system or profession was harmed; and the member's willingness and ability to conform to ethical responsibilities in the future. (Stds. 1.7(b) and (c).)

Standard 1.7(a) states, "If a member commits two or more acts of misconduct and the Standards specify different sanctions for each act, the most severe sanction must be imposed." In this instance, the most severe standard is standard 2.8, the applicable standard for fee-splitting with a non-lawyer, which calls for actual suspension.

Here, respondent held himself out as entitled to practice law in Pennsylvania without being licensed to practice law in Pennsylvania, and received an illegal fee for that practice. Respondent also split legal fees with a non-lawyer.

However, to determine the appropriate level of discipline, we must also consider the aggravating and mitigating circumstances. In aggravation, respondent engaged in multiple acts of misconduct. In mitigation, respondent entered into a prefiling stipulation, provided evidence of good character, and had five years of discipline-free practice at the time of the misconduct. Additionally, though harm to the client, public or the administration of justice is inherent in the unauthorized practice of law, any harm to the client here was minimal. Though respondent did not refund the fees Grass paid until after Grass complained to the State Bar, respondent did ultimately refund the entire fee paid, and he made an additional payment equivalent to 10% interest per year for the period in which respondent held Grass's funds.

In *In re Wells* (Review Dept. 2006) 4 Cal. State Bar Ct. Rptr. 896, the Review Department held Wells culpable for engaging in the unauthorized practice of law in another jurisdiction where she was not admitted, charging an illegal fee, failing to return unearned fees, charging an unconscionable fee, failing to maintain funds in a trust account, and committing two acts of moral turpitude. Wells did not refund $11,000 to her client prior to the disciplinary trial in her matter, and she failed to deposit funds from her client's settlement fund into the client trust account. In a second matter, Wells engaged in the unauthorized practice of law, charged $6,500 fees without a fee agreement, and failed to pay $6,500 in restitution. Moreover, Wells committed acts of moral turpitude by lying to a State Bar investigator and a South Carolina deputy solicitor regarding her misconduct. Wells also had one prior discipline, a private reproval, for misconduct in two matters. The Review Department held that the appropriate level of discipline was a two-year stayed suspension, two years' probation, with a six-month actual suspension and until respondent paid restitution for her unauthorized practice of law in two client matters in South Carolina.

Under these circumstances, the six-month actual suspension in *Wells* is too severe, as respondent's misconduct is less severe and less aggravated by comparison. Respondent did not fail to maintain funds in a trust account, nor did he commit acts of moral turpitude by lying to a State Bar investigator or a state deputy solicitor, as Wells did. Additionally, Wells's misconduct involved two client matters, while respondent's misconduct arose from just one client matter. Moreover, Wells had a prior record of discipline, while this respondent does not have a prior record of discipline. Compared to Wells, the misconduct here falls at the low end of the applicable standard, before any aggravating or mitigating factors are considered.

In light of respondent's misconduct, the minimal aggravating and the significant mitigating circumstances surrounding the misconduct, the relevant standards and case law, and the fact that

respondent's misconduct caused minimal harm, a downward departure from the actual suspension described in standard 2.8 is appropriate. Therefore, the appropriate level of discipline is a one-year stayed suspension and a one-year probation with standard conditions, Ethics School, and MPRE testing. This level of discipline is consistent with the standards, prior case law, and the purposes of discipline, which include protection of the public, the courts, and the legal profession.

**COSTS OF DISCIPLINARY PROCEEDINGS.**

Respondent acknowledges that the Office of Chief Trial Counsel has informed respondent that as of May 29, 2018, the discipline costs in this matter are $3,300. Respondent further acknowledges that should this stipulation be rejected or should relief from the stipulation be granted, the costs in this matter may increase due to the cost of further proceedings.

**EXCLUSION FROM MINIMUM CONTINUING LEGAL EDUCATION ("MCLE") CREDIT**

Respondent may <u>not</u> receive MCLE credit for completion of State Bar Ethics School. (Rules Proc. of State Bar, rule 3201.)

| (Do not write above this line.) | |
|---|---|
| In the Matter of<br>**KAINE WEN** | Case number(s):<br>15-O-15791 |

## SIGNATURE OF THE PARTIES

By their signatures below, the parties and their counsel, as applicable, signify their agreement with each of the recitations and each of the terms and conditions of this Stipulation Re Fact, Conclusions of Law and Disposition.

6/19/18
Date / *[signature]* / Kaine Wen
Respondent's Signature / Print Name

6/20/18
Date / *[signature: Ellen A Pansky]* / Ellen Pansky
Respondent's Counsel Signature / Print Name

6/20/18
Date / *[signature]* / Esther Fallas
Deputy Trial Counsel's Signature / Print Name

WT
6-19-18

11

(Do not write above this line.)

| In the Matter of:<br>KAINE WEN | Case Number(s):<br>15-O-15791 |
|---|---|

## STAYED SUSPENSION ORDER

Finding the stipulation to be fair to the parties and that it adequately protects the public, IT IS ORDERED that the requested dismissal of counts/charges, if any, is GRANTED without prejudice, and:

☒ The stipulated facts and disposition are APPROVED and the DISCIPLINE RECOMMENDED to the Supreme Court.

☐ The stipulated facts and disposition are APPROVED AS MODIFIED as set forth below, and the DISCIPLINE IS RECOMMENDED to the Supreme Court.

☐ All Hearing dates are vacated.

The parties are bound by the stipulation as approved unless: 1) a motion to withdraw or modify the stipulation, filed within 15 days after service of this order, is granted; or 2) this court modifies or further modifies the approved stipulation. (See rule 5.58(E) & (F), Rules of Procedure.) **The effective date of this disposition is the effective date of the Supreme Court order herein, normally 30 days after file date. (See rule 9.18(a), California Rules of Court.)**

7/11/18 _____    _____
Date                                 **DONALD F. MILES**
                                     Judge of the State Bar Court

(Effective July 1, 2015)          CA bar - Wen          Stayed Suspension Order
                                  Page ___              Pl. Ex. 36
                                                        p. 748

## CERTIFICATE OF SERVICE

[Rules Proc. of State Bar; Rule 5.27(B); Code Civ. Proc., § 1013a(4)]

I am a Court Specialist of the State Bar Court of California. I am over the age of eighteen and not a party to the within proceeding. Pursuant to standard court practice, in the City and County of Los Angeles, on July 11, 2018, I deposited a true copy of the following document(s):

    STIPULATION RE FACTS, CONCLUSIONS OF LAW AND DISPOSITION AND ORDER APPROVING

in a sealed envelope for collection and mailing on that date as follows:

☒     by first-class mail, with postage thereon fully prepaid, through the United States Postal Service at Los Angeles, California, addressed as follows:

    ELLEN A. PANSKY
    PANSKY MARKLE ATTORNEYS AT LAW
    1010 SYCAMORE AVE UNIT 308
    S PASADENA, CA 91030 – 6139

☒     by interoffice mail through a facility regularly maintained by the State Bar of California addressed as follows:

    ESTHER FALLAS, Enforcement, Los Angeles

I hereby certify that the foregoing is true and correct. Executed in Los Angeles, California, on July 11, 2018.

                                                                   Mazie Yip
                                                                   Court Specialist
                                                                   State Bar Court