**DECLARATION OF KAINE WEN**

I, Kaine Wen, declare as follows:

1.   I am a defendant in *Bureau of Consumer Financial Protection, et al. v. Consumer Advocacy Center Inc., d/b/a Premier Student Loan Center, et al.*, Case No. 8:19-cv-01998 MWF (KSx) (the "CFPB Action"). I make this declaration in response to Venable LLP's ("Venable") Motion to Withdraw as Counsel of Record for Defendants True Count Staffing, Inc., Albert Kim, and Kaine Wen, and Relief Defendant Infinite Management Corp. (the "Motion"). I have personal knowledge of the facts stated herein, and if called as a witness, I could and would testify competently thereto.

2.   In making this Declaration, I have no intent to waive the attorney-client privilege, any joint defense privilege, or any other privilege applicable to my communications with Venable and its attorneys.

3.   I have been represented continuously by Venable, and specifically by partners Allyson Baker ("Allyson") and Gerald Sachs ("Gerry"), for the past two years, since July 2019.

4.   I first retained Venable on approximately July 17, 2019, several months before the filing of the CFPB Action. I retained Venable to represent me and True Count Staffing, Inc. ("True Count") for the purpose of getting into compliance with federal and state telemarketing and consumer protection laws.

5.   I learned about the filing of the CFPB Action and the issuance of the Temporary Restraining Order on October 23, 2019. Albert Kim ("Albert") and I entered into a separate retainer agreement with Venable on approximately October 25, 2019, to represent us

1

jointly in the CFPB Action, together with a number of companies with which we were affiliated.

6. At the time Albert and I retained Venable for the CFPB Action, we both waived, in a writing drafted by Venable, any conflicts that Venable might have in jointly representing us in the litigation.

7. When Albert and I retained Venable to jointly represent us in the CFPB Action, Venable demanded, and we paid, a mid six-figure retainer.

8. In late February 2020, Venable demanded, and Albert and I paid, an additional five-figure retainer.

9. Between June 15, 2020 and at least July 13, 2020, in a series of emails and telephone conferences, Allyson and Gerry demanded that Albert and I pay another additional five-figure retainer amount to continue to represent us in the CFPB Action. No mention was made by Allyson or Gerry at that time that Venable had an unwaivable conflict of interest in continuing to represent us jointly.

10. Although Venable was demanding more money, it had not sent us an invoice for the months of February, March, April, and May 2020. Before agreeing to pay Venable the second additional retainer, I asked Allyson and Gerry to send us a copy of all invoices, including the missing invoices. I also asked Allyson and Gerry for an accounting of all activity in our client trust account, going back to July 2019, which we had never previously received.

11. It was only after Venable made their June 2020 demand for more money, I requested the missing invoices and the accounting, and Albert and I started raising

questions about Venable's billings, that Allyson and Gerry claimed that Venable may have a conflict of interest.

12.   On July 21, 2020, Allyson and Gerry informed me and Albert during a telephone conference that Venable would be filing a motion to withdraw as our counsel in the CFPB Action due to a conflict of interest. At the time, Allyson stated that Venable had no current conflict of interest and could continue to represent me and Albert in settlement negotiations with Plaintiffs. Further, neither Allyson nor Gerry explained what the conflict was, how or when it arose, or why it had not been disclosed to us earlier. Albert and I made clear to Allyson and Gerry at the time that we were willing to waive any further conflict.

13.   During the July 21 telephone conference, Allyson and Gerry asked me and Albert, on several occasions, to consent to their withdrawal in the CFPB Action. Albert and I both made clear each time that we did not consent to Venable's withdrawal.

14.   On the evening of July 23, 2020, Gerry emailed me and Albert that Venable anticipated filing its motion to withdraw the following day, Friday, July 24, 2020. In response, at 6:54 AM on July 24, Albert and I sent Allyson and Gerry an email stating as follows:

> **Albert and I request that you <u>include the below statement verbatim in your Motion to Withdraw</u>:**
>
> **Neither Albert Kim nor Kaine Wen consent to Venable's withdrawal as their counsel in this action, and have expressly told Venable this. Venable has represented them jointly, along with Defendants True Count Staffing and Infinite Management, since the initiation of this lawsuit in October 2019, and have acted as the lead counsel for all defendants and their counsel in negotiating a settlement with Plaintiffs.**
>
> **Venable has refused to tell Mr. Kim or Mr. Wen the reasons for their withdrawal after all this time and when the parties seem close to a settlement, other than that**

