**SUPPLEMENTAL DECLARATION OF KAINE WEN**

I, Kaine Wen, declare as follows:

1. I am a defendant in *Bureau of Consumer Financial Protection, et al. v. Consumer Advocacy Center Inc., d/b/a Premier Student Loan Center, et al.*, Case No. 8:19-cv-01998 MWF (KSx) (the "CFPB Action"). I make this Supplemental Declaration in response to Venable LLP's ("Venable") *In Camera* Submission in Response to Court Order Re *Ex Parte* Application. I have personal knowledge of the facts stated herein, and if called as a witness, I could and would testify competently thereto.

2. In making this Supplemental Declaration, I have no intent to waive the attorney-client privilege, any joint defense privilege, or any other privilege applicable to my communications with Venable and its attorneys.

3. I have been represented continuously by Venable, and specifically by partners Allyson Baker ("Allyson") and Gerald Sachs ("Gerry"), for the past two years, since July 2019.

4. Albert Kim ("Albert") and I entered into a separate retainer agreement with Venable on approximately October 25, 2019, to represent us jointly in the CFPB Action, together with a number of companies with which we were affiliated. Venable's engagement letter, which was dated October 29, 2020, states:

> Venable will jointly represent Kaine Wen, Albert Kim, True Count Staffing, Infinite Management Corp. (f/k/a Infinite Management Solutions, Inc.), All Out Staffing, Inc., Hold The Door Corp., and Prime Consulting, Inc., in connection with defense in the matter *Consumer Fraud Protection Bureau v. Consumer Advocacy Center, et al.* filed in the U.S. District Court for the Central District of California (8:19-CV-01998). (the "Matter").

1

5. At that time, Venable demanded a retainer of $500,000, which Albert and I jointly paid. My payment was not derived from any of the conduct at issue in the CFPB Action.

6. In March 2020, Venable demanded an additional $35,000 retainer to continue to represent me and Albert in the CFPB Action. Albert and I jointly paid the additional $35,000 demanded by Venable. My payment was not derived from any of the conduct at issue in the CFPB Action.

**Timeline Concerning Venable's Demands for a Second Additional Retainer**

7. Beginning mid-June of 2020, Allyson and Gerry demanded that Albert and I pay Venable a second additional retainer to continue to represent us in the CFPB Action. The following is a timeline concerning those demands.

8. On June 15, 2020, Gerry emailed me and Albert, copying Allyson, stating that, "we must ask for an additional retainer of $20K to continue working with you. If you would like to discuss this request, please let us know. Otherwise, please remit payment as soon as possible." No mention was made of any conflict in that email or at that time.

9. On June 29, 2020, Allyson emailed me and Albert, copying Gerry, stating that, "we will need additional funds for our retainer – another $25K by the end of the week. We are happy to coordinate with everybody, but we will need some additional money to continue on this course. Please let me know if you would like to discuss any of this." No mention was made of any conflict in that email or at that time.

10. On July 1, 2020, Allyson emailed me and Albert, copying Gerry, stating, "I am writing about the below request [referencing the June 29 email]. Please understand that we

are going to have to withdraw as your counsel in this matter, as our Firm will not allow us to take this case without a fee." No mention was made of any conflict in that email or at that time.

11. On July 6, 2020, during a telephone conference with only me, Allyson and Gerry again demanded a second additional retainer, and further stated that Venable would withdraw from representing Albert alone if he did not pay his share of the second additional retainer. No mention was made of any conflict during that telephone conference or at that time.

12. On July 12, 2020, Allyson emailed me alone (and included Gerry), stating that, "we will need a retainer to continue to represent you on this case." No mention was made of any conflict in that email or at that time.

13. On July 13, 2020, during a telephone conference with me and Albert, Allyson and Gerry again demanded that we pay a second additional retainer, but this time asked for $30,000. Allyson and Gerry further stated that Venable would withdraw if we did not pay the $30,000, as it could not "work for free." No mention was made of any conflict during that telephone conference or at that time.

14. On July 21, 2020, during a telephone conference with me and Albert, Allyson stated that Venable had no current conflict of interest and could continue to represent me and Albert in settlement negotiations with Plaintiffs.

15. On July 24, 2020, Venable filed its Motion to Withdraw as Counsel of Record for Defendants True Count Staffing, Inc., Albert Kim, and Kaine Wen, and Relief Defendant Infinite Management Corp. (the "Motion to Withdraw").

3

**Requests for Invoices and an Accounting**

16. As noted in my prior Declaration, when Venable began demanding the second additional retainer, Albert and I requested missing invoices and an accounting to see how much we had paid Venable to date and what Venable had done for that money.

17. On July 6, 2020, I requested that Venable send us all the missing invoices, which included missing invoices for the months of February, March, April, and May 2020. It took a number of requests before Venable sent all of the requested invoices. We did not receive the last of the missing invoices until July 16, 2020.

18. Because the invoices were difficult to understand, on July 19, 2020, I requested that Venable send us an accounting of all activity in our client trust accounts, dating back to July 2019. I had never previously received any form of an accounting from Venable. Notwithstanding numerous requests, Venable never sent me a formal accounting. Instead, Venable only sent me an Excel spreadsheet, and after several more requests, added a number of tabs. The Excel spreadsheet with added tabs were not a full accounting, and were confusing and demonstratively inaccurate.

19. On July 24, 2020, the same day that Venable filed its Motion to Withdraw, Allyson emailed me and Albert that the total amount we owed Venable was $8,039.99 (this is after having paid Venable $535,000 for representing us in the CFPB Action). Based on my review of the invoices and Excel spreadsheets, I do not believe that we owe Venable the $8,039.99.

**Settlement Negotiations**

20. On July 23, 2020, Venable received Plaintiffs' latest proposed settlement documentation. That same day, Gerry forwarded me the settlement documentation, indicating that he had not yet reviewed it, stating: "FYI – I am forwarding, but have not reviewed the attachment, yet."

21. To date, neither Allyson nor Gerry have reviewed or discussed with me Plaintiffs' latest proposed settlement.

22. I believe that Venable filing its Motion to Withdraw when it did, and gratuitously stating that Albert and I were unable and/or unwilling to pay the amount Venable claimed we owe it, has severely harmed me in the settlement negotiations with Plaintiffs and eliminated any prospect of a global resolution.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this 4th day of August, 2020, in Los Angeles County, California.

_____
Kaine Wen