**BUREAU OF CONSUMER FINANCIAL PROTECTION**
SARAH PREIS (D.C. Bar No. 997387)
(admitted *Pro Hac Vice*)
Tel.: (202)-435-9318 / Email: sarah.preis@cfpb.gov
JESSE STEWART (N.Y. Bar No. 5145495)
(admitted *Pro Hac Vice*)
Tel: (202)-435-9641 / Email: jesse.stewart@cfpb.gov
NATHAN DIMOCK (D.C. Bar No. 487743)
(Admitted *pro hac vice*)
Tel.: (202) 435-9198 / Email: nathan.dimock@cfpb.gov
1700 G Street, NW
Washington, DC 20552
Fax: (202) 435-5471

LEANNE E. HARTMANN (CA Bar No. 264787)
(Local Counsel for the Bureau of Consumer Financial Protection)
301 Howard Street, Suite 1200
San Francisco, CA 94105
Email: leanne.hartmann@cfpb.gov/Fax: (415) 844-9788

*Attorneys for Plaintiff the Bureau of Consumer Financial Protection*

**THE STATE OF MINNESOTA**
EVAN ROMANOFF (Attorney Reg. No. 0398223)
(admitted *Pro Hac Vice*)
Assistant Attorney General
445 Minnesota Street, Suite 1200
St. Paul, MN 55101-2130
Tel.: (651) 757-1454/Email: evan.romanoff@ag.state.mn.us

*Attorneys for Plaintiff the State of Minnesota*

**THE STATE OF NORTH CAROLINA**
M. LYNNE WEAVER (N.C. Bar No. 19397)
(admitted *Pro Hac Vice*)
MICHAEL T. HENRY (N.C. Bar No. 35338)
(admitted *Pro Hac Vice*)
North Carolina Department of Justice
114 W. Edenton Street
Raleigh, NC 27602
Tel.: (919) 716-6000 / Fax: (919) 716-6050
Emails: lweaver@ncdoj,gov/mhenry@ncdoj.gov

*Attorneys for Plaintiff the State of North Carolina*

**THE PEOPLE OF THE STATE OF CALIFORNIA**
MICHAEL N. FEUER, City Attorney (CA Bar No. 111529)
MARY CLARE MOLIDOR, Chief Assistant City Attorney, (CA Bar No. 82404)
CHRISTINA V. TUSAN, Supervising Deputy City Attorney (CA Bar No. 192203)
WILLIAM PLETCHER, Deputy City Attorney (CA Bar No. 212664)

REBECCA MORSE, Deputy City Attorney (CA Bar No. 314853)
OFFICE OF THE CITY ATTORNEY
200 N. Main Street, 500 City Hall East
Los Angeles, California 90012-4131
Tel: (213) 978-8707/Fax: (213) 978-8112
Emails: christina.tusan@lacity.org / william.pletcher@lacity.org

*Attorneys for Plaintiff the People of the State of California*

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| Bureau of Consumer Financial Protection, et al., <br><br>      Plaintiffs, <br><br>      v. <br><br> Consumer Advocacy Center Inc., d/b/a Premier Student Loan Center, et al., <br><br>      Defendants. | CASE NO. 8:19-cv-01998 MWF <br><br> **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' APPLICATION FOR ENTRY OF DEFAULT JUDGMENT AGAINST DEFENDANT TRUE COUNT STAFFING INC.** <br><br> Court:  Hon. Michael W. Fitzgerald <br> Date:   January 11, 2020 <br> Time:   10:00 AM <br> Place:  Courtroom 5A |

## <u>TABLE OF CONTENTS</u>

I.   Introduction.................................................................................................1

II.  Procedural History.......................................................................................2

III. Discussion...................................................................................................4

   A.   The Court has the Authority to Enter a Default Judgment ...........................4

   B.   The *Eitel* Factors Favor Granting Default Judgment....................................4

      i.    Plaintiffs Will Be Prejudiced Without a Judgment ................................5

      ii.   The Amended Complaint States Proper Claims and the Merits of Plaintiffs' Claims Warrant Default Judgment.........................................................................5

      iii.   The Money at Stake Supports Default Judgment ................................18

      iv.  Possibility of Dispute of Material Facts is Unlikely .............................18

      v.   The Default is Not Due to Excusable Neglect......................................19

      vi.  Other Factors Outweigh Deciding the Case on the Merits.....................19

   C.   Injunctive and Monetary Relief is Warranted..........................................20

      i.    Injunctive Relief to Prevent Future Violations ..................................20

      ii.   Monetary Relief to Compensate Consumers ......................................22

      iii.   Civil Monetary Penalties.................................................................23

IV. Conclusion ................................................................................................25

# TABLE OF AUTHORITIES

## CASES

*Alan Neuman Prods., Inc. v. Albright*, 862 F.2d 1388 (9th Cir. 1988). ................................19

*Ariz. Cardinals Football Club, Inc. v. Bryant*, 2009 U.S. Dist. LEXIS 35524 (D. Ariz. Apr. 6, 2009).............................................................................................................18

*Bhatti v. Buckland*, 400 S.E.2d 440 (N.C. 1991) .....................................................15

*Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.*, 20 Cal.4th 163 (1999)...............17

*CFPB v. Gordon*, 819 F.3d 1179 (9th Cir. 2016). .....................................................22

*CFTC v. Co Petro Marketing Grp., Inc.*, 502 F. Supp. 806 (C.D.Cal.1980)..........................20

*Davis v. Fendler*, 650 F.2d 1154 (9th Cir. 1981)...............................................4, 20

*Eitel v. McCool*, 782 F.2d 1470 (9th Cir. 1986) ...........................................2, 4, 5, 19

*Fair Hous. of Marin v. Combs*, 285 F.3d 899 (9th Cir. 2002)...........................................5

*FTC v. 1263523 Ontario, Inc.*, 205 F. Supp. 2d 205 (S.D.N.Y. 2002). ..................................5

*FTC v. Affordable Media, LLC*, 179 F.3d 1228 (9th Cir. 1999).........................................21

*FTC v. Gill*, 265 F.3d 944 (9th Cir. 2001)..............................................................21

*FTC v. Inc21.com Corp.*, 745 F. Supp. 2d 975 (N.D. Cal. 2010). .....................................21

*FTC v. John Beck Amazing Profits, LLC*, 888 F. Supp. 2d 1006 (C.D. Cal. 2012)................21

*FTC v. Medicor, LLC*, F. Supp. 2d 1048 (C.D. Cal. 2002). ..............................................21

*FTC v. Stefanchik*, 559 F.3d 924, (9th Cir. 2009)....................................................22

*Geddes v. United Fin. Grp.*, 559 F.2d 557 (9th Cir. 1977). ............................................4

*Hardy v. Toler*, 218 S.E.2d 342 (N.C. 1975)............................................................16

*Marshall v. Miller*, 276 S.E.2d 397 (N.C. 1981) .......................................................15

*PepsiCo, Inc. v. Cal. Sec. Cans*, 238 F. Supp. 2d 1172 (C.D. Cal. 2002)................. 4, 5, 18, 19

*PepsiCo, Inc. v. Triunfo-Mex, Inc.*, 189 F.R.D. 431 (C.D. Cal. 1999)....................................5

*Philip Morris USA, Inc. v. Castworld Prods., Inc.*, 219 F.R.D. 494 (C.D. Cal. 2003)..............5

*Pope v. United States*, 323 U.S. 1 (1944). ...............................................................4

*Rowland v. Cal. Men's Colony, Unit II Men's Advisory Council,* 506 U.S. 194 (1993) ..........2

