1
2
3
4
5
6
7
8
9

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| Bureau of Consumer Financial Protection, et al.,<br><br>       Plaintiffs,<br><br>       v.<br><br>Consumer Advocacy Center Inc., d/b/a Premier Student Loan Center, et al.,<br><br>       Defendants. | CASE NO. 8:19-cv-01998 MWF (KS)<br><br>**[PROPOSED] ENTRY OF DEFAULT JUDGMENT AND ORDER AGAINST DEFENDANT TRUE COUNT STAFFING INC.**<br><br><br>Court:  Hon. Michael W. Fitzgerald<br>Courtroom 5A |

**[PROPOSED] ENTRY OF DEFAULT JUDGMENT AND ORDER AS TO DEFENDANT TRUE COUNT STAFFING INC.**

Plaintiffs the Bureau of Consumer Financial Protection (Bureau), the State of Minnesota (Minnesota), the State of North Carolina (North Carolina), and the People of the State of California (California) (collectively, Plaintiffs) commenced this civil action on October 21, 2019, alleging violations of state

and federal law against multiple defendants, including Defendant True Count Staffing Inc. (True Count or Default Defendant) for their roles in an illegal student loan debt-relief scheme.  (Dkt. No. 2.)  On the same day, the Court issued a Temporary Restraining Order (TRO), finding that Plaintiffs were likely to succeed on the merits of their claims and appointing a receiver (Receiver) over, among others, corporate defendant True Count.  (Dkt. No. 24.)  On November 1, 2019, the Receiver filed his first status report with the Court, advising that he had frozen several bank accounts that were implicated in the scheme, including four accounts held by True Count.  (Dkt. No. 75 at 8.)  The Receiver further reported that "Defendants collect consumer fees in advance without complying with the Telemarketing Sales Rule, which renders the entire business unlawful." *Id.* at 4.  The Receiver ultimately determined that the business "cannot" be operated lawfully and at a profit. *Id.* at 38.  On November 15, 2019, the Court entered a Stipulated Preliminary Injunction. (Dkt. No. 103.)

On February 24, 2020, Plaintiffs filed the operative First Amended Complaint (Amended Complaint), which alleged violations by the defendants included in the original complaint, including True Count, and added several additional defendants and relief defendants.[1]  (Dkt. No. 134.)  As it relates to

---

[1] The Amended Complaint named the following Defendants: Consumer Advocacy Center Inc., d/b/a Premier Student Loan Center; True Count Staffing Inc., d/b/a SL Account Management; Prime Consulting LLC, d/b/a Financial Preparation Services (collectively, Student Loan Debt Relief Companies); Defendants TAS 2019 LLC, d/b/a Trusted Account Services, Horizon Consultants LLC, and First Priority LLC (collectively, Payment Companies); and Defendants Albert Kim, Kaine Wen, and Tuong Nguyen (collectively, Individual Defendants) (Student Loan Debt Relief Companies, Payment Companies, and Individual Defendants are referred to, collectively, as Defendants).  The Amended Complaint also named several relief defendants. (Dkt. No. 134.)

**[PROPOSED] STIPULATED FINAL JUDGMENT AND ORDER**

True Count, Plaintiffs variously alleged that the company engaged in a deceptive student loan modification scheme that violated (1) §§ 1031, 1036(a), 1054, and 1055 of the Consumer Financial Protection Act of 2010 (CFPA), 12 U.S.C. §§ 5531, 5536(a), 5564 & 5565; (2) the Telemarketing and Consumer Fraud and Abuse Prevention Act (Telemarketing Act), 15 U.S.C. §§ 6101-6108, and its implementing regulation, the Telemarketing Sales Rule (TSR), 16 C.F.R. Part 310 (Counts I-IV, VII-VIII, & XI); (3) the Minnesota Prevention of Consumer Fraud Act, Minn. Stat. § 325F.69, et seq. (Count XIII), and Uniform Deceptive Trade Practices Act, Minn. Stat. § 325D.43, et seq. (Count XIV); (4) the North Carolina Debt Adjusting Act, N.C. Gen. Stat. § 14-423, et seq. (Count XV), Unfair and Deceptive Practices Act, N.C. Gen. Stat. § 75-1.1 (Count XVI), and Telephonic Seller Registration Act, N.C. Gen. Stat. § 66-260, et seq. (Count XVII); and (5) the California Unfair Competition Law, Cal. Bus. & Prof. Code § 17200 et seq. (Count XVIII).  (Dkt. No. 134.)  True Count's then counsel of record was served with a copy of the Amended Complaint through the Court's CM/ECF system.

