Sanjay Bhandari (SBN 181920)
sbhandari@mcnamarallp.com
Cornelia J. B. Gordon (SBN 320207)
cgordon@mcnamarallp.com
McNamara Smith LLP
655 West Broadway, Suite 1680
San Diego, California 92101
Telephone: 619-269-0400
Facsimile:  619-269-0401

*Attorneys for Receiver,*
*Thomas W. McNamara*

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| Bureau of Consumer Financial Protection; et al.,<br><br>Plaintiffs,<br><br>v.<br><br>Consumer Advocacy Center Inc., d/b/a Premier Student Loan Center; et al.,<br><br>Defendants. | Case No. 8:19-cv-01998-MWF (KSx)<br><br>**RECEIVER'S INTERIM STATUS REPORT**<br><br>JUDGE: Hon. Michael W. Fitzgerald<br>CTRM:  5A |

Thomas W. McNamara, as Court-appointed receiver ("Receiver"), submits this report of receivership activities for the period of November 1, 2019 to November 30, 2020.

## I.

## INTRODUCTION

On October 21, 2019, this Court entered a Temporary Restraining Order ("TRO," ECF No. 24) and appointed Thomas W. McNamara as temporary receiver for the of Receivership Defendants True Count Staffing Inc., d/b/a SL Account Management ("True Count") and Prime Consulting LLC, d/b/a Financial Preparation Services ("Prime Consulting").  First Priority LLC ("First Priority"), Horizon Consultants LLC ("Horizon"), and TAS 2019 LLC d/b/a Trusted Account

Services ("TAS") were later determined to be Receivership Defendants by the Receiver and included as Receivership Defendants in the Stipulated Preliminary Injunction with Asset Freeze, Appointment of Receiver, and Other Equitable Relief ("Preliminary Injunction," ECF No. 103).[1]  Defendant Consumer Advocacy Center Inc., d/b/a Premier Student Loan Center ("CAC"), which is in bankruptcy, is not a Receivership Defendant.  Albert Kim, Kaine Wen, and Tuong Nguyen are named Individual Defendants.

The Receiver filed his Preliminary Report (ECF No. 75) on November 1, 2019 which described in detail the initial implementation of the receivership, summarized Defendants' operations and finances, and documented the Receiver's conclusion that the Receivership Defendants' businesses could not be operated lawfully and profitably going forward.  The Receiver's appointment was confirmed, and the temporary designation removed, by the Preliminary Injunction.

Since the entry of the Preliminary Injunction, the Receiver's primary focus has been on winding down the businesses, addressing outstanding issues, vacating office spaces, liquidating receivership assets, and coordinating with the parties as needed.

///
///
///
///

---

[1] Receivership Defendants are defined in the TRO to mean True Count and Prime Consulting "and their successors, assigns, affiliates, or subsidiaries, and each of them, by whatever names each may be known, provided that the Receiver has reason to believe they are owned or controlled in whole or in part by any of the Receivership Defendants."  *See* TRO, Definitions, pages 6-7.

On October 25, 2019, pursuant to Section XIII(T) of the TRO we gave notice to the parties that First Priority LLC, Horizon Consultants LLC, and TAS 2019 LLC d/b/a Trusted Account Services qualify as Receivership Defendants.  No party has challenged that determination and the entities were included as Receivership Defendants in the Preliminary Injunction.  Preliminary Injunction, Definitions, pages 7-8.

## II.

## RECEIVERSHIP ACTIVITIES

### A.    Receivership Locations

Following his appointment, the Receiver took a number of immediate steps to "[t]ake exclusive custody, control, and possession" of the Receivership Defendants' assets and documents as directed by the TRO.  *See* TRO §§ XIII.B, C. The Receiver took possession of three sites used by the Defendants for their business operations: (1) 15261 Laguna Canyon Road, Suite 200, Irvine, California ("Laguna"), (2) 173 Technology Drive, Suite 202, Irvine, California ("Technology"), and (3) 8 Hughes Parkway, Suite 210, Irvine, California ("Hughes").  After effecting immediate access at the sites, the Receiver dismissed any onsite employees (once they were interviewed) and arranged for all exterior locks to be changed at each of the three locations.[2]  Once the sites were secure, the Receiver provided access to counsel and other representatives of Plaintiff in compliance with the TRO.  *See id.* §§ XIII.S, XIV.  The Receiver also ensured that all business records at the receivership sites, including hard copy documents and electronic materials (*i.e.*, hard drives, servers, etc.), were preserved, transferring them to a secure storage site controlled by the Receiver.  Electronic materials stored offsite or in the cloud (*i.e.*, phone recordings, consumer data, etc.) were also preserved.  Leased equipment was returned to vendors.

