UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

**Case No.** SACV 19-1998-MWF (KSx)  **Date:** December 1, 2020

Title:  Bureau of Consumer Financial Protection et al. v. Consumer Advocacy Center Inc. et al.

Present: The Honorable MICHAEL W. FITZGERALD, U.S. District Judge

Deputy Clerk:  Court Reporter:
Rita Sanchez  Not Reported

Attorneys Present for Plaintiffs:  Attorneys Present for Defendants:
None Present  None Present

**Proceedings (In Chambers):**  ORDER RE: APPLICATION FOR DEFAULT JUDGMENT AGAINST DEFENDANT FIRST PRIORITY LLC [219]; APPLICATION FOR DEFAULT JUDGMENT AGAINST DEFENDANT TRUE COUNT STAFFING, INC. [233]

Before the Court are two applications:

The first is Plaintiffs the Bureau of Consumer Financial Protection, the State of Minnesota, the State of North Carolina, and the People of the State of California's Application for Default Judgment Against Defendant First Priority LLC (the "First Priority Application"), filed on September 10, 2020. (Docket No. 219).

The second is Plaintiffs' Application for Default Judgment Against Defendant True Count Staffing, Inc. (the "True Count Application"), filed on November 13, 2020. (Docket No. 233).

The First Priority Application was noticed to be heard on October 26, 2020, and the True Count Application was noticed to be heard on January 11, 2021. The Court read and considered the papers filed in connection with the Applications and deemed the matters appropriate for decision without oral argument. *See* Fed. R. Civ. P. 78(b); Local Rule 7-15. Vacating the hearings is also consistent with General Order 20-09 arising from the COVID-19 pandemic.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

**Case No.**  SACV 19-1998-MWF (KSx)                              **Date:**  December 1, 2020
**Title:**      Bureau of Consumer Financial Protection et al. v. Consumer Advocacy Center Inc. et al.

    For the reasons that follow, the Applications are **GRANTED *in part***. The Applications with respect to Plaintiffs' requests for default judgment on all claims against First Priority and True Count are **GRANTED**. The Court also grants Plaintiffs' requests for injunctive relief, restitution, and disgorgement. While civil money penalties are appropriate, the Court orders a total of **$3,750,000** in statutory penalties against First Priority and a total of **$30,000,000** in statutory penalties against True Count.

## I.      BACKGROUND

    Plaintiffs commenced this civil action on October 21, 2019, alleging violations of state and federal law against multiple defendants, including True Count Staffing, Inc. ("True Count") and First Priority LLC ("First Priority"), for their roles in an illegal student loan debt-relief scheme. (*See* Docket No. 2). On the same day, a temporary restraining order ("TRO") was issued, holding that Plaintiffs were likely to succeed on the merits of their claims and appointing a receiver (the "Receiver") over, among others, Defendant True Count. (*See* Docket No. 24).

    On November 1, 2019, the Receiver filed his first status report with the Court (the "Receiver Status Report"), advising that Defendant First Priority qualified as a Receivership Defendant, and that he had frozen several bank accounts that were implicated in the scheme, including four accounts held by True Count and two accounts held by First Priority. (Docket No. 75 at 3, 7-8). The Receiver further reported that "Defendants collect consumer fees in advance without complying with the Telemarketing Sales Rule, which renders the entire business unlawful." (*Id.* at 4). The Receiver ultimately determined that the business "cannot" be operated lawfully and at a profit. (*Id.* at 38). On November 15, 2019, a stipulated preliminary injunction was issued. (Docket No. 103).

    On February 24, 2020, Plaintiffs filed the operative First Amended Complaint ("FAC"), naming Defendants True Count and First Priority. (Docket No. 134).

