# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| Bureau of Consumer Financial Protection, et al., <br><br> Plaintiffs, <br><br> v. <br><br> Consumer Advocacy Center Inc., d/b/a Premier Student Loan Center, et al., <br><br> Defendants. | CASE NO. 8:19-cv-01998 MWF (KS) <br><br> The Honorable Michael W. Fitzgerald <br><br> **DEFAULT JUDGMENT AND ORDER AGAINST DEFENDANTS FIRST PRIORITY LLC AND TRUE COUNT STAFFING INC.** |

## DEFAULT JUDGMENT AND ORDER AS TO DEFENDANTS FIRST PRIORITY LLC AND TRUE COUNT STAFFING INC.

Plaintiffs the Bureau of Consumer Financial Protection, the State of Minnesota, the State of North Carolina, and the People of the State of California commenced this civil action on October 21, 2019, alleging violations of state and federal law against multiple defendants, including True Count Staffing, Inc. ("True Count") and First Priority LLC ("First Priority") (collectively, "Default Defendants"), for their roles in an illegal student loan debt-relief scheme. (*See* Docket No. 2). On February 24, 2020, Plaintiffs filed the operative First Amended Complaint ("FAC"), naming, among others, Defendants True Count and First Priority. (Docket No. 134).

Plaintiffs' filed their Application for Default Judgment Against Defendant First Priority LLC (the "First Priority Application") on September 10, 2020. (Docket No. 219). Plaintiffs filed their Application for Default Judgment

1

Against Defendant True Count Staffing, Inc. (the "True Count Application") on November 13, 2020.  (Docket No. 233).

In a Minute Order dated December 1, 2020, and for the reasons stated therein, this Court granted the Applications in part.  (Docket No. 243).  Now, therefore, pursuant to Rules 54, 55(b), 58(b)(2), and 65(d) of the Federal Rules of Civil Procedure, **IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** as follows:

## FINDINGS

1.     The Court has subject-matter jurisdiction over this action because it is brought under federal consumer financial law, 12 U.S.C. § 5565(a)(1), presents a federal question, 28 U.S.C. § 1331, and is brought by an agency of the United States, 28 U.S.C. § 1345.  This Court has supplemental jurisdiction over the States' claims pursuant to 28 U.S.C. § 1367.  Venue is proper in this district pursuant to 12 U.S.C. § 5564(f), because Defendants are located, reside, or do business in this District.

2.     Default Defendants have been properly served with the FAC.

3.     First Priority has not filed an answer to the FAC and is not an infant, incompetent, or serving in the military. (*See generally* Docket); (Declaration of Nathan Dimock ("Dimock Decl. 1") ¶ 9 (Docket No. 219-2)). The Clerk entered default against First Priority on August 21, 2020.  (*See* Docket No. 213).

4.     True Count's Answer to the FAC was stricken on November 3, 2020, for failure to retain counsel, and to date, True Count has not filed an answer to the FAC.  (*See* Docket No. 230).  True Count is not an infant, incompetent, or serving in the military.  (*See generally* Docket); (Declaration of Nathan Dimock ("Dimock Decl. 2") ¶ 10 (Docket No. 233-2)).  The Clerk entered default against True Count on November 3, 2020.  (Docket No. 231).

2

5.      Plaintiffs have satisfied the procedural requirements for obtaining default judgment against Default Defendants.

6.      Plaintiffs have stated claims on which they can recover.

7.      Because Default Defendants are in default, the allegations in the First Amended Complaint are taken as true as against Default Defendants.

8.      With the exception of the strong policy favoring a decision on the merits, which is not dispositive, the factors set forth in *Eitel v. McCool*, 782 F.2d 1470, 1471-72 (9th Cir. 1986), weigh in favor of a judgment of default against Default Defendants.

