**BUREAU OF CONSUMER FINANCIAL PROTECTION**
SARAH PREIS (D.C. Bar No. 997387)
(Admitted *pro hac vice*)
Tel.: (202) 435-9318 / Email: sarah.preis@cfpb.gov
JESSE STEWART (N.Y. Bar No. 5145495)
(Admitted *pro hac vice*)
Tel.: (202) 435-9641 / Email: jesse.stewart@cfpb.gov
N. NATHAN DIMOCK (D.C. Bar No. 487743)
(Admitted *pro hac vice*)
Tel.: (202) 435-9198 / Email: nathan.dimock@cfpb.gov
1700 G Street, NW
Washington, DC 20552
Fax: (202) 435-5471
LEANNE E. HARTMANN (C.A. Bar No. 264787)
(Local Counsel for the Bureau of Consumer Financial Protection)
Email: leanne.hartmann@cfpb.gov / Fax: (415) 844-9788
301 Howard Street, Suite 1200
San Francisco, CA 94105
*Attorneys for Plaintiff Bureau of Consumer Financial Protection*

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| Bureau of Consumer Financial Protection, et al.,<br><br>    Plaintiffs,<br><br>    v.<br><br>Consumer Advocacy Center Inc., d/b/a Premier Student Loan Center, et al.,<br><br>    Defendants. | CASE NO. 8:19-cv-01998 MWF (KS)<br><br>**REPLY IN SUPPORT OF PLAINTIFF'S MOTION FOR ORDER TO SHOW CAUSE WHY DEFENDANT WEN SHOULD NOT BE HELD IN CONTEMPT AND FOR RELATED RELIEF**<br><br>**REDACTED PURSUANT TO ORDER OF THE COURT DATED DECEMBER 30, 2020**<br><br>Hearing: Feb. 22, 2021 at 10:00 a.m.<br>Court:  Hon. Michael W. Fitzgerald<br>Courtroom: 5A |

i

**Table of Contents**

I. Introduction ..................................................................................................1

II. The Court Should Issue an Order to Show Cause as to Why Wen Should Not be Held in Contempt for His Violations of the TRO and PI Order ..........................................................................................................2

   A. The Court's Orders are Specific and Definite.................................2

   B. Wen has Dissipated Frozen Assets in Violation of the TRO and PI Order................................................................3

      1. The Bureau has Established Wen's Dissipation by Clear and Convincing Evidence .......................................................3

      2. Wen's Arguments About the Amount and Timing of the Loss Lack Merit ..................................................6

      3. Wen Misconstrues Rule 408 in Arguing for the Exclusion of Documents Evidencing His Violative Conduct .........................7

   C. Wen has Violated the Financial Accounting Provisions of the TRO and PI Order ................................................................9

III. The Requested Relief is Appropriate ....................................................13

IV. Conclusion ................................................................................................15

# Table of Authorities

**Cases**

*FTC v. Affordable Media*,
   179 F.3d 1228 (9th Cir. 1999)..................................................................................2

*Hudspeth v. C.I.R.*,
   914 F.2d 1207 (9th Cir. 1990)..................................................................................9

*Kallins v. Superior Court of California*,
   Fed. Appx. 707 (9th Cir. 2003) ...............................................................................5

*Rhoades v. Avon Prod., Inc.*,
   504 F.3d 1151 (9th Cir. 2007)..................................................................................7

*SEC v. Faulkner*,
   No. 3:16-CV-1735-D, 2017 WL 4238705 (N.D. Tex. Sept. 25, 2017) ..........14

*SEC v. Wencke*,
   622 F.2d 1363 (9th Cir. 1980)................................................................................14

*Stone v. City and Cnty. of San Francisco*,
   968 F.2d 850 (9th Cir.1992)...................................................................................10

*United States v. $133,420 in U.S. Currency*,
   672 F.3d 629 (9th Cir. 2012)....................................................................................5

