1                     UNITED STATES DISTRICT COURT

2          CENTRAL DISTRICT OF CALIFORNIA - WESTERN DIVISION

3          HONORABLE MICHAEL W. FITZGERALD, U.S. DISTRICT JUDGE

4

5

6   BUREAU OF CONSUMER FINANCIAL      )
    PROTECTION, et al.,               )
                                      )
7             Plaintiffs,             )
                                      )
8                  vs.                )   8:19-CV-1998-MWF
                                      )
9   CONSUMER ADVOCACY CENTER, INC.,   )
    et al.,                           )
10                                    )
              Defendants.
11  _____

12

13                 REPORTER'S TRANSCRIPT OF PROCEEDINGS

14

15                      Los Angeles, California

16                 Wednesday, February 24, 2021

17

18

19

20           _____

21

22

23                   AMY DIAZ, RPR, CRR, FCRR
                     Federal Official Reporter
                     350 West 1st Street, #4455
24                    Los Angeles, CA 90012

25

         *Please order court transcripts here:  www.amydiazfedreporter.com*

```
 1        APPEARANCES OF COUNSEL:

 2
          For the Plaintiffs:
 3
 4                      CONSUMER FINANCIAL PROTECTION BUREAU
                        By:  Jesse Stewart, Attorney at Law
 5                           Nathan Dimock, Attorney at Law
                             Sarah Preis, Attorney at Law
 6                      1700 G Street NW
                        Washington, DC 20552
 7
                        OFFICE OF THE MINNESOTA ATTORNEY GENERAL
 8                      By:  Evan Romanoff
                        445 Minnesota Street, Suite 1200
 9                      St. Paul, Minnesota 55101

10                      LOS ANGELES CITY ATTORNEY
                        By: Christina Tusan
11                           William Pletcher
                        200 North Main Street, 5th Floor
12                      Los Angeles, California 90012

13                      NORTH CAROLINA DEPARTMENT OF JUSTICE
                        By:  Elizabeth Weaver
14                      114 West Edenton Street
                        Raleigh, North Carolina 27602
15
          For the Receiver:
16
17                      MCNAMARA SMITH, LLC
                        By:  Andrew Greene, Attorney at Law
                        655 West Broadway, Suite 900
18                      San Diego, California, 92101

19
          For Defendants:
20
21                      EANET PC
                        By:  Matthew Eanet, Attorney at Law
                             Laine Mervis, Attorney at Law
22                      550 South Hope Street, Suite 750
                        Los Angeles, California 90071
23

24                      KING & SIEGEL, LLP
                        By:  Julian Burns King, Attorney at Law
25                      724 South Spring Street, Suite 201
                        Los Angeles, California 90014
```

```
 1              THE CLERK:  Calling item number one, case number
 2    SACV-19-1998-MWF, Bureau of Consumer Financial Protection, et
 3    al., vs. Consumer Advocacy Center, Inc., et al.
 4              Counsel, please state your appearance for the
 5    record, beginning with counsel for plaintiffs.
 6              MR. STEWART: Good morning.  Jesse Stewart, counsel
 7    for plaintiff, the Bureau Consumer of Financial Protection.
 8              MR. DIMOCK: Nathan Dimock on behalf of the Bureau of
 9    Consumer Financial Protection.
10              MS. PREIS: Sarah Preis on behalf of the Bureau of
11    Consumer Financial Protection.
12              MS. TUSAN: Christie Tusan on behalf of the People of
13    the State of California.
14              MS. WEAVER: Lynn Weaver, counsel for the State of
15    North Carolina.
16              MR. PLETCHER: William Pletcher on behalf of the
17    People of the State of California.
18              MR. ROMANOFF: Evan Romanoff on behalf of the State
19    of Minnesota.
20              MR. GREENE: Good morning, Your Honor.  This is
21    Andrew Greene on behalf of the Receiver, Thomas McNamara.
22              MR. MCNAMARA: Good morning, Your Honor.  It's Tom
23    McNamara, the Receiver.
24              MR. EANET: This is Matthew Eanet and Laine Mervis on
25    behalf of Defendant Kaine Wen.  Mr. Wen is also present
```

1    telephonically.

2         MS. BURNS KING: This is Julian Burns King on behalf

3    of Defendant Albert Kim.

4         THE CLERK:  Your Honor, that appears to be everyone.

5         THE COURT:  All right.  Thank you, Ms. Sanchez.

6         Good morning, counsel.  We are here on the Bureau's

7    request for an order to show cause as to why Mr. Wen should

8    not be held in contempt and certain related ancillary relief.

9         As I indicate in my tentative, I want to -- I'm

10   sympathetic to the Bureau's request, in part simply because

11   by issuing an order to show cause, the -- I'm not right now

12   holding anybody in contempt or doing anything, but as you

13   can -- as common sense dictates, and as the briefing of the

14   parties has indicated, they understand there is no reason to

15   go down this road unless there is a basis to do so.  And in

16   part, that is to show that there is sufficient evidence from

17   which a finding of contempt could conceivably take place.

18        Of course there are other issues, including Mr.

19   Wen's ability to comply with either the underlying order or

20   what it is that I would specifically order him to do now.

21        And as well, the -- just more broadly, you know,

22   what is really going on here?  You know, the -- it's

23   understood in the briefing that what is being requested here

24   is an application of the Court's power to use civil contempt

25   to coerce obedience with orders.

1          You know, the authority that I have to do that isn't

2     disputed, but I do want to make it clear, and clear before I

3     would issue the order to show cause, how exactly that theory

4     of civil contempt is applying here.

5          You know, there -- at times, and it's understandable

6     given the nature here that there is -- there is a -- while

7     this is civil contempt, there is a certain feeling of "Oh,

8     look how awful it is what Mr. Wen has done," and as if, you

9     know, he should be -- you know, he should be punished.

10          Well, if that is what is going on here, then let's

11     just be up front about it, and I'll make certain findings and

12     refer him to the U.S. Attorney's Office so he can be

13     prosecuted for criminal contempt.  And he might end up in

14     jail for a few months as a punishment.

15          I mean, but if that is not where we are going right

16     now or that is not what the Bureau is asking for, and I don't

17     think it is, then we have to be very clear not only that Mr.

