UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

**Case No.**  SACV 19-1998-MWF (KSx)                        **Date:**  March 16, 2021
**Title:**  Bureau of Consumer Financial Protection et al. v. Consumer Advocacy Center Inc. et al.

**Present:**  The Honorable MICHAEL W. FITZGERALD, U.S. District Judge

Deputy Clerk:                          Court Reporter:
Rita Sanchez                           Not Reported

Attorneys Present for Plaintiffs:      Attorneys Present for Defendants:
None Present                           None Present

**Proceedings (In Chambers):**  ORDER GRANTING IN PART PLAINTIFF'S MOTION FOR ORDER TO SHOW CAUSE WHY DEFENDANT WEN SHOULD NOT BE HELD IN CONTEMPT AND FOR RELATED RELIEF [256]

Before the Court is Plaintiff Bureau of Consumer Financial Protection's (the "Bureau") Motion for Order to Show Cause Why Defendant Wen Should Not be Held in Contempt and for Related Relief (the "Motion"), filed on January 8, 2021. (Docket No. 251). Defendant Kaine Wen filed an opposition on February 1, 2021. (Docket No. 264). The Bureau filed a reply on February 8, 2021. (Docket No. 269).

The Court has read and considered the papers filed in connection with the Motion and held a telephonic hearing on February 24, 2021, pursuant to General Order 20-09 arising from the COVID-19 pandemic.

For the reasons that follow, the Motion is **GRANTED** *in part*. The Bureau's evidence suggests that Defendant Wen has dissipated Ethereum cryptocurrency in violation of the asset freeze and has repeatedly withheld information in violation of the Court's prior orders. However, rather than determining whether the evidence on which the Bureau relies is admissible to prove Wen's violations of court orders, the Court **ORDERS** Defendant Wen to provide the Bureau with the detailed cryptocurrency and asset transfer information, in a sworn statement, on or before **March 30, 2021**. Accordingly, the Motion is **GRANTED** with respect to the Bureau's request to order

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

**Case No.** SACV 19-1998-MWF (KSx)          **Date:** March 16, 2021
**Title:** Bureau of Consumer Financial Protection et al. v. Consumer Advocacy Center Inc. et al.

Wen to turn over more detailed asset information and **DENIED** *without prejudice* with respect to the Bureau's request for a contempt order to show cause.

Although the Court declines to issue the contempt OSC at present, the Bureau is free to renew its request if Defendant Wen fails to comply with the Disclosure Order on or before **March 30, 2021**. The Bureau is also free to renew its OSC request if Wen turns over information supporting the Bureau's theory of asset dissipation. The Court will have no hesitation holding Defendant Wen in contempt in either situation.

## I. BACKGROUND

Plaintiffs initiated this action on October 21, 2019, alleging that Defendants were perpetrating a nationwide illegal student loan debt relief scheme. (*See* Complaint (Docket No. 2)). To minimize the likelihood that Defendants would conceal, transfer, or dispose of assets, Plaintiffs sought a temporary restraining order ("TRO") freezing Defendants' assets, appointing a receiver over the corporate Defendants, requiring Defendants to submit to a financial accounting, and requesting an order to show cause why a preliminary injunction ("PI") should not issue. (Docket No. 3). Magistrate Judge James V. Selna issued the TRO on October 21, 2019. (Docket No. 24). On November 15, 2019, Judge Selna issued a PI extending the asset freeze, financial accounting, and receivership provisions of the TRO until entry of final judgment (the "PI Order"). (Docket No. 103).

Pursuant to the TRO and PI Order's asset freeze provisions, individual Defendants are restrained and enjoined from

> selling, liquidating, assigning, transferring, converting, loaning, hypothecating, disbursing, gifting, conveying, encumbering, pledging, concealing, dissipating, spending, withdrawing, or otherwise disposing of any asset that is:

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

**Case No.** SACV 19-1998-MWF (KSx)          **Date:** March 16, 2021
**Title:**    Bureau of Consumer Financial Protection et al. v. Consumer Advocacy Center Inc. et al.

1. owned or controlled, directly or indirectly, by any Defendant, including, but not limited to those for which a Defendant is a signatory on the account;
2. held, in part or in whole, for the benefit of any Defendant
3. in the actual or constructive possession of any Defendant; or
4. in the actual or constructive possession of, or owned or controlled by, or subject to access by, or belonging to, any corporation, partnership, trust or other entity directly or indirectly owned, managed or controlled by any Defendant[.]

(TRO, VI; PI Order, VI).

