# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

## SOUTHERN DIVISION

| | |
|---|---|
| Bureau of Consumer Financial Protection, et al., | CASE NO. 8:19-cv-01998 MWF (KS) |
| | **PROPOSED STIPULATED FINAL JUDGMENT AND ORDER** |
| Plaintiffs, | |
| v. | |
| Consumer Advocacy Center Inc., d/b/a Premier Student Loan Center, et al., | Court: Hon. Michael W. Fitzgerald Courtroom 5A |
| Defendants. | |

STIPULATED FINAL JUDGMENT AND ORDER AS TO CONSUMER ADVOCACY CENTER, INC.

---

1

**STIPULATED FINAL JUDGMENT AND ORDER**

Plaintiffs, the Bureau of Consumer Financial Protection ("Bureau"), the State of Minnesota, the State of North Carolina, and the People of the State of California (collectively, the "Plaintiffs"), commenced this civil action on October 21, 2019, and filed an amended complaint on February 24, 2020 ("Amended Complaint"), and a second amended complaint (Second Amended Complaint) on April 20, 2021, to obtain permanent injunctive relief, damages, rescission or reformation of contracts, refunds of moneys paid, restitution, disgorgement or compensation for unjust enrichment, civil money penalties, and other monetary and equitable relief from: (1) Defendants Consumer Advocacy Center Inc. d/b/a Premier Student Loan Center; True Count Staffing Inc. d/b/a SL Account Management; Prime Consulting LLC d/b/a Financial Preparation Services; TAS 2019 LLC d/b/a Trusted Account Services; Horizon Consultants LLC; First Priority LLC d/b/a Priority Account Management; Albert Kim; Kaine Wen in his individual capacity and as trustee of the Kaine Wen 2017 Trust; and Tuong Nguyen; and (2) Relief Defendants Infinite Management Corp., f/k/a Infinite Management Solutions Inc.; Hold the Door, Corp.; TN Accounting Inc.; Mice and Men LLC; Sarah Kim; 1st Generation Holdings, LLC; Anan Enterprise, Inc.; and Judy Dai in her individual capacity and as trustee of the Judy Dai 2017 Trust.

The Second Amended Complaint alleges violations of sections 1031(a) and 1036(a) of the Consumer Financial Protection Act of 2010 (CFPA), 12 U.S.C. §§ 5531(a), 5536(a); the Telemarketing and Consumer Fraud and Abuse Prevention Act, 15 U.S.C. § 6102(c)(2) (Telemarketing Act), based on Defendants' violations of the Telemarketing Sales Rule (TSR), 16 C.F.R. pt. 310; the Minnesota Prevention of Consumer Fraud Act (MNCFA), Minn. Stat. §§ 325F.68-.694; the Minnesota Uniform Deceptive Trade Practices Act (MNDTPA), Minn. Stat. §§

2

**STIPULATED FINAL JUDGMENT AND ORDER**

325D.43-.48; the North Carolina Debt Adjusting Act (NCDAA), N.C. Gen. Stat. § 14-423 *et seq.*; the North Carolina Telephonic Seller Registration Act (NCTSRA), N.C. Gen. Stat. § 66-260 *et seq.*; the North Carolina Unfair and Deceptive Practices Act (NCUDPA), N.C. Gen. Stat. § 75-1.1; and the California Business and Professions Code 17200 *et seq.* (the Unfair Competition Law or UCL) in connection with the above-named Defendants' marketing and sale of debt-relief services. The Second Amended Complaint also includes claims for avoidance of fraudulent transfers under the Federal Debt Collection Procedures Act and the California Uniform Voidable Transactions Act.

The Plaintiffs and the Trustee (as defined below) for CAC request that the Court enter this Stipulated Final Judgment and Order ("Order").

**THEREFORE, IT IS ORDERED:**

## FINDINGS

1. On January 16, 2019, before the commencement of the instant civil action, CAC filed a voluntary petition for relief under Chapter 11 of the United States Bankruptcy Code, 11 U.S.C. §§ 101 *et seq.* ("Bankruptcy Code") initiating a bankruptcy proceeding in the United States Bankruptcy Court for the Southern District of Florida, Fort Lauderdale Division ("Bankruptcy Court"), captioned *In re Consumer Advocacy Center Inc.,* Case No. 19-10655.

2. On July 31, 2019, the Bankruptcy Court directed the appointment of a trustee over CAC's estate. Sonya Salkin Slott was appointed as CAC's Chapter 11 trustee on August 5, 2019.

3. On August 12, 2019, the Chapter 11 trustee moved to convert the proceeding to a Chapter 7 case.

**STIPULATED FINAL JUDGMENT AND ORDER**

4.      On August 19. 2019, the Bankruptcy Court granted the Trustee's motion to convert the proceeding to a Chapter 7 case. Sonya Salkin Slott was appointed as CAC's Chapter 7 trustee ("Trustee") on August 20, 2019.

