SARAH PREIS (DC Bar No. 997387)
(Admitted *pro hac vice*)
Email: sarah.preis@cfpb.gov
Tel.: (202) 435-9318
JESSE STEWART (NY Bar No. 5145495)
(Admitted *pro hac vice*)
Email: jesse.stewart@cfpb.gov
Tel.: (202) 435- 9641
N. NATHAN DIMOCK (DC Bar No. 487743)
(Admitted *pro hac vice*)
Email: nathan.dimock@cfpb.gov
Tel.: (202) 435-9198
1700 G Street, NW, Washington, DC 20552
Fax: (844) 826-5016
LEANNE E. HARTMANN (C.A. Bar No. 264787)
(Local Counsel for the Bureau of Consumer Financial Protection)
Email: leanne.hartmann@cfpb.gov / Fax: (415) 844-9788
301 Howard Street, Suite 1200, San Francisco, CA 94105
*Attorneys for Plaintiff Bureau of Consumer Financial Protection*

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| Bureau of Consumer Financial Protection, et al.,<br><br>    Plaintiffs,<br><br>    v.<br><br>Consumer Advocacy Center Inc., d/b/a Premier Student Loan Center, et al.,<br><br>    Defendants. | CASE NO. 8:19-cv-01998 MWF (KS)<br><br>**MEMORANDUM IN SUPPORT OF PLAINTIFF'S RENEWED MOTION FOR ORDER TO SHOW CAUSE WHY DEFENDANT WEN SHOULD NOT BE HELD IN CONTEMPT AND FOR RELATED RELIEF**<br><br>**REDACTED PURSUANT TO ORDER OF THE COURT DATED MARCH 24, 2022**<br><br>Hearing: May 16, 2022, 10:00 AM<br>Court: Hon. Michael W. Fitzgerald<br>Courtroom 5A |

i

[REDACTED] MEMORANDUM IN SUPPORT OF PLAINTIFF'S RENEWED MOTION FOR ORDER TO SHOW CAUSE WHY DEFENDANT WEN SHOULD NOT BE HELD IN CONTEMPT AND FOR RELATED RELIEF

## TABLE OF CONTENTS

Table of Authorities ......................................................................................... iii

I.    Procedural History ...................................................................................2

II.   Factual Background ..................................................................................3

      A. Background on Cryptocurrency .......................................................3

      B. Wen's Financial Statements Related to the TRO .............................5

      C. Wen's Fifth Amendment Invocation ................................................7

      D. Wen's Cryptocurrency Holdings and Transfers ...............................8

           1.  Wen highly likely controlled about [Redacted] undisclosed BTC at 17 unhosted wallet addresses associated with a transaction funding Wen's Bittrex exchange account ..................................................9

           2.  Wen most likely controlled about [Redacted] undisclosed BTC at a Bitmex.com exchange account funded by Wen ...........................10

           3.  Wen most likely controlled about [Redacted] undisclosed BTC at seven unhosted wallet addresses associated with Wen's exchange accounts .......................12

           4.  Wen most likely controlled about [Redacted] ETH held at two unhosted wallet addresses funded by Wen's Poloniex and Bitstamp Accounts ....................14

III.  Argument .................................................................................................15

      A. Legal Standard ...............................................................................15

      B. Wen Has Violated This Court's Orders by Concealing at Least [Redacted] BTC and [Redacted] ETH .................................................................16

      C. Wen Has Violated This Court's Orders by Transferring or Dissipating at Least [Redacted] BTC and [Redacted] ETH Since Entry of the TRO ...........................................17

      D. An Adverse Interference and Other Relief Against Wen Is Warranted .......................................................................................18

IV.   Requested Relief .....................................................................................22

V.    Conclusion ..............................................................................................24

ii

[REDACTED] MEMORANDUM IN SUPPORT OF PLAINTIFF'S RENEWED MOTION FOR ORDER TO SHOW CAUSE WHY DEFENDANT WEN SHOULD NOT BE HELD IN CONTEMPT AND FOR RELATED RELIEF

1

TABLE OF AUTHORITIES

2 **Cases**

3 *CFTC v. Driver,*

4    877 F. Supp. 2d 968 (C.D. Cal. 2012)...........................................................................19

5 *FTC v. Affordable Media, LLC,*

6    179 F.3d 1228 (9th Cir. 1999)...................................................................15, 16, 22

7 *FTC v. Cardiff,*

8    No. CV5182104SJO(PLAX), 2020 WL 2084677 (C.D. Cal. Mar. 31, 2020)......15, 22

9 *FTC v. EDebitPay*, LLC,

10    695 F.3d 938 (9th Cir. 2012)......................................................................15, 22

11 *FTC v. Kutzner*,

12    No. SACV1600999BRO(AFMX), 2017 WL 2985397 (C.D. Cal. June 12, 2017) ........

13    ...............................................................................................................16, 22

14 *FTC v. Laptop & Desktop Repair, LLC,*

15    No. 1:16-CV-3591-AT, 2016 WL 10805748 (N.D. Ga. Nov. 17, 2016) ...................22

16 *FTC v. Marshall*,

17    781 F. App'x 599 (9th Cir. 2019)...................................................................16

18 *In re Crystal Palace Gambling Hall, Inc.*,

19    817 F.2d 1361 (9th Cir. 1987)......................................................................22

20 *Int'l Union, UMWA v. Bagwell*,

21    512 U.S. 821 (1994) ...................................................................................15, 22

22 *Nationwide Life Ins. Co. v. Richards*,

23    541 F.3d 903 (9th Cir. 2008)......................................................................19, 21

24 *SEC v. Current Fin. Servs., Inc.*,

25    798 F. Supp. 802 (D.D.C. 1992) ...............................................................16

26 *SEC v. Colello*,

27    139 F.3d 674 (9th Cir. 1998).......................................................................19, 21

28

*SEC v. Premier Holding Corp.*,
    No. SACV1800813CJC(KESX), 2020 WL 8099514 (C.D. Cal. Nov. 30, 2020) 19, 21

*Stone v. City and County of San Francisco*,
    968 F.2d 850 (9th Cir. 1992) ....................................................................... 15

*United States v. Harding*,
    No. 219CV00871WBS(CKD), 2020 WL 838439 (E.D. Cal. Feb. 20, 2020) ............. 21

*United States v. United Mine Workers of Am.*,
    330 U.S. 258 (1947) ...................................................................................... 22

Plaintiff the Consumer Financial Protection Bureau (Bureau) renews its motion for an order to show cause why Defendant Kaine Wen should not be held in contempt for violating this Court's temporary restraining order (TRO) and preliminary injunction order (PI Order) (collectively, Preliminary Orders).[1] Specifically, the evidence submitted in support of this motion shows that Wen violated the accounting requirements at Section VIII(A) of the TRO by concealing at least Redacted bitcoin (BTC) and other cryptocurrencies that were worth over $Redacted at the time of the TRO, and would be worth over $Redacted as of March 29, 2022. And Wen violated the asset freeze at Section VI of the Preliminary Orders by transferring or dissipating at least Redacted BTC and Redacted ether (ETH) cryptocurrencies, which were worth over $Redacted at the times of the relevant transactions. Compounding his violations of the Preliminary Orders, Wen made false statements, delayed in correcting them, and then asserted the Fifth Amendment privilege against self-incrimination in response to questions about his assets and transactions, including to each question posed by this Court's March 16, 2021 order on the Bureau's original contempt motion.

