# EXHIBIT 1

## SETTLEMENT AGREEMENT AND INSURANCE POLICIES RELEASE

This Settlement Agreement and Insurance Policies Release (the "Agreement") is entered into by and between Federal Insurance Company ("Federal") on the one hand and Thomas W. McNamara, as the Court-appointed Receiver in *Bureau of Consumer Financial Protection, et al. v. Consumer Advocacy Center Inc., et al.*, U.S.D.C. (C.D. Cal.), Case No. 8:19-cv-01998-MWF (KSx) (the "Receiver") on the other. Collectively, Federal and the Receiver are referred to herein as the "Parties" or may be referred to individually as a "Party."

WHEREAS, Federal issued to Brea Financial Group, LLC dba Pub Club Leads ("Brea") ForeFront Portfolio 3.0 Policy No. 8260-0671, effective August 19, 2019 to August 19, 2020 (the "2019 Policy");

WHEREAS, Federal issued to Brea ForeFront Portfolio 3.0 Policy No. 8260-0671, effective August 19, 2020 to August 19, 2021 (the "2020 Policy");

WHEREAS, together, the 2019 Policy and the 2020 Policy will be referenced herein as the "Federal Policies;"

WHEREAS, in or about January 2019, Consumer Advocacy Center, Inc., as debtor, commenced a bankruptcy court action against Brea, and its principal, Adam Sthay ("Mr. Sthay") captioned *In Re Consumer Advocacy Center Inc.*, U.S. Bankruptcy Court (S.D. Fla.), Case No. 19010655, (the "Bankruptcy Action");

WHEREAS, on or about October 19, 2019, various governmental entities commenced an action captioned *Bureau of Consumer Financial Protection, et al. v. Consumer Advocacy Center Inc., et al.,* U.S. District Court (C.D. Cal.), Case No. 8:19-cv-01998-MWF (KSx), which involved various entities for which Brea provided services (the CFPB Action");

WHEREAS, during the course of the CFPB Action, the Receiver asserted certain claims and made demand upon Brea and Mr. Sthay (the "Receiver Action");

WHEREAS, together, the Bankruptcy Action and the Receiver Action are referred to herein as the "Actions;"

WHEREAS, in or about September 2020 and again on April 1, 2021, Brea and Mr. Sthay tendered the Actions to Federal for a defense and indemnity under the Federal Policies (the "Coverage Demand");

WHEREAS, Federal responded to the Coverage Demand for the Bankruptcy Action by declining coverage under the Federal Policies;

WHEREAS, on July 28, 2021, Brea and Mr. Sthay settled the Actions for an amount which required their personal contribution of $300,000.00;

1

EXHIBIT 1
Page 2

WHEREAS, on or about August 3, 2021, Brea and Mr. Sthay assigned all rights with respect to the Receiver Action and the Bankruptcy Action under the Policies to the Receiver, including the right to pursue defense costs incurred and indemnity ("the Assigned Claims");

WHEREAS, on or about January 6, 2022, the Receiver tendered a demand for defense reimbursement and indemnity to Federal under the Policies based on the Assigned Claims with respect to each and both of the Actions;

WHEREAS, Federal disputes any duty or obligation to defend or indemnify any person or entity for the Actions under each and both of the Federal Policies;

WHEREAS, the parties to the Actions have agreed to settle the Assigned Claims arising from the Actions as set forth in  the Coverage Demand for a total payment by Federal to the Receiver of $245,000.00 in full and final resolution of the Coverage Demand and the Actions;

WHEREAS, Federal and the Receiver wish to finally and completely resolve, compromise, and settle all disputes, claims, and controversies between and among them concerning the Coverage Demand, the Actions and the Federal Policies; and

NOW, THEREFORE, in consideration of the mutual promises, covenants, and agreements set forth herein, the Parties hereby agree as follows:

## 1.   <u>Indemnity Payment by Federal</u>

Contingent upon the Court's approval of this Agreement in the CFPB Action, Federal and the Receiver agree that within twenty (20) days of the date of the Court's approval of this Agreement, Federal will pay to the Receiver the total amount of $245,000.00 under the Federal Policies in return for a full and final claim Release and a full and final Release under each and both of the Federal Policies, as set forth in paragraph 2 herein.

Within seven (7) days of the complete execution of this Agreement, the Receiver shall file a motion in the CFPB Action seeking the District Court's approval of this Agreement.  The Parties shall take all reasonably necessary actions that may become necessary to secure a prompt and favorable determination by the District Court.

In the event that the District Court does <u>not</u> approve of this Agreement, the Parties shall meet and confer and make all reasonably necessary changes to the Agreement, provided that the changes remain consistent with the terms of this Agreement, and then promptly reapply for approval.

