Andrew M. Greene (SBN 167386)
agreene@mcnamarallp.com
Cornelia J. B. Gordon (SBN 320207)
cgordon@mcnamarallp.com
McNamara Smith LLP
655 West Broadway, Suite 900
San Diego, California 92101
Telephone: 619-269-0400
Facsimile:  619-269-0401

*Attorneys for Receiver,
Thomas W. McNamara*

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| Bureau of Consumer Financial Protection; et al., <br><br> Plaintiffs, <br><br> v. <br><br> Consumer Advocacy Center Inc., d/b/a Premier Student Loan Center; et al., <br><br> Defendants. | Case No. 8:19-cv-01998-MWF (KSx) <br><br> **RECEIVER'S FOURTH INTERIM STATUS REPORT** <br><br> JUDGE: Hon. Michael W. Fitzgerald <br> CTRM:  5A |

Thomas W. McNamara, as Court-appointed receiver ("Receiver"), submits this report of receivership activities for the period of November 1, 2021 through May 31, 2022.

## I.

## RECEIVERSHIP ACTIVITIES

During this period, the Receiver pursued the insurance claims assigned to him in a prior settlement with a third-party leads vendor and reached a settlement with the insurer which, if approved by the Court, will ultimately pay the Receivership Estate an additional $245,000 on top of the $675,000 previously-approved settlement with the leads vendor.  The Receiver also engaged in an

extensive privilege review and analysis of the expansive communications and documents in the Receivership Estate's possession and provided the results to the parties. In addition, the Receiver's team analyzed financial transactions and investigated potential receivership claims against additional third parties. Finally, the Receiver has continued to litigate claims against National Merchant Center, Inc. ("NMC"), a third-party independent sales organization, and its employee/agent, defeating in large part NMC's motion to dismiss and commencing discovery in the case.

**A. Settlement With Insurer**

As discussed in the Receiver's previous status report, on October 20, 2021, the Receiver conducted a mediation with Defendants' embedded lead provider, The Brea Financial Group, LLC d/b/a Pub Club Leads, and its individual owner (collectively "Pub Club"). As a result of the mediation, the Receiver reached a prelitigation settlement which required Pub Club to pay a total of $675,000[1] to the Receivership Estate and which was approved by the Court. (ECF No. 341.) As part of that settlement, Pub Club assigned to the Receiver its rights to pursue claims against one of its insurers, which had refused to participate in the mediation and was not included in the settlement. The Receiver consulted with Pub Club's insurance coverage counsel regarding the viability of the assigned claims and ultimately retained that counsel to pursue the claims.

The Receiver's team then coordinated with coverage counsel to prepare a demand letter to the insurer, seeking payment of $314,612.16 – the amount Pub Club had contributed towards its settlement with the Receiver, in addition to Pub Club's defense costs paid to its counsel. Following negotiation with the insurer through its counsel, the insurer ultimately agreed to pay the Receivership Estate $245,000 in settlement of the assigned claims. The parties signed a settlement

[1] $75,000 of the Pub Club settlement amount is being paid in ten equal monthly installments, which payments are current and ongoing.

agreement, effective May 27, 2022, which was submitted for Court approval on May 31, 2022. (ECF No. 380).[2]

### B. Attorney-Client Privilege Review

As part of the immediate access of defendants' offices, the Receiver took control of a large amount of electronic evidence, including emails and documents. This electronic evidence included communications between defendants and counsel which were arguably privileged. To protect the potentially privileged documents, the CFPB immediately put up an electronic screen in which these documents were segregated and unavailable to the plaintiffs. Late last year, the CFPB inquired whether the Receiver would waive the Receivership Defendants' privilege so the plaintiffs could access the screened-off documents. The Receiver, standing in the shoes of the Receivership Defendant entities, has the power to waive the entities' attorney-client privilege. However, as the Receiver's team examined the issue, they learned the issue was much more complex in this situation. For example, there was a not-insubstantial quantity of receivership records that were arguably privileged and for which the privilege at issue potentially belonged to a person or entity which was not a Receivership Defendant. After a targeted review of these potentially privileged documents, the Receiver's team determined there were three categories of representations which would need to be assessed: individual representations, representations of Defendant Consumer Advocacy Center, Inc. ("CAC," the entity in bankruptcy[3]), and joint representations of the Receivership Defendants and others.

---

[2] At the same time of the settlement, Pub Club also settled with the bankruptcy trustee for Consumer Advocacy Center, Inc. ("CAC"), a predecessor entity to the SLAM Receivership Entities. That settlement was for an additional $200,000. When the settlement by the two fiduciaries (the Bankruptcy Trustee and the Receiver) are combined, Pub Club and its insurers will be returning $1,120,000 to the two related estates.

