UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

**Case No.** CV 19-1998-MWF (KSx)             **Date:** October 7, 2022

**Title:** Bureau of Consumer Financial Protection v. Consumer Advocacy Ctr. et al.

**Present:** The Honorable MICHAEL W. FITZGERALD, U.S. District Judge

| Deputy Clerk: | Court Reporter: |
|---|---|
| Rita Sanchez | Not Reported |

| Attorneys Present for Plaintiff: | Attorneys Present for Defendant: |
|---|---|
| None Present | None Present |

**Proceedings (In Chambers):** ORDER GRANTING PLAINTIFF'S RENEWED MOTION FOR ORDER TO SHOW CAUSE WHY DEFENDANT WEN SHOULD NOT BE HELD IN CONTEMPT AND RELATED RELIEF [365]

    Before the Court is Plaintiff Consumer Financial Protection Bureau's ("Bureau") Motion for an Order to Show Cause Why Defendant Wen Should Not Be Held in Contempt and Related Relief (the "Motion"), filed on April 8, 2022. (Docket No. 365). Defendant Wen filed an Opposition on April 25, 2022. (Docket No. 367). Bureau filed a Reply on April 28, 2022. (Docket No. 369).

    The Court has read and considered the papers filed in connection with the Motion.

    The Motion was noticed to be heard on **June 6**, **2022**. The Court read and considered the papers on the Motion and deemed the matter appropriate for decision without oral argument. *See* Fed. R. Civ. P. 78(b); Local Rule 7-15. The hearing was therefore **VACATED** and removed from the Court's calendar. Vacating the hearing was also consistent with General Order 21-08 and Order of the Chief Judge 21-124 arising from the COVID-19 pandemic.

    For the reasons set forth below, the Motion is **GRANTED**. The Bureau's evidence provides clear and convincing proof that Defendant Wen has concealed and dissipated cryptocurrency in violation of the Court's prior orders to disclose and freeze assets. The Court **ORDERS** Defendant Wen to appear before the Court to show cause why he should not be held in contempt on **November 28, 2022**. The Court also

---

**CIVIL MINUTES—GENERAL**                                        1

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No. CV 19-1998-MWF (KSx)                         Date: October 7, 2022
Title:     Bureau of Consumer Financial Protection v. Consumer Advocacy Ctr. et al.

**ORDERS** Wen to immediately transfer the cryptocurrency assets listed below to the Receiver or an account in Wen's name at a cryptocurrency exchange incorporated and headquartered in the United States.

## I.    BACKGROUND

Plaintiffs initiated this action on October 21, 2019, alleging that Defendants were perpetrating a nationwide illegal student loan debt relief scheme. (*See* Complaint (Docket No. 2)). To minimize the likelihood that Defendants would conceal, transfer, or dispose of assets, Plaintiffs sought a temporary restraining order ("TRO") freezing Defendants' assets, appointing a receiver over the corporate Defendants, requiring Defendants to submit to a financial accounting, and requesting an order to show cause why a preliminary injunction ("PI") should not issue. (Docket No. 3). Magistrate Judge James V. Selna issued the TRO on October 21, 2019. (Docket No. 24). On November 15, 2019, Judge Selna issued a PI extending the asset freeze, financial accounting, and receivership provisions of the TRO until entry of final judgment (the "PI Order"). (Docket No. 103).

Pursuant to the TRO and PI Order's asset freeze provisions, individual Defendants are restrained and enjoined from:

> selling, liquidating, assigning, transferring, converting, loaning, hypothecating, disbursing, gifting, conveying, encumbering, pledging, concealing, dissipating, spending, withdrawing, or otherwise disposing of any asset that is:

1. owned or controlled, directly or indirectly, by any Defendant, including, but not limited to those for which a Defendant is a signatory on the account;
2. held, in part or in whole, for the benefit of any Defendant
3. in the actual or constructive possession of any Defendant; or
4. in the actual or constructive possession of, or owned or controlled by, or subject to access by, or belonging to, any corporation, partnership,

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

| | |
|---|---|
| **Case No.** CV 19-1998-MWF (KSx) | **Date:** October 7, 2022 |
| **Title:** Bureau of Consumer Financial Protection v. Consumer Advocacy Ctr. et al. | |

> trust or other entity directly or indirectly owned, managed or controlled by any Defendant[.]

