UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

**Case No.** **SA CV 19-1998-MWF (KSx)**                    **Date:  January 6, 2023**

**Title:**      Bureau of Consumer Financial Protection v. Consumer Advocacy Ctr. et al.

Present:   The Honorable MICHAEL W. FITZGERALD, U.S. District Judge

| | |
|---|---|
| Deputy Clerk: | Court Reporter: |
| Rita Sanchez | Not Reported |
| | |
| Attorneys Present for Plaintiff: | Attorneys Present for Defendant: |
| None Present | None Present |

**Proceedings (In Chambers):   ORDER HOLDING KAINE WEN IN CIVIL
                                                    CONTEMPT**

Before the Court are responses to the Court's Order to Show Cause why
Defendant Wen Should Not Be Held in Contempt.  Defendant Kaine Wen filed a
response on November 14, 2022.  (Docket No. 407 ("Wen Response")).  The Receiver
Thomas McNamara filed a status report on November 14, 2022.  (Docket No. 406
("Receiver Status Report")).  The Consumer Financial Protection Bureau ("Bureau")
filed a response on November 21, 2022.  (Docket No. 407 ("Bureau Response")).  The
Bureau also filed a status report on December 5, 2022.  (Docket No. 410 ("Bureau
Status Report")).

The Court has read and considered the responses and held a hearing on
**November 28**, **2022**.

In light of the Bureau's clear and convincing evidence that Defendant has not
complied with the Court's prior orders and Defendant's failure to show categorically
and in detail why he in unable to comply, the Court finds Defendant in contempt of
court.

## I.  **BACKGROUND**

Plaintiffs initiated this action on October 21, 2019, alleging that Defendants
were perpetrating a nationwide illegal student loan debt relief scheme.  (*See* Complaint
(Docket No. 2)).  To minimize the likelihood that Defendants would conceal, transfer,
or dispose of assets, Plaintiffs sought a temporary restraining order ("TRO") freezing

---

**CIVIL MINUTES—GENERAL                                                      1**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

**Case No.  SCV 19-1998-MWF (KSx)                 Date:  January 6, 2023**

Title:      Bureau of Consumer Financial Protection v. Consumer Advocacy Ctr. et al.

Defendants' assets, appointing a receiver over the corporate Defendants, requiring Defendants to submit to a financial accounting, and requesting an order to show cause why a preliminary injunction ("PI") should not issue.  (Docket No. 3).  Magistrate Judge James V. Selna issued the TRO on October 21, 2019.  (Docket No. 24).  On November 15, 2019, Judge Selna issued a PI extending the asset freeze, financial accounting, and receivership provisions of the TRO until entry of final judgment (the "PI Order").  (Docket No. 103).

Pursuant to the TRO and PI Order's asset freeze provisions, individual Defendants are restrained and enjoined from:

selling, liquidating, assigning, transferring, converting, loaning, hypothecating, disbursing, gifting, conveying, encumbering, pledging, concealing, dissipating, spending, withdrawing, or otherwise disposing of any asset that is:

1. owned or controlled, directly or indirectly, by any Defendant, including, but not limited to those for which a Defendant is a signatory on the account;
2. held, in part or in whole, for the benefit of any Defendant
3. in the actual or constructive possession of any Defendant; or
4. in the actual or constructive possession of, or owned or controlled by, or subject to access by, or belonging to, any corporation, partnership, trust or other entity directly or indirectly owned, managed or controlled by any Defendant[.]

(TRO, VI; PI Order, VI).

The TRO also required each individual Defendant to complete (a) the "Individual Financial Statement," Attachment A to the TRO; (b) a sworn statement detailing all payments, transfers, or assignments of any asserts worth more than $5,000 or more since January 1, 2015; and (c) a detailed accounting, verified under oath, of all gross and net profits obtained from, derived from, or related in any way to the offer for

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

**Case No.  SCV 19-1998-MWF (KSx)**                    **Date:  January 6, 2023**

Title:        Bureau of Consumer Financial Protection v. Consumer Advocacy Ctr. et al.

sale or sale of any "Debt-Relief Product or Service" since January 1, 2015.  (TRO, sec. 8).  The PI Order requires each individual Defendant to provide this information to the extent that he or she had not already done so pursuant to the TRO.  (PI Order, sec. 8).