**they have an unwaivable conflict, but refuse to tell Mr. Kim or Mr. Wen what the conflict is, when it arose, and why it cannot be waived.**

**Mr. Kim and Mr. Wen have also told Venable that they do not waive the attorney client privilege or any other privilege that applies to their communications with Venable.**

15. On the evening of Friday, July 24, 2020, Venable served Albert and I with a copy of the Motion. When I read it, I was shocked to see that Venable had completely omitted the statement that Albert and I had asked to be included.

16. In addition, Venable gratuitously states in the Motion and in the Declaration of Gerald Sachs that, "it bears noting that Defendants have a significant outstanding balance for work performed by Venable on this matter and have not indicated any willingness or ability to pay those fees or any fees for future work." (Motion, pp. 5-6, fn. 2; Sachs Decl., ¶ 6). This is a breach of the attorney-client privilege as it conveys information that Venable could only have learned in the course of its confidential communications with us, and greatly prejudices our position in the litigation.

17. There are a number of other points in Venable's Motion and the accompanying declaration of Gerald Sachs with which I take issue:

a.      First, Venable states that it "must be permitted to withdraw because an actual conflict of interest has arisen in its joint representation of Defendants that puts Venable in an impossible position with respect to the applicable Rules of Professional Conduct if its joint representation of Defendants was to continue." (Motion, p. 4). As I stated, Albert and I had previously waived in writing any conflict of interest arising from Venable's joint representation of us, and we agreed to further waive any conflict of interest if necessary for Venable to continue to represent us. Furthermore, Venable

4

never explained to us what the conflict of interest was or why it was unwaivable. In fact, during the July 21 telephone conference, Allyson specifically stated that Venable did not have a current conflict of interest in representing Albert and me jointly in the settlement negotiations.

b.      Second, Venable states that "due to the above-referenced conflicts, communications between Venable and Defendants have broken down, such that Venable is no longer able to effectively represent Defendants without unreasonable difficulty." (Motion, p. 5). This statement is not true. Throughout the two years that Venable has represented me, I have always followed its advice, I have always promptly responded to all requests for information and documents, and I have always promptly responded to all emails and returned all telephone calls from Allyson and Gerry.

c.      Third, Venable claims that we owe it a "significant outstanding balance" (Motion, p. 5, fn. 2). This is also not true. Venable has only recently claimed that we owe it money, but that the amount is less than $10,000. Moreover, Albert and I dispute this amount, have not told Venable that we are unwilling or unable to pay it, if we actually owe it, and pursuant to our retainer agreement, this outstanding balance would not be due for several more weeks in any event.

18. In addition, Venable states that "withdrawal from representing three defendants and one relief defendant will not materially prejudice any of them, the many other plaintiffs and defendants in this action, or the administration of justice; nor will it delay resolution of this case." (Motion, p. 6). This statement is not correct.

5

a.      Venable filed its Motion on a Friday evening, only seven days before the July 31, 2020 deadline for defendants to file their responsive pleadings. Despite our request for Venable to file a response to Plaintiffs' First Amended Complaint, it appears that Venable has no intention of preparing and filing a responsive pleading on behalf of Albert and myself on or before the July 31 deadline, which I understand could result in our being deemed to have defaulted.

b.      Venable has been the primary point of contact and the lead negotiator on behalf of all defendants and their counsel in the ongoing global settlement negotiations with the CFPB and the other Plaintiffs. These negotiations have been underway for the past several weeks and the parties have exchanged at least three sets of proposed settlement documents. In addition, I have provided all financial disclosures requested of me and the companies that I control for purposes of advancing the global settlement negotiations. As a result of Venable filing its Motion, it is unclear when or how those negotiations can be completed, and it now seems certain that they cannot be completed on a global basis by the July 31 filing deadline.

19. In summary, by seeking to withdraw as my counsel at this critical time in the litigation, Venable is harming my position in the case and will be significantly delaying its resolution.

///

///

///

6

I declare under penalty of perjury under the laws of the United States of America

that the foregoing is true and correct.

Executed this 28th day of July, 2020, in Los Angeles County, California.

_____

Kaine Wen