*S. Bay Chevrolet v. Gen. Motors Acceptance Corp.*, 72 Cal. App. 4th 861 (1999)................17

*State ex rel. Cooper v. NCCS Loans, Inc.*, 624 S.E.2d 371 (N.C. App. 2005).......................16

*State v. Alpine Air Prods., Inc.*, 490 N.W.2d 888 (Minn. Ct. App. 1992) .............................23

*TeleVideo Sys., Inc. v. Heidenthal*, 826 F.2d 915 (9th Cir. 1987). ..........................................4

*Trans World Accounts, Inc. v. FTC*, 594 F.2d 212 (9th Cir. 1979). .......................................21

*United States v. High Country Broad. Co., Inc.*, 3 F.3d 1244 (9th Cir. 1993). ......................19

*Winston Realty Co. v. G.H.G., Inc.*, 331 S.E.2d 677 (N.C. 1985) ..........................................16

## STATUTES AND REGULATIONS

12 U.S.C. § 5481(15)(A)(viii)..................................................................................................10

12 U.S.C. § 5481(19)...............................................................................................................10

12 U.S.C. § 5481(6)(A)............................................................................................................10

12 U.S.C. § 5531 ..................................................................................................................1, 12

12 U.S.C. § 5536 ......................................................................................................................12

12 U.S.C. § 5536(a)....................................................................................................................1

12 U.S.C. § 5564 ........................................................................................................................1

12 U.S.C. § 5564(f)....................................................................................................................6

12 U.S.C. § 5565 ........................................................................................................................1

12 U.S.C. § 5565(a)(1)..............................................................................................6, 20, 22, 23

12 U.S.C. § 5655 ......................................................................................................................24

15 U.S.C. § 6102 ......................................................................................................................12

15 U.S.C. § 6102(c)..................................................................................................................12

15 U.S.C. §§ 6101-6108 .............................................................................................................1

12 C.F.R. § 1083.1 ...................................................................................................................23

16 C.F.R. § 310.2(o)...................................................................................................................6

16 C.F.R. Part 310......................................................................................................................1

16 C.F.R. § 310.3(a)(2)(iii)(x). .................................................................................................7

16 C.F.R. § 310.4(a)(5)(i). .........................................................................................................7

28 U.S.C. § 1331 ...........................................................................................................6

28 U.S.C. § 1345 ...........................................................................................................6

28 U.S.C. § 1367 ...........................................................................................................6

Cal. Bus & Prof Code § 17203 ...................................................................................23

Cal. Bus & Prof Code § 17206 ...........................................................................20, 25

Cal. Bus. & Prof. Code § 17200 *et seq* ................................................................1, 17

Cal. Bus. & Prof. Code § 17204 .................................................................................17

California Financial Code section 12000, et seq .......................................................18

California Financial Code section 28100, et seq .......................................................18

California Student Loan Servicing Act ......................................................................18

Minn. Stat. § 325D.43, et seq .......................................................................................1

Minn. Stat. § 325D.44 .................................................................................................14

Minn. Stat. § 325F.68, subd. 2 ...................................................................................13

Minn. Stat. § 325F.68, subd. 3 ...................................................................................13

Minn. Stat. § 325F.69 ..................................................................................................13

Minn. Stat. § 325F.69, et seq. ......................................................................................1

Minn. Stat. § 325F.69, subd. 1 ...................................................................................13

N.C. Gen. Stat. § 14-423 .............................................................................................16

N.C. Gen. Stat. § 14-423(2) ........................................................................................15

N.C. Gen. Stat. § 14-423, et seq ...................................................................................1

N.C. Gen. Stat. § 14-424 .............................................................................................15

N.C. Gen. Stat. § 14-425 .......................................................................................15, 16

N.C. Gen. Stat. § 66-260, et seq .............................................................................1, 16

N.C. Gen. Stat. § 66-266(a) ........................................................................................17

N.C. Gen. Stat. § 75-1.1 .......................................................................................1, 15, 16

N.C. Gen. Stat. § 75-15.1 ............................................................................................23

N.C. Gen. Stat. § 75-15.2 ............................................................................................20

## OTHER AUTHORITIES

Fed. R. Civ. P. 55(b)..................................................................................................4, 19

*Soaring Student Debt Opens Door to Relief Scams*, WALL ST. JOURNAL, Aug. 26, 2019.

......................................................................................................................................21

Memo of P&A ISO Appl. for Entry of Default Judgment Against True Count

## I.      Introduction

On November 3, 2020, the Court issued an Order striking the answer filed by Defendant True Count Staffing Inc. (True Count) and the Clerk of the Court entered default against True Count.  (Dkt. Nos. 230 & 231.)  Accordingly, pursuant to Fed. R. Civ. P. 55(b)(2) and L.R. 55-1, and in compliance with this Court's Orders, Dkt. Nos. 215 & 230, Plaintiffs move for entry of the proposed Default Judgment and Order for Permanent Injunction and Civil Money Penalties ("Default Judgment") filed herewith against Defendant True Count.

Default judgment is appropriate under the circumstances. The operative First Amended Complaint (Amended Complaint) states valid claims, which are taken as true as a result of its default, that Defendant True Count engaged in a deceptive student loan modification scheme that violated (1) §§ 1031, 1036(a), 1054, and 1055 of the Consumer Financial Protection Act of 2010 (CFPA), 12 U.S.C. §§ 5531, 5536(a), 5564 & 5565; (2) the Telemarketing and Consumer Fraud and Abuse Prevention Act (Telemarketing Act), 15 U.S.C. §§ 6101-6108, and its implementing regulation, the Telemarketing Sales Rule (TSR), 16 C.F.R. Part 310 (Counts I-IV, VII-VIII, & XI); (3) the Minnesota Prevention of Consumer Fraud Act (MNCFA), Minn. Stat. § 325F.69, et seq. (Count XIII), and Uniform Deceptive Trade Practices Act (MNDTPA), Minn. Stat. § 325D.43, et seq. (Count XIV); (4) the North Carolina Debt Adjusting Act (NCDAA), N.C. Gen. Stat. § 14-423, et seq. (Count XV), Unfair and Deceptive Practices Act (NCUDPA), N.C. Gen. Stat. § 75-1.1 (Count XVI), and Telephonic Seller Registration Act (NCTSRA), N.C. Gen. Stat. § 66-260, et seq. (Count XVII); and (5) the California Unfair Competition Law (UCL), Cal. Bus. & Prof. Code § 17200 *et seq.* (Count XVIII).  (Dkt. No. 134.)

There is no just reason to delay issuance of the Default Judgment – True Count is not represented by counsel and is not defending itself in this action. *See Rowland v. Cal. Men's Colony, Unit II Men's Advisory Council,* 506 U.S.

194, 201-02 (1993) (only natural persons may proceed *in forma pauperis* because, *inter alia*, organizations need a lawyer in federal court). Moreover, the well-pled allegations in the Amended Complaint combined with evidence submitted with this Memorandum, establish Defendant True Count's knowledge and participation in the unlawful scheme and ensuing consumer losses attributable to it. Finally, as explained below, the Ninth Circuit factors militate in favor of entry of default judgment against Defendant True Count. *Eitel v. McCool*, 782 F.2d 1470, 1471-72 (9th Cir. 1986).

The requested permanent injunctive relief and default judgment amount against Defendant True Count are necessary to protect consumers and redress injury. Plaintiffs request that the Court enter the proposed Default Judgment filed herewith, which includes injunctive relief, restitution in the amount of $55,360,817.14, and a civil money penalty of $30 million.