After the Court granted several extensions for defendants, including True Count, to respond to the Amended Complaint, on July 24, 2020, counsel for Defendant True Count filed a motion to withdraw as counsel of record.  (Dkt. No. 168.)  By order dated July 31, 2020, the Court ordered additional briefing on the motion to withdraw and ordered that then counsel for Defendant True Count respond to the Amended Complaint by August 7, 2020.  (Dkt. No. 177.)  On August 7, 2020, Defendant True Count filed its answer.  (Dkt. No. 193.)

The Court held a hearing on the motion to withdraw on August 31, 2020 and granted the withdrawal in an order issued on September 3, 2020.  (Dkt. No. 215.)  As it relates to Defendant True Count, the Court ordered that "because . . . True Count cannot proceed pro se in this action," the company was required to

**[PROPOSED] STIPULATED FINAL JUDGMENT AND ORDER**

notice the retention of counsel by October 16, 2020, and, if it failed to do so, the Court would strike its answer and Plaintiffs would be required to apply for entry of default by October 30, 2020, "and shall move for default judgment within ten (10) days of entry of default by the Clerk." (Dkt. No. 215 at 3-4.)

Because True Count failed to notice the retention of counsel, on October 30, 2020, Plaintiffs filed an application for the Clerk to enter default against the company. (Dkt. No. 229.) On November 3, 2020, the Court entered an order striking True Count's answer, and the Clerk of the Court entered default against the company on the same day. (Dkt. Nos. 230 & 231.)

As of the date of this filing, Defendant True Count has still failed to retain counsel and does not have a responsive pleading or answer on file with the Court.

Plaintiffs filed their Notice of Application and Application for Entry of Default Judgment and Order Against Defendant True Count pursuant to Fed. R. Civ. P. 55(b)(2) and Local Rules 55-1 and 55-2. The Court, having considered Plaintiffs' Application, supporting declarations and exhibits, and the entire record in this matter, finds good cause to grant the relief requested in the Plaintiffs' Application.

THEREFORE, **IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** as follows:

### **FINDINGS**

1.     After the clerk's entry of default against a party, a court in its discretion may enter a default judgment against that party. Fed. R. Civ. P. 55(b); *see also PepsiCo, Inc. v. Cal. Sec. Cans*, 238 F. Supp. 2d 1172, 1174 (C.D. Cal. 2002). Once default is entered, the complaint's factual allegations regarding liability are taken as true, while allegations regarding the amount of

**[PROPOSED] STIPULATED FINAL JUDGMENT AND ORDER**

damages must be proven. *TeleVideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917-18 (9th Cir. 1987); *Geddes v. United Fin. Grp.*, 559 F.2d 557, 560 (9th Cir. 1977) (citing *Pope v. United States*, 323 U.S. 1 (1944)). Further, where, as here, damages are liquidated, *i.e.*, capable of ascertainment from definite figures contained in documentary evidence or in detailed affidavits, judgment by default may be entered without a hearing. *Davis v. Fendler,* 650 F.2d 1154, 1161 (9th Cir. 1981).