After the Preliminary Injunction was entered, on January 9, 2020, the parties stipulated to an order authorizing the Receiver to liquidate or abandon receivership estate assets and vacate leased premises.  *See* ECF No. 124.  The Court entered the order granting the stipulation the following day, on January 10, 2020.  *See* ECF No. 125.  Professionals employed by the Receiver spoke with liquidation and estate sale companies about removing and selling the assets which remained at

---

[2]  Employees were later given an opportunity to return and collect personal belongings.

each of the three sites.  The Receiver ultimately accepted an offer from a liquidator, who took the electronics and furniture for $29,000 and removed the cubicles and any trash.[3]  The Receiver accepted this proposal.  Once the spaces were vacated, the Receiver returned the properties to the landlords: Technology and Laguna on January 23, 2020, and Hughes on January 30, 2020.

**B.      Consumer Notice**

The Receiver notified consumers of the underlying action and the receivership by email soon after his appointment.  Notices were also posted on the Receivership Defendants' websites and the Receivership Defendants' telephone greetings were updated.  All notices provided information about the case and instructed consumers to contact their student loan servicers immediately.  From the case's inception and up to the present, the Receiver has also responded to hundreds of consumer inquiries by phone and email.

**C.      Potential Litigation Against Third Parties**

The Receiver is actively investigating several individuals and companies that profited from Defendants' fraudulent scheme at the expense of the Receivership Defendants.  In connection with the Receiver's investigation, counsel for the Receiver has prepared and issued records subpoenas to multiple banks in order to facilitate tracing.  Additionally, the Receiver's forensic accountant has performed cash flow analyses and reviewed bank statements collected at the receivership sites and produced by banks in response to subpoenas.

The Receiver has also engaged in settlement discussions with multiple parties.  Settlement talks with a payment processor for Defendants, however, were

---

[3]  The situation was different for Technology.  That site was actually subleased by Defendant CAC from a neighboring company, Guaranteed Rate, Inc.  After reviewing the original lease between Guaranteed and Defendant CAC, the Receiver determined that the cubicles were owned by Guaranteed Rate and not CAC, and that the Receiver had no authority to remove them.  Although electronics and other fungible assets at Technology were sold to the liquidator, the cubicles were left onsite.

serious enough that the parties attended mediation.  Although no settlement was reached, the lines of communication remain open.  The Receiver also entered into a tolling agreement with a lead provider used by Defendants in order to preserve potential claims against the vendor.  The Receiver will continue to update the Court on these matters as they progress.

## III.

## RECEIVERSHIP ACCOUNTING

Attached as Exhibit A is a Receipts and Disbursements Summary for the period ending November 30, 2020.  During this time period, receipts were $8,877,453.10, primarily comprised of funds from accounts frozen under the provisions of the TRO, the liquidation of assets, and the sale of Receivership Defendants' office furniture and equipment.  Disbursements were $1,850,492.33, primarily comprised of Court-ordered payments to the Plaintiffs.[4] The current aggregate balance of the bank accounts is $7,026,960.77.

Dated:  December 1, 2020

By:   /s/ Cornelia J. B. Gordon
Cornelia J. B. Gordon
*Attorney for Receiver,*
*Thomas W. McNamara*

---

[4]  *See* Stipulated Final Judgment and Order as to Defendants Prime Consulting LLC and Horizon Consultants LLC (ECF No. 205), Section XVII, ¶¶ 78-79 and Stipulated Final Judgment and Order as to Defendant Tuong Nguyen and Relief Defendant TN Accounting Inc. (ECF No. 210), Section XVII, ¶ 85.

1

## **<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on the 1st day of December, 2020, I caused the foregoing
to be electronically filed with the Clerk of the Court using the CM/ECF system,
which will send notification of the filing to all participants in the case who are
registered CM/ECF users.


  /s/ Cornelia J. B. Gordon
Cornelia J. B. Gordon
*Attorney for Receiver,*
*Thomas W. McNamara*