    As it relates to Defendant First Priority, Plaintiffs allege that First Priority

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

**Case No.** SACV 19-1998-MWF (KSx)           **Date:** December 1, 2020

**Title:** Bureau of Consumer Financial Protection et al. v. Consumer Advocacy Center Inc. et al.

participated in a deceptive student loan debt-relief scheme that caused millions of dollars in consumer injury in violation of: (1) the Telemarketing Sales Rule ("TSR"), 16 C.F.R. § 310.3(b) (Count VI); (2) Section 1036(a)(3) the Consumer Financial Protection Act ("CFPA"), 12 U.S.C. § 5536(a)(3) (Count X); (3) the CFPA based on its violations of the TSR, 15 U.S.C. § 6102 (Count IX); (4) the North Carolina Unfair and Deceptive Practices Act ("NCUDPA"), N.C. Gen. Stat. § 75-1.1 (Count XVI); and (5) the California Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200 et seq. (Count XVIII). (*See generally* FAC).

As it relates to Defendant True Count, Plaintiffs allege that True Count: engaged in a deceptive student loan modification scheme in violation of: (1) CFPA, 12 U.S.C. §§ 5531, 5536(a), 5564 & 5565; (2) the Telemarketing and Consumer Fraud and Abuse Prevention Act ("TCFAPA"), 15 U.S.C. §§ 6101-6108, and the TSR (Counts I-IV, VII-VIII, & XI); (3) the Minnesota Prevention of Consumer Fraud Act ("MNCFA"), Minn. Stat. § 325F.69, et seq. (Count XIII), and Uniform Deceptive Trade Practices Act ("MNDTPA"), Minn. Stat. § 325D.43, et seq. (Count XIV); (4) the North Carolina Debt Adjusting Act ("NCDAA"), N.C. Gen. Stat. § 14-423, et seq. (Count XV), the NCUDPA (Count XVI), and Telephonic Seller Registration Act (NCTSRA), N.C. Gen. Stat. § 66-260, *et seq*. (Count XVII); and (5) the UCL (Count XVIII). (*See generally* FAC).

Against both First Priority and True Count, Plaintiffs seek permanent injunctive relief, damages, rescission or reformation of contracts, the refund of monies paid, restitution, disgorgement, compensation for unjust enrichment, and civil money penalties. (*See id.*).

On July 31, 2020, the Court noted that First Priority was unrepresented by counsel, and issued an Order directing First Priority to retain counsel and file notice of retained counsel by August 14, 2020, or else Plaintiffs would be ordered to apply for entry of default against First Priority. (Docket No. 177). First Priority failed to file notice of retained counsel by August 14, 2020, and Plaintiffs applied for entry of default against First Priority on August 28, 2020. (Docket No. 212). The Clerk

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

**Case No.**  SACV 19-1998-MWF (KSx)                    **Date:** December 1, 2020
**Title:**    Bureau of Consumer Financial Protection et al. v. Consumer Advocacy Center Inc. et al.

entered default on August 21, 2020.  (Docket No. 213).

On September 3, 2020, the Court issued an Order granting counsel for True Count's motion to withdraw.  (Docket No. 215).  The Court explained that as a corporation, True Count must appear through counsel in this action, and ordered True Count to retain counsel and file notice of retained counsel by October 16, 2020, or else its Answer would be stricken and Plaintiffs would be ordered to apply for entry of default against True Count.  (*Id.*).  On November 3, 2020, the Court issued an Order striking True Count's Answer because it had not retained counsel and filed a notice of attorney appearance.  (Docket No. 230).  Plaintiffs applied for entry of default against True Count, which the Clerk entered on November 3, 2020.  (Docket Nos. 229, 231).

## II.     DISCUSSION

### A.     Procedural Requirements

Having reviewed the filings in this action, the Court is satisfied that Plaintiffs have met all the procedural requirements of Federal Rule of Civil Procedure 55 and Local Rule 55-1 for obtaining default judgment against Defendants First Priority and True Count.

#### 1.     First Priority

First Priority has not filed an answer to the FAC and is not an infant, incompetent, or serving in the military.  (*See generally* Docket); (Declaration of Nathan Dimock ("Dimock Decl. 1") ¶ 9 (Docket No. 219-2)).  The Clerk entered default against First Priority on August 21, 2020.  (*See* Docket No. 213).