9.      Because damages are capable of ascertainment from definite figures contained in the documentary evidence and affidavits submitted by Plaintiffs, the Court need not hold a hearing prior to entering judgment by default.  *See Davis v. Fendler,* 650 F.2d 1154, 1161 (9th Cir. 1981).

10.     Judgment is entered against First Priority, in favor of Plaintiffs, as to First Priority's violation of:  (1) the Telemarketing Sales Rule ("TSR"), 16 C.F.R. § 310.3(b) (Count VI); (2) Section 1036(a)(3) the Consumer Financial Protection Act ("CFPA"), 12 U.S.C. § 5536(a)(3) (Count X); (3) the CFPA based on its violations of the TSR, 15 U.S.C. § 6102 (Count IX); (4) the North Carolina Unfair and Deceptive Practices Act ("NCUDPA"), N.C. Gen. Stat. § 75-1.1 (Count XVI); and (5) the California Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200 et seq. (Count XVIII).

11.     Judgment is entered against True Count, in favor of Plaintiffs, as to the following violations and counts:  (1) the CFPA, 12 U.S.C. §§ 5531, 5536(a), 5564 & 5565; (2) the Telemarketing and Consumer Fraud and Abuse Prevention Act ("TCFAPA"), 15 U.S.C. §§ 6101-6108, and the TSR (Counts I-IV, VII-VIII, & XI); (3) the Minnesota Prevention of Consumer Fraud Act ("MNCFA"), Minn. Stat. § 325F.69, et seq. (Count XIII), and Uniform

Deceptive Trade Practices Act ("MNDTPA"), Minn. Stat. § 325D.43, et seq. (Count XIV); (4) the North Carolina Debt Adjusting Act ("NCDAA"), N.C. Gen. Stat. § 14-423, et seq. (Count XV), the NCUDPA (Count XVI), and Telephonic Seller Registration Act (NCTSRA), N.C. Gen. Stat. § 66-260, *et seq*. (Count XVII); and (5) the UCL (Count XVIII).

12.    Plaintiffs seek:  (1) a permanent injunction to prevent future violations of the relevant federal and state statutes; (2) monetary relief to redress injury to consumers; and (3) civil money penalties.  (First Priority Application at 18); (True Count Application at 20).  These requests are proper because they do not "differ in kind from, or exceed in amount, what is demanded in the pleadings."  *Craigslist, Inc. v. Naturemarket, Inc.*, 694 F. Supp. 2d 1039, 1051 (N.D. Cal. 2010) (quoting Fed. R. Civ. P. 54(c)); (*see* FAC ¶ 352).  The Court determines that a permanent injunction is warranted here.

13.    With respect to First Priority, Plaintiffs request disgorgement and restitution in the net amount of fees paid by consumers, $165,848.05, which Plaintiffs calculated by totaling the amount in fees charged to consumers that were transferred to First Priority by third-party payment processors, plus the total net deposits from accounts controlled by True Count that were retained by First Priority.  (First Priority Application at 20-22) (citing Declaration of Mansour Heidari ("Heidari Decl. 1") ¶¶ 4-5, 13 (Docket No. 219-3)).

14.    With respect to True Count, Plaintiffs request disgorgement and restitution in the amount of True Count's net revenues, $55,360,817.14, which Plaintiffs calculated by analyzing True Count's profit and loss statements, general ledger, and bank records.  (True Count Application at 22-23) (citing Declaration of Mansour Heidari ("Heidari Decl. 2") ¶¶ 3-6, Ex. 1 (Docket No. 233-3)).  Plaintiffs indicate that this amount excludes fees taken by third parties and refunds to consumers.  (*Id.* at 22).

4

15.     The Court determines that it need not hold a hearing to enter default judgment against First Priority and True Count because the monetary relief is capable of mathematical calculation.  Moreover, the Court determines that the evidence submitted by Plaintiffs supports a judgment of $165,848.05 against First Priority, a reasonable calculation of the amount of money lost by consumers, and $55,360,817.14 against True Count, a reasonable calculation of True Count's net revenues.