*United States v. Contreras*,
   593 F.3d 1135 (9th Cir. 2010)..................................................................................7

*United States v. Costa Cnty. Water Dist.*,
   678 F.2d 90 (9th Cir. 1982)......................................................................................9

*United States v. Rylander*,
   460 U.S. 752 (1983) ........................................................................................ 10, 11

*United States v. Technic Servs., Inc.*,
   314 F.3d 1031 (9th Cir. 2002)..................................................................................7

**Rules**

Fed. R. Evid. 408 ............................................................................................. 1, 7, 8, 9

## I. Introduction

Defendant Kaine Wen was one of the principal architects of a student loan debt-relief operation that bilked struggling student loan borrowers nationwide out of over $80 million dollars. In October 2019, the Court granted Plaintiffs' request for a temporary restraining order (TRO), bringing an immediate halt to the deceptive operation and freezing all of the Defendants' assets, including Wen's.[1] Shortly thereafter, the Court entered the Stipulated Preliminary Injunction Order (PI Order), extending the provisions of the TRO during the pendency of this action.[2] In defiance of the Court's orders, Defendant Wen, concealed the existence of his   Redacted   assets and dissipated over Redacted of his   Redacted   .

In response to the Bureau's motion seeking to hold him accountable for these actions, Wen argues that the Bureau failed to meet the 'clear and convincing' standard by not pleading with sufficient particularity. But the Bureau clearly alleged that Wen was subject to specific court orders and violated those orders by dissipating and failing to disclose assets. Any details not included in the Bureau's motion stem directly from Wen's refusal to be candid and comply with the Court's orders.

Wen's contention that the Bureau violated Federal Rule of Evidence 408 is equally unavailing. The instant motion does not concern ultimate liability for the counts alleged in the Second Amended Complaint, it only concerns whether Wen abided by the TRO and PI Order (to which he stipulated). Moreover, it is undisputed that the Bureau's communications designed to learn about Wen's   Redacted   were aimed at ensuring full compliance with the TRO

---

[1] Temp. Restraining Order, ECF No. 24 (TRO).
[2] Stip. Prelim. Injunct. with Asset Freeze, Appt. of Receiver and other Equitable Relief, ECF No. 103 (PI Order) at VIII.A, D.

1

and PI Order. Defense counsel's penchant for writing 'settlement communication' on correspondence unrelated to settlement does not change that fact.

Finally, Wen's suggestion that there is no remedy for his violations of the TRO and PI Order is simply wrong. This Court has the inherent authority to enforce its orders, require Wen to relinquish the *Redacted* at issue to the court-appointed Receiver, and require Wen to provide fulsome and truthful financial disclosures. To hold otherwise would render the TRO and PI Orders toothless.

## II. The Court Should Issue an Order to Show Cause as to Why Wen Should Not be Held in Contempt for His Violations of the TRO and PI Order.

### A. The Court's Orders are Specific and Definite.

As addressed in the Bureau's opening brief, a party moving for contempt must show by clear and convincing evidence that the contemnor violated a "specific and definite order of the court." *FTC v. Affordable Media*, 179 F.3d 1228, 1239 (9th Cir. 1999). The Bureau has clearly established that Wen is subject to a specific and definite order. Both the TRO and PI Order (to which Wen consented): (1) froze *all* of Wen's assets, regardless of their source; (2) required Wen to disclose all *Redacted* assets and certain transfers; and (3) required Wen to complete a financial accounting of payments, transfers, and assignments of assets.[3] Indeed, Wen does not challenge the specificity of the Court's orders.

---

[3] ECF No. 103 at Parts VI, VIII.A, D. *See also* ECF No. 256-3 (Ex. 1-2) at p. 21, 27 (Items 23 and 31).