18     Wen disobeyed the order, but what is it then that is going to

19     be done about that?

20          And if it's to make the Bureau whole, then before I

21     would issue any order in regard to the OSC, then I would

22     have -- it would have to be absolutely crystal clear what it

23     is that he is expected to do.  So if nothing else, he can

24     argue that he lacks the ability to do that.

25          So that is part -- those are thoughts that are

1    underlying the -- what I put in the tentative.

2          But having said that, I want to make it very clear

3    that I am not happy with what Mr. Wen has done.  And I

4    sympathize with his lawyers as -- if I was still a white

5    collar lawyer, and suddenly I had a client through whom there

6    had to be an amended disclosure, and a supplemental

7    disclosure, and the truth is being dragged out of the client

8    kicking and screaming, I would just be tearing my hair out.

9          But let me make it very clear to you, Mr. Wen, since

10   I believe that you are on the call, you have gotten in this

11   mindset of your adversary is the Bureau, and you are having

12   this little cat and mouse game about you are going to walk

13   right up to the line, and you are going to -- you are just

14   going to decide what it is that you have to do, and until you

15   get caught, you aren't going to do it.  That might have been

16   true before the order was issued.

17         The point now is that it is not the Bureau's order,

18   it is my order.  And if you continue down the path on which

19   you were going, I don't care if the Bureau asks for it or

20   not, because it's my order, and it is the dignity of the

21   Court and the power of the Court that must be vindicated.

22   And even if you convinced me that you have absolutely no

23   ability to do whatever it is I order you to do, as I said, I

24   can still refer you to the United States Attorney's Office

25   for prosecution for criminal contempt, and you can be sent to

1        jail for -- not, look, not a long period of time, but for a

2        few months or so, you know.  Something to let you know that

3        you have done a bad thing, and you are being punished for

4        that bad thing.  And I very much hope going forward that you

5        will keep that in mind.

6                Having said that, let me first hear from counsel for

7        Mr. Wen.

8                MR. EANET: Your Honor, thank you.  This is Matthew

9        Eanet, counsel for Mr. Wen.  And thank you for your detailed

10       tentative, which I'll try to use to instruct my argument

11       today before the Court.

12               As a preliminary matter, much of the briefing here

13       was filed under seal, given the nature of the documents and

14       the Court's prior order sealing them.  Is this hearing

15       currently under seal or will there be an opportunity for

16       sealing of the transcript, Your Honor?

17               THE COURT:  I will order that the transcript be

18       sealed.  At some point I just have to -- you know, given that

19       real decisions are being made here, the First Amendment

20       applies, and there are limits to what degree the transcript

21       can be kept under seal.

22               For the moment, I will order that it be kept under

23       seal; and moreover, I will direct that it -- I'll give the

24       parties a chance to be heard before it's -- before it's

25       unsealed if I determine that there is an issue under the

 1     First Amendment and the applicable Ninth Circuit law about

 2     keeping it under seal.

 3          MR. EANET: Thank you, Your Honor.  This is Matthew

 4     Eanet for the defendant, Mr. Wen.

 5          I wanted to address your comment earlier, which I

 6     think you also made in the tentative ruling, which is that I

 7     want to assure the Court that Mr. Wen takes very seriously

 8     the Court's order and the consequences of violation of it,

 9     and the significance of this hearing, which is why he's here

10     in person.

11          As the Court's aware, I became counsel for Mr. Wen

12     earlier -- in late 2020 after the Court granted a previous

13     motion to withdraw by his prior counsel who had been involved

14     in some of the previous iterations of this.

15          And I think that the most significant point here is

16     that the CFPB'S burden for the civil contempt for the

17     issuance of the OSC re civil contempt is clear and convincing

18     evidence.  And it's that burden, before the Court can issue

19     the OSC, it needs to be -- they need to have met that burden

20     before the Court can issue the OSC, not at that subsequent

21     hearing itself, and they simply haven't done so.

22          And where I want to focus the Court's attention is

23     to Mr. Wen's declaration of December 4th, which was the

24     Exhibit 10 to the Stewart Declaration.  That was part of a

25     settlement communication.  It was part of -- it was sent by

1    me.  I intended it to be a settlement communication.  I

2    stated it as much in my declaration.  The reason that there

3    is an approximation of the value of the cryptocurrency, or

4    this being approximately 930,000, is because of the

5    settlement communications that were going on, and so that the

6    CFPB would know how much this cryptocurrency was going to be.

7         Mr. Wen has offered to turn over all of his assets

8    in settlement of this, including the cryptocurrency.  That

9    offer has never been rejected.  We have been continuing to

10   try to have settlement discussions with the CFPB.  That was

11   the reason that this was done.

12        If you look at that declaration from Mr. Wen,

13   Exhibit 10, paragraph 3, immediately before stating what the

14   approximate value of the cryptocurrency is, states that, "I

15   previously offered to turn over the Ethereum cryptocurrency

16   to Plaintiff and the Receiver as part of a settlement, as

17   outlined in the letter attached to Exhibit A.  That offer

18   stands."  And then it attached the Exhibit A.

19        The significance of this is that the only evidence

20   that the CFPB has presented is Mr. Wen's statement that, "By

21   my calculation this value is currently approximately

22   $930,000."

23        Once that is deemed inadmissible as a settlement

24   communication, they have not submitted any evidence that Mr.

25   Wen has dissipated any assets.  They have no basis for that.

1    And because of the threats of criminal contempt and threats

2    of criminal charges for failing to -- for making false

3    statements, Mr. Wen isn't able to submit a declaration

4    regarding these matters.

5         But the issue on 408 -- and I'm not sure if it was

6    cited in our briefing or not -- is that where there is -- an

7    issue is doubtful on exclusion of evidence under Rule 408,

8    courts are to decide that in favor of excluding evidence.

9    That is the *Bradbury vs. Petroleum Co.* case out of the Tenth

10   Circuit, is the leading decision on that, which was cited

11   with approval in this Court in *Bravo vs. City of Santa Maria*.

12        What I'm -- what I'm troubled by is the fact that

13   this issue of whether these communications were settlement

14   communications or not was briefed to the Court as part of the

15   application on the motion to seal.  It was raised to

16   defendants -- excuse me -- to Plaintiff CFPB prior to them

17   bringing the motion that we contended that all of these were

18   settlement communications.  They elected not to address it in

19   their moving papers; instead, only addressing it in reply,

20   and that is improper.