       The TRO also required each individual Defendant to complete (a) the "Individual Financial Statement," Attachment A to the TRO; (b) a sworn statement detailing all payments, transfers, or assignments of any asserts worth more than $5,000 or more since January 1, 2015; and (c) a detailed accounting, verified under oath, of all gross and net profits obtained from, derived from, or related in any way to the offer for sale or sale of any "Debt-Relief Product or Service" since January 1, 2015.  (TRO, sec. 8).  The PI Order requires each individual Defendant to provide this information to the extent that he or she had not already done so pursuant to the TRO.  (PI Order, sec. 8).

       Item 23 of the Individual Financial Statement, entitled "Other Assets," mandates that the defendant list the description, location, cost, acquisition cost, and value of "all other assets not identified above, held by you, your spouse, or your dependents, including but not limited to, patents and other intellectual property, and cryptocurrency and other virtual currencies."  (TRO, Attachment A at 20).

       Item 31 of the Individual Financial Statement, entitled "Transfer of Assets," mandates that the defendant list "each person to whom you have transferred, in the aggregate, more than $2,500 in funds or other assets during the previous three years by loan, gift, sale, or other transfer.  For each such person, state the total amount transferred during that period."  (*Id.* at 26).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

**Case No.** SACV 19-1998-MWF (KSx)            **Date:** March 16, 2021

**Title:** Bureau of Consumer Financial Protection et al. v. Consumer Advocacy Center Inc. et al.

---

Defendant Wen completed and executed the Individual Financial Statement on November 1, 2019. (Docket No. 256-3). Wen wrote "NONE" under Item 23, disclosing no cryptocurrency or virtual currency assets. (*Id.* at 20). Under Item 31, Wen disclosed that he transferred $3 million in funds derived from cryptocurrency trading, unrelated to the receivership entities, to his mother in 2018. (*Id.* at 40).

On November 7, 2020, Wen provided additional financial information to the Bureau (the "Amended Disclosure"). (Docket No. 256-6). Wen disclosed that from 2017 to 2018, his investments included "Various Initial Coin Offerings" — the cryptocurrency industry's equivalent to an initial public offering — in an amount "Not Readily Ascertainable Based on Available Records." (*Id.* at 4). Wen also amended Item 23 of his initial Individual Financial Statement, stating that his assets include Ethereum cryptocurrency, valued at approximately $640,000 as of November 1, 2019, which he acquired by converting Bitcoin. (*Id.* at 11).

On December 1, 2020, the Bureau issued expedited discovery requests to Wen seeking information about Wen's virtual currency and cryptocurrency, including that Wen identify (a) all virtual currency that Wen owned, controlled, or was held for his benefit from January 1, 2014, to November 19, 2020; (b) the location of any virtual currency wallet; and (c) the amount, date, origin, and persons involved in the transfers of all virtual currency. (Docket No. 256-10). On December 4, 2020, Wen objected to the Bureau's discovery requests and invoked his Fifth Amendment privilege against self-incrimination. (Docket No. 257-17).

Also on December 4, 2020, Wen executed a declaration stating that he "fully and unequivocally" committed to treating the Ethereum cryptocurrency currently in his "possession, custody, or control" as subject to the PI Order's asset freeze and would not "sell, pledge, transfer, or otherwise dispose or encumber" any of it until permitted to do so by court order (the "Wen Declaration"). (Docket No. 256-12 ¶ 1). Wen estimated that the value of his Ethereum cryptocurrency was $930,000. (*Id.* ¶ 4).

---

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

**Case No.** SACV 19-1998-MWF (KSx)             **Date: March 16, 2021**

**Title:**     Bureau of Consumer Financial Protection et al. v. Consumer Advocacy Center Inc. et al.

On December 18, 2020, after the Bureau had informed Wen's counsel that it planned to file the Motion, Wen submitted another amended financial statement (the "Second Amended Disclosure"). (Docket No. 256-15). Under Item 23, Wen stated that the value of the Ethereum cryptocurrency as of November 1, 2019, was "unknown," but "could be approximately $700,000." (*Id.* at 16). Wen also disclosed approximately $230,000 in Bitcoin, claiming that the Bitcoin did not belong to him but was borrowed in 2018 from an entity called "Sea." (*Id.* at 16, 17). Wen stated that he was "unable" to provide any additional information about these assets "due to the unstructured nature and volume of transactions during the relevant period, lack of available documentation, records, or information, and the volatility of cryptocurrency prices." (*Id.* at 16).

Under Item 31, Wen included several additional asset transfers between November 2016 and August 2019 that Wen did not disclose in his initial Individual Financial Statement, including hundreds of thousands of dollars in gifts to and payments on behalf of Wen's immediate family members. (*Id.* at 18-22).

Wen also executed another declaration, again stating that he was "fully and unequivocally" committed to treating the cryptocurrency identified in the amended financial statement as subject to the PI Order's asset freeze (the "Second Wen Declaration"). (Docket No. 256-16).