5.      The Trustee is not operating the business of CAC and is proceeding with an orderly liquidation under Chapter 7. Given that CAC is a Chapter 7 debtor, is no longer doing business, and there is an independent fiduciary in place, the Bureau has agreed not to seek its customary compliance and reporting requirements.

6.      On February 21, 2020, the Trustee produced to the Bureau all non-privileged documents in CAC's possession, custody, or control, to which the Trustee had access.

7.      The automatic stay of the Bankruptcy Code does not stay the affirmative relief sought in this civil action against CAC because the action falls within the police and regulatory power exception to the automatic stay set forth in 11 U.S.C. 362(a)(b)(4).

8.      On March 25, 2020, the Bureau timely filed an amended proof of claim in the Bankruptcy Proceeding seeking at least $35,105,017.93 in monetary relief for CAC's violations of the TSR and CFPA as alleged in the Second Amended Complaint ("Bureau Claim").

9.      On February 10, 2020, the State of North Carolina timely filed an amended proof of claim in the Bankruptcy Proceeding seeking at least $2,871,359.26 for CAC's violations of the NCDAA, the NCTSRA, and the NCUDPA, as alleged in the Second Amended Complaint ("North Carolina Claim").

**STIPULATED FINAL JUDGMENT AND ORDER**

10.     On February 28, 2020, the State of Minnesota timely filed an amended proof of claim in the Bankruptcy Proceeding seeking at least $32,923,344.02 in monetary relief for CAC's violations of the TSR, MNCFA, and MNDTPA as alleged in the Second Amended Complaint ("Minnesota Claim").

11.     On March 25, 2020, the People of the State of California timely filed a proof of claim seeking at least $10,545,496.40 for CAC's violations of the California Unfair Competition Law, as alleged in the Second Amended Complaint ("California Claim").

12.     On January 10, 2020, prior to the amendments of such claims, the Trustee filed objections to each of the Bureau Claim, the North Carolina Claim and the Minnesota Claim in the Bankruptcy Proceeding ("Trustee's Claim Objections").

13.     The Bankruptcy Court has authorized the Trustee to enter into this Order by order dated June 25, 2021, a copy of which is attached as Exhibit A to the Stipulation as to Entry of Final Judgment and Order. The Bankruptcy Court's order is now final and no longer subject to appeal.

14.     The Plaintiffs and the Trustee (the "Parties") agree to entry of this Order, without adjudication of any issue of fact or law, to settle and resolve all matters in dispute between them arising from the conduct of CAC alleged in the Second Amended Complaint as well as the Trustee's Claim Objections.

15.     The Trustee is an independent fiduciary for CAC and its bankruptcy estate, having been appointed by the Office of the United States Trustee and approved by the Bankruptcy Court. Accordingly, the Plaintiffs make no allegations against the Trustee, but only against CAC.

**STIPULATED FINAL JUDGMENT AND ORDER**

16.     For purposes of this Order, the Trustee admits the facts necessary to establish the Court's jurisdiction over CAC solely with respect to the subject matter of this action. On behalf of CAC, the Trustee waives service under Rule 4(d) of the Federal Rules of Civil Procedure and waives all rights to seek judicial review or otherwise challenge or contest the validity of this Order. On behalf of CAC, the Trustee also waives any claim that Consumer Advocacy Center Inc. may have under the Equal Access to Justice Act, 28 U.S.C. § 2414, concerning the prosecution of this action to the date of this Order. Each Party agrees to bear its own costs and expenses, including, without limitation, attorneys' fees.

17.     This Court has jurisdiction over the subject matter of this action.

18.     The Second Amended Complaint states claims upon which relief may be granted under the CFPA, 12 U.S.C. §§ 5531(a), 5536(a), 5564, 5581, the Telemarketing Act, 15 U.S.C. §§ 6102(c)(2), 6105(d), and the TSR, 16 C.F.R. pt. 310, the MNCFA, Minn. Stat. §§ 325F.68-.694, the MNDTPA, Minn. Stat. §§ 325D.43-.48, the NCDAA, N.C. Gen. Stat. § 14-423 *et seq.*, the NCTSRA, N.C. Gen. Stat. § 66-260 *et seq.*, the NCUDPA, N.C. Gen. Stat. § 75-1.1, and the UCL, California's Business and Professions Code 17200 *et seq*. The relief provided in this Order is appropriate and available pursuant to the CFPA, 12 U.S.C. §§ 5564, 5565, and the Telemarketing Act, 15 U.S.C. § 6102(c), 6105(d) and the TSR, 16 C.F.R. pt. 310, the MNCFA, Minn. Stat. §§ 325F.68-.694, the MNDTPA, Minn. Stat. §§ 325D.43-.48, the NCDAA, N.C. Gen. Stat. § 14-423 *et seq.*, the NCTSRA, N.C. Gen. Stat. § 66-260 *et seq.*, the NCUDPA, N.C. Gen. Stat. § 75-1.1, and the UCL, California's Business and Professions Code 17200 *et seq*.