Accordingly, the Bureau respectfully requests that this Court order Wen to show cause why he should not be held in contempt for his violations of the Preliminary Orders. The Bureau further requests that the Court order Wen to transfer certain cryptocurrency holdings, including concealed and dissipated holdings, to the Receiver or to a U.S.-based cryptocurrency exchange account in his name pending resolution of Plaintiffs' claims against him. If Wen fails to take these actions, he should pay a daily fine to coerce his compliance, as well as provide an accounting of assets used to pay any fine.

---

[1] TRO, ECF No. 24; Stipulated Prelim. Inj., ECF No. 103.

# I.    PROCEDURAL HISTORY

Plaintiffs the Bureau, the State of Minnesota, the State of North Carolina, and the People of the State of California brought this action on October 21, 2019, and sought a temporary restraining order, asset freeze, the appointment of a receiver over the corporate defendants, and other equitable relief to put an immediate halt to the defendants' illegal student loan debt-relief operation, which has resulted in over $95 million in redress ordered to thousands of consumers nationwide.[2] The Court granted Plaintiffs' motion the same day.[3] Wen waived service of the complaint and was served with a copy of the TRO and the complaint through counsel on October 25, 2019.[4] On November 15, 2019, the Court entered the PI Order, which extended the asset freeze provisions of the TRO until entry of a final judgment.[5]

On January 8, 2021, the Bureau filed a motion seeking an order to show cause why Wen should not be held in contempt (First Contempt Motion).[6] The Bureau asserted that Wen had dissipated at least Redacted ETH worth over $ Reda Redacted and failed to comply fully with his financial accounting obligations in violation of the Preliminary Orders.[7] After briefing, this Court held a hearing on February 24, 2021, and issued an order on March 16, 2021 (Disclosure Order).[8] The Disclosure Order denied without prejudice the Bureau's request for a contempt order to show cause, but ordered Wen to respond to detailed questions

---

[2] Compl., ECF No. 2; Memo. in Supp. of TRO, ECF No. 3-3; Stipulated Final J. and Order as to Def. Tuong Nguyen, ECF No. 210 ¶ 28; Corrected and Am. Stipulated Final J. and Order as to Def. Prime Consulting LLC, ECF No. 211 ¶ 28. The operative complaint is Plaintiffs' Third Amended Complaint, ECF No. 314 (redacted) and 315 (SEALED).
[3] ECF No. 24 (SEALED).
[4] Preis Decl. of Service on Defendants, ECF No. 88 ¶ 3.
[5] ECF No. 103 at 12-14, 40:22-24.
[6] ECF Nos. 256 (SEALED), and 257 (redacted).
[7] ECF Nos. 256 at 9-11 (SEALED), and 257 at 9-11 (redacted).
[8] ECF No. 277 at 1.

1  about his cryptocurrency assets and transactions.[9] And the Court stated that "if

2  Defendant Wen fails to comply with the Disclosure Order" or "turns over

3  information supporting the Bureau's theory of asset dissipation,"

4  the Court would have "no hesitation holding Defendant Wen in contempt."[10]

## II.  FACTUAL BACKGROUND

### A. Background on Cryptocurrency

Cryptocurrency is a type of virtual currency that uses distributed ledger technology known as a blockchain.[11] There are a number of varieties of cryptocurrency, including BTC, Bitcoin Cash (BCH), and ETH.[12] All cryptocurrency transactions that occur on the blockchain are recorded on the blockchain as belonging to a certain address.[13]

Cryptocurrency addresses are unique strings of numbers and letters that serve a function similar to bank account numbers, where they are used to direct transfers to other users.[14] For BTC, BCH, and ETH, each cryptocurrency address corresponds to a private key, which is also a unique alphanumeric sequence.[15] Only a person in possession of the private key can move the cryptocurrency from an address and thus own and control the funds at that address.[16]

In order to send cryptocurrency from one address to another, the user in control of the sending address creates a transaction, which specifies the amount of cryptocurrency to be sent and the receiving address where the user wishes to

---

[9] ECF No. 277 at 8-10.

[10] ECF No. 277 at 10.

[11] Decl. of Pamela Clegg, Ex. 1 [hereinafter Clegg Decl.] ¶ 21.

[12] Clegg Decl. ¶ 22.

[13] Clegg Decl. ¶¶23, 35. Ethereum is the platform on which ether (ETH) is a currency. *Compare* Clegg Decl. ¶ 22, *with* Clegg Decl. ¶ 23.

[14] Clegg Decl. ¶ 25.

[15] Clegg Decl. ¶ 26.

[16] Clegg Decl. ¶¶ 26-27, 33.

send the cryptocurrency.[17] The transaction includes a digital signature of that payment instruction along with the private key that corresponds to the sending address.[18] The transaction is then verified on the blockchain.[19] The verified transactions for cryptocurrencies such as BTC, BCH, or ETH are recorded chronologically, forming an immutable chain.[20]

Cryptocurrency holders use one or more "wallets," which hold the private key(s) that give access to the cryptocurrency at the respective addresses.[21] Unlike a bank account, there is no third party to record the proper owner of a cryptocurrency address.[22] Generally, multiple addresses may be generated and controlled from a single wallet.[23] The person controlling the wallet generally controls all the associated addresses and private keys.[24]

Wallets may be hosted or unhosted.[25] A hosted wallet is held at a third-party financial institution, like a cryptocurrency exchange, which allows the account holder to store, send, and receive cryptocurrency off the blockchain via the exchange's digital platform.[26] An unhosted wallet is not hosted by a third-party financial institution.[27] An unhosted wallet can be software or hardware that allows a user to hold, store, and transfer cryptocurrency.[28] Unhosted wallets allow for a certain degree of anonymity and concealment of illicit financial activity because only a person with access to the unhosted wallet

---

[17] Clegg Decl. ¶ 27.
[18] Clegg Decl. ¶ 27.
[19] Clegg Decl. ¶ 27.
[20] Clegg Decl. ¶ 27.
[21] Clegg Decl. ¶ 29.
[22] Clegg Decl. ¶ 29.
[23] Clegg Decl. ¶ 29.
[24] Clegg Decl. ¶¶ 26, 29, 31.
[25] Clegg Decl. ¶ 32.
[26] Clegg Decl. ¶ 32.
[27] Clegg Decl. ¶ 33.
[28] Clegg Decl. ¶ 33.

can control, and confirm control of, the cryptocurrency held at the address(es) controlled through the unhosted wallet.[29] Thus, while those addresses are publicly visible on the blockchain, including the balance at and transactions associated with the addresses, a person controlling the addresses is not typically identified on the blockchain and can only be conclusively confirmed by the person controlling the unhosted wallet, who is typically the same person.[30]

## B. Wen's Financial Statements Related to the TRO

The Court's Preliminary Orders froze all of Wen's assets and the TRO required him to complete a financial statement (Financial Statement) "accurate as of the date of service of this Order."[31] As relevant here, Item 23 of the Financial Statement required Wen to list all assets not identified elsewhere on that form, including but not limited to "cryptocurrency and other virtual currencies."[32]

In his November 1, 2019 Financial Statement (Original Financial Statement), Wen claimed he had no virtual currency or cryptocurrency.[33] Wen further declared that he had "no assets, owned either directly or indirectly . . . or income of any nature other than as shown in, or attached to, this statement."[34] On multiple occasions from September through November 2020, the Bureau pressed Wen to amend his Original Financial Statement to address apparent