The Parties' obligations under this section shall continue until the Parties reasonably determine that material changes to the terms of this Agreement are required in order to secure approval of the Agreement by the District Court.  In such an event, the Parties shall have the option to continue settlement negotiations or declare an impasse, in which event this Agreement and all exhibits hereto are null and void.

EXHIBIT 1
Page 3

2.    **Mutual Release and Discharge**

Each Party, on its own behalf and on behalf of its predecessors, successors and assigns, past, present and future directors, officers, shareholders, parent corporations, holding companies, affiliates, subsidiaries, principals, agents, servants, representatives, executors, trustees, administrators, guardians, conservators, insurers, reinsurers, claims handlers, legal counsel and employees, intending to be legally bound thereby, agrees to forever release, discharge and acquit each other Party and its respective predecessors, successors and assigns, past, present and future directors, officers, shareholders, parent corporations, holding companies, affiliates, subsidiaries, principals, agents, servants, representatives, insurers, reinsurers, claims handlers, legal counsel and employees from any and all claims, liabilities, causes of action, suits, charges, complaints, obligations, damages, and expenses (including but not limited to attorneys' fees and costs actually incurred) ("Claims"), whether those Claims are known or unknown, suspected or unsuspected, asserted or unasserted, fixed or contingent, or whether those Claims are based in tort, contract, negligence, statutory or regulatory right, or other statutory code violations, bad faith, breach of fiduciary duty, fraud, breach of professional standard of care, malice or oppression or any other legal theory or right arising from, based upon, attributable to, regarding or relating to the Coverage Demand, the Actions, and the Federal Policies, except for enforcement of any rights under this Agreement.

It is expressly understood by each of the Parties that this Agreement constitutes a complete and final release, discharge and acquittal between and among the Parties with respect to any and all past or present liability, claims, demands, rights and causes of action, guarantees, claims for compensatory or punitive damages and other damages of any kind or nature whatsoever, settlements, costs, attorneys' fees, and/or interest arising from, regarding or relating to any and all of the Actions, the Coverage Demand and the Federal Policies.

3.    **Release of Unknown Claims**

The Parties acknowledge the provisions of California Civil Code, Section 1542, which states:

> A general release does not extend to claims that the creditor or releasing party does not know or suspect to exist in his or her favor at the time of executing the release and that, if known by him or her, would have materially affected his or her settlement with the debtor or released party.

The Parties expressly waive the benefits of California Civil Code, Section 1542, and all laws of any other jurisdiction of similar force and effect, and acknowledge and agree that this Agreement is a general release that covers all claims, whether known or unknown, suspected or unsuspected, liquidated or unliquidated, matured or unmatured with respect to the Actions and the Assigned Claims.  The Parties expressly assume the risk of releasing claims that may not be known or suspected at this time, whether through ignorance, oversight, error, negligence, or otherwise. The Parties do hereby forever waive any and all claims that they may not know about or suspect to exist, and that, if known, would materially affect the decision to enter into this Agreement and general release.

3

EXHIBIT 1
Page 4

### 4.   No Admission of Liability or Coverage

The Parties acknowledge that this Agreement is a compromise of disputed claims involving contested issues of law and fact, and that the payment to be made by Federal hereunder does not constitute an admission (a) of liability or any alleged unfulfilled duty or obligation to defend or indemnify Brea or Mr. Sthay arising from, regarding or relating to the Actions, the Assigned Claims, the Coverage Demand and the Federal Policies, or (b) of coverage, defense or indemnity for Brea and Mr. Sthay under the Federal Policies arising from, regarding or relating to the Coverage Demand, the Assigned Claims and the Actions.

### 5.   Warranties by the Receiver

In return for the consideration committed hereunder by Federal, the Receiver represents and warrant the following as of the date of this Agreement, subject to Court-approval of this Agreement:

(a)    Before executing this Agreement, the Receiver became fully informed of the terms, contents, conditions, and effect of this Agreement;

(b)    The Receiver has taken all necessary corporate and legal action to authorize the execution, delivery, and performance of this Agreement;

(c)    The person who signs this Agreement on the Receiver's behalf has all requisite authority therefore and, when executed by Receiver, the Agreement will be binding on it;

(d)    This Agreement has been duly executed and delivered by Receiver and it constitutes a legal, valid, and binding obligation of Receiver and is enforceable against each and all of them in accordance with its terms;

(e)    No promise or representation of any kind has been made to Receiver by anyone acting for or behalf of Federal except as is expressly stated in this Agreement;

(f)    The Receiver has not sold, assigned, transferred, conveyed or otherwise disposed of any claim, demand or right surrendered by virtue of this Agreement;

(g)    In entering into this Agreement, the Receiver has had the benefit of the advice of lawyers and consultants of their own choosing, and they enter into this Agreement freely, by its own choice and judgment, and without duress or other influence;

### 6.   Third Party Beneficiaries

This Agreement shall not confer on any third person any right or benefit.  Nothing herein will be deemed to confer, or be interpreted as conferring, to any third person any right to institute suit against any Party for purposes of obtaining any right or benefit under this Agreement.  No part of this Agreement, its negotiations, development, implementation, or performance, may be used in any manner in any action, suit, claim or proceeding by any person (except in a legal proceeding or mediation to enforce any of the rights, duties, or obligations created by or arising from,

4

EXHIBIT 1
Page 5

regarding or relating to this Agreement) as evidence of the rights, duties, or obligations of any
Party with respect to matters, persons, or entities outside the scope of this Agreement.