[3] While CAC was part of Defendants' student loan debt relief scheme, it was not named as a Receivership Defendant due to the pre-existing bankruptcy.

The Receiver began by reaching out to counsel for the individual Defendants to ask for a list of firms and attorneys who represented their clients solely in their individual capacity, as these were privileges were clearly not the Receiver's to waive. The Receiver also reached out to counsel for the trustee in CAC's bankruptcy to discuss the handling and segregation of CAC's privileged materials, for which the Receiver was likewise not the holder of the privilege. The last category of representations, the joint representations, involved representations of Receivership Defendant entities *and* other parties, with these representations having varying structures. Because it was not immediately clear whether the Receiver could waive the privilege for these joint representations, his team extensively researched the issue. At the conclusion of his research and his discussions with the individuals' and CAC's respective counsels, the Receiver was able to advise the CFPB as to the specific representations for which he was able to waive privilege and to identify those for which he was not.

## C.   Further Investigation of Potential Claims

The Receiver continued to investigate additional individuals and companies that may have aided and abetted or profited from the Defendants' student loan debt relief scheme at the expense of the Receivership Defendants. The Receiver ultimately determined, however, that it would not be in the best interests of the Receivership Estate to pursue additional claims at this time. Should the Receiver learn additional facts which would change that determination, the Court will be promptly notified.

## D.   Lawsuit Against the NMC Defendants

In June 2021, the Receiver filed suit against National Merchant Center Inc., Shih-Hao Lai a/k/a Jimmy Lai, and Swift Payments (collectively the "NMC Defendants"). *See McNamara v. National Merchant Center, Inc., et al.*, C.D. Cal. Case No. 8:21-cv-01122-MWF (KSx) (the "NMC Case"). The case has been active since the Receiver's last interim report. During that time, the Receiver

opposed a motion to dismiss filed by the NMC Defendants and argued the merits of that motion at hearing, after which he succeeded in defeating NMC's motion as to all but one claim. *See* NMC Case, ECF No. 33 (denying the NMC Defendants' Motion to Dismiss the Receiver's First Amended Complaint ("FAC") as to all of the Receiver's claims with the exception of his claim for an accounting).

Rather than amend, the Receiver chose to stand on his FAC. The NMC Defendants subsequently answered and asserted counterclaims against the Receiver. The Receiver moved to dismiss the counterclaims (see NMC Case, ECF No. 41), and after an in-person oral argument, the Court granted the motion on procedural grounds (see NMC Case, ECF No. 51). While litigating the motion to dismiss the NMC Defendants' counterclaims, the Receiver also initiated discovery, scheduling multiple depositions and propounding substantial written and document discovery. As the case ramps up, the costs and fees of pursuing it have also increased. The discovery the Receiver has conducted to date, however, has only strengthened his claims and his belief in their ultimate viability.

## II.

## RECEIVERSHIP ACCOUNTING

Attached as Exhibit A is a Receipts and Disbursements Summary for the period November 1, 2021 through May 31, 2022. During this time period, receipts were $782,797.97, comprised of settlement funds from The Brea Financial Group d/b/a Pub Club Leads ($652,500.00), True Count Staffing IOLTA funds from former counsel ($113,272.95), and the sale of remaining assets ($14,000.00). Disbursements were $3,057,489.28, primarily comprised of Court-ordered distributions to Plaintiffs ($2,881,314.24), Court-approved professional fees ($47,230.50 fees of the Receiver and his staff; $118,152.44 fees and expenses of the Receiver's counsel, including McNamara Smith LLC, Huntington Legal Solutions, and Hirsch Closson, Relativity database hosting ($6,808.85), and

///

maintenance of numerous consumer-facing telephone lines ($2,450.00).  The current aggregate balance of the bank accounts as of May 31, 2022 is $1,513,056.39.

Dated:  June 30, 2022   By:   /s/ Andrew M. Greene
Andrew M. Greene
*Attorney for Receiver,*
*Thomas W. McNamara*

# CERTIFICATE OF SERVICE

I hereby certify that on the 30th day of June, 2022, I caused the foregoing to be electronically filed with the Clerk of the Court using the CM/ECF system, which will send notification of the filing to all participants in the case who are registered CM/ECF users.

 /s/ Andrew M. Greene
Andrew M. Greene
*Attorney for Receiver,*
*Thomas W. McNamara*