(TRO, VI; PI Order, VI).

The TRO also required each individual Defendant to complete (a) the "Individual Financial Statement," Attachment A to the TRO; (b) a sworn statement detailing all payments, transfers, or assignments of any asserts worth more than $5,000 or more since January 1, 2015; and (c) a detailed accounting, verified under oath, of all gross and net profits obtained from, derived from, or related in any way to the offer for sale or sale of any "Debt-Relief Product or Service" since January 1, 2015. (TRO, sec. 8). The PI Order requires each individual Defendant to provide this information to the extent that he or she had not already done so pursuant to the TRO. (PI Order, sec. 8).

Item 23 of the Individual Financial Statement, entitled "Other Assets," mandates that the defendant list the description, location, cost, acquisition cost, and value of "all other assets not identified above, held by you, your spouse, or your dependents, including but not limited to, patents and other intellectual property, and cryptocurrency and other virtual currencies." (TRO, Attachment A at 20).

Item 31 of the Individual Financial Statement, entitled "Transfer of Assets," mandates that the defendant list "each person to whom you have transferred, in the aggregate, more than $2,500 in funds or other assets during the previous three years by loan, gift, sale, or other transfer. For each such person, state the total amount transferred during that period." (*Id.* at 26).

Defendant Wen completed and executed the Individual Financial Statement on November 1, 2019. (Docket No. 256-3). Wen wrote "NONE" under Item 23, disclosing no cryptocurrency or virtual currency assets. (*Id.* at 20). Under Item 31, Wen disclosed that he transferred $3 million in funds derived from cryptocurrency trading, unrelated to the receivership entities, to his mother in 2018. (*Id.* at 40).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No. CV 19-1998-MWF (KSx)                  Date: October 7, 2022
Title:     Bureau of Consumer Financial Protection v. Consumer Advocacy Ctr. et al.

On November 7, 2020, Wen provided additional financial information to the Bureau (the "Amended Disclosure"). (Docket No. 256-6). Wen disclosed that from 2017 to 2018, his investments included "Various Initial Coin Offerings" — the cryptocurrency industry's equivalent to an initial public offering — in an amount "Not Readily Ascertainable Based on Available Records." (*Id.* at 4). Wen also amended Item 23 of his initial Individual Financial Statement, stating that his assets include Ethereum cryptocurrency, valued at approximately $640,000 as of November 1, 2019, which he acquired by converting Bitcoin. (*Id.* at 11).

On December 1, 2020, the Bureau issued expedited discovery requests to Wen seeking information about Wen's virtual currency and cryptocurrency, including that Wen identify (a) all virtual currency that Wen owned, controlled, or was held for his benefit from January 1, 2014, to November 19, 2020; (b) the location of any virtual currency wallet; and (c) the amount, date, origin, and persons involved in the transfers of all virtual currency. (Docket No. 256-10). On December 4, 2020, Wen objected to the Bureau's discovery requests and invoked his Fifth Amendment privilege against self-incrimination. (Docket No. 257-17).

Also on December 4, 2020, Wen executed a declaration stating that he "fully and unequivocally" committed to treating the Ethereum cryptocurrency currently in his "possession, custody, or control" as subject to the PI Order's asset freeze and would not "sell, pledge, transfer, or otherwise dispose or encumber" any of it until permitted to do so by court order (the "Wen Declaration"). (Docket No. 256-12 ¶ 1). Wen estimated that the value of his Ethereum cryptocurrency was $930,000. (*Id.* ¶ 4).