Item 23 of the Individual Financial Statement, entitled "Other Assets," mandates that the defendant list the description, location, cost, acquisition cost, and value of "all other assets not identified above, held by you, your spouse, or your dependents, including but not limited to, patents and other intellectual property, and cryptocurrency and other virtual currencies."  (TRO, Attachment A at 20).

Item 31 of the Individual Financial Statement, entitled "Transfer of Assets," mandates that the defendant list "each person to whom you have transferred, in the aggregate, more than $2,500 in funds or other assets during the previous three years by loan, gift, sale, or other transfer.  For each such person, state the total amount transferred during that period."  (*Id.* at 26).

On March 16, 2021, this Court ordered Wen to provide the Bureau with detailed cryptocurrency ownership and transfer information, in a sworn statement, on or before March 30, 2021.  (Docket No. 277 ("Disclosure Order")).  The Disclosure Order required Wen to identify, among other things, "all virtual currency addresses that Wen owned, controlled, or were held in Wen's benefit" within specified dates, "any associated virtual currency wallet," and "all payments, transfers, or assignments of any assets worth $5,000 or more" within specified dates.  (Disclosure Order at 8–9).

In the Disclosure Order, the Court also denied without prejudice the Bureau's request for a contempt order to show cause, stating:

> Although the Court declines to issue the contempt OSC at present, the Bureau is free to renew its request if Defendant Wen fails to comply with the Disclosure Order on or before **March 30, 2021**.  The Bureau is also free to renew its OSC request if Wen turns over information supporting the Bureau's theory of asset dissipation.  The Court will have no hesitation holding Defendant Wen in contempt in either situation.

---

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  SCV 19-1998-MWF (KSx)                    Date:  January 6, 2023

Title:       Bureau of Consumer Financial Protection v. Consumer Advocacy Ctr. et al.

On March 30, 2021, Wen invoked the Fifth Amendment privilege against self-incrimination in response to each topic that the Disclosure Order required him to address.  (Docket No. 365-4 ("Declaration of Jesse Stewart") ¶ 9; Docket No. 365-6, Ex. 9.)

On April 7, 2022, the Consumer Financial Protection Bureau ("Bureau") filed a Renewed Motion for an Order to Show Cause Why Defendant Wen Should Not Be Held in Contempt and Related Relief.  The Bureau submitted evidence suggesting that Wen (1) violated the accounting requirements of section VIII(A) of the TRO by concealing cryptocurrencies and (2) violated the asset freeze of section VI(A) of the PI Order by transferring or dissipating cryptocurrencies.  (Docket No. 365 ("Renewed Motion for OSC") at 1).  Further, the Bureau asserted that the evidence revealed that Wen made false statements, delayed in correcting them, and then asserted the Fifth Amendment privilege against self-incrimination in response to questions about his assets and transactions, including to each question posed by this Court's March 16, 2021, order on the Bureau's original contempt motion.  (*Id.*).

The evidence provided by the Bureau was primarily from the report prepared by its expert witness, Pamela Clegg, Certified Anti-Money Laundering Specialist, which found that Wen very likely concealed and dissipated cryptocurrency assets.  Ms. Clegg concluded that it is highly likely that Wen controlled 17 undisclosed unhosted wallet addresses at the time of the TRO which controlled a known amount of cryptocurrency; Ms. Clegg reached this conclusion by analyzing transfers of bitcoin from the 17 addresses to Wen's Bittrex exchange account.  (Declaration of Pamela Clegg (Docket No. 365-3) ("Clegg Decl.") ¶¶ 50–61).  An unhosted wallet is software or hardware that allows a user to hold, store, and transfer cryptocurrency and is not hosted by a third-party financial institution.  Unhosted wallets allow for a certain degree of anonymity and concealment of illicit financial activity because only the person with access to the unhosted wallet can control, and confirm control of, the cryptocurrency held at the address(es) controlled through the unhosted wallet. Thus, while those addresses are publicly visible on the blockchain, including the balance at and transactions associated with the addresses, a person controlling the addresses is not typically identified on the blockchain and can only be conclusively confirmed by the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  SCV 19-1998-MWF (KSx)                    Date:  January 6, 2023
Title:        Bureau of Consumer Financial Protection v. Consumer Advocacy Ctr. et al.