## II.   Procedural History

Plaintiffs commenced this civil action on October 21, 2019, alleging violations of state and federal law against multiple defendants, including True Count, for their roles in an illegal student loan debt-relief scheme. (Dkt. No. 2.) On the same day, the Court issued a Temporary Restraining Order (TRO), finding that Plaintiffs were likely to succeed on the merits of their claims and appointing a receiver (Receiver) over, among others, Defendant True Count. (Dkt. No. 24.) On November 1, 2019, the Receiver filed his first status report with the Court, advising that he had frozen several bank accounts that were implicated in the scheme, including four accounts held by True Count. (Dkt. No. 75 at 8.) The Receiver further reported that "Defendants collect consumer fees in advance without complying with the Telemarketing Sales Rule, which renders the entire business unlawful." *Id.* at 4. The Receiver ultimately determined that the business "cannot" be operated lawfully and at a profit. *Id.* at 38. On November 15, 2019, the Court entered a Stipulated Preliminary

Injunction. (Dkt. No. 103.)

On February 24, 2020, Plaintiffs filed the operative Amended Complaint, naming several defendants and relief defendants including, as pertinent here, Defendants True Count, Consumer Advocacy Center Inc. (CAC), and Prime Consulting LLC (Prime) (collectively, Student Loan Debt Relief Companies); TAS 2019 LLC (TAS); and Defendants Albert Kim, Kaine Wen, and Tuong Nguyen (collectively, Individual Defendants). (Dkt. No. 134.) The Amended Complaint alleges that Defendant True Count's acts or practices violated federal and state laws in connection with the marketing and sale of student loan debt-relief services. Plaintiffs seek permanent injunctive relief, damages, rescission or reformation of contracts, the refund of monies paid, restitution, disgorgement, compensation for unjust enrichment, and civil money penalties.

After the Court granted several extensions for defendants to respond to the Amended Complaint, on July 24, 2020, counsel for Defendant True Count filed a motion to withdraw as counsel of record. (Dkt. No. 168.) By order dated July 31, 2020, the Court ordered additional briefing on the motion to withdraw and ordered then-counsel for Defendant True Count to respond or answer by August 7, 2020. (Dkt. No. 177.) On August 7, 2020, Defendant True Count filed its answer. (Dkt. No. 193.)

The Court held a hearing on the motion to withdraw on August 31, 2020 and granted the withdrawal in an order issued on September 3, 2020. (Dkt. No. 215.) As it relates to Defendant True Count, the Court ordered that "because . . . True Count cannot proceed pro se in this action," the company was required to notice the retention of counsel by October 16, 2020, and, if it failed to do so, the Court would strike its answer and Plaintiffs would be required to apply for entry of default by October 30, 2020, "and shall move for default judgment within ten (10) days of entry of default by the Clerk." (Dkt. No. 215 at 3-4.)

Because True Count failed to notice the retention of counsel, on October 30,

2020, Plaintiffs filed an application for the Clerk to enter default against Defendant True Count. (Dkt. No. 229.) On November 3, 2020, the Court entered an order striking True Count's answer, and the Clerk of the Court entered default against the company. (Dkt. Nos. 230 & 231.) As of the date of this filing, Defendant True Count has still failed to retain counsel and does not have a responsive pleading or answer on file with the Court. Accordingly, default judgment is appropriate here against Defendant True Count.

### III. Discussion

#### A. The Court has the Authority to Enter a Default Judgment

After the clerk's entry of default against a party, a court in its discretion may enter a default judgment against that party. Fed. R. Civ. P. 55(b); *see also PepsiCo, Inc. v. Cal. Sec. Cans*, 238 F. Supp. 2d 1172, 1174 (C.D. Cal. 2002). Once default is entered, the complaint's factual allegations regarding liability are taken as true, while allegations regarding the amount of damages must be proven. *TeleVideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917-18 (9th Cir. 1987); *Geddes v. United Fin. Grp.*, 559 F.2d 557, 560 (9th Cir. 1977) (citing *Pope v. United States*, 323 U.S. 1 (1944)). Further, where, as here, damages are liquidated, *i.e.*, based on definite figures contained in documentary evidence or in detailed affidavits, judgment by default may be entered without a hearing. *Davis v. Fendler,* 650 F.2d 1154, 1161 (9th Cir. 1981).

#### B. The *Eitel* Factors Favor Granting Default Judgment

In determining whether to enter a default judgment against a party, courts in the Ninth Circuit evaluate the seven factors set forth in *Eitel*, 782 F.2d at 1471-72. Those factors are: (1) the possibility of prejudice to the plaintiff; (2) the merits of the plaintiff's substantive claim; (3) the sufficiency of the complaint; (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect; and (7) the strong policy underlying the Federal Rules of Civil Procedure

favoring decisions on the merits. *Eitel,* 782 F.2d at 1471-72. "In applying this discretionary standard, default judgments are more often granted than denied." *Philip Morris USA, Inc. v. Castworld Prods., Inc.,* 219 F.R.D. 494, 498 (C.D. Cal. 2003) (quoting *PepsiCo, Inc. v. Triunfo-Mex, Inc.*, 189 F.R.D. 431, 432 (C.D. Cal. 1999)).  Here, the *Eitel* factors weigh in favor of entry of a default judgment against Defendant True Count.

### i.  Plaintiffs Will Be Prejudiced Without a Judgment

Plaintiffs will be prejudiced if default judgment is not entered against Defendant True Count because they will be forced to commit time, resources, and personnel to prosecute a lawsuit in which Defendant True Count will not meaningfully participate. *See FTC v. 1263523 Ontario, Inc.*, 205 F. Supp. 2d 205, 208-09 (S.D.N.Y. 2002) (denial of motion for default judgment would be "unfairly prejudicial" to the plaintiff when defendant failed to respond to complaint or default motion or appear).  Additionally, absent a judgment and final order against Defendant True Count, Plaintiffs will be unable to use the company's assets to provide compensation to the many victims of the unlawful student loan modification scheme, obtain a permanent injunction protecting consumers from future violations of law, or impose penalties to deter future wrongdoing.

### ii.  The Amended Complaint States Proper Claims and the Merits of Plaintiffs' Claims Warrant Default Judgment

The second and third *Eitel* factors – the sufficiency of the complaint and the merits of the plaintiff's claims – also weigh in favor of entry of the default judgment. Upon entry of default, the well-pleaded allegations of the complaint relating to a defendant's liability are taken as true, except for the allegations as to the amount of damages.  *See Fair Hous. of Marin v. Combs*, 285 F.3d 899, 906 (9th Cir. 2002). These factors, in essence, "require that a plaintiff state a claim on which [it] may recover." *PepsiCo, Inc.,* 238 F. Supp. 2d at 1175.  The

5

Amended Complaint here is sufficiently detailed to support Plaintiffs' claims.

### a. Jurisdiction

As an initial matter, the Court has subject-matter jurisdiction over this action because it is brought under federal consumer financial law, 12 U.S.C. § 5565(a)(1), presents a federal question, 28 U.S.C. § 1331, and is brought by an agency of the United States, 28 U.S.C. § 1345.  (Dkt. No. 134 at ¶ 18.) Moreover, this Court has supplemental jurisdiction over the States' claims pursuant to 28 U.S.C. § 1367.  *Id.*  Venue is proper in this district pursuant to 12 U.S.C. § 5564(f), because Defendants are located, reside, or do business in this district.  *Id.* at ¶¶ 19, 25-27, 29-38, 41-42, 46-47, 50, 52, 54, 56-57, 59-63.  And each of the Plaintiffs are duly authorized to bring this action.  *Id.* at ¶¶ 20-24.