2.     This is an action instituted by Plaintiffs against Default Defendant under the Consumer Financial Protection Act of 2010 (CFPA), 12 U.S.C. §§ 5531, 5536(a), 5564, and 5565, and the Telemarketing and Consumer Fraud and Abuse Prevention Act, 15 U.S.C. §§ 6102(c)(2), 6105(d) (Telemarketing Act), based on defendants' violations of the CFPA and the Telemarketing Sales Rule (TSR), 16 C.F.R. pt. 310. Additionally, Minnesota alleged violations of the Minnesota Prevention of Consumer Fraud Act (MNCFA), Minn. Stat. § 325F.69, et seq., and Uniform Deceptive Trade Practices Act (MNDTPA), Minn. Stat. § 325D.43, et seq.; (4) North Carolina alleged violations of the North Carolina Debt Adjusting Act (NCDAA), N.C. Gen. Stat. § 14-423, et seq., Unfair and Deceptive Practices Act (NCUDPA), N.C. Gen. Stat. § 75-1.1, and Telephonic Seller Registration Act (NCTSRA), N.C. Gen. Stat. § 66-260, et seq.; and California alleged violations of the California Unfair Competition Law (UCL), Cal. Bus. & Prof. Code § 17200 et seq.  The Amended Complaint seeks permanent injunctive relief, damages, rescission or reformation of contracts, the refund of monies paid, restitution, disgorgement, compensation for unjust enrichment, and civil money penalties.  Plaintiffs have authority to seek this relief.

3.     The Court has subject-matter jurisdiction over this action because it is brought under federal consumer financial law, 12 U.S.C. § 5565(a)(1),

5

presents a federal question, 28 U.S.C. § 1331, and is brought by an agency of the United States, 28 U.S.C. § 1345. This Court has supplemental jurisdiction over the States' claims pursuant to 28 U.S.C. § 1367.  Venue is proper in this district pursuant to 12 U.S.C. § 5564(f), because Defendants are located, reside, or do business in this district.

4.      Default Defendant has been properly served with the Amended Complaint.

5.      Default Defendant has failed to retain counsel or otherwise defend this action and, the Court having previously ordered that Default Defendant's answer be stricken, has no answer or response to the Amended Complaint on file with the Court.

6.      The Clerk of Court properly entered default against Default Defendant on November 3, 2020.

7.      Default Defendant, a corporation, is not a minor, incompetent person, or current member of the military service.

8.      The Amended Complaint states claims upon which relief can be granted.

9.      Because of Default Defendant's default, the allegations in the Amended Complaint are taken as true as against Default Defendant.

10.      The seven factors set forth in *Eitel v. McCool*, 782 F.2d 1470, 1471-72 (9th Cir. 1986), weigh in favor of a judgment of default against Default Defendant.

11.      Because damages are capable of ascertainment from definite figures contained in the documentary evidence and affidavits submitted by Plaintiffs, the Court need not hold a hearing prior to entering judgment by default.  *Davis,* 650 F.2d at 1161.

12.      Judgment is entered against Default Defendant, in favor of

6

**[PROPOSED] STIPULATED FINAL JUDGMENT AND ORDER**

Plaintiffs, as to Counts I through IV, VII through VIII, XI, and XIII through XVIII.

13.    The Amended Complaint seeks (1) a permanent injunction to prevent future violations of the TSR, CFPA, MNCFA, MNDTPA, NCDAA, NCUDPA, NCTSRA and UCL; (2) monetary relief to redress injury to consumers; and (3) civil money penalties.  This Court is empowered to order these forms of relief under Section 1055 of the CFPA, 12 U.S.C. § 5565, and applicable state laws.  Moreover, it is within this Court's discretion to enter injunctive and monetary relief at this stage, without holding an evidentiary hearing.  *Davis,* 650 F.2d at 1161.

14.    Plaintiff have established, through competent evidence, that consumers were victimized by and paid money to Defendant True Count and that these consumers paid at least $55,360,817.14 during the time that True Count was receiving funds derived from the scheme.

15.    As explained in the declaration of Mansour Heidari and accompanying summary exhibit submitted in support of Plaintiffs' Application, this figure was derived from the records of Default Defendant and its bank statements.

16.    The amount of $55,360,817.14 represents a reasonable approximation of consumer loss.

17.    Plaintiffs are entitled to an Order imposing a permanent injunction and requiring Default Defendant to pay $55,360,817.14 for refunds or restitution, and a civil money penalty in the amount of $30 million under the CFPA, UCL (Cal. Bus. Prof. Code § 17206), Minn. Stat. § 8.31, and N.C. Gen. Stat. § 75-15.2.

18.    This action and the relief awarded herein are in addition to, and not in lieu of, other remedies as may be provided by law, including both civil and

7

**[PROPOSED] STIPULATED FINAL JUDGMENT AND ORDER**

criminal remedies.