On March 20, 2020, Plaintiffs filed First Priority's waiver of service, executed by Tuong Nguyen, an officer of First Priority listed with the California Secretary of State.  (*See* Docket No. 139).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

**Case No.** SACV 19-1998-MWF (KSx)          **Date:** December 1, 2020

**Title:** Bureau of Consumer Financial Protection et al. v. Consumer Advocacy Center Inc. et al.

As a matter of discretion, the Court requires that a plaintiff serve an application for default judgment on the relevant defendant(s). The Court does not require service under Rule 4, but does require that the service is reasonably likely to provide notice to the defendant(s). Plaintiffs also satisfied this requirement. The First Priority Application and supporting documents were mailed to First Priority's address on file with the California Secretary of State and emailed to counsel for individual Defendant Nguyen, the only First Priority officer listed with the California Secretary of State. (*See* Dimock Decl. 1 ¶ 10); (Certificate of Service of Nathan Dimock (Docket No. 219 at 6-7)).

### 2. True Count

True Count's Answer to the FAC was stricken on November 3, 2020, for failure to retain counsel, and to date, True Count has not filed an answer to the FAC. (*See* Docket No. 230). True Count is not an infant, incompetent, or serving in the military. (*See generally* Docket); (Declaration of Nathan Dimock ("Dimock Decl. 2") ¶ 10 (Docket No. 233-2)). The Clerk entered default against True Count First Priority on November 3, 2020. (Docket No. 231).

Plaintiffs have also served the True Count Application and supporting documents on True Count by delivery to True Count's sole corporate officer, Defendant Kaine Wen, at the True Count addresses on file with the California Secretary of State and by email to counsel for individual Defendant Wen. (Dimock Decl. 2 ¶ 11).

Accordingly, Plaintiffs have satisfied the procedural requirements for obtaining entry of default judgment against First Priority and True Count.

### B.     The *Eitel* Factors

The choice as to whether a default judgment should be entered is at the sole discretion of the trial court. *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980). The Ninth Circuit has determined that a court should consider seven discretionary

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

| | |
|---|---|
| **Case No.** SACV 19-1998-MWF (KSx) | **Date:** December 1, 2020 |
| **Title:** Bureau of Consumer Financial Protection et al. v. Consumer Advocacy Center Inc. et al. | |

factors before rendering a decision on motion for default judgment. *Eitel v. McCool*, 782 F.2d 1470, 1471-72 (9th Cir. 1986).

The seven factors are: (1) the possibility of prejudice to the plaintiff; (2) the merits of the plaintiff's substantive claim; (3) the sufficiency of the Complaint; (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect; and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring a decision on the merits. *Id.* If the Court determines that default judgment is appropriate, it may consider extrinsic evidence or conduct an evidentiary hearing in determining the amount of damages. Fed. R. Civ. P. 55(b)(2).

Particularly important here are the second and third *Eitel* factors, which require that a plaintiff "state a claim on which [it] may recover." *Danning v. Lavine*, 572 F.2d 1386, 1388 (9th Cir. 1978).

The FAC includes the following allegations:

Defendant True Count worked with other Defendants including CAC to operate a debt-relief enterprise which purported to help federal-student-loan borrowers obtain loan forgiveness or lower monthly payments through programs administered by the U.S. Department of Education. (FAC ¶¶ 8, 9).

In March 2018, CAC's processing and customer service operations were transferred to True Count. (*Id.* ¶¶ 72-74). True Count worked with other Defendants as a common enterprise, which: (1) charged consumers initial fees before consumers had been accepted to and made payments under their new loan agreements; (2) charged consumers monthly fees before Defendants submitted annual loan recertifications on behalf of consumers; (3) failed to hold consumer payments in independent third-party accounts; (4) failed to use payments from consumers to make payments toward consumers' student loan debts; (5) misrepresented the terms and conditions of Defendants' services; and (6) made numerous misrepresentations to consumers about the status of their loans. (*Id.* ¶¶ 5, 10-16, 120, 122-125, 217).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

**Case No.** SACV 19-1998-MWF (KSx)          **Date:** December 1, 2020

**Title:** Bureau of Consumer Financial Protection et al. v. Consumer Advocacy Center Inc. et al.

Individual Defendants, through True Count, created First Priority as a separate entity to collect and process payments made by consumers to the enterprise, acting as a "service provider." (*Id.* ¶¶ 76, 157, 176, 180, 229). First Priority provided substantial assistance to True Count and other Defendants knowing, or consciously avoiding knowing, that the representations made to consumers were false and involved collecting illegal advance fees. (*Id.* ¶¶ 268-269, 291).