16.     Plaintiffs also request civil money penalties against First Priority and True Count under the CFPA and UCL (Cal. Bus. Prof. Code § 17206). Civil money penalties are also authorized against True Count under Minn. Stat. § 8.31 and N.C. Gen. Stat. § 75-15.2.

17.     Considering the size of First Priority's financial resources and the gravity of its violations, the Court determines that $2,500,000 is an appropriate penalty under the CFPA.  With respect to the UCL penalties, the Court determines that a $1,250,000 penalty is appropriate.  Accordingly, the Court imposes a total of $3,750,000 in statutory penalties against First Priority.

18.     True Count's potential monetary penalties total $70,716,064 for reckless violations of the CFPA, and at least $1,502,500 for UCL violations, which total amounts that exceed True Count's present financial resources. Taking into account True Count's current assets, the Court determines that ordering True Count to pay a penalty of $30,000,000 for violations of the CFPA and UCL is appropriate.  Accordingly, the Court imposes a total of $30,000,000 in statutory penalties against True Count.

19.     This action and the relief awarded herein are in addition to, and not in lieu of, other remedies as may be provided by law, including both civil and criminal remedies.

20.     Entry of this Order is in the public interest.

5

**DEFAULT JUDGMENT AND ORDER AGAINST FIRST PRIORITY & TRUE COUNT**

## DEFINITIONS

The following definitions apply to this Order:

1.     "Affected Consumers" includes any consumer who paid any of the Defendants or their officers, agents, servants, employees, or attorneys for any Debt-Relief Service from November 2, 2015, to October 23, 2019.

2.     "Assets" means any legal or equitable interest in, right to, or claim to any real, personal, or intellectual property owned or controlled by, or held, in whole or in part for the benefit of, or subject to access by any Defendant or Relief Defendant, wherever located, whether in the United States or abroad. This includes, but is not limited to, chattel, goods, instruments, equipment, fixtures, general intangibles, effects, leaseholds, contracts, mail or other deliverables, shares of stock, commodities, futures, inventory, checks, notes, accounts, credits, receivables (as those terms are defined in the Uniform Commercial Code), funds, cash, and trusts, including but not limited to any trust held for the benefit of First Priority and True Count.

3.     "Assist[ing] Others" includes, but is not limited to:

      a.     consulting in any form whatsoever;

      b.     providing paralegal or administrative support services;

      c.     performing customer service functions, including but not limited to, receiving or responding to consumer complaints;

      d.     formulating or providing, or arranging for the formulation or provision of, any advertising or marketing material, including but not limited to, any telephone sales script, direct mail solicitation, or the text of any Internet website, email, or other electronic communication or advertisement;

      e.     formulating or providing, or arranging for the formulation or provision of, any marketing support material or service, including

**DEFAULT JUDGMENT AND ORDER AGAINST FIRST PRIORITY & TRUE COUNT**

but not limited to, web or Internet Protocol addresses or domain name registration for any Internet websites, affiliate marketing services, or media placement services;

  f.  providing names of, or assisting in the generation of, potential customers;

  g.  performing marketing, billing, or payment services of any kind; and

  h.  acting or serving as an owner, officer, director, manager, or principal of any entity.

  4.  "Bureau" means the Bureau of Consumer Financial Protection.

  5.  "Consumer Financial Product or Service" is synonymous in meaning and equal in scope to the definition of the term in the CFPA, 12 U.S.C. § 5481(5), and, subject to applicable restrictions contained in the CFPA, includes but is not limited to:

  a.  providing financial advisory services to consumers on individual consumer financial matters or relating to proprietary financial products or services, including providing credit counseling to any consumer or providing services to assist a consumer with debt management or debt settlement, modifying the terms of any extension of credit, or avoiding foreclosure; and

  b.  engaging in deposit-taking activities, transmitting or exchanging funds, or otherwise acting as a custodian of funds or any financial instrument for use by or on behalf of a consumer.