**B. Wen has Dissipated Frozen Assets in Violation of the TRO and PI Order.**

**1. The Bureau has Established Wen's Dissipation by Clear and Convincing Evidence.**

The Bureau's motion also sets forth clear and convincing evidence that Wen violated the TRO and the PI. Wen's admissions regarding the value of his Redacted , coupled with publicly available information about the fluctuations in Redacted , establish that Wen has dissipated Redacted since entry of the TRO and PI Order.[4] That dissipation violated the asset freeze provisions of those orders. Specifically, the Bureau compared Wen's statements about the value of his Redacted as of November 1, 2019 (as disclosed in his amended financial disclosures dated November 7, 2020 and December 17, 2020) with the statement contained in his December 4, 2020 declaration about the value of his Redacted of that date.[5] That analysis found that over Redacted Redacted had been dissipated.[6]

Wen offers no evidence to refute the Bureau's analysis. Indeed, the Bureau repeatedly tried to get Wen to clarify and explain the value of his Redacted .[7] Wen refused and instead invoked his Fifth Amendment right against self-incrimination.[8] And even in his opposition to the instant motion, Wen does

---

[4] *See* Mem. In Support of Pl.'s Mot. for Order to Show Cause Why Def. Wen Should Not be Held in Contempt and for Related Relief (Filed Under Seal) (ECF No. 256-1) at 8-10; Decl. of Andrew Nigrinis, ECF No. 256-17 (Nigrinis Decl.) ¶¶4-14.
[5] Nigrinis Decl. ¶¶4-14.
[6] Nigrinis Decl. ¶¶4-14.
[7] *See* ECF No. 256-1 at 4-10; Decl. of Jesse Stewart, ECF No. 256-2 (Stewart Decl.) ¶¶14-17, 19, 22-24); ECF No. 256-7 (Ex. 6-1); 256-10 (Ex. 8-3); 256-13 (Ex. 12) at p. 135; Decl. of Jesse Stewart dated February 8, 2021 (Stewart Decl. II) ¶¶7-9, Ex. 19.
[8] *See, e.g.*, Stewart Decl. ¶¶18, 21, 22, 24; ECF No. 256-13 (Ex. 12); ECF No. 257-16 (Ex. 11).

3

not offer any evidence, such as a declaration or financial records, purporting to explain how  Redacted  disappeared or denying that assets were dissipated after the entry of the TRO and PI Orders. Rather, Wen's opposition begins by arguing that the Bureau has failed to allege asset dissipation with the required specificity.[9] Then, Wen essentially asserts that when he disclosed  Redacted , he *might have* meant some other unidentified  Redacted .[10] He goes on to claim, for the first time, that his references to Redacted Redacted  in his November 7th disclosure and December 4th declaration were not necessarily to [Redacted], even though Wen's prior statements used those terms interchangeably (as does the website to which he cites in support).[11] And when the Bureau notified Wen's counsel that it construed his reference to  Redacted  in his December 4, 2020 declaration as a reference to [Redacted], Wen's counsel cited the Fifth Amendment right against self-incrimination and declined to respond on Wen's behalf.[12]

Wen also tries to cast doubt on the meaning of his statement in his December 18, 2020 amended financial disclosure that he  Redacted   Redacted  now arguing it means that he [Redacted]

---

[9] *See* Opp. to Pl.'s Mot. for Order to Show Cause Why Def. Wen Should Not be Held in Contempt and for Related Relief, ECF 265-1 at 9-10.
[10] *See* ECF No. 265-1 at 18, n.19.
[11] *See* Stewart Decl. II at ¶¶ 4-6, Ex. 17-18 at p. 166-197  Redacted
Redacted
  Redacted  ; *see also* 256-15 (Ex. 14) at p. 153 (referring to  Redacted  ; ECF No. 265-1 at 18, n. 9
  Redacted  (last visited February 6, 2021) (discussing  Redacted
Although Wen and others have used  Redacted
Redacted
 Redacted  *See, e.g.*,  Redacted
Redacted
Redacted.
[12] ECF No. 264-4 (Ex. 3) at p. 1-2.