21        I would ask that at a minimum we be given an

22   opportunity to file a sur-reply to address those issues

23   further, and address their briefing on the issue.  And also,

24   to put into evidence more of the settlement communications to

25   show the Court that, in fact, this was part of the course of

1    settlement negotiations.

2           Now, I agree with the Court that the amendments to

3    the financial disclosures themselves are not settlement

4    communications, but what is key here is this declaration from

5    Mr. Wen, which was a settlement communication.

6           To the extent that there is any question about that,

7    the Court should be erring on the side of caution and

8    excluding that evidence.  They have been able to issue

9    subpoenas to numerous third-parties, including cryptocurrency

10   exchanges, yet there has been no forensic accounting

11   performed to actually show that Mr. Wen dissipated any assets

12   or when he dissipated those assets, which is really

13   necessary.

14          Even if the Court were to order -- and the Court

15   points this out -- that type of information is necessary, if

16   the Court were to, say, make an order for Mr. Wen to pay some

17   amount of money for purportedly dissipated assets, because of

18   the fluctuating values, we would need to know the date they

19   are contending there was dissipation.  They haven't provided

20   any of those dates.

21          Everything that I have done since coming into this

22   case on behalf of Mr. Wen, Your Honor, has been towards

23   settlement.  My very first communication with the CFPB on the

24   date that I appeared as counsel for Mr. Wen was to discuss

25   settlement, to set up a call for settlement.

1           This additional information they were requesting,

2    I'm happy to provide more of it in subsequent briefing so

3    long as -- I just don't want to be -- there to be an argument

4    that by providing it we are somehow waiving the privilege.

5           THE COURT:  No.  Look, the point you are making is a

6    very good one, and that is at some point I'll have to just

7    definitively rule on this one way or the other.  I understand

8    your point about the sur-reply, but the point is I'm not

9    going to put you or Mr. Wen in this Catch-22.

10          Either it's -- I'm saying that these -- I'm treating

11   these as not being settlement things, but for the moment,

12   we'll keep them under seal, and for no other reason than if

13   the Ninth Circuit disagrees with that.

14          And then -- but then if you wanted to go ahead and

15   supplement it, given that I've made that ruling, which you

16   have the right to view as erroneous, then you would do so,

17   and I certainly at that point wouldn't say that you had

18   waived anything, and I'll make that clear.

19          MR. EANET: I guess the issue for us is it sounds

20   like Your Honor is suggesting we should file some type of a

21   motion for reconsideration based on the decision.  I would

22   suggest that --

23          THE COURT:  Well, right now -- first of all, you

24   have some thoughts to help you at this hearing I have chosen

25   to put into writing.  I don't see where I -- I haven't made

1    any decisions about anything yet.

2            MR. EANET: Thank you, Your Honor.  This is Matthew

3    Eanet.

4            I think that my point was that they filed a reply

5    brief containing new evidence and new argument that was not

6    contained in their motion, despite the fact that it was

7    reasonably foreseeable that these arguments were going to be

8    raised.

9            THE COURT:  I understand that, counsel.  And like I

10   said, when I am thinking through what I'm going to do, and

11   I'm thinking through how significant this disputed evidence

12   is to that, I will seriously consider your proposal that you

13   should have the right to submit a sur-reply.

14           If my ultimate decision is that these are not

15   privileged documents, then I will allow you to supplement the

16   record, but make it clear that you are, in a sense, doing it

17   in light of the ruling that you view as erroneous.  And it

18   would not be my intention that you would have waived the

19   privilege by submitting those from your point of view by

20   submitting those further documents.

21           In other words, you are making two points, and I

22   understand them.  So let's move on to the next point.

23           MR. EANET: Thank you, Your Honor. Matthew Eanet for

24   Defendant Mr. Wen.

25           The other point that I want to make with respect to

1    these Rule 408 issues is that the Court's tentative ruling

2    would seem to have the exception swallow the rule for 408.

3          The cases that were cited by plaintiff supporting

4    the admission of these documents were two cases:  *Rhodes vs.*

5    *Avon Products* and *United States vs. TechnicServs.* Those were

6    very different cases.

7          In the *Rhodes* case, it said that plaintiff could

8    rely on a threat of litigation made by an adverse party

9    during settlement negotiations to demonstrate the existence

10   of a case or controversy.

11         And in *TechnicServs,* it was that it was admissible

12   because it was to prove an effort to obstruct a criminal

13   investigation or prosecution.  I'm not aware of a single case

14   that has said that Rule 408 is not applicable in a civil

15   contempt proceeding.

16         And in fact, the Rules of Evidence specifically

17   state, as Your Honor pointed out, that these rules do apply

18   in a contempt proceeding.  A contempt proceeding is never

19   going to be about the underlying merits of the claim.  It's

20   always going to be about some other type of conduct that

21   violated some related court order.

22         So under, I think, plaintiff's reasoning, Rule 408

23   would never be of any import in a contempt proceeding.  I

24   don't think that is what the Federal Rules of Evidence

25   contemplate.  I don't think that can be the case that

1    somebody -- and I understand that this is presupposing that

2    Your Honor decides this is a settlement communication, but

3    this is the second point there, which is that as a -- as

4    such, it's not admissible in this contempt proceeding to

5    prove his liability for contempt, which is what they are --

6    which is what they are doing.  There are other ways they

7    could presumably gather and provide this information.  They

8    haven't done so. So that is on that issue.

9            And then on the issue of the remedies that have been

10   requested and how Mr. Wen can purge himself of the purported

11   contempt, if the Court were to find contempt, all of Mr.

12   Wen's assets are frozen.  Whether they derived from the

13   student loan business or in the case of these cryptocurrency

14   assets did not derive from the student loan business.

15           He -- as the Court may recall in Venable's motion to

16   withdraw, one of the reasons for the motion to withdraw was

17   he was unable to pay an $11,000 legal bill.

18           There is no -- if there were -- there is no way that

19   Mr. Wen could comply with any potential finding if it were

20   dealing with purported dissipation of funds.  And I think in

21   that respect, the CFPB is seeking a remedy that is punitive

22   in nature.