On March 1, 2021, after the hearing, Wen filed a supplement to Items 23 and 31 of his Individual Financial Statement, providing additional information related to his cryptocurrency assets (the "March 1, 2021 Supplement"). (Docket No. 275-1).

The Bureau asserts that Wen has dissipated over $1 million worth of Ethereum between November 1, 2019, and December 4, 2020. (Motion at 8). The Bureau arrived at this figure by cross referencing Wen's statements about the value of his Ethereum assets with publicly available information that tracks the historical daily value of Ethereum. (*Id.*) (citing Declaration of Andrew Nigrinis ("Nigrinis Decl.")

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

| | |
|---|---|
| **Case No.** SACV 19-1998-MWF (KSx) | **Date:** March 16, 2021 |
| **Title:** Bureau of Consumer Financial Protection et al. v. Consumer Advocacy Center Inc. et al. | |

¶¶ 8-14 (using Ethereum historical data, *available at* https://finance.yahoo.com/quote/ETH-USD/history?p=ETH-USD)).

## II. DISCUSSION

The Bureau requests that the Court issue an order to show cause ("OSC") why Wen should not be held in contempt for violating the TRO and PI Order by (1) dissipating over $1 million worth of Ethereum, (2) failing to disclose the description, location, acquisition cost, and value of his cryptocurrency assets (Item 23), and (3) failing to disclose all of his asset transfers (Item 31). (Motion at 9-11).

Federal courts have both inherent and statutory authority to punish contempt and to coerce compliance with their orders. *Int'l Union, UMWA v. Bagwell*, 512 U.S. 821, 831-32 (1994); 18 U.S.C. § 401(3) (authorizing a court to punish contempt of its authority for disobedience with or resistance to a lawful order). "A party may be held in civil contempt where it 'fail[ed] to take all reasonable steps within the party's power to comply [with a specific and definite court order].'" *FTC v. Productive Mktg., Inc.*, 136 F. Supp. 2d 1096, 1107 (C.D. Cal. 2001) (quoting *In re Dual-Deck Video Cassette Recorder Antitrust Litig.*, 10 F.3d 693, 695 (9th Cir. 1993)).

"The party moving for a civil contempt order must show by clear and convincing evidence that the alleged contemnor violated the court's order." *Id.* at 1112 (citations omitted). The "procedure for civil contempt is to set an order to show cause hearing and to provide the contemnor an opportunity to respond and/or comply with the order." *Mission Capital Works, Inc. v. SC Rests., Inc.*, No. CV 07-1807-JLR, 2008 WL 3850523, at *6 (W.D. Wash. Aug. 18, 2008) (citing *Int'l Union*, 512 U.S. at 831-34). "The contempt 'need not be willful,' and there is no good faith exception to the requirement of obedience to a court order." *In re Dual-Deck*, 10 F.3d at 695 (citation omitted). "But a person should not be held in contempt if his action appears to be based on a good faith and reasonable interpretation of the [court's order]." *Id.* (internal quotation marks and citation omitted).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

| | |
|---|---|
| Case No. SACV 19-1998-MWF (KSx) | Date: March 16, 2021 |
| Title: Bureau of Consumer Financial Protection et al. v. Consumer Advocacy Center Inc. et al. | |

A party's inability to comply with a judicial order also constitutes a defense to a charge of civil contempt. *United States v. Rylander*, 460 U.S. 752, 757 (1983). However, a party claiming this defense must document its inability to comply with the order "categorically and in detail." *Donovan v. Mazzola*, 716 F.2d 1226, 1240 (9th Cir. 1983) (holding that appellants failed to meet their burden to show that they were unable to comply with the court's bond order where appellants had the funds to post the bond) (citing *Rylander*, 656 F.2d 1313, 1318 (9th Cir. 1981)). Substantial compliance with a court order also constitutes a defense to civil contempt, and "is not vitiated by a few technical violations where every reasonable effort has been made to comply." *In re Dual-Deck*, 10 F.3d at 695 (internal quotations and citations omitted).

The parties dispute whether the Bureau impermissibly relies on confidential settlement communications to prove Wen's contempt, including: (1) a letter from Wen's prior counsel, dated December 5, 2019 (Docket No. 256-4); (2) a letter from Wen's current counsel, dated November 7, 2020, and the attached Amended Disclosure; (3) the Wen Declaration, dated December 4, 2020; and (4) the letter attached to the Wen Declaration from Wen's counsel offering to settle the action by paying "the Ethereum cryptocurrency with a current approximate value of $700,000," dated November 9, 2020 (Docket No. 256-12 at 3). (Opposition at 19-23). Wen argues that Federal Rule of Evidence 408 prevents the Bureau from relying on these documents to prove that Wen dissipated assets in violation of the TRO or PI Order or to impeach the veracity of his financial statements. (*Id.*).