19.     Consumer Advocacy Center Inc. is a "covered person" as defined in the CFPA, 12 U.S.C. § 5481(1), (6), (19), (25), and (26).

**STIPULATED FINAL JUDGMENT AND ORDER**

20.     During the Relevant Period, Consumer Advocacy Center Inc. offered or provided Consumer Financial Products or Services, including financial advisory services to assist consumers in settling debts, 12 U.S.C. § 5481(5), (15)(A)(viii).

21.     Consumer Advocacy Center Inc. induced the purchase of financial advisory services by use of one or more telephones and conducted more than one interstate telephone call. Consumer Advocacy Center Inc. is therefore a "seller" or "telemarketer" of a "debt relief service," who engaged in "telemarketing," as defined by the TSR. 16 C.F.R. § 310.2 (o), (dd), (ff), (gg).

22.     In the course of telemarketing Debt-Relief Services and offering or providing Consumer Financial Products or Services during the Relevant Period, Consumer Advocacy Center Inc. misrepresented material aspects of its services, including material aspects of the performance, efficacy, nature, or central characteristics of the services.

23.     During the Relevant Period, CAC received at least $35,105,017.93 in unlawful fees, including unlawful advance fees, from Affected Consumers directly or through True Count Staffing Inc.

24.     Consumer Advocacy Center Inc., True Count Staffing Inc., and Prime Consulting caused harm to consumers in the amount of the total fees consumers paid for their purported Debt-Relief Services, less any refunds.

25.     The Court finds that Consumer Advocacy Center Inc.'s acts and practices described above violate the TSR, 16 C.F.R. §§ 310.3(a)(2)(iii), (x), 310.3(b), 310.4(a)(5)(i); the CFPA, 12 U.S.C. §§ 5531(a), 5536(a); 15 U.S.C. § 6102(c)(2); the MNCFA, Minn. Stat. §§ 325F.68-.694, the MNDTPA, Minn. Stat. §§ 325D.43-.48, the NCDAA, N.C. Gen. Stat. § 14-423 *et seq.*, the NCTSRA, N.C.

Gen. Stat. § 66-260 *et seq.*, the NCUDPA, N.C. Gen. Stat. § 75-1.1, and the UCL, California's Business and Professions Code 17200 *et seq.*

26.     Consumer Advocacy Center Inc.'s acts and practices described in the Second Amended Complaint and above violate the TSR, 16 C.F.R. § 310.4(a)(5)(i)(A)-(B) and are abusive acts or practices in telemarketing.

27.     Consumer Advocacy Center Inc.'s acts and practices described in the Second Amended Complaint and above are false and misleading and constitute deceptive acts or practices in violation of the TSR, 16 C.F.R. § 310.3(a)(2)(iii), (x), and sections 1031(a) and 1036(a) of the Consumer Financial Protection Act of 2010 (CFPA), 12 U.S.C. §§ 5531(a), CFPA, 12 U.S.C. §§ 5531, 55536.

28.     Consumer Advocacy Center Inc.'s acts and practices described in the Second Amended Complaint and above are also false and misleading and constitute unlawful, unfair, or deceptive business acts or practices in violation of the North Carolina Debt Adjusting Act ("NCDAA"), N.C. Gen. Stat. § 14-423 *et seq.*, the North Carolina Telephonic Seller Registration Act ("NCTSRA"), N.C. Gen. Stat. § 66-260 *et seq.*, and the North Carolina Unfair and Deceptive Practices Act ("NCUDPA"), N.C. Gen. Stat. § 75-1.1, including but not limited to Consumer Advocacy Center Inc.'s predicate violations of the TSR, 16 C.F.R. § 310.3(a)(2)(iii), (x), and sections 1031(a) and 1036(a) of the Consumer Financial Protection Act of 2010 (CFPA), 12 U.S.C. §§ 5531(a), CFPA, 12 U.S.C. §§ 5531, 55536.

29.     Consumer Advocacy Center Inc.'s acts and practices described in the Second Amended Complaint and above are also false and misleading and constitute deceptive business acts or practices in violation of the MNCFA, Minn. Stat. §§ 325F.68-.694, and the MNDTPA, Minn. Stat. §§ 325D.43-.48, including

**STIPULATED FINAL JUDGMENT AND ORDER**

but not limited to Consumer Advocacy Center Inc.'s predicate violations of the TSR, 16 C.F.R. § 310.3(a)(2)(iii), (x).