---

[29] Clegg Decl. ¶¶ 33, 43, 115.
[30] Clegg Decl. ¶¶ 28, 33, 43, 115.
[31] ECF No. 24 § VIII(A).
[32] ECF No. 24, Attachment A, at Item 23. Wen was also required to disclose certain transfers, sales, or assignments of assets, including virtual currency, and the participants in such transactions, from January 1, 2015, through the date of the TRO. *See id.* at Item 31; ECF No. 24 § VIII(D); ECF No. 103 § VIII(D).
[33] Decl. of Jesse Stewart, Ex. 2 [hereinafter Stewart Decl.] ¶ 3; Wen November 1, 2019 Financial Statement, Ex. 4 at 133 (previously filed as Ex. 1-2 to First Contempt Motion, ECF No. 256-3 (SEALED)).
[34] Ex. 4 at 147.

inaccuracies.[35] On December 1, 2020, the Bureau issued expedited discovery to Wen about his Redacted holdings and transactions, and certain transfers.[36] Wen declined to respond to each request, invoking the Fifth Amendment privilege against self-incrimination.[37]

On December 17, 2020, Wen amended his Financial Statement, including Item 23, and disclosed for the first time unspecified amounts of Redacted Redacted that "Redacted ."[38] On March 1, 2021, just days after the Court held a hearing on the Bureau's First Contempt Motion, Wen further amended his Financial Statement, providing additional details about his Redacted holdings and revealing that he also held additional cryptocurrencies.[39] (Hereinafter, Wen's December 17, 2020 and March 1, 2021 amendments to his Financial Statement are referred to collectively as his Amended Financial Statement.) The Amended Financial Statement provided that Wen owned or controlled the following cryptocurrencies as of October 25, 2019, and Redacted :

- Redacted held in an "Online Cryptocurrency Wallet held by ['Sea']."

---

[35] Stewart Decl. ¶¶ 4-6; Ex 5 (previously filed as Ex. 4 to First Contempt Motion, ECF No. 256-5 (SEALED)); Ex. 6 (previously filed as Ex. 6-1 to First Contempt Motion, ECF No. 256-7 (SEALED)).

[36] Decl. of Theresa Ridder, Ex. 3 [hereinafter Ridder Decl.] ¶ 6; Ex. 11 (previously filed as Ex. 8-3 to First Contempt Motion, ECF No. 256-10 (SEALED)).

[37] Ridder Decl. ¶ 7; Ex. 12 (previously filed as Ex. 11 to First Contempt Motion, ECF No. 257-17).

[38] Stewart Decl. ¶ 7; Ex. 7 at 177 (previously filed as Ex. 14 to First Contempt Motion, ECF No. 256-15). In disclosing this Redacted , Wen also stated, "I am unable to more fully answer this question due to the unstructured nature and volume of transactions during the relevant period, lack of available documentation, records, or information, and the volatility of cryptocurrency prices." Ex. 7 at 177.

[39] ECF No. 275-1, Ex. 8.

1    • Redacted                    held at the "Bittrex Online Exchange."

2    • Redacted                      held at the "Bittrex Online Exchange."

3    • Redacted                            "Sea" at Wen's "Binance

4      Online Exchange" account (Wen's Binance Account).[40]

5    At the time of the TRO, these Redacted   were worth over $Redacted.[41]

6    Wen stated that he had transferred about Redacted to "Sea" in 2017 and 2018

7    so that "Sea" could invest the Redacted in "various Initial Coin Offering . . . pools

8    and repay various debts on my behalf."[42] Wen stated that "Sea" was a "friend"

9    who resides in China and Macau.[43] On the Amended Financial Statement, Wen

10   again declared that he had "no assets, owned either directly or indirectly . . . or

11   income of any nature other than as shown in, or attached to, this statement."[44]

12   **C. Wen's Fifth Amendment Invocation**

13         At his March 4, 2021 deposition, Wen invoked the Fifth Amendment

14   privilege against self-incrimination in declining to answer multiple questions,

15   including questions about the accuracy of his Original Financial Statement,

16   transfers of his ETH cryptocurrency since the TRO, and his income and

17   expenses since the TRO.[45] At the deposition, Bureau staff asked whether Wen

18   currently held "any other cryptocurrency other than the cryptocurrency

19   identified on [the Amended Financial Statement]."[46] Wen responded, "[n]one

20   that I am – that I am aware of."[47] And on March 30, 2021, Wen invoked the

21   Fifth Amendment privilege against self-incrimination in response to each topic

22

23   [40] Ex. 8 at 188. Redacted        are other virtual currencies. *See* Ridder
     Decl. ¶ 35, App. C.
24   [41] Ridder Decl. App. C.
25   [42] Ex. 8 at 188-89, n.14.
     [43] Ex. 8 at 188-89, n.2.
26   [44] Ex. 8 at 190.
27   [45] Wen Dep. Tr., Ex. 13 [hereinafter Wen Dep. Tr.], at 19:9-21:3, 83:22-84:4,
     125:2-20, 126:2-20, 129:1-130:21, 135:10-137:7, 138:6-139:16.
28   [46] Wen Dep. Tr. at 118:7-8.
     [47] Wen Dep. Tr. at 118:13.

that the Disclosure Order required him to address.[48]

### D. Wen's Cryptocurrency Holdings and Transfers

Following the Disclosure Order, the Bureau retained Pamela A. Clegg, Vice President of Financial Investigations for the firm CipherTrace, to help the Bureau trace and understand Wen's cryptocurrency holdings and transactions.[49] Ms. Clegg's findings show that as of October 25, 2019, Wen most likely controlled:

- about <sup>Redacted</sup> BTC (worth nearly $Redacted) at 24 BTC addresses, which are most likely unhosted wallet addresses;[50]
- about <sup>Redacted</sup> ETH (worth over $Redacted) at two ETH addresses, which are most likely unhosted wallet addresses;[51] and
- about <sup>Redacted</sup> BTC (worth over $Redacted) at a Bitmex.com exchange account.[52]

Wen has not disclosed any of these BTC and only some of the ETH to Plaintiffs.[53] Finally, Ms. Clegg concluded that as of March 29, 2022, Wen still most likely controlled at least <sup>Redacted</sup> BTC (worth about $Redacted) and <sup>Redacted</sup> ETH (worth about $Redacted).[54]

Ms. Clegg's conclusions are based on review of information from publicly available blockchains, CipherTrace's proprietary tools for analyzing

---

[48] Stewart Decl. ¶ 9; Ex. 9.
[49] Clegg Decl. ¶¶ 3, 9.
[50] Clegg Decl. ¶¶ 15, 114, App. E, Figure E-1; Ridder Decl. ¶¶ 35-36, App. C.
[51] Clegg Decl. ¶¶ 15, 114, App. E, Figure E-1; Ridder Decl. ¶¶ 35-36, App. C.
[52] Clegg Decl. ¶¶ 20, 66; Ridder Decl. ¶¶ 33-36, 40-41, Apps. B-1, E. Note that Ms. Clegg concludes that Wen most likely controls the Bitmex.com account, *see* Clegg Decl. ¶ 66, and Ms. Ridder concludes that that account held about <sup>Redacted</sup> BTC as of October 25, 2019, *see* Ridder Decl. ¶¶ 33-34.
[53] *See* Exs. 4, 7-9, 12, 17-18. In addition, Wen's Binance Account holds <sup>Redacted</sup>, which he disclosed on March 1, 2020. Ex. 8 at 188. And Wen's Binance Account has held Redacted BitTorrent. *See* Ridder Decl. ¶ 33, App. B-1.
[54] Clegg Decl. ¶ 16; Ridder Decl. ¶ 37, App. C.