### 7.   Admissibility

Neither the terms of this Agreement nor its negotiation or execution, nor any payment made, to
be made, or accepted in accordance herewith shall be disclosed by any of the Parties in any court
of law or equity, or in any proceeding, or revealed to any third party, as evidence of any
particular interpretation of the Federal Policies, including but not limited to interpretation of the
Federal Policies with respect to the Coverage Demand or the Actions.  The Parties further agree
that, as an essential and integral part of this Agreement, such matters are not intended to be, nor
shall they in fact be, admissible or relevant in any lawsuit, counterclaim action, cross-claim
action, or proceeding to prove either the acceptance by a Party of any particular theory of
coverage or as evidence of any obligations that any Party has or may have under any policies of
insurance.  This bar does not apply to any lawsuit, counterclaim action, cross-claim action, or
proceeding to enforce this Agreement.

### 8.   Construction

Each and all of the Parties have participated in the drafting of this Agreement.  In entering into
this Agreement, the Parties represent they have relied upon the legal advice of their attorneys.
This Agreement shall be construed fairly as to all Parties and not in favor of or against any of the
Parties regardless of which of the Parties prepared this Agreement, and the Parties hereby waive
California Civil Code § 1654, and all laws of any other jurisdiction of similar force and effect.

### 9.   Entire Agreement

Except as regards the litigation or mediation of any disputes over the rights, duties, or obligations
created by or arising from, regarding or relating to this Agreement, this Agreement constitutes
the entire agreement between the Parties concerning the subject matter hereof and supersedes
any prior communications, agreements, and understandings, whether written or oral, concerning
the subject matter hereof.  The Parties, respectively, acknowledge that, in entering into this
Agreement, they have not relied upon any statements or representations of each other that are not
expressly set forth herein.

### 10.   Headings

The headings of the sections of this Agreement are for purposes of organization and reference
only and do not constitute terms of this Agreement to be used in the interpretation or construction
of this Agreement.

### 11.   Predecessors, Successors and Assigns

The rights, duties, and obligations set forth herein shall inure to the benefit of, and be binding
upon, any and all the Parties' respective predecessors, successors, officers, directors, employees,
receivers, liquidators and assigns.  Nothing contained herein shall confer any rights, benefits, or
defenses upon any entity or individual not a party hereto.

EXHIBIT 1
Page 6

### 12.    Assignment

No assignment of this Agreement or any of the rights or obligations hereunder shall be made by any Party without the prior written consent of the other Party.

### 13.    Modification

This Agreement may not be modified, amended, or terminated orally, and no term hereof may be waived orally.  No modification, amendment, termination, or any claimed waiver of any provision of this Agreement shall be binding unless contained in writing expressly stating the Parties' intention to modify, amend, or terminate this Agreement, which writing is signed by all of the Parties.

### 14.    Severability

If any provision of this Agreement is held invalid in a court of competent jurisdiction, its invalidity shall not affect other provisions or applications of this Agreement which can be given effect without the invalid provisions or application, and, to this end, the provisions of this Agreement are declared to be severable.

### 15.    Counterparts

This Agreement may be executed in counterparts with the same effect as if the signatures were upon the same document.  Faxed or photocopied signatures below shall be considered as valid signatures.

### 16.    Effective Date

This Agreement shall be effective as of the date it is fully executed.

IN WITNESS WHEREOF, the Parties have executed this Agreement by their duly authorized representatives as of the dates set forth below:


FOR: FEDERAL INSURANCE COMPANY

By: _____

Name: __JEFFREY SORKIN__

Title: __VICE PRESIDENT__

Date: __5/27/2022__

6

EXHIBIT 1
Page 7

FOR:   THOMAS W. MCNAMARA, AS THE
COURT-APPOINTED RECEIVER IN *BUREAU
OF CONSUMER FINANCIAL PROTECTION,
ET AL. V. CONSUMER ADVOCACY CENTER
INC., ET AL.*, U.S.D.C. (C.D. CAL.), CASE NO.
8:19-CV-01998-MWF (KSx)

By: _____
　　　Thomas W. McNamara, Court-appointed
　　　Receiver

Date: May 16, 2022

7

EXHIBIT 1
Page 8