On December 18, 2020, after the Bureau had informed Wen's counsel that it planned to file the Motion, Wen submitted another amended financial statement (the "Second Amended Disclosure"). (Docket No. 256-15). Under Item 23, Wen stated that the value of the Ethereum cryptocurrency as of November 1, 2019, was "unknown," but "could be approximately $700,000." (*Id.* at 16). Wen also disclosed approximately $230,000 in Bitcoin, claiming that the Bitcoin did not belong to him but was borrowed in 2018 from an entity called "Sea." (*Id.* at 16, 17). Wen stated that he was "unable" to provide any additional information about these assets "due to the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

| | |
|---|---|
| **Case No.** CV 19-1998-MWF (KSx) | **Date:** October 7, 2022 |
| **Title:** Bureau of Consumer Financial Protection v. Consumer Advocacy Ctr. et al. | |

unstructured nature and volume of transactions during the relevant period, lack of available documentation, records, or information, and the volatility of cryptocurrency prices." (*Id.* at 16).

Under Item 31, Wen included several additional asset transfers between November 2016 and August 2019 that Wen did not disclose in his initial Individual Financial Statement, including hundreds of thousands of dollars in gifts to and payments on behalf of Wen's immediate family members. (*Id.* at 18-22).

Wen also executed another declaration, again stating that he was "fully and unequivocally" committed to treating the cryptocurrency identified in the amended financial statement as subject to the PI Order's asset freeze (the "Second Wen Declaration"). (Docket No. 256-16).

On March 1, 2021, Wen filed a supplement to Items 23 and 31 of his Individual Financial Statement, providing additional information related to his cryptocurrency assets (the "March 1, 2021 Supplement"). (Docket No. 275-1).

At his March 4, 2021, deposition, Wen invoked the Fifth Amendment privilege against self-incrimination in declining to answer multiple questions, including questions about the accuracy of his Original Financial Statement, transfers of his ETH cryptocurrency since the TRO, and his income and expenses since the TRO. (Docket No. 365, Ex. 13 Wen Dep. Tr., at 19:9-21:3, 83:22-84:4, 125:2-20, 126:2-20, 129:1-130:21, 135:10-137:7, 138:6-139:16).

On March 16, 2021, this Court ordered Wen to provide the Bureau with detailed cryptocurrency ownership and transfer information, in a sworn statement, on or before March 30, 2021. (Docket No. 277 ("Disclosure Order")). The Disclosure Order required Wen to identify, among other things, "all virtual currency addresses that Wen owned, controlled, or were held in Wen's benefit" within specified dates, "any associated virtual currency wallet," and "all payments, transfers, or assignments of any assets worth $5,000 or more" within specified dates. (Disclosure Order at 8–9).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No. CV 19-1998-MWF (KSx)           Date: October 7, 2022
Title:     Bureau of Consumer Financial Protection v. Consumer Advocacy Ctr. et al.

In the Disclosure Order, the Court also denied without prejudice the Bureau's request for a contempt order to show cause, stating:

> Although the Court declines to issue the contempt OSC at present, the Bureau is free to renew its request if Defendant Wen fails to comply with the Disclosure Order on or before **March 30, 2021**. The Bureau is also free to renew its OSC request if Wen turns over information supporting the Bureau's theory of asset dissipation. The Court will have no hesitation holding Defendant Wen in contempt in either situation.

On March 30, 2021, Wen invoked the Fifth Amendment privilege against self-incrimination in response to each topic that the Disclosure Order required him to address. (Docket No. 365-4 ("Declaration of Jesse Stewart") ¶ 9; Docket No. 365-6, Ex. 9.)