person controlling the unhosted wallet, who is typically the same person. (Clegg Decl.
¶¶ 28, 33, 43, 115).

Ms. Clegg also concluded it is most likely that Wen controlled Bitmex exchange
accounts under the aliases Wen Ding, Lie Wen, and Dan Dai because the accounts
were registered with Wen's email address or an email address based on the physical
address Wen used for personal business, were funded by the same source that funded
Wen's Bittrex account, had received the majority of their stored cryptocurrency from
addresses highly likely to be controlled by Wen, and/or were primarily funded from
Wen's Bittrex Account.  (*Id.* at 45–48, 62–66, 90–100).  Wen never disclosed any of
those accounts, now empty, or the known amount of cryptocurrency they controlled at
the time of the TRO.  (Declaration of Theresa Ridder (Docket No. 365-5) ("Ridder
Decl.") ¶¶ 33–34).  Additionally, Ms. Clegg concluded that Wen most likely controlled
an additional seven undisclosed addresses, controlling a known amount of
cryptocurrency, which all directly received cryptocurrency from accounts Wen
controls or is highly likely to control.  (Clegg Decl. ¶¶ 67, 71–100).  Finally, Ms. Clegg
concluded Wen most likely controlled two additional addresses, which Wen stated at
his deposition held cryptocurrency for his benefit, from which significant and known
withdrawals were made in 2020.  (*Id.* at 101–113).

On October 7, 2022, the Court granted the Renewed Motion for OSC. (Docket
No. 405 ("Transfer Order")).  The Court determined that there was clear and
convincing evidence that Wen had violated the Court's prior orders, noting that the
burden shifted to Wen to prove he did not violate the Court's prior orders.  (*Id.* at 11).
The Court Ordered Defendant Wen to appear before the Court on November 28, 2022,
to show cause why he should not be held in contempt for failing to comply with TRO
and PI orders prohibiting Wen from transferring or dissipating his cryptocurrency
assets.  (*Id*. at 12).

The Court also ordered Wen to immediately transfer to the Receiver or an
account in Wen's name at a cryptocurrency exchange headquartered in the United
States, the cryptocurrency assets identified by Ms. Clegg as subject to the asset freeze
imposed by section VI of the PI Order.  (*Id*.).  Additionally, the Court ordered Wen to

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

| | |
|---|---|
| **Case No.  SCV 19-1998-MWF (KSx)** | **Date:  January 6, 2023** |
| Title:       Bureau of Consumer Financial Protection v. Consumer Advocacy Ctr. et al. | |

immediately transfer to the Receiver or an account in Wen's name at a cryptocurrency exchange headquartered in the United States, all other cryptocurrency assets that he holds or controls as of the date of the Order.  (*Id.*).  Finally, the Court ordered Wen to provide the Bureau a sworn statement attesting to his compliance of the above transfers within seven days of the complying with those requirements.  (*Id.*).

## II.    **RESPONSES TO OSC**

Wen argues that he is making best efforts to comply with the Order while under supervision of the Federal Bureau of Prisons and residing at the Residential Reentry Center in El Monte, CA.  (Wen Response ¶¶ 3, 4).  Wen notes that he is working with the Receiver to transfer cryptocurrency assets held in an account in his name at the Bittrex cryptocurrency exchange.  (*Id.* ¶ 5).  The Receiver confirmed that Wen was communicating with the Receiver and intended to transfer Monero and Lumens cryptocurrencies from his Bittrex account but had not done so as of the filing of the status report.  (Receiver Status Report at 2–3).