### b. TSR Violations (Counts I – IV)

The Amended Complaint alleges that Defendant True Count and the other Student Loan Debt Relief Companies violated the TSR by collecting illegal advance fees from consumers in the form of both enrollment fees (Count I) and monthly fees (Count II), and by misrepresenting multiple material facts relating to the student loan debt-relief scheme, which constituted deceptive acts or practices under the TSR (Count III).  The Amended Complaint further alleges that Defendant True Count and two of its co-defendants violated the TSR by misrepresenting that co-defendant TAS was an independent third-party provider of dedicated customer accounts, which it was not (Count IV).

The TSR defines "debt relief service" as "any program or service represented, directly or by implication, to renegotiate, settle, or in any way alter the terms of payment or other terms of the debt between a person and one or more unsecured creditors or debt collectors, including, but not limited to, a reduction in the balance, interest rate, or fees owed by a person to an unsecured creditor or debt collector."  16 C.F.R. § 310.2(o); Dkt. No. 134 at ¶ 211.  The TSR prohibits abusive or deceptive practices, including requesting or receiving

6

advance fees before renegotiating, settling, reducing, or otherwise altering the terms of at least one of a consumer's debts, misrepresenting any material aspect of the efficacy of their services, and misrepresenting any material aspect of a debt-relief service.  16 C.F.R. § 310.4(a)(5)(i), § 310.3(a)(2)(iii), (x).

Defendant True Count and the other Student Loan Debt Relief Companies are "sellers" or "telemarketers" of a "debt relief service" who engage in "telemarketing," as those terms are defined in the TSR.  (Dkt. No. 134 at ¶¶ 211-218.)  True Count and these companies offered services to renegotiate, settle, or alter the terms of payments of consumers' federal student loans by submitting requests for loan forgiveness or income-driven repayment plans to consumers' student loan servicers.  *Id.* at ¶ 215.  Sales department personnel fielded incoming consumer calls, made outbound marketing calls, and enrolled consumers by providing consumers with contracts for electronic signature during sales calls.  *Id.* at ¶ 70.  Moreover, these services were offered and provided to consumers nationwide using telephones and employing more than one interstate telephone call, in exchange for payment of enrollment and monthly fees.  *Id.* at ¶¶ 70, 77, 216-17.

The Amended Complaint contains well-pled factual allegations supporting a finding that the True Count violated the TSR.  From 2015 until the filing of the action, Defendants operated a debt-relief enterprise that deceived thousands of federal-student-loan borrowers and, as alleged at the time of the filing of the Amended Complaint, collected at least $83 million in illegal advance fees.[1] (Dkt. No. 134 at ¶ 8.)  The scheme was carried out through the Student Loan

---

[1] As reflected in recent stipulated judgments entered in this matter, Plaintiffs have since determined that the amount of illegal advance fees exceeds the amount alleged at the time of the filing of the Amended Complaint.  Plaintiffs cite to the $83 million in the Amended Complaint only for purposes of the instant application for default judgment against Defendant True Count.

Debt Relief Companies, including True Count, controlled by the Individual Defendants, which purported to help federal-student-loan borrowers obtain loan forgiveness or lower monthly payments through programs administered by the U.S. Department of Education (DOE).  *Id.* at ¶ 9.

Defendant Wen incorporated True Count, is the company's primary owner and founder, served as its chief executive officer, director, partner, and president, and exercised managerial responsibility and control over the company.  *Id.* at ¶¶ 41-44.  He also guaranteed True Count's lease agreement, set-up payment-processing agreements for the company and dealt with the payment processors, was an authorized user on its bank accounts, and served as the point of contact for at least one merchant account for True Count.  *Id.* at ¶¶ 139-45.  Defendant Kim helped manage True Count's operations and was an authorized user on its bank accounts.  *Id.* at ¶¶ 128, 132.  Defendant Nguyen served as True Count's secretary and exercised managerial responsibility for the company.  *Id.* at ¶ 46-47, 49, 149-50.

In March 2018, Defendants Kim and Wen moved CAC's processing and customer service operations into True Count, which took over preparing and submitting loan consolidation and modification operations and collecting payments from consumers.  *Id.* at ¶¶ 72-74.  As early as April 2018, sales functions were transferred to Prime, with Prime assuming CAC's prior role as the primary sales company enrolling consumers for True Count's services.  *Id.* at ¶ 75.  The Individual Defendants, through True Count and Prime, set up First Priority, Horizon and TAS to collect payments from consumers.  *Id.* at ¶ 76.  In September 2019, the Individual Defendants, True Count, and Prime transferred customer payment processing to TAS, which held itself out as an "independent third party" in its contracts with consumers.  *Id.* at ¶¶ 157-59.  In fact, TAS was not independent, and was actually run from within True Count and Prime by the Individual Defendants.  *Id.* at ¶¶ 160-61.

8

The Student Loan Debt Relief Companies, including True Count, acted as a common enterprise – CAC, True Count and Prime shared employees, customers, sales scripts, training materials, databases, business addresses and the proceeds of the scheme. *Id.* at ¶¶ 181-90.  In furtherance of the scheme, consumers were charged an initial fee of $900-$1,750, which was collected well before consumers had been accepted to and made a payment under their new loan agreements, in violation of the TSR. *Id.* at ¶ 14.  Consumers also paid monthly fees, typically ranging from $10 to $42, prior to the submission of annual loan recertifications on behalf of such consumers. *Id.* at ¶¶ 120, 217.  At no time were consumer payments actually held in independent third-party accounts, nor were payments from consumers used to make payments toward consumers' student loan debts. *Id.* at ¶¶ 15-16.  As a result, both the enrollment and monthly fees collected from consumers were illegal under the TSR, and Defendant True Count is liable for the violations in Counts I (enrollment fees) and II (monthly fees).  (Dkt. No. 134 at ¶¶ 234-37, and 238-40.)

As to Count III, Defendant True Count and the other Student Loan Debt Relief Companies engaged in several material misrepresentations in violation of the TSR, including that: (1) fees paid by consumers were payments toward the consumer's outstanding loan debt, reflected the adjusted amount of the consumers' periodic payments toward their outstanding loan balance, and/or would be held in trust accounts maintained by a third-party account provider until the Student Loan Debt Relief Companies had performed certain services; (2) consumers' loans would be forgiven in whole or in part shortly after enrolling in the Student Loan Debt Relief Companies' services; (3) consumers were eligible or approved for lower monthly payments, including where such payment amounts had been calculated based on an incorrect family size, income, or marital status; and (4) consumers' monthly payment amount had been lowered for the life of the repayment plan. *Id.* at ¶ 243.  Defendant True

9

Count and certain of its co-defendants also failed to inform consumers that it was their practice to submit forbearance requests on behalf of consumers and/or to falsify consumers' family size, marital status and income to student-loan servicers. *Id.* at ¶ 244.

Regarding Count IV, True Count and two of its co-defendants, Prime and TAS, materially misrepresented that TAS was an independent third-party provider of dedicated customer escrow accounts, which it was not. *Id.* at ¶¶ 248-49.

Based on the well-pled allegations in the Amended Complaint, Defendant True Count is liable under Counts I through IV.

### c.  CFPA Violations (Counts VII & VIII)

A "covered person" under the CFPA means any person, including any individual or business entity, that engages in "offering or providing a consumer financial product or service."  12 U.S.C. § 5481(6)(A) and (19). A "consumer financial product or service" includes "providing services to assist a consumer with debt management or debt settlement, [or] modifying the terms of any extension of credit."  12 U.S.C. § 5481(15)(A)(viii).