19.    Entry of this Order is in the public interest.

## **DEFINITIONS**

The following definitions apply to this Order:

1.    "Affected Consumers" includes any consumer who paid any of the Defendants or their officers, agents, servants, employees, or attorneys for any Debt-Relief Service from November 2, 2015, to October 23, 2019.

2.    "Assets" means any legal or equitable interest in, right to, or claim to any real, personal, or intellectual property owned or controlled by, or held, in whole or in part for the benefit of, or subject to access by any Defendant or Relief Defendant, wherever located, whether in the United States or abroad. This includes, but is not limited to, chattel, goods, instruments, equipment, fixtures, general intangibles, effects, leaseholds, contracts, mail or other deliverables, shares of stock, commodities, futures, inventory, checks, notes, accounts, credits, receivables (as those terms are defined in the Uniform Commercial Code), funds, cash, and trusts, including but not limited to any trust held for the benefit of Default Defendant.

3.    "Assist[ing] Others" includes, but is not limited to:

    a.    consulting in any form whatsoever;

    b.    providing paralegal or administrative support services;

    c.    performing customer service functions, including but not limited to, receiving or responding to consumer complaints;

    d.    formulating or providing, or arranging for the formulation or provision of, any advertising or marketing material, including but not limited to, any telephone sales script, direct mail solicitation, or the text of any Internet website, email, or other electronic communication or advertisement;

8

**[PROPOSED] STIPULATED FINAL JUDGMENT AND ORDER**

e.     formulating or providing, or arranging for the formulation or provision of, any marketing support material or service, including but not limited to, web or Internet Protocol addresses or domain name registration for any Internet websites, affiliate marketing services, or media placement services;

f.     providing names of, or assisting in the generation of, potential customers;

g.     performing marketing, billing, or payment services of any kind; and

h.     acting or serving as an owner, officer, director, manager, or principal of any entity.

4.     "Bureau" means the Bureau of Consumer Financial Protection.

5.     "Consumer Financial Product or Service" is synonymous in meaning and equal in scope to the definition of the term in the CFPA, 12 U.S.C. § 5481(5), and, subject to applicable restrictions contained in the CFPA, includes but is not limited to:

a.     providing financial advisory services to consumers on individual consumer financial matters or relating to proprietary financial products or services, including providing credit counseling to any consumer or providing services to assist a consumer with debt management or debt settlement, modifying the terms of any extension of credit, or avoiding foreclosure; and

b.     engaging in deposit-taking activities, transmitting or exchanging funds, or otherwise acting as a custodian of funds or any financial instrument for use by or on behalf of a consumer.

**[PROPOSED] STIPULATED FINAL JUDGMENT AND ORDER**

6.      "Defendants" means Corporate Defendants and Individual Defendants, individually, collectively, or in any combination, and each of them by whatever names each might be known;

      a.      "Corporate Defendants" means Consumer Advocacy Center Inc., True Count Staffing Inc., Prime Consulting LLC, TAS 2019 LLC, Horizon Consultants LLC, and First Priority LLC, collectively, or in any combination, and their successors and assigns, and each of them by any other names by which they might be known, including South Coast Financial Center, Direct Account Services, Financial Loan Advisors, Account Preparation Services, Administrative Financial, Tangible Savings Solutions, Coastal Shores Financial Group, First Choice Financial Centre (a/k/a First Choice Financial Center), Administrative Account Services, Primary Account Solutions, Prime Document Services, Financial Accounting Center, Doc Management Solutions, First Priority LLC, ALW Loans, Administrative Accounting Center, Best Choice Financial Center, First Document Services, Global Direct Accounting Solutions, Keystone Document Center, Pacific Palm Financial Group, Pacific Shores Advisory, Sequoia Account Management, Signature Loan Solutions, Yellowstone Account Services, ClearStudentLoanDebt, Clear Student Loan Debt, Trusted Account Services, Premier Student Loan Center, and Priority Account Management;

      b.      "Individual Defendants" means Albert Kim, a/k/a Albert King; Kaine Wen, a/k/a Wenting Kaine Dai, Wen-Ting Dai, Wen Ting Dai, Kaine Dai, and Kaine Wen Dai; and Tuong Nguyen,