In committing these acts, Plaintiffs plausibly allege that True Count and First Priority violated the TSR, the CFPA, the MNCFA, the MNDTPA, the NCDAA, the NCUDPA, the NCTRSA, and the UCL. (*See generally id.*).

Accordingly, Plaintiffs have stated claims on which they could recover.

The Court determines that, with the exception of the strong policy favoring a decision on the merits, which is not dispositive, the *Eitel* factors weigh in favor of granting the Motion.

### C. Proposed Relief

Having determined that default judgment is appropriate, the Court next must consider Plaintiffs' proposed relief. Plaintiffs seek: (1) a permanent injunction to prevent future violations of the relevant federal and state statutes; (2) monetary relief to redress injury to consumers; and (3) civil money penalties. (First Priority Application at 18); (True Count Application at 20). These requests are proper because they do not "differ in kind from, or exceed in amount, what is demanded in the pleadings." *Craigslist, Inc. v. Naturemarket, Inc.*, 694 F. Supp. 2d 1039, 1051 (N.D. Cal. 2010) (quoting Fed. R. Civ. P. 54(c)); (*see* FAC ¶ 352).

#### 1. Injunctive Relief

A permanent injunction is proper where a plaintiff shows: (1) irreparable harm; (2) the inadequacy of monetary damages; (3) that the balance of hardships favors

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

**Case No.** SACV 19-1998-MWF (KSx)          **Date:** December 1, 2020

**Title:** Bureau of Consumer Financial Protection et al. v. Consumer Advocacy Center Inc. et al.

plaintiff; and (4) that an injunction would benefit the public interest. *La Quinta Worldwide LLC v. Q.R.T.M., S.A. de C.V.*, 762 F.3d 867, 879 (9th Cir. 2014).

The terms of Plaintiffs' desired injunction are detailed in their proposed judgments and orders against First Priority and True Count respectively. (*See* Docket No. 219-5 (First Priority); Docket No. 233-5 (True Count)). Plaintiffs request a permanent occupational ban on telemarketing or assisting others engaged in telemarketing any consumer financial product or service, on marketing, offering, or providing any debt relief product or service, and on misrepresenting any consumer financial product or service. (*See id.*); (*see also* First Priority Application at 19; True Count Application at 20).

Plaintiffs argue that this broad relief is warranted because Defendants victimized thousands of student loan borrowers and continued their scheme even after a Civil Investigative Demand from the Bureau was served on Defendant Consumer Advocacy Center, Inc. ("CAC") in September 2018, and after Defendant CAC filed for bankruptcy in January 2019 in a misguided attempt to avoid regulatory enforcement. (*See* First Priority Application at 19; True Count Application at 21) (citing Receiver Status Report at 10).

Plaintiffs are correct that the Ninth Circuit and district courts have upheld broad occupational bans where a defendant has repeatedly violated the same laws in the performance of his employment. *See, e.g.*, *F.T.C. v. Gill*, 265 F.3d 944, 957 (9th Cir. 2001) (upholding scope of district court's injunction banning defendant from engaging in the credit repair business because of defendant's systematic, repeated, and ongoing violations of both federal laws and the preliminary injunction in the case); *see also Consumer Fin. Prot. Bureau v. Siringoringo*, SACV 14-1155-JVS (AJWx), 2016 WL 102435, at *6 (C.D. Cal. Jan. 7, 2016) (granting default judgment and issuing permanent injunction prohibiting defendants from engaging in the same conduct underlying the action, *i.e.*, the advertising, marketing, promoting, offering, or selling of mortgage relief products or the assisting of others in doing the same).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

| | |
|---|---|
| **Case No.** SACV 19-1998-MWF (KSx) | **Date:** December 1, 2020 |
| **Title:** Bureau of Consumer Financial Protection et al. v. Consumer Advocacy Center Inc. et al. | |