  6.  "Defendants" means Corporate Defendants and Individual Defendants, individually, collectively, or in any combination, and each of them by whatever names each might be known;

**DEFAULT JUDGMENT AND ORDER AGAINST FIRST PRIORITY & TRUE COUNT**

a.      "Corporate Defendants" means Consumer Advocacy Center Inc., True Count, Prime Consulting LLC, TAS 2019 LLC, Horizon Consultants LLC, and First Priority, collectively, or in any combination, and their successors and assigns, and each of them by any other names by which they might be known, including South Coast Financial Center, Direct Account Services, Financial Loan Advisors, Account Preparation Services, Administrative Financial, Tangible Savings Solutions, Coastal Shores Financial Group, First Choice Financial Centre (a/k/a First Choice Financial Center), Administrative Account Services, Primary Account Solutions, Prime Document Services, Financial Accounting Center, Doc Management Solutions, First Priority LLC, ALW Loans, Administrative Accounting Center, Best Choice Financial Center, First Document Services, Global Direct Accounting Solutions, Keystone Document Center, Pacific Palm Financial Group, Pacific Shores Advisory, Sequoia Account Management, Signature Loan Solutions, Yellowstone Account Services, ClearStudentLoanDebt, Clear Student Loan Debt, Trusted Account Services, Premier Student Loan Center, and Priority Account Management;

b.      "Individual Defendants" means Albert Kim, a/k/a Albert King; Kaine Wen, a/k/a Wenting Kaine Dai, Wen-Ting Dai, Wen Ting Dai, Kaine Dai, and Kaine Wen Dai; and Tuong Nguyen, a/k/a Tom Nelson, collectively, or in any combination, and each of them by any other names by which they might be known;

c.      "Receivership Defendants" means True Count, Prime Consulting LLC, TAS 2019 LLC, Horizon Consultants LLC, and

First Priority, collectively, or in any combination, and their successors and assigns;

d.　"Relief Defendants" means:

i.　Infinite Management Corp., f/k/a Infinite Management Solutions Inc.; Hold The Door, Corp.; TN Accounting Inc.; Mice and Men LLC; 1st Generation Holdings, LLC; and Anan Enterprise, Inc., collectively, or in any combination, and their successors and assigns, and each of them by any other names by which they might be known; and

ii.　Sarah Kim, and any other names by which she might be known.

e.　"Default Defendants" means Defendants True Count and First Priority, and their successors and assigns, and any other names by which they might be known.

7.　"Debt-Relief Service" means any program or service represented, directly or by implication, to renegotiate, settle, or in any way alter the terms of payment or other terms of the debt between a consumer and one or more unsecured creditors or debt collectors, including but not limited to, a reduction in the balance, interest rate, or fees owed by a consumer to an unsecured creditor or debt collector.

8.　"Effective Date" means the date on which this Order is entered by the Court.

9.　"Enforcement Director" means the Assistant Director of the Office of Enforcement for the Bureau of Consumer Financial Protection, or his or her delegate.

**DEFAULT JUDGMENT AND ORDER AGAINST FIRST PRIORITY & TRUE COUNT**

10.     "Person" means an individual, partnership, company, corporation, association (incorporated or unincorporated), trust, estate, cooperative organization, or other entity.

11.     "Plaintiffs" means the Bureau of Consumer Financial Protection, the State of Minnesota, the State of North Carolina, and the People of the State of California, collectively, or in any combination.

12.     "Receiver" means Thomas W. McNamara and his successors or assigns.

13.     "Related Consumer Action" means a private action by or on behalf of one or more consumers or an enforcement action by another governmental agency brought against either of the Default Defendants based on substantially the same facts as described in the Amended Complaint.

14.     "States" means the State of Minnesota, the State of North Carolina, and the People of the State of California.