4

multiple Redacted assets, not just Redacted, that collectively were worth approximately Redacted as of November 1, 2019.[13] Even if the Court were to adopt Wen's explanation of this statement, it only evidences Wen's continuing failure to sufficiently identify his Redacted assets. It does not undermine the other evidence set forth by the Bureau illustrating the difference in value of his Redacted as of November 1, 2019 and December 4, 2020.[14] Finally, it is disingenuous for Wen to argue that the Bureau's allegations are not specific enough while also refusing to provide information about his Redacted assets and transfers.[15] Wen's efforts to use the Fifth Amendment as both a sword and a shield must be rejected.[16] *See United States v. $133,420 in U.S. Currency*, 672 F.3d 629, 640-41 (9th Cir. 2012).

---

[13] Wen provided his December 18, 2020 amended financial statement following the parties' meet and confer on the Bureau's contempt motion. Stewart Decl. ¶¶ 23, 27. By that point, in addition to the formal meet and confer on the Bureau's contempt motion, the Bureau had been corresponding with Wen's counsel regarding its concerns about inaccuracies and omissions in his financial statement and asset dissipation for months. *See, e.g.*, Stewart Decl. ¶¶4-5, 9-22. Wen's suggestion that the Bureau should have further delayed filing its motion ignores this history, and it is difficult to see what it would have accomplished given Wen's continued refusal to respond to questions about the location and value of his Redacted assets and the extent of his dissipation. *See* Stewart Decl. at ¶¶14-19, 21-24.
[14] *See* Nigrinis Decl. at ¶¶5, 6, 9, 10-12, 14.
[15] *See* ECF No. 257-17 (Ex. 11) at p. 124-29; ECF No. 264-4 (Ex. 3) at p. 1-2.
[16] The *Kallins v. Superior Court of California* decision cited by Wen in support of his specificity argument is factually and procedurally distinguishable and has little relevance here. 74 Fed. Appx. 707 (9th Cir. 2003). That proceeding involved a defense counsel in a criminal case who was held in summary contempt for engaging in repeated incidents of misconduct and failing to follow the judge's instructions during trial. *Id.* at 709-710. Further, the *Kallins* court explicitly held that "[t]he contemnor [need only] be given 'reasonable' notice of the specific charges and opportunity to be heard in his own behalf." *Id.* at 710 (citations omitted).

5

### 2. Wen's Arguments About the Amount and Timing of the Loss Lack Merit.

Finally, Wen cites no authority for his assertion that any amounts he should be ordered to pay must be measured as of the date of dissipation. In any event, the flaws of such an approach are clear. Wen has repeatedly refused to provide information about these assets, including the date or dates of any dissipation. His failure to fully disclose and account for his Redacted Redacted as required by the TRO and PI Order,[17] his refusal to provide substantive responses to the Bureau's expedited discovery requests,[18] and his prolonged refusal to sit for a remote deposition,[19] have so far prevented an estimation of damages based on a date or dates of dissipation. Indeed, Wen's complaint that the Bureau's loss measured at the time of its motion is "improper" rings hollow, given Wen's counsel's invocation of the Fifth Amendment to avoid even answering whether Wen has dissipated Redacted Redacted assets (let alone the amounts or timing).

Wen's argument that the Bureau has not shown any "loss" similarly fails. Wen takes issue with the Bureau's estimate that the value of the dissipated Redacted as of the date of the contempt motion, arguing that there has been no "loss" and that the Bureau can *only* recover the value as of the date of the "sale."[20] But the Court froze *all* of Wen's assets—including the now-dissipated Redacted. Contrary to Wen's argument, the Court found that Plaintiffs were likely to succeed in their action and would have a right to recover those assets. Wen's claim that the funds used to purchase the Redacted were earned prior to the events alleged in the First Amended

---

[17] *See* ECF No. 256-1 at 3-5.
[18] *See* ECF No. 257-17 (Ex. 11) at p. 124-29.
[19] Stewart Decl. II ¶11.
[20] ECF No. 265-1 at 24.