23           The record which we submitted is replete with our

24   efforts to provide them with more information that they

25   requested.  And it was really only at the time that they

1    threatened him with bringing a charge for contempt that he

2    stopped providing the -- any additional information.  You

3    have seen references to letters and documentations providing

4    them with information beyond what was required in the

5    financial disclosure forms.

6         So, you know, that is the concern here, is that Mr.

7    Wen is stuck in a Catch-22 at this point given the CFPB's

8    decision to threaten and pursue contempt proceedings here.

9         The --

10        THE COURT: Well, certainly Mr. Wen, not only this

11   proceeding but any proceeding by definition, has the right to

12   rely on his Fifth Amendment rights.  How in civil cases

13   generally, though, that is not cost free.  In criminal cases,

14   of course it is.

15        So I, you know, the civil jury is an invocation, and

16   is invited but not required to draw inferences, a criminal

17   jury does not.  But where this falls on that is something

18   that I would certainly let the parties be heard on before I

19   would draw any implications from or inferences from its

20   invocation.

21        That being said, whether it's because he is not

22   providing information that might otherwise be helpful to him,

23   or because this does then fall on the side of the line where

24   inferences can be drawn, he absolutely has a right to invoke,

25   but it might not be cost free, either because he's not

1    providing information that might very well help him, or as I

2    said, this might be a case that I can draw inferences from

3    that.

4         Go ahead, counsel.

5         MR. EANET: I wanted to address the Court's comment

6    of it being a -- that, um, defendant appears to view the

7    Court's order as a cat and mouse game.  I want to assure the

8    Court that that is certainly not Mr. Wen's intent, nor mine

9    after I became counsel for Mr. Wen.  And he's undertaken

10   extensive, and I think I said in my declaration, hundreds of

11   hours of efforts to try to provide additional information

12   towards both fully completing the financial disclosure

13   statements, as they are called for, as well as towards trying

14   to provide them the other information that they have

15   requested as part of a settlement of this case, which he

16   wants to do by -- and has made offers that have not been

17   responded to.

18        The issue of -- the -- and I think that the Court

19   recognizes that he's now provided all of the required

20   disclosures.  If you look at what the disclosures themselves

21   required, which notably the preliminary injunction refers to

22   an Exhibit A, which is the CFPB's financial disclosure form,

23   which is apparently their standard form for this type of

24   litigation.  At least in the copy that I downloaded, there

25   was no Exhibit A as part of the order, the preliminary

1    injunction order.  My presumption, I guess, rightly or

2    wrongly, is that is the same one as was with the TRO.

3         And the one with the TRO states for him to just

4    under -- states for him to disclose the location.  And he's

5    disclosed those are located online.  If the CFPB required

6    more specific information about that, certainly they could

7    have met and conferred with us about that as they had done

8    previously over the course of the last year.

9         Instead, they threatened to have Mr. Wen held in

10   contempt, raising the Fifth Amendment issues that I just

11   talked about, or they could have amended -- they could have

12   actually submitted forms that required him to provide it with

13   the level of detail -- if they wanted more detail, they could

14   have done that.

15        I think the Court's reference to authority about the

16   categorically detailed disclosures in the tentative ruling,

17   it is distinguishable here.  That has to do with the language

18   of the Court's order, not the language of the -- the CFPB's

19   Exhibit A, which is their financial disclosure form.

20        He has provided extensive information on that.  I

21   think that those are in the record.  They are 30-something

22   pages long, as I recall, and has provided more than that in

23   connection with the various settlement communications.  And,

24   you know, we -- you know, if the Court gives us the

25   opportunity, we will submit that so the Court can see exactly

1    how much information Mr. Wen has been attempting to provide

2    here.

3              I think that the contempt remedy is obviously very

4    serious and very drastic, not something that Mr. Wen takes

5    lightly, or counsel.  And frankly, the CFPB has both the

6    evidentiary burden of clear and convincing evidence, based on

7    admissible evidence, as well as providing -- as well as

8    remedies that are authorized and available, which they

9    haven't shown.

10             So I think that is the -- those are some of the

11   major issues.  And I would like to reserve some time to

12   address further argument that comes up, or address any of the

13   Court's other points or questions.

14             THE COURT:  You certainly may.

15             Let me hear from the Bureau.  First of all, address

16   the Rule 408 issue.  Let's say I accepted Mr. Wen's

17   arguments.  What is it at that point that you would be in a

18   position to prove?

19             And moving to a broader point, I want to reiterate

20   what I have previously put in the tentative, and then

21   mentioned earlier since the tentative won't be on the docket,

22   and that is what exactly is it that the Bureau wants?

23             You know, in -- the theory behind the civil contempt

24   is you are ordered to do something.  You are ordered to

25   testify in front of the grand jury.  You are ordered to

 1    provide a -- you know, there is a locked safe, and you are

 2    ordered to give the combination to it, and you just don't do

 3    it.  Well, you just get sent to jail until you decide to do

 4    it, and based on the reasonable conclusion that you have the

 5    key to the jail door in your pocket and you can use it

 6    whenever you want.

 7           You know, here, okay, say -- okay.  There was a

 8    transfer which was in violation.  Well, then what?  You know,

 9    if it's not meant to just be punishment, and if in fact all

10    of Mr. Wen's assets are being frozen, are you asking me to

11    say that there is a forfeiture?  I mean, you know, what --

12    and on what -- what would be the basis for the exact amount

13    on this?

14           And, you know, one of the problems here, of course,

15    is the volatility in the price of cryptocurrency, and

16    specifically in Ethereum.  I had a case in which there was

17    arguably a conversion on Bitcoin.  And the -- first of all,

18    there was on summary judgment, had it been determined as a

19    matter of law that a conversion had taken place, and I agreed

20    that that was shown.  But in terms of actually then entering

21    as judgment on that adjudication, that was difficult because

22    in general I decided there that the fairest thing, which

23    might -- certainly was a bit of a guess on my part, was that

24    it was the date of the conversion.

25           And then since the date of the conversion couldn't

1    be pinned down with specificity, it was within a range of a

2    few days, but the difference in the price of the Bitcoin

3    within those days mattered.