Rather than decide whether the Bureau can rely on Wen's prior statements to prove that he dissipated assets in violation of the TRO and PI Order, the Court opts to order Defendant Wen to turn over the specific cryptocurrency records that will more concretely show whether Wen had, in fact, dissipated assets after October 26, 2019 (the "Disclosure Order" (*infra.* pp. 8-9 ¶¶ 1-5)). After Wen responds to the Disclosure Order, or intentionally fails to do so, the Court will be better positioned to determine whether holding Wen in civil or criminal contempt is appropriate.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

**Case No.** SACV 19-1998-MWF (KSx)           **Date:** March 16, 2021

Title:     Bureau of Consumer Financial Protection et al. v. Consumer Advocacy Center Inc. et al.

## III. CONCLUSION

For the reasons stated above, the Motion is **GRANTED** with respect to the Bureau's request to order Wen to turn over the aforementioned information and **DENIED** *without prejudice* with respect to the Bureau's request for a contempt OSC.

Accordingly, on or before **March 30, 2021**, Defendant Wen is **ORDERED** to provide the Bureau with a sworn statement identifying the following information (the "Disclosure Order"):

1. All virtual currency addresses that Wen owned, controlled, or were held for Wen's benefit, in whole or in part, from January 1, 2014, through the date of this Order, and for each, identify:

    a. The type and amount of currency associated with the address (*e.g.* Bitcoin, Ethereum);
    b. All associated public keys;
    c. The time period(s) when the address was used;
    d. All accounts associated with the address (*e.g.*, bank, credit card, or virtual currency accounts), including all account owners and account numbers;
    e. The value of the virtual currency held at the address as of October 26, 2019 (in the applicable virtual currency denominations);
    f. The *present* value of the virtual currency as of the date of this Order (in the applicable virtual currency denominations).

2. For each virtual currency address identified above, identify and describe any associated virtual currency wallet and the date(s) of use, including describing whether the wallet is located on an external device, mobile or software application, printed media, virtual currency exchange, or other media, and provide the following:

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

**Case No.** SACV 19-1998-MWF (KSx)           **Date:** March 16, 2021

**Title:**    Bureau of Consumer Financial Protection et al. v. Consumer Advocacy Center Inc. et al.

    a. for each external device identified, a detailed description of the device, including the make, model, serial number, and current or last known location;
    b. for each mobile or software application identified, the application name and most recent version used;
    c. for each printed media identified, a detailed description of the media and its current or last known location; and
    d. for each virtual currency exchange identified, the name of the exchange, all associated account numbers, and all other identifying information associated with the account, including identifying all account holders and all associated payment information (*e.g.*, linked bank accounts, credit cards, and the corresponding account holders and numbers).

3. For each virtual currency address identified above, identify:

    a. all persons or entities involved in transfers to or from the address (*e.g.*, transferors and transferees), including each transferor and transferee;
    b. the origin of the transfer, including identifying the persons or entities from whom the transfer originated;
    c. the amount of each transfer; and
    d. the date of each transfer.

4. List and describe all payments, transfers, or assignments of any assets worth $5,000 or more that Wen made from November 15, 2014, through November 19, 2020, including:

    a. the amount transferred or assigned;
    b. the name of each transferee or assignee;
    c. the date of the assignment or transfer; and
    d. the type and amount of any consideration paid.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

**Case No.**  SACV 19-1998-MWF (KSx)                                      **Date:**  March 16, 2021

**Title:**     Bureau of Consumer Financial Protection et al. v. Consumer Advocacy Center Inc. et al.

5. If Defendant Wen is unable to provide any of the aforementioned information, Wen is **ORDERED** to describe, in detail, the specific steps that he took to try to obtain the information and explain, in detail, why such steps were unsuccessful at obtaining the information.  Merely stating that Wen "lack[s] any records" will be insufficient to comply with this directive.  (*See* March 1, 2021 Supplement at n.1).

This Order applies notwithstanding Wen's filing of the March 1, 2021 Supplement.  If Wen believes that the Supplement addresses portions of the Disclosure Order, he may cross reference the Supplement in his response.  In other words, the Supplement does not relieve Wen of his duty to comply with the Disclosure Order on or before March 30, 2021.

Although the Court declines to issue the contempt OSC at present, the Bureau is free to renew its request if Defendant Wen fails to comply with the Disclosure Order on or before **March 30, 2021**.  The Bureau is also free to renew its OSC request if Wen turns over information supporting the Bureau's theory of asset dissipation.  The Court will have no hesitation holding Defendant Wen in contempt in either situation.

IT IS SO ORDERED.