30.    Consumer Advocacy Center Inc.'s acts and practices described in the Second Amended Complaint and above are also false and misleading and constitute unlawful, unfair, or fraudulent business acts or practices in violation of the California Unfair Competition Law ("UCL"), Cal Bus & Prof Code § 17200, including but not limited to Consumer Advocacy Center Inc.'s predicate violations of the TSR, 16 C.F.R. § 310.3(a)(2)(iii), (x), and sections 1031(a) and 1036(a) of the Consumer Financial Protection Act of 2010 (CFPA), 12 U.S.C. §§ 5531(a), CFPA, 12 U.S.C. §§ 5531, 55536.

31.    Entry of this Order is in the public interest.

## DEFINITIONS

The following definitions apply to this Order:

32.    "Advance Fee" means any fee or consideration requested or received by a Debt-Relief Service Provider from a consumer for any Debt-Relief Service, whether directly or indirectly, that occurs before:

    a.    the Debt-Relief Service Provider has renegotiated, settled, reduced, or otherwise altered the terms of a debt pursuant to a settlement agreement, debt management plan, or other valid contractual agreement executed by the Consumer; and

    b.    the Consumer has made at least one payment pursuant to that settlement agreement, debt management plan, or other valid contractual agreement between the Consumer and the creditor or debt collector.

**STIPULATED FINAL JUDGMENT AND ORDER**

33.     "Affected Consumers" includes any consumer who paid Consumer Advocacy Center Inc. or its officers, agents, servants, employees, or attorneys, for any Debt-Relief Service from November 2, 2015, to December 31, 2018.

34.     "Anan Adversary Proceeding" means the adversary action complaint filed on December 30, 2019, by the Trustee against Anan Enterprise, Inc., *Sonya S. Slott, Chapter 7 Trustee v. Anan Enterprise, Inc*., Adv. Case No. 19-01960, for recovery of certain avoidable transfers or fraudulent transferred funds.

35.     "Assets" means any legal or equitable interest in, right to, or claim to any real, personal, or intellectual property owned or controlled by, or held, in whole or in part for the benefit of, or subject to access by any Defendant in this action, wherever located, whether in the United States or abroad. This includes, but is not limited to, chattel, goods, instruments, equipment, fixtures, general intangibles, effects, leaseholds, contracts, mail or other deliverables, shares of stock, commodities, futures, inventory, checks, notes, accounts, credits, receivables (as those terms are defined in the Uniform Commercial Code), funds, cash, and trusts.

36.     "Assist[ing] Others" includes, but is not limited to:

    a.     consulting in any form whatsoever;

    b.     providing paralegal or administrative support services;

    c.     performing customer service functions, including but not limited to, receiving or responding to consumer complaints;

    d.     formulating or providing, or arranging for the formulation or provision of, any advertising or marketing material, including but not limited to, any telephone sales script, direct mail solicitation, or the

text of any Internet website, email, or other electronic communication or advertisement;

e.      formulating or providing, or arranging for the formulation or provision of, any marketing support material or service, including but not limited to, web or Internet Protocol addresses or domain name registration for any Internet websites, affiliate marketing services, or media placement services;

f.      providing names of, or assisting in the generation of, potential customers;

g.      performing marketing, billing, or payment services of any kind; and

h.      acting or serving as an owner, officer, director, manager, or principal of any entity.

37.      "Bankruptcy Proceeding" means *In re Consumer Advocacy Center Inc.*, Case No. 19-10655, currently pending in the United States Bankruptcy Court, Southern District of Florida, Fort Lauderdale Division.

38.      "Bureau" means the Bureau of Consumer Financial Protection.

39.      "Consumer Financial Product or Service" is synonymous in meaning and equal in scope to the definition of the term in the CFPA, 12 U.S.C. § 5481(5), and, subject to applicable restrictions contained in the CFPA, includes but is not limited to:

a.      providing financial advisory services to consumers on individual consumer financial matters or relating to proprietary financial products or services, including providing credit counseling to any consumer or providing services to assist a consumer with debt

11

**STIPULATED FINAL JUDGMENT AND ORDER**

management or debt settlement, modifying the terms of any extension of credit, or avoiding foreclosure; and

    b.    engaging in deposit-taking activities, transmitting or exchanging funds, or otherwise acting as a custodian of funds or any financial instrument for use by or on behalf of a consumer.

40.    "Debt-Relief Service" means any program or service represented, directly or by implication, to renegotiate, settle, or in any way alter the terms of payment or other terms of the debt between a consumer and one or more unsecured creditors or debt collectors, including but not limited to, a reduction in the balance, interest rate, or fees owed by a consumer to an unsecured creditor or debt collector.