blockchain transactions, account records associated with Wen from five distinct cryptocurrency exchanges, and Wen's Amended Financial Statement and deposition transcript as they relate to his cryptocurrency.[55]

### 1. Wen highly likely controlled about <span style="color:red">Redacted</span> undisclosed BTC at 17 unhosted wallet addresses associated with a transaction funding Wen's Bittrex exchange account

On August 1, 2017, the Bitcoin blockchain split through a "hard fork" (Hard Fork), resulting in the creation of a new cryptocurrency known as Bitcoin Cash (BCH).[56] As a result of the Hard Fork, every address on the Bitcoin blockchain that possessed unspent BTC received an equivalent amount of BCH on a new Bitcoin Cash blockchain.[57] On August 4, 2017, just three days after the Hard Fork, Wen's Bittrex exchange account (Wen's Bittrex Account) was sent a deposit of <span style="color:red">Redacted</span> BCH in one transaction funded by 32 distinct BCH addresses (Consolidating Transaction).[58]

As explained in Ms. Clegg's report, the same person controlled the 32 BTC and 32 BCH addresses as of August 1, 2017, and those same addresses funded Wen's Bittrex Account just three days later.[59] Further, Ms. Clegg explained that 4 of the 32 BTC addresses received "change" from deposits to Wen's Poloniex exchange account (Wen's Poloniex Account), meaning the same person funding Wen's Poloniex Account also controlled those 4 addresses.[60] Ms. Clegg also noted that 12 of the 32 BTC addresses transferred

---

[55] Clegg Decl. ¶¶ 10-12, App. D. Specifically, Ms. Clegg relied upon public blockchain information for each cryptocurrency analyzed, including BTC, ETH, and BCH, and exchange account documents from Bittrex.com, Poloniex.com, Bitmex.com, Bitstamp.net, and Binance.com. *Id.*
[56] Clegg Decl. ¶ 50.
[57] Clegg Decl. ¶ 50.
[58] Clegg Decl. ¶¶ 50-53, App. E, Figure E-3; Ridder Decl. ¶¶ 22-23; Exs. 24-25.
[59] Clegg Decl. ¶¶52-54.
[60] Clegg Decl. ¶¶ 55-59, App. E, Figures E-3, E-4, E-5. *See also* Ridder Decl. ¶¶ 20-21; Ex. 22 at 425-37; Ex. 23.

1   Redacted BTC to a cryptocurrency exchange account at Bitmex.com that Ms. Clegg

2   concluded Wen most likely controlled.[61] As Ms. Clegg explained, these facts

3   support concluding that Wen controlled the 32 BTC addresses associated with

4   the Consolidating Transaction.[62]

5         Based on the above transactions and her analysis, Ms. Clegg concluded

6   that as of October 25, 2019, Wen highly likely controlled over Redacted BTC (worth

7   over $Redacted) at 17 unhosted wallet addresses associated with the

8   Consolidating Transaction.[63] And Ms. Clegg concluded that Wen highly likely

9   continues to control the Redacted BTC as of the date of her report.[64] Wen has not

10   disclosed any of these holdings since entry of the TRO, including as required in

11   response to the Disclosure Order and in response to discovery specifically

12   asking him about his interest in each one of the 32 BTC addresses associated

13   with the Consolidating Transaction; rather, he invoked the privilege against

14   self-incrimination in each instance.[65]

15       **2. Wen most likely controlled about Redacted undisclosed BTC at a**

16   **Bitmex.com exchange account funded by Wen**

17         Ms. Clegg concluded that Wen most likely controls three Bitmex

18   accounts under aliases "Wen Ding," "Lie Wen," and "Dan Dai."[66] Wen has not

19   disclosed these accounts.[67]

20

---

21   [61] Clegg Decl. ¶¶ 60, 81, App. E, Figure E-6.

22   [62] Clegg Decl. ¶¶ 60-61.

23   [63] Clegg Decl. ¶ 61, App. E, Figure E-3; Ridder Decl. ¶ 35, App. C.

24   [64] Clegg Decl. ¶ 61, App. E, Figure E-3.

      [65] *See* Exs. 4, 7-9, 17-18.

25   [66] Clegg Decl. ¶¶ 45-48, 62-66, 90-100. Bitmex did not collect any identifying

26   documents for these accounts, nor do account documents provide meaningful identifying information besides email addresses, which were

27   Redacted ("Wen Ding"), Redacted ("Lie

      Wen"), and Redacted ("Dan Dai"). Ridder Decl. ¶¶ 26-27, 32,

28   App. A; Exs. 28-29.

      [67] *See* Exs. 4, 7-9, 17-18.

First, Ms. Clegg concluded that Wen most likely controlled the "Wen Ding" Bitmex account because Wen's email address was used to register the account and because it was funded with Redacted BTC by the same source that funded Wen's Bittrex Account.[68] Second, Ms. Clegg concluded that Wen most likely controlled the "Dan Dai" Bitmex account because Redacted BTC of all Redacted BTC it received passed through addresses highly likely controlled by Wen.[69] Third, Ms. Clegg concluded that Wen most likely controlled the "Lie Wen" Bitmex account because it was primarily funded by BTC from Wen's Bittrex Account, the "Wen Ding" Bitmex account, and other sources attributable to Wen.[70] And the person controlling the "Lie Wen" Bitmex account associated an email address, Redacted, which references a street address that Wen has used for personal business and listed as a residential address for his mother and sister.[71]

As of October 25, 2019, the Bitmex.com exchange accounts held about Redacted BTC (worth over $Redacted), all held in the "Dan Dai" account.[72] Based on the most recent information obtained by the Bureau, the above-referenced

---

[68] Clegg Decl. ¶¶ 45-48, App. E, Figure E-2; Ridder Decl. ¶ 32, App. A; Ex. 28 at 468, 474; Wen Dep. Tr. at 38:23-39:5; Ex. 13 at 297.

[69] Clegg Decl. ¶¶ 62-66, App. E, Figures E-3, E-6, E-7.

[70] Clegg Decl. ¶¶ 90-100, App. E, Figures E-14, E-15, E-16.

[71] Ridder Decl. ¶¶18-19, 26-27, 32, App. A; Ex. 7 at 162, 180; Ex. 19 at 394-95; Ex. 20 at 421; Ex. 21; Ex. 28 at 478. Although Kaine Wen's mother appears to have gone by "Lie Wen" as her middle name, *see* Ridder Decl. ¶ 5; Ex. 7 at 180; Ex. 10 at 196, and Wen's sister's name is Diana Dai, *see* Ex. 7 at 180, neither held any cryptocurrency since at least January 1, 2019. Ridder Decl. ¶¶ 12, 14; Ex. 15 at 333; Ex. 16 at 343-44. And Wen has a history of using family members as a front for his illicit student loan debt-relief business and related assets. *See, e.g.*, Ex. 7 at 166-67 (Judy Dai listed as "nominal owner" of Mice and Men LLC "for the benefit of" Wen). Plaintiffs settled with Mice and Men LLC. *See* Stipulated Final J. and Order as to Mice and Men LLC, ECF No. 218.