The Bureau soon after retained Pamela A. Clegg, Vice President of Financial Investigations for the firm CipherTrace, to help the Bureau trace and understand Wen's cryptocurrency holdings and transactions. (Declaration of Jesse Steward ¶¶ 3, 9). Ms. Clegg's findings show that as of October 25, 2019, Wen most likely controlled a significant amount of cryptocurrency that Wen did not disclose to Plaintiffs. (Declaration of Pamela Clegg ("Clegg Decl") ¶¶ 15, 20, 66, 114; *see also* Declaration of Theresa Ridder ("Ridder Decl."), ¶¶ 33–36, Apps B-1, E). Ms. Clegg also concluded that as of March 29, 2022, Wen still most likely controlled a significant amount of cryptocurrency. (Clegg Decl. ¶ 16; Ridder Decl. ¶ 37, App. C).

Ms. Clegg's conclusions are based on review of information from publicly available blockchains, CipherTrace's proprietary tools for analyzing blockchain transactions, account records associated with Wen from five distinct cryptocurrency exchanges, and Wen's Amended Financial Statement and deposition transcript as they relate to his cryptocurrency. (Clegg Decl. ¶¶ 10-12, App. D (relying upon public blockchain information for each cryptocurrency analyzed, including BTC, ETH, and BCH, and exchange account documents from Bittrex.com, Poloniex.com, Bitmex.com, Bitstamp.net, and Binance.com).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 19-1998-MWF (KSx)                                           Date:  October 7, 2022
Title:    Bureau of Consumer Financial Protection v. Consumer Advocacy Ctr. et al.

The Bureau asserts that the evidence submitted shows that Wen (1) violated the accounting requirements of section VIII(A) of the TRO by concealing cryptocurrencies and (2) violated the asset freeze of section VI(A) of the PI Order by transferring or dissipating cryptocurrencies. (Motion at 1). Further, the Bureau contends the evidence reveals that Wen made false statements, delayed in correcting them, and then asserted the Fifth Amendment privilege against self-incrimination in response to questions about his assets and transactions, including to each question posed by this Court's March 16, 2021, order on the Bureau's original contempt motion. (*Id.*).

## II. LEGAL STANDARD

Federal courts have both inherent and statutory authority to punish contempt and to coerce compliance with their orders. *Int'l Union, UMWA v. Bagwell*, 512 U.S. 821, 831-32 (1994); 18 U.S.C. § 401(3) (authorizing a court to punish contempt of its authority for disobedience with or resistance to a lawful order). "A party may be held in civil contempt where it 'fail[ed] to take all reasonable steps within the party's power to comply [with a specific and definite court order].'" *FTC v. Productive Mktg., Inc.*, 136 F. Supp. 2d 1096, 1107 (C.D. Cal. 2001) (quoting *In re Dual-Deck Video Cassette Recorder Antitrust Litig.*, 10 F.3d 693, 695 (9th Cir. 1993)).

"The party moving for a civil contempt order must show by clear and convincing evidence that the alleged contemnor violated the court's order." *Id.* at 1112 (citations omitted). The "procedure for civil contempt is to set an order to show cause hearing and to provide the contemnor an opportunity to respond and/or comply with the order." *Mission Capital Works, Inc. v. SC Rests., Inc.*, No. CV 07-1807-JLR, 2008 WL 3850523, at *6 (W.D. Wash. Aug. 18, 2008) (citing *Int'l Union*, 512 U.S. at 831-34). "The contempt 'need not be willful,' and there is no good faith exception to the requirement of obedience to a court order." *In re Dual-Deck*, 10 F.3d at 695 (citation omitted). "But a person should not be held in contempt if his action appears to be based on a good faith and reasonable interpretation of the [court's order]." *Id.* (internal quotation marks and citation omitted).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 19-1998-MWF (KSx)                              Date:  October 7, 2022
Title:        Bureau of Consumer Financial Protection v. Consumer Advocacy Ctr. et al.

A party's inability to comply with a judicial order also constitutes a defense to a charge of civil contempt. *United States v. Rylander*, 460 U.S. 752, 757 (1983). However, a party claiming this defense must document its inability to comply with the order "categorically and in detail." *Donovan v. Mazzola*, 716 F.2d 1226, 1240 (9th Cir. 1983) (holding that appellants failed to meet their burden to show that they were unable to comply with the court's bond order where appellants had the funds to post the bond) (citing *Rylander*, 656 F.2d 1313, 1318 (9th Cir. 1981)).  Substantial compliance with a court order also constitutes a defense to civil contempt, and "is not vitiated by a few technical violations where every reasonable effort has been made to comply." *In re Dual-Deck*, 10 F.3d at 695 (internal quotations and citations omitted).