Wen states that he holds cryptocurrency that belongs to his friend Sea in a Binance account, but he has been unable to unlock the account.  Wen notes that he is working to unlock the account and will keep the Receiver's attorneys full apprised. (Wen Response ¶ 6).

Wen also notes that he has been unable to access his cryptocurrency held by Sea because he has not spoken to Sea in several years and has been unable to login to the WeChat account he used to communicate with Sea.  (*Id*. ¶ 7).

Finally, Wen states that he does not own or control any cryptocurrency assets besides those listed on his March 1, 2021, Supplement to his Amended and Corrected Financial Statement (Docket 275-1).  (*Id*. ¶ 9).  Wen notes that he lacks sufficient documentation, records, or information relating to cryptocurrency assets identified in Ms. Clegg's report and does not know if any such documentation ever existed or still exists.  (*Id.* ¶ 8).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  SCV 19-1998-MWF (KSx)                    Date:  January 6, 2023
Title:        Bureau of Consumer Financial Protection v. Consumer Advocacy Ctr. et al.

The Bureau argues that Wen fails to meet his burden to avoid a finding of contempt.  (Bureau Response at 1).  The Bureau notes that Wen: (1) does not disclaim any interest in the significant Bitcoin identified by Ms. Clegg; (2) does not identify any attempt to transfer that Bitcoin to the Receiver; (3) does not attempt to rebut the finding that its highly probable that Wen dissipated Ether cryptocurrency in violation of the TRO and PI; and (4) does not explain why he cannot transfer the dissipated Ether.  (*Id*.).

The Bureau argues that Wen should be held in contempt because he has not shown "categorically and in detail why he in unable to comply."  (*Id*. at 2 (citing *FTC v. Affordable Media, LLC*, 179 F.3d 1228, 1241 (9th Cir. 1999)).  Specifically, the Bureau points out that Wen does not dispute that the large amount of Bitcoin attributed to him in Ms. Clegg's report (Docket No 365-1 at 16:3–17, 17:11–18:12) is his or held for his benefit.  (*Id.* at 3).  The Bureau argues that Wen's excuse regarding Sea is not credible as it is unlikely that Wen would entrust significant ether to an individual living abroad, whose full name he does not know, without any written agreement, that he has not communicated with in many years (despite his obligations to ensure third parties holding his assets complied with the asset freeze or repatriated assets held abroad).  (*Id*. at 4–5).

At the show cause hearing held on November 28, 2022, Wen reiterated the assertions made in his written response and additionally stated that he does not own or control any Bitcoin.  Wen did not provide any explanation of why the Bitcoin attributed to him in Ms. Clegg's report, which flowed into and out of cryptocurrency exchange accounts in his name or associated with his accounts, does not belong to him.

In its Status Report, filed one week after the show cause hearing, the Bureau reported that Wen has made some attempts but has yet to successfully transfer the bitcoin in his Binance account to the Receiver.  (Bureau Status Report at 6).  The Bureau notes that there is no evidence Wen has transferred the following

- The amount of Bitcoin held as of March 29, 2022, at 25 Bitcoin addresses identified at Appendix E, figure E-1, of Ms. Clegg's report;

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  SCV 19-1998-MWF (KSx)                    Date:  January 6, 2023
Title:       Bureau of Consumer Financial Protection v. Consumer Advocacy Ctr. et al.

- the amount of Ether held as of March 29, 2022, at the 2 Ether addresses identified at Appendix E, Figure E-1, of Ms. Clegg's report;
- the amount of Bitcoin dissipated after entry of the TRO through the "Dan Dai" bitmex.com exchange account, which is attributed to Wen at paragraphs 62-66 of Ms. Clegg's report, and as further detailed at paragraphs 40-41 and Appendix E of Ms. Ridder's Declaration;
- The amount of Ether dissipated after entry of the TRO through the 2 ether addresses identified at paragraphs 111-113 and Appendix E, Figure E-19, of Ms. Clegg's report.