By offering or providing the debt relief services described above, Defendant True Count and the other Student Loan Debt Relief Companies provide a consumer financial product or service that is covered by the CFPA.  As a result, True Count and each of the Student Loan Debt Relief Companies are "covered persons" under the CFPA, subject to the CFPA's prohibition on deceptive acts or practices or other violations of a Federal consumer financial law.  (Dkt. No. 134 at ¶ 224).

The Amended Complaint contains well-pled factual allegations supporting a finding that Defendant True Count and the other Student Loan Debt Relief Companies violated the CFPA's prohibition on deceptive acts or practices.  The student-loan debt-relief scheme involved deceiving consumers in numerous

ways, including:

- Misrepresenting that consumers would qualify for loan forgiveness in a matter of months, when forgiveness takes at least 10 years of on-time payments and is determined by DOE.  (Dkt. No. 134 at ¶ 10.)

- Misrepresenting that consumers were approved for lower payments on their student loans, when consumers had not yet been approved or the new payment was approved based on false information.  *Id.*

- Misrepresenting that consumers' lower payments would be permanent when in fact they were subject to change based on changes in the consumers' family size, income, and marital status.  *Id.*

- Falsely telling consumers, or leading consumers to believe, that the consumers' payments to the companies would go toward paying consumers' student loan balances.  *Id* at ¶ 11.

- Failing to inform consumers that it was their practice to request that consumers' loans be placed into forbearance, or that interest would continue to accrue during the forbearance period, thereby increasing consumers' overall loan balances.  *Id*. at ¶ 12.

- Failing to inform consumers that it was their practice to submit false information about consumers' income, family size, and marital status on loan adjustment applications in order to try to qualify consumers for lower monthly payments.  *Id.* at ¶ 13.

- Falsely telling consumers that consumer payments would be segregated in independent third-party accounts.  *Id.* at ¶¶ 15, 122-25.

Additionally, they failed to inform consumers that it was their practice to submit forbearance request on behalf of consumers, that they were falsifying consumers' family size, marital status and income to consumers' student-loan servicers, and the consequences for consumers of these practices.  *Id.* at ¶ 273.

These misrepresentations were material and likely to mislead consumers

11

acting reasonably under the circumstances.  *Id.* at ¶ 274. As such, they constitute deceptive acts or practices under the CFPA.  Accordingly, the Amended Complaint contains well-pled factual allegations supporting a finding of liability against Defendant True Count for engaging in deceptive acts or practices in violation of §§ 1031 and 1036 of the CFPA, 12 U.S.C. §§ 5531, 5536, as alleged in Count VII.  *Id.* at ¶¶ 271-78.

By misrepresenting to consumers that TAS was an independent third-party provider of dedicated customer accounts, True Count is liable for violating the CFPA as alleged in Count VIII.  *Id.* at ¶¶ 279-82.

### d.  Violation of the CFPA Based on TSR (Count XI)

Section 1036(a)(1)(A) of the CFPA provides that it is "unlawful . . . for any covered person or service provider. . . to offer or provide to a consumer any financial product or service not in conformity with Federal consumer financial law, or otherwise commit any act or omission in violation of a Federal consumer financial law."  12 U.S.C. § 5536(a)(1)(A).  As noted in the preceding discussion, the Student Loan Debt Relief Companies, including True Count, are "covered persons" under the CFPA.  A violation of the TSR "committed by a person subject to the Consumer Financial Protection Act of 2010 shall be treated as a violation of a rule under Section 1031 of [the CFPA] regarding unfair, deceptive, or abusive acts or practices."  15 U.S.C. § 6102; Dkt. No. 134 at ¶ 295.  Violations of the TSR are treated as violations of a rule under § 1031 of the CFPA. 15 U.S.C. § 6102(c); Dkt. No. 134 at ¶ 297. Because True Count is a covered person that violated the TSR, that violation also constitutes a violation of the CFPA as alleged in Count XI.  *Id.* at 279-98.

### e.  Violation of the MNCFA (Count XIII)

The MNCFA provides that it is illegal for any person to "act, use, or employ[] . . . any fraud, false pretense, false promise, misrepresentation, misleading statement or deceptive practice, with the intent that others rely

thereon in connection with the sale of any merchandise, whether or not any person has in fact been misled, deceived, or damaged thereby." Minn. Stat. § 325F.69, subd. 1.  The term "merchandise" within the meaning of Minnesota Statutes section 325F.69 includes services.  *See* Minn. Stat. § 325F.68, subd. 2.  The term "person" includes "any natural person or legal representative, partnership, corporation (domestic and foreign), company, trust, business entity, or association, and any agent, employee, salesperson, partner, officer, director, member, stockholder, associate, trustee, or cestui que thereof." Minn. Stat. § 325F.68, subd. 3.  True Count is a "person" within the meaning of the statute.

True Count repeatedly violated Minnesota Statutes section 325F.69, subdivision 1, by engaging in the deceptive and fraudulent practices described in the Amended Complaint and in subsections b and c, above, with the intent that others rely thereon in connection with the sale of its student loan debt relief services.  Due to this deceptive and fraudulent conduct, Minnesota consumers made payments to True Count for services that they otherwise would not have purchased, thereby causing harm to those consumers.  Accordingly, the Amended Complaint contains well-pled factual allegations supporting a finding of liability against True Count for engaging in deceptive acts or practices in violation of Minnesota Statutes section 325F.69 as alleged in Count XIII.

## f.  Violation of the MNDTPA (Count XIV)

Minnesota Statutes section 325D.44, subdivision 1 provides, in part that:

> A person engages in a deceptive trade practice when, in the course of business, vocation, or occupation, the person:
>
> ***
>
> (2) causes likelihood of confusion or of misunderstanding as to the source, sponsorship, approval, or certification of goods or services;
>
> ***
>
> (5) represents that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not

have or that a person has a sponsorship, approval, status, affiliation, or connection that the person does not have;

\* \* \*

(7) represents that goods or services are of a particular standard [or] quality . . . if they are of another;

\* \* \*

(9) advertises goods or services with intent not to sell them as advertised; [or]

\* \* \*

(13) engages in any other conduct which similarly creates a likelihood of confusion or of misunderstanding.

True Count is a "person" within the meaning of the statute.

True Count repeatedly violated Minnesota Statutes section 325D.44, subdivision 1, by, in the course of business, engaging in the deceptive and fraudulent practices described in the Amended Complaint and in subsections b and c, above, that caused a likelihood of confusion or of misunderstanding among consumers in connection with the sale of True Count's student loan debt relief services, including by making false, deceptive, fraudulent, and/or misleading representations to consumers regarding its advertised services. Due to the deceptive and fraudulent conduct described above and throughout the Amended Complaint, Minnesota consumers made payments to True Count for services that they otherwise would not have purchased, thereby causing harm to those consumers. Accordingly, the Amended Complaint contains well-pled factual allegations supporting a finding of liability against Defendant True Count for engaging in deceptive acts or practices in violation of Minnesota Statutes section 325D.44 as alleged in Count XIV.