a/k/a Tom Nelson, collectively, or in any combination, and each of them by any other names by which they might be known;

c.      "Receivership Defendants" means True Count Staffing Inc., Prime Consulting LLC, TAS 2019 LLC, Horizon Consultants LLC, and First Priority LLC, collectively, or in any combination, and their successors and assigns;

d.      "Relief Defendants" means:

i.      Infinite Management Corp., f/k/a Infinite Management Solutions Inc.; Hold The Door, Corp.; TN Accounting Inc.; Mice and Men LLC; 1st Generation Holdings, LLC; and Anan Enterprise, Inc., collectively, or in any combination, and their successors and assigns, and each of them by any other names by which they might be known; and

ii.      Sarah Kim, and any other names by which she might be known.

e.      "Default Defendant" means Defendant True Count, and its successors and assigns, and any other names by which it might be known.

7.      "Debt-Relief Service" means any program or service represented, directly or by implication, to renegotiate, settle, or in any way alter the terms of payment or other terms of the debt between a consumer and one or more unsecured creditors or debt collectors, including but not limited to, a reduction in the balance, interest rate, or fees owed by a consumer to an unsecured creditor or debt collector.

8.      "Effective Date" means the date on which this Order is entered by the Court.

11

**[PROPOSED] STIPULATED FINAL JUDGMENT AND ORDER**

9.      "Enforcement Director" means the Assistant Director of the Office of Enforcement for the Bureau of Consumer Financial Protection, or his or her delegate.

10.     "Person" means an individual, partnership, company, corporation, association (incorporated or unincorporated), trust, estate, cooperative organization, or other entity.

11.     "Plaintiffs" means the Bureau of Consumer Financial Protection, the State of Minnesota, the State of North Carolina, and the People of the State of California, collectively, or in any combination.

12.     "Receiver" means Thomas W. McNamara.

13.     "Related Consumer Action" means a private action by or on behalf of one or more consumers or an enforcement action by another governmental agency brought against Default Defendant based on substantially the same facts as described in the Amended Complaint.

14.     "States" means the State of Minnesota, the State of North Carolina, and the People of the State of California.

15.     "Service Provider" means any person that provides a material service to a covered person, in connection with the offering or provision by such covered person of a Consumer Financial Product or Service, including a person that—(i) participates in designing, operating, or maintaining the Consumer Financial Product or Service; or (ii) processes transactions relating to the Consumer Financial Product or Service (other than unknowingly or incidentally transmitting or processing financial data in a manner that such data is undifferentiated from other types of data of the same form as the person transmits or processes). "Service provider" does not include a person solely by virtue of such person offering or providing to a covered person—(i) a support service of a type provided to businesses generally or a

12

**[PROPOSED] STIPULATED FINAL JUDGMENT AND ORDER**

similar ministerial service; or (ii) time or space for an advertisement for a Consumer Financial Product or Service through print, newspaper, or electronic media.

## ORDER

### I

### Permanent Ban on Telemarketing and

### Offering or Selling Debt-Relief Services

**It is ORDERED that**:

16. Default Defendant, whether acting directly or indirectly, is permanently restrained from any of the following:

a. participating in telemarketing or Assisting Others engaged in telemarketing any Consumer Financial Product or Service;

b. participating in or Assisting Others in advertising, marketing, promoting, offering for sale, selling, or providing any Debt-Relief Service; and

c. receiving any remuneration or other consideration from, holding any ownership interest in, providing services to, or working in any capacity for any Person engaged in or assisting in advertising, marketing, promoting, offering for sale, selling, or providing any Debt-Relief Service.

Nothing in this Order shall be read as an exception to this Paragraph.