The Court determines that a permanent injunction is warranted here. Plaintiffs proceed in this action on behalf of thousands of individuals attempting to pay their student loans who were charged thousands of dollars of illegal fees and mislead by Defendants' illegal scheme. "If Defendants were to renew these activities, other potential victims could suffer similar harm. Considering the multitude of victims ensnared in the original scheme, future victims (were Defendants free to return to their old ways) may receive only a fraction of monetary damages to compensate them for injuries." *Siringoringo*, 2016 WL 102435, at *6. Additionally, "[c]onsidering the balance of hardships and the public interest, the public interest is served by injunctions that reasonably 'fence in' Defendants from engaging in behavior related to their previous illegal conduct." *Id.* (citing *FTC v. Colgate-Palmolive Co.*, 380 U.S. 374, 395 (1965) (having previously violated section 5 of the Federal Trade Commission Act, defendants could expect "fencing in")).

Accordingly, the injunctive relief requested in the Applications is **GRANTED**.

### 2. Monetary Relief

Plaintiffs request monetary relief in the form of restitution and disgorgement against First Priority and True Count without an evidentiary hearing. In the context of awarding monetary relief in a default judgment, a court need not hold an evidentiary hearing where the amount claimed is "capable of mathematical calculation." *Davis v. Fendler*, 650 F.2d 1154, 1161 (9th Cir. 1981) (citation omitted).

A plaintiff may seek remedies including disgorgement and restitution under the CFPA. *Consumer Fin. Prot. Bureau v. Gordon*, 819 F.3d 1179, 1195 (9th Cir. 2016). "Disgorgement is a remedy in which a court orders a wrongdoer to turn over all profits obtained by violating the law." *Id.* (citation omitted). "A district court has broad equity powers to order disgorgement, and its disgorgement calculation requires only a reasonable approximation of profits causally connected to the violation." *Id.* (citation and internal quotation marks omitted). "Restitution is a form of ancillary relief that a court can order in the absence of proof of actual damages" which "may be measured by

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

| | |
|---|---|
| Case No.  SACV 19-1998-MWF (KSx) | Date:  December 1, 2020 |
| Title:     Bureau of Consumer Financial Protection et al. v. Consumer Advocacy Center Inc. et al. | |

the full amount lost by consumers rather than limiting damages to a defendant's profits." *Id.* (citations and internal alterations omitted).  "A defendant is liable for the entire amount lost by consumers, including "fees paid by 'satisfied' consumers." *Id.* at 1195-96.  "A district court may use a defendant's net revenues as a basis for measuring unjust gains." *Id.* (citation omitted).  *Id.* at 1195.

With respect to First Priority, Plaintiffs request disgorgement and restitution in the net amount of fees paid by consumers, $165,848.05, which Plaintiffs calculated by totaling the amount in fees charged to consumers that were transferred to First Priority by third-party payment processors, plus the total net deposits from accounts controlled by True Count that were retained by First Priority.  (First Priority Application at 20-22) (citing Declaration of Mansour Heidari ("Heidari Decl. 1") ¶¶ 4-5, 13 (Docket No. 219-3)).

With respect to True Count, Plaintiffs request disgorgement and restitution in the amount of True Count's net revenues, $55,360,817.14, which Plaintiffs calculated by analyzing True Count's profit and loss statements, general ledger, and bank records.  (True Count Application at 22-23) (citing Declaration of Mansour Heidari ("Heidari Decl. 2") ¶¶ 3-6, Ex. 1 (Docket No. 233-3)).  Plaintiffs indicate that this amount excludes fees taken by third parties and refunds to consumers.  (*Id.* at 22).