15.     "Service Provider" means any person that provides a material service to a covered person, in connection with the offering or provision by such covered person of a Consumer Financial Product or Service, including a person that: (i) participates in designing, operating, or maintaining the Consumer Financial Product or Service; or (ii) processes transactions relating to the Consumer Financial Product or Service (other than unknowingly or incidentally transmitting or processing financial data in a manner that such data is undifferentiated from other types of data of the same form as the person transmits or processes). "Service provider" does not include a person solely by virtue of such person offering or providing to a covered person: (i) a support service of a type provided to businesses generally or a similar ministerial service; or (ii) time or space for an advertisement for

**DEFAULT JUDGMENT AND ORDER AGAINST FIRST PRIORITY & TRUE COUNT**

a Consumer Financial Product or Service through print, newspaper, or electronic media.

## ORDER

### I

### Permanent Ban on Telemarketing and
### Offering or Selling Debt-Relief Services

**It is ORDERED that**:

16.     Default Defendants, whether acting directly or indirectly, are permanently restrained from any of the following:

> a.      participating in telemarketing or Assisting Others engaged in telemarketing any Consumer Financial Product or Service;

> b.      participating in or Assisting Others in advertising, marketing, promoting, offering for sale, selling, or providing any Debt-Relief Service; and

> c.      receiving any remuneration or other consideration from, holding any ownership interest in, providing services to, or working in any capacity for any Person engaged in or assisting in advertising, marketing, promoting, offering for sale, selling, or providing any Debt-Relief Service.

Nothing in this Order shall be read as an exception to this Paragraph.

### II

### Prohibited Misrepresentations and Other Conduct

**It is FURTHER ORDERED that**:

17.     Default Defendants and their officers, agents, servants, employees, and attorneys, and all other Persons in active concert or participation with them, who have actual notice of this Order by personal service or otherwise, whether acting directly or indirectly, in connection with the advertising, marketing,

promotion, offering for sale, sale, or performance of any Consumer Financial Product or Service, may not misrepresent, or Assist Others in misrepresenting, expressly or impliedly:

      a.    the benefits that a consumer will receive from the product or service, including but not limited to, the amount of savings a consumer will receive from purchasing, using, or enrolling in the Consumer Financial Product or Service;

      b.    the time required to achieve benefits from the Consumer Financial Product or Service;

      c.    any aspect of the nature or terms of a refund, cancellation, exchange, or repurchase policy of the Consumer Financial Product or Service, including but not limited to, the likelihood of a consumer obtaining a full or partial refund or the circumstances in which a full or partial refund will be granted to the consumer; and

      d.    the total costs or any other material term, fact, restriction, limitation, or condition of the Consumer Financial Product or Service.

### III

### State Injunctive Provisions

**It is FURTHER ORDERED that**:

    18.    Default Defendants and their officers, agents, servants, employees, and attorneys, and all other Persons in active concert or participation with them who receive actual notice of this Order by personal service or otherwise, shall be permanently restrained and enjoined from violating the North Carolina Debt Adjusting Act, N.C. Gen. Stat. § 14-423, et seq., Unfair and Deceptive Practices Act, N.C. Gen. Stat. § 75-1.1, and Telephonic Seller Registration Act, N.C. Gen. Stat. § 66-260, et seq.

**DEFAULT JUDGMENT AND ORDER AGAINST FIRST PRIORITY & TRUE COUNT**

19.    True Count and its officers, agents, servants, employees, and attorneys, and all other Persons in active concert or participation with them who receive actual notice of this Order by personal service or otherwise, shall be permanently restrained and enjoined from violating the Minnesota Prevention of Consumer Fraud Act, Minn. Stat. § 325F.69, et seq., and Uniform Deceptive Trade Practices Act, Minn. Stat. § 325D.43, et seq.