6

1 Complaint is irrelevant. Wen's dissipation is indeed a "loss" and constitutes a
2 direct violation of the asset freeze.

### 3. Wen Misconstrues Rule 408 in Arguing for the Exclusion of Documents Evidencing His Violative Conduct.

5 Wen spends much of his opposition arguing that three of the documents
6 upon which the Bureau relies are inadmissible because they qualify as
7 settlement negotiations pursuant to Federal Rule of Evidence (FRE) 408. Rule
8 408 applies where settlement communications are used "either to prove or
9 disprove the validity or amount of a disputed claim or to impeach by a prior
10 inconsistent statement or a contradiction." Here, the Bureau is not attempting to
11 prove Wen's liability for any of the conduct alleged in the First Amended
12 Complaint. Rather, Wen's statements are being offered for the limited purpose
13 of establishing the value of his [Redacted] as of a certain date for evaluating his
14 compliance with this Court's orders. Courts have been clear that the use of
15 settlement communications outside of the narrow confines defined in Rule 408
16 is permissible. *See Rhoades v. Avon Prod., Inc.*, 504 F.3d 1151, 1161-62 (9th
17 Cir. 2007) (discussing cases and reasoning that Rule 408 permits the use of
18 statements made in settlement negotiations for purposes other than establishing
19 liability on the claims in the action itself); *United States v. Technic Servs., Inc.*,
20 314 F.3d 1031, 1045 (9th Cir. 2002) (holding permissible purposes listed in
21 Rule 408 were not exhaustive and settlement communication could be used to
22 show obstruction), *overruled on other grounds by United States v. Contreras*,
23 593 F.3d 1135 (9th Cir. 2010).

24 But even if the Court believes that Rule 408 might apply to a contempt
25 proceeding unrelated to the underlying claims, Wen has failed to show that any
26 of the documents at issue here would be covered. As discussed above, Wen was
27 required by the TRO and PI Order to provide a complete and truthful financial
28 disclosure. As the Bureau continued to probe Wen's finances, it became clear

1 that Wen had failed to disclose Redacted assets. While the Bureau
2 engaged in some settlement discussions with Wen prior to September 2020, that
3 does not transform every communication during that timeframe, much less
4 many months later, into "a statement made during compromise negotiations."
5 FRE 408(a)(2). And defense counsel's effort to bring correspondence related to
6 Wen's Redacted within the ambit of Rule 408 by indiscriminately
7 attaching a Rule 408 legend to various communications does not transform it
8 into such communications.
9     Further, when looking at the documents specifically at issue, it is clear
10 that Rule 408 does not apply. First, the November 7, 2020 financial disclosure
11 form was not marked as a settlement communication and is a response to a
12 court-ordered financial disclosure form.[21]
13     Second, Wen's December 4, 2020 declaration is also not a settlement
14 communication, and his representation that it was "provided to the CFPB
15 during the course of privileged and confidential settlement communications[,]"
16 is not accurate.[22] In his email transmitting Wen's declaration, counsel noted that
17 it was submitted in response to communications from November 19, 2020 until
18 that date. That correspondence clearly shows that the declaration was submitted
19 in response to the Bureau's inquiries regarding his concealment and dissipation
20 of assets, not as part of any settlement communications, which by that point had
21 been derailed by Wen's concealment of assets.[23]

---

[21] Although the transmitting November 7, 2020 cover letter is not being offered for an impermissible purpose, the Bureau is not relying on the letter itself as evidence and does not object to that portion of the exhibit from being stricken.
[22] *See* ECF No. 265-1 at 17.
[23] Similarly, the December 5, 2019 letter was offered to show Wen's concealment of Redacted and context for the events leading to his disclosure of such Redacted nearly a year later. *See* ECF 256-1 at 4; Stewart Decl. at ¶4. The Bureau further relies on that letter in footnote 38 in response to