4         So I essentially said to them, look, either we will

5    have a trial on the date of the conversion, so I can

6    determine the amount of damages and therefore enter judgment,

7    or just stipulate to what the damages would be, assuming the

8    underlying -- the finding of conversion and the date by which

9    damages should be calculated are correct, and then you can

10   appeal it to the Ninth Circuit.  And that way you are

11   focusing, instead of just focusing your energies on this

12   trial, you can focus them on what really matters.

13        And the parties chose to do so.  And right now the

14   Ninth Circuit has set the matter for oral argument.  A lot of

15   which is a long-winded way of saying that there just has to

16   be some coherent theory by which Mr. Wen is being ordered to

17   do something which is specific enough that, A, the violation,

18   having been proven by clear and convincing evidence, gives

19   rise to that.

20        And then second, that he has a chance in response to

21   any future order to show cause of saying that he just can't

22   do it, that he has no ability to do whatever it is that I'm

23   ordering him to do.

24        So with those thoughts, I'm beginning to repeat

25   myself now.  Let me hear from the Bureau.

1           MR. STEWART: Thank you, Your Honor.  Jesse Stewart,

2      counsel for the Bureau of Consumer Financial Protection.

3           I think your first question was with respect to Rule

4      408.

5           THE COURT:  Correct.  And you can be heard on the

6      merits of the Rule 408 issue if you like.

7           But what I'm particularly interested in hearing from

8      you is, as I said, if I decide that Rule 408 applies here,

9      what if anything are you left in a position to prove?

10          MR. STEWART: Well, given the broad assertions that

11     counsel for Mr. Wen makes with respect to Rule 408, I believe

12     the Bureau is left with little evidence, if the Court were to

13     agree with him on every single contention and exclude 408

14     evidence in every single instance, when Mr. Wen asserts that

15     408 is applicable in his view. Going -- I think Mr. Wen

16     should not prevail on the merits, though, of the 408 issue.

17          First, Mr. Wen cannot use 408 as a shield to avoid

18     the consequences of his own contempt, and suppress financial

19     statements and information he was required to provide under

20     the accounting provisions of this Court's orders, where Rule

21     408 is, by its own terms, of limited applicability, and it's

22     inapplicable to the exhibits at issue to proving by clear and

23     convincing evidence that Mr. Wen violated the Court's orders.

24          As I believe the Court notes in the tentative order,

25     the exhibits at issue are not offered for the impermissible

1    purpose under Rule 408.  They are not actually offered to

2    prove Mr. Wen's liability for his role in the illegal student

3    loan debt relief scheme.

4            Second, the exhibit to the Bureau's motion are not

5    settlement communications, as the Court notes in the

6    tentative ruling.  And I think the course of communications

7    demonstrates that.

8            Finally, with respect to the primary policy purposes

9    of Rule 408, those purposes are to encourage settlement and

10   exclude irrelevant or unreliable evidence, and neither

11   purpose is applicable here.

12           First, the purpose of encouraging settlement should

13   not be used as a shield to protect the contender from his or

14   her own contempt.

15           And second, the information at issue, for purposes

16   of the Bureau's motion, was required to be provided by court

17   order.  And so the liability questions that may arise with

18   respect to communications and other contexts would not be

19   implicated here.

20           And finally, the broad Rule 408 designation that Mr.

21   Wen makes are, I think in this situation, a classic example

22   of indiscriminate assertion of Rule 408, which if taken to an

23   extreme, would allow defendants to avoid the consequences of

24   the violations of court orders.

25           MR. EANET: Your Honor, this is Matthew Eanet.  I

```
1    don't want to interrupt, but I did want to address those

2    points.

3              THE COURT:  Well, I'll give you a chance to do that,

4    but let me hear from the Bureau.

5              Mr. Stewart?

6              MR. STEWART: Go ahead, Your Honor.

7              THE COURT:  Mr. Stewart, if you would then --

8    obviously, I understand what the issues are on the Rule 408.

9              The one point, if you could address what Mr. Stewart

10   raised, was that at some point here there is also the issues

11   that the Rule 408 isn't applying to his liability in the

12   underlying action, but then also on the contempt on which he

13   has certain rights, as well.  So if you have anything to say

14   on that.

15             If not, then move on to saying how, based if this

16   evidence comes in, it is clear and convincing.  And then

17   next, what is it then exactly that you would like me to --

18   what exactly is it that the Bureau feels it's entitled to, so

19   if an OSC issues, Mr. Wen will know exactly what it is that

20   he's being asked to do.

21             MR. STEWART: Yes, Your Honor.

22             With respect to the underlying merits and Rule 408,

23   if I understand your question, you know, Rule 408

24   specifically refers to a claim and then the claims.  And so I

25   think it makes clear the text of the rule makes clear that
```

1    settlement negotiations with respect to the underlying merit

2    of a claim cannot be then used for the impermissible purposes

3    set forth in the rule.

4           Here, what Mr. Wen has asserted is that there were

5    settlement discussions, the Bureau disputes that, obviously,

6    but he has asserted that there are settlement discussions and

7    that these exhibits go to those discussions.  But then he

8    seeks to have them excluded.  And even if you took his

9    interpretation of Rule 408, that they are offered to support

10   a claim for contempt, which I don't think is the case, and I

11   don't think that the purposes of Rule 408 support that, or

12   the facts of the present proceeding support that, but if you

13   took that as true, the claims the Bureau would then be

14   exhibiting these exhibits in support of is not the same as

15   the one that the parties were purportedly discussing in

16   settlement, which was resolution of the underlying merits.

17          And I would further note that with respect to the

18   December 4th declaration, that declaration was identified by

19   Mr. Wen in his response to the Bureau's motion with respect

20   to sealing certain exhibits to the instant motion.  Mr. Wen

21   at the time did not assert that it was subject to Rule 408,

22   except for the last page of that exhibit.

23          But the declaration the Bureau relies on to show

24   dissipation was not subject to a claim that it was a

25   settlement communication.  And the Court's order on the

1    sealing motion did not identify it as a settlement

2    communication.

3            And so Mr. Wen raised that issue with respect to 408

4    for the first time in his opposition to the Bureau's motion.

5            THE COURT:  All right.  Mr. Stewart, what --

6    assuming that the information comes in, then what is the

7    basis for the assertion that there is clear and convincing

8    evidence for the OSC?