41.    "Debt-Relief Service Provider" means any Person that offers or provides any Debt-Relief Service.

42.    "Defendants" means Corporate Defendants and Individual Defendants, individually, collectively, or in any combination, and each of them by whatever names each might be known;

    a.    "Corporate Defendants" means Consumer Advocacy Center Inc., True Count Staffing Inc., Prime Consulting LLC, TAS 2019 LLC, Horizon Consultants LLC, and First Priority LLC, collectively, or in any combination, and their successors and assigns, and each of them by any other names by which they might be known, including South Coast Financial Center, Direct Account Services, Financial Loan Advisors, Account Preparation Services, Administrative Financial, Tangible Savings Solutions, Coastal Shores Financial Group, First Choice Financial Centre (a/k/a First Choice Financial Center), Administrative Account Services, Primary Account

**STIPULATED FINAL JUDGMENT AND ORDER**

Solutions, Prime Document Services, Financial Accounting Center, Doc Management Solutions, First Priority LLC, ALW Loans Administrative Accounting Center, Best Choice Financial Center, First Document Services, Global Direct Accounting Solutions, Keystone Document Center, Pacific Palm Financial Group, Pacific Shores Advisory, Sequoia Account Management, Signature Loan Solutions, Yellowstone Account Services, ClearStudentLoanDebt, Clear Student Loan Debt, Trusted Account Services, Premier Student Loan Center, and Priority Account Management;

b.      "Individual Defendants" means Albert Kim, a/k/a Albert King; Kaine Wen, a/k/a Wenting Kaine Dai, Wen-Ting Dai, Wen Ting Dai, Kaine Dai, and Kaine Wen Dai; and Tuong Nguyen, a/k/a Tom Nelson, collectively, or in any combination, and each of them by any other names by which they might be known.

43.    "Effective Date" means the date on which this Order is entered by the Court.

44.    "Enforcement Director" means the Assistant Director of the Office of Enforcement for the Bureau of Consumer Financial Protection, or his or her delegate.

45.    "Estate" or "Consumer Advocacy Center Estate" means the bankruptcy estate created within the Bankruptcy Proceeding pursuant to 11 U.S.C. § 541.

46.     "Person" means an individual, partnership, company, corporation, association (incorporated or unincorporated), trust, estate, cooperative organization, or other entity.

**STIPULATED FINAL JUDGMENT AND ORDER**

47.     "Plaintiffs" means the Bureau of Consumer Financial Protection, the State of Minnesota, the State of North Carolina, and the People of the State of California, collectively, or in any combination.

48.     "Related Consumer Action" means a private action by or on behalf of one or more consumers or an enforcement action by another governmental agency brought against the Estate based on substantially the same facts as described in the Second Amended Complaint.

49.     "Relevant Period" means November 2, 2015, to October 23, 2019.

50.     "States" means the State of Minnesota, the State of North Carolina, and the People of the State of California.

51.     "Service Provider" means any person that provides a material service to a covered person, in connection with the offering or provision by such covered person of a consumer financial product or service, including a person that—(i) participates in designing, operating, or maintaining the consumer financial product or service; or (ii) processes transactions relating to the consumer financial product or service (other than unknowingly or incidentally transmitting or processing financial data in a manner that such data is undifferentiated from other types of data of the same form as the person transmits or processes). "Service provider" does not include a person solely by virtue of such person offering or providing to a covered person—(i) a support service of a type provided to businesses generally or a similar ministerial service; or (ii) time or space for an advertisement for a consumer financial product or service through print, newspaper, or electronic media.

**STIPULATED FINAL JUDGMENT AND ORDER**

52.     "Trustee" means Sonya Salkin Slott, solely in her capacity as the Trustee appointed over Defendant Consumer Advocacy Center Inc. by the United States Bankruptcy Court, Southern District of Florida, and any successor trustee.

## ORDER

## I

## Consumer Advocacy Center Inc. Not to Resume Operating

**It is ORDERED that**:

53.     Consumer Advocacy Center Inc. will not engage in the following, and the Trustee will not move the Bankruptcy Court pursuant to 11 U.S.C. § 721, or otherwise seek authorization to operate Consumer Advocacy Center Inc.'s business, including seeking authorization for Consumer Advocacy Center Inc., whether acting directly or through any other Person, to engage in the following:

       a.    participating in telemarketing or Assisting Others engaged in telemarketing any Consumer Financial Product or Service;

       b.    participating in or Assisting Others in advertising, marketing, promoting, offering for sale, selling, or providing any Debt-Relief Service;

       c.    receiving any remuneration or other consideration from, holding any ownership interest in, providing services to, or working in any capacity for any Person engaged in or assisting in advertising, marketing, promoting, offering for sale, selling, or providing any Debt-Relief Service. This prohibition does not apply to the extent it may relate to recovering avoidable transfers in the Bankruptcy Proceeding or obtaining turnover or possession of property of the Estate.