[72] Ridder Decl. ¶¶ 33-34, Apps. B-1, E.

Bitmex.com accounts no longer hold any BTC or other cryptocurrencies.[73] Wen has never disclosed to the Bureau any of the Bitmex accounts or any BTC held at them, including as required in response to the Disclosure Order and when asked about his interest in the accounts through expedited discovery; rather, he invoked the privilege against self-incrimination in each instance.[74]

### 3. Wen most likely controlled about [Redacted] undisclosed BTC at seven unhosted wallet addresses associated with Wen's exchange accounts

Ms. Clegg concluded that Wen most likely held an additional approximately [Redacted] BTC (worth over $[Redacted]) at seven unhosted wallet addresses as of October 25, 2019.[75] These holdings include:

1. [Redacted] BTC at an unhosted wallet address that received the BTC directly from the Dan Dai Bitmex account in May 2019;[76]

2. about [Redacted] BTC at an unhosted wallet address that was funded by one of the 32 BTC addresses associated with the Consolidating Transaction, which in turn was funded by Wen's Bitstamp.net exchange account (Wen's Bitstamp Account);[77]

3. over [Redacted] BTC at an unhosted wallet address from change left over from a deposit to Wen's Poloniex Account, where Wen testified that he controlled the BTC address funding his Poloniex account;[78]

---

[73] Ridder Decl. ¶¶ 33-34, App. B-1.
[74] *See* Exs. 4, 7-9, 17-18.
[75] Clegg Decl. ¶ 67; Ridder Decl. ¶ 35, App. C.
[76] Clegg Decl. ¶¶ 67, 71-72, App. E, Figure E-9 (referring to BTC address 3Msk).
[77] Clegg Decl. ¶¶ 67, 73-76, App. E, Figure E-10 (referring to BTC address 1JA73).
[78] Clegg Decl. ¶¶ 67, 77-79, App. E, Figure E-11 (referring to BTC address 1kJdt); Wen Dep. Tr. at 96:2-12, 99:10-101:12, 101:23-103:7; Ex. 13 at 285-86.

4. nearly <sup>Red</sup> BTC at an unhosted wallet address that, together with 12 BTC addresses associated with the Consolidating Transaction, funded the "Dan Dai" Bitmex account;[79]

5. about <sup>Redacted</sup> BTC at an unhosted wallet address that received those BTC directly from Wen's Bittrex Account;[80]

6. about <sup>Reda</sup> BTC at an unhosted wallet address that received change from a deposit to Wen's Poloniex Account, where Wen testified that he controlled the BTC address funding his Poloniex Account;[81] and

7. about <sup>Redacte</sup> BTC at an unhosted wallet address that was primarily funded by Wen's Bittrex Account, as well as receiving funds from the same person funding Wen's Bittrex Account and the same person funding the "Lie Wen" Bitmex account.[82]

Ms. Clegg further concluded that as of the date of her report, Wen most likely held about <sup>Redacted</sup> BTC at eight unhosted wallet addresses.[83] Wen has not disclosed any of these holdings or addresses to the Bureau, including in response to the Disclosure Order and discovery requests specifically asking about his interests in all but two of the addresses; rather, he invoked the privilege against self-incrimination.[84]

---

[79] Clegg Decl. ¶¶ 67, 80-81, App. E, Figure E-6 (referring to BTC address 1XSB1).

[80] Clegg Decl. ¶¶ 67, 82-83, App. E, Figure E-12 (referring to BTC address 15NEe).

[81] Clegg Decl. ¶¶ 67, 84-89, App. E, Figure E-13 (referring to BTC address 1EqME); Wen Dep. Tr. at 96:2-12, 99:10-101:12, 101:23-103:7; Ex. 13 at 285-86.

[82] Clegg Decl. ¶¶ 67, 91-100, App. E, Figures E-14, E-16.

[83] Clegg Decl. ¶ 67. These assessed holdings are in addition to the holdings related to the Consolidating Transaction. *See* Clegg Decl. ¶¶ 61, 67, App. E, Figure E-1.

[84] *See* Exs. 4, 7-9, 17-18.

### 4. Wen most likely controlled about [Redacted] ETH held at two unhosted wallet addresses funded by Wen's Poloniex and Bitstamp Accounts

Ms. Clegg concluded that Wen most likely owned or controlled about [Redacted] ETH (worth over $[Redacted]) at two different addresses as of October 25, 2019, and about [Redacted] ETH (worth over $[Redacted]) as of the date of her report.[85] Ms. Clegg's conclusions as to the first address are based on Wen's Poloniex account directly funding that address 86 times for a total [Redacted] ETH (over 75% of all ETH received to the address), and Wen stating at his deposition that the address held cryptocurrency for his benefit.[86] With respect to the second address, Ms. Clegg's conclusions are based on it being funded by [Redacted] ETH transferred directly from Wen's Bitstamp Account (over 67% of all ETH received to the address) and Wen stating at his deposition that the address held cryptocurrency for his benefit.[87]

Ms. Clegg further identified 20 withdrawals in 2020 from the two ETH addresses discussed above, totaling about [Redacted] ETH, leaving about [Redacted] ETH at those addresses as of her report.[88] When asked at his deposition whether he

---

[85] Clegg Decl. ¶ 101, App. E, Figure E-1; Ridder Decl. ¶¶ 35-37, App. C.

[86] Clegg Decl. ¶¶ 102, 104-105, 110, App. E, Figure E-17 (address 0x4d5); Wen Dep. Tr. at 96:2-12, 99:10-100:14, 103:8-105:7; Ex. 13 at 285-88. Approximately [Redacted] ETH sent to the address came from a Poloniex account in the name of Henry Wen Huang. *See* Clegg Decl. ¶ 102 n. 8; Ridder Decl. ¶ 20-21, 44; Ex. 22 at 438-39. Defendants' documents show that a Henry Wen Huang transacted with Kaine Wen (using the same email address that is registered with the Huang Poloniex account), was paid by Defendant True Count Staffing Inc. on multiple occasions, and had a True Count email address. *See* Ridder Decl. ¶¶ 44-47; Ex. 22 at 438; Exs. 30-32; First Am. Compl., ECF No. 134 ¶ 30; True Count Staffing, Inc. Answer to First Am. Compl., ECF No. 193 ¶ 30 (admitting that True Count Staffing, Inc. did business as SL Account Management).

[87] Clegg Decl. ¶¶ 106, 108-110, App. E, Figure E-18; Wen Dep. Tr. at 78:18-81:15; Ex. 13 at 283-84.

[88] Clegg Decl. ¶¶ 101, 111, 113, App. E, Figure E-19.

14

1   caused significant transfers of ETH from these two addresses, Wen declined to

2   respond and asserted the Fifth Amendment privilege against self-

3   incrimination.[89] Although the Disclosure Order required Wen to reveal these

4   transactions, Wen declined to do so and instead Wen invoked the privilege

5   against self-incrimination.[90]

6   ### III.   ARGUMENT

7   **A. Legal Standard**

8       Federal courts have authority to enforce compliance with an order

9   through civil contempt.[91] To establish contempt, the moving party must show

10  by clear and convincing evidence that the contemnors violated a specific and

11  definite order of the court.[92] The burden then shifts to the contemnors to

12  demonstrate why they were unable to comply,[93] including by showing that they

13  "took every reasonable step" to do so.[94] The party asserting inability to comply

14  with a court's order "must show categorically and in detail why he is unable to

15  comply."[95] Moreover, contempt need not be willful, and there is no good faith

16  exception for failing to comply with a court order.[96] As relevant here, civil

17  contempt is appropriate when a party fails to abide by a court-ordered asset

18  freeze or to make required financial disclosures.[97]

19

20  [89] Wen Dep. Tr. 126:2-10; 130:8-21.