## III.    DISCUSSION

The Bureau requests that the Court issue an order to show cause ("OSC") why Wen should not be held in contempt for violating the TRO and PI Order by (1) failing to list all "cryptocurrency and other virtual currencies" that was "accurate as the date of the [TRO]" (TRO section VIII(A)) and (2) failing to freeze assets including "transferring" or "dissipating" cryptocurrency  (TRO and PI Order sections VI(A)). (Motion at 16–17).

The Bureau bases its request on the report prepared by its expert witness, Pamela Cregg, Certified Anti-Money Laundering Specialist, which finds that Wen has concealed and dissipated cryptocurrency assets.  (*See generally* Motion).  Ms. Cregg concluded that it is highly likely that Wen controlled 17 undisclosed unhosted wallet addresses[1] at the time of the TRO which controlled a known amount of cryptocurrency;

---

[1] An unhosted wallet is software or hardware that allows a user to hold, store, and transfer cryptocurrency and is not hosted by a third-party financial institution.  Unhosted wallets allow for a certain degree of anonymity and concealment of illicit financial activity because only the person with access to the unhosted wallet can control, and confirm control of, the cryptocurrency held at the address(es) controlled through the unhosted wallet. Thus, while those addresses are publicly visible on the blockchain, including the balance at and transactions associated with the addresses, a person controlling the addresses is not typically identified on the blockchain and can only be conclusively confirmed by the person controlling the unhosted wallet, who is typically the same person. (Clegg Decl. ¶¶ 28, 33, 43, 115).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

**Case No.** CV 19-1998-MWF (KSx)            **Date:** October 7, 2022
**Title:**     Bureau of Consumer Financial Protection v. Consumer Advocacy Ctr. et al.

Ms. Cregg reached this conclusion by analyzing transfers of bitcoin from the 17 addresses to Wen's Bittrex exchange account. (Clegg Decl. ¶¶ 50–61). Ms. Clegg also concluded it is most likely that Wen controlled Bitmex exchange accounts under the aliases Wen Ding, Lie Wen and Dan Dai because the accounts were registered with Wen's email address or an email address based on the physical address Wen used for personal business, funded by the same source that funded Wen's Bittrex account, received the majority of its stored cryptocurrency from addresses highly likely to be controlled by Wen, and/or were primarily funded from Wen's Bittrex Account. (*Id.* at 45–48, 62–66, 90–100). Wen never disclosed any of those accounts, now empty, or the known amount of cryptocurrency they controlled at the time of the TRO. (Ridder Decl. ¶¶ 33–34). Additionally, Ms. Clegg concluded that Wen most likely controlled an additional seven undisclosed addresses, controlling a known amount of cryptocurrency, which all directly received cryptocurrency from accounts Wen controls or is highly likely to control. (Clegg Decl. ¶¶ 67, 71–100). Finally, Ms. Clegg concluded Wen most likely controlled two additional addresses, which Wen stated at his deposition held cryptocurrency for his benefit, from which significant and known withdrawals were made in 2020. (*Id.* at 101–113).

     The Bureau also argues that the Court should draw an adverse inference against Wen's assertion of the Fifth Amendment privilege when asked whether he owned or controlled the undisclosed cryptocurrency, the associated addresses and exchanges, and the related transactions leading up to and after entry of the TRO. (Motion at 19 (citing *Nationwide Life Ins. Co. v. Richards*, 541 F.3d 903, 911-12 (9th Cir. 2008); *see also CFTC v. Driver*, 877 F. Supp. 2d 968, 976–77 (C.D. Cal. 2012) (drawing adverse inference with respect to "every question to which [the party] asserted his Fifth Amendment privilege."))).