(*Id.* at 7).

## III.   <u>LEGAL STANDARD</u>

Federal courts have both inherent and statutory authority to punish contempt and to coerce compliance with their orders.  *Int'l Union, UMWA v. Bagwell*, 512 U.S. 821, 831-32 (1994); 18 U.S.C. § 401(3) (authorizing a court to punish contempt of its authority for disobedience with or resistance to a lawful order).  "A party may be held in civil contempt where it 'fail[ed] to take all reasonable steps within the party's power to comply [with a specific and definite court order].'"  *FTC v. Productive Mktg., Inc.*, 136 F. Supp. 2d 1096, 1107 (C.D. Cal. 2001) (quoting *In re Dual-Deck Video Cassette Recorder Antitrust Litig.*, 10 F.3d 693, 695 (9th Cir. 1993)).

"The party moving for a civil contempt order must show by clear and convincing evidence that the alleged contemnor violated the court's order."  *Id.* at 1112 (citations omitted).  The "procedure for civil contempt is to set an order to show cause hearing and to provide the contemnor an opportunity to respond and/or comply with the order."  *Mission Capital Works, Inc. v. SC Rests., Inc.*, No. CV 07-1807-JLR, 2008 WL 3850523, at *6 (W.D. Wash. Aug. 18, 2008) (citing *Int'l Union*, 512 U.S. at 831-34).  "The contempt 'need not be willful,' and there is no good faith exception to the requirement of obedience to a court order."  *In re Dual-Deck*, 10 F.3d at 695 (citation omitted).  "But a person should not be held in contempt if his action appears to be

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  SCV 19-1998-MWF (KSx)                    Date:  January 6, 2023

Title:        Bureau of Consumer Financial Protection v. Consumer Advocacy Ctr. et al.

based on a good faith and reasonable interpretation of the [court's order]." *Id.* (internal quotation marks and citation omitted).

A party's inability to comply with a judicial order also constitutes a defense to a charge of civil contempt. *United States v. Rylander*, 460 U.S. 752, 757 (1983). However, a party claiming this defense must document its inability to comply with the order "categorically and in detail." *Donovan v. Mazzola*, 716 F.2d 1226, 1240 (9th Cir. 1983) (holding that appellants failed to meet their burden to show that they were unable to comply with the court's bond order where appellants had the funds to post the bond) (citing *Rylander*, 656 F.2d 1313, 1318 (9th Cir. 1981)). Substantial compliance with a court order also constitutes a defense to civil contempt, and "is not vitiated by a few technical violations where every reasonable effort has been made to comply." *In re Dual-Deck*, 10 F.3d at 695 (internal quotations and citations omitted).

## IV.   **DISCUSSION**

Contempt is civil where "the purpose of the relief is to compel the respondent to comply." *United States v. Asay,* 614 F.2d 655, 659 (9th Cir. 1980). One of the paradigmatic civil contempt sanctions "is a per diem fine imposed for each day a contemnor fails to comply with an affirmative court order." *Int'l Union, UMWA v. Bagwell*, 512 U.S. at 829. The Court views a fine on Defendant's purported violations of the asset freeze provisions of the TRO and PI Order as punitive rather than coercive, and thus does not order contempt on these grounds. However, the Bureau has provided clear and convincing evidence that Wen has violated the Court's Disclosure Order and Transfer Order.

The Court clearly and directly ordered Wen to identify "all virtual currency addresses that Wen owned, controlled, or were held in Wen's benefit" within specified dates, "any associated virtual currency wallet," and "all payments, transfers, or assignments of any assets worth $5,000 or more" within specified dates, among other things. (Disclosure Order at 8–9).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  SCV 19-1998-MWF (KSx)                  Date:  January 6, 2023

Title:       Bureau of Consumer Financial Protection v. Consumer Advocacy Ctr. et al.