### g.  Violations of the NCDAA (Count XV), NCUDPA (Count XVI), and NCTSRA (Count XVII)

Similar to the TSR's prohibitions in connection with debt relief services, the NCDAA provides that it is illegal for any person to "engage in, or offer to or

attempt to, engage in the business or practice of debt adjusting."  N.C. Gen. Stat. § 14-424.  Under the NCDAA, "debt adjusting" includes the practice of "debt settlement" whereby the debt adjuster collects any advance fee prior to the debt settlement services being fully performed:

> Debt adjusting also includes the business or practice of debt settlement … whereby any person holds himself or herself out as acting for consideration as an intermediary between a debtor and the debtor's creditors *for the purpose of reducing, settling, or altering the terms of the payment of any debt of the debtor*, … *and receives a fee* or other consideration for reducing, settling, or altering the terms of the payment of the debt *in advance of the debt settlement having been completed or in advance of all the services agreed to having been rendered in full*.

N.C. Gen. Stat. § 14-423(2) (emphasis added).

The North Carolina Attorney General is expressly authorized to bring an action to enjoin – as an unfair and deceptive practice in violation of the NCUDPA, N.C. Gen. Stat. § 75-1.1 – "the continuation of any debt adjusting business or the offering of any debt adjusting services," and to seek consumer restitution and civil penalties.  N.C. Gen. Stat. § 14-425.

The NCUDPA, N.C. Gen. Stat. § 75-1.1, provides: "Unfair methods of competition in or affecting commerce, and unfair or deceptive acts or practices in or affecting commerce, are declared unlawful."  A practice is considered "unfair when it offends established public policy as well as when the practice is immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers….  [A] practice is deceptive if it has the capacity or tendency to deceive; proof of actual deception is not required."  *Marshall v. Miller*, 276 S.E.2d 397, 403 (N.C. 1981).  Deceptive and misleading advertisements, solicitations, and communications with customers may constitute violations of N.C. Gen. Stat. § 75-1.1.  *Bhatti v. Buckland*, 400 S.E.2d 440, 442 (N.C. 1991);

*Winston Realty Co. v. G.H.G., Inc.*, 331 S.E.2d 677, 679 (N.C. 1985); *Hardy v. Toler*, 218 S.E.2d 342, 347 (N.C. 1975).

Under the NCDAA, the activity of debt adjusting is *per se* an unfair and deceptive trade practice. N.C. Gen. Stat. § 14-425.  Further, North Carolina courts have held that the violation of consumer protection statutes designed to protect the consuming public may be deemed a *per se* violation of the NCUDPA, N.C. Gen. Stat. § 75-1.1.  *Winston Realty*, 331 S.E.2d at 681 (N.C. 1985); *State ex rel. Cooper v. NCCS Loans, Inc.*, 624 S.E.2d 371, 378 (N.C. App. 2005).

As explained above, and detailed in the Amended Complaint, True Count charged consumers initial and monthly advance fees before consumers' student loans were modified and before consumers made a payment under their new loan agreement.  By collecting advance fees prior to the rendering (if rendered at all) of their student loan debt relief services, True Count engaged in violations of the NCDAA, N.C. Gen. Stat. § 14-423.

Further, the Amended Complaint has well-pled allegations that True Count violated the NCUDPA through its misrepresentations to consumers, including but not limited to misrepresenting to consumers that consumer payments were held in independent third-party accounts, when they were not, and that consumers' payments would be used to make payments toward consumers' student loan debts, when they were not.  By violating the NCDAA, and by engaging in misrepresentations in the illegal debt relief scheme, True Count violated the NCUDPA, N.C. Gen. Stat. § 75-1.1.

Finally, the Amended Complaint has well-pleaded allegations that True Count violated the NCTSRA, N.C. Gen. Stat. § 66-260, et seq.  The NCTSRA requires persons engaged in telephonic solicitations directed to North Carolina consumers to: (a) register with the North Carolina Secretary of State; (b) provide specified information on a form provided by the Secretary of State that contains the notarized signature of each principal of the telephonic seller; and

(c) pay a filing fee.  True Count failed to comply with these requirements, and therefore violated the NCTSRA.  Further, N.C. Gen. Stat. § 66-266(a) expressly provides that any violation of the NCTSRA constitutes a violation of the NCUDPA.  Thus, True Count's violations of the NCTSRA constitute additional violations of the NCUDPA.

Given the well-pled allegations and True Count's failure to answer or defend, the Court should enter a default judgment against True Count for violating the NCDAA, NCUDPA, and NCTSRA (Counts XV through XVII).

### h.  Violation of California UCL (Count XVIII)

The Los Angeles City Attorney is empowered, in the name of the People of the State of California, to enforce California's Unfair Competition Law (UCL), Cal. Bus. & Prof. Code § 17200 et seq.;  Cal. Bus. & Prof. Code § 17204.  To establish a violation of the UCL, a plaintiff must show either an "unlawful, unfair, or fraudulent business act or practice."  Cal. Bus. & Prof. Code, § 17200.  "Because ... section 17200 is written in the disjunctive, it establishes three varieties of unfair competition-acts or practices which are unlawful, or unfair, or fraudulent."  *Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.*, 20 Cal.4th 163, 180 (1999).  "[A] practice is prohibited as 'unfair' or 'deceptive' even if not 'unlawful' or vice versa."  *Ibid.*  In proscribing "any unlawful" business practice, "section 17200 'borrows' violations of other laws and treats them as unlawful practices" that the unfair competition law makes independently actionable.  *Cel-Tech,* 20 Cal.4th at 180.  Section 17200 "imposes strict liability.  It is not necessary to show that the defendant intended to injure anyone."  *S. Bay Chevrolet v. Gen. Motors Acceptance Corp.*, 72 Cal. App. 4th 861, 877 (1999).  Thus, Defendant True Count's violations, as described above in subsections b through d, are independent violations of the UCL, including the CFPA and TSR violations in Counts I-IV, VII-VIII, & XI.

In addition, the Amended Complaint has well-pleaded allegations that True

Count violated California Financial Code section 12000, et seq., by acting as a bill payer or prorater within the State of California without first obtaining a license from the California Commissioner of Business Oversight.  True Count also, as set forth in the Amended Complaint, violated California Financial Code section 28100, et seq., the California Student Loan Servicing Act, by engaging in the business of servicing student loans in California without first obtaining a license as required under the Act.  Given these well-pleaded allegations and Defendant True Count's failure to answer or defend, the Court should enter a default judgment against True Count for violating the UCL as alleged in Count XVIII, based on Defendant True Counts predicate violations of the TSR and CFPA (Counts I-IV, VII-VIII, & XI) and the California Financial Code.

### iii.  The Money at Stake Supports Default Judgment

The fourth factor – the sum of money at stake in the action – also supports immediate entry of a default judgment. *PepsiCo*, 238 F. Supp. 2d at 1176; *Ariz. Cardinals Football Club, Inc. v. Bryant*, 2009 U.S. Dist. LEXIS 35524 at *3 (D. Ariz. Apr. 6, 2009).  Here, the student loan debt-relief scheme constituted serious illegal conduct that took place over a number of years, impacting thousands of consumers, and took over $83 million in unlawful advance fees from consumers.  (Dkt. No. 134 at ¶ 8, 126.)  Of that amount, Defendant True Count had revenues of approximately $55,360,817.14.  Declaration of Mansour Heidari, filed herewith (Heidari Decl.) at ¶ 7.  As a result, and as discussed below, Plaintiffs are seeking this amount in restitution from Defendant True Count, representing the net amount of illegal consumer fees that flowed to True Count as a result of the scheme.  This represents a significant amount of money to consumers harmed by the scheme and True Count's participation in it.