### II

### Prohibited Misrepresentations and Other Conduct

**It is FURTHER ORDERED that**:

17. Default Defendant and its officers, agents, servants, employees, and attorneys, and all other Persons in active concert or participation with them, who have actual notice of this Order, whether acting directly or indirectly, in

13

connection with the advertising, marketing, promotion, offering for sale, sale, or performance of any Consumer Financial Product or Service, may not misrepresent, or Assist Others in misrepresenting, expressly or impliedly:

a.   the benefits that a consumer will receive from the product or service, including but not limited to, the amount of savings a consumer will receive from purchasing, using, or enrolling in the Consumer Financial Product or Service;

b.   the time required to achieve benefits from the Consumer Financial Product or Service;

c.   any aspect of the nature or terms of a refund, cancellation, exchange, or repurchase policy of the Consumer Financial Product or Service, including but not limited to, the likelihood of a consumer obtaining a full or partial refund or the circumstances in which a full or partial refund will be granted to the consumer; and

d.   the total costs or any other material term, fact, restriction, limitation, or condition of the Consumer Financial Product or Service.

### III

### State Injunctive Provisions

**It is FURTHER ORDERED that**:

18.   Default Defendant and its officers, agents, servants, employees, and attorneys, and all other Persons in active concert or participation with them who receive actual notice of this Order, shall be permanently restrained and enjoined from violating the North Carolina Debt Adjusting Act, N.C. Gen. Stat. § 14-423, et seq., Unfair and Deceptive Practices Act, N.C. Gen. Stat. § 75-1.1, and Telephonic Seller Registration Act, N.C. Gen. Stat. § 66-260, et seq.

19.   Default Defendant and its officers, agents, servants, employees,

and attorneys, and all other Persons in active concert or participation with them who receive actual notice of this Order, shall be permanently restrained and enjoined from violating the Minnesota Prevention of Consumer Fraud Act, Minn. Stat. § 325F.69, et seq., and Uniform Deceptive Trade Practices Act, Minn. Stat. § 325D.43, et seq.

20.     Under the Court's inherent equitable powers and as authorized by California Business and Professions Code section 17203, this Court is empowered to "make such orders or judgments . . . as may be necessary to prevent the use or employment by any person of any practice which constitutes unfair competition . . ." Cal. Bus & Prof Code § 17203. Accordingly, Default Defendant and its officers, agents, servants, employees, and attorneys, and all other persons in active concert or participation with them, whether acting directly or indirectly, are permanently restrained from violating California Business and Professions Code section 17200, et seq., through unlawful, fraudulent and/or unfair acts or practices including but not limited to:

       a.     Violating California Financial Code section 12000, et seq., by acting as a bill payer or prorater within the State of California without first obtaining a license from the California Commissioner of Business Oversight; and/or

       b.     Violating California Financial Code section 28100, et seq., the California Student Loan Servicing Act, by engaging in the business of servicing student loans in California without first obtaining a license as required under the Act.

## IV

## Customer Information

**It is FURTHER ORDERED that**:

21.     Default Defendant and its officers, agents, servants, employees,

and attorneys, and all other Persons in active concert or participation with any of them, who receive actual notice of this Order, whether acting directly or indirectly, may not:

        a.    disclose, use, or benefit from customer information, including the name, address, telephone number, email address, social security number, other identifying information, or any data that enables access to a customer's account (including a credit card, bank account, or other financial account), that Defendants obtained before the Effective Date; and

        b.    attempt to collect, sell, assign, or otherwise transfer any right to collect payment from any consumer who purchased or agreed to purchase a Debt-Relief Service from any Defendant.

22.    However, customer information may be disclosed if requested by a government agency or required by law, regulation, or court order.

## MONETARY PROVISIONS

## V

## Order to Pay Redress

**It is FURTHER ORDERED that**:

23.    A judgment for monetary relief is entered in favor of Plaintiffs and against Default Defendant. Default Defendant is liable in the amount of $55,360,817.14, for the purpose of providing redress to Affected Consumers. The monetary judgment set forth in this Section is immediately due and payable upon entry of this Order and is enforceable against any Asset owned by, on behalf of, for the benefit of, or in trust by or for Default Defendant.

24.    This Order grants to the Bureau all rights and claims that Default Defendant has to Default Defendant's frozen assets currently in the possession, custody, or control of the Receiver or in the receivership estate, and Default

Defendants shall forfeit any rights to the funds in the receivership estate.