The Court determines that it need not hold a hearing to enter default judgment against First Priority and True Count because the monetary relief is capable of mathematical calculation.  Moreover, the Court determines that the evidence submitted by Plaintiffs supports a judgment of $165,848.05 against First Priority, a reasonable calculation of the amount of money lost by consumers, and $55,360,817.14 against to True Count, a reasonable calculation of True Count's net revenues.

### 3.    Civil Money Penalties

Plaintiffs also request civil money penalties against First Priority and True Count under the CFPA and the UCL.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

**Case No.** SACV 19-1998-MWF (KSx)          **Date:** December 1, 2020

**Title:** Bureau of Consumer Financial Protection et al. v. Consumer Advocacy Center Inc. et al.

      The CFPA authorizes a court to order civil money penalties for reckless and knowing violations of a federal consumer financial law. 12 U.S.C. § 5565(a)(2)(H), (c)(1). "[F]or any person that recklessly engages in a violation of a Federal consumer financial law, a civil penalty may not exceed $25,000 for each day during which such violation continues." 12 U.S.C. § 5565(c)(2)(B). "[F]or any person that knowingly violates a Federal consumer financial law, a civil penalty may not exceed $1,000,000 for each day during which such violation continues." 12 U.S.C. § 5565(c)(2)(C). Adjusted for inflation, these amounts are currently set at $29,416 and $1,176,638, respectively. 12 CFR § 1083.1(a).

      Although the CFPA does not define "recklessly" or "knowingly," district courts looking to similar statutes for guidance have determined that knowing under the CFPA means "means actual knowledge or knowledge fairly implied on the basis of objective circumstances that such act is unfair or deceptive and is prohibited by such rule" and "recklessness refers to conduct that leads to an unjustifiably high risk of harm that is either known or so obvious that it should be known." *Consumer Fin. Prot. Bureau v. CashCall, Inc.*, CV 15-7522-JFW (RAOx), 2018 WL 485963, at *14 (C.D. Cal. Jan. 19, 2018) (quoting *Consumer Fin. Prot. Bureau v. D&D Mktg.*, CV 15-9692-PSG (Ex), 2016 WL 8849698, at *12 (C.D. Cal. Nov. 17, 2016)) (internal alterations omitted).

      "In determining the amount of any penalty assessed [under 12 U.S.C. § 5565(c)(2)], . . . the court shall take into account the appropriateness of the penalty with respect to":

    A) the size of financial resources and good faith of the person charged;
    B) the gravity of the violation or failure to pay;
    C) the severity of the risks to or losses of the consumer, which may take into account the number of products or services sold or provided;
    D) the history of previous violations; and
    E) such other matters as justice may require.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

| | |
|---|---|
| **Case No.** SACV 19-1998-MWF (KSx) | **Date:** December 1, 2020 |
| **Title:** Bureau of Consumer Financial Protection et al. v. Consumer Advocacy Center Inc. et al. | |

12 U.S.C. § 5565(c)(3).

Under the UCL, "[a]ny person who engages, has engaged, or proposes to engage in unfair competition shall be liable for a civil penalty not to exceed two thousand five hundred dollars ($2,500) for each violation." Cal. Bus. & Prof. Code § 17206(a).

> In assessing the amount of the civil penalty, the court shall consider . . . : the nature and seriousness of the misconduct, the number of violations, the persistence of the misconduct, the length of time over which the misconduct occurred, the willfulness of the defendant's misconduct, and the defendant's assets, liabilities, and net worth.

Cal. Bus. & Prof. Code § 17206(b).

For First Priority's violations of the CFPA, Plaintiffs request civil money penalties in the amount of $6,500,000. (First Priority Application at 22-23). This figure represents a daily penalty of $26,000. Plaintiffs argue that this is a conservative amount based on First Priority's violations of the CFPA, which could total $7,354,000, a figure Plaintiffs calculated by multiplying the maximum daily penalty for reckless violations of the CFPA, $29,416, by the number of days that First Priority participated in the scheme, 250 days, from February 15, 2019, to October 23, 2019. (*Id.* at 23-24). For First Priority's violations of the UCL, Plaintiffs request civil money penalties in the amount of $1,200,000. (*Id.* at 25 n.4). Plaintiffs argue that this is a conservative figure because it is "a near certainty" that more than one violation per day occurred, and First Priority's violations "of Counts VI, IX, and X ($2,500 per violation)" multiplied by the 250-day period, yields a "conservative penalty" of $1,875,000. (*Id.*).