20.    Under the Court's inherent equitable powers and as authorized by California Business and Professions Code section 17203, this Court is empowered to "make such orders or judgments . . . as may be necessary to prevent the use or employment by any person of any practice which constitutes unfair competition[.]" Cal. Bus & Prof Code § 17203. Accordingly, Default Defendants and their officers, agents, servants, employees, and attorneys, and all other persons in active concert or participation with them, whether acting directly or indirectly, are permanently restrained from violating California Business and Professions Code section 17200, et seq., through unlawful, fraudulent and/or unfair acts or practices including but not limited to:

    a.    Violating California Financial Code section 12000, et seq., by acting as a bill payer or prorater within the State of California without first obtaining a license from the California Commissioner of Business Oversight; and/or

    b.    Violating California Financial Code section 28100, et seq., the California Student Loan Servicing Act, by engaging in the business of servicing student loans in California without first obtaining a license as required under the Act.

///

///

///

**IV**

**Customer Information**

**It is FURTHER ORDERED that**:

21.     Default Defendants and their officers, agents, servants, employees, and attorneys, and all other Persons in active concert or participation with any of them, who receive actual notice of this Order by personal service or otherwise, whether acting directly or indirectly, may not:

> a.      disclose, use, or benefit from customer information, including the name, address, telephone number, email address, social security number, other identifying information, or any data that enables access to a customer's account (including a credit card, bank account, or other financial account), that Defendants obtained before the Effective Date; or
>
> b.      attempt to collect, sell, assign, or otherwise transfer any right to collect payment from any consumer who purchased or agreed to purchase a Debt-Relief Service from any Defendant.

22.     However, customer information may be disclosed if requested by a government agency or required by law, regulation, or court order.

**MONETARY PROVISIONS**

**V**

**Order to Pay Redress**

**It is FURTHER ORDERED that**:

23.     A judgment for monetary relief is entered in favor of Plaintiffs and against True Count.  True Count is liable in the amount of $55,360,817.14.  The monetary judgment set forth in this paragraph is immediately due and payable upon entry of this Order and is enforceable against any Asset owned by, on behalf of, for the benefit of, or in trust by or for True Count.

14

24.     A judgment for monetary relief is entered in favor of Plaintiffs and against First Priority.  First Priority is liable in the amount of $165,848.05.  The monetary judgment set forth in this paragraph is immediately due and payable upon entry of this Order and is enforceable against any Asset owned by, on behalf of, for the benefit of, or in trust by or for First Priority.

25.     This Order grants to the Bureau all rights and claims that Default Defendants have to Default Defendants' frozen assets currently in the possession, custody, or control of the Receiver or in the receivership estate, and Default Defendants shall forfeit any rights to the funds in the receivership estate.

26.     Any financial or brokerage institution, escrow agent, title company, commodity trading company, business entity, or person, whether located within the United States or outside the United States, that holds, controls or maintains accounts or assets of, on behalf of, or for the benefit of, either of the Default Defendants shall turn over such account or asset to the Bureau or its designated agent within ten (10) business days of receiving notice of this Order by any means, including but not limited to via facsimile or email. Any such funds must be paid to the Bureau, by wire transfer to the Bureau or to the Bureau's agent, and according to the Bureau's wiring instructions.

27.     Subject to paragraph 28, any funds received by the Bureau in satisfaction of this judgment will be deposited into a fund or funds administered by the Bureau or to the Bureau's agent according to applicable statutes and regulations to be used for redress for Affected Consumers, including but not limited to refund of moneys, restitution, damages or other monetary relief, and for any attendant expenses for the administration of any such redress.

28.     If the Bureau determines, in its sole discretion, that redress is wholly or partially impracticable or otherwise inappropriate, or if funds remain

after the redress is completed, the Bureau will deposit any remaining funds in the U.S. Treasury as disgorgement.  Default Defendants will have no right to challenge any actions that the Bureau or its representatives may take under this Section.

29.    Payment of redress to any Affected Consumer under this Order may not be conditioned on that Affected Consumer waiving any right.