8

1    Finally, *none* of the Bureau's correspondence from November 19, 2020
2    through Wen's submission of his December 4, 2020 declaration mentioned
3    settlement: the entire course of communication focused on Wen's concealment
4    of  Redacted  and his failure to confirm past and prospective compliance
5    with the asset freeze.[24] And although Wen's December 4, 2020 declaration
6    randomly included a paragraph offering to turn over the Redacted as part of a
7    settlement, the Bureau is not relying on that particular paragraph as evidence,
8    nor does the inclusion of that paragraph render the remainder of the
9    declaration—which has nothing to do with settlement—an inadmissible
10   settlement communication under Rule 408.[25]

**C. Wen has Violated the Financial Accounting Provisions of the TRO and PI Order.**

It is undisputed that Wen failed to disclose to the Bureau significant Redacted for over a year, finally revealing that he Redacted with an estimated value of Redacted on November 1, 2019.[26] Wen's suggestion

---

Wen's arguments regarding his failure to provide the accounting required under Section VIII.D of the PI Order. Both uses are permissible under Rule 408. And the letter is not a settlement communication despite Wen's then-counsel marking it as such. The letter was sent in response to an email from the Bureau about Defendants' compliance with the TRO and the PI, containing no mention of settlement. ECF No. 257-5 (Ex. 2). Indeed, just a few days prior, Bureau staff had communicated to Wen's then-counsel, that while open to resolving the matter through settlement, the Bureau was focused on reviewing Defendants' financial disclosures at that point. *See* Stewart Decl. II ¶3, Ex. 16.

[24] *See* Stewart Decl. II ¶10; ECF No. 256-7 (Ex. 6-1); ECF No. 9 (Ex. 8-1), ECF No. 256-11 (Ex. 9).

[25] Each of the cases relied upon by Wen are factually distinguishable, as they involved courts excluding information from settlements related to the value of the liability for the underlying claims in the case. *See* ECF No. 265-1 at 22 (citing *Hudspeth v. C.I.R.*, 914 F.2d 1207 (9th Cir. 1990); *United States v. Costa Cnty. Water Dist.*, 678 F.2d 90 (9th Cir. 1982)).

[26] ECF No. 256-1 at 3-5.

9

1 that his shielding of these [Redacted] assets was "inadvertent" is not
2 credible, nor is it relevant to finding contempt.[27] *See Stone v. City and Cnty. of*
3 *San Francisco*, 968 F.2d 850, 856–57 (9th Cir.1992). Rather, as set forth in the
4 Bureau's motion, facing increased scrutiny from the Bureau regarding his
5 [Redacted] dealings and his transfers, Wen slowly revealed information
6 about his [Redacted]. Yet even Wen's December 18, 2020
7 financial disclosure is insufficient to bring him into compliance. As set forth in
8 the Bureau's motion, aside from acknowledging that he [Redacted],
9 Wen generally claims not to have responsive information about these assets.[28]
10 In his opposition, Wen nonetheless argues he has now "substantially" complied
11 and purged any contempt, providing information "to the best of his ability."[29]
12     Wen's vague responses are insufficient to comply with the TRO and PI
13 Order, and he has not met his burden of showing that he is not capable of
14 complying by providing the information requested. *See United States v.*
15 *Rylander*, 460 U.S. 752 (1983) (defendant in civil contempt proceeding may
16 assert present inability to comply with an order, but bears the burden of
17 production in making that defense). Wen now claims to [Redacted]
18 [Redacted]
19 [Redacted] are located [Redacted]; lists their acquisition
20 cost as [Redacted]; and [Redacted] as of November 1,
21 2019 (which, as set forth below, is not the operative date for purposes of

---

[27] Wen's suggestion that it was difficult to completely and candidly execute the financial disclosure forms due to the asset freeze (see ECF No. 265-1 at 2-3) is meritless here given that the [Redacted] assets were not frozen by a third party and Wen clearly had unencumbered access to them unbeknownst to the Bureau or its co-plaintiffs. His ability to access [Redacted] records from [Redacted] and [Redacted] further belie this assertion. *See* Stewart Decl. II ¶¶4-6, Ex. 17, 18.
[28] ECF No. 256-1 at 10-11.
[29] ECF No. 265-1 at 14-15.