9            MR. STEWART: The clear and convincing evidence

10   are -- is primarily Mr. Wen's own statement.  He made

11   statements about the value of his cryptocurrency at different

12   times -- at two different times specifically, on November 1,

13   2019, and December 4, 2020.  And publically available

14   information about the value of the cryptocurrency he asserts

15   that he has shows that he dissipated a significant amount of

16   cryptocurrency.

17           The Bureau provides a conservative estimate of what

18   that dissipation is.  But as you note in the tentative order,

19   because Mr. Wen has failed to provide information required by

20   the Court's order, and specific information in response to

21   the Bureau's discovery requests and informal inquiry, the

22   Bureau does not know the precise amount of dissipation to the

23   unit of Ethereum that he dissipated or to the precise dollar

24   figure, but had reliable and conservative estimates.

25           THE COURT:  And what is the -- as I note in the

1    tentative, what is the evidence to support the contention

2    that the most recent amended financial disclosures are still

3    incomplete?

4         MR. STEWART: The most recent amended financial

5    disclosures are complete -- incomplete in these four ways:

6         First, despite the clear language in the temporary

7    restraining order, Mr. Wen continues to fail to provide

8    information about his assets as of October 25, 2019 as

9    required by the TRO, and further required by the PI.

10        Instead, Mr. Wen inexplicably asserts he was

11   required to provide the information as of November 1, 2019,

12   or a week after he was served with the TRO, which is

13   inconsistent with the Court's orders.

14        And I would note that that gap of one week is

15   particularly problematic given that the time right after

16   defendant learns of an asset freeze is the period when asset

17   dissipation may be particularly likely.

18        Second, Mr. Wen has not provided information about

19   his transfers, as required by the TRO and PI order, where his

20   financial statement identifies transfers going back three

21   years.  But he was required -- but he had an independent

22   obligation under the orders to provide information about

23   transfers going back five years from the time of the TRO.

24   And that is Section 8(d) of the Temporary Restraining Order

25   and PI orders.

1          Third, Mr. Wen has provided certain information
2    about his cryptocurrency holdings at item 23 of the financial
3    statement, that he's provided on December 18, 2020, but that
4    information is vague -- is so vague in some instances as to
5    render it meaningless.
6          And specifically, he does not provide an adequate
7    description of the asset's location.  He states only that it
8    is online, which for an asset such as cryptocurrency is so
9    vague as to render the response meaningless.
10         He further fails to provide adequate information
11   about the currency's value, and he fails to meaningfully
12   describe the cryptocurrency that he holds, which is
13   particularly relevant to the questions that the Court
14   identifies about the precise amount of dissipation of assets
15   that may have occurred here.
16         So --
17         THE COURT:  Go ahead.
18         MR. STEWART: Oh, if I may just briefly?
19         Fourth, Mr. Wen has not provided information about
20   asset -- complete information about the asset transfers made,
21   specifically with respect to item 31 of the financial
22   statement.  He identifies investments in initial coin
23   offerings or IPOs, but again provides information so vague as
24   to render his response as meaningless, including stating that
25   he invested in various IPOs with an aggregate value not

1    readily ascertainable based on records.  And he has not

2    provided adequate information to show that he could not

3    provide that information to cure himself of contempt.

4            THE COURT:  What is your position on the theory of

5    Ethereum being part of a receivership?  Obviously, the orders

6    apply more broadly than the extent of the receivership, but

7    nonetheless, let's focus on the narrower question, which is

8    if the -- they putatively were derived from the student loan

9    business, what is the position of the Bureau in that regard?

10           MR. STEWART: So first with respect to the source of

11   the -- or Mr. Wen's position about the source of his

12   cryptocurrency, where it derived from, I'm not sure -- given

13   the broad freezing order, I'm not sure that the source is

14   relevant, if the Court were to order that -- or would matter

15   if the Court were to order that Mr. Wen had to turn his

16   cryptocurrency over to the Receiver.

17           And it would seem to be within the Court's power,

18   the broad authority that the Court has to enforce its own

19   order, to require that Mr. Wen turn the cryptocurrency over

20   to the Receiver to effectively ensure that further

21   cryptocurrency isn't dissipated to ensure that the asset

22   freeze is complied with.

23           Particularly here, where based on the information

24   the Bureau has, only Mr. Wen has access to information about

25   the precise amount, location and any dissipation of

1    cryptocurrency that has occurred.

2           And this is not a situation where the Bureau is able

3    to simply issue an asset freeze letter to a third-party to

4    ensure Mr. Wen's compliance with the order.

5           And, in fact, Mr. Wen has demonstrated that he has

6    not complied with the asset freeze.

7           And so turning the assets over to the Receiver would

8    do nothing more than ensure that the status quo, at least

9    with respect to the cryptocurrency assets that remain in Mr.

10   Wen's possession, is maintained, and that those

11   cryptocurrency assets are not further dissipated.

12          The Bureau isn't asking for the Receiver to

13   liquidate those assets.  The Receiver would presumably hold

14   those assets pending resolution of this proceeding, and then

15   pending resolution regarding the disposition of the assets.

16          THE COURT:  And then to get back to the main point,

17   if I were to issue an OSC, what exactly would I order Mr. Wen

18   to do in regard to the contempt?

19          So if you either wish to argue further that he was

20   not held in contempt or he wished to argue that he lacked the

21   ability to do whatever it is that I was going to order him to

22   do, what is it that I would order him to do in the Bureau's

23   view?

24          MR. STEWART:  So I understand your question, Your

25   Honor, to be primarily directed at the question of repaying

1    dissipated cryptocurrency assets, as opposed to the other

2    relief that the Bureau requests.

3            So I think the various forms of relief -- and please

4    correct me if you would like me to speak more broadly, or if

5    I'm misunderstanding that.

6            But I think with respect to the question of repaying

7    dissipated assets, the other relief the Bureau requests is

8    crucial for the Bureau to be able to understand precisely

9    what has been dissipated, when it was dissipated, the value

10   at dissipation, and also precisely understand the value, and

11   consider what the appropriate relief might be.

12           And it may be appropriate for the parties to have an

13   opportunity to further brief the question of precisely how

14   much should be repaid.  But I'm not sure that that question

15   necessarily needs -- that that question needs to be answered

16   before the Court can issue a show cause order with respect to

17   the other relief, with the understanding that to the extent

18   that Mr. Wen is held in contempt, or to the -- then

19   additional relief might be warranted, such as paying back a

20   dissipated cryptocurrency.