**STIPULATED FINAL JUDGMENT AND ORDER**

Nothing in this Order shall be read as an exception to this Paragraph.

## II

## Customer Information

**It is FURTHER ORDERED that**:

54. The Trustee, on behalf of and as a fiduciary for the Estate of Consumer Advocacy Center, may not:

    a. disclose, use, or benefit from customer information, including names, addresses, telephone numbers, email addresses, social security numbers, other identifying information, or any data that enables access to a customer's account (including a credit card, bank account, or other financial account), that was obtained before the Effective Date in connection with the offering or providing of Debt-Relief Services by Consumer Advocacy Center Inc., True Count Staffing Inc., and Prime Consulting LLC;

    b. attempt to collect, sell, assign, or otherwise transfer any right to collect payment from any consumer who purchased or agreed to purchase a Debt-Relief Service from any Defendant.

55. However, customer information may be disclosed if requested by a government agency or required by law, regulation, or court order, including without limitation as may be required by the Bankruptcy Court in the Bankruptcy Proceeding.

## III

## Monetary Judgment

**It is FURTHER ORDERED that**:

56. A judgment for monetary relief is entered in favor of the Plaintiffs and

**STIPULATED FINAL JUDGMENT AND ORDER**

against Consumer Advocacy Center Inc., in the total amount of $35,105,017.93, to be paid to the Bureau for the purpose of providing redress to Affected Consumers ("Monetary Judgment").

57.    The Monetary Judgment will be deemed to be an allowed general unsecured claim against the Estate in favor of the Bureau on behalf of all of the Plaintiffs, subject to 11 U.S.C. §§ 507(a) and 726 governing priorities of expenses and claims in the Bankruptcy Proceeding.

58.    Except as provided herein, the Monetary Judgment shall constitute the entirety of the Plaintiffs' allowed claims in the Bankruptcy Proceeding, including the Bureau Claim, the North Carolina Claim, the Minnesota Claim and the California Claim, and shall resolve the Trustee's Claim Objections. As a result, the Bureau Claim shall be deemed an allowed general unsecured claim in the amount of the Monetary Judgment, and the North Carolina Claim, the Minnesota Claim and the California Claim shall be reduced to $5,000.00 each as provided herein.

59.    Any funds received by the Bureau in satisfaction of the Monetary Judgment shall be deposited into a fund or funds administered by the Bureau or its agent according to applicable statutes and regulations to be used for redress for Affected Consumers, including but not limited to refund of moneys, restitution, damages or other monetary relief, and for any attendant expenses for the administration of any such redress.

60.    If the Bureau determines, in its sole discretion, that providing redress to consumers is wholly or partially impracticable or if funds remain after the administration of redress is completed, the Bureau will deposit any remaining funds in the U.S. Treasury as disgorgement. The Trustee will have no right to

**STIPULATED FINAL JUDGMENT AND ORDER**

challenge the Bureau's choice of remedies under this Section, and will have no right to contest the manner of distribution chosen by the Bureau.

61.     Payment of redress to any Affected Consumer under this Order may not be conditioned on that Affected Consumer waiving any right.

# IV

# Order to Pay Civil Money Penalties

**It is FURTHER ORDERED that**:

62.     Under section 1055(c) of the CFPA, 12 U.S.C. § 5565(c), by reason of the violations of law alleged in the Second Amended Complaint and taking into account the factors in 12 U.S.C. § 5565(c)(3), a civil money penalty in favor of the Bureau and against the Estate is ordered in the amount of $1, which shall be deemed an allowed general unsecured claim in the Bankruptcy Proceeding.

63.     The civil money penalty paid to the Bureau under this Order will be deposited in the Civil Penalty Fund of the Bureau as required by section 1017(d) of the CFPA, 12 U.S.C. § 5497(d).

64.     Under N.C. Gen. Stat. § 75-15.2, by reason of the violations of law alleged in the Second Amended Complaint, a civil money penalty in favor of the State of North Carolina and against the Estate is ordered in the amount of $5,000, which shall be deemed an allowed general unsecured claim in the Bankruptcy Proceeding. Accordingly, the North Carolina Claim shall be deemed allowed in the amount of $5,000.00.