21  [90] ECF No. 277 at 9; Ex. 9.

22  [91] *See Int'l Union, UMWA v. Bagwell*, 512 U.S. 821, 831-32 (1994); *FTC v. EDebitPay*, LLC, 695 F.3d 938, 945 (9th Cir. 2012).

23  [92] *FTC v. Affordable Media, LLC,* 179 F.3d 1228, 1239 (9th Cir. 1999) (citation omitted).

24  [93] *Id.*

25  [94] *Stone v. City and Cnty. of San Francisco,* 968 F.2d 850, 857 (9th Cir. 1992).

26  [95] *Affordable Media*, 179 F.3d at 1241 (internal quotation marks omitted).
    [96] *See Stone,* 968 F.2d at 856-57.

27  [97] *See, e.g.*, *FTC v. Cardiff*, No. CV5182104SJO(PLAX), 2020 WL 2084677, at

28  *3 (C.D. Cal. Mar. 31, 2020) (finding contempt for dissipating frozen assets in violation of temporary restraining and preliminary injunction orders); *FTC v.*

15

**B. Wen Has Violated This Court's Orders by Concealing at Least** Redacted **BTC and** Redacted **ETH.**

The evidence shows that Wen concealed at least Redacted BTC and Redacted ETH, collectively worth over $Redacted as of October 25, 2019, in violation of this Court's orders.[98] Specifically, the October 21, 2019 TRO, through Attachment A, required that Wen complete a sworn financial statement, including listing all "cryptocurrency and other virtual currencies," that was "accurate as of the date of service of the [TRO]."[99] Wen waived service of the TRO on October 25, 2019.[100]

In completing Attachment A and submitting his Original Financial Statement, Wen initially claimed that he had no cryptocurrency or virtual currencies.[101] More than a year after entry of the TRO and after multiple inquires by the Bureau, Wen revealed that he had Redacted, Redacted, and other Redacted .[102] But the evidence shows that Wen's Amended Financial Statement omitted, at a minimum, over Redacted BTC (worth over $Redacted) that Wen held as of October 25, 2019, at 24 unhosted wallet addresses and the "Dan Dai" Bitmex account.[103] And the evidence shows that in fact Wen

---

*Kutzner*, No. SACV1600999BRO(AFMX), 2017 WL 2985397, at *11 (C.D. Cal. June 12, 2017) (finding contempt for dissipating frozen assets in violation of a TRO), *aff'd sub nom.*, *FTC v. Marshall*, 781 F. App'x 599 (9th Cir. 2019); *SEC v. Current Fin. Servs., Inc.*, 798 F. Supp. 802, 809 (D.D.C. 1992) (finding contempt for failure to comply with accounting and asset freeze requirements in temporary restraining and preliminary injunction orders); *see also Affordable Media,* 179 F.3d at 1239-43 (affirming a finding of contempt for failure to repatriate assets held overseas in violation of a TRO).
[98] *Compare* Clegg Decl. ¶¶ 15, 20, 49-110, App. E, Figure E-1; Ridder Decl. ¶¶ 34-36, App. C, *with* Ex. 8.
[99] ECF No. 24 § VIII(A); Attachment A at Item 23.
[100] ECF No. 88 ¶ 3.
[101] Ex. 4 at 133.
[102] *See* Stewart Decl. ¶¶ 4-6; Ex. 5; Ex. 6; Ex. 7 at 177; Ex. 8.
[103] *Compare* Clegg Decl. ¶¶ 15, 20, 49-100, 114, App. E, Figure E-1; Ridder Decl. ¶¶ 34-36, App. C, E, *with* Exs. 7-8.

16

held over [Redacted] ETH, not the [Redacted] ETH he disclosed.[104] Thus, Wen failed to disclose at least [Redacted] ETH (worth over $[Redacted] as of October 25, 2019) on his Amended Financial Statement.[105] Wen has not disclosed these BTC and additional ETH holdings at any time as required by the TRO and the Disclosure Order.[106]

Accordingly, Wen should be held in contempt for violating the asset disclosure requirements of this Court's orders.

**C. Wen Has Violated This Court's Orders by Transferring or Dissipating at Least [Redacted] BTC and [Redacted] ETH Since Entry of the TRO.**

The evidence shows that Wen has violated this Court's asset freeze orders by dissipating at least [Redacted] BTC and [Redacted] ETH (worth over $Redacted) since entry of the TRO.[107] The TRO and PI Orders froze Wen's assets, including his cryptocurrency, from the time of service of the TRO on October 25, 2019, until entry of a final judgment in this matter.[108]

As discussed above, the evidence shows that Wen held over [Redacted] undisclosed BTC as of October 25, 2019.[109] But as of the date of Ms. Clegg's

---

[104] *Compare* Clegg Decl. ¶¶ 15, 101-110, *with* Ex. 8 at 188.
[105] *Compare* Clegg Decl. ¶¶ 15, 101-110; Ridder Decl. ¶ 35, App. C, *with* Ex. 8 at 188.
[106] *See* Exs. 4, 7-9, 17-18; ECF No. 24 § VIII(A); ECF No. 277 at 8-9.
[107] *See* Clegg Decl. ¶¶ 18, 62-66, 101-113, App. E, Figure E-19; Ridder Decl. ¶¶ 38-42, Apps. D, E. The total value of these assets at the time of each transfer was over $Redacted, based on the low market price on the date of each respective transfer from the unhosted wallet address or exchange account that Ms. Clegg attributes to Wen. Ridder Decl. ¶¶ 38-42, Apps. D, E.
[108] *See* ECF No. 24 § VI(A); ECF No. 103 § VI(A). Both orders broadly defined "Asset" as "any legal or equitable interest in, right to, or claim to any real, personal, or intellectual property owned or controlled by, or held, in whole or in part for the benefit of, or subject to access by any Defendant or Relief Defendant, wherever located." ECF No. 24 at 4-5; ECF No. 103 at 5-6.
[109] *See* Clegg Decl. ¶¶ 15, 20, 49-100, App. E, Figure E-1; Ridder Decl. ¶¶ 34-36, App. B-1.

1   report, the evidence shows that he only holds about [Redacted] undisclosed BTC.[110]

2   Thus, the evidence shows that Wen has dissipated at least [Redacted] BTC, specifically

3   through over 200 transactions using the "Dan Dai" Bitmex account from

4   October 27, 2019, through October 2, 2020.[111] Further, the evidence shows that

5   from March 27 through October 24, 2020, ETH addresses that held Wen's

6   cryptocurrency executed 20 transfers totaling over [Redacted] ETH.[112]

7           In response to this Court's Disclosure Order requiring that he disclose all

8   cryptocurrency transfers through March 16, 2021, Wen invoked the privilege

9   against self-incrimination and declined to respond.[113] The Bureau and Ms.