     Wen argues that compliance with any order is impossible because he is incarcerated in Federal Prison and has no access to trading platforms, documents, or information that the Bureau seeks. (Opposition at 1–2).

     The Bureau argues that Wen's assertion that he is unable to comply with the Court's prior orders is unsupported. (Reply at 1). The Bureau contends Wen does not

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 19-1998-MWF (KSx)                           Date:  October 7, 2022
Title:     Bureau of Consumer Financial Protection v. Consumer Advocacy Ctr. et al.

show that he "took every reasonable step" to comply.  (Reply at 1–2 (citing *FTC v. Affordable Media, LLC*, 179 F.3d 1228, 1241 (9th Cir. 1999)).  For instance, the Bureau argues that Wen has not explained why the cryptocurrency cannot be accessed by someone else at his direction and on his behalf to comply.  (*Id* at 3 (noting that cryptocurrency can be controlled by any person with access to the private key associated with a cryptocurrency address).  The Bureau contends the Motion is no surprise to Wen because week before it filed the Motion, the Bureau shared each cryptocurrency address that it asserts Wen has used to conceal and dissipate cryptocurrency.  (*Id.*).

　　　Clear and convincing evidence is "evidence indicating that the thing to be proved is highly probable or reasonably certain."  EVIDENCE, Black's Law Dictionary (11th ed. 2019).  Critically here, the Bureau must establish that it is highly probable or reasonably certain that Wen violated the Court's previous orders.

　　　Federal courts have had few opportunities to evaluate what constitutes clear and convincing evidence of ownership of cryptocurrency accounts and transactions, a difficult task given the new and anonymous nature of cryptocurrency.  Here though, the Court determines that the thorough and unopposed report of Ms. Clegg demonstrates that it is highly probable that Defendant Wen violated the Court's previous orders by failing to disclose the totality of his cryptocurrency assets and addresses and by making withdrawals from assets previously ordered frozen.

　　　Moreover, in its March 16, 2022, Disclosure Order, the Court gave Wen the opportunity to turn over specific cryptocurrency records to prove that he did not dissipate assets in violation of the Court's prior orders.  He invoked his Fifth Amendment privilege in response to each topic that the Disclosure Order required him to address. (Motion at 8).  In the context of civil contempt, adverse inferences are appropriately drawn in light of refusals to testify or rebut evidence, *even* where the refusal is made on Fifth Amendment grounds. *See, e.g.*, *Aradia Women's Health Ctr. v. Operation Rescue*, 929 F.2d 530, 532 (9th Cir. 1991) (adverse inferences permissible to draw from invocation of Fifth Amendment privilege).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

| | |
|---|---|
| **Case No.** CV 19-1998-MWF (KSx) | **Date:** October 7, 2022 |
| **Title:** Bureau of Consumer Financial Protection v. Consumer Advocacy Ctr. et al. | |

The Bureau's evidence is clear and convincing alone, and remains unrebutted. It is a reasonable inference to find that cryptocurrency accounts that 1) simultaneously deposited cryptocurrency into Wen's known accounts, 2) are primarily funded by Wen's known accounts, or 3) are registered under his or his family's email addresses were controlled by Wen at the time of the prior orders. Further, it is a reasonable inference to find that twenty withdrawals made after the prior orders from accounts that Wen has stated hold cryptocurrency for his benefit is dissipation in violation of the prior orders. Given that showing it is not necessary to draw "adverse inferences" against defendants. To be sure, the reasonable inferences supported by the Bureau's evidence strengthen the Court's conclusion that Wen has violated the Court's previous orders.