The Court clearly and directly ordered Wen to immediately transfer to the Receiver or an account in Wen's name at a cryptocurrency exchange headquartered in the United States, the cryptocurrency assets identified by Ms. Clegg as subject to the asset freeze imposed by section VI of the PI Order.  (Transfer Order at 12).  Similarly, the Court clearly and directly ordered Wen to immediately transfer to the Receiver or an account in Wen's name at a cryptocurrency exchange headquartered in the United States, all other cryptocurrency assets that he holds or controls as of the date of the Order.  (*Id*.).

The Court previously determined that the Bureau has shown by clear and convincing evidence that Wen violated the Court's previous orders by demonstrating that it was highly probable that Wen controlled undisclosed cryptocurrency accounts.  (*Id*. at 10–11).  The Court noted that the burden shifted to Wen to prove that he did not violate the Court's orders.  (*Id*. at 11).  The Court determines that Wen has not met his burden.

Wen has transferred the Monero and Stellar Lumens in his Bittrex account to the Receiver.  (Bureau Status Report at 6).  However, Wen has not transferred any other assets, including those in his Binance account, and has refused to identify and transfer assets from the 25 unhosted wallets with Bitcoin and 2 unhosted wallets with Ether attributed to him in Ms. Clegg's report.  (Id. at 5–6).  Wen's naked assertions that he does not own any bitcoin, does not control the addresses identified by Ms. Clegg, and cannot reach Sea who holds Ether for Wen does not "categorically and in detail" document why he cannot comply with the Court's Orders, especially in light of the unrebutted expert report.

Accordingly, the Court **ORDERS** as follows:

1) The Court finds Defendant in contempt of Court.

2) Defendant shall identify all virtual currency addresses that he owned, controlled, or were held in his benefit, any associated virtual currency wallet, and all payments, transfers, or assignments of any assets worth $5,000 or more within the dates specified in the Disclosure Order.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  SCV 19-1998-MWF (KSx)                    Date:  January 6, 2023
Title:        Bureau of Consumer Financial Protection v. Consumer Advocacy Ctr. et al.

3) Defendant shall immediately transfer to the Receiver the cryptocurrency
assets identified in Ms. Clegg's report as subject to the asset freeze imposed
by section VI of the PI Order.

4) Defendant shall immediately transfer to the Receiver all other cryptocurrency
assets that he holds or controls as of the date of the Transfer Order.

5) Defendant shall pay to the district court the sum of $1,000 for each day **after
January 17, 2023**, in which Defendant remains out of compliance with the
Disclosure and Transfer Orders.  Contempt will be discharged upon the
disclosure of the unhosted wallets identified in Ms. Clegg's report and the
transfer of the assets held in the unhosted wallets.

6) If Defendant is unable to provide any of the aforementioned information or
transfer the assets that he has been shown to be highly likely to hold or
control, Defendant is **ORDERED** to describe, in detail, the specific steps that
he took to try to obtain information about or access to the assets and explain,
in detail, why such steps were unsuccessful.  Defendant cannot merely
explain that he lacks records or access.  Appendix E, Figure E-1 of Ms.
Clegg's report identifies 25 unhosted wallets with Bitcoin and 2 unhosted
wallets with Ether and includes summaries of each account's connection to
Wen's known accounts.  At minimum Defendant should be able to identify
and explain the transactions related to his known accounts.

7) If Defendant is unable to reestablish communication with Sea, Defendant is
**ORDERED** to describe, in detail, the specific steps he took to reestablish
communication with Sea and explain, in detail, why such steps were
unsuccessful.  Defendant should provide evidence of his previous
communications and transactions with Sea to establish that Sea is a real
person who holds assets for Defendant.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

**Case No.  SCV 19-1998-MWF (KSx)**                    **Date:  January 6, 2023**
Title:        Bureau of Consumer Financial Protection v. Consumer Advocacy Ctr. et al.

8) Plaintiff shall personally serve this Order on Defendant and file proof of
   service thereof.

IT IS SO ORDERED.