### iv.  Possibility of Dispute of Material Facts is Unlikely

The fifth factor, the possibility of dispute concerning material facts, favors entry of the default judgment. Defendant True Count has not made any filing

disputing Plaintiffs' allegations or defending the action. True Count has not moved to challenge the entry of default and the well-pleaded allegations in the Amended Complaint are now deemed true as to True Count. Moreover, this court has already entered a TRO, finding Plaintiffs are likely to prevail on the merits, and the Receiver has substantiated the nature of the debt-relief scheme. In addition, Plaintiffs have submitted competent evidence as to damages. *See* Heidari Decl. and Ex. 1 thereto. As a result, the possibility of any real dispute concerning the material facts of the case is slim.

### v. The Default is Not Due to Excusable Neglect

The sixth factor, whether the default was due to excusable neglect, also favors entry of default judgment, as there is no valid excuse for Defendant True Count's failure to participate in this action. To the contrary, True Count, a corporation, chose not to retain counsel, even though it was given ample opportunity to do so by this Court. *See United States v. High Country Broad. Co., Inc*., 3 F.3d 1244, 1245 (9th Cir. 1993) (finding entry of default judgment "perfectly appropriate" where, as here, defendant corporation failed to retain counsel after being ordered to do so); *Alan Neuman Prods., Inc. v. Albright*, 862 F.2d 1388, 1392 (9th Cir. 1988) ("[D]efendant's conduct is culpable if he has received actual or constructive notice of the filing of the action and intentionally failed to answer."). Considering these circumstances, True Count's conduct is not excusable neglect – it is willful noncompliance.

### vi. Other Factors Outweigh Deciding the Case on the Merits

Although the final *Eitel* factor favors deciding cases on the merits when possible, this factor is outweighed by the other factors. *PepsiCo*, 238 F. Supp. 2d at 1177 ("the mere existence of Fed. R. Civ.P. 55(b) indicates that this preference, standing alone, is not dispositive."). Here, this factor is outweighed by the other *Eitel* factors addressed above. Thus, public policy favors entry of a default judgment against Defendant True Count.

19

## C. Injunctive and Monetary Relief is Warranted

In this case, the Amended Complaint seeks (1) a permanent injunction to prevent future violations of the TSR, CFPA, MNCFA, MNDTPA, NCUDPA, NCDAA, NCUDPA, NCTSR and UCL; (2) monetary relief to redress injury to consumers; and (3) civil money penalties. These forms of relief are authorized under the CFPA, 12 U.S.C. § 5565, and applicable state laws.[2]  Moreover, it is within the Court's discretion to enter injunctive and monetary relief at this stage, without holding an evidentiary hearing.  *Fendler*, 650 F.2d at 1161; *see also 1263523 Ontario, Inc*., 205 F. Supp. 2d at 223 (calculating relief based on declaration).

### i.  Injunctive Relief to Prevent Future Violations

Plaintiffs seek injunctive relief against Defendant True Count for the violations of law pled in the Amended Complaint.  The requested relief is detailed in the proposed Default Judgment filed herewith and is tailored to the allegations in the Amended Complaint.  The proposed relief includes a permanent ban on telemarketing or assisting others engaged in telemarketing any consumer financial product or service; a permanent ban on marketing, offering, or providing any debt relief product or service; and prohibitions on misrepresenting any Consumer Financial Product or Service.

A permanent injunction is justified when there is "some reasonable likelihood of future violations."  *CFTC v. Co Petro Marketing Grp., Inc.*, 502 F. Supp. 806, 818 (C.D.Cal.1980), *aff'd*, 680 F.2d 573 (9th Cir. 1982).  Cessation

---

[2] Although this Memorandum focuses on the penalty calculation under the CFPA, such penalties are also authorized under relevant state law.  Penalties are authorized for each violation of Minnesota's consumer protection laws pursuant to Minnesota Statutes section 8.31, subdivision 3.  Similarly, penalties of up to $2,500 per violation are mandated under the relevant California law.  Cal. Bus & Prof Code § 17206.  Penalties are also authorized by N.C. Gen. Stat. § 75-15.2.

of activity does not moot an action for injunctive relief; otherwise defendants "would be free to return to their old ways." *See FTC v. Affordable Media, LLC*, 179 F.3d 1228, 1237 (9th Cir. 1999).  A permanent injunction may prohibit conduct broader in scope than the illegal conduct at issue.  Where, as here, the Defendants were involved in elaborate, illegal schemes to deceive consumers, broader "fencing-in" relief provisions help to "prevent similar and related violations from occurring in the future."  *Trans World Accounts, Inc. v. FTC*, 594 F.2d 212, 215 (9th Cir. 1979).

A permanent injunction is warranted here.  Defendants victimized thousands of student loan borrowers and continued their scheme even after a Civil Investigative Demand from the Bureau was served on Defendant CAC in September 2018, and after Defendant CAC filed for bankruptcy in January 2019 in a misguided attempt to avoid regulatory enforcement.  (Dkt. No. 75 at 10.)  Further, after the Wall Street Journal published an article highly critical of their practices on August 26, 2019, rather than stop the practices, the Defendants simply tried to retool the illegal operation. *Id.* at 10-12.  Indeed, Defendants did not stop violating the law until the instant case was filed, the TRO was entered, and the Receiver was appointed.

Courts in the Ninth Circuit have approved categorical bans as proper injunctive relief considering a defendant's repeated violations of laws. *See, e.g.*, *FTC v. Gill*, 265 F.3d 944, 957-58 (9th Cir. 2001) (upholding ban on participation in credit repair business); *FTC v. John Beck Amazing Profits, LLC*, 888 F. Supp. 2d 1006, 1014–15 (C.D. Cal. 2012) (infomercial marketing and telemarketing ban); *FTC v. Inc21.com Corp.*, 745 F. Supp. 2d 975, 1010 (N.D. Cal. 2010) (ban on telephonic billing); *FTC v. Medicor, LLC*, F. Supp. 2d 1048, 1050–51 (C.D. Cal. 2002) (telemarketing and work-at-home medical billing opportunities bans).  As in those cases, the requested permanent ban is necessary and appropriate to protect consumers from future harm.

21

### ii.  Monetary Relief to Compensate Consumers

The CFPA authorizes the Court to grant relief, including refund of moneys, restitution, and disgorgement or compensation for unjust enrichment.  12 U.S.C. § 5655(a)(2)(B), (C), and (D).  "Restitution may be measured by the 'full amount lost by consumers rather than limiting damages to a defendant's profits.'" *CFPB v. Gordon*, 819 F.3d 1179, 1195 (9th Cir. 2016). (quoting *FTC v. Stefanchik*, 559 F.3d 924, 931 (9th Cir. 2009)).  Importantly, a defendant is liable for the entire amount spent by consumers, regardless of whether consumers were satisfied with or benefited from the goods or services provided. *See id.* at 1195-96.

In seeking a default judgment, plaintiffs bear the burden of proving the amount of monetary relief to which it is entitled.  They may do so, as here, through affidavits and other documentary evidence showing the amount consumers paid: an evidentiary hearing is unnecessary, particularly where the evidence before the Court is not controverted. *Fendler*, 650 F.2d at 1161; *see also 1263523 Ontario, Inc.*, 205 F. Supp. 2d at 223 (calculating $10 million relief based on declaration from defendants' payment processor).