25.     Any financial or brokerage institution, escrow agent, title company, commodity trading company, business entity, or person, whether located within the United States or outside the United States, that holds, controls or maintains accounts or assets of, on behalf of, or for the benefit of, the Default Defendant shall turn over such account or asset to the Bureau or its designated agent within ten (10) business days of receiving notice of this Order by any means, including but not limited to via facsimile or email. Any such funds must be paid to the Bureau, by wire transfer to the Bureau or to the Bureau's agent, and according to the Bureau's wiring instructions.

26.     Any funds received by the Bureau in satisfaction of this judgment will be deposited into a fund or funds administered by the Bureau or to the Bureau's agent according to applicable statutes and regulations to be used for redress for Affected Consumers, including but not limited to refund of moneys, restitution, damages or other monetary relief, and for any attendant expenses for the administration of any such redress.

27.     If the Bureau determines, in its sole discretion, that providing redress to consumers is wholly or partially impracticable or if funds remain after the administration of redress is completed, money will not revert to Default Defendant. Default Defendant will have no right to challenge the Bureau's choice of remedies under this Section, and will have no right to contest the manner of distribution chosen by the Bureau.

28.     Payment of redress to any Affected Consumer under this Order may not be conditioned on that Affected Consumer waiving any right.

# VI

## Order to Pay Civil Money Penalty to Plaintiffs

**It is FURTHER ORDERED that**:

17

**[PROPOSED] STIPULATED FINAL JUDGMENT AND ORDER**

29.     Under sections 1042(a) 1055(c) of the CFPA, 12 U.S.C. §§ 5552(a) & 5565(c), UCL (Cal. Bus. Prof. Code § 17206), Minn. Stat. § 8.31, and N.C. Gen. Stat. § 75-15.2, by reason of the violations of law alleged in the Amended Complaint and taking into account the factors in 12 U.S.C. § 5565(c)(3), Default Defendant must pay a civil money penalty of $30 million to Plaintiffs.

30.     Within 10 days of the Effective Date, Default Defendant must pay $50,000 of the civil money penalty to each of the States by wire transfer to each of the States or to each of the States' agent in compliance with each of the States' wiring instructions.

31.     Within 10 days of the Effective Date, Default Defendant must pay the remaining civil money penalty of $29,850,000 by wire transfer to the Bureau or to the Bureau's agent in compliance with the Bureau's wiring instructions.

32.     The civil money penalty paid to the Bureau under this Order will be deposited in the Civil Penalty Fund of the Bureau as required by section 1017(d) of the CFPA, 12 U.S.C. § 5497(d).

33.     The civil money penalty paid to Minnesota under this Order will be remitted to the general fund of the State of Minnesota pursuant to Minn. Stat. §§ 8.31 and 16A.151.

# VII

## Additional Monetary Provisions

**It is FURTHER ORDERED that**:

34.     In the event of any default on Default Defendant's obligations to make payment under this Order, interest, computed under 28 U.S.C. § 1961, as amended, will accrue on any outstanding amounts not paid from the date of default to the date of payment, and will immediately become due and payable.

**[PROPOSED] STIPULATED FINAL JUDGMENT AND ORDER**

35.     Default Defendant must relinquish all dominion, control, and title to the funds and all other Assets transferred or paid under this Order to the fullest extent permitted by law and no part of the funds or other Assets may be returned to Default Defendant.

36.     The facts alleged in the Amended Complaint will be taken as true and given collateral estoppel effect, without further proof, in any proceeding based on the entry of the Order, or in any subsequent civil litigation by or on behalf of the Plaintiffs, including in a proceeding to enforce their rights to any payment or monetary judgment under this Order, such as a non-dischargeability complaint in any bankruptcy case.

37.     The facts alleged in the Amended Complaint establish all elements necessary to sustain an action by the Plaintiffs under section 523(a)(2)(A) of the Bankruptcy Code, 11 U.S.C. § 523(a)(2)(A), and for such purposes this Order will have collateral estoppel effect against Default Defendant, even in such Default Defendant's capacity as debtor-in-possession.

38.     Under 31 U.S.C. § 7701, Default Defendant, unless it has already done so, must furnish to Plaintiffs any taxpayer-identifying numbers associated with it or its Assets, which may be used for purposes of collecting and reporting on any delinquent amount arising out of this Order.