While the Court agrees that civil money penalties against First Priority are warranted, the Court notes several problems with Plaintiffs' calculation of those penalties. With respect to the CFPA, Plaintiffs offer no persuasive reason why the Court should impose the near maximum daily statutory penalty against First Priority. (*See* First Priority Application at 24) (requesting daily penalty of $26,000, where

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

**Case No.**  SACV 19-1998-MWF (KSx)          **Date:**  December 1, 2020
**Title:**     Bureau of Consumer Financial Protection et al. v. Consumer Advocacy Center Inc. et al.

maximum daily penalty for reckless violation of CFPA is $29,419). Rather, Plaintiffs admit that out of the $83,000,000 collectively paid by consumers to Defendants, only $165,848.05 flowed into and was retained by First Priority. (*Id.*). In considering the size of First Priority's financial resources and the gravity of its violations, the Court doubts that it would be appropriate to order First Priority to pay civil penalties that are roughly forty times the entity's assets ($164,045.58) or the amount of loss to consumers ($165,848.05). Taking these issues into consideration, the Court determines that ordering First Priority to pay a penalty of $10,000 per day that it was involved in the scheme, for a total of $2,500,000, is an appropriate penalty under the CFPA. With respect to the UCL penalties, the FAC does not implicate First Priority in Count IX, so the maximum potential penalty under the UCL should be $1,250,000 instead of $1,875,000. (*See* ¶¶ FAC 283-288).

Accordingly, the Court imposes a total of **$3,750,000** in statutory penalties against First Priority.

For True Count's violations of the CFPA and the UCL, Plaintiffs request civil money penalties in the amount of $30,000,000. (True Count Application at 25). Plaintiffs argue that a penalty of $30,000,000 is warranted because while it exceeds True Count's present financial resources ($3,797,863.83), it provides necessary punishment, deters others from such conduct, and allows for more recovery if additional assets are recovered in the future. (*Id.*). Plaintiffs also assert that this amount falls far below True Count's potential monetary penalties which total $70,716,064 for reckless violations of the CFPA, and at least $1,502,500 for UCL violations. (*Id.* at 24-25) (citing Heidari Decl. 2 ¶ 4; Receiver Status Report at 6). Plaintiffs calculated these amounts by multiplying the maximum daily penalty for reckless violations of the CFPA and UCL by the number of independent violations, by the number of days that True Count participated in the scheme (601 days). (*Id.*). Plaintiffs assert that these penalties are warranted because of the gravity of Defendants' scheme and True Count's specific involvement: Out of the $83,000,000 that consumers paid Defendants, True Count's revenue constituted at least $55,360,817.14. (*Id.* at 24-25).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

| | |
|---|---|
| **Case No.**  SACV 19-1998-MWF (KSx) | **Date:**  December 1, 2020 |
| **Title:**    Bureau of Consumer Financial Protection et al. v. Consumer Advocacy Center Inc. et al. | |

The Court agrees with Plaintiffs that the only relevant mitigating factor here is True Count's current assets, which warrants reducing the penalties from over $70,000,000 to $30,000,000.  Accordingly, the Court imposes **$30,000,000** in statutory penalties against True Count.

### III.   CONCLUSION

The Applications are **GRANTED** *in part*.  The Applications with respect to Plaintiffs' requests for default judgment on all claims against First Priority and True Count are **GRANTED**.  The Court also grants Plaintiffs' requests for injunctive relief, restitution, and disgorgement.  While civil money penalties are appropriate, the Court orders a total of **$3,750,000** in statutory penalties against First Priority and a total of **$30,000,000** in statutory penalties against True Count.

Plaintiffs are **ORDERED** to file a proposed judgment in accordance with this Order on or before **December 14, 2020**.

IT IS SO ORDERED.