## VI

### Order to Pay Civil Money Penalty to Plaintiffs

**It is FURTHER ORDERED that**:

30.    Under sections 1042(a) 1055(c) of the CFPA, 12 U.S.C. §§ 5552(a) & 5565(c), UCL (Cal. Bus. Prof. Code § 17206), Minn. Stat. § 8.31, and N.C. Gen. Stat. § 75-15.2, by reason of the violations of law alleged in the Amended Complaint and taking into account the factors in 12 U.S.C. § 5565(c)(3), True Count must pay a civil money penalty of $30 million to Plaintiffs.

31.    Within 10 days of the Effective Date, True Count must pay $50,000 of the civil money penalty to each of the States by wire transfer to each of the States or to each of the States' agents in compliance with each of the States' wiring instructions.

32.    Within 10 days of the Effective Date, True Count must pay the remaining civil money penalty of $29,850,000 by wire transfer to the Bureau or to the Bureau's agent in compliance with the Bureau's wiring instructions.

33.    Under sections 1042(a) 1055(c) of the CFPA, 12 U.S.C. §§ 5552(a) & 5565(c), by reason of the violations of law alleged in the Amended Complaint and taking into account the factors in 12 U.S.C. § 5565(c)(3), First Priority must pay a civil money penalty of $2,500,000 to Plaintiffs.

34.    First Priority must pay civil penalties under California Business

and Professions Code section 17206 in the total amount of $1,250,000 to the People of the State of California.

35.     Within 10 days of the Effective Date, First Priority must pay $10,000 of the civil money penalty to each of the States by wire transfer to each of the States or to each of the States' agents in compliance with each of the States' wiring instructions.

36.     Within 10 days of the Effective Date, First Priority must pay the remaining CFPA civil money penalty of $2,470,000 by wire transfer to the Bureau or the Bureau's agent in compliance with the Bureau's wiring instructions.

37.     The civil money penalties paid to the Bureau under this Order will be deposited in the Civil Penalty Fund of the Bureau as required by section 1017(d) of the CFPA, 12 U.S.C. § 5497(d).

38.     The civil money penalty paid to Minnesota under this Order will be remitted to the general fund of the State of Minnesota pursuant to Minn. Stat. §§ 8.31 and 16A.151.

## VII

## Additional Monetary Provisions

**It is FURTHER ORDERED that**:

39.     In the event of any default on either of Default Defendants' obligations to make payment under this Order, interest, computed under 28 U.S.C. § 1961, as amended, will accrue on any outstanding amounts not paid from the date of default to the date of payment, and will immediately become due and payable.

40.     Default Defendants must relinquish all dominion, control, and title to the funds and all other Assets transferred or paid under this Order to the fullest extent permitted by law and no part of the funds or other Assets may be

17

returned to Default Defendants.

41.     The facts alleged in the First Amended Complaint will be taken as true and given collateral estoppel effect, without further proof, in any proceeding based on the entry of the Order, or in any subsequent civil litigation by or on behalf of the Plaintiffs, including in a proceeding to enforce their rights to any payment or monetary judgment under this Order, such as a non-dischargeability complaint in any bankruptcy case.

42.     The facts alleged in the First Amended Complaint establish all elements necessary to sustain an action by the Plaintiffs under section 523(a)(2)(A) of the Bankruptcy Code, 11 U.S.C. § 523(a)(2)(A), and for such purposes this Order will have collateral estoppel effect against Default Defendants, even in such Default Defendants' capacity as debtor-in-possession.

43.     Under 31 U.S.C. § 7701, Default Defendants, unless either of them has already done so, must furnish to Plaintiffs any taxpayer-identifying numbers associated with it or its Assets, which may be used for purposes of collecting and reporting on any delinquent amount arising out of this Order.