1  complying with the TRO) but states           Redacted
2           respectively.[30]

3        Similarly, in response to Item 31 of the financial disclosure form, which
4  requests information about certain transfers, Wen claims that he Redacted
5        Redacted           using        Redacted
6  with an aggregate value           Redacted
7  Redacted Elsewhere, however, he has stated       Redacted
8        Redacted       but that Wen        Redacted

9           [31] The information provided in Wen's November 7, 2020 financial
10 statement indicates that Wen has not disclosed his Redacted to the best of his
11 ability, and raises the concern that he is obfuscating these assets to conceal their
12 true current value.

13       Wen has not presented any evidence showing that he is incapable of
14 describing the type of   Redacted   or identifying the location, acquisition
15 cost, and value as of October 25, 2019 as required by the TRO. Indeed, he has
16 acknowledged elsewhere              Redacted
17                     Redacted
18       Redacted       which undermine his generic statements about lack of
19 access to records.[32] Wen should therefore be ordered to provide this information
20 or to actually present evidence as to why he is presently incapable of doing so.
21 *See Rylander*, 460 U.S. at 752.

22       Wen also continues to violate the TRO by refusing to provide
23 information in his financial disclosure statement regarding his assets and

---

[30] ECF No. 256-15 (Ex. 14) at p. 153.
[31] *Id.* at 159.      Redacted
                Redacted
                Redacted
           Redacted
[32] *See* Stewart Decl. II ¶5, Ex. 18 at 192.

11

transfers as of October 25, 2019. Although Wen inexplicably argues that he was only required to provide information as of November 1, 2019,[33] the TRO clearly required him to provide the requested financial information, including related to his assets, "as of the date of service of the Order."[34] Wen's refusal to abide by the language of the TRO deprives the Bureau of key information about his finances within the first few days he was served with the TRO—a key window for potential dissipation. Thus, even Wen's most recent amended response to Item 23 does not comply with the Court's orders, raises serious concerns about his compliance with the asset freeze before November 1, 2019, and his non-compliance prejudices the Bureau by making it more difficult for the Bureau to identify any dissipation that occurred contemporaneous with Wen's receiving notice of the TRO.

  Further, Wen's argument that the Bureau's motion lacks the required specificity again fails.[35] The Bureau's motion plainly asserts that Wen's answers in response to item 23 and 31 of the financial disclosure form have repeatedly changed and even the most recent disclosure provides little concrete information.[36] And the Bureau's motion specifically requests that items 23 and 31 be supplemented with accurate and complete information.[37]

  Finally, Wen has not provided the accounting required by Section VIII.D. Other than claiming the requirement that he complete Section VIII.D was somehow "confusing," he has not shown that he cannot provide this

---

[33] ECF No. 265-1 at 10.
[34] PI Order at VIII.A; *see* ECF No. 256-1 at 7, n. 40.
[35] *See* ECF No. 265-1 at 9-10.
[36] *Id.*
[37] *Id.* at 12.

12

information, he stipulated to doing so, and his continued refusal violates this Court's orders.[38]

### III. The Requested Relief is Appropriate.

In addition to seeking an order to show cause, the Bureau has requested additional, related relief to ensure effective enforcement of the Court's Orders. This relief is well within the Court's authority to grant. Wen has not asserted that he is incapable of complying with any of the requested relief. And despite previously asserting his right against self-incrimination in response to questions about the location, type, and amount of his Redacted and his dissipation of such assets, as well as about transfers, Wen has not objected to any of the relief requested on Fifth Amendment grounds.[39]