21           THE COURT:  Well, the other relief is, I think --

22   I'm not really looking on it as part of a contempt; rather,

23   you are saying in order to effectuate my orders, there is

24   certain information has to be done or certain actions have to

25   be taken.  It's, in a very technical sense, it's more as a

1    supplement to the TRO and the injunction, rather than

2    contempt.

3            I mean, he can't be held in -- there isn't -- it

4    doesn't make sense to have an OSC on saying you are held in

5    contempt for something that to which he hasn't yet been

6    ordered to do, or had the opportunity to comply or not.

7            So I guess on that, I guess I'll just hear from Mr.

8    Wen on whether there is any objection to the ancillary

9    relief.  But I'm just, like I said, I'm concerned here in

10   terms of treating this as civil contempt and issuing the OSC

11   if it's not clear to say exactly what it is that he's

12   expected to do.  Or if you want to say you have the right to

13   order him to provide more information, we need more

14   information.  And after that is done, we'll decide what has

15   been done about it.  I mean, that makes sense.

16           If you are essentially, you really are saying, "We

17   need it to scare him in order to get him to comply," I

18   presume that this proceeding has accomplished that.  One

19   would hope so.

20           But I, again, I'm troubled by this idea of issuing

21   an OSC if I'm ordering him to do something specific to purge

22   the contempts if it's not exactly clear what it is that he's

23   expected to do.

24           MR. STEWART: If I may briefly respond to that, Your

25   Honor?

1              THE COURT:  Yes.

2              MR. STEWART: The situation we are in with respect to

3    the precise amount that Mr. Wen would have to repay to cure

4    his contempt is one -- and that is all the Bureau is asking,

5    to be clear.  We are not asking for a punitive sanction.  We

6    are just asking that the assets that were frozen would be

7    returned in a way that would ensure that if the Bureau

8    prevails on a final judgment, that those assets would be

9    available to recover pursuant to that judgment.

10             And if the Bureau prevails and Mr. Wen does not

11   repay those assets, the dissipation, Mr. Wen's dissipation of

12   those assets will have prejudiced the Bureau and the other

13   plaintiffs.

14             And so the person who knows the precise amount that

15   was dissipated, when it was dissipated, where it went, is Mr.

16   Wen himself.  Mr. Wen would seem to have access to the

17   records that would provide this.  He certainly has not

18   demonstrated that he cannot provide that information.  And he

19   has not raised any Fifth Amendment concerns with respect to

20   the specific relief that the Bureau requests, relief which

21   would include information about assets he dissipated since

22   entry of the TRO.

23             And so even if the -- or if the Court cannot order

24   the precise amount that he must repay, I don't know that

25   it -- that the Court would necessarily be precluded from

1    ordering Mr. Wen to provide the information to ensure that

2    the parties can -- or provide the information that would

3    allow us to accurately identify the amount of dissipated

4    assets.  And he would subsequently be ordered to repay those

5    assets.

6         THE COURT:  Why not just take a debtor's exam and

7    order him to provide, and require him to present all of the

8    documents and have in that regard?  Or I mean, whether --

9    whatever the technical things are in the underlying case, a

10   subpoena duces tecum, or to question him.  Maybe he'll

11   invoke.  At some point if he keeps on invoking that that, at

12   a minimum I would then certainly be able to alert the U.S.

13   Attorney's Office to that, a crime might very well have been

14   committed.

15        So, you know, that is a decision that he has the

16   right to make after talking to his lawyer.  But in the

17   meantime, I guess I'm being very technical here, but you are

18   the one who is asking for contempt.  It's a very technical

19   area.

20        Why, if what you are saying is, "We need information

21   and we don't feel we are getting it," aren't there other less

22   drastic avenues that are available than issuing the OSC Re

23   contempt?  Why not at least order him to say, do something

24   very specific, sit for a deposition, provide this

25   information, tell -- provide any document that is dealing

1     with any transfer.  And if he refuses for any basis other

2     than an invocation, then he could be held in contempt very

3     easily.  And if he refuses on the basis of an invocation,

4     then he's going to have to suffer the consequences.

5          MR. STEWART: The Bureau certainly wouldn't oppose

6     additional relief of that kind.  And in fact, the Bureau has

7     been seeking to take Mr. Wen's asset deposition since it was

8     noticed on December 21, 2020 in order to ascertain additional

9     information about his cryptocurrency assets that are at issue

10    here.

11         Mr. Wen has refused to sit for that deposition.  And

12    the parties most recently have agreed to proceed with the

13    deposition next week.  So it may be that the Bureau has

14    additional information following that deposition.  Although

15    as you point out, it's not necessarily the case that Mr. Wen

16    will not invoke the Fifth Amendment or refuse to answer

17    Bureau questions.

18         So --

19         THE COURT:  Well, that is something -- you have to

20    make your record on that.  And of course he has the right to

21    invoke.  He can invoke on any procedure in which his answers

22    are being compelled.  So you will just have to deal with it.

23    As I said, there is consequences to that, and he'll have to

24    live with them.  But that is something that he has the right

25    to discuss with his lawyer and think about.

1              In the meantime, I'll expect the deposition to go

2      forward.  And you have the right to get -- demand documents

3      from him.  And those documents may or may not be subject to

4      the Fifth Amendment claim privilege.  You know, there is --

5      there might very well be an act of production privilege here

6      given that if he's the one being asked to hand over the

7      documents.  But that is something we can deal with after it

8      has taken place.

9              I have another hearing coming up.  I want to give

10     Mr. Eanet a chance to respond.

11             Are there any of the other parties on the

12     plaintiffs' side who want to be heard very briefly?  I don't

13     particularly see why you would, but I -- you are on the line,

14     so I do want to offer that.

15             MS. TUSAN: This is Christina Tusan representing the

16     People of the State of California.

17             Just very briefly.  I think the arguments have been

18     made, but I would just reiterate, I think the underlying

19     contempt is just a failure to comply with the original court

20     orders, obviously, and the failure to give the assets to the

21     Receiver, obviously to be held for the benefit of consumers.

22             So I think that is the OSC that we are really

23     looking at here.  And while there are other options in terms

24     of depos and other ways to continue to seek information, this

25     has been going on for a bit, where we feel concerned about

1    the failure to adequately turn things over and to provide the

2    disclosures.