65.     Under Minnesota Statutes Section 8.31, by reason of the violations of law alleged in the Second Amended Complaint, a civil money penalty in favor of the State of Minnesota and against the Estate is ordered in the amount of $5,000, which shall be deemed an allowed general unsecured claim in the Bankruptcy

**STIPULATED FINAL JUDGMENT AND ORDER**

Proceeding. Accordingly, the Minnesota Claim shall be deemed allowed in the amount of $5,000.00. The Minnesota Attorney General will remit these funds to the general fund of the State of Minnesota pursuant to Minn. Stat. §§ 8.31 and 16A.151.

66.    Under section 17206 of the UCL, Cal Bus & Prof Code § 17206, by reason of the violations of law alleged in the Second Amended Complaint and taking into account the factors in section 17206, a civil money penalty in favor of the People of the State of California and against the Estate is ordered in the amount of $5,000, which shall be deemed an allowed general unsecured claim in the Bankruptcy Proceeding. Accordingly, the California Claim shall be deemed allowed in the amount of $5,000.00.

# V

## Additional Monetary Provisions

**It is FURTHER ORDERED that**:

67.    Subject to 11 U.S.C. §§ 507(a) and 726 governing priorities of expenses and claims in the Bankruptcy Proceeding, the Trustee must relinquish all dominion, control, and title to the funds paid to the Bureau on account of its claims to the fullest extent permitted by law and no part of the funds may be returned to the Estate.

68.    Within 30 days of the entry of a final judgment, order or settlement in a Related Consumer Action, to the extent that such a Related Consumer Action is commenced in the Bankruptcy Proceeding or otherwise on notice to the Trustee while the Bankruptcy Proceeding is pending, then the Trustee must notify the Assistant Director for Enforcement in writing of any such final judgment, order or settlement. Such notification must include the amount of redress, if any, that

the Estate paid or is required to pay to consumers and, to the extent available to the Trustee, describe the consumers or classes of consumers to whom that redress has been or will be paid.

69.     Within 30 days of the entry of a final judgment, order or settlement in the Anan Adversary Proceeding, the Trustee must notify the Assistant Director for Enforcement in writing of any such final judgment, order or settlement. Such notification should include the amount of recovery of any avoidable or fraudulent transfers.

# VI

## Pendency of Bankruptcy Proceeding

**IT IS FURTHER ORDERED that:**

70.     Plaintiffs must, if they have not already done so, seek leave of the Bankruptcy Court to amend and reduce their proofs of claim to conform with the Monetary Judgment as set forth herein. In the alternative, the Order approving the resolution of the Plaintiffs' claims in the Bankruptcy Proceeding may serve as the amendment to Plaintiffs' proofs of claim.

71.     The Trustee shall not object to the Plaintiffs' proofs of claim as amended herein.

72.     The Trustee's agreed-to obligations under this Order in this Court will terminate upon the closure of the Bankruptcy Proceeding.

# VII

## Cooperation with Plaintiffs

**IT IS FURTHER ORDERED that:**

73.     In connection with this action, the Order, or any subsequent

**STIPULATED FINAL JUDGMENT AND ORDER**

investigations related to or associated with the transactions or occurrences that are the subject of the Second Amended Complaint, the Trustee shall provide reasonable and good faith cooperation to help Plaintiffs determine the identity and location of, and the amount of injury sustained by, each Affected Consumer, to the extent that such information has not previously been produced to Plaintiffs by the Trustee and to the extent that such information is in the Trustee's possession or control.

74.     Within 21 calendar days of receipt of a written request from any Plaintiff, the Trustee must provide any available documents or information that are the subject of the request.

# VIII

## Notices

**It is FURTHER ORDERED that**:

75.     Unless otherwise directed in writing by the Bureau, the Trustee must provide all submissions, requests, communications, or other documents relating to this Order in writing, with the subject line, "*CFPB, et al., v. CAC, et al.*, Case No. 8:19-cv-01998-MWF-KS" by email to Enforcement_Compliance@cfpb.gov. The Trustee may send an additional copy by overnight courier or first-class mail to the below address:

Assistant Director for Enforcement

Bureau of Consumer Financial Protection

ATTENTION: Office of Enforcement

1700 G Street, N.W.

Washington D.C. 20552

**STIPULATED FINAL JUDGMENT AND ORDER**

76.     Unless otherwise directed by a representative of the State of Minnesota in writing, all submissions to the State of Minnesota pursuant to this Order must be sent by email to evan.romanoff@ag.state.mn.us. The Trustee may send an additional copy by overnight courier or first-class mail to the below address:

Evan Romanoff, Assistant Attorney General

Office of the Minnesota Attorney General

445 Minnesota Street, Suite 1200

St. Paul, Minnesota 55101

77.     Unless otherwise directed by a representative of the State of North Carolina in writing, all submissions to the State of North Carolina pursuant to this Order must be sent by email to lweaver@ncdoj.gov. The Trustee may also send an additional copy by overnight courier or first-class mail to the below address:

M. Lynne Weaver, Special Deputy Attorney General

North Carolina Department of Justice

114 W. Edenton Street

Raleigh, North Carolina 27603

78.     Unless otherwise directed by the State of California in writing, all submissions to the State of California pursuant to this Order must be sent by email to christina.tusan@lacity.org. The Trustee may also send an additional copy by overnight courier or first-class mail to the below address:

Christina Tusan

Supervising Deputy City Attorney

Los Angeles City Attorney's Office

200 N. Main Street, 5th Floor

22

**STIPULATED FINAL JUDGMENT AND ORDER**

Los Angeles, CA 90012

## IX

## Retention of Jurisdiction

**It is FURTHER ORDERED that**:

79.    The Court will retain jurisdiction of this matter for the purpose of enforcing this Order.


It is **SO ORDERED**, this  day of  , 2021.


_____

The Honorable Michael W. Fitzgerald

United States District Judge

**STIPULATED FINAL JUDGMENT AND ORDER**

# EXHIBIT A

*Bureau of Consumer Financial Protection v. Consumer Advocacy Center, Inc., d/b/a Premier Student Loan Center*, No. 8:19-cv-01998-MWF (KSx)



ORDERED in the Southern District of Florida on June 25, 2021.

Scott M. Grossman, Judge
United States Bankruptcy Court

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
Fort Lauderdale Division
www.flsb.uscourts.gov

In re:

                                           Case No. 19-10655-SMG

CONSUMER ADVOCACY
CENTER, INC.,                              Chapter 7

                Debtor.
_____/

### ORDER GRANTING MOTION TO APPROVE SETTLEMENT AGREEMENT WITH THE BUREAU OF CONSUMER FINANCIAL PROTECTION, THE STATE OF MINNESOTA, THE STATE OF NORTH CAROLINA, AND THE <u>PEOPLE OF THE STATE OF CALIFORNIA</u>

THIS MATTER came before the Court on June 23, 2021 at 9:30 a.m. upon the *Motion to Approve Settlement Agreement with the Bureau of Consumer Financial Protection, the State of Minnesota, the State of North Carolina, and the People of the State of California* (the "**Motion**"), filed by Sonya S. Slott, Chapter 7 Trustee (the "**Trustee**") for Consumer Advocacy Center, Inc. (the "**Debtor**") [ECF No. 303], the *Notice of Filing Corrected Exhibit "A"* to the Motion [ECF No. 305], which attaches the Proposed Stipulated Final Judgment and Order to be entered by the United States District Court for the Central District of California in connection with the settlement

(the "**Stipulated Final Judgment**"), and the Response and Limited Objection to the Motion (the "**Objection**") filed by National Merchant Center, Inc. ("**NMC**") [ECF No. 318]. The Court, having considered the Motion, the Objection, the presentation of counsel, and for the reasons set forth on the record at the hearing including (a) that the proposed settlement satisfies the requirements of *In re Justice Oaks II, Ltd.,* 898 F.2d 1544 (11th Cir. 1990) and (b) that NMC lacks standing as a creditor or an affected party, and therefore overrules the Objection,

      **ORDERS as follows:**

      1.     The Motion is Granted.

      2.     The Trustee is authorized to enter into the Stipulated Final Judgment.

      3.     Pursuant to the Stipulated Final Judgment, which resolves the Objections to Claims filed by the Trustee [ECF Nos. 187, 188 and 189] and the proofs of claims filed by the Bureau of Consumer Financial Protection [Claim No. 6-2], the State of Minnesota [Claim No. 4-2], the State of North Carolina [Claim No. 5-2], and the People of the State of California [Claim No. 11-1], the following creditors have (and only have) allowed general unsecured claims in this case:

      (a)     The Bureau of Consumer Financial Protection (for providing redress to Affected Consumers[1]): $35,105,017.93;

      (b)     The Bureau of Consumer Financial Protection (on account of a civil monetary penalty): $1.00;

      (c)     The State of Minnesota (on account of a civil monetary penalty): $5,000.00;

      (d)     The State of North Carolina (on account of a civil monetary penalty): $5,000.00; and

      (e)     The People of the State of California (on account of a civil monetary penalty): $5,000.00.

---

[1] As defined in the Stipulated Final Judgment.

# # #

**Submitted by:**
Glenn D. Moses, Esq.
Genovese Joblove & Battista, P.A.
*Counsel to the Chapter 7 Trustee*
100 SE 2nd Street, Suite 4400
Miami, FL 33131
Telephone: (305) 349-2300
gmoses@gjb-law.com

**Copy furnished to:**
Glenn D. Moses, Esq.
(Attorney Moses is directed to serve a conformed copy of this order on all interested parties and file a certificate of service with the Court.)