10  Clegg have not definitively confirmed who received the approximately [Redacted]

11  BTC and [Redacted] ETH, including because Wen has invoked the self-incrimination

12  privilege.[114]

13          Accordingly, Wen should be held in contempt for violating the asset

14  freeze provisions of the PI Order.

15  **D. An Adverse Inference and Other Relief Against Wen Is**

16  **Warranted**

17          In civil matters, courts may draw adverse inferences against parties who

18

19  _____

20  [110] *See* Clegg Decl. ¶¶ 16, 20, 61, 67-100, App. E, Figure E-1; Ridder Decl.
    ¶¶ 33-34, App. B-1. These figures do not include the about [Redacted] Bitcoin that Wen

21  has held at his account at Binance.com since at least October 25, 2019. Clegg
    Decl. ¶ 20; Ridder Decl. ¶¶ 35, 37.

22  [111] *See* Clegg Decl. ¶¶ 62-66; Ridder Decl. ¶¶ 40-41, App. E.

23  [112] *See* Clegg Decl. ¶¶ 18, 101-113, App. E, Figure E-19; Wen Dep. Tr. at
    78:18-81:15, 96:2-12, 99:10-100:14, 103:8-105:7; Ex. 13 at 283-88.

24  [113] ECF No. 277 at 8-10; Ex. 9.

25  [114] *See* Clegg Decl. ¶ 112, 114-115; Ridder Decl. 40-41, App. E. The evidence
    suggests that Wen may have used frozen assets to pay his expenses. For

26  example, Wen stated that on July 13, 2020, his former attorneys demanded that
    he and Kim pay an additional retainer of $30,000. ECF No. 206-1 ¶ 23. The

27  next day, the person controlling one of the ETH addresses that Wen states held

28  his ETH transferred about [Redacted] ETH from that address (worth over $[Redacted] at the
    time). Clegg Decl. ¶ 111, App. E, Figure E-19; Ridder Decl. ¶ 38, App. D.

18

[REDACTED] MEMORANDUM IN SUPPORT OF PLAINTIFF'S RENEWED MOTION FOR ORDER TO SHOW CAUSE WHY
DEFENDANT WEN SHOULD NOT BE HELD IN CONTEMPT AND FOR RELATED RELIEF

assert the Fifth Amendment privilege against self-incrimination where there is: 1) independent evidence of the fact about which the party refuses to testify; 2) a substantial need for the information; and 3) not another less burdensome way of obtaining the information.[115] When the court draws an adverse inference, it may shift the burden of proof to the defendant to disprove the fact at issue.[116] Further, a court may preclude a party from putting on evidence in support of positions that he has refused to provide evidence on by invoking the self-incrimination privilege.[117] Here, there is ample evidence showing Wen's contemptuous conduct, but the Court can also draw adverse inferences based on Wen's invocation of the privilege against self-incrimination.

Specifically, this Court can draw an adverse inference that Wen owned or controlled about ~~Redacted~~ undisclosed BTC and about ~~Redacted~~ undisclosed ETH as of October 25, 2019. Wen invoked the privilege against self-incrimination when asked about his cryptocurrency holdings and transactions leading up to and after entry of the TRO, including when directed by this Court's Disclosure Order to list each virtual currency address that he owned or controlled from January 1, 2014, through March 16, 2021.[118] Wen also invoked the privilege when specifically asked about his interest in 22 BTC addresses and the exchange account where Ms. Clegg concluded Wen most likely held cryptocurrency as of October 25, 2019.[119]

---

[115] *See Nationwide Life Ins. Co. v. Richards*, 541 F.3d 903, 911-12 (9th Cir. 2008); *see also CFTC v. Driver*, 877 F. Supp. 2d 968, 976–77 (C.D. Cal. 2012) (drawing adverse inference with respect to "every question to which [the party] asserted his Fifth Amendment privilege.")

[116] *See SEC v. Colello*, 139 F.3d 674, 677-78 (9th Cir. 1998).

[117] *See SEC v. Premier Holding Corp.*, No. SACV1800813CJC(KESX), 2020 WL 8099514, at *5 (C.D. Cal. Nov. 30, 2020) (citing *Colello*, 139 F.3d at 678).

[118] *See, e.g.*, ECF No. 277 at 8; Ex. 9.

[119] *See* Ex. 17 at 366-68; Ex. 18 at 377-79, 381-83. As for the remaining two BTC addresses where Ms. Clegg concludes Wen held BTC, the Bureau had not

19

[REDACTED] MEMORANDUM IN SUPPORT OF PLAINTIFF'S RENEWED MOTION FOR ORDER TO SHOW CAUSE WHY DEFENDANT WEN SHOULD NOT BE HELD IN CONTEMPT AND FOR RELATED RELIEF

This Court can also draw an adverse inference that Wen violated the asset freeze by dissipating at least [Redacted] BTC and [Redacted] ETH, including by engaging in over 200 Bitmex.com transactions and causing 20 ETH transfers from entry of the TRO through October 24, 2020. Wen invoked the privilege against self-incrimination when asked to list all his cryptocurrency transfers from before the TRO through March 16, 2021.[120] Also, when Bureau staff specifically asked Wen during his deposition if he caused over [Redacted] in post-TRO ETH transfers, Wen declined to answer and invoked the privilege against self-incrimination.[121]

The factors that courts consider when drawing an adverse inference are present here. First, and as discussed above, there is significant evidence that supports drawing these inferences. Second, there is a substantial need for Wen's responses to the Disclosure Order, and the above-referenced discovery and deposition questions, all of which go to whether Wen violated this Court's Preliminary Orders by concealing and dissipating Redacted of cryptocurrency. Third, the Bureau is not aware of a less burdensome way to

---

attributed those addresses to Wen at the time it issued the discovery, so they were not specifically referenced in the discovery. Nonetheless, an adverse inference is appropriate because Wen invoked the privilege when asked about the Bitmex.com account that fully funded one of the addresses (3Mskr) and the other address (1XSB1) was controlled by the same person controlling 12 of the addresses identified in the discovery that Wen declined to state his ownership interest in, instead invoking the self-incrimination privilege. *See* Ex. 17 at 366-68 (listing 12 addresses at Interrogatory 6 and Bitmex.com account at Interrogatory 9); Ex. 18 at 377-79, 381-83 (Wen's invocation of the Fifth Amendment in response to questions about his interest in the 12 addresses and the "Dan Dai" Bitmex.com account); Clegg Decl. ¶¶ 71, 81, App. E, Figure E-6 (identifying transaction showing control by same person who controlled 12 addresses), Figure E-9 (showing the address funded by "Dan Dai" Bitmex.com account). Further, Wen's invocation of the Fifth Amendment in response to the Disclosure Order supports the inference as to the two addresses. *See* ECF No. 277; Ex. 9.