Because the Bureau has shown with clear and convincing evidence that Wen has violated the Court's prior orders, the burden shifts to Wen to prove that he did not. *See Fed. Trade Comm'n v. Enforma Nat. Prod., Inc.*, 362 F.3d 1204, 1211 (9th Cir. 2004). Defendant raises the defense that he is not able to comply with the order because he is incarcerated. This alone is not enough. A party claiming this defense must document its inability to comply with the order "categorically and in detail." *Donovan v. Mazzola*, 716 F.2d 1226, 1240 (9th Cir. 1983). Wen does not give any details regarding previous attempts he has taken to comply or explain why he cannot direct someone to comply on his behalf.

Civil contempt sanctions may therefore be necessary to compel compliance. *See, e.g.*, *FTC v. Cardiff*, No. CV-182-104-SJO (PLAx), 2020 WL 2084677, at *3 (C.D. Cal. Mar. 31, 2020) (finding contempt for dissipating frozen assets in violation of temporary restraining and preliminary injunction orders); *FTC v. Kutzner*, No. CV-16-999-BRO (AFMx), 2017 WL 2985397, at *11 (C.D. Cal. June 12, 2017) (finding contempt for dissipating frozen assets in violation of a TRO), a*ff'd sub nom.*, *FTC v. Marshall*, 781 F. App'x 599 (9th Cir. 2019); *see also Affordable Media,* 179 F.3d at 1239-43 (affirming a finding of contempt for failure to repatriate assets held overseas in violation of a TRO).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

**Case No.** CV 19-1998-MWF (KSx)            **Date:** October 7, 2022

**Title:**     Bureau of Consumer Financial Protection v. Consumer Advocacy Ctr. et al.

Accordingly, the Court **ORDERS** Defendant to appear before the Court on **November 28, 2022**, at 11 a.m. to show cause why he should not be held in civil contempt for failing to comply with the Temporary Restraining Order (TRO) and Preliminary Injunction (PI Order) previously entered in this matter. Specifically, Wen is ordered to show cause why he should not be held in contempt for concealing and transferring or dissipating the amount of cryptocurrency determined to be under his control by Ms. Clegg, in violation of sections VI(A) and VIII(A) of the TRO and section VI(A) of the PI Order. Defendant may support his appearance with a written response to the Order to Show Cause to be filed by **November 14, 2022**. The Bureau may respond to Defendant's written response by **November 21, 2022.**

The Court further **ORDERS** Wen to immediately transfer, to the Receiver or an account in Wen's name at a cryptocurrency exchange incorporated and headquartered in the United States, the cryptocurrency assets identified in Ms. Clegg's report as subject to the asset freeze imposed by section VI of the PI Order and, if transferred to the Receiver, the Receiver shall hold these assets for Wen pending resolution of Plaintiffs' claims against Wen on the merits.

The Court further **ORDERS**, to the extent that he has not already done so, Wen shall immediately transfer, to the Receiver or an account in Wen's name at a cryptocurrency exchange incorporated and headquartered in the United States, all other cryptocurrency assets that he holds or controls as of the date of this Order. These assets shall be subject to the asset freeze imposed by section VI of the PI Order and, if transferred to the Receiver, the Receiver shall hold these assets for Wen pending resolution of Plaintiffs' claims against Wen on the merits.

The Court further **ORDERS** Wen to provide to the Bureau a sworn statement attesting to his compliance with the above transfers within seven (7) business days of complying with those requirements, which statement must also identify the recipient of the transfers, including the name of the financial institution and account number to which he transferred the assets described above, to the extent those assets are not transferred to the Receiver.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

**Case No.** CV 19-1998-MWF (KSx)            **Date:** October 7, 2022

**Title:** Bureau of Consumer Financial Protection v. Consumer Advocacy Ctr. et al.

    If Wen fails to comply with the orders above by **December 5, 2022**, Wen will be ordered to pay a fine of $1,000 each day to coerce his compliance. The Court **ORDERS** the Bureau to file a Status Report regarding Wen's compliance on **December 5, 2022**.

    If Wen otherwise complies with this Order and notifies the Court of such compliance before the show-cause hearing date, the hearing shall be taken off the calendar.

    IT IS SO ORDERED.