As demonstrated by the attached declaration and supporting evidence, Defendants collected at least approximately $55,360,817.14 from consumers in connection with their unlawful scheme that flowed to Defendant True Count. Heidari Decl. at ¶ 7.  The evidence in support of this amount is not controverted – as explained in the attached declaration of Mansour Heidari, this figure was derived from True Count's profit and loss statements, general ledger and bank records.  *Id*. at ¶¶ 3-6 and Ex. 1 thereto.  Notably, this amount constitutes net revenues as reported by True Count, such that it excludes fees taken by third parties, such as payment processors, as well as refunds to consumers. Therefore, the total amount of $55,360,817.14 represents a conservative, reasonable approximation of consumer loss attributable to Defendant True

Count.  Given the well-founded allegations in the Amended Complaint combined with the evidence submitted herewith, and given the absence of rebuttal evidence, the Court should require Defendant True Count to repay this amount as restitution.[3]

### iii.  Civil Monetary Penalties

The CFPA authorizes the Court to order civil money penalties against "[a]ny person [including individuals and entities] that violates, through any act or omission, any provision of Federal consumer financial law." 12 U.S.C. § 5565(a)(2)(H), (c)(1).  There are three tiers of penalties, based on the degree of scienter, which are adjusted for inflation.  For civil penalties assessed after January 15, 2020, whose associated violations occurred on or after November 2, 2015, those amounts are: up to $5,883 per day for any violation; up to $29,416 per day for each reckless violation; and up to $1,176,638 per day for each knowing violation.  12 U.S.C. § 5565(c)(2); 12 CFR § 1083.1.  Defendant True Count's conduct was at least reckless, if not knowing.

A conservative calculation of civil penalties for Defendant True Count's violations of the CFPA is to multiply the number of days that it participated in the scheme by the daily penalty amount for each reckless violation, $29,416. The following represent the four categories of violations by True Count: (1) Count I; (2) Count II; (3) Counts III and IV; and (4) Counts VII and VIII. Each category warrants a civil penalty.  As the Amended Complaint alleges, True Count registered as a California corporation in February 2017, and Defendants Kim and Wen moved CAC's processing and customer service operations to

---

[3] Restitution for Minnesota consumers is appropriate under the MNCFA and MNDTPA, *State v. Alpine Air Prods., Inc.*, 490 N.W.2d 888, 896 n.4 (Minn. Ct. App. 1992), *aff'd* 500 N.W.2d 788 (Minn. 1993), for California consumers pursuant to Cal. Bus & Prof Code § 17203, and for North Carolina consumers under N.C. Gen. Stat. § 75-15.1.

True Count in March 2018.  (Dkt. No. 134 at ¶¶ 29 & 72.)  As noted previously, the scheme continued to operate until the filing of the instant case, entry of the TRO, and execution of the immediate access on October 23, 2019.  (Dkt. No. 75 at 4.)  As a result, and using the date when operations were moved to True Count, the company should be held responsible for its participation in the scheme from March 2, 2018 through October 23, 2019, for a total of 601 days.  Heidari Decl. at ¶ 4 (first transaction with a payment processor dated March 2, 2018); Dkt. No. 75 at 6 (describing ongoing business activity observed on October 23 at location leased by True Count).  Multiplying the recklessness daily penalty amount of $29,416 by 4 violations over the course of 601 days results in a conservative civil penalty calculation totaling $70,716,064.

The size of the civil penalty also depends on various statutory mitigating factors, including "good faith," "the size of financial resources . . . of the person charged," "the gravity of the violation," "the severity of the risks to or losses of the consumer," "the history of previous violations," and "such other matters as justice may require."  12 U.S.C. § 5655(c)(3).  Most of these factors do not weigh in favor of a significant mitigation of the civil money penalty – as noted, the Individual Defendants variously owned and controlled True Count, and after coming under scrutiny for their conduct, defendants acted in bad faith by attempting to evade the TSR's ban on upfront fees for debt relief services by making deceptive claims of using dedicated client accounts in a failed attempt to circumvent the law.  (Dkt. No. 75 at 10-12.)

The gravity of this scheme was significant.  Defendants charged consumers thousands of dollars for services that consumers could have undertaken themselves at little to no cost, and Defendants charged consumers hundreds of additional dollars per year to recertify their loans, often by submitting false information to the loan servicers.  Defendants ultimately bilked these consumers out of over $83 million, of which at least $55,360,817.14 was

24

identified as revenue by Defendant True Count.

True Count does appear to have limited financial resources, so this factor supports some mitigation.  Specifically, the Receiver reports that approximately $3,797,863.83 of True Count's assets have been frozen and transferred to the Receiver pursuant to the TRO and Preliminary Injunction.  Declaration of Lisa Jones, filed herewith.  In light of this mitigating factor, a penalty of $30 million is warranted.[4]  While this penalty is well in excess of True Count's known assets, it provides necessary punishment, accomplishes the goal of deterring others from such conduct, and considers the possibility that additional assets may be discovered in the future.

## IV.   CONCLUSION

As provided in Plaintiffs' proposed Default Judgment against Defendant True Count, Plaintiffs seek a total judgment in the amount of $30 million in civil penalties and $55,360,817.14 in refunds or restitution, allocated in accordance with the proposed pudgment submitted herewith.  Because the Receiver in this matter is currently holding approximately $3,797,863 in Defendant True Count's assets, the Default Judgment requests that the Court order the Receiver to distribute those funds, which shall constitute partial payment of the judgment in this matter, as follows:  $50,000 to each of the Plaintiff states in penalties, and all remaining funds to the Bureau to distribute on behalf of all Plaintiffs to consumer victims as redress.

---

[4] The mandatory $2,500 per violation penalty under Cal. Bus & Prof Code § 17206, amounts to at least $1,502,500 using the above 601-day calculation.

For the reasons set forth above, Plaintiffs respectfully request that the Court enter the proposed Default Judgment against Defendant True Count.

Dated: November 13, 2020                Respectfully submitted,

                                        By: /s/ N. Nathan Dimock

                                        N. Nathan Dimock (D.C. Bar No. 487743)
                                        (admitted *pro hac vice*)
                                        *Enforcement Attorney*
                                        1700 G Street NW
                                        Washington, DC 20552
                                        Phone: (202) 435-9198
                                        Fax: (202) 435-9346
                                        Email: nathan.dimock@cfpb.gov

                                        Attorney for Plaintiff
                                        Bureau of Consumer Financial Protection

                                        By: /s/ M. Lynne Weaver
                                        M. Lynne Weaver (N.C. Bar No. 19397)
                                        (admitted *pro hac vice*)
                                        Special Deputy Attorney General
                                        North Carolina Department of Justice
                                        114 W. Edenton St.
                                        Raleigh, NC 27603
                                        Phone: (919) 716-6039
                                        Fax: (919) 716-6050
                                        Email: lweaver@ncdoj.gov

                                        Attorney for Plaintiff
                                        State of North Carolina

                                        By: /s/ Evan Romanoff
                                        Evan Romanoff (admitted *pro hac vice*)
                                        Atty. Reg. No. 0398223
                                        Assistant Attorney General
                                        445 Minnesota Street, Suite 1200

St. Paul, MN 55101-2130
Phone: (651) 757-1454
Fax: (651) 296-7438
Email: evan.romanoff@ag.state.mn.us

Attorney for Plaintiff
State of Minnesota

By: /s/ *Christina Tusan*
Christina Tusan,
Supervising Deputy City Attorney
Office of the City Attorney
Consumer and Workplace Protection Unit
200 N. Main Street, 500 City Hall East
Los Angeles, CA 90012
213-473-6908
Email: christina.tusan@lacity.org

I, Nathan Dimock, attest that all other signatories listed, and on whose behalf the filing is submitted, concur in the filing's content and have authorized the filing.

/s/ *N. Nathan Dimock*

N. Nathan Dimock