39.     Within 30 days of the entry of a final judgment, order, or settlement in a Related Consumer Action, Default Defendant must notify the Enforcement Director of the final judgment, order, or settlement in writing. That notification must indicate the amount of redress, if any, that the Default Defendant paid or is required to pay to consumers and describe the consumers or classes of consumers to whom that redress has been or will be paid. To preserve the deterrent effect of the civil money penalty in any Related Consumer Action, Default Defendant may not argue that they are entitled to,

19

**[PROPOSED] STIPULATED FINAL JUDGMENT AND ORDER**

nor may Default Defendant benefit by, any offset or reduction of any monetary remedies imposed in the Related Consumer Action because of the civil money penalty paid in this action or because of any payment that the Bureau makes from the Civil Penalty Fund. If the court in any Related Consumer Action offsets or otherwise reduces the amount of compensatory monetary remedies imposed against Default Defendant based on the civil money penalty paid in this action or based on any payment that the Bureau makes from the Civil Penalty Fund, Default Defendant must, within 30 days after entry of a final order granting such offset or reduction, notify the Bureau and pay the amount of the offset or reduction to the U.S. Treasury. Such a payment will not be considered an additional civil money penalty and will not change the amount of the civil money penalty imposed in this action.

40.     Default Defendant must treat all civil money penalties paid under this Order as a penalty paid to the government for all purposes. Regardless of how such funds are used, Default Defendant may not:

        a.     claim, assert, or apply for a tax deduction, tax credit, or any other tax benefit for any civil money penalty paid under this Order; or

        b.     seek or accept, directly or indirectly, reimbursement or indemnification from any source, including but not limited to payment made under any insurance policy, with regard to any civil money penalty paid under this Order.

# VIII

## Lifting of Asset Freeze

**It is FURTHER ORDERED that**:

41.     The freeze on the Assets of Default Defendant is modified to permit the payments and other transfers of Assets identified in Sections V, VI,

20

VII and XVII of this Order.

## IX

## Receivership

**It is FURTHER ORDERED that**:

42.  The receivership imposed by this Court shall continue in the manner set forth in the Preliminary Injunction issued on November 15, 2019 (ECF 103), as to all Defendants and Relief Defendants, except as modified by this Section and Section V, and the Receiver shall continue to have the full powers of an equity receiver, as an agent of the Court, pursuant to Sections XIV and XV of the Preliminary Injunction, which shall remain in effect until further order of the Court.

43.  Within 14 days of liquidating Default Defendant's Assets, the Receiver shall transfer $50,000 to the State of Minnesota, $50,000 to the North Carolina Attorney General, and $50,000 to the People of the State of California from the Default Defendant's Assets maintained in the Receiver's account. These transfers shall be made to satisfy the civil money penalties to the States as set forth in Section VI.  Any remaining Assets of the Default Defendant maintained in the Receiver's account shall be transferred to the Bureau.

44.  The Receiver shall take any and all steps that the Receiver concludes are appropriate to wind down Default Defendant.

45.  The Receiver shall promptly take all steps necessary to liquidate the Default Defendant's Assets using any commercially reasonable means, including auction and/or private sale, and all such sales shall be deemed authorized and approved under 28 U.S.C. § 2004 without further notice, hearing, or court order. After such liquidations, the Receiver shall remit the net proceeds to the Bureau or its designated representative as payment toward the monetary judgments entered against Default Defendant.

**[PROPOSED] STIPULATED FINAL JUDGMENT AND ORDER**

46.     The Receiver shall continue to perform all acts necessary or advisable to complete an accounting of the receivership Assets, and prevent unauthorized transfer, withdrawal, or misapplication of Assets.

47.     The Receiver and his representatives shall continue to be entitled to reasonable compensation for the performance of their duties pursuant to this Order from the Assets of the Receivership Defendants. The Receiver and his representatives shall not increase their hourly rates without prior approval of the Court.

## X

### Retention of Jurisdiction

**It is FURTHER ORDERED that**:

48.     The Court will retain jurisdiction of this matter for the purpose of enforcing this Order.

It is **SO ORDERED**, this _____ day of _____, 2020.


_____

The Honorable Michael W. Fitzgerald

United States District Judge

**[PROPOSED] STIPULATED FINAL JUDGMENT AND ORDER**