44.     Within 30 days of the entry of a final judgment, order, or settlement in a Related Consumer Action, Default Defendants must notify the Enforcement Director of the final judgment, order, or settlement in writing. That notification must indicate the amount of redress, if any, that either of the Default Defendants paid or is required to pay to consumers and describe the consumers or classes of consumers to whom that redress has been or will be paid.

45.     Default Defendants must treat all civil money penalties paid under this Order as a penalty paid to the government for all purposes.  Regardless of how such funds are used, Default Defendants may not:

    a.     claim, assert, or apply for a tax deduction, tax credit, or any

18

**DEFAULT JUDGMENT AND ORDER AGAINST FIRST PRIORITY & TRUE COUNT**

other tax benefit for any civil money penalty paid under this Order; or

b.      seek or accept, directly or indirectly, reimbursement or indemnification from any source, including but not limited to payment made under any insurance policy, with regard to any civil money penalty paid under this Order.

## VIII

## Lifting of Asset Freeze

**It is FURTHER ORDERED that**:

46.      The freeze on the Assets of Default Defendants is modified to permit the payments and other transfers of Assets identified in Sections V, VI, VII and XVII of this Order.

## IX

## Receivership

**It is FURTHER ORDERED that**:

47.      The receivership imposed by this Court shall continue in the manner set forth in the Preliminary Injunction issued on November 15, 2019 (Docket No. 103), as to all Defendants and Relief Defendants, except as modified by this Section and Section V, and the Receiver shall continue to have the full powers of an equity receiver, as an agent of the Court, pursuant to Sections XIV and XV of the Preliminary Injunction, which shall remain in effect until further order of the Court.

48.      Within 14 days of liquidating True Count's Assets, the Receiver shall transfer $50,000 to the State of Minnesota, $50,000 to the North Carolina Attorney General, and $50,000 to the People of the State of California from the True Count's Assets maintained in the Receiver's account.  These transfers shall be made to satisfy the civil money penalties to the States as set forth in

**DEFAULT JUDGMENT AND ORDER AGAINST FIRST PRIORITY & TRUE COUNT**

Section VI.  Any remaining Assets of True Count maintained in the Receiver's account shall be transferred to the Bureau.

49.     Within 14 days of liquidating First Priority's Assets, the Receiver shall transfer $10,000 to the State of Minnesota, $10,000 to the North Carolina Attorney General, and $10,000 to the People of the State of California from First Priority's Assets maintained in the Receiver's account.  These transfers shall be made to satisfy the civil money penalties to each State as set forth in Section VI.  Any remaining Assets of First Priority maintained in the Receiver's account shall be transferred to the Bureau.

50.     The Receiver shall take any and all steps that the Receiver concludes are appropriate to wind down Default Defendants.

51.     The Receiver shall promptly take all steps necessary to liquidate the Default Defendants' Assets using any commercially reasonable means, including auction and/or private sale, and all such sales shall be deemed authorized and approved under 28 U.S.C. § 2004 without further notice, hearing, or court order.  After such liquidations, the Receiver shall remit the net proceeds to the Bureau or its designated representative as payment toward the monetary judgments entered against the Default Defendants.

52.     The Receiver shall continue to perform all acts necessary or advisable to complete an accounting of the receivership Assets, and prevent unauthorized transfer, withdrawal, or misapplication of Assets.

53.     The Receiver and his representatives shall continue to be entitled to reasonable compensation for the performance of their duties pursuant to this Order from the Assets of the Receivership Defendants.  The Receiver and his representatives shall not increase their hourly rates without prior approval of the Court.

///

# X

## Retention of Jurisdiction

**It is FURTHER ORDERED that**:

48.     The Court will retain jurisdiction of this matter for the purpose of enforcing this Order.

It is **SO ORDERED**, this 15th day of December, 2020.

MICHAEL W. FITZGERALD
United States District Judge

**DEFAULT JUDGMENT AND ORDER AGAINST FIRST PRIORITY & TRUE COUNT**