First, the Bureau has asked the Court to order Wen to turn over all Redacted Redacted he has identified to the Bureau to date to the Receiver, along with information necessary to access those assets. The Bureau has further requested that the Receiver be empowered to treat these assets, as well as payments for the value of dissipated Redacted, as Receivership assets.[40] Federal courts have inherent equitable authority to issue ancillary relief, including the appointment of a receiver, in actions brought by the Bureau to enforce consumer financial

---

[38] Wen also faults the Bureau for not seeking to hold him in contempt earlier based on his failure to provide this accounting. Wen's prior counsel represented to the Bureau in his letter dated December 5, 2019 that Wen had identified "all accounts." ECF No. 256-4 (Ex. 3) at p. 45. It is now evident that representation was not true including based on Wen's failure to disclose Redacted Redacted. The fact that the Bureau relied on this representation does not preclude the Bureau from seeking the instant relief or somehow relieve Wen of his obligation to comply with the Court's orders.

[39] *Compare* ECF No. 256-10 (Ex. 8-3) at p. 110-13 *and* ECF 257-17 (Ex. 11) at p. 124-29. Although Wen states in a footnote that he "does not intend to waive any privilege," that is not tantamount to actually asserting one. *See* ECF No. 265-1 at 1, n. 1.

[40] ECF No. 256-1 at 11.

13

1   law.[41] Given the decentralized nature of Redacted and Wen's
2   demonstrated dissipation, requiring Wen to turn his Redacted over to the
3   Receiver during the pendency of this matter is necessary and appropriate to
4   enforce the asset freeze and prevent additional dissipation. *See SEC v.*
5   *Faulkner*, No. 3:16-CV-1735-D, 2017 WL 4238705, at *3 (N.D. Tex. Sept. 25,
6   2017) ("Receivers may also be appointed over individual—not only
7   corporate—defendants if their fraudulent conduct makes such an appointment
8   appropriate.").

9      None of this relief is beyond the power of the Court or reflects an
10  impermissible pre-judgment penalty. Wen was required by the TRO and PI
11  Orders to freeze all of his assets, regardless of their origin. The Bureau has
12  shown that Wen failed to do that, and Wen is simply incorrect to suggest that
13  the Court lacks the equitable power to address his violations.

14      The Bureau also seeks an order requiring Wen to provide a sworn
15  statement supplementing his responses to Items 23 and 31[42] in the individual
16  financial statement, including by identifying the type and specific location Redacted
17                    Redacted
18                    Redacted                                                This
19  information is necessary to ensure that the Bureau can identify and take steps to
20  preserve assets. The Bureau further requests that to the extent Wen does not
21  provide this information, he be ordered to explain in a sworn statement the steps
22  he took to acquire this information.

23      Finally, the Bureau has requested that the Court order Wen to provide an
24  accounting of all payments, transfers, or assignments of any assets worth
25  $5,000 or more from January 1, 2015, through the date of the Court's order.

---

[41] *Cf. SEC v. Wencke*, 622 F.2d 1363, 1369 (9th Cir. 1980).
[42] Wen claims he completely lost the value of Redacted, but has not provided any evidence other than his self-serving statement.

14

Wen is already required to provide this information through October 25, 2019 pursuant to the TRO. The expanded timeframe is necessary to determine whether Wen has violated the asset freeze in any other manner, which is appropriate given his refusal to provide documentation or information about his <span style="color:red">Redacted</span>.

### IV. Conclusion

For the reasons set forth above, the Bureau respectfully requests that the Court grant the requested relief and issue an order to show cause as to why Wen should not be held in contempt.

Dated: February 8, 2021

/s/ Sarah Preis
Sarah Preis (D.C. Bar No. 997387)
*Admitted pro hac vice*
Email: sarah.preis@cfpb.gov
Jesse Stewart (N.Y. Bar No. 5145495) *Admitted pro hac vice*
Email: jesse.stewart@cfpb.gov
*Attorneys for Plaintiff Bureau of Consumer Financial Protection*