3              THE COURT:  All right.  Thank you.

4              Mr. Eanet?

5              MR. EANET: Thank you, Your Honor.

6              MR. GREENE: Your Honor, I'm sorry to interrupt.

7    This is Andrew Greene, counsel for the Receiver.

8              My only brief comment was that if there was

9    ultimately some sort of an order here requiring turnover of

10   the cryptocurrency, the Receiver would request that the

11   parties and the Court consider providing the Receiver with

12   instructions on basically how this is all going to work,

13   whether the Receiver would continue to hold this as

14   cryptocurrency, or it would be liquidated prior to turnover,

15   so that we would be holding cash.  We would desire some sort

16   of instruction in that regard.

17             THE COURT:  Right.  And I want to hear from you.

18   Maybe there is a convention among receivers when something is

19   this volatile, it's obviously difficult.  It could be worth

20   10 times as much or 10 times as little later on.  So it's

21   just, pick an arbitrary date, obviously, it raises issues.

22             So I'll make sure the Receiver feels that he's

23   protected here.

24             Mr. Eanet, what do you have to say?

25             MR. EANET: Yes.  Thank you, Your Honor.

1          First of all, I think on -- on the issue of the

2     disclosure statements, the financial disclosure form that was

3     ordered to be done, and it has now been supplemented and

4     amended, and also supplemented by the production of all of

5     Mr. Wen's bank records going back not just for a period of

6     three years, but of five years, detailing down assets like

7     his home furnishings and every payment that he was able to

8     find, which is detailed in exhibit, I believe it's 14.

9          Mr. Wen signed that document, saying that it was

10    completed to the best of his ability based on his access, and

11    that the items are true and contain all of the requested

12    facts and information of which I have notice or knowledge,

13    etcetera.  And he signed it.

14         He's stated that he's completed the form to the best

15    of his ability.  I don't know how he could be held in

16    contempt on that evidence and on this record for that.

17         The second issue is the CFPB complains that Mr. Wen

18    is trying to use 408 as a shield to prevent the Court from

19    relying on disclosures that were required by court order.

20    That is not accurate.

21         I'm not arguing that the financial disclosure form

22    is a settlement communication.  What I'm arguing, and in

23    particular because it's the most significant, is that that

24    declaration from Mr. Wen was part of a settlement

25    communication that I made because this -- because it was, as

1    I understood it, a prerequisite to continuing to pursue

2    settlement, not because that declaration was somehow required

3    by the TRO or the preliminary injunction.  There is nothing

4    in the preliminary injunction that says Mr. Wen will submit a

5    declaration that he'll treat everything as subject to the

6    asset freeze, or will state what the value of his

7    cryptocurrency is as of a date a year and a half after the

8    preliminary injunction was entered.

9              It's not, as Mr. Stewart suggests, reliable.  It's

10   an approximate value.  It's an estimation.  It's part of the

11   settlement communication.  And there is a case we cite in our

12   brief that explains why that shouldn't be used, which was the

13   *Ramada Development vs. Rauch* case.  And as Mr. Stewart

14   acknowledges, once that December 10th communication, which

15   includes the declaration, goes away because it's a settlement

16   communication, they have no evidence.  They have no evidence,

17   despite the fact that they subpoenaed cryptocurrency

18   exchanges, have that information.  They present it to the

19   Court, but none of that supports their conclusion or

20   assumption, I think they call it a suggestion in their

21   papers, that he dissipated assets. A mere suggestion that

22   there was dissipation of assets isn't enough for issuing an

23   OSC.

24             What they are asking the Court to do -- and

25   Mr. Stewart also acknowledges they don't have any -- they

1    don't have any evidence suggesting that this cryptocurrency

2    was derived from the subject student loan business to counter

3    Mr. Wen's assertions that it was derived independently.

4         Essentially, then, what the Court would be ordering

5    would be a forfeiture or a turnover of assets to the

6    Receiver.  There is no authority for that.

7         And they did ask in their papers that the Receiver

8    be authorized to liquidate and spend those assets.

9         And cryptocurrency isn't like, as Your Honor is

10   aware, it's not like a bank account, setting aside even the

11   volatility issue, it's not like a bank account where this is

12   all stored on a, you know, central account, or something like

13   that.  It goes through these accounts when it's exchanged or

14   transferred, or, you know, cashed out.  But it's not like a

15   central account, it's not like saying, "Oh, well, you know,

16   this cryptocurrency is held at Wells Fargo, and here is my

17   account number there."

18        So the fact is, is that he answered the form

19   adequately.  They are entitled to take other limited,

20   expedited discovery under paragraph 38.

21        Now, looking at the preliminary injunction for a

22   second, paragraph 38 provided them with limited, expedited

23   discovery.  It was supposed to be until a Rule 16(b)

24   scheduling order was issued.  This was back in November 2019.

25   We still haven't had a Rule 16(b) scheduling order, to my

1    knowledge.

2              THE COURT:  Counsel, let's not get on this, because

3    I am ordering him, independent of anything else, to sit for

4    the deposition next week.

5              So let's move on.

6              MR. EANET: Yes, Your Honor.  And I understand that.

7              My point, though, was that if it's a point he

8    doesn't provide information, or asserts the remedy that --

9    asserts a Fifth Amendment privilege, they have a -- they have

10   a remedy in the limited, expedited discovery section of

11   exclusion of evidence.

12             And I think that this -- I think that this motion is

13   premature, frankly.

14             THE COURT:  All right.  Thank you, counsel.  I have

15   another hearing which is now -- which was supposed to start

16   at 11:00, so I really need to get to that.  There is even

17   more lawyers on that than there is on this one, so I don't

18   want to keep them waiting.  But I appreciate your arguments.

19   I appreciate your briefs.  The matter is taken under

20   submission.

21                       *****     *****     *****

22

23

24

25

1

2      I certify that the foregoing is a correct transcript from the

3      record of proceedings in the above-titled matter.

4

5

6

7      ---------------------------

8

9      Amy C. Diaz, RPR, CRR              March 2, 2021

10     S/  Amy Diaz

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25