[120] *See* ECF No. 277 at 8-9; Ex. 9.
[121] *See* Wen Dep. Tr. 125-130.

obtain the information, where only the person controlling the unhosted wallet addresses at issue can conclusively verify ownership.[122] As for the "Dan Dai" Bitmex account, Bitmex exchange documents show that the account holder never provided any identifying documents or information beyond a generic username (Redacted) and email Redacted, presumably because Wen sought to avoid attribution to him.[123] Nor have searches of available databases identified a "Dan Dai" associated with the Redacted email address.[124] And as for the ETH holdings, Wen claimed he did not know "Sea's" full name and invoked the privilege against self-incrimination in response to discovery seeking all documents reflecting his interactions or transactions with "Sea" involving cryptocurrency.[125]

Accordingly, adverse inferences regarding Wen's cryptocurrency holdings and dissipation, as set forth above, are warranted.[126] Further, given Wen's invocation of the self-incrimination privilege in response to discovery about his cryptocurrency dealings with "Sea," including his refusal to turn over electronic messages with "Sea," Wen should be precluded from putting on evidence that "Sea" controls the two ETH addresses that hold his cryptocurrency or that those addresses have held ETH for anyone but Wen.[127]

---

[122] Clegg Decl. ¶¶ 28, 33, 114-115.
[123] *See* Ridder Decl. ¶ 32, App. A; Ex. 28-29.
[124] *See* Ridder Decl. ¶¶ 30-31.
[125] *See* Ex. 14; Wen Dep. Tr. at 64:13-16, 85:10-21.
[126] *See Nationwide Life*, 541 F.3d at 911-13; *Premier Holding*, 2020 WL 8099514, at *9 (making adverse inferences); *United States v. Harding*, No. 219CV00871WBS(CKD), 2020 WL 838439, at *4 (E.D. Cal. Feb. 20, 2020) (noting that when a defendant invoked the self-incrimination privilege, the court could draw an adverse inference related to the questions that prompted the invocation), *report and recommendation adopted*, No. 219CV00871WBSCKD, 2020 WL 1234633 (E.D. Cal. Mar. 13, 2020).
[127] *See Premier Holding*, 2020 WL 8099514, at *5; *see also Colello*, 139 F.3d at 677-78. Wen claimed to have communicated with "Sea" via WeChat, a

## IV.   REQUESTED RELIEF

Because Wen violated the accounting and asset freeze provisions of the TRO and PI Order, he should be ordered to show cause as to why he should not be held in contempt.[128] District courts have broad authority to order appropriate relief in civil contempt proceedings.[129] Sanctions for civil contempt must either coerce the contemnor into compliance with a court order or compensate the moving party for losses sustained.[130] Coercive sanctions may include daily fines or imprisonment until such time as the contempt is purged.[131] In fashioning a coercive sanction, courts "consider the character and magnitude of the harm threatened by continued contumacy, and the probable effectiveness of any suggested sanction in bringing about the result desired."[132] Compensatory awards may "compensate the contemnor's adversary for the injuries which result from the noncompliance."[133] Thus, upon a finding of contempt for transferring or concealing assets in violation of a temporary asset freeze, courts have ordered the contemnor to transfer the dissipated or concealed assets to a court-appointed receiver.[134]

---

messaging app, but refused to turn over the messages and invoked the self-incrimination privilege. *See* Wen Dep. Tr. 64:17-22; Ex. 13 at 297; Ex. 14 at 310-11.

[128] *See Affordable Media,* 179 F.3d at 1239, 1243; *Cardiff*, 2020 WL 2084677, at *3; *Kutzner*, 2017 WL 2985397, at *11.

[129] *See UMWA*, 512 U.S. at 831; *EDebitPay*, 695 F.3d at 945 (citation omitted).

[130] *See UMWA*, 512 U.S. at 829.

[131] *See id*.

[132] *United States v. United Mine Workers of Am.*, 330 U.S. 258, 304 (1947).

[133] *In re Crystal Palace Gambling Hall, Inc.*, 817 F.2d 1361, 1366 (9th Cir. 1987).

[134] *See, e.g.*, *Cardiff*, 2020 WL 2084677, at *3 (finding contempt for dissipating frozen assets and ordering assets turned over to a receiver); *Kutzner*, 2017 WL 2985397, at *11 (finding contempt for dissipating frozen assets and ordering assets turned over to a receiver); *FTC v. Laptop & Desktop Repair, LLC*, No. 1:16-CV-3591-AT, 2016 WL 10805748, at *5 (N.D. Ga. Nov. 17, 2016)

Here, the evidence shows that Wen concealed and transferred Redacted cryptocurrency using unhosted wallet addresses and aliases in violation of this Court's asset freeze.[135] Unlike assets held in a bank account, cryptocurrency held at an unhosted wallet address cannot be frozen by a third party upon notice of this Court's Orders.[136] With respect to Wen's BTC and ETH most likely held at unhosted wallet addresses, only the person with control of the private key can ensure compliance with this Court's orders, and all evidence indicates that Wen controls or can control the private keys for these addresses.[137] Wen has demonstrated that he is unwilling to comply with this Court's orders and thus should be required to transfer cryptocurrency that he has concealed to the Receiver or to a third-party cryptocurrency exchange that is clearly under this Court's authority and can receive proper notice of, and ensure compliance with, the asset freeze pending resolution of this case on the merits.

Accordingly, the Bureau respectfully requests that the Court order:

1.    Wen to show cause why he should not be held in contempt for his violations of this Court's orders.

2.    Wen to transfer, to the Receiver or an account in Wen's name at a cryptocurrency exchange incorporated and headquartered in the United States, the amount of cryptocurrency that this Court concludes Wen has concealed or dissipated in violation of the asset freeze, which the Bureau asserts is Redacted BTC and Redacted ETH.[138]

---

(finding contempt for transferring frozen assets and failing to repatriate other assets, and ordering that all funds transferred or concealed be remitted to a receiver).

[135] *See* Clegg Decl. ¶¶ 15, 20, 49-110, 114, App. E, Figure E-1; Ridder Decl. ¶¶ 35-36, App. C.

[136] *See* Clegg Decl. ¶¶ 29, 33.

[137] *See* Clegg Decl. ¶¶ 114-115.

[138] *See* Clegg. Decl. ¶¶ 15, 111; Ridder Decl. App. C.

23

3.     To the extent that he has not already done so, Wen to transfer, to the Receiver or an account in Wen's name at a cryptocurrency exchange incorporated and headquartered in the United States, all other cryptocurrency assets that he holds as of the date of this Motion, which the Bureau asserts are at least <span style="color:red">Redacted</span> BTC and <span style="color:red">Redacted</span> BitTorrent held at Wen's Binance Account, and <span style="color:red">Redacted</span> ETH held at the 0x4D and 0x664 ETH addresses.[139]

4.     Wen to provide to the Bureau a sworn statement attesting to his compliance with item nos. 2-3 above within seven (7) business days of complying with those requirements, which statement must also identify the recipient of the transfers, including the name of the financial institution and account number to which he transferred the assets described in item nos. 2-3 to the extent those assets are not transferred to the Receiver.

5.     If he fails to comply with item nos. 2-4, Wen to pay a fine of $1,000 each day to coerce his compliance. If Wen is ordered to pay a fine, he should be ordered to provide a full accounting identifying all sources of funds used to pay the fine, including the account-holder name, account number, and financial institution from which the funds derived.

## V.     CONCLUSION

For the foregoing reasons, the Bureau respectfully requests that this Court grant the Bureau's renewed motion and order the requested relief set forth above and in the Proposed Order attached hereto.


Dated: April 8, 2022                    */s/ Jesse Stewart*

Jesse Stewart (N.Y. Bar No. 5145495)
*Admitted pro hac vice*
Email: jesse.stewart@cfpb.gov
*Attorney for Plaintiff Bureau of Consumer Financial Protection*

---

[139] *See* Clegg. Decl. ¶ 101; Ridder Decl. ¶¶ 24-25, 33, App. B-2; Exs. 26-27.