Plaintiffs' Exhibit 1

## DECLARATION OF ALBERT KIM

I, Albert Kim, pursuant to 28 U.S.C. §1746, hereby declare the following:

1.      My name is Albert Kim. I live in Downey, California. The following facts are known to me personally and if called as a witness I could and would competently testify to them.

### CORPORATE STRUCTURE

2.      Kaine Wen ("Wen") and I owned Consumer Advocacy Center Inc. ("CAC"), True Count Staffing Inc. ("True Count"), and Prime Consulting LLC ("Prime") (collectively and individually referred to here as "the Company" or "Student Loan Debt Relief Companies" or "SLDR Companies").

3.      The Company offered, sold, and performed services claiming to help consumers with applications for student loan income-driven repayment (IDR) programs and loan consolidation. The Company also prepared forbearance applications for consumers. I refer to the IDR program, loan consolidation, and forbearance applications collectively as "student loan adjustment applications."

4.      Wen and I decided to form a company together in 2014. I registered CAC with the California Secretary of State in 2014.

5.      I formed CAC with Wen because I had worked in the student-loan debt-relief industry before, and I wanted to start my own company.

6.      I have known Wen for 20 years or so. We met through a mutual friend. I partnered with Wen because we were friends, and I trusted him. Also, we had worked together before, including when we owned and operated a loan modification company together along with another business colleague.

7.      Wen and I owned CAC jointly and equally. Attached as Exhibit 1 is a true and correct copy of an agreement between Wen and me reflecting our joint ownership of CAC. I recognize each of our signatures and recall entering into this agreement with him.

Pls.' Ex. 1
P. 2
CFPB-20221014-00000001

8.    CAC began operating in 2015. Wen provided funding to help start up CAC. Although I don't recall the exact amount, I believe it was the amount listed in the agreement, $30,000, or close to that amount.

9.    Although Wen was an owner of CAC, he wasn't listed as an owner in corporate registration documents provided to the California Secretary of State. We trusted each other, and we didn't think it was necessary to have him listed too.

10.    When the Company first started operating, it had two departments, Sales and Processing. As the Company grew, we added Accounting/Billing, Customer Service, and later, Human Resources Departments.

11.    True Count was another Company Wen and I created sometime in 2017. Although we originally planned to use it to pay employees, we decided to turn it into a processing company and transferred CAC's Processing Department over to True Count.

12.    By the time we decided to make True Count the back-end processing company for CAC, we had discussed making it look like CAC and True Count were two separate companies owned by two separate people.

13.    Wen and I learned from talking to other people who had worked in the industry that student-loan debt-relief companies were often structured into more than one company so that if the government came after the front-end sales company, the back-end processing company could keep managing and charging the customers.

14.    In March 2018, Wen and I shifted CAC's Processing, Customer Service, and Billing Departments to True Count. As part of this shift, we had CAC terminate the employees in its Processing Department, and then we re-hired them to work for True Count.

15.    Wen and I did not change the practices of the Processing Department when we shifted it from CAC to True Count.

CFPB-20221014-00000002

16.     In late September 2018, Wen and I decided to shut down CAC and transfer its operations over to Prime.

17.     At the time, Le Ho, who went by the name Calvin Ho, was a manager for the Company. Ho primarily helped with automation, payroll, and tech-related projects.

18.     Although Wen and I owned and controlled Prime, we asked Ho if he would agree to be the owner of Prime on paper, and he did.

19.     All departments at the Company--CAC, True Count, and Prime-- reported to Wen and me. We were the Company's final decision makers, and there was nobody higher on the corporate hierarchy than us. This was true for as long as the Company operated.

20.     During the entire period that it operated, the Company used a customer relationship management platform called Debt Pay Pro (DPP). The Company used DPP to store information about consumers who enrolled in its services; fees charged and refunds provided to those consumers; and contracts with consumers for the Company's services, among other things. This information was stored in DPP in the normal course of the Company's business.

21.     The Company also used Quickbooks for the entire time it operated to generate profit and loss statements at the end of each year for tax preparation purposes. Exhibits 2.1-2.3 are true and correct copies of profit and loss statements generated by the Company based on financial information it regularly recorded in Quickbooks in the normal course of its business.

Pls.' Ex. 1
P. 4
CFPB-20221014-00000003

## WEN'S DAY-TO-DAY INVOLVEMENT IN THE COMPANY

22.     When we first started operating in 2015, Wen and I communicated every day or every other day about the Company's operations.

23.     By mid-2016, Wen was coming into the office several times each week. He and I shared an office so it would be easier to communicate with each other. Throughout 2016, we communicated daily--and typically multiple times a day--about all aspects of running the Company.

24.     Wen used a personal laptop for Company business, which he took with him when he left the office each day.

25.     Wen was primarily in charge of setting up merchant accounts and was the main point of contact for Company merchant account providers.

26.     Wen had a friend named Rudy who worked for a payment processor, Allied Wallet. Wen was able to get the Company a merchant account with Allied Wallet, although we later lost that account.

27.     At some point after we lost the Allied Wallet account, Wen and I started working with Jimmy Lai. Lai helped us set up additional merchant accounts for the Company.

28.     Wen and I determined the Company's fee structure for consumers, including the amount of fees and when those fees could be collected.

29.     Wen drafted and approved contracts between the Company and consumers for the Company's services.

30.     Exhibit 3 is an example of a time when Wen revised the Company's contract. Exhibit 3 is a true and correct copy of an email and attachment from Wen that I received on January 29, 2018, which incorporates his revisions to the Company's consumer contract.

31.     Because Wen understood the terminology in the contracts more than I did, I deferred to him on language in the contracts.

32.     Wen and I reviewed and approved web content for the Company.

33. Wen and I developed scripts and trainings when the Company first started operating. By early 2016, Wen and I directed the sales managers to handle revising scripts, training, and recruiting their own teams, and they did.

34. Wen and I both had several Company email accounts. I primarily used albert@premierstudentloancenter.com and advisor@financialpreparationservices.com; Wen used kaine@premierstudentloancenter.com, kaine@slaccountmgmt.com, kwen@slaccountmgmt.com, kwen@financialpreparationservices.com.

35. At times I used personal email accounts to communicate with Wen and others about the Company, including albertkim11@gmail.com and possibly akim128011@gmail.com, which is another personal email address of mine.

36. Wen also used personal email accounts to send or receive emails to me and others about the Company, including kainewen@gmail.com and kainedai@yahoo.com.

37. Wen also communicated about the Company with me and other Company employees in person, through phone calls, by text, and through instant messaging applications like Skype, Signal, and iMessage.

## THE COMPANY'S OFFER AND SALE OF STUDENT-LOAN DEBT-RELIEF SERVICES

38. For the entire time it operated, the Company sold its student-loan debt-relief services to consumers over the phone.

39. The Sales Department handled sales calls with consumers. Sales employees were assigned to teams. Each team was overseen by a Sales Manager, who reported to a Sales Director, who reported to Wen and me.

40. Every employee in the Sales Department was paid at least in part through commissions: sales employees earned a commission based on the number of consumers they enrolled in the Company's services, and sales

managers and directors earned commissions based on the volume of enrollments made by sales employees whom they supervised.

41.     The compensation structure for employees in the Sales Department gave them a financial incentive to enroll as many consumers as they could.

42.     Wen helped develop the commission structure for sales employees, and he and I had final say over how sales employees were compensated.

43.     Throughout the Company's operation, during sales calls, sales employees pitched consumers on the Company's services. Exhibit 4 is a true and correct copy of one of the documents the Company used to train employees on how to handle sales calls with consumers.

44.     Exhibit 4 reflects the culture that we tried to promote to our sales employees throughout the Company's operation up until late August 2019.

45.     During sales calls, sales employees were supposed to enter data into DPP, including for a consumer's family size, marital status, and income amount, so that DPP could calculate an estimated monthly repayment amount.

46.     During sales calls, sales employees also provided consumers with a contract for enrolling in the Company's services.

47.     Even though consumers provided sales employees with accurate family size information, sales employees frequently inflated consumers' family size when they input the data into DPP so that they could quote the consumer a lower monthly student loan payment.

48.     In my experience with the Company and from my work in sales with other companies, providing a lower monthly payment quote made it easier to get consumers to enroll in the Company's services.

49.     When the Company began operating, it did not have any policy prohibiting employees from inflating consumers' family size in the course of selling or performing its services, and Wen and I knew our employees were using fake family sizes.

DECL. OF ALBERT KIM

6

50.     I learned through consumer complaints and discussions with others at the Company that student loan adjustment applications submitted by the Company on behalf of consumers were sometimes denied because student loan servicers suspected the family size listed by the Company was too high.

51.     In approximately 2016 or 2017, Wen, Nguyen and I discussed the fact that some consumers' applications were getting denied because of the Company's use of a fake family size. At that point, Wen agreed to limit employees to inflating consumers' family size up to 7. Based on our experience, Wen and I thought a maximum family size of 7 would make it less likely that a consumer's application would be denied.

52.     After the sales call, an employee in the Processing Department (processor) would call the consumers in what was called a "welcome call." Processors also prepared student loan adjustment applications using the information stored in DPP.

53.     It was Company policy for the processors *not* to confirm the family size on file in DPP with the consumer.

54.     Prior to April 2018, Wen and I also became aware that employees were listing all married clients as single in student loan adjustment applications. Exhibit 5 (CFPB-20211007-00000110-112) is a true and correct copy of an email exchange from April 2018 that includes me, Wen, and other employees regarding this practice.

55.     Prior to April 2018, Wen and I discussed the fact that Company employees listed married clients as single in DPP and in student loan adjustment applications submitted on behalf of consumers.

56.     It was also the Company's practice for processors to list consumers as unemployed in recertification applications for IDR plans if the consumer did not provide supporting documentation about their income.

57.     Although some consumers discovered that the Company submitted their loan adjustment application with a false marital status and/or family size, most consumers did not know and had no way of knowing because the Company did not tell them or show them the application.

## THE COMPANY'S CHARGING OF FEES TO CONSUMERS

58.     Throughout the Company's operation, consumers were charged two types of fees for the Company's services: an enrollment fee and a monthly recertification fee.

59.     The Company charged the enrollment fee for preparing the initial student loan adjustment application. The amount of the fee varied over time and ranged between $799-1,899.

60.     The amount of the enrollment fee depended on how soon the consumer could pay. Most consumers paid at least part of the fee within two weeks after the sales call. The Company created a financial incentive for sales representatives to collect more fees from consumers upfront--for example, if the consumer paid in full right away, the sales representative would receive a higher commission for that enrollment.

61.     By the time the Company submitted a student loan adjustment application on behalf of a consumer, the Company typically had collected some or all of the enrollment fee.

62.     The Company charged a monthly recertification fee for preparing and submitting consumers' paperwork to recertify their eligibility for an IDR plan. The amount of the fee varied over time, and was approximately $10-50 per month, to be paid over the entire life of the loan.

63.     The Company's practice was to charge the monthly recertification fee in the year leading up to when each annual recertification application was due.

Pls.' Ex. 1
P. 9
CFPB-20221014-00000008

64.     The Company charged fees to consumers even if the consumers' loans were in forbearance.

65.     The Company charged fees to consumers regardless of what happened to the consumers' student loan adjustment applications or whether consumers made new payments on adjusted loans. The Company did not have access to records showing whether consumers made payments on an adjusted loan, nor did it attempt to gather this information.

## CONSUMER COMPLAINTS

66.     Consumers complained about the Company's services, including by phone and email, and to the Better Business Bureau (BBB).

67.     When the Company began operating, Tuong Nguyen and I reviewed and responded to consumer complaints. I sent complaints to Wen that I felt needed more work in terms of coming up with a response.

68.     In addition to using my real name, I also sometimes used an alias, Albert King, because I was worried that consumers who were upset with the Company would try to find me online.

69.     The volume of consumer complaints and calls from consumers increased over time and it became impossible for us to respond to all of them. At a certain point prior to March 2018, we created a Customer Service Department to handle consumer complaints.

70.     The top three things I remember consumers complaining about were (1) Company employees told consumers that their loans would be forgiven immediately; (2) Company employees told consumers that their monthly payments to the Company would go towards paying off their loans; and (3) Company employees used an incorrect, higher family size in the consumer's student loan adjustment application.

71.     Wen and I knew that employees told consumers that their loans would be forgiven immediately and that monthly payments to the Company

1  would go toward paying off their loans. Wen and I also knew these statements

2  were incorrect.

3      72.    I know Wen was aware of the content of consumer complaints

4  because I discussed them with him. At times Nguyen was part of these

5  discussions since he sometimes raised consumer complaints with me and Wen.

6      73.    Consumers also left negative reviews of the Company online on

7  both Yelp and Google. Wen and I were concerned about those reviews and

8  hired a reputation management company to help build a positive presence for

9  the Company.

10      74.    Exhibit 6 is a true and correct copy of an email from Wen to me,

11  our contact at the reputation management company, and Adam Sthay, who

12  helped the Company with marketing.

13      75.    The Company also received consumer complaints that were

14  forwarded by state law enforcement agencies. Wen was responsible for

15  responding to all of those.

16      76.    The Company also received subpoenas from law enforcement

17  agencies. Wen was the primary point of contact for the Company in terms of

18  working with outside attorneys on handling those responses.

19      77.    As the Company received more government inquiries, Wen and I

20  talked about our growing concern about the government finding out that our

21  Company was violating the law. Wen agreed that we should create and use

22  additional business names "doing business as" the Company to help keep the

23  number of complaints against any particular company down and continue flying

24  under the government's radar. We also planned to have each sales team use a

25  different name to reduce the number of complaints against any given company

26  and so we could identify which sales teams were causing the most complaints.

27

28

Pls.' Ex. 1
P. 11
CFPB-20221014-00000010

78.     Wen and I planned to change the sales teams' names every few months. Exhibit 7 is a true and correct copy of a calendar appointment I created as a reminder for Wen and me to change the teams' names.

79.     Wen and I were concerned about high chargeback rates since that could lead to losing merchant accounts.

80.     In the early days, I recall merchant account providers telling us that we could lose our accounts if our chargeback rates exceeded 1%. Although we tried to keep chargeback rates below 1%, at times they were higher.

81.     For example, Exhibit 8 (CFPB-20211007-00000153-155) is a true and correct copy of an email sent to me, Wen, and other employees in which Nguyen discusses some instances when our chargeback rates exceeded 1%.

82.     Jimmy Lai also told Wen and me that we needed to get into a visa monitoring program because of our high chargeback rates or we could lose our merchant accounts.

83.     The Company had a liberal refund policy because Wen and I thought that would help keep chargebacks and consumer complaints down. Based on my experience, consumers who received a refund quickly were less likely to pursue a chargeback or to complain to a third-party. Wen agreed, and he and I were the final decisionmakers with respect to the refund policy.

### ADVANCE FEES

84.     I first learned of the Telemarketing Sales Rule's ("TSR") advance fee ban for debt-relief providers when I applied for accreditation with the Better Business Bureau (BBB) for CAC sometime in late 2015/early 2016. As part of my correspondence with the BBB, the BBB shared information regarding the TSR's requirements for debt relief providers, and I did some follow up research on that issue.

85.     Later, in November 2016, I consulted with Wen about how to handle an inquiry from the BBB asking me to respond to information

purporting that the Company charged advance fees. Exhibit 9 is a true and correct copy of an email chain dated November 15, 2016, between me and Wen regarding this inquiry from the BBB.

86.     Based on my prior discussions with Wen, I know that when he provided feedback to me about responding to the BBB in his November 15, 2016 email, Wen knew that the Company did *not* put payments from consumers in a trust account held in the consumers' names. He also knew that the Company did not wait to collect fees until after services had been rendered.

87.     Rather, Wen understood that the Company's practice was to collect money through payment processors and deposit the funds directly in its regular bank accounts, not segregated accounts.

88.     Before November 2016, Wen and I had discussed that the TSR requires a third-party unrelated to the Company to hold consumers' funds and to only release those funds when it receives proof that the work for the consumer is complete.

89.     At times, Wen and I publicly described the Company as a document preparation company so that people would be less likely to think the TSR's advance fee requirements applied to the Company.

90.     In approximately late 2017/early 2018, Wen and I attended a conference on student loan debt relief in Las Vegas. At the conference, we learned about the FTC's "Game of Loans" lawsuits against a bunch of other student-loan debt-relief providers who were charging advance fees. What we learned made us more worried about the government finding out that we weren't complying with the TSR.

91.     Following the conference, Wen and I decided to try to start using a third-party dedicated account provider (DAP) to hold consumer funds to try to comply with the TSR.

Pls.' Ex. 1
P. 13
CFPB-20221014-00000012

92.     This led us to test working with two dedicated account providers, Account Management Plus (AMP) and Reliant Account Management (RAM). The testing did not work well—we encountered a lot of issues trying to process payments due to technical problems.

93.     While we were testing AMP and RAM, the Company did not track when consumers made payments to student loan servicers on adjusted loans. And we continued to collect fees from consumers before submitting their student loan adjustment applications.

94.     Wen told me it wasn't worth the money we were paying to keep trying to work with the third-party account providers, and we ultimately terminated the Company's arrangements with them.

95.     We decided to explore whether we could set up our Company to process payments and make it look like a third-party dedicated account provider. The plan was for the Company to mimic a reputable account provider in the industry.

96.     Wen and I reached out to Ho since he was good with technology and asked for his help. At the time, Ho was helping us try to make sure everything was working with AMP, and he complained a lot about AMP's software.

97.     Ho told us that he could build a portal for us to use to collect payments from consumers. He said he could mimic AMP's design but that he could make the software work better than AMP's. Wen and I trusted Ho because he had automated payroll for us and that had worked, so we decided to move forward with having Ho create the portal.

98.     Sometime after Ho confirmed that he could build the payment portal for us, Wen and I discussed forming a new company to collect payments from consumers and began taking steps to form that company.

Pls.' Ex. 1
P. 14
CFPB-20221014-00000013

99.     Exhibit 10 is a true and correct copy of an email chain from February 2018 regarding setting up this type of new company and that includes me, Wen, and Mark Liu. At the time, Liu represented CAC.

100.   Within the first six months of 2018, the Company received a subpoena from the State of Minnesota and was named as a defendant in a class action lawsuit. As a result, Wen and I had lots of discussions about how to keep operating the Company.

101.   Exhibit 11 is a true and correct copy of an email chain from August 3, 2018, that includes me, Wen, and two attorneys who represented CAC at the time.

102.   In the first email sent by Wen, he suggests that we cease operating CAC/PSLC; use True Count to continue collecting payments from consumers acquired through CAC; and that we create a new consumer-facing company to replace CAC as the front-end sales company.

103.   Wen also referred to "our theory that only the front-end companies ever get investigated."

104.   Wen and I had discussed the theory he mentioned in his email. We talked about my understanding that the FTC only went after front-end marketing companies, not back-end processing companies. That's part of why we decided to close CAC and shift its operations to a company with a new name (Prime) but continued operating True Count.

105.   Wen took the lead on forming a new company that the Company would claim operated as an unrelated, third-party DAP, TAS 2019 LLC. The new company went by the name Trusted Account Services or TAS.

106.   Wen and I reached out to Jimmy Lai to see if Lai would be willing to be listed as an owner of TAS.

Pls.' Ex. 1
P. 15
CFPB-20221014-00000014

107.   One of the reasons we contacted Lai was because he had processing connections and we thought he could help us get the volume we needed.

108.   Lai agreed to be an owner of TAS. We came to an agreement with Lai that the Company would add a new, additional fee to consumers' payments to the Company, and Lai would get to keep that fee. In other words, in addition to the fees charged by the Company for its services, TAS was supposed to collect an extra few dollars per transaction which Lai would get to keep.

109.   There were never any plans for TAS to provide payment services for any other Company; rather, it was created solely to collect payments from legacy CAC and Prime consumers and future Prime consumers.

110.   Wen and I never developed a plan for how the Company would provide proof that consumers had made payments on an adjusted loan to TAS.

111.   We also did not plan to change the Company's practice of collecting fees from consumers while their loans were in forbearance or in the months leading up to consumers' annual IDR recertification, nor did we stop that practice.

112.   Wen also agreed that we should collect fees from consumers even if the consumers qualified for $0 monthly payments under an IDR plan, and therefore had not made any payment on an adjusted student loan.

113.   Wen also reached out to a friend of his, Kenny Huang, who agreed to be the other owner of TAS, but only on paper. During discussions I had with Wen, he shared that he didn't entirely trust Lai and wanted Huang to be a partial owner to limit Lai's control.

114.   While we were setting up TAS, Wen was continuing to secure payment processing for True Count. Exhibit 12 is a true and correct copy of an email chain Wen forwarded to me in February 2019, that includes a third-party cautioning Wen about complying with the TSR.

Pls.' Ex. 1
P. 16
CFPB-20221014-00000015

115.   Wen was also very involved in other parts of setting up TAS. Wen's involvement included editing and approving the content of TAS's website. For example, Exhibit 13 is a true and correct copy of an email dated April 2, 2019, from one of Wen's personal email accounts (kainewen@gmail.com) to one of my personal email accounts (albertkim11@gmail.com), that includes an attachment in which Wen provided revisions to the TAS website.

116.   Wen and I agreed that we should use our personal email accounts instead of our Company email accounts to communicate about TAS because we wanted to give the appearance that TAS was independent from the Company.

117.   Wen also led the effort to get payment processors for TAS. Exhibit 14 is a true and correct copy of an email chain from April 2019 that includes email correspondence forwarded to me by Wen.

118.   The email Wen forwarded to me includes an email from Donald Cook to tas2019llc@gmail.com. Cook had helped us with ACH processing for True Count. Wen explained to me that we wanted Cook to think TAS was setting up the ACH processor, not the Company. Based on my discussions with Wen, I learned that the email address tas2019llc@gmail.com was controlled by the Company (I'm not sure exactly by whom), not Kenny Huang.

119.   Similarly, at some point we created a fictitious TAS employee, Michael Tabin, to correspond with payment processors so it looked like none of the emails coming from TAS were affiliated with the Company.

## WEN'S EFFORTS TO CONCEAL MISCONDUCT

120.   In January 2018, a consumer brought a class action lawsuit against CAC. I received a copy of the complaint soon after it was filed. Exhibit 15 is a true and correct copy of that class action complaint.

121.   In May or June 2018, the Company received a civil investigative demand (CID) issued by the Minnesota Attorney General's Office (Minnesota).

I reviewed a copy of Minnesota's CID soon after the Company received it.
Exhibit 16 is a true and correct copy of the CID issued to CAC by Minnesota.

122.   Wen and I discussed the class action lawsuit and Minnesota's
investigation. Based on the class action lawsuit, Minnesota's investigation, and
the volume of consumer complaints about the Company, we agreed that there
was a good chance that CAC would get shut down because we weren't
following the TSR and because the Company misrepresented information to
consumers.

123.   Wen and I decided to make it look like we were winding down
CAC, but we weren't going to actually stop CAC's operations. Instead, we
decided to move CAC's operations to a new Company, Prime.

124.   Wen and I wanted Prime to look like a separate company from
CAC, so we asked Calvin Ho to be the owner, but only on paper, for Prime.
Wen and I agreed that we would continue to control CAC's operations, but we
would do it through Prime. We wanted to make it look like we had closed the
doors on our debt-relief business even though we hadn't.

125.   In late September 2018, Wen and I fired CAC's employees and
then re-hired them through Prime.

126.   As part of rolling over CAC into Prime, Wen and I directed the
opening of new bank accounts for Prime. Wen and I were not listed as account
signatories on Prime bank accounts because we wanted to make those accounts
look separate from CAC.

127.   Other than changing references from Premier Student Loan Center
("PSLC") to Financial Preparation Services ("FPS"), the Company continued to
use basically the same scripts, training materials, and consumer contracts.

128.   In mid-September 2018, I received a CID issued by the Consumer
Financial Protection Bureau ("the Bureau") to CAC.

DECL. OF ALBERT KIM

Pls.' Ex. 1
P. 18
CFPB-20221014-00000017

129.   Within approximately two months of receiving the Bureau's CID, Wen and I decided to delete all of the Company's emails using the @premierstudentloancenter.com domain. These emails dated back to November 2015.

130.   Wen and I spoke about our decision to delete all of the @premierstudentloancenter.com emails.

131.   Wen and I decided to delete the emails for several reasons. First, the deleted emails included emails showing that he and I knew the Company was charging advance fees in violation of the TSR.

132.   The deleted emails also showed that Wen and I knew the Company was including false information about family size, marital status, and income in student loan adjustment applications, and that we hadn't done anything to stop it.

133.   The deleted emails also showed that Wen and I knew about misrepresentations to consumers about the Company's services, but that we hadn't tried to stop those practices.

134.   The deleted emails also showed that CAC effectively was still operating, but under the new name Prime.

135.   Wen and I decided to have all of the @premierstudentloancenter.com emails deleted because we assumed that there were also emails between employees showing that the Company was charging advance fees, including false information in student loan adjustment applications, and making misrepresentations to consumers about its services.

136.   Wen and I were at the Laguna Canyon Road office when we decided to delete the emails. We asked Ho to come to our office, and then told Ho in person that we wanted all the @premierstudentloancenter.com emails deleted.

137.   After Ho deleted the emails, Wen and I called the customer service line together on a speaker phone to ask HostGator, the Company hosting the emails, to confirm that the emails were really gone forever. HostGator confirmed that the emails were indeed gone forever.

138.   Sometime after receiving the Bureau's CID, Wen and I decided that CAC should file for bankruptcy. We wanted it to look like CAC was insolvent, and we also thought that if CAC was in bankruptcy, the government would stop its investigation.

139.   CAC filed for bankruptcy in January 2019. I signed the bankruptcy papers because I was the only one listed in corporate filings as the owner.

140.   After CAC filed for bankruptcy, Wen and I continued operating the student-loan debt-relief business through True Count, Prime, and other companies.

141.   In August 2019, the Wall Street Journal published an article detailing a lot of things that the Company was doing wrong. Wen and I discussed the article, and we were both worried about getting into trouble.

142.   In response to the Wall Street Journal article, Wen and I decided to post something on the Company's website saying we were not taking on new clients and were going to focus on compliance, which we did.

143.   In August 2019, Wen and I also discussed changing the Company's scripts and training materials to make them look more compliant. We asked someone in the Sales Department to send us all scripts and training materials in use at the time. Exhibit 17 is a true and correct copy of an email I received from Matt Weinberg in response to this request. When I received the email, Matt Weinberg was a Company employee in the Sales Department, and I understood that he was sending us materials that were in use by the Company at the time.

<div align="center">DECL. OF ALBERT KIM</div>

CFPB-20221014-00000019

144.   The attachments to Weinberg's email included Exhibit 18, which I recognize as a true and correct copy of a script prepared by the Company for sales employees to use in response to questions raised by consumers.

145.   In late October 2019, the Bureau, Minnesota, the North Carolina Department of Justice, and the Los Angeles City Attorney's Office filed a complaint and obtained a temporary restraining order (TRO) against Wen, the Company, and me, among others.

146.   On October 23, 2019, the day the Receiver seized control of the Company, an employee at the Company texted me that law enforcement was at the office. I called the employee, James Thomas, and he explained to me what was happening.

147.   I reached out to Wen and Nguyen and we met at a Starbucks near the office. We reached out to our attorneys and met with them, and we also met with other employees, including Adon Janse, Nicole Balestreri, and Shirena Huizar.

148.   On October 23 or October 24, 2019, Wen, Nguyen, and I met at a restaurant in Irvine. We talked about the text messages on our phones, and we agreed to delete them.

149.   Wen, Nguyen and I deleted our text messages at the restaurant, including our Signal, iMessage, and Skype messages with each other.

150.   The text messages that we deleted dated back to at least November 2015. The text messages that we deleted included statements by Wen showing that he was aware that the Company was violating the law in the ways discussed above, but hadn't done anything to stop it.

151.   We deleted the text messages because we were concerned that law enforcement would obtain these text messages and would see that we were aware of the Company's collection of advance fees, the Company's misrepresentations to consumers, and the Company's practice of submitting

DECL. OF ALBERT KIM

1  student loan adjustment applications with false information, and that we had not

2  taken any steps to change those practices until late August 2019.

3  I declare under penalty of perjury that the foregoing is true and correct.

4  Executed on September  29, 2022

5

6  _____

7

8  Albert Kim at  Downey, CA
   _____

9

10

Pls.' Ex. 1
P. 22
CFPB-20221014-00000021

# Plaintiffs' Exhibit 1.1

# Exhibit 1

**CONSUMER ADVOCACY CENTER, INC.**
Federal Tax ID# . <span style="color:red">Redacted</span> 0303

NAMES, ADDRESSES, & CAPITAL CONTRIBUTIONS OF MEMBERS

Member's Name:               Kaine Wen
Address:                     <span style="color:red">Redacted</span>
                             Azusa, CA <span style="color:red">Redacted</span>
Capital Contribution:        $30,000
Share Ownership Interest:    750 out of 1,500 shares
Percentage Ownership Interest: 50%
Share in Profits & Losses:   50%

_____      10/01/2015
Kaine Wen                    Date
Title: Chief Financial Officer

Member's Name:               Albert Kim
Address:                     <span style="color:red">Redacted</span>
                             Aliso Viejo, CA <span style="color:red">Redacted</span>
Capital Contribution:        $10,000
Share Ownership Interest:    750 out of 1,500 shares
Percentage Ownership Interest: 50%
Share in Profits & Losses:   50%

_____      10 / 01 / 2015
Albert Kim                   Date
Title: President

CONFIDENTIAL
CONFIDENTIAL by designation of the CFPB

AW_0000254
CFPB-20220705-00000001

# Plaintiffs' Exhibit 1.2

# Exhibit 2.1

# Premier Student Loan Center

## PROFIT AND LOSS
### January - December 2015

|  | TOTAL |
|---|---|
| **Income** |  |
|   **Document Preparation Services** | 23,515.49 |
| **Total Income** | **$23,515.49** |
| **Gross Profit** | **$23,515.49** |
| **Expenses** |  |
|   **1099s** |  |
|     **Albert Kim** | 550.00 |
|     **Chinh Huynh** | 524.23 |
|     **German Santibanez** | 2,049.15 |
|     **John Davi** | 579.20 |
|     **Rumi Kim** | 480.00 |
|     **Tuong Nguyen** | 567.00 |
|   **Total 1099s** | **4,749.58** |
|   **Advertising** | 20.00 |
|     **Facebook** | 2,712.50 |
|     **Mailers** | 5,600.00 |
|     **PubClub Leads** | 9,830.00 |
|   **Total Advertising** | **18,162.50** |
|   **Bank Charges** | 54.00 |
|     **EMS Merchant Account Fees** | 732.29 |
|   **Total Bank Charges** | **786.29** |
|   **Computer Equipment/IT** | 4,184.54 |
|   **Debt Pay Pro Software** | 1,544.52 |
|   **Dues & Subscriptions** | 70.00 |
|   **Job Placement Ads** | 35.00 |
|   **Meals and Entertainment** | 314.16 |
|   **Office Equipment and Supplies** | 169.78 |
|   **Other General and Admin Expenses** | 102.78 |
|   **Phone and Internet** | 397.74 |
|     **Cox** | 557.48 |
|     **Fonality** | 674.41 |
|   **Total Phone and Internet** | **1,629.63** |
|   **Rent or Lease** | 2,544.00 |
|   **Shipping and delivery expense** | 75.39 |
|   **Software Expense** | 37.72 |
|   **Supplies** | 309.90 |
|   **Website Expense** | 559.00 |
| **Total Expenses** | **$35,274.79** |
| **Net Operating Income** | **$ -11,759.30** |
| **Net Income** | **$ -11,759.30** |

Pls.' Ex. 1.2
P. 28

CFPB-20220705-00000089

Report-Profit and Loss

*Wednesday, Mar 02, 2016 05:08:43 PM PST GMT-8 - Cash Basis*

Pls.' Ex. 1.2
P. 29
2/2

CFPB-20220705-00000090

Plaintiffs' Exhibit 1.3

# Exhibit 2.2

# Premier Student Loan Center

## PROFIT AND LOSS
### January - December 2016

|  | TOTAL |
|---|---|
| Income |  |
| Cubicle Rental Income | 32,400.00 |
| Private Loans | 8,911.17 |
| Refunds and Allowances |  |
| Check Refunds-Allowances | -299.67 |
| **Total Refunds and Allowances** | **-299.67** |
| Total Document Preparation Income |  |
| Document Preparation Services-CAC | 1,560,056.91 |
| Document Preparation Services-EMS | 397,956.44 |
| Document Preparation Services-EPS | 115,640.18 |
| Document Preparation-ACH | 24,965.25 |
| **Total Total Document Preparation Income** | **2,098,618.78** |
| **Total Income** | **$2,139,630.28** |
| GROSS PROFIT | **$2,139,630.28** |
| Expenses |  |
| 1099s |  |
| Aaron Acosta | 99,789.88 |
| Albert Kim | 164,909.96 |
| Alex Morgan | 120.00 |
| Angie Canchola | 22,846.50 |
| Ashley Linder | 930.00 |
| Bradford Barnes | 375.00 |
| Brandi Ryan | 44,230.00 |
| Brian Trunick | 8,150.00 |
| Casey Kulek | 2,465.00 |
| Chau Le | 492.50 |
| Christian Sangalang | 21,757.75 |
| Corey Munden | 1,000.00 |
| Dakota Sedger | 6,107.00 |
| Danny Lewis | 11,089.00 |
| David Maithya | 3,864.17 |
| David Sparaco | 1,405.00 |
| Diego Velez | 7,425.00 |
| Eric Wolgamot | 193.06 |
| Frank Hernandez | 31,585.92 |
| German Santibanez | 4,074.82 |
| Herman Padilla | 1,110.00 |
| Jackson Miles | 10,691.27 |
| Jacob Burman | 2,615.83 |
| James Ozorkiewicz | 21,886.60 |
| James Robert Jones | 3,370.00 |
| Jeffrey Driskell | 2,442.50 |
| Jeffrey Folwell | 1,161.75 |

CFPB-20220705-00000141

|  | TOTAL |
|---|---|
| John Davi | 565.93 |
| Jonathan Nuqui | 874.72 |
| Jordan Miranti | 19,285.87 |
| Joseph Livio Boylan Consulting | 3,670.00 |
| Josh Eastman | 4,529.25 |
| Josiah Shafer | 2,295.00 |
| Kaine Wen | 15,230.00 |
| Lauren Frazier | 4,165.00 |
| Mariano Lizarraras | 749.26 |
| Mark Zarrinkelk | 3,937.00 |
| Matt Govin | 16,842.00 |
| Maxwell Camp | 872.72 |
| Mick Paragatos | 5,955.00 |
| Monique Dinh | 72,304.70 |
| Morgan Peacock | 33,181.50 |
| Nathan Casey | 47,833.60 |
| Parker Kalmen | 2,715.00 |
| Patrick Johnson | 31,630.25 |
| Phil Steele | 300.00 |
| Pierre Kelman | 35,366.75 |
| Rachel Villasenor | 30,344.00 |
| Ralph Porier | 6,321.14 |
| Robert Kim | 255.64 |
| Rohan Sachdev | 4,755.00 |
| Rumi Kim | 120.00 |
| Sean Mcquaid | 13,930.00 |
| Shawn Boccia | 1,910.00 |
| Shea Simmons | 10,215.92 |
| Simon Acevedo | 17,290.50 |
| Steve Holcomb | 300.00 |
| Terrance Englund | 25,874.56 |
| Tolan Manoguerra | 3,460.00 |
| Tuong Nguyen | 45,187.52 |
| Tyler Gould | 745.00 |
| Tyler Weeda | 14,867.25 |
| Visar Ahmetaj | 3,515.00 |
| Wayne Mousaw | 5,830.00 |
| William Hutson | 30,386.30 |
| Yair Avila | 5,753.12 |
| Zach Azouz | 22,146.25 |
| Zach Hart | 1,491.90 |
| **Total 1099s** | **1,023,091.16** |
| Advertising | 513.33 |
| Facebook | 1,940.00 |
| GOT Consumer | 2,100.00 |
| New Theory Media | 2,000.00 |
| Other Marketing Expenses | 1,100.00 |
| PubClub Leads | 659,571.20 |
| Radio Advertising | 448.00 |
| Ratezedia Marketing | 27,619.00 |

CFPB-20220705-00000142

| | TOTAL |
|---|---|
| Referral Gift Cards expense | 14,654.60 |
| TV Advertising-Joe Merchon | 4,950.00 |
| WorldLeads | 3,200.00 |
| **Total Advertising** | **718,096.13** |
| Bank Charges | 1,139.00 |
| Allied Wallet Processing Fees | 49,105.20 |
| EMS Merchant Account Fees | 18,514.14 |
| EPS Processing Fees | 2,536.89 |
| Gateway Charges | 3,156.35 |
| **Total Bank Charges** | **74,451.58** |
| Depreciation Expense | 45,209.00 |
| Insurance | 2,391.00 |
| IT | 0.00 |
| Semper Fi-IT | 14,235.15 |
| **Total IT** | **14,235.15** |
| Janitorial Services | 1,253.67 |
| Job Placement Ads | 1,905.44 |
| Legal & Professional Fees | 1,162.00 |
| Meals and Entertainment | 11,657.22 |
| Moving Expense | 707.50 |
| Office Equipment | 14,524.15 |
| Other General and Admin Expenses | 600.50 |
| Payroll Expenses | |
| Taxes | 4,137.40 |
| Wages | 41,232.89 |
| **Total Payroll Expenses** | **45,370.29** |
| Phone and Internet | |
| Cox | 7,077.93 |
| Fonality | 23,065.67 |
| My Fax and Answering Service | 7,441.30 |
| Pub Club Phone System | 0.00 |
| **Total Phone and Internet** | **37,584.90** |
| Rent or Lease of Buildings | 25,051.42 |
| Guaranteed Rate Office Lease | 50,642.84 |
| Rancho Canyon Office Lease | 30,060.15 |
| **Total Rent or Lease of Buildings** | **105,754.41** |
| Repair & Maintenance | 172.90 |
| Shipping and delivery expense | 745.27 |
| Software Expense | 3,862.29 |
| Debt Pay Pro Software | 17,650.00 |
| **Total Software Expense** | **21,512.29** |
| Supplies | 8,115.61 |
| Taxes & Licenses | 1,912.10 |
| Travel Meals | 129.58 |
| Uncategorized Expense | 0.00 |
| **Total Expenses** | **$2,130,581.85** |
| NET OPERATING INCOME | **$9,048.43** |
| Other Expenses | |

Pls.' Ex. 1.3
P. 34
3/4

Cash Basis  Monday, August 5, 2019 05:33 PM GMT-7

CFPB-20220705-00000143

|  | TOTAL |
|---|---|
| Miscellaneous | 135.83 |
| **Total Other Expenses** | **$135.83** |
| NET OTHER INCOME | $ -135.83 |
| NET INCOME | **$8,912.60** |

CFPB-20220705-00000144

# Plaintiffs' Exhibit 1.4

# Exhibit 2.3

# Premier Student Loan Center

## PROFIT AND LOSS

### January – December 2017

|                                              | TOTAL          |
|----------------------------------------------|----------------|
| Income                                       |                |
| Private Loans                                | 8,427.52       |
| Private Loans 2nd Company                    | 6,035.27       |
| **Total Private Loans**                      | **14,462.79**  |
| Refunds and Allowances                       |                |
| Check Refunds-Allowances                     | -97,232.80     |
| **Total Refunds and Allowances**             | **-97,232.80** |
| Total Document Preparation Income            |                |
| Document Preparation Services-CAC            | 4,720,916.98   |
| Document Preparation Services-EMS            | 1,395,396.88   |
| Document Preparation Services-EPS            | 124,715.52     |
| Document Preparation-ACH                     | -299.75        |
| Esquire 2/Maverick Merchant Account          | 186,473.06     |
| Natural Nine Merchant Account                | 2,687,912.01   |
| True Count Merchant Account                  | 2,776,663.32   |
| WF Merchant Account                          | 1,747,292.92   |
| **Total Total Document Preparation Income**  | **13,639,070.94** |
| **Total Income**                             | **$13,556,300.93** |
| GROSS PROFIT                                 | **$13,556,300.93** |
| Expenses                                     |                |
| 1099s                                        |                |
| Albatross Management Inc.                    | 11,341.31      |
| American Auto Protection Inc.                | 12,732.94      |
| Brandi Ryan                                  | 50.00          |
| Carllin Chavez                               | 221.55         |
| Chau Le                                      | -492.80        |
| Christopher Ramírez                          | 1,072.93       |
| Cody Holter                                  | 110.25         |
| Dae Sefas                                    | 600.00         |
| Devoreau Sefas White                         | 300.00         |
| Giovana Pena                                 | 63.00          |
| Hold The Door Corp                           | 253,345.00     |
| Infinite Management Solutions                | 473,895.98     |
| Jailyn G Sloane                              | 338.37         |
| Jeffrey Folwell                              | 1,172.50       |
| JLK Marketing Corp                           | 19,021.86      |
| Jordan Michael Consulting Services           | 17,441.13      |
| Joseph Livio Boylan Consulting               | 28,649.98      |
| Justin Jorgensen                             | 4,000.00       |
| Kelman Consulting Inc.                       | 24,583.97      |
| Loki Consulting Services Inc.                | 32,570.36      |
| Mellisa Jackson                              | 7,278.95       |

CFPB-20220705-00000145

| | TOTAL |
|---|---|
| Monique Dinh | 11,489.25 |
| Nicholas Tiffany | 349.50 |
| Patrick Johnson | 0.00 |
| Real Estate Capital | 594.00 |
| Steven Schulz | 0.00 |
| Susana Esquibel | 9,447.75 |
| Syed Gilani | 3,567.53 |
| Timothy Mahlstadt | 160.65 |
| TN Accounting Inc | 89,610.00 |
| Tolan Manoguerra | 100.00 |
| Visar Ahmetaj | 0.00 |
| Zach Hart | 152.00 |
| **Total 1099s** | **1,003,767.96** |
| Adp LLC | 1,272.20 |
| Advertising | 497.02 |
| Affilliati Network | 2,397.00 |
| Anan Marketing | 1,628,600.00 |
| Billie Powers | 0.00 |
| Black Bird Media | 15,300.00 |
| Bridge Marketing | 73,500.00 |
| Call180.com | 4,000.00 |
| CPX | 241,200.00 |
| Desktop Cloud Solutions | 600.00 |
| Direct Power Media | 36,544.00 |
| Docs Done For You | 45.00 |
| Ezanga | 0.00 |
| Finnan Financial, Inc. | 2,300.00 |
| Five Marketing Group | 186,200.00 |
| Global Processing Solutions | 390,800.00 |
| Hello Conversion Software | 13,905.00 |
| HQ4ADS | 30,024.00 |
| Innovation Direct | 1,440.00 |
| Intellectual Incorporated | 86,345.00 |
| James Deering-Centra Corp | 187,272.00 |
| Jhashemi | 1,807.50 |
| Lead Excel Marketing | 4,250.00 |
| Lead Science -Drips | 125,873.00 |
| Other Marketing Expenses | 995.00 |
| Palo Media Group Marketing | 720.00 |
| Payoneer Marketing | 2,100.00 |
| PubClub Leads | 2,181,967.69 |
| Radio Advertising | 10,000.00 |
| Referral Gift Cards expense | 77,630.00 |
| Strive Marketing | 5,000.00 |
| Torchlight Technology Marketing | 13,968.00 |
| Trident Consult | 4,500.00 |
| TW Marketing 2017 | 5,400.00 |
| UEG  Incorporated | 92,876.00 |
| Ytel | 67,511.36 |
| **Total Advertising** | **5,495,567.57** |

Pls.' Ex. 1.4
P. 39
2/4

CFPB-20220705-00000146

|  | TOTAL |
|---|---|
| Automobile Expense | 11,783.57 |
| Bank Charges | 3,613.70 |
| Allied Wallet Processing Fees | 88,348.07 |
| EMS Merchant Account Fees | 71,521.16 |
| EPS Processing Fees | 2,044.47 |
| Esquire 2/Maverick Merchant Acct Fees | 4,614.84 |
| Gateway Charges | 11,225.32 |
| Natural Nine Merchant Account Processing Fees | 488,797.78 |
| True Count Merchant Account Fees Processing Fees | 384,201.27 |
| Wells Fargo Processing Fees | 60,239.10 |
| **Total Bank Charges** | **1,114,605.71** |
| Company Meals | 375.70 |
| Depreciation Expense | 183,392.00 |
| Disposal Fees | 2,994.00 |
| Donations | 1,000.00 |
| Dues & Subscriptions | 888.21 |
| Employee Benefit | -9,133.98 |
| Health and Fitness | 3,098.52 |
| Insurance | 3,210.58 |
| Arch EPLI Insurance | 31,261.96 |
| E&O and D&O insurance | 32,792.60 |
| Hartford Worker's Comp. Insurance | 27,200.00 |
| **Total Insurance** | **94,465.14** |
| IT | 2,085.85 |
| Janitorial Services | 15,725.77 |
| Job Placement Ads | 10,781.67 |
| Legal & Professional Fees | 8,828.00 |
| Akerman LLP law firm | 7,350.50 |
| Crammer Inc | 15,780.00 |
| Pansky Markle Ham LLP | 3,500.00 |
| Robin Ratner/Henry Josefsberg | 15,500.00 |
| **Total Legal & Professional Fees** | **50,958.50** |
| Meals and Entertainment | 37,764.47 |
| Office Equipment | 6,279.70 |
| Other General and Admin Expenses | 650.00 |
| Payroll Expenses | |
| Taxes | 152,516.50 |
| Wages | 1,634,583.46 |
| **Total Payroll Expenses** | **1,787,099.96** |
| Phone and Internet | 815.71 |
| Caller Ready | 96,307.99 |
| Cox | 19,323.13 |
| Fonality | 89,652.03 |
| My Fax and Answering Service | 24,726.37 |
| Pub Club Phone System | 24,023.81 |
| T Mobile Expense | 1,081.34 |
| Telephone | 3,318.40 |

CFPB-20220705-00000147

|  | TOTAL |
|---|---|
| **Total Phone and Internet** | **259,248.78** |
| Rent or Lease of Buildings | 65,052.05 |
| Guaranteed Rate Office Lease | 299,960.41 |
| **Total Rent or Lease of Buildings** | **365,012.46** |
| Repair & Maintenance | 14,407.20 |
| Security | 13,707.82 |
| Settlement and Damages | |
| Morten and Fairchild | 50,000.00 |
| Tyler Kahler | 2,300.00 |
| **Total Settlement and Damages** | **52,300.00** |
| Shipping and delivery expense | 8,762.05 |
| Software Expense | 4,939.83 |
| Debt Pay Pro Software | 105,620.00 |
| Intuit | 655.70 |
| Microsoft Software | 32,222.48 |
| **Total Software Expense** | **143,438.01** |
| Staffing Payroll Companies | |
| All Out Staffing Inc | 159,495.00 |
| House Lannister Staffing Inc | 2,315,805.00 |
| True Count Staffing Payroll | 221,995.00 |
| **Total Staffing Payroll Companies** | **2,697,295.00** |
| Supplies | 70,819.22 |
| Joyride Coffee | 34,271.36 |
| **Total Supplies** | **105,090.58** |
| Taxes & Licenses | 450.00 |
| Trash Expense | 682.00 |
| Travel | 37,131.36 |
| Travel Meals | 5,459.39 |
| Utilities | 2,358.57 |
| Website Expense | 4,794.55 |
| **Total Expenses** | **$13,525,560.29** |
| NET OPERATING INCOME | **$30,740.64** |
| Other Expenses | |
| Employee Expense Reimbursements | 16,719.01 |
| Miscellaneous | 836.25 |
| **Total Other Expenses** | **$17,555.26** |
| NET OTHER INCOME | **$ -17,555.26** |
| NET INCOME | **$13,185.38** |

Cash Basis  Monday, August 5, 2019 05:39 PM GMT-7

CFPB-20220705-00000148

Plaintiffs' Exhibit 1.5

# Exhibit 3

**From:**        Kaine Wen [kaine@premierstudentloancenter.com]
**Sent:**        1/29/2018 6:50:24 AM
**To:**          Albert Kim [albert@premierstudentloancenter.com]
**CC:**          Tom Nelson [tom@premierstudentloancenter.com]
**Subject:**     New Client Fee Agreement
**Attachments:** PSLC CFA - Kaine Revision 01.29.18.docx; Untitled attachment 103172.html

This is the Word file:

CFPB-20220705-00000103

# ⚏REMIER ⚏TUDENT ⚏OAN ⚏ENTER

## Document Preparation and Service Agreement ("Agreement")

This Agreement is entered into on the date shown below between PREMIER STUDENT LOAN CENTER (Hereinafter referred to as "Company") and the Client shown below (Hereinafter referred to as "Client").

**Company provides document preparation services to assist consumers who are applying for federal student loan programs using Department of Education ("DOE") forms. Company is a private company, not affiliated with any government agency, and for a fee Company will assist in preparation and completion of student loan consolidation or other application documents for student loan debt assistance programs offered by the DOE, for delivery to Client for Client's review and submission to the DOE. Company is not a lender, a debt consolidation company, or a law firm and does not provide legal advice. Company shall deliver completed applications to Client, for Client's use and submission to the DOE.**

Company and Client do hereby understand, covenant, and agree to the following:

1. **Provide Complete and Truthful Information.** Company will provide Client with an overview session limited to Client's federal student loan debts and Company's services. Client expressly represents and warrants that Client will provide Company with information that is complete, accurate, and truthful.

2. **Performance of Services.** Upon receipt of all information from Client, Company shall promptly review the information provided by the Client and complete the application forms required for the DOE program(s) that have been selected by the Client. Company shall prepare for filing an application to initiate a federal student loan consolidation through the DOE on behalf of Client, or alternatively and at the Client's option, identify and apply for other DOE-sponsored programs suitable for Client. All completed applications shall be delivered by Company to Client for Client's approval, signature, and direct submission to DOE.

**By initialing here, Client requests Company to complete & submit executed application to DOE.**

Initials _____

3. **Fees that Client Pays.** The payment for Company's services relating to the student loan assistance applications, their preparation, delivery to Client, and ongoing support are described in the attached Fee and Service Schedule (Exhibit A). Client should review the attached Fee and Service Schedule carefully as it sets forth one or more fees that the Client will be charged depending on the services that are selected. All fees are earned, due, and payable pursuant to the attached Fee and Service Schedule. Payments may be collected on a periodic payment option as indicated in the attached Draft Schedule (Exhibit B). The fees shall be debited from Client's

Page 1 of 17

CFPB-20220705-00000104

bank account or charged on Client's credit card pursuant to the attached authorization. Client shall be responsible for any third-party support or service fees, such as bank processing or third-party account fees.

4.      **No Advance Fees**. Per the attached Client Trust Account Authorization, Company does not take any advance fees from Client. Company will designate an independent third-party dedicated account provider ("DAP") to collect and deposit payments that Client has agreed to make with Company, pursuant to the Fee and Service Schedule of this Agreement, and to deposit and hold Client's funds in a trust account established and serviced by the DAP. The DAP will not disburse any Client fees until Client has received a consolidation, adjustment, or otherwise satisfactory result, and Client completes one payment towards such.

5.      **Limited Money Back Guarantee ("Satisfaction Guarantee")**. Company guarantees that the documents it prepares for consolidation or acceptance into a DOE-offered program for student loan debt, or a repayment plan using current lenders through the DOE, will be accurate and sufficient for acceptance by the DOE subject to the following conditions: (1) student loans that Client presents to Company are original debts, and have not been previously consolidated or had their terms or amounts previously adjusted, and have not been previously serviced or worked on by any other student loan assistance or adjustment company; (2) Client fully cooperates and is honest and timely in providing all information requested by Company and the DOE; and/or (3) Client does not possess a characteristic that pursuant to DOE rules or applicable law would disqualify Client from receiving a consolidation. Client shall not be entitled to the benefits of this section in the event that Client receives document preparation services from Company and prior to approval by the DOE, Client terminates this Agreement or continues with the DOE without the assistance of Company. If Client is not approved through the DOE subject to the above limitations, then Company will reimburse the Fee paid to Company (limited to funds received by Company from Client). All refund requests must be made, in writing, to Company within 30 days of any denial by the DOE. This guarantee expires six months after the date this Agreement is signed by the Client.

6.      **Process and Restriction on Account Transfer**. Once Client provides Company with all requested information and paperwork, Company will begin preparing Client's application(s). Company is not an intermediary or agent of the DOE, so it does not control any review or agency approval times. Once a consolidation or other beneficial result is secured, subject to Client's election and for an additional fee, Company will continue to monitor Client's account and collect the necessary paperwork to make sure Client's account is up-to-date and ready for the yearly income validation. Prior to the anniversary of the loan, Company will provide required documents and instructions to Client for submission to the DOE. Client understands that Company may use a third-party support servicer to assist in processing duties pursuant to this Agreement and Company may share Client's information with such processor consistent with Company's Privacy Policy.

7.      **Indemnification and Hold Harmless**. Client hereby agrees to defend and hold harmless Company and any supporting servicer from and against any claims and liability of any nature whatsoever arising out of or in connection with Client's failure to timely provide requested information to Company, Client's lack of authority or ability to complete terms of this

Pls.' Ex. 1.5
P. 46
CFPB-20220705-00000105

Agreement, and all other claims arising out of this Agreement or relating to Client's loans and other financial obligations. This Agreement constitutes the entire agreement between the parties. Company makes no warranty, express or implied, as to the fitness of any recommendation it may make to Client arising out of this Agreement. Except for cause, Client unconditionally waives any right of action against Company and third-party support servicer, its officers, directors, employees, agents, brokers and assignees, at law, equity or any other cause of action for any reason, directly, indirectly, or proximately believed to arise out of this Agreement, for any damages of any nature whatsoever that Client may incur by reason of Client following any recommendation of Company or Client's failure to follow any recommendation of Company, whether any singular, concurrent or series of recommendations are acted upon or not acted upon in whole or in part by Client. This section shall survive any termination of this Agreement.

8.     **Entire Agreement**. By virtue of Client's signature below, Client acknowledges that he or she has read, understands, and agrees to every term, covenant and condition of this Agreement without change or modification and that he or she has received a true and complete copy hereof, effective on the date below. This agreement is the only agreement between the parties and there is no other collateral agreement (oral or written) between the parties in any manner relating to the subject matter of this agreement. If any portion of this agreement is held to be invalid or unenforceable, the remaining provisions will remain in effect. The parties mutually understand and agree that a facsimile copy signature or an electronic signature on this agreement shall be deemed an original for all lawfully enforceable purposes.

9.     **Cancellation Policy**. Company's cancellation policy is designed to exceed state law requirements (for the Client's protection) and be easy to understand: If you are unhappy or dissatisfied at any time prior to receiving the documents or services described herein, a consolidation or other result from the DOE that Company has assisted you with, then simply send a letter, email, or facsimile to the Company requesting a refund and cancelling your program. Once Company completes its document preparation services and sends documents to Client, Client shall not be entitled to a refund unless subject to the Satisfaction Guarantee or if Client requests such cancellation within their state statutory cancellation right. If at any time you have questions, please do not hesitate to call or write to us directly.

10.    **Limitations on Damages**. Liability under this Agreement and/or relating directly or indirectly to Client's participation in any government loan or relief program, under any theory of liability regarding any claim by the Client, is limited to the amount of fees paid by Client and received by Company. The parties agree to be contractually bound to such limitation on any damages and agree not to demand or attempt to recover any amount in excess of such. It is the express intent of the parties to be bound by these limitations and this section shall survive any termination.

11.    **Mandatory Binding Arbitration to Resolve All Disputes and Class Action Waiver.** This Agreement is governed by a Binding Mandatory Arbitration Requirement. You are encouraged to consult with independent legal counsel so that you understand your rights relating to this requirement. This Section limits your legal rights and ability to go to court. Please consult with legal counsel to be sure you understand this Section prior to signing.

Pls.' Ex. 1.5
P. 47
CFPB-20220705-00000106

In the event of any controversy, claim or dispute between the parties (the Company, the Client, and any support entities or persons contemplated herein) arising out of or relating to this Agreement or the breach, termination, enforcement, interpretation, unconscionability, or validity thereof, including any determination of the scope or applicability of this agreement to arbitrate, shall be determined and resolved exclusively by arbitration in the county which the Client resides, or the closest metropolitan county, in accordance with the Laws of the State of California for agreements to be made in and to be performed in California. The parties agree that the arbitration shall be administered by the American Arbitration Association ("AAA") pursuant to its rules and procedures and an arbitrator shall be selected by the AAA. The arbitrator shall be neutral and independent and shall comply with the AAA code of ethics. The award rendered by the arbitrator shall be final and shall not be subject to vacation or modification. Judgment on the award made by the arbitrator may be entered in any court having jurisdiction over the parties. If either party fails to comply with the arbitrator's award, the injured party may petition the circuit court for enforcement. The parties agree that either party may bring claims against the other only in his, her, or its individual capacity and not as a plaintiff or class member in any purported class or representative proceeding. Further, the parties agree that the arbitrator may not consolidate proceedings of more than one person's claims and may not otherwise preside over any form of representative or class proceeding. The parties shall share the cost (excluding attorney's fees) of arbitration equally. In the event a party fails to proceed with arbitration, unsuccessfully challenges the arbitrator's award, or fails to comply with the arbitrator's award, the other party is entitled to costs of suit, including a reasonable attorney's fee for having to compel arbitration or defend or enforce the award. Binding Arbitration means that both parties give up the right to a trial by a jury. It also means that both parties give up the right to appeal from the arbitrator's ruling except for a narrow range of issues that can or may be appealed. It also means that discovery may be severely limited by the arbitrator. This section and the arbitration requirement shall survive any termination.

Initials _____

12. **Information Authorization**. Client hereby authorizes Company to verify past and present employment earnings records, bank accounts, stock holdings, and any other asset balances that are needed to process Client's application request(s). Importantly, Company does not provide any form of credit repair, credit score enhancement, unsecured or secured debt relief, or legal or tax advice, so any information obtained by Company cannot be used for those purposes.

13. **Electronic and Voice Communication Consent**. Client consents to do business electronically with Company. Client understands that electronic transactions, not limited to emails, are inherently unsecure and that both Client and Company will take all reasonable steps to maintain the Privacy of the information shared between the parties. Client consents to receive information and documents relating to this Agreement and Company services via electronic mail, text message, facsimile, voicemail, and any other common electronic means. Client understands that all costs associated with the receipt, review and use of such electronic communications shall be those of Client, such as maintaining access to the Internet or paying for text messages. Client consents to receive updates and documents relating to this Agreement and the services and programs offered by Company via prerecorded voice messages, text/SMS messages, and/or

Pls.' Ex. 1.5
P. 48
CFPB-20220705-00000107

through the use of an automated dialing system. Client may contact Company at any time to opt out of receiving updates, new programs or offers through prerecorded or autodialed messages. Consent to this section does not bind Client to any future purchases of new services or offers.

14. **Important Disclosure. You may, of course, try to complete your applications and consolidate your loans yourself without paying anyone a fee – the results could be the very same or they might vary. We are required to advise you that our services are OPTIONAL and you, as the debtor, may directly apply to the DOE for benefits by yourself without fees. However, our services are private and focused on your interests. Our goal is to reduce the stress and frustration that many experience when going through this process. We wade through all your paperwork and the DOE websites and applications, find the documents that you need, and take the time to make sure your application(s) are completed accurately and timely. We back up our services by our Satisfaction Guarantee. The nominal fee for these services is similar to you paying a tax preparer to do your taxes for you – you could do them yourself, but most of us turn them over to an expert to do and to ensure that they are done right the first time. Please note that the Company does not expressly or impliedly warrant, represent or guarantee that it will be able to reduce your total student loan debt or monthly payments. Company is NOT A LENDER, and we do not consolidate debts or extend credit. We solely provide application assistance services and education, along with any optional support programs.**

Initials _____

**BY SIGNING BELOW (ELECTRONICALLY OR PHYSICALLY), I HEREBY ACKNOWLEDGE THAT I HAVE NOT BEEN ADVISED BY COMPANY, ANY OF ITS AGENTS, AND/OR AFFILIATES TO FOREGO A STUDENT LOAN PAYMENT. DURING THIS PROCESS, I AM RESPONSIBLE FOR MAKING MY PAYMENTS, AND FAILURE TO DO SO COULD DISQUALIFY ME FROM OBTAINING THE SERVICES THAT I APPLIED FOR.** I FURTHER ACKNOWLEDGE THAT NO GUARANTEES OR PROMISES RELATING TO GOVERNMENT AGENCIES OR ANY RELIEF THAT I MAY RECEIVE HAVE BEEN PROVIDED TO ME BY COMPANY, ANY OF ITS AGENTS, AND/OR AFFILIATES, AND A POSITIVE OUTCOME IS NOT GUARANTEED. I UNDERSTAND AND CONSENT TO LIMITATIONS ON DAMAGES, BINDING ARBITRATION CLAUSE, AND CLASS ACTION WAIVER CONTAINED HEREIN, AND HAVE HAD THE OPPORTUNITY TO REVIEW THIS AGREEMENT IN ITS TOTALITY AND ASK ANY QUESTIONS OF COMPANY.

Client's Signature: _____

Client's Printed Name: _____

Executed on this (Date): _____

Pls.' Ex. 1.5
P. 49
CFPB-20220705-00000108

# Exhibit "A" to Service Agreement
# Fee and Service Schedule

The purpose of this Fee and Service Schedule is to ensure that Client is aware and consents to the fees that Company will charge for its services in assisting Client in preparing documents for one or more of the below programs. While such programs may be available for free directly by various government agencies, Company's services are fee-based and focused on application and document preparation. If other programs are identified by Client or Company to be suitable for Client, then additional fees may apply and will be presented to Client in writing for approval. Fees are charged consistent with the terms of Client's Agreement. Fees herein are only Company fees and do not include any third-party support or service fees, such as bank fees.

Client requests Company to perform, in good faith, the following services (the "Services"): (a) conduct a financial review of the Client's current situation; b) analyze and review potential Student Loan Consolidation options that may be available to Client from the DOE; (c) discuss potential options with the Client; and (d) prepare and deliver to Client selected applications.

Company's services ("Services") will be limited to the following:

1. Assisting Client in locating options and document preparation limited to government consolidation, education and/or refinance or similar programs designed for Client's specific debt(s);

2. Locating, obtaining and preparing the application(s) and supporting documents to apply for the programs and services described above;

3. Additional consultation as needed with Client to gather and obtain information and documents from Client needed to prepare the above documents, and answer Client questions; and

4. Follow-up on application, provide updates to Client, as reasonable, relating to documents that the Company will complete and provide for Client approval, signature, and submission.

5. For certain loans, it may be determined that Client is in default of their obligations ("Default Accounts"). Company will assist with Default Accounts limited to reviewing the Client's present status and existing loan obligations, and upon review consult with Client to locate a specific payment plan known as a "rehabilitation plan." Generally, if the Client is likely to qualify for such based-on Client's financials and ability to pay, the Company will present such (with Client's approval) to the government creditors. Company will assist Client in qualifying for a rehabilitation program, and upon such acceptance Client will receive a term repayment program. Upon meeting lender-imposed repayment terms (usually for 6- 12 months), Client may qualify to submit a consolidation application consistent with the above. Company shall then assist per above.

6. Some Clients may require other assistance with their loans that shall be deemed by the

Pls.' Ex. 1.5
P. 50
CFPB-20220705-00000109

Company and Client to be in the Client's best interest. Those services shall be charged on a fee-for-service basis consistent with a written pricing schedule to be provided to the Client for Client's signature prior to any work commencing. Those services shall be limited to providing support with the DOE relating to other student loan assistance programs that may be available for the Client. Other than the amounts charged for these supplemental or alternative services, all of the terms of this Agreement shall continue to apply.

Fees for the Above Services and Length of Agreement: In connection with this Agreement, the above services shall be provided to the Client at a rate of $1,195 for document preparation and delivery to Client for a consolidation consistent with the above, or $1,295 for services limited to Default Accounts and rehabilitation programs as described above. Fees shall be due in full and payable to Company once services have been completed, or in the event of a rehabilitation program fees are due in full once Client makes first payment to servicer(s). Once earned through the above provision of services, all fees are non-refundable. All fees shall be debited from Client's bank account or charged on Client's credit card pursuant to the attached authorization. Client shall be responsible for any third-party support or service fees, such as bank fees.

ACKNOWLEDGEMENT

As indicated by my signature below, I acknowledge that I have read, understand, and agree to the terms and conditions of the Fee and Service Schedule.

Client's Signature: _____

Client's Printed Name: _____

Executed on this (Date): _____

Pls.' Ex. 1.5
P. 51
CFPB-20220705-00000110

## Exhibit "B" to Service Agreement
## Draft Schedule

| # | Date | Enrollment Fee | Recurring | Total Payment |
|---|------|----------------|-----------|---------------|

Client's Signature: _____

Client's Printed Name: _____

Executed on this (Date): _____

Pls.' Ex. 1.5
P. 52
CFPB-20220705-00000111

# Credit Card Authorization Form

I hereby authorize PREMIER STUDENT LOAN CENTER and/or its third-party support servicers to charge my credit card below the Fees pursuant to the Fee and Service Schedule of my Agreement. The Fees will be automatically processed in accordance with the Draft Schedule of my Agreement.

☐  I authorize Company to charge my credit card in accordance with the Draft Schedule of my Agreement for services provided pursuant to my Agreement. No additional charges are authorized. I understand that charges declined by the credit card issuer could constitute ground for cancellation of Company's document preparation services.

=================================================================================

Please complete all of the following information.
Your account cannot be processed if incomplete.

Check the type of credit card: ☐ MC        ☐ VISA        ☐ Discover        ☐ AMEX

Credit Card Number:

Expiration Date:

Security (CVC) Code:

Name of Credit Card Holder (exactly as it appears on the card):

Billing Address:

City:

State:

Zip Code:

Signature of Credit Card Holder:

Date:

Pls.' Ex. 1.5
P. 53
CFPB-20220705-00000112

# Client Trust Account Authorization
## Dedicated Account Provider
## <u>No Advance Fees</u>

**Client Trust Account Services**

Company will use an independent third-party dedicated account provider ("DAP") to process payments to and from a trust account (including electronic and automatic transfers), make disbursements as directed, and provide transaction and account information related hereto (collectively "Services") on behalf of Client.

**Appointment**

Client hereby authorizes Company to designate a DAP to collect and deposit payments that Client has agreed to make with Company, pursuant to the Fee and Service Schedule of this Agreement, and to deposit and hold Client's funds in a trust account established and serviced by the DAP. Client agrees that the trust account is non-interest bearing and may be located in California or any other state of the DAP's choice. Client agrees that the DAP will disburse from Client's funds any service fees as stated below and Company's fees pursuant to the Fee and Service Schedule of this Agreement. Client may revoke this Appointment with a minimum of five banking days' notice to Company in the manner set forth below. Client acknowledges that all transactions to and from Client's trust account must comply with the provisions of local, state, and federal laws.

**Client Fee Disbursement Terms – <u>NO ADVANCE FEES</u>**

The DAP will collect, deposit, and hold payments that Client has agreed to make with Company, pursuant to the Fee and Service Schedule of this Agreement, in a trust account. The DAP will not disburse any Client fees until:

1. Client has received a consolidation, adjustment, or otherwise satisfactory result, and
2. Client completes one payment towards such.

If the new payment is $0 (zero dollars), then disbursement may occur upon the passing of the first due date under the new $0 payment terms.

These Client fee disbursement terms apply on an annual basis. For all Client fees rendered towards each year of Company's services under this Agreement, the DAP will only disburse Client fees when the above two requirements are met for that year.

**Transaction and Account Information, and Communications**

The DAP will provide Client with access to Client's transaction and account information, upon request. Client agrees that disclosures, transaction and account statements, disbursement verification, and any other communications may be distributed by electronic mail. Client

Pls.' Ex. 1.5
P. 54
CFPB-20220705-00000113

acknowledges that Client is able to electronically receive, download, and print such information and communications. If Client is unable to communicate electronically, Client will notify Company and reasonable alternative means of communication will be established.

**Service Fees** – Client authorizes the DAP to charge the following fees for services rendered:

- **<u>All service fees are waived.</u>**

**Miscellaneous**

Client agrees to indemnify and hold harmless the DAP, its officers, directors, agents, and employees, from any and all claims, demands, and damages arising out of a dispute between Client and Company.

Client understands that the DAP may share information with its depository institutions, its affiliates, Company, and any other party legally entitled to facilitate the transactions contemplated by this Agreement.

**Express Authorization**

I hereby authorize the DAP to initiate debits from my designated payment method as set forth in this Agreement. I agree that sufficient funds will be available in my designated payment account. I understand that Company and the DAP are not liable to any person for not completing a transaction as a result of any limit on my designated payment account, or if a financial institution fails to honor any debit from such account. I agree to notify Company immediately if a scheduled debit will not or does not occur. I authorize the DAP to recover funds in the event of an error or in the event that a prior debit is returned for any reason, including insufficient funds.

This Client Trust Account Authorization:

Client's Signature: _____

Client's Printed Name: _____

Executed on this (Date): _____

CFPB-20220705-00000114

# Special Limited Power of Attorney

To: Any and all of my Student Loan Creditors

I hereby duly authorize, empower, and appoint PREMIER STUDENT LOAN CENTER, its representatives, designated agents, and/or employees, and third-party support servicers to perform any acts necessary or convenient, including but not limited to, the following on my behalf:

1. Communicate with any and/or all of my Federal Student Loan providers and their servicing agencies to obtain information on my student loans.

2. Communicate with banks, creditors, financial institutions, licensed collection agencies, and all other related entities and individuals relating to my Federal Student Loans, including but not limited to the balance of my account, payment history verification of the account, financial adjustments, and any and all necessary communications, correspondence, and negotiations regarding my account(s). I assert that all of the information that I have provided and will provide PREMIER STUDENT LOAN CENTER is true and accurate.

I hereby duly authorize third-party communication from banks, creditors, financial institutions, licensed collection agencies, and all other related entities and individuals relating to my Federal Student Loans to communicate directly with PREMIER STUDENT LOAN CENTER concerning my account or the collection activities associated with it, in accordance with Section 805(b) of the Fair Debt Collection Practices Act. I further request that all of my lenders direct all further telephone calls and correspondence to:

PREMIER STUDENT LOAN CENTER
173 Technology Dr, Ste 202
Irvine, CA 92618

Any and all communications directed to me will be referred to PREMIER STUDENT LOAN CENTER.

I understand that PREMIER STUDENT LOAN CENTER is not a law firm, is not licensed to practice law or provide legal advice, and that I will not request or accept any legal advice from PREMIER STUDENT LOAN CENTER relating to my personal financial situation.

I understand that any creditor or collection activity, demands, or lawsuits are unrelated to my enrollment in the PREMIER STUDENT LOAN CENTER program.

I agree that electronic or facsimile copy signature shall be deemed original and is an authorization by me for all lawfully enforceable purposes.

This Special Limited Power of Attorney shall remain in force until or unless modified or

Pls.' Ex. 1.5
P. 56
CFPB-20220705-00000115

rescinded in writing, or upon resolution of the current matter.

This Special Limited Power of Attorney:

Client's Signature: _____

Client's Printed Name: _____

Executed on this (Date): _____

Pls.' Ex. 1.5
P. 57
CFPB-20220705-00000116

# National Student Loan Data System Access Permission

**Purpose:**     For PREMIER STUDENT LOAN CENTER to access your student loan information from government websites.

**Reason:**     For PREMIER STUDENT LOAN CENTER to obtain accurate information relating to your student loans for application purposes.

**What I Need to Do:**     As the Debtor who is responsible for these loans, you need to create an online User Name and Password. The U.S. Department of Education recommends that you keep your User Name and Password secure to prevent any fraudulent use. The purposes of the User Name and Password is to permit you access to various government websites and allow you to sign electronically on any applications. There are other purposes as well, so please keep your information secure.

**Why We May Request Your User Name and Password:**     We need to carry out the application services that you have requested of us, which may require your User Name and Password. We will only your User Name and Password with your permission and instruction. We will keep your User Name and Password secure, and we will never share it with third parties. We may need this information to complete our contracted services, including gathering the relevant pending loan information pertaining to you, and completing the applications that you qualify for. While the government does not encourage such sharing because they want to prevent fraud and abuse, with your consent and instruction we are permitted to review and assist you with the services you have requested of us. <u>We will never use this information to sign or submit applications for you – you must do that on your own.</u>

**Authorization:**     As part of the federal student loan assistance application process, it may be necessary for us to access your student loan information within the Student Loan Data System located online at <u>http://www.nslds.ed.gov</u>.

The Data System contains a complete list of your federal education loans, along with current estimated balances and servicer details – information that is required to complete your application(s).

By enrolling in Company's program, you are agreeing to allow Company, its representatives, designated agents, and/or employees, and third-party support servicers to access your profile and all the data contained within that profile. In order to allow this access, you may need to provide Company with your User Name and Password.

Please note that all information that Company obtains from the Student Loan Data System will be used expressly for the purposes of confirming information and assisting in the preparation of your application(s).

Pls.' Ex. 1.5
P. 58
CFPB-20220705-00000117

**Acknowledgment:**   I hereby acknowledge that I have read, understood, and agree to the above statements regarding access to my National Student Loan Data System profile. I understand that any information received or accessed will be used solely for the purposes as stated above.

By signing this acknowledgment, I instruct, agree, and expressly permit Company to access the National Student Loan Data System and my personal profile as explained above.

This National Student Loan Data System Access Permission:

Client's Signature: _____

Client's Printed Name: _____

Executed on this (Date): _____

Pls.' Ex. 1.5
P. 59
CFPB-20220705-00000118

| Facts: | WHAT DOES PREMIER STUDENT LOAN CENTER ("Company") DO WITH YOUR PERSONAL INFORMATION? |
|---|---|
| **Why?** | Financial companies choose how they share your personal information. Federal law gives consumers the right to limit some but not all sharing. Federal law also requires us to tell you how we collect, share, and protect your personal information. Please read this notice carefully to understand what we do. |
| **What?** | The types of personal information we collect and share depend on the product or service you have with us. This information can include:<br>• Social Security number and income<br>• Account balances and payment history<br>• Transaction or loss history and employment information<br>When you are *no longer* our customer, we may continue to share your information as described in this notice. |
| **How?** | All financial companies need to share customers' personal information to run their everyday business. In the section below, we list the reasons financial companies can share their customers' personal information; the reasons PREMIER STUDENT LOAN CENTER chooses to share; and whether you can limit this sharing. |

| Reasons we can share your personal information | Do we share? | Can you limit this sharing? |
|---|---|---|
| **For our everyday business purposes** – such as to process your transactions, maintain your account(s), respond to court orders and legal investigations, or report to credit bureaus | Yes | No |
| **For our marketing purposes** – to offer our products and services to you | No | We don't share |
| **For joint marketing with other financial companies** | No | We don't share |
| **For our affiliates' everyday business purposes** – information about your transactions and experiences | Yes | No |
| **For our affiliates everyday business purposes** – information about your creditworthiness | No | We don't share |
| **For our affiliates or non-affiliates to market to you** | No | We don't share |
| **Questions?** | premierstudentloancenter.com | |

Pls.' Ex. 1.5
P. 60
CFPB-20220705-00000119

| Who we are | |
|---|---|
| **Who is providing this notice?** | PREMIER STUDENT LOAN CENTER |

| What we do | |
|---|---|
| **How do you protect my personal information?** | To protect your personal information from unauthorized access and use, we use security measures that comply with federal law. These measures include computer safeguards and secured files and buildings.<br>We also maintain physical, electronic, and procedural safeguards such as computer virus protection software, firewalls, and a 128-bit Secure Socket Layer. Only authorized employees have access. |
| **How do you collect my personal information?** | We collect your personal information, such as when you provide:<br>• Your account information<br>• Your income information<br>• Your employment information<br>We may also collect your personal information from other companies |
| **Why can't I limit all sharing?** | Federal law gives you the right to limit only:<br>• Sharing for affiliates' everyday business purposes<br>• Information about your creditworthiness<br>• Affiliates from using your information to market to you<br>• Sharing for non-affiliates to market to you<br>State laws and individual companies may give you additional rights to limit sharing. |

| Definition | |
|---|---|
| **Affiliates** | Financial and non-financial companies related by common ownership or control.<br>• PREMIER STUDENT LOAN CENTER does not share with our affiliates |
| **Non-affiliates** | Financial and non-financial companies not related by common ownership or control.<br>• PREMIER STUDENT LOAN CENTER does not share with non-affiliates so they can market to you. |
| **Joint Marketing** | A formal agreement between non-affiliated financial companies that together market financial products or services to you<br>• PREMIER STUDENT LOAN CENTER does not jointly market. |

| Other Important Information |
|---|
| **For California and Vermont Residents**: We will not share information we collect about you with non-affiliated third parties, except as permitted by California or Vermont law, respectively, such as to process your transactions or to maintain your account. |

Page 17 of 17

Name: Untitled attachment 103172.html

Document Type Description: Internet HTML

File Size: **2 KB**

CFPB-20220705-00000121

1. Everything that's highlighted will require Docusign:
   a. Initials, Printed Name, Date, Signature
   b. Draft Schedule (Payment #, Payment Date, Enrollment Fee, Recurring Fee, Total Payment)
   c. CC Authorization Form (Albert, I kept this in here b/c you said it won't be a problem to complete. But if it's an issue at all, we can omit.)
2. I added Section 4 "No Advance Fees" (in addition to the Client Trust Account Authorization)
3. I moved the "Privacy Policy" table to the end of the Agreement.

I assume you guys won't even bother to skim the new Agreement, so just upload to and integrate with DPP.

## PLEASE TEST AND MAKE SURE ALL THE DOCUSIGN FIELDS WORK PROPERLY BEFORE GOING LIVE.

**Kaine Wen, Esq.**
**Premier Student Loan Center**
Managing Partner
173 Technology Dr, Ste 202
Irvine, CA 92618
E-mail: kaine@premierstudentloancenter.com

*Confidentiality Disclaimer: This e-mail correspondence and its attachments (if any) are intended exclusively for the above named addressee(s) and intended to be privileged and confidential. If they have come to you in error, please immediately notify the sender about the error and delete all copies of this e-mail correspondence along with its attachments. Thank you.*

Plaintiffs' Exhibit 1.6

# Exhibit 4



- ONE CALL CLOSE

- SIGN OR DIE

- DO NOT HANG UP UNTIL CLIENT IS <u>SOLD</u>

CFPB-20211007-00000097

- **Tonality (Tone of Voice)**: Crisp and Clear Commanding, Dominant Voice

- **Keeps it SIMPLE**: Simple Sells

- **Enthusiastic & Efficient** Make the client FEEL the benefits! (CLOSE CLIENT - MOVED FORWARD IN THE APPLICATION )

- **Able to Handle Rejection:**

**Money Motivated:** An expert will have goals financially. Daily/Weekly/Monthly/Annually etc

**Determined:** Will not stop until goals are met

**Competitive Team-Player**: Healthy competitive spirit can be the difference between an *okay*

CFPB-20211007-00000098

## *IF VALUE EXCEEDS PRICE = SALE | IF PRICE EXCEEDS VALUE = NO SALE*

► **FIND THEIR SELLING POINTS AND CAPITALIZE ON THEM !**

**LIST SELLING POINTS:**

► **HOW TO CREATE URGENCY**:

► No more HUGE payments ($700/month)

► Explaining client's loan history (FSA)

► Low, manageable, payments ($22/$32/$42/month)

► These benefits are Now or Never

► Out of Default prevent any further damage to credit

► Negative repercussions if client waits to enroll

► Up to 90% of Debt GONE

► Fresh start to their financial future

► There is no other option but to enroll now. NO CALLBACKS

► Consolidate loans

► Track positive pay history on credit in regards to student loans

► Handle all communication with loan servicer(s) If SL payment $0

► **Fear of Loss Technique:** Client has 2 options OPTION A / OPTION B: A: $700 to Navient until debt is paid

► Make sure client's loan forgiveness paperwork is filed accurately, correctly, and in a timely manner

► Recertify on an annual basis to ensure loan forgiveness

Pls.' Ex. 1.6
P. 68

# Same Day Pitch #1

The next part of the process is another 5 minutes or so. We'll pick your payment dates, set up a payment method, which is in the form of a credit or debit card, then send you everything in writing. So that you're protected against any wrong doing.

With that being said; the system has your FIRST PAYMENT set up

# Same Day Pitch #2

**Since your enrollment begins today, your first payment is scheduled for today. When can we set your recurring payments dates for next month?**

***IF NO #1***: **Your first payment must occur today to start working on your file today and secure your rate in time. HOWEVER, we can go ahead and set your second payment out as far as 45**

# Why Get Same Days?

- Better Retention

- Meeting Minimum Team Standards

  - 6/10 scheduled payments cleared per week totals: $720 / $800

  - +3 same days total: $1,080 !

- EASY MONEY

- BIGGER PAYCHECKS

- LESS

Pls.' Ex. 1.6
P. 69

CFPB-20211007-00000100

## Can I Call You Back ?

▶ **<u>Empathize:</u>** "<u>I completely understand where you're coming from, unfortunately</u>":

▶ You've already been approved, and we're almost done, Just another five more minutes and we'll be done for the day.

▶ I will have to cancel; I cannot submit your application without all required information.

▶ Without billing information & documents completed, we will have to hold off on starting your new program.

▶ <u>**DOES THAT MAKE SENSE?**</u>

CFPB-20211007-00000101

# $25 REFERRAL
# PROGRAM $25

We want to congratulate you, once again, on your enrollment into the Student Loan Forgiveness Program. Don't forget about our referral program! Now that you are enrolled, you are entitled to a $25 VISA CASH card for each person you refer, so long as they qualify for the program.

**\*THERE IS NO LIMIT ON THE AMOUNT OF VISA CASH CARDS YOU CAN ACQUIRE\***



## POST TO ANY SOCIAL MEDIA PLATFORM

To make things even easier just copy and paste the information below onto your page:

\~\~\~\~\~\~\~\~\~\~\~\~\~\~\~\~\~\~\~\~

**\*\*\*STUDENT LOAN FORGIVENESS PROGRAM\*\*\***

If you owe $10,000 or more in federal student loans and would like some more information on getting up to 90% forgiven, the Department of Education & the Federal Government have income-based benefits for you. Call Zach Kennedy @ 949-207-1359 and he will help you as he helped me! Make sure to tell him that I referred you.

- **Referral-Friendly Clients: – Public Service Workers (Teachers/Police Dept/Non-Profit) – Client's that are active in the church or influential communities – Social Media Influencers**

- **"Based off my experience, I can tell you there are a lot of people out there that owe tens of thousands of dollars in student loan debt and could really use our help. The best way to <u>pay-it-forward</u> is to post to social media…"**

- **<u>Our company is required to send your clients a $25 Visa Cash Card for each and every client that they refer for loan forgiveness. THERE IS NO LIMIT TO THE AMOUNT OF CASH CARDS YOUR CLIENTS CAN AQUIRE</u>**

CFPB-20211007-00000102



CFPB-20211007-00000103

Plaintiffs' Exhibit 1.7

# Exhibit 5

| Message | |
| --- | --- |
| **From:** | Monique Dinh [/O=EXCHANGELABS/OU=EXCHANGE ADMINISTRATIVE GROUP (FYDIBOHF23SPDLT)/CN=RECIPIENTS/CN=54A35711D5ED460DAAB390FB1760B8F4-MONIQUE] |
| **Sent:** | 4/13/2018 4:45:55 PM |
| **To:** | Albert Kim [albert@premierstudentloancenter.com] |
| **CC:** | tom@premierstudentloancenter.com; Kaine Wen [kaine@premierstudentloancenter.com] |
| **Subject:** | RE: Cancellation and Refund Policy |

Yes but that's very rare lol

---

**From:** Albert Kim <albert@premierstudentloancenter.com>
**Sent:** Friday, April 13, 2018 9:45 AM
**To:** Monique Dinh <monique@slaccountmgmt.com>
**Cc:** tom@premierstudentloancenter.com; Kaine Wen <kaine@premierstudentloancenter.com>
**Subject:** Re: Cancellation and Refund Policy

This would only apply to married CLs.  If CL is single and you file single on their application with correct FS then the file is clean, right?

Sent from my iPhone

On Apr 13, 2018, at 5:52 PM, Monique Dinh <monique@slaccountmgmt.com> wrote:

> Hi guys,
> In regards to the cancellation policy below I just want to advise you that we submit everyone as single whether married or not so that technically will make everyone eligible for a refund and because of family size.
> So this policy is more of a case by case basis? Should refunds be approved by a manager before issued?
> Not all the customer service reps will be able to recognize the terms of a refund listed below
>
> ---
> **From:** Albert Kim <albert@premierstudentloancenter.com>
> **Sent:** Thursday, April 12, 2018 9:19 PM
> **To:** tom@premierstudentloancenter.com
> **Cc:** Kaine Wen <kaine@premierstudentloancenter.com>; Monique Dinh <monique@slaccountmgmt.com>
> **Subject:** Re: Cancellation and Refund Policy
>
> Please see below.
>
> Sent from my iPhone
>
> On Apr 13, 2018, at 4:06 AM, <tom@premierstudentloancenter.com> <tom@premierstudentloancenter.com> wrote:
>
>> Hello Albert and Kaine,
>>
>> This is what I am going to tell Monique and Customer Service the refund policy is, if you agree.
>>
>> 1. Clients are entitled to a full refund if there is anything wrong with their file. No negotiation regarding of partial refunds for these clients. Errors can be FS, Married submitted as single, or client didn't get their quoted amount.

Good- may want to add that processor called in as CL and CL found out?

    2.

    3.   Clients will be fully refunded if they threaten a chargeback, leave a negative review, or threaten to go to a governmental agency or contact their lawyers no matter what.

Good

    4.

    5.   The only time that customer service can negotiate a partial refund is if the clients' file is submitted 100% correctly.

If negotiations attempts fail. CL is still requesting refund( ex. Didn't realize he/she could do on her own for free ) is the policy at that point to refund 100%?

    6.

Please offer any other suggestions or disagree with any of the above points. Once you guys both agree, I will roll this out to Monique and customer service. Monique will then add it to the training manual.

Tom

**From:** Monique Dinh <monique@slaccountmgmt.com>
**Sent:** Tuesday, April 10, 2018 3:54 PM
**To:** 'Albert Kim' <albert@premierstudentloancenter.com>; 'Kaine Wen' <kaine@premierstudentloancenter.com>
**Cc:** 'Tom' <tom@premierstudentloancenter.com>
**Subject:** Cancellation and Refund Policy

Hi Albert,
Just wanted to make sure we were all on the same page regarding the cancel and refund policy can you please confirm before I put It in writing in the training manual? Thanks!

## Monique Washington
**Processing Department**

<image005.gif>

<image006.png> <image008.png>**SL**
## Account Management

**Direct: (949) 202-1688**
**Fax:**   1-877-281-1365
**Email:** Monique@slaccountmgmt.com
**Toll Free:**  1-888-283-9631

<image005.gif>

***** Email confidentiality notice *****
CONFIDENTIALITY STATEMENT: The information contained in this electronic transmission, and any attachments, may contain CONFIDENTIAL information. The information is intended only for use by the addressee named above. Any unauthorized use, disclosure, dissemination or copying of the contents of the information and any attachments contained

in this electronic transmission is strictly prohibited. If you are not the intended addressee, please notify the sender
immediately and delete this message.

Pls.' Ex. 1.7
P. 77
CFPB-20211007-00000112

Plaintiffs' Exhibit 1.8

# Exhibit 6

| | |
|---|---|
| **From:** | Kaine Wen [kaine@premierstudentloancenter.com] |
| **Sent:** | 9/21/2018 5:08:19 AM |
| **To:** | Rich Reputation [rich@reputationmanagement.co] |
| **CC:** | Albert Kim [albert@premierstudentloancenter.com]; Adam G Sthay [adams@pubclubleads.com] |
| **Subject:** | Re: Reputation management |

Hi Rich,

When can we get started? As of <u>Monday, Sep 24th,</u> Premier Student Loan Center ("PSLC") is ceasing operations and Financial Preparation Services ("FPS") will begin operations. We'd like FPS to have some type of positive online presence by Monday and then make consistent strides thereafter.

I think the popular review sites like Yelp and even Google should be omitted in order to avoid negative reviews (such as what happened with PSLC).

You can have access to our website as well if there are any adjustments you need to make there.

Thank you, and we looking forward to a job well done.


Best,

**Kaine Wen**
**Premier Student Loan Center**
Managing Partner
173 Technology Dr, Ste 202
Irvine, CA 92618
E-mail: <u>kaine@premierstudentloancenter.com</u>

*Confidentiality Disclaimer: This e-mail correspondence and its attachments (if any) are intended exclusively for the above named addressee(s) and intended to be privileged and confidential. If they have come to you in error, please immediately notify the sender about the error and delete all copies of this e-mail correspondence along with its attachments. Thank you.*


On Sep 18, 2018, at 9:48 PM, Rich Reputation <<u>rich@reputationmanagement.co</u>> wrote:

<Revised - RMC _ Service Agreement - Premier Student Loan Center.pdf>

# Plaintiffs' Exhibit 1.9

# Exhibit 7

Appointment

| | |
|---|---|
| **From:** | Albert Kim [albertkim11@gmail.com] |
| **To:** | Albert Kim [albertkim11@gmail.com]; kaine@premierstudentloancenter.com |
| **Subject:** | Change DBA for all Corps to avoid complaints every 6 months |
| **Start:** | 2/24/2019 12:00:00 PM |
| **End:** | 2/24/2019 1:00:00 PM |
| **Show Time As:** | Tentative |

**Recurrence:** (none)

```
-:!~:!~:!~:!~:!~:!~:!~:!~:!~:!~:!~:!~:!~:!~:!~:!~:!~:!~:!~:!~:!~:!~:!~:!~:!~:!~:!-
Please do not edit this section of the description.

View your event at
https://www.google.com/calendar/event?action=VIEW&eid=XzhkMjQ4ZHBsNnNvamdiOW04OTFrNGI5azZsMTNnYmExODRxamN
iYTM2OG9rY2dhNDhjb2o0ZHBrOGMga2FpbmVAcHJlbWllcnN0dWRlbnRsb2FuY2VudGVyLmNvbQ&tok=MjEjYWxiZXJ0a2ltMTFAZ21ha
WwuY29tZWJkNTBmZWJhNDQ4ODQ2MjUzZTk3MTI1YWZiYTcyOTlhNjY0OWM1Nw&ctz=America%2FLos_Angeles&hl=en&es=1.
-:!~:!~:!~:!~:!~:!~:!~:!~:!~:!~:!~:!~:!~:!~:!~:!~:!~:!~:!~:!~:!~:!~:!~:!~:!~:!~:!-
```

CONFIDENTIAL by designation of the CFPB

Plaintiffs' Exhibit 1.10

# Exhibit 8

Message

| | |
|---|---|
| **From:** | tom@premierstudentloancenter.com [tom@premierstudentloancenter.com] |
| **Sent:** | 3/29/2018 6:45:06 PM |
| **To:** | Monique Dinh [monique@slaccountmgmt.com]; jboylan@premierstudentloancenter.com; tscott@premierstudentloancenter.com |
| **CC:** | 'Albert Kim' [albert@premierstudentloancenter.com]; 'Kaine Wen' [kaine@premierstudentloancenter.com] |
| **Subject:** | RE: Refunding clients |

Hello Monique and Joey,

No we can't change the refund policy. If any agents complain let them speak to Joey or Albert.
Last time we delayed refunds our Chargebacks ratios spiked over 1% for two consecutive months. **(We almost lost our biggest merchant account because of delaying refunds.)** It took so much time and paperwork to get back into good graces with the merchant accounts. I had to write a detailed report on how we were going to lower our chargebacks. If our chargebacks go over 1% again, our merchant account will be up for review again. We do not want that to happen again.
Our chargeback ratios are around .75% now. Any drastic changes will probably move our CB ratios over 1%. If you guys have any great ideas, please suggest them and we can review it. However, we will definitely not delay refunds. **Agents can always re enroll clients after they are refunded.**
Let me know if you have any questions.

Regards,

Tom

**From:** Monique Dinh <monique@slaccountmgmt.com>
**Sent:** Thursday, March 29, 2018 10:02 AM
**To:** jboylan@premierstudentloancenter.com; tscott@premierstudentloancenter.com
**Cc:** Albert Kim <albert@premierstudentloancenter.com>; tom@premierstudentloancenter.com; Kaine Wen <kaine@premierstudentloancenter.com>
**Subject:** FW: Refunding clients
**Importance:** High

Hello,
Can we please revisit the cancellation policy with the company? I am getting numerous of agents upset about how fast we are cancelling a refunding clients and not pausing the file instead. Has anything changed since this last email regarding refunds?
Please advise

**Monique Washington**
Processing Department



| | |
|---|---|
| SL Account Mgmt | **SL Account Management**<br><br>**Direct: (949) 202-1688**<br>**Fax:   1-877-281-1365**<br>**Email:** Monique@slaccountmgmt.com<br>**Toll Free: 1-888-283-9631** |

**\*\*\*\*\* Email confidentiality notice \*\*\*\*\***
CONFIDENTIALITY STATEMENT: The information contained in this electronic transmission, and any attachments, may contain CONFIDENTIAL information. The information is intended only for use by the addressee named above. Any unauthorized use, disclosure, dissemination or copying of the contents of the information and any attachments contained in this electronic transmission is strictly prohibited. If you are not the intended addressee, please notify the sender immediately and delete this message.

**From:** albert@premierstudentloancenter.com <albert@premierstudentloancenter.com>
**Sent:** Wednesday, January 10, 2018 12:08 PM
**To:** tom@premierstudentloancenter.com; cstark@premierstudentloancenter.com;
dsparaco@premierstudentloancenter.com; monique@premierstudentloancenter.com
**Cc:** jboylan@premierstudentloancenter.com; pkelman@premierstudentloancenter.com; 'Kaine Wen'
<kaine@premierstudentloancenter.com>
**Subject:** RE: Refunding clients

If a client calls the Processing Department or Customer Service asking for a refund, **NEVER** transfer the call back to the sales rep.  If the Processing Department receives a call from a client asking for a refund, immediately transfer call to Customer Service.  It is up to the Customer Service department and/or Tom to issue refunds or try to save clients.  If I catch any sales rep delaying refunds by any means, it will result in an automatic termination of their position.

*Albert King*
# PREMIER STUDENT LOAN CENTER
Direct 949-207-1018
**Toll Free 888-548-0476**
**Fax number** 888-302-3033
albert@premierstudentloancenter.com
**www.premierstudentloancenter.com**
**http://www.whitehouse.gov/issues/education/higher-education/ensuring-that-student-loans-are-affordable**
http://www.bbb.org/sdoc/business-reviews/legal-document-assistance/premier-student-loan-center-in-rancho-santa-margarita-ca-172013295/

\*\*\*\*\* Email confidentiality notice \*\*\*\*\*
CONFIDENTIALITY STATEMENT: The information contained in this electronic transmission, and any attachments, may contain CONFIDENTIAL information. The information is intended only for use by the addressee named above. Any unauthorized use, disclosure, dissemination or copying of the contents of the information and any attachments contained in this electronic transmission is strictly prohibited. It

**From:** tom@premierstudentloancenter.com [mailto:tom@premierstudentloancenter.com]
**Sent:** Tuesday, January 9, 2018 4:53 PM
**To:** cstark@premierstudentloancenter.com; dsparaco@premierstudentloancenter.com;
monique@premierstudentloancenter.com
**Cc:** jboylan@premierstudentloancenter.com; pkelman@premierstudentloancenter.com; 'Kaine Wen'
<kaine@premierstudentloancenter.com>; 'Albert Kim' <albert@premierstudentloancenter.com>
**Subject:** Refunding clients

Hello Everyone,

Effectively immediately, if a client calls in and wants a refund whether it's a first payment or thereafter and there are inaccuracies on their file. Please have your salesman and processors **email customer service immediately to have the clients refunded ASAP.** We are not going to delay refunding clients anymore while the salesman tries to save the deal. **Our chargeback ratio is getting too high.**

We tried delaying refunding clients to allow the salesman to save the deals and our chargeback ratios have been spiking.

**The chargeback ratio was 1.71% last month and is currently at 1.37% this month.**

The salesman can try to save the deal after the client gets refunded. The salesman can tell the client we are not a scam because we offer a full 100% money back guarantee to the client if they are not satisfied. (Which the client can see when they get emailed the refund receipt.) **It is of upmost importance that we get this chargeback ratio down.** Please offer any suggestions if you have any and I will work with the sales department and processing department to have a better solution. However as of now, this will be the policy moving forward.

Regards,

Tom

CFPB-20211007-00000155

# Plaintiffs' Exhibit 1.11

# Exhibit 10

| | |
|---|---|
| **From:** | Kaine Wen [kaine@premierstudentloancenter.com] |
| **Sent:** | 2/2/2018 12:53:41 AM |
| **To:** | mark.liu@akerman.com |
| **CC:** | albert@premierstudentloancenter.com; tom@premierstudentloancenter.com |
| **Subject:** | Re: Client Trust Account |

Hi Mark,

We haven't figured out who will own and control the DAP company. My plan is to offer it to a neutral friend who has no ties to any of our businesses. Let him run it with a minor profit, while making sure that everything is compliant.

Flow of funds will be per the Client Trust Account Agreement (such as the Client Trust Account Authorization I sent you). This new DAP company will collect the client fees and hold those fees until our services are completed (usually 2-3 months later) before releasing the funds to our companies, minus any DAP company service charges.

Feel free to reach out if you have any additional questions or concerns.


Best,

**Kaine Wen, Esq.**
**Premier Student Loan Center**
Managing Partner
173 Technology Dr, Ste 202
Irvine, CA 92618
E-mail: kaine@premierstudentloancenter.com

*Confidentiality Disclaimer: This e-mail correspondence and its attachments (if any) are intended exclusively for the above named addressee(s) and intended to be privileged and confidential. If they have come to you in error, please immediately notify the sender about the error and delete all copies of this e-mail correspondence along with its attachments. Thank you.*


On Feb 1, 2018, at 4:54 PM, mark.liu@akerman.com wrote:

Understood, Kaine. Will look into federal and state regulations and licensing requirements, if any. But I guess my primary concern is who will control this company, since it (legally) will not fall under the Premier umbrella and will not be controlled by any of the three of you? If truly an independent provider, how will flow of funds work and will there be (I assume yes) an arms-length negotiated agreement between the DAP and Premier?

On Feb 1, 2018, at 4:30 PM, Kaine Wen <kaine@premierstudentloancenter.com> wrote:

Hi Mark,

We know how to set up a new corporation - that's the easy part.

We need to know how to set up a company to legally function as a "CLIENT FEE TRUST ACCOUNT PROVIDER" or "CLIENT FEE ESCROW ACCOUNT PROVIDER". My assumption is that there may be regulatory, compliance, and/or licensing requirements (both state and federal?) in order to qualify to be a

CFPB-20220705-00000126

"Dedicated Account Provider". If that's not the case and all that's required is are Vendor and/or Client
Agreements, then that's GREAT.

This company will NOT be controlled by me or Albert. We really want this to be a completely independent
third-party company that will audit our services, and only release payment to our companies upon verification
of the services' completion.

Please reread my previous e-mail carefully and reach out if you need clarification.


Best,

Kaine


On Feb 1, 2018, at 2:17 PM, <mark.liu@akerman.com> <mark.liu@akerman.com> wrote:


Hi Kaine,

Sure, happy to help. We can set up a new CA company for this purpose, with no affiliation to either Premier or True
Count. Since it will be an "independent, third party" provider, will the entity be controlled by either of you? If not, who
will be the shareholder? We also need at least 1 director.

Once we sort out the structure, we can apply for the EIN, which you will then use for the bank account.

Please let me know also what you prefer for a company name, and we can check on availability.


vCard | Profile | Connect With Me



CONFIDENTIALITY NOTE: The information contained in this transmission may be privileged and confidential, and is intended only for the use of the individual or
entity named above. If the reader of this message is not the intended recipient, you are hereby notified that any dissemination, distribution or copying of this
communication is strictly prohibited. If you have received this transmission in error, please immediately reply to the sender that you have received this
communication in error and then delete it. Thank you.


**From:** Kaine Wen [mailto:kaine@premierstudentloancenter.com]
**Sent:** Thursday, February 1, 2018 2:21 AM
**To:** Liu, Mark (Ptnr-Lax) <mark.liu@akerman.com>
**Cc:** Albert Kim <albert@premierstudentloancenter.com>; Tom Nelson <tom@premierstudentloancenter.com>
**Subject:** Client Trust Account

Hi Mark,

CFPB-20220705-00000127

We need assistance with setting up a new company that places Clients' funds into a Client "escrow" or "trust" account. This account will be a completely separate entity than and have completely separate ownership from both Premier (Albert's current Sales company) and True Count (Kaine's upcoming Processing company). Please see the attached "Client Trust Account Authorization" document for a general idea of what services are offered by this "Dedicated Account Provider":

CFPB-20220705-00000128

# Plaintiffs' Exhibit 1.12

# Exhibit 11

| From: | ryan.williams@akerman.com |
| To: | kaine@premierstudentloancenter.com; mark.liu@akerman.com |
| CC: | albert@premierstudentloancenter.com; tom@premierstudentloancenter.com |
| Sent: | 8/3/2018 3:43:24 PM |
| Subject: | RE: Corporate Structure Decision |

Thanks, Kaine.  I will send the CFA to Mark.

**Ryan Williams**
Partner
Akerman LLP | 71 South Wacker Drive, 46th Floor | Chicago, IL 60606
D: 312 634 5735
ryan.williams@akerman.com

**From:** Kaine Wen
**Sent:** Friday, August 3, 2018 2:38 PM
**To:** Liu, Mark (Ptnr-Lax)
**Cc:** Williams, Ryan (Ptnr-Chi) ; albert@premierstudentloancenter.com; tom@premierstudentloancenter.com
**Subject:** Re: Corporate Structure Decision

Hi Mark,

Yes, feel free to reach out to Matthew Crammer as needed.

Ryan has a copy of our Client Fee Agreement.

Kaine

On Aug 3, 2018, at 8:20 AM, <mark.liu@akerman.com> <mark.liu@akerman.com> wrote:

Thanks, Kaine. David and Stefi are reviewing the tax returns today. They may reach out to Crammer with a few follow-up questions  - I assume that's okay with you guys. They will suggest a structure that will be tax efficient, but as discussed we must also paper the transition (likely by way of an asset purchase agreement) so it passes IRS muster. Once we have a structure, we will outline and steps and execute in the quickest way possible.

On the healthcare insurance issue, we will ensure to the extent possible that the fines for non-compliance will stay with CAC, and not extend to TC. Going forward with TC or NewCo, we will be sure to be compliant.
Ryan, let's discuss - Jeffrey had a conversation with our healthcare benefits team earlier this week.

On existing clients of CAC moving to TC, please send across any client onboarding docs and engagement agreements for our review. I want to see whether we can argue that the transition is a permissible assignment that does not require consent or notice.

Finally, as discussed - every action we take on one end impacts the enterprise as a whole. We will be sure to be coordinated and make sure the left hand knows what the right hand is doing.

Thanks,
Mark

CFPB-20220705-00000096

On Aug 3, 2018, at 6:26 AM, Kaine Wen <kaine@premierstudentloancenter.com> wrote:

Hi Mark and Ryan,

The corporate structure decision is the first domino that has to fall before we can start implementing all of our other changes. **Mark**, Tom sent you most of the requested financial and tax documents. Please have David and/or Squar Milner review. We don't need to get into details quite yet as there's way too much on our plates already. The purpose of the initial review is to assist in determining the below:

1. CAC/PSLC will cease operations and wind down on its own. Assets: computer equipment, merchant reserve funds (~1M). Liabilities: FCC subpoena, MN CID, Jackson class action, miscellaneous TCPA complaint(s). Potential Liabilities: fines for not providing health insurance.

We think the intellectual property and goodwill values of CAC/PSLC are irrelevant. Despite high gross revenue, the company is not very profitable, as seen in the tax filings. Just close the corporation as smoothly as possible and as soon as possible.

2. TC/SLAM is processing for ~37k current active clients. All clients are "paying upfront fees". There is no way to be retroactively compliant.

3. NewCo LLC (whether it's just TC or HoldCo or whatever is most tax efficient) will create a new DBA for a front-end sales company to replace CAC/PSLC. NewCo will be fully compliant.

4. TC/SLAM can process for NewCo. Again, keep in mind that TC/SLAM will also be processing for tens of thousands of active CAC/PSLC clients acquired non-compliantly. Alternatively, NewCo can create a second DBA for a back-end processing company to process for its own front-end sales company, and all clients will have been acquired compliantly. This will require a lot of extra work (separate office, payroll, employees, etc - essentially a brand new business) and is only worthwhile if the additional separation/protection outweighs the time/labor/money costs.

Our preference is for the former, under our theory that only the front-end companies ever get investigated.

Let's make a swift but well-informed decision on the above, as we need the corporation to set up the client trust accounts, merchant accounts, bank accounts, lease agreements, etc.


Best,

**Kaine Wen, Esq.**
**Premier Student Loan Center**
Managing Partner
173 Technology Dr, Ste 202
Irvine, CA 92618
E-mail: kaine@premierstudentloancenter.com

*Confidentiality Disclaimer: This e-mail correspondence and its attachments (if any) are intended exclusively for the above named addressee(s) and intended to be privileged and confidential. If they have come to you in error, please immediately notify the sender about the error and delete all copies of this e-mail correspondence along with its attachments. Thank you.*

CFPB-20220705-00000097

vCard | Profile | Connect With Me

CONFIDENTIALITY NOTE: The information contained in this transmission may be privileged and confidential, and is intended only for the use of the individual or entity named above. If the reader of this message is not the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited. If you have received this transmission in error, please immediately reply to the sender that you have received this communication in error and then delete it. Thank you.

CFPB-20220705-00000098

Plaintiffs' Exhibit 1.13

# Exhibit 12

| | |
|---|---|
| **From:** | Kaine Wen [kwen@slaccountmgmt.com] |
| **Sent:** | 2/26/2019 2:55:45 PM |
| **To:** | Advisor [advisor@financialpreparationservices.com] |
| **Subject:** | Fw: Commitment to move forward for ACH payment processing.... |

**Kaine Wen**
**SL Account Mgmt**

*Confidentiality Disclaimer: This e-mail correspondence and its attachments (if any) are intended exclusively for the above named addressee(s) and intended to be privileged and confidential. If they have come to you in error, please immediately notify the sender about the error and delete all copies of this e-mail correspondence along with its attachments. Thank you.*

**From:** Donald Cook <Donald@DepositChecks.com>
**Sent:** Tuesday, February 26, 2019 8:00 AM
**To:** Kaine Wen; Calvin Ho; 'Calvin Ho'; Tom Nguyen; Thien Nguyen
**Cc:** 'Rey Pasinli'
**Subject:** RE: Commitment to move forward for ACH payment processing....

Good morning Kaine,

We can get True Count an approved ACH account <u>BUT</u>,
- https://www.consumer.ftc.gov/articles/1028-student-loans

## Student Loans | Consumer Information

www.consumer.ftc.gov

Financing Your Education. There are several types of aid available to help you pay for your education beyond high school, including grants and scholarships, federal work-study jobs and student loans.

o It's illegal for companies to charge you before they help you The first step is to complete the Free Application for Federal Student Aid (FAFSA) form at fafsa.gov

Other:
- https://studentaid.ed.gov/sa/repay-loans/consolidation

- There is only one <u>federal loan consolidation program.</u>

- You can visit the <u>Consumer Financial Protection Bureau's "Repay Student Debt" tool</u>, which helps narrow down your options for both private and federal loan repayment. There is also an exhaustive list of student loan repayment options on the <u>Office of Federal Student Aid</u> website.

CFPB-20211007-00000250

- Finally, you can report suspected fraud activity to the CFPB (855-411-CFPB) or to the Federal Trade Commission's online Complaint Assistant.

Although it's illegal to "Receive" payment in advance.  It's not illegal for the Students to "Pay" in advance – as long as the accrued fees are held by an independent, non-related 3rd party... Accordingly, we can/will process for True Count as long as Federal (and applicable state mandates) are adhered to.

I also recommend to start using a 3rd party accommodator to monitor and service your existing 50,000 students currently paying you via credit cards.  We can also facilitate this.

Sincerely,

Don
Donald@DepositChecks.com
(866) 927-7180
(619) 450-5800
(603) 947-5197 - eFax

deposit**CHECKS**.com

---

**From:** Kaine Wen [mailto:kwen@slaccountmgmt.com]
**Sent:** Tuesday, February 26, 2019 3:38 AM
**To:** Donald Cook; Calvin Ho; 'Calvin Ho'; Tom Nguyen; Thien Nguyen
**Cc:** 'Rey Pasinli'
**Subject:** Re: Commitment to move forward for ACH payment processing....

*1.  True Count can be approved for ACH debit / credit processing for business purposes other than federal student loan document preparation and processing services and monthly re-certification fees.*

TC only does federal student loan document preparation and processing services. You are not able to get TC an ACH account for that business type? Please confirm so we can look for other options.

Thank you.


Best,

Kaine Wen

*Confidentiality Disclaimer: This e-mail correspondence and its attachments (if any) are intended exclusively for the above named addressee(s) and intended to be privileged and confidential. If they have come to you in error, please immediately notify the sender about the error and delete all copies of this e-mail correspondence along with its attachments. Thank you.*

---

**From:** Donald Cook <Donald@DepositChecks.com>
**Sent:** Monday, February 25, 2019 7:59:36 PM
**To:** Kaine Wen; Calvin Ho; 'Calvin Ho'; Tom Nguyen; Thien Nguyen
**Cc:** 'Rey Pasinli'
**Subject:** RE: Commitment to move forward for ACH payment processing....

Good evening Kaine,

You're welcome – together, we can make True Count sustaining.

CFPB-20211007-00000251

1.  True Count can be approved for ACH debit / credit processing for business purposes other than federal student loan document preparation and processing services and monthly re-certification fees.
2.  Great, the services we propose, work for both Credit Card and ACH.
3.  Negotiations are currently in place to integrate with either/both NMI and USAePay.  Non-integration will not impede us from performing our duties set forth below.

Sincerely,

Don
**Donald@DepositChecks.com**
**(866) 927-7180**
**(619) 450-5800**
**(603) 947-5197 - eFax**

**depositCHECKS.com**

---

**From:** Kaine Wen [mailto:kwen@slaccountmgmt.com]
**Sent:** Monday, February 25, 2019 6:32 PM
**To:** Donald Cook; Calvin Ho; 'Calvin Ho'; Tom Nguyen; Thien Nguyen
**Cc:** 'Rey Pasinli'
**Subject:** Re: Commitment to move forward for ACH payment processing....

Hi Donald,

Thank you for the comprehensive proposal. It is a large-scale project and transition that we don't have any data on yet. This is what we're looking for in the short-term:

1.  Obtain an ACH account for True Count.
2.  We will attempt to enroll new clients using ACH.
3.  We will gather data on what % of clients agree to ACH (vs credit/debit).
4.  We will gather data on what % of payments get approved/NSF'ed, client refund requests, etc.

Is the plan still for you to integrate with NMI or USAePay?

Best,

Kaine Wen

*Confidentiality Disclaimer: This e-mail correspondence and its attachments (if any) are intended exclusively for the above named addressee(s) and intended to be privileged and confidential. If they have come to you in error, please immediately notify the sender about the error and delete all copies of this e-mail correspondence along with its attachments. Thank you.*

**From:** Donald Cook <Donald@DepositChecks.com>
**Sent:** Monday, February 25, 2019 2:37:11 PM
**To:** Kaine Wen; Calvin Ho; 'Calvin Ho'; Tom Nguyen; Thien Nguyen
**Cc:** 'Rey Pasinli'
**Subject:** Commitment to move forward for ACH payment processing....

Good afternoon everyone,

CFPB-20211007-00000252

Congratulations, after meeting and consultations, we have decided to move forward in processing your ACH transactions and those of your referred Clients.  It is our current belief that "true integration" with DebtPayPro, or any CRM of your choice, is not necessary for us to complete our work.

We need for all involved to understand the operating procedures in moving forward.  Please read the entire text below and be prepared to ask questions and add input in the initial conference call.  We would like to have all representative on this first call.  **Please provide us with 2 dates/times this week that are convenient for your team.**

## Process

- No advance fees are taken/received/controlled by the Doc Prep Company.
- The Doc Prep Company assists the students completing the required forms, depending on what type of loan, etc.
- The students sign a Recurring ACH Authorization form in favor of the Trustee, not the Doc Prep Company.
- The Trustee debits the students over a period of time agreed upon by the parties [e.g. of 3 months for the $1,200 fee ($400 per month)] plus $6.95 per month for the Trustee fees.  At all times the accumulated funds are owned by the student in the trust account held in the Trustee's name until such time as evidence is provided, to the Trustee, that the contracted work has been performed by the Merchant.
- Upon evidence of completed work, Trustee will send accumulated fees to Doc Prep Company either by wire, ACH or paper check.
- Upon receipt of Cancellation / Refund Request by the Student – Trustee will notify Doc Prep Company and return all then accumulated fees to the Student.
- The student always pays "loan" payments directly to the Lender/Government.
- The Trustee never receives "loan" payments, and, in turn never pays the Lender/Government.
- The Doc Prep Company currently uses the CRM of DebtPayPro.com and may switch CRMs at their discretion.
- The Doc Prep Company currently does not process ACH.
- The Doc Prep Company currently uses GroupISO for Credit Card processing.
- The Doc Prep Company will provide Deposit Checks, Inc a daily ACH processing file.  In return, Deposit Checks, Inc. will provide Doc Prep Company a Results file.
- The ACH "Merchant" is the Trustee (i.e. Deposit Checks, Inc.).
- Deposit Checks, Inc will be the Trustee to administer payments.
- The Student signs a Recurring ACH Authorization in favor of Deposit Checks, Inc.  Deposit Checks, Inc will be a processing client of Today Payments, Inc., dba: **TrusteePay.com (site to be completed by month's end).**
- The Doc Prep Company may assign a **unique "Descriptor"** that is presented to the Student on his/her bank statement.
- Upon certified completion of work – the Doc Prep company will receive it's accumulative fees held by Trustee.


My, in-house, programmers have already constructed the layout of the database to be used and we are ready to become the Trustee or assist a Trustee.

## Considerations

The students sign a Recurring Credit Card Authorization form in favor of the Trustee, not the Doc Prep Company.

CFPB-20211007-00000253

## Descriptors

ACH descriptor to be agreed upon by Doc Prep Company and Trustee.

## Credit Card

Credit card processor will be provided the Trust bank information for deposits

## Pricing

Services rendered to Company and its Students

1. $60 Application Fee.

## ACH Processing

2. 0.00% Discount Fee
3. $0.50 Transaction Fee for federal student loan document preparation and processing services and monthly re-certification fees (this is paid for by the Doc Prep Company for all transactions initiated by referred Students)
4. $30 Monthly Fee – per Doc Prep Company depository Trust account
5. $2.50 Return Fee (NSF) (this is paid for by the student)
6. $25 Revocation Fee (RO 5, 7, 10) (this is paid for by the Doc Prep Company)
7. $6.95/month Student Escrow Fee, via ACH or Card payments, for collection of Doc Prep Company federal student loan document preparation and processing services (this is paid for by the student)

## Other Fees

8. Company Payment Gateway access $100 Monthly Fee Services rendered to Company's Clients
9. Settlement Disbursement Fee using ACH: $5.00
10. Per occurrence fee for any other appropriate service which includes but is not limited to: $25 Wire Transfer Fee, Certified Check, Cashier's Check Depository Fee $10 Paper Check, Money Order

Upon an agreement to move forward by all parties agreements will be transmitted to Doc Prep Company for review, completion, execution and return.

A $10,000 setup fee, payable in two installments: initial payment upon Execution and return of the Company agreement, second installment collected upon "testing sign-off" by both Doc Prep Company and Deposit Checks, Inc.

Respectfully,

Don

**Donald@DepositChecks.com**
**(866) 927-7180**
**(619) 450-5800**
**(603) 947-5197 - eFax**

depositCHECKS.com

CFPB-20211007-00000254

Plaintiffs' Exhibit 1.14

# Exhibit 14

| From: | Calvin Ho [calvin.ho@slaccountmgmt.com] |
|---|---|
| Sent: | 4/18/2019 1:59:32 PM |
| To: | Kaine Wen [kwen@slaccountmgmt.com] |
| CC: | Advisor [advisor@financialpreparationservices.com]; Tom Nguyen [tom@slaccountmgmt.com] |
| Subject: | RE: Online Form 'TodayPaymentsCC-ACH-CIR-2018' has been completed by Kenny Huang |
| Attachments: | TAS Contract - Agreement_Final.pdf |

Hi Kaine,

Completed. Please see my comments in RED.

**From:** Kaine Wen <kwen@slaccountmgmt.com>
**Sent:** Friday, April 12, 2019 3:28 PM
**To:** Calvin Ho <calvin.ho@slaccountmgmt.com>
**Cc:** Advisor <advisor@financialpreparationservices.com>; Tom Nguyen <tom@slaccountmgmt.com>
**Subject:** Fw: Online Form 'TodayPaymentsCC-ACH-CIR-2018' has been completed by Kenny Huang

Calvin - let's work on getting Don's requests completed.

**Kaine Wen**
**SL Account Mgmt**

*Confidentiality Disclaimer: This e-mail correspondence and its attachments (if any) are intended exclusively for the above named addressee(s) and intended to be privileged and confidential. If they have come to you in error, please immediately notify the sender about the error and delete all copies of this e-mail correspondence along with its attachments. Thank you.*

**From:** Donald Cook <donald@todaypayments.com>
**Sent:** Friday, April 12, 2019 8:56 AM
**To:** tas2019llc@gmail.com; docs@todaypayments.com; 'Spencer Woods'
**Subject:** RE: Online Form 'TodayPaymentsCC-ACH-CIR-2018' has been completed by Kenny Huang

Good morning Mr Huang,

We started reviewing your application before submission to two banks.

- Please place a graphic logo on your website and ensure that the address from the template is changed to your Arcadia address. (Address and Logo are added)
- Please submit an example of the Authorization Form and/or WAV file to be signed/recorded by your Clients. (in attached file)
- We may decide to process your Recurring Subscriptions (Monthly monitoring) 'bank direct' to save you money on your processing.

Reach out to Spencer at your earliest convenience. I want to be able to offer you an integrated solution with your current CRM DebtPayPro through NMI/USAePay and also – 'bank direct' via SFTP.

Sincerely,

Don
**Donald@TodayPayments.com**
**(866) 927-7180**
**(603) 947-5197 – eFax**

CFPB-20220705-00000010



-----Original Message-----
From: docs@todaypayments.com [mailto:docs@todaypayments.com] On Behalf Of RightSignature.com
Sent: Thursday, April 11, 2019 9:13 PM
To: docs@todaypayments.com
Subject: Online Form 'TodayPaymentsCC-ACH-CIR-2018' has been completed by Kenny Huang

Hello Today Payments Business Success Team,

This document has been signed by Kenny Huang and is now complete.

  Filename: TodayPayments-CC-ACH-CIR-2018.pdf
  Reference #: HJFAJWJ8V5Y3JG2JXF5EBE
  Subject: TodayPaymentsCC-ACH-CIR-2018
  Message: Please sign this document.
  Signer Attachments:
    * TAS_2019_LLC_AOO.pdf (285 KB)
    Signer: Kenny Huang (tas2019llc@gmail.com)
    Attachment Component: Articles of Incorporation
    Download Link:
https://rightsignature.com/signer_attachments/784588667b0b435b97c37d6a82150a9f/download
    * Kenny_Huang_CA_DL.pdf (1.77 MB)
    Signer: Kenny Huang (tas2019llc@gmail.com)
    Attachment Component: DriversLicense
    Download Link:
https://rightsignature.com/signer_attachments/1e88e2448cf3434e8de8afc5dafddabb/download

For your convenience, a pdf of the completed document is attached to this email.

To view this document on RightSignature, follow this link:
https://rightsignature.com/documents/HJFAJWJ8V5Y3JG2JXF5EBE?rt=ac71fbc5ef1a461c8341eb864c222ea5

Thank you for using RightSignature!


--

RightSignature is the easiest, fastest way to get documents signed.
RightSignature LLC, 8 E Figueroa St., Santa Barbara, CA 93101
https://RightSignature.com/ | https://support.citrix.com/cscase

Plaintiffs' Exhibit 2

# DECLARATION OF TUONG NGUYEN

I, Tuong Nguyen, pursuant to 28 U.S.C. §1746, hereby declare the following:

1. My name is Tuong Nguyen. I live in Alhambra, California. The following facts are known to me personally and if called as a witness I could and would competently testify to them.

**Overview of the Student Loan Debt Relief Companies ("The Company")**

2. I have known Kaine Wen ("Wen") since junior high school and met Albert Kim ("Kim") through Wen.

3. Sometime in 2015, Wen reached out to me and asked if I wanted to be part of a student loan document preparation company that he was forming with Kim.

4. Kim was working for a student loan document preparation company but wanted to start his own business.

5. I agreed to work for Wen and Kim's Company, and worked for them from approximately November 2015 until the Company stopped operating due to the temporary restraining order (TRO) issued in this case in October 2019.

6. When I first started with Wen and Kim's Company, it was known as Consumer Advocacy Center, Inc., ("CAC") and it did business as Premier Student Loan Center. As discussed in this declaration, Kim and Wen, the owners of CAC, formed additional companies, True Counting Staffing Inc. d/b/a SL Account Management ("True Count") and Prime Consulting LLC d/b/a Financial Preparation Services ("Prime").

7. In this declaration, "the Company" refers to CAC, True Count, and Prime, collectively.

8. In the beginning, the Company consisted of the Sales and Processing Departments. The Sales Department would handle the initial sales call with

Pls.' Ex. 2
P. 111

CFPB-20220119-00004522

consumers, and the Processing Department completed the consumers' income-driven repayment plan paperwork ("IDR" or "application").

9.   As the Company grew it added Customer Service, Human Resources, IT, and Accounting/Billing Departments.

10.   In March 2018, CAC's processing functions were transferred to True Count. But the Processing Department consisted of the same employees who continued the same practices that they followed when working for CAC.

11.   In the beginning in November 2015, Kim and I handled consumer complaints. The volume of consumer complaints, including calls from consumers, increased as the Company gained more clients. At a certain point, the Company formed a separate Customer Service Department to handle consumer complaints, which was also under True Count.

12.   Later, Kim and Wen formed Prime Consulting. Prime Consulting took over sales from CAC, and CAC filed for bankruptcy.

13.   The only change during the transition of the Sales Department from CAC to Prime was that salespeople would identify themselves as calling from a new company, and employees were no longer paid through CAC.

14.   CAC had always been a profitable company. Prior to the bankruptcy, the Company collected payments from consumers through accounts in True Count's name. True Count would then pay CAC a portion of that income.

15.   At a certain point, True Count stopped making payments to CAC, and instead made payments to Prime.

16.   CAC, True Count, and Prime were interrelated companies owned and controlled by Kim and Wen.

17.   These companies shared employees and stored customer information in the same database, Debt Pay Pro (DPP).

Declaration of Tuong Nguyen

2

CFPB-20220119-00004523

18.   During the course of the Company's operation, Joseph Boylan, Pierre Kelman, and James Thomas served as the Sales Directors; Monique Dinh, Sal Avila, and Erica Tabin served as Processing Managers; and Christian Sangalang (aka Christian Stark), Cristian De Alba, and Nicole Balestreri served as Customer Service Managers.

19.   In addition, at some point after the Company had opened an office on Technology Drive, Calvin Ho joined the Company. He started out helping with payroll, then started helping with IT and other things.

20.   I reported to Kim and Wen, as did the heads of each department, including the Directors and Managers listed in Paragraph 18, and Ho.

## The Company's Sales Practices

21.   From November 2015 through receiving notice of the TRO, the Company offered and sold services claiming to help consumers get lower monthly student loan payments by getting into income-driven repayment programs.

22.   In the beginning, I observed Kim overseeing the Sales and Processing Departments on-site. At that time, I worked as a processor and also handled consumer complaints, refunds, and bookkeeping.

23.   Sometime in late 2016, Wen began regularly coming into the office, and at that point I observed him taking a more active role in overseeing the Company.

24.   The Company used lead generators to identify potential clients, and then the lead generators would transfer interested clients via phone over to one of the Company's salespeople.

25.   During those phone calls, salespeople would pitch consumers on the Company's services.

Declaration of Tuong Nguyen

3

CFPB-20220119-00004524

26.   I learned about what salespeople told consumers to try to get them to enroll in the Company's services through personally listening to sales calls, speaking with consumers during welcome calls, and handling consumer complaints and refunds.

27.   During sales calls, salespeople would calculate how much the consumer would have to pay per month if the consumer's IDR application was approved. Salespeople would use a formula based on family size (FS), income, and marital status to come up with that monthly payment amount.

28.   Within two to three months after the Company began operating, it had become like the Wild West: there were no rules and salespeople could use *any* family size needed to get the consumer to a low monthly payment quote, no matter what the consumer's actual family size was.

29.   Salespeople presented the monthly payment quotes to consumers as the amount the consumer would pay until the loan was paid off.

30.   Salespeople did not tell consumers that only student loan servicers can approve a consumer's monthly payment amount, and that amount can vary year to year depending on changes in each consumer's family size, marital status, and income.

31.   Salespeople did not tell consumers that it was the Company's practice to use a false family size in order to provide a lower quote to consumers.

32.   I also heard salespeople telling consumers that they had to sign up for the Company's services right away or certain loan repayment programs would go away.

33.   On occasion, I also heard salespeople telling consumers about repayment programs that didn't actually exist.

Declaration of Tuong Nguyen

4

CFPB-20220119-00004525

34.   From what I heard on the sales calls, salespeople often made it sound like after signing up for the Company's services, the consumer would only be paying their monthly student loan payment, not the Company's fees.

35.   And I learned through reviewing consumer complaints and speaking to consumers that consumers frequently thought that the monthly payment for recertification to the Company was their loan payment.

36.   Attached as Exhibit 1 is a true and correct copy of an email exchange from April 24, 2019 between me at one of my Company email accounts to Stark, Boylan, Kim (using his "Advisor" email account) and Ho in which we discussed how salespersons pitched consumers on how much consumers had to pay.

37.   Specifically, Stark writes, "The way its pitched is still the same. They have them write down the numbers and tell them that our fees over the course of 20 years is all they're going to have to pay and it's all interest free."

38.   I understood Stark was referring to the Company's practice of salespeople telling consumers that all they would have to pay was a certain amount per month that was based on the monthly fee to the Company, when in reality the consumer's loan had not been forgiven and the consumer continued to be responsible for monthly loan payments plus interest on their loan plus the Company's fees.

39.   Consumers also complained that they had been told their loans would be forgiven immediately after signing up for the Company's services.

40.   For example, attached as Exhibit 2 is a true and correct copy of an email that I received at my email addresses, tom@premierstudentloancenter.com, and forwarded to Stark (cstark@premierstudentloancenter.com) on November 9, 2017. The email discusses a complaint from a consumer who complained that she was told loan forgiveness would be immediate.

Declaration of Tuong Nguyen

Pls.' Ex. 2
P. 115

CFPB-20220119-00004526

41. Similarly, attached as Exhibit 3 is a true and correct copy of an email chain that includes me, Dinh (monique@premierstudentloancenter.com), another employee who worked as a processor for the Company, McKenna Woodruff (mwoodruff@premierstudentloancenter.com), and a consumer from April 12, 2017 through May 17, 2017. A portion of the email chain between Woodruff and the consumer shows that the consumer was told that she would have to pay "$20/month for [PSLF's] monthly recertification fee," when in reality the $20 referred to the Company's monthly fee.

42. The email reflects that the consumer told me that she never would have signed up if she knew she wouldn't be eligible for loan forgiveness for 20 years.

43. If a consumer chose to sign up with the Company, then the salesperson would get the consumer's payment information and enter it into DPP.

44. Salespeople would pull up the consumer's loan information on the Federal Student Aid (FSA) website, either by asking the consumer for his or her credentials or by creating an account for the consumer.

45. The salesperson loaded each consumer's information into DPP, and DPP would help the salesperson identify an IDR program for the consumer.

46. As part of this process, the salesperson would enter a family size, income, and marital status for the consumer into DPP.

47. Salespeople frequently listed a higher family size than what the consumer had stated, or made up a family size. By putting a high family size, the salesperson could provide a lower monthly payment quote to the consumer than what the consumer could actually get.

48. Salespeople typically listed married clients as single because that also helped the salesperson provide a lower monthly payment quote.

49. As a processor, I noticed that the family size entered in DPP by salespeople for consumers was almost always above six. At times, I would

Declaration of Tuong Nguyen

6

CFPB-20220119-00004527

1  verify the consumer's family size, but at a certain point the Company told
2  processors to stop verifying family size and marital status and to just rely on
3  what Sales had put in DPP.

4  50.   At times, salespeople would sign the Company's client agreement and
5  submit it to the Company without the consumer's knowledge.

6  51.   I learned from handling payroll that each employee in the Sales
7  Department was compensated at least in part based on commissions. As a
8  result, it benefitted sales employees financially to sell as many consumers as
9  possible on the Company's services.

10  **The Company's Preparation of Student-Loan Related Applications for**
11  **Consumers**

12  52.   Following the initial sales call, an employee in the Processing
13  Department ("processor") would conduct a welcome call with the client.

14  53.   During the welcome call, the processor verified the consumer's contact
15  information and requested proof of income so that the Company could prepare
16  the paperwork for the consumer's income-driven repayment plan application.

17  54.   Processors also changed the consumer's contact information in the loan
18  servicer's system so that all correspondence from the servicer would come to
19  the Company, not the consumer.

20  55.   Processors completed forbearance paperwork for consumers. From the
21  beginning, it was the Company's practice to have Kim or processors sign the
22  forbearance paperwork in the consumer's name without the consumer's
23  consent.

24  56.   I personally used to email the forbearance paperwork to clients to sign,
25  but Kim directed me to stop sending it to clients to sign, so I started signing for
26  consumers too.

27

28

Declaration of Tuong Nguyen

7

CFPB-20220119-00004528

57. Processors also prepared applications to get consumers into income-driven repayment plans and submitted them to the student loan servicers, as well as the annual recertification paperwork for those plans.

58. In preparing the consumers' applications, processors listed all married consumers as single.

59. For example, attached as Exhibit 4 is a true and correct copy of an email exchange sent to and from my tom@premierstudentloancenter.com email account on April 10-13, 2018 between me, Kim (albert@premierstudentloancenter.com), Wen (kaine@premierstudentloancenter.com), and Dinh (who sometimes went by Monique Washington at work) (monique@slaccountmgmt.com) where we discuss the Company's practice of submitting married clients as single.

60. It was also the Company's practice to submit applications to student loan servicers on behalf of consumers with an inflated family size. For example, attached as Exhibits 5–69 are true and correct copies of email correspondence that I sent from or received at my Company email accounts tom@premierstudentloancenter.com or tom@slaccountmgmt.com that reflect this practice. These emails are just examples, and the true extent of this practice was much broader.

61. I sent and/or received the emails contained in Exhibits 5–69 due to my role in handling consumer complaints and/or refunds.

62. From what I observed as a processor and through listening to sales calls, unless the consumer was eligible for a zero-dollar payment amount, which was rare, salespeople would use an inflated family size when calculating the consumer's new monthly payment quote for an IDR plan.

63. Consumers were not told that the Company was submitting applications with a false marital status and/or family size on their behalf.

Declaration of Tuong Nguyen

8

CFPB-20220119-00004529

64.   Consumers would occasionally discover that the Company had used an incorrect family size, most often through speaking with their student loan servicer.

65.   When consumers discovered that their applications had been submitted with false information, the Company would often tell consumers that the fake family size was an error and would refund the consumers' money. For example, Exhibits 42–43 are true and correct copies of emails that I sent directing employees to tell consumers that the fake family size in the application submitted by the Company on their behalf was an "error."

66.   Student loan servicers would sometimes deny applications submitted by the Company because of the inflated family size. For a time, the Company would tell the consumer that they needed to sign off on a letter to the servicer, referred to internally as the Letter of Explanation for the Family Size. Attached as Exhibit 70 is the Letter of Explanation for the Family Size template.

67.   The template was created because of an occasion where I submitted a consumer's application with a family size of nine and it was denied. I wanted to refund the consumer, but Kim and the salesman pushed back and wanted me to re-submit the consumer's application with a family size of nine.

68.   I refused to re-submit the application since it had already been denied. Based on my discussions with Kim, my understanding is that Kim then spoke to Wen about the situation, and that following their conversation, Wen drafted the Letter of Explanation template.

69.   When explaining the Letter of Explanation to consumers, it was not the Company's practice to tell each consumer that under IDR programs, the consumer had to provide at least 50% of the support for each family member listed for the year, and that unless the family member was the consumer's child, the person also had to live with the consumer.

Declaration of Tuong Nguyen

Pls.' Ex. 2
P. 119

CFPB-20220119-00004530

70. Attached as Exhibit 71 is a true and correct copy of a an email that I sent from my tom@premierstudentloancenter.com email account on April 10, 2017 to a consumer, her email response sent to my tom@premierstudentloancenter.com email account, and my email forwarding the completed letter from the consumer to Dinh on April 11, 2017, as well as the signed letter from the consumer.

71. The Company stopped using the Letter of Explanation because it required a lot of work to put together and because it typically didn't help much because the servicer would ask for proof of address for each person listed.

72. In addition, sometimes the Company would try to "resell" consumers. This sometimes happened when a salesperson quoted a consumer a monthly loan payment amount that was lower than what the Company could actually get for the consumer, or when the consumer didn't qualify for a particular program.

73. When "reselling" the consumer, salespeople would sometimes try to trick consumers into agreeing to use a higher family size in the consumer's application. For example, I heard salespeople telling consumers that a person could count as a member of their family if the consumer paid for a person's phone bill, bought the person lunch, or paid for the person's gas.

## Kim and Wen's Knowledge of the Company's Practices

74. Kim and Wen were aware that salespeople were making the misrepresentations described above and that it was the Company's practice to submit applications for IDR plans with an inflated family size and to list married clients as single.

75. I raised concerns about misrepresentations by salespeople on several occasions during discussions with Kim and Wen about refunds to particular consumers. During those discussions, I told them that the Company should refund the consumer and not pay the salesperson.

Declaration of Tuong Nguyen

10

76.   Neither Kim nor Wen indicated to me that they would take any action to stop salespeople from making these kinds of statements, and based on what I observed they never took any action following those discussions.

77.   Kim and Wen were also included on email correspondence discussing the Company's practice of using false family sizes and marital statuses in IDR applications. For example, at a certain point, someone in the Sales or Processing Department determined that student loan servicers were more likely to reject applications with a family size above seven.

78.   After that point, it was the Company's policy to only inflate family size up to six or seven (the maximum depended on the servicer) to create a repayment quote for consumers and in applications submitted to student loan servicers on behalf of consumers

79.   Attached as Exhibit 72 is a true and correct copy of an email exchange involving emails sent to and from my work email account, tom@premierstudentloancenter.com, that included Kim (who sometimes used the signature "Albert King" in his emails), Kelman, and a processor, Frank Hernandez, from October 3, 2016.

80.   Earlier in the email chain, I emailed Kim, Kelman, and Hernandez, and said that Kim or Kelman needed to call the client because his income was higher than what we thought and he had been quoted an incorrect monthly payment.

81.   Kim replied only to me, directing me to "Just continue with the app. This was before we started the max 7 FS."

82.   I took this to mean that Kim was directing me to submit the client with a family size of 9.

Declaration of Tuong Nguyen

11

CFPB-20220119-00004532

83.   I responded to Kim's email, pointing out that the consumer still needed to be requoted because even if we used a family size of 9, the consumer's monthly payment would still be too high because of his income.

84.   In addition, attached as Exhibit 73 is a true and correct copy of an email exchange from January 22-23, 2018, consisting of emails sent to and from my tom@premierstudentloancenter.com email account. Kim is included on both emails; I copied Wen on my response to Dinh.

85.   In the email, Dinh noted that even though the Company was sticking with the max 7 family size, salespeople were still using even higher family sizes.

86.   In my response, I noted that sales managers were supposed to be monitoring files. I was referring to my understanding that sales managers were supposed to make sure the family size did not go over seven.

87.   I also occasionally listened to specific call recordings or a batch of call recordings between salespeople and consumers. Attached as Exhibit 74[1] is an email and attachment that I sent from my email tom@premierstudentloancenter.com to Boylan, Kim (advisor@financialpreparationservices.com), and Wen on April 16, 2019.

88.   At the time, no one at the Company was regularly auditing sales calls. I was frustrated because sales agents were still making up information about consumers' family size when quoting consumers a monthly payment amount.

89.   I included Kim and Wen on my email because they were the decisionmakers and had the power to do something about this practice.

90.   I created the spreadsheet attached to that email from a list of call recordings from that day. I reviewed all of the highlighted rows. After listening to each of the highlighted recordings, I concluded that on each call highlighted

---

[1] Exhibit 74a contains the same content as Exhibit 74, but the columns have been adjusted to make it easier to read

Declaration of Tuong Nguyen

Pls.' Ex. 2
P. 122

CFPB-20220119-00004533

in red from row 9 through 24, the salesperson had recorded in DPP a family size that was larger than the family size provided by the consumer, and in one instance that the salesperson had just made up a family size.

91.   Shortly after I sent the email, I recall having a conversation with Kim about it. Kim directed me to stop auditing sales calls because the salespeople are the ones making the Company money.

92.   Complaints and related inquiries from state agencies were forwarded to me, and I would personally send them to Wen after reviewing the consumer's file and refunding the consumer's money.

93.   The complaints forwarded by states agencies described specific instances where consumers had complained that the Company made misrepresentations to them and/or had submitted applications to student loan servicers with a fake family size and/or marital status.

94.   For example, attached as Exhibit 26 is a true and accurate copy of an email I sent to Wen with a consumer complaint attached that was forwarded to the Company by two state agencies.

95.   Based on my discussions with Wen about these and other complaints from state agencies, it's my understanding that he sent a letter to state agencies in response to consumer complaints they forwarded to the Company.

96.   The Company received approximately 30-50 letters from state agencies during the course of the operation, each of which I shared with Wen.

97.   The Company did not have a policy or procedure for keeping all letters from state agencies.

98.   The Company also received numerous complaints from the Better Business Bureau (BBB). For a time, Kim was the person who primarily responded to BBB complaints. Based on discussions with him, I learned that he

Declaration of Tuong Nguyen

13

CFPB-20220119-00004534

1  continued to review the BBB's website to see what was posted about the

2  Company.

3  99.  Kim and Wen made all the big decisions for the Company.

4  100.  For example, they had the final say in the Company's refund policy.

5  101.  For example, attached as Exhibit 75 and Exhibit 76 are true and correct

6  copies of email chains from 2018 that I was part of along with Kim, Wen, and

7  Dinh regarding the Company's cancellation and refund policy.

8  102.  In my email dated April 13, 2018 from my

9  tom@premierstudentloancenter.com account, I wrote, "So to summarize if a file

10  is submitted incorrectly, (which is in most cases, client is entitled to a full

11  refund)." I also wrote "Clients are entitled to a full refund if there is anything

12  wrong with their file . . . Errors can be FS, Married submitted as single, client

13  didn't get their quoted amount, or client found out a processor called on their

14  behalf to the servicer."

15  103.  Although some employees pushed back against the refund policy because

16  it meant they would lose commissions, Kim and Wen supported a liberal refund

17  policy.

18  104.  Based on what I observed through overseeing refunds and handling

19  consumer complaints, the longer consumers had to wait to get their money

20  back, the more likely they were to file complaints with state law enforcement

21  agencies or seek a chargeback.

22  105.  Attached as Exhibit 76 and Exhibit 77 are a true and accurate copies of

23  email chains that included me, Kim, Wen, Dinh, Boylan, and other employees

24  regarding the Company's refund policy and chargebacks.

25  106.  At a certain point, the Company implemented a compliance script. Even

26  after the Company implemented the compliance script, consumers continued to

27  complain about the practices described above.

28

Declaration of Tuong Nguyen

14

CFPB-20220119-00004535

**Refunds and Chargebacks**

107.  As the Company's Controller, I oversaw refunds to consumers made by check and monitored chargebacks. For approximately the first six months to a year, I oversaw all refunds to consumers.

108.  In the beginning, I personally signed refund checks, and when the volume became too much, I oversaw the process of those checks getting signed and sent to consumers.

109.  Customer Service and Billing could also initiate refunds directly to consumers' payment cards.

110.  The Company used several chargeback monitoring programs in an effort to reduce chargebacks.

111.  Although most consumers reached out to the company to request a refund, some consumers would dispute charges from the Company through a chargeback.

112.  When consumers initiated a chargeback, these monitoring programs would send the Company an alert so that I could initiate a refund before the transaction actually resulted in a chargeback.

113.  Exceeding a 1% chargeback rate put the Company at risk of having its merchant accounts terminated. Although the Company tried to keep the volume of chargebacks under 1%, the level sometimes exceeded 1%.

114.  At times, merchant account providers required the Company to submit a detailed plan for reducing its chargeback rates.

115.  National Merchant Center helped us develop our first chargeback reduction plan, including with input from Jimmy Lai.

116.  For example, attached as Exhibit 78 is a true and accurate copy of an email chain and attachment from August 2018 that included me, Jimmy Lai,

Declaration of Tuong Nguyen

15

CFPB-20220119-00004536

1  and Wen regarding a chargeback reduction plan for a SL Account Management

2  account.

3  ### Dedicated Account Providers

4  117.  One day in March 2018, Kim asked me for my credit card number so that

5  he could buy a Wyoming LLC. He didn't say why he wanted to buy a

6  Wyoming LLC, but he shared that he didn't want it to be in his name.

7  118.  I later learned when he asked me to register First Priority in California

8  that the Wyoming LLC that he purchased with my credit card was First Priority

9  LLC. Although I controlled First Priority on paper, I was really just a straw

10  owner and it was largely controlled by Kim and Wen. My name was on the

11  bank accounts, but it was Kim who set up First Priority's arrangement with two

12  dedicated account providers, AMP and Reliant Account Management (RAM).

13  119.  My understanding is that First Priority stopped enrolling clients through

14  AMP and RAM. After that time, I recall Kim sharing that the Company

15  couldn't find another dedicated account provider willing to do business with the

16  Company (specifically, True Count).

17  120.  I recall that the last time I was able to check, First Priority's bank account

18  held about $150,000.

19  121.  At some point in 2019, I recall discussions with Kim and Wen about

20  forming their own dedicated account provider. They planned to pay Jimmy Lai

21  $1 per month for each client who made a payment through the dedicated

22  account provider. Up to that point, Lai had worked at National Merchant

23  Center, one of the Company's biggest merchant account providers, and had

24  helped the Company get more processing volume and figure out how to keep

25  chargebacks down.

26

27

28

Declaration of Tuong Nguyen

16

CFPB-20220119-00004537

**Business Records**

122.  By reason of my role at the Company, I am qualified to certify the authenticity of the exhibits attached to this declaration, which consist of emails and attachments sent to or from my work email accounts tom@premierstudentlaoncenter.com and tom@slaccountmgmt.com.

123.  These emails and attachments are records of regularly conducted activity that were made at or near the occurrence of the matters set forth in the emails by a person(s) with knowledge of those matters.

The exhibits to this declaration were kept in the normal course of regularly conducted business activity.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on November 17, 2021

_____

Tuong Nguyen at Alhambra, California

Declaration of Tuong Nguyen

17

CFPB-20220119-00004538

Plaintiffs' Exhibit 2.1

# Exhibit 1

CFPB-20220119-00004539

| | |
|---|---|
| **From:** | Tom Nguyen |
| **To:** | Christian Stark; Tom Nguyen; Joseph Boylan |
| **CC:** | Advisor; Calvin Ho |
| **Sent:** | 4/24/2019 8:19:22 PM |
| **Subject:** | RE: REDACTED PSLC- REDACTED |

Hello Joseph,

Sales agent just told client to tell processing she has a FS of 6. **Sales agent never even asked what was her FS. I listened to the call.**

Tom

**From:** Christian Stark
**Sent:** Wednesday, April 24, 2019 4:07 PM
**To:** Tom Nguyen
**Cc:** 'Advisor' ; 'Calvin Ho'
**Subject:** REDACTED PSLC- REDACTED

I listened to this pitch and the client stated that she is single. The file has family size of 6 on it. The way its pitched is still the same. They have them write down the numbers and tell them that our fees over the course of 20 years is all they're going to have to pay and it's all interest free. Please review the file.

# Christian Stark
**Customer Support Manager**
Email: cstark@processingsupport.com

***** Email confidentiality notice *****
CONFIDENTIALITY STATEMENT: The information contained in this electronic transmission, and any attachments, may contain CONFIDENTIAL information. The information is intended only for use by the addressee named above. Any unauthorized use, disclosure, dissemination or copying of the contents of the information and any attachments contained in this electronic transmission is strictly prohibited. If you are not the intended addressee, please notify the sender immediately and delete this message.

CONFIDENTIAL by designation of the CFPB

# Plaintiffs' Exhibit 2.2

# Exhibit 3

CFPB-20220119-00004543

**To:**    mwoodruff@premierstudentloancenter.com[mwoodruff@premierstudentloancenter.com]
**Cc:**    monique@premierstudentloancenter.com[monique@premierstudentloancenter.com]
**From:**  tom@premierstudentloancenter.com
**Sent:**  Wed 5/17/2017 8:35:04 PM
**Importance:**   Normal
**Subject:**   REDACTED
**MAIL_RECEIVED:**   Wed 5/17/2017 8:35:04 PM
image001.jpg

**Mckenna please put client back into a standard per her request. Give her a call tomorrow and let her know what her standard payment will be with Navient.** I issued her a full refund. She said she would have never signed up if she knew it was a 20 year term.

I was able to save her fiancé's file.

She is happy with the resolution.

Tom

**From:** monique@premierstudentloancenter.com [mailto:monique@premierstudentloancenter.com]
**Sent:** Wednesday, May 17, 2017 3:20 PM
**To:** tom@premierstudentloancenter.com
**Cc:** mwoodruff@premierstudentloancenter.com
**Subject:** FW: Premier Student Loan Center - Status Update

Tom,

Can you please contact this client. Per simon she is under the impression that her term is 12 years and she will get forgiveness please call her thanks

**From:** mwoodruff@premierstudentloancenter.com [mailto:mwoodruff@premierstudentloancenter.com]
**Sent:** Wednesday, May 17, 2017 1:52 PM
**To:** monique@premierstudentloancenter.com
**Subject:** FW: Premier Student Loan Center - Status Update

Hi Monique,

This is her response to my question.

CONFIDENTIAL by designation of the CFPB

CFPB-20211007-00000007
CFPB-20220119-00004544

*McKenna Woodruff*

# PREMIER STUDENT LOAN CENTER

Direct 949-534-0241

**Toll Free 888-548-0476**

**Fax number 1-888-920-7098**
mwoodruff@premierstudentloancenter.com

www.premierstudentloancenter.com

***** Email confidentiality notice *****

CONFIDENTIALITY STATEMENT: The information contained in this electronic transmission, and any attachments, may contain CONFIDENTIAL information. The information is intended only for use by the addressee named above. Any unauthorized use, disclosure, dissemination or copying of the contents of the information and any attachments contained in this electronic transmission is strictly prohibited. If you are not the intended addressee, please notify the sender immediately and delete this message.

**From:** REDACTED [mailto: REDACTED ]
**Sent:** Wednesday, May 17, 2017 12:57 PM
**To:** mwoodruff@premierstudentloancenter.com
**Subject:** Re: Premier Student Loan Center - Status Update

The person I signed up with the program with, Simon. I will forward you his original quote.

What terms do you have on your end? This is very concerning to me.

On Wed, May 17, 2017 at 11:05 AM <mwoodruff@premierstudentloancenter.com> wrote:

Hi REDACTED

I apologize about the delay in response. Can you please clarify where / who told you it was a 12 year term?

Regards,

Pls.' Ex. 2.2
P. 134

CONFIDENTIAL by designation of the CFPB

CFPB-20211007-00000008
CFPB-20220119-00004545

*McKenna Woodruff*

# PREMIER STUDENT LOAN CENTER

Direct 949-534-0241

**Toll Free 888-548-0476**

**Fax number 1-888-920-7098**
mwoodruff@premierstudentloancenter.com

www.premierstudentloancenter.com

**\*\*\*\*\* Email confidentiality notice \*\*\*\*\***

CONFIDENTIALITY STATEMENT: The information contained in this electronic transmission, and any attachments, may contain CONFIDENTIAL information. The information is intended only for use by the addressee named above. Any unauthorized use, disclosure, dissemination or copying of the contents of the information and any attachments contained in this electronic transmission is strictly prohibited. If you are not the intended addressee, please notify the sender immediately and delete this message.

**From:** REDACTED[mailto:REDACTED           |

**Sent:** Monday, May 15, 2017 11:23 AM

**To:** Mckenna Woodruff <mwoodruff@premierstudentloancenter.com>
**Subject:** Re: Premier Student Loan Center - Status Update

Hi McKenna,

Can you confirm my question in the previous email? I want to make sure the loans will be forgiven after 12 years at the given payments. If not, I will be accumulating way more interest and there was no point in me joining this program. Please confirm and send me over supplementary documentation to confirm that even though I am making lower payments and more interest is accumulating, the loan balance will be forgiven after the payments made in the months of the agreement.

On Tue, May 9, 2017 at 7:23 PM, REDACTED<REDACTED        > wrote:

Ok, so it is still on the agreed upon terms of a 12 year payment plan, and then the balance is forgiven at that point?

Pls.' Ex. 2.2
P. 135

CONFIDENTIAL by designation of the CFPB

On Mon, May 8, 2017 at 4:00 PM, <mwoodruff@premierstudentloancenter.com> wrote:

Hi REDACTED

Your monthly amount due to Navient is $48.79 (this must be paid directly to them by phone, mail, online, or you can sign up with direct debit with them.) Starting 05/20 your payment to PSLF drops to $20/month for ther recertification fee.

I know the original quote was $87.92 + $20 recert = $107.92 but when I got your income documentation, it was actually lower than the AGI you had first told us, so it caused your monthly payment to your student loans to drop, because the PAYE is based off of your income and family size.

Please let me know if you still have questions!

Regards,

*McKenna Woodruff*

# PREMIER STUDENT LOAN CENTER

Direct 949-534-0241

**Toll Free 888-548-0476**

**Fax number 1-888-920-7098**
mwoodruff@premierstudentloancenter.com

www.premierstudentloancenter.com

**\*\*\*\*\* Email confidentiality notice \*\*\*\*\***

CONFIDENTIALITY STATEMENT: The information contained in this electronic transmission, and any attachments, may contain CONFIDENTIAL information. The information is intended only for use by the addressee named above. Any unauthorized use, disclosure, dissemination or copying of the contents of the information and any attachments contained in this electronic transmission is strictly prohibited. If you are not the intended addressee, please notify the sender immediately and delete this message.

**From:** REDACTED [mailto:REDACTED                      |
**Sent:** Wednesday, May 3, 2017 12:16 PM
**To:** Mckenna Woodruff <mwoodruff@premierstudentloancenter.com>
**Subject:** Re: Premier Student Loan Center - Status Update

Pls.' Ex. 2.2
P. 136

CFPB-20211007-00000010
CFPB-20220119-00004547

Hi Mckenna,


The amount for a monthly payment that Navient is requesting is different then the amount I was quoted by you. Why is this?


On Wed, Apr 12, 2017 at 5:01 PM, Mckenna Woodruff <mwoodruff@premierstudentloancenter.com> wrote:


Hello REDACTED ,


Congratulations we have completed your consolidation! You new servicer is: NAVIENT:

https://navient.com/loan-customers/


You online account has been set up. You login information is listed below, if you have any issues logging in please contact me.


**Username:** REDACTED

**Password:**

**Answer to Security Questions:** REDACTED


The details following your new payment plan is as follows:


**Repayment Plan:** Pay as You Earn

**Approved Monthly Student Loan Payment:** $48.79

**First Payment Due Date:** 05/10/2017

**Payment End Date:** 03/01/2018

Pls.' Ex. 2.2
P. 137

CONFIDENTIAL by designation of the CFPB

CFPB-20211007-00000011
CFPB-20220119-00004548

If you have any questions regarding the details of your new loan please contact us, thank you and congratulations again!

Regards,

*McKenna Woodruff*

PREMIER STUDENT LOAN CENTER

Direct 949-534-0241

**Toll Free 888-548-0476**

**Fax number 1-888-920-7098**
mwoodruff@premierstudentloancenter.com

www.premierstudentloancenter.com

**\*\*\*\*\* Email confidentiality notice \*\*\*\*\***

CONFIDENTIALITY STATEMENT: The information contained in this electronic transmission, and any attachments, may contain CONFIDENTIAL information. The information is intended only for use by the addressee named above. Any unauthorized use, disclosure, dissemination or copying of the contents of the information and any attachments contained in this electronic transmission is strictly prohibited. If you are not the intended addressee, please notify the sender immediately and delete this message.

.

--

REDACTED

General Manager

CONFIDENTIAL by designation of the CFPB

Fabulous Food

Exceptional Service

Anytime... Anywhere

<span style="color:red; font-size:2em">REDACTED</span>

--

<span style="color:red; font-size:2em">REDACTED</span>

General Manager



Fabulous Food

CONFIDENTIAL by designation of the CFPB

CFPB-20211007-00000013
CFPB-20220119-00004550

Exceptional Service

Anytime... Anywhere

# REDACTED

--
# REDACTED

General Manager



Fabulous Food

Exceptional Service

Anytime... Anywhere

CONFIDENTIAL by designation of the CFPB

REDACTED

--

REDACTED

General Manager



Fabulous Food

Exceptional Service

Anytime... Anywhere

REDACTED

Pls.' Ex. 2.2
P. 141

CFPB-20211007-00000015
CFPB-20220119-00004552

Plaintiffs' Exhibit 2.3

# Exhibit 4

CFPB-20220119-00004553

**From:** Monique Dinh
**Sent:** Friday, April 13, 2018 12:46 PM
**To:** Albert Kim
**CC:** tom@premierstudentloancenter.com; Kaine Wen
**Subject:** RE: Cancellation and Refund Policy

Yes but that's very rare lol

---

**From:** Albert Kim <albert@premierstudentloancenter.com>
**Sent:** Friday, April 13, 2018 9:45 AM
**To:** Monique Dinh <monique@slaccountmgmt.com>
**Cc:** tom@premierstudentloancenter.com; Kaine Wen <kaine@premierstudentloancenter.com>
**Subject:** Re: Cancellation and Refund Policy

This would only apply to married CLs.  If CL is single and you file single on their application with correct FS then the file is clean, right?

Sent from my iPhone

On Apr 13, 2018, at 5:52 PM, Monique Dinh <monique@slaccountmgmt.com> wrote:

> Hi guys,
> In regards to the cancellation policy below I just want to advise you that we submit everyone as single whether married or not so that technically will make everyone eligible for a refund and because of family size.
> So this policy is more of a case by case basis? Should refunds be approved by a manager before issued? Not all the customer service reps will be able to recognize the terms of a refund listed below

---

> **From:** Albert Kim <albert@premierstudentloancenter.com>
> **Sent:** Thursday, April 12, 2018 9:19 PM
> **To:** tom@premierstudentloancenter.com
> **Cc:** Kaine Wen <kaine@premierstudentloancenter.com>; Monique Dinh <monique@slaccountmgmt.com>
> **Subject:** Re: Cancellation and Refund Policy

> Please see below.

> Sent from my iPhone

> On Apr 13, 2018, at 4:06 AM, <tom@premierstudentloancenter.com> <tom@premierstudentloancenter.com> wrote:

>> Hello Albert and Kaine,

>> This is what I am going to tell Monique and Customer Service the refund policy is, if you agree.

>> 1. Clients are entitled to a full refund if there is anything wrong with their file. No negotiation regarding of partial refunds for these clients. Errors can be FS, Married submitted as single, or client didn't get their quoted amount.

> Good- may want to add that processor called in as CL and CL found out?

>> 2.
>> 3. Clients will be fully refunded if they threaten a chargeback, leave a negative review, or threaten to go to a governmental agency or contact their lawyers no matter what.

> Good

>> 4.
>> 5. The only time that customer service can negotiate a partial refund is if the clients' file is submitted 100% correctly.

> If negotiations attempts fail. CL is still requesting refund( ex. Didn't realize he/she could do on her own for free ) is the policy at that point to refund 100%?

>> 6.

>> Please offer any other suggestions or disagree with any of the above points. Once you guys both agree, I will roll this out to Monique and customer service. Monique will then add it to the training manual.

>> Tom

---

**From:** Monique Dinh <monique@slaccountmgmt.com>

Pls.' Ex. 2.3
P. 144

CFPB-20211007-00000110
CFPB-20220119-00004554

**Sent:** Tuesday, April 10, 2018 3:54 PM
**To:** 'Albert Kim' <albert@premierstudentloancenter.com>; 'Kaine Wen' <kaine@premierstudentloancenter.com>
**Cc:** 'Tom' <tom@premierstudentloancenter.com>
**Subject:** Cancellation and Refund Policy

Hi Albert,
Just wanted to make sure we were all on the same page regarding the cancel and refund policy can you please confirm before I put it in writing in the training manual? Thanks!

**Monique Washington**
**Processing Department**

<image005.gif>

<image006.png> <image008.png>**SL Account Management**
**Direct: (949) 202-1688**
**Fax:  1-877-281-1365**
**Email:** Monique@slaccountmgmt.com
**Toll Free: 1-888-283-9631**

<image005.gif>

***** Email confidentiality notice *****
CONFIDENTIALITY STATEMENT: The information contained in this electronic transmission, and any attachments, may contain CONFIDENTIAL information. The information is intended only for use by the addressee named above. Any unauthorized use, disclosure, dissemination or copying of the contents of the information and any attachments contained in this electronic transmission is strictly prohibited. If you are not the intended addressee, please notify the sender immediately and delete this message.

# Plaintiffs' Exhibit 2.4

# Exhibit 5

CFPB-20220119-00004556

| | |
|---|---|
| **From:** | tom@premierstudentloancenter.com |
| **To:** | frank@premierstudentloancenter.com |
| **CC:** | rachel@PREMIERSTUDENTLOANCENTER.COM |
| **Sent:** | 1/9/2017 1:47:30 PM |
| **Subject:** | RE: REDACTED |

Ok I will call the client.

**From:** frank@premierstudentloancenter.com [mailto:frank@premierstudentloancenter.com]
**Sent:** Monday, January 9, 2017 10:42 AM
**To:** tom@premierstudentloancenter.com
**Subject:** REDACTED

This client was told by Rachel that is she were to pay the 3 payments of $266 that her payments of $10 for 2 years then her loans will be forgiven, she also called Fed Loans and she found out her family size was 8. She is kind of mad.

*Frank Hernandez*
## PREMIER STUDENT LOAN CENTER
Direct 949-207-1079
**Toll Free 888-548-0476**
**Fax number** 888-302-3033
frank@premierstudentloancenter.com
www.premierstudentloancenter.com
http://www.whitehouse.gov/issues/education/higher-education/ensuring-that-student-loans-are-affordable
http://www.bbb.org/sdoc/business-reviews/legal-document-assistance/premier-student-loan-center-in-rancho-santa-margarita-ca-172013295/

***** Email confidentiality notice *****

CONFIDENTIALITY STATEMENT: The information contained in this electronic transmission, and any attachments, may contain CONFIDENTIAL information. The information is intended only for use by the addressee named above. Any unauthorized use, disclosure, dissemination or copying of the contents of the information and any attachments contained in this electronic transmission is strictly prohibited. If you are not the intended addressee, please notify the sender immediately and delete this message.

Pls.' Ex. 2.4
P. 148

CFPB-20211007-00000133
CFPB-20220119-00004557

Plaintiffs' Exhibit 2.5

# Exhibit 6

CFPB-20220119-00004558

**From:** etabin@processingsupport.com
**To:** Advisor; kwen@slaccountmgmt.com; tom@slaccountmgmt.com
**CC:** 'Calvin Ho'
**Sent:** 4/24/2019 10:59:47 AM
**Subject:** FW: New Note Created On File: REDACTED__REDACTED

This was submitted with FS of 3 but it was FS of 2

**From:** jclark@finstudentadvisors.com
**Sent:** Monday, April 22, 2019 1:47 PM
**To:** resell@processingsupport.com
**Subject:** New Note Created On File: REDACTED__REDACTED

Note Type: Sales
Entered By: James Clark
Notified: amunyan@finstudentadvisors.com, resell@processingsupport.com

Updated FS to 3 people, SL payment will remain at $0.00, please unpause and move file forward

Pls.' Ex. 2.5
P. 151

CONFIDENTIAL by designation of the CFPB

CFPB-20211007-00000260
CFPB-20220119-00004559

Plaintiffs' Exhibit 2.6

# Exhibit 7

CFPB-20220119-00004560

**From:**     Tom Nguyen
**To:**       Shirena Huizar; Joseph Boylan; Kaine Wen; Advisor; Calvin Ho
**Sent:**     8/17/2019 12:38:41 AM
**Subject:**  Client REDACTED

Hello Shirena,

Please write up salesman Cory Cole.
Client said he had FS of 4.

Salesman misled client with definition of FS. Salesman said the exact definition of FS according to the DOE website is financial support, medical, gift loans, and etc. **Salesman omitted to include someone in your FS you must support that client at least 50% financially.**  Then later salesman said in order to lower clients payments further he must try to increase the FS to 6. Client eventually agreed to adding in other people based on the wrong definition.

Regards,

Tom

CONFIDENTIAL by designation of the CFPB

CFPB-20211007-00000261
CFPB-20220119-00004561

Plaintiffs' Exhibit 2.7

# Exhibit 8

CFPB-20220119-00004562

| | |
|---|---|
| **From:** | Tom Nguyen |
| **To:** | etabin@processingsupport.com; 'Advisor'; Kaine Wen |
| **CC:** | Calvin Ho; Joseph Boylan |
| **Sent:** | 5/9/2019 7:17:02 PM |
| **Subject:** | RE: New Note Created On File: REDACTED - - REDACTED |

Joseph please write up this salesman. Not acceptable.
Tom
**From:** etabin@processingsupport.com
**Sent:** Thursday, May 9, 2019 10:15 AM
**To:** 'Advisor' ; Kaine Wen ; Tom Nguyen
**Cc:** Calvin Ho
**Subject:** FW: New Note Created On File: REDACTED - - REDACTED
**From:** shelbys@processingsupport.com < shelbys@processingsupport.com >
**Sent:** Thursday, May 9, 2019 9:54 AM
**To:** etabin@processingsupport.com
**Subject:** New Note Created On File: REDACTED _ _REDACTED
Note Type: General
Entered By: Shelby Sandoval
Notified: etabin@processingsupport.com , jthomas@financialpreparationservices.com ,
sthomas@southcoastfinancialcenter.com , fpspause@gmail.com

Incorrect family size, and incorrect filing status.
Proper FS: #2
Filing status: Married Filing Jointly

Client stated "when I was talking to Spencer he said as long as someone has spent one night in this house this year,
they can be counted"

CONFIDENTIAL by designation of the CFPB

# Plaintiffs' Exhibit 2.8

# Exhibit 9

CFPB-20220119-00004564

| | |
|---|---|
| **From:** | tom@premierstudentloancenter.com |
| **To:** | nathan@premierstudentloancenter.com |
| **Sent:** | 12/14/2016 12:54:12 PM |
| **Subject:** | REDACTED |

I refunded clients entire balance because she called us and said we used the wrong Family Size on her application. $125 + $30 will be deducted from your commissions.

CONFIDENTIAL by designation of the CFPB

CFPB-20211007-00000264
CFPB-20220119-00004565

Plaintiffs' Exhibit 2.9

# Exhibit 10

CFPB-20220119-00004566

| | |
|---|---|
| **From:** | tom@premierstudentloancenter.com |
| **To:** | brandi@premierstudentloancenter.com |
| **Sent:** | 11/17/2016 2:11:17 PM |
| **Subject:** | REDACTED |

Hello Brandi,

Client is going to send in new paystubs that will reflect her true income without overtime sometime in January. Please put her in forbearance till February. Once she sends in her new paystubs, **we will resubmit her file with a family size of 3. We will do the file for free**. Tyler put an incorrect family size. Please create a task for yourself and notate the file. Let me know if you have any questions. Thank you.

CONFIDENTIAL by designation of the CFPB

CFPB-20211007-00000265
CFPB-20220119-00004567

Plaintiffs' Exhibit 2.10

Pls.' Ex. 2.10
P. 164

# Exhibit 11

CFPB-20220119-00004568

Message

| | |
|---|---|
| **From:** | tom@premierstudentloancenter.com [tom@premierstudentloancenter.com] |
| **Sent:** | 10/15/2016 7:32:24 PM |
| **To:** | frank@premierstudentloancenter.com |
| **Subject:** | RE: REDACTED |

Albert and Christian are trying to call the client

---

**From:** frank@premierstudentloancenter.com [mailto:frank@premierstudentloancenter.com]
**Sent:** Thursday, October 13, 2016 11:33 AM
**To:** tom@premierstudentloancenter.com
**Subject:** REDACTED

This guy needed a family size letter cause he enrolled into an IDR a little before we did and I have been trying to get a hold of him to re-quote but I think he's MIA , should we process a refund?

## *Frank Hernandez*
# PREMIER STUDENT LOAN CENTER

Direct 949-207-1079
**Toll Free 888-548-0476**
**Fax number** 888-302-3033
frank@premierstudentloancenter.com
**www.premierstudentloancenter.com**
**http://www.whitehouse.gov/issues/education/higher-education/ensuring-that-student-loans-are-affordable**
http://www.bbb.org/sdoc/business-reviews/legal-document-assistance/premier-student-loan-center-in-rancho-santa-margarita-ca-172013295/

***** Email confidentiality notice *****

CONFIDENTIALITY STATEMENT: The information contained in this electronic transmission, and any attachments, may contain CONFIDENTIAL information. The information is intended only for use by the addressee named above. Any unauthorized use, disclosure, dissemination or copying of the contents of the information and any attachments contained in this electronic transmission is strictly prohibited. If you are not the intended addressee, please notify the sender immediately and delete this message.

CONFIDENTIAL by designation of the CFPB

Plaintiffs' Exhibit 2.11

# Exhibit 12

CFPB-20220119-00004570

**From:** Tom
**To:** jburman@premierstudentloancenter.com; pkelman@premierstudentloancenter.com;
pjohnson@premierstudentloancenter.com
**Sent:** 3/3/2017 10:04:08 PM
**Subject:** Re: New Note Created On File: REDACTED _ _ REDACTED

Hello Jacob,

Call client on Monday and tell her we are going to refund all of her money and complete the file for free..with her
true FS. Tell client this is the best that we can do and let her decide on how she wants to poceed..i will help you on
Monday with this file if needed. We will only charge her with the recerts in the future if she wants to proceed with us.

Tom

Sent from my iPhone

On Mar 3, 2017, at 4:29 PM, jburman@premierstudentloancenter.com wrote:

Note Type: Sales
Entered By: Jacob Burman
Notified: pjohnson@premierstudentloancenter.com, pkelman@premierstudentloancenter.com,
tom@premierstudentloancenter.com


Pierre, the REPAYE won't be applied unless client verifies family size. Briahna called and said CL needs to send in
information about family size. You gave her a family size of 7 and she has no kids.

CONFIDENTIAL by designation of the CFPB

Plaintiffs' Exhibit 2.12

# Exhibit 13

CFPB-20220119-00004572

| From: | tom@premierstudentloancenter.com |
|---|---|
| To: | khu@premierstudentloancenter.com |
| Sent: | 2/17/2017 2:37:27 PM |
| Subject: | FW: REDACTED |

Please back out pro rated commisisons and PP from Rachel. Cleint cancelled with out refund.

**From:** frank@premierstudentloancenter.com [mailto:frank@premierstudentloancenter.com]
**Sent:** Thursday, February 16, 2017 4:36 PM
**To:** tom@premierstudentloancenter.com
**Subject:** REDACTED

Client spoke to great lakes and they of course told her they could this for free she was not mad she just does not want to make anymore payments to us, she didn't say anything about the family size though but she probably will when the re-certification comes next year, she is going to attempt to do it on her own and will call us if she cannot, she was really nice about it all.

*Frank Hernandez*
# PREMIER STUDENT LOAN CENTER
Direct 949-207-1079 Ext. 7005
**Toll Free 888-548-0476**
**Fax number** 888-302-3033
frank@premierstudentloancenter.com
**www.premierstudentloancenter.com**
http://www.whitehouse.gov/issues/education/higher-education/ensuring-that-student-loans-are-affordable
http://www.bbb.org/sdoc/business-reviews/legal-document-assistance/premier-student-loan-center-in-rancho-santa-margarita-ca-172013295/

**\*\*\*\*\* Email confidentiality notice \*\*\*\*\***

CONFIDENTIALITY STATEMENT: The information contained in this electronic transmission, and any attachments, may contain CONFIDENTIAL information. The information is intended only for use by the addressee named above. Any unauthorized use, disclosure, dissemination or copying of the contents of the information and any attachments contained in this electronic transmission is strictly prohibited. If you are not the intended addressee, please notify the sender immediately and delete this message.

Pls.' Ex. 2.12
P. 172

CONFIDENTIAL by designation of the CFPB

CFPB-20211007-00000268
CFPB-20220119-00004573

Plaintiffs' Exhibit 2.13

# Exhibit 14

CFPB-20220119-00004574

| | |
|---|---|
| **From:** | tom@premierstudentloancenter.com |
| **To:** | brandi@premierstudentloancenter.com |
| **CC:** | pjohnson@premierstudentloancenter.com; pkelman@premierstudentloancenter.com |
| **Sent:** | 3/6/2017 3:59:56 PM |
| **Subject:** | RE: REDACTED |

Brandi call client and tell her the best that we can do off of her true FS. We will do the file for free if she wants us to complete the file. We will only charge her for the recert if she wants us to recertify her the following year. I will refund her money after you talk to her and let me know how she wants to proceed.

**From:** brandi@premierstudentloancenter.com [mailto:brandi@premierstudentloancenter.com]
**Sent:** Monday, March 6, 2017 12:11 PM
**To:** pjohnson@premierstudentloancenter.com
**Cc:** pkelman@premierstudentloancenter.com; tom@premierstudentloancenter.com; jburman@premierstudentloancenter.com
**Subject:** REDACTED

Hey Guys,

I just spoke to Jake, this file is a different situation, she had a fedloans account so we had to use her address and she received the Family Size denial letter already. If we were to submit her again, she would receive the paperwork again and see what family size we used. We will have to cancel unfortunately.

Regards,

Brandi Gates
PREMIER STUDENT LOAN CENTER
Direct 949-207-1073
Toll Free 888-548-0476
Direct Fax 888-796-7648
Brandi@premierstudentloancenter.com

www.premierstudentloancenter.com

***** Email confidentiality notice *****
CONFIDENTIALITY STATEMENT: The information contained in this electronic transmission, and any attachments, may contain CONFIDENTIAL information. The information is intended only for use by the addressee named above. Any unauthorized use, disclosure, dissemination or copying of the contents of the information and any attachments contained in this electronic transmission is strictly prohibited. If you are not the intended addressee, please notify the sender immediately and delete this message

Pls.' Ex. 2.13
P. 175

**CONFIDENTIAL by designation of the CFPB**

CFPB-20211007-00000269
CFPB-20220119-00004575

Plaintiffs' Exhibit 2.14

# Exhibit 15

CFPB-20220119-00004576

**From:** tom@premierstudentloancenter.com
**To:** jburman@premierstudentloancenter.com
**Sent:** 3/4/2017 5:24:43 PM
**Subject:** RE: New Note Created On File: REDACTED - - REDACTED


Jacob contact client and let her know the best that we can do with with her FS. Joe is no longer with the company. We will refund her money and do it for free the first year if she wants us to complete the file. We will only charge her for recerts moving forward if she wants to stay with the company.

**From:** jburman@premierstudentloancenter.com [mailto:jburman@premierstudentloancenter.com]
**Sent:** Friday, March 3, 2017 4:38 PM
**To:** tom@premierstudentloancenter.com
**Subject:** New Note Created On File: REDACTED - - REDACTED

Note Type: Sales
Entered By: Jacob Burman
Notified: jmousaw@premierstudentloancenter.com, pjohnson@premierstudentloancenter.com, tom@premierstudentloancenter.com


Joe, Briahna contacted them and they want verification on her family size of 5. CL was already in an income driven repayment plan and you most likely jumped family size from 1 to 5 and she has no kids.

Pls.' Ex. 2.14
P. 178

CONFIDENTIAL by designation of the CFPB

CFPB-20211007-00000270
CFPB-20220119-00004577

Plaintiffs' Exhibit 2.15

# Exhibit 16

CFPB-20220119-00004578

| | |
|---|---|
| **From:** | tom@premierstudentloancenter.com |
| **To:** | mwoodruff@premierstudentloancenter.com |
| **Sent:** | 3/10/2017 3:30:47 PM |
| **Subject:** | FW: New Note Created On File: REDACTED - - REDACTED |

Client has been resold Mckenna. See notes below.

**From:** drockefeller@premierstudentloancenter.com [mailto:drockefeller@premierstudentloancenter.com]
**Sent:** Friday, March 10, 2017 12:30 PM
**To:** tom@premierstudentloancenter.com
**Subject:** RE: New Note Created On File: REDACTED - - REDACTED

Submit with max family size of 7, per client

**From:** tom@premierstudentloancenter.com [mailto:tom@premierstudentloancenter.com]
**Sent:** Thursday, March 9, 2017 11:42 AM
**To:** aaron@premierstudentloancenter.com; drockefeller@premierstudentloancenter.com
**Cc:** mwoodruff@premierstudentloancenter.com
**Subject:** FW: New Note Created On File: REDACTED - - REDACTED

**Devin Why was this file submitted with a family size of 9. This is unacceptable.** Please resell client. Thanks. Email me back once you resell the client.

**From:** mwoodruff@premierstudentloancenter.com [mailto:mwoodruff@premierstudentloancenter.com]
**Sent:** Thursday, March 9, 2017 11:36 AM
**To:** tom@premierstudentloancenter.com
**Subject:** New Note Created On File: REDACTED - - REDACTED

Note Type: Sales
Entered By: Mckenna Woodruff
Notified: aaron@premierstudentloancenter.com, drockefeller@premierstudentloancenter.com,
tom@premierstudentloancenter.com

After review of the information provided by CL / Advisor cannot submit.
CL was quoted a $0 IDR using a fam size of 9

CL does not have kids / dependents so this will be rejected.
Please either resell or cancel and refund CL.

Pls.' Ex. 2.15
P. 181

CFPB-20211007-00000271
CFPB-20220119-00004579

Plaintiffs' Exhibit 2.16

# Exhibit 17

CFPB-20220119-00004580

**From:**      tom@premierstudentloancenter.com
**To:**        ktran@premierstudentloancenter.com
**CC:**        aaron@premierstudentloancenter.com
**Sent:**      3/20/2017 3:31:13 PM
**Subject:**   REDACTED


Please call your client ASAP. Her application got denied because you used the wrong FS. **She was already in an IBR. Email me back after you resell the client. Her family size is 1**. (Why did you bump it up to 6). Email me after you talk to the client. Thanks.

Tom

CONFIDENTIAL by designation of the CFPB

Plaintiffs' Exhibit 2.17

# Exhibit 18

CFPB-20220119-00004582

**From:** tom@premierstudentloancenter.com
**To:** salavila@premierstudentloancenter.com
**CC:** aaron@premierstudentloancenter.com; cwright@premierstudentloancenter.com
**Sent:** 3/1/2017 1:35:55 PM
**Subject:** RE: New Note Created On File: REDACTED _ _ REDACTED


Sal Tell client we are going to refund her money and we are going to do it for free with her real family size. (if she wants us to complete it for free.) Email me back after you talk to the client...so I can refund her money.

**From:** salavila@premierstudentloancenter.com [mailto:salavila@premierstudentloancenter.com]
**Sent:** Wednesday, March 1, 2017 10:32 AM
**To:** tom@premierstudentloancenter.com
**Subject:** New Note Created On File: REDACTED _ _ REDACTED

Note Type: Sales
Entered By: Sal Avila
Notified: aaron@premierstudentloancenter.com, tom@premierstudentloancenter.com


client emailed me that she doesnt understand why she got the denial letter and why Christopher keeps telling she qualified and that there is confirmation


IBR denied due to drastic framily size change

but she is on PSLF already on her own

Pls.' Ex. 2.17
P. 187

CONFIDENTIAL by designation of the CFPB

CFPB-20211007-00000273
CFPB-20220119-00004583

Plaintiffs' Exhibit 2.18

# Exhibit 19

CFPB-20220119-00004584

| From: | tom@premierstudentloancenter.com |
| To: | jburman@premierstudentloancenter.com |
| CC: | luke@premierstudentloancenter.com |
| Sent: | 3/9/2017 12:07:39 PM |
| Subject: | FW: New Note Created On File: REDACTED -- REDACTED |

Client has been resold.

Thanks Luke.

**From:** luke@premierstudentloancenter.com [mailto:luke@premierstudentloancenter.com]
**Sent:** Wednesday, March 8, 2017 5:55 PM
**To:** tom@premierstudentloancenter.com
**Subject:** RE: New Note Created On File: REDACTED -- REDACTED

Payment changed to $131.67 per month after Recert. Client made aware of new payment. Family size changed to 3. Thanks

**From:** tom@premierstudentloancenter.com [mailto:tom@premierstudentloancenter.com]
**Sent:** Wednesday, March 8, 2017 4:37 PM
**To:** jburman@premierstudentloancenter.com
**Cc:** luke@premierstudentloancenter.com; pjohnson@premierstudentloancenter.com
**Subject:** RE: New Note Created On File: REDACTED -- REDACTED

Luke you need to resell client. If not done within a week I am going to refund her. Thanks.

Tom

**From:** jburman@premierstudentloancenter.com [mailto:jburman@premierstudentloancenter.com]
**Sent:** Wednesday, March 8, 2017 4:31 PM
**To:** tom@premierstudentloancenter.com
**Subject:** New Note Created On File: REDACTED -- REDACTED

Note Type: Sales
Entered By: Jacob Burman
Notified: , luke@premierstudentloancenter.com, pjohnson@premierstudentloancenter.com, tom@premierstudentloancenter.com

Luke, CL has a family size of 1 and already in an REPAYE. You have her as a FS of 7 and there is a highly likelyhood that Fedloan will deny because that's a huge family size increase as Fedloan has been denying those types of requests.

Pls.' Ex. 2.18
P. 190

CONFIDENTIAL by designation of the CFPB

Plaintiffs' Exhibit 2.19

# Exhibit 20

CFPB-20220119-00004586

**From:** tom@premierstudentloancenter.com
**To:** jburman@premierstudentloancenter.com
**CC:** dsparaco@premierstudentloancenter.com; aaron@premierstudentloancenter.com
**Sent:** 3/16/2017 12:45:10 AM
**Subject:** RE: New Note Created On File: REDACTED - - REDACTED


Resell with family size of 3 max. If not resold within a week I am going to refund the client.

**From:** jburman@premierstudentloancenter.com [mailto:jburman@premierstudentloancenter.com]
**Sent:** Wednesday, March 15, 2017 5:58 PM
**To:** tom@premierstudentloancenter.com
**Subject:** New Note Created On File: REDACTED - - REDACTED

Note Type: Sales
Entered By: Jacob Burman
Notified: aaron@premierstudentloancenter.com, dsparaco@premierstudentloancenter.com, tom@premierstudentloancenter.com


David, this application was declined until proof of family size is submitted. Family size was 1 last year and it was jumped to 6. Please resale CL. CL's AGI is $48,292.

Pls.' Ex. 2.19
P. 193

CONFIDENTIAL by designation of the CFPB

CFPB-20211007-00000275
CFPB-20220119-00004587

Plaintiffs' Exhibit 2.20

# Exhibit 21

CFPB-20220119-00004588

| | |
|---|---|
| **From:** | tom@premierstudentloancenter.com |
| **To:** | salavila@premierstudentloancenter.com |
| **Sent:** | 3/23/2017 4:59:41 PM |
| **Subject:** | RE: New Note Created On File: REDACTED   -- REDACTED |

Pierre talked to client. She is ok. Please proceed.

**From:** salavila@premierstudentloancenter.com [mailto:salavila@premierstudentloancenter.com]
**Sent:** Thursday, March 23, 2017 11:36 AM
**To:** tom@premierstudentloancenter.com
**Subject:** New Note Created On File: REDACTED   -- REDACTED

Note Type: Sales
Entered By: Sal Avila
Notified: pjohnson@premierstudentloancenter.com, pkelman@premierstudentloancenter.com, tom@premierstudentloancenter.com

lady has been calling nelnet back and forth and they told her they have not heard from premier
she said pierre told her we would take over her loans but we can bc shes already consolidated
she said a previous company screwed her over in 2014 but all they did for her was put her on a graduated because shes single and makes over $50k

she said she was gonna nelnet and figure out how WE getting her a $50 payment when noone else could and then call us back.. shes mostlikely going to cancel
family size was put at 7 , but i sent it with fam size 5 to nelnet but client is single fam 2

CONFIDENTIAL by designation of the CFPB

Plaintiffs' Exhibit 2.21

# Exhibit 22

CFPB-20220119-00004590

| | |
|---|---|
| **From:** | tom@premierstudentloancenter.com |
| **To:** | frank@premierstudentloancenter.com |
| **Sent:** | 2/25/2017 7:18:49 PM |
| **Subject:** | RE: REDACTED |

Call client and offer him a refund...and if he wants us to complete the file for free.(let him know the best quote that we can give him) We will only charge him for recerts if wants us to proceed with his file.

**From:** frank@premierstudentloancenter.com [mailto:frank@premierstudentloancenter.com]
**Sent:** Saturday, February 25, 2017 10:48 AM
**To:** tom@premierstudentloancenter.com
**Subject:** REDACTED

Clients IDR was denied for family size

*Frank Hernandez*
# PREMIER STUDENT LOAN CENTER
Direct 949-207-1079 Ext. 7005
**Toll Free 888-548-0476**
**Fax number** 888-302-3033
frank@premierstudentloancenter.com
www.premierstudentloancenter.com

##### \*\*\*\*\* Email confidentiality notice \*\*\*\*\*

CONFIDENTIALITY STATEMENT: The information contained in this electronic transmission, and any attachments, may contain CONFIDENTIAL information. The information is intended only for use by the addressee named above. Any unauthorized use, disclosure, dissemination or copying of the contents of the information and any attachments contained in this electronic transmission is strictly prohibited. If you are not the intended addressee, please notify the sender immediately and delete this message.

Pls.' Ex. 2.21
Ex. 199

CONFIDENTIAL by designation of the CFPB

Plaintiffs' Exhibit 2.22

# Exhibit 23

CFPB-20220119-00004592

| | |
|---|---|
| **From:** | tom@premierstudentloancenter.com |
| **To:** | aaron@premierstudentloancenter.com; drockefeller@premierstudentloancenter.com |
| **CC:** | mwoodruff@premierstudentloancenter.com |
| **Sent:** | 3/9/2017 2:42:24 PM |
| **Subject:** | FW: New Note Created On File: REDACTED - - REDACTED |

**Devin Why was this file submitted with a family size of 9. This is unacceptable.** Please resell client. Thanks. Email me back once you resell the client.

**From:** mwoodruff@premierstudentloancenter.com [mailto:mwoodruff@premierstudentloancenter.com]
**Sent:** Thursday, March 9, 2017 11:36 AM
**To:** tom@premierstudentloancenter.com
**Subject:** New Note Created On File: REDACTED - - REDACTED

Note Type: Sales
Entered By: Mckenna Woodruff
Notified: aaron@premierstudentloancenter.com, drockefeller@premierstudentloancenter.com, tom@premierstudentloancenter.com

After review of the information provided by CL / Advisor cannot submit.
CL was quoted a $0 IDR using a fam size of 9

CL does not have kids / dependents so this will be rejected.
Please either resell or cancel and refund CL.

Pls.' Ex. 2.22
P. 202

CONFIDENTIAL by designation of the CFPB

CFPB-20211007-00000278
CFPB-20220119-00004593

Plaintiffs' Exhibit 2.23

# Exhibit 24

CFPB-20220119-00004594

| | |
|---|---|
| **From:** | tom@premierstudentloancenter.com |
| **To:** | jburman@premierstudentloancenter.com |
| **Sent:** | 3/1/2017 8:17:04 PM |
| **Subject:** | RE: New Note Created On File: REDACTED - - REDACTED |

Ok awesome!

**From:** jburman@premierstudentloancenter.com [mailto:jburman@premierstudentloancenter.com]
**Sent:** Wednesday, March 1, 2017 5:16 PM
**To:** tom@premierstudentloancenter.com
**Subject:** RE: New Note Created On File: REDACTED - - REDACTED

Hey Tom,

Pierre actually spoke with CL and resold her on a family size of 3. So no need to refund as Pierre did the resale and I will be submitting it.

Regards,

*Jacob Burman*

PREMIER STUDENT LOAN CENTER
Direct 949-202-1152
Toll Free 888-548-0476
Direct Fax 888-444-9895
jburman@premierstudentloancenter.com

www.premierstudentloancenter.com
***** Email confidentiality notice *****
CONFIDENTIALITY STATEMENT: The information contained in this electronic transmission, and any attachments, may contain CONFIDENTIAL information. The information is intended only for use by the addressee named above. Any unauthorized use, disclosure, dissemination or copying of the contents of the information and any attachments contained in this electronic transmission is strictly prohibited. If you are not the intended addressee, please notify the sender immediately and delete this

**From:** tom@premierstudentloancenter.com [mailto:tom@premierstudentloancenter.com]
**Sent:** Wednesday, March 1, 2017 5:15 PM
**To:** jburman@premierstudentloancenter.com
**Subject:** RE: New Note Created On File: REDACTED  - - REDACTED

Jacob call client and tell him the best we can do with his correct family size. We will refund his money and complete the consolidation for free. We will only charge him the recert fee if he wants us to recertify him. I will refund clients money after you talk to him. Thank you.

**From:** jburman@premierstudentloancenter.com [mailto:jburman@premierstudentloancenter.com]
**Sent:** Wednesday, March 1, 2017 4:16 PM
**To:** tom@premierstudentloancenter.com
**Subject:** New Note Created On File: REDACTED    - - REDACTED

Note Type: Sales
Entered By: Jacob Burman
Notified: pjohnson@premierstudentloancenter.com, pkelman@premierstudentloancenter.com,
tom@premierstudentloancenter.com

CONFIDENTIAL by designation of the CFPB

Pierre, this IDR was denied unless we show proof of family size. She has zero kids. Does she support 5 other people?

CONFIDENTIAL by designation of the CFPB

CFPB-20211007-00000281
CFPB-20220119-00004596

Plaintiffs' Exhibit 2.24

# Exhibit 25

CFPB-20220119-00004597

| From: | tom@premierstudentloancenter.com |
|---|---|
| To: | rachel@premierstudentloancenter.com |
| Sent: | 3/13/2017 5:18:50 PM |
| Subject: | RE: New Note Created On File: REDACTED - - REDACTED |

I deleted her enrollment payments and refunded her first payment.
She wants us to recertify her. But that charge even came back as NSF

**From:** rachel@premierstudentloancenter.com [mailto:rachel@premierstudentloancenter.com]
**Sent:** Monday, March 13, 2017 2:16 PM
**To:** tom@premierstudentloancenter.com
**Subject:** RE: New Note Created On File: REDACTED - - REDACTED

Payments were never stopped

**From:** tom@premierstudentloancenter.com [mailto:tom@premierstudentloancenter.com]
**Sent:** Monday, March 13, 2017 2:15 PM
**To:** rachel@PREMIERSTUDENTLOANCENTER.COM
**Subject:** RE: New Note Created On File: REDACTED   - - REDACTED

She found out we inputted her wrong Family Size. So we have to finish her application for free with correct family size.

**From:** rachel@PREMIERSTUDENTLOANCENTER.COM
[mailto:rachel@PREMIERSTUDENTLOANCENTER.COM]
**Sent:** Monday, March 13, 2017 2:12 PM
**To:** tom@premierstudentloancenter.com
**Subject:** New Note Created On File: REDACTED   - - REDACTED

Note Type: Sales
Entered By: Rachel Villasenor
Notified: tom@premierstudentloancenter.com


was client supposed to be cancelled?

Pls.' Ex. 2.24
P. 209

CONFIDENTIAL by designation of the CFPB

CFPB-20211007-00000283
CFPB-20220119-00004598

Plaintiffs' Exhibit 2.25

# Exhibit 26

CFPB-20220119-00004599

**From:**        tom@premierstudentloancenter.com
**To:**          'Kaine Wen'
**Sent:**        4/4/2017 6:30:18 PM
**Subject:**     REDACTEDComplaint with IL and CA
**Attachments:** REDACTED Complaint with Att. General of IL.pdf; REDACTEDcomplaint with CA Dept of
                 Justice.pdf

I have attached REDACTED's complaint with the state of IL and state of CA.
I gave her a refund check on 2/20/17 and it was cashed. (I talked to her and apologized for the error regarding her family size and gave her a full refund.)
She made the complaint to the state of IL on 3/16/17.
Please review the documents and let me know if you need anything else.

Tom

CONFIDENTIAL by designation of the CFPB

# OFFICE OF THE ATTORNEY GENERAL
## STATE OF ILLINOIS

Lisa Madigan
ATTORNEY GENERAL

March 16, 2017

Premier Student Loan Center
29901 Santa Margarita Parkway
Rancho Santa Margarita, CA 92688

Re: REDACTED

File No: 2017-CONSC-00046029

Dear Sir/Madam:

The Consumer Protection Division, of the Office of the Attorney General received a consumer complaint involving your business. We have enclosed a copy of the complaint for your examination.

We would appreciate your review and response to the complaint, as well as any suggestions for a potential resolution. Please include copies of any substantiating documents which relate to this complaint with your response. If the matter has been resolved, we would appreciate knowing it.

Please provide a written response via US Mail and/or e-mail within ten business days of receipt. **All communications must be in writing.** Direct all correspondence to Carrie Foley, Office of the Attorney General, Consumer Protection Division, 100 West Randolph Street, 12th floor, Chicago, IL 60601. Refer to the above mentioned file on all correspondence.

Sincerely,

ATTORNEY GENERAL
State of Illinois

*Carrie Foley*

Carrie Foley
Citizen's Advocate
Consumer Protection Bureau
CFoley@atg.state.il.us
(312)814-4591

Enclosure
cm

500 South Second Street, Springfield, Illinois 62701 • (217) 782-1090 • TTY: (217) 785 -2771 • Fax: (217) 782-7046
100 West Randolph Street, Chicago, Illinois, 60601 • (312) 814-3000 • TTY: (312) 814-3374 • Fax: (312) 814-3806
601 South University, Carbondale, Illinois 62901 • (618) 529-6400 • TTY: (877) 675-9339 • Fax: (618) 529-6416

CONFIDENTIAL by designation of the CFPB

#46029



# LISA MADIGAN

Illinois Attorney General
Consumer Fraud Bureau

500 South Second Street
Springfield IL 62706
(217) 782-1090

100 W. Randolph Street
Chicago IL 60601
(312) 814-3000

TTY: (877) 844-5461
www.IllinoisAttorneyGeneral.gov

## CONSUMER COMPLAINTS ONLINE SUBMISSION FORM

**COMPLAINANT**

| | | | |
|---|---|---|---|
| **Name** | Mrs. REDACTED | **County** | REDACTED |
| **Address** | REDACTED | **Phone (Daytime)** | |
| | Darien IL REDACTED | **Phone (Evening)** | |
| | | **Email Address** | |
| **Senior Citizen** | No | | |
| **Veteran** | No | | |
| **Service Member** | No | | |

| **NAME OF SELLER/PROVIDER OF SERVICE** | | **ADDITIONAL SELLER/PROVIDER OF SERVICE** | |
|---|---|---|---|
| **Name** | Premier Student Loan Center | **Name** | |
| **Address** | 29901 Santa Margarita Parkway | **Address** | IL |
| | Rancho Santa Margarita CA 92688 | | |
| **Phone** | (855)782-0742x | **Phone** | |
| **Website** | http://premierstudentloancenter.com | **Website** | |
| **Complained to company?** | No | **Complained to Company?** | No |

**REFERRAL INFORMATION**

| | | | |
|---|---|---|---|
| **Name** | Federal Trade Commission | **Court Action Pending?** | No |
| **Address** | 600 Pennsylvania Avenue, NW | | |
| | Washington DC 20580 | | |
| **Phone** | 20580 | **Website** | https://www.ftc.gov |

**TRANSACTION INFORMATION**

| | | | |
|---|---|---|---|
| **Transaction Date** | 2015-12-17 | **Total cost** | $ 699.00 |
| **Signed a contract?** | No | **Amount paid to date** | $ 819.00 |
| **Product was advertised?** | No | **Method of payment** | Other (please specify):check & credit card |
| | | **Transaction Location** | Over the telephone: |

Registered a dispute with the credit card company   Yes

**COMPLAINT DESCRIPTION**

I was looking up public service student loan forgiveness information and came across Premier Student Loan Center's website. I called them to see if I would qualify for loan forgiveness because I work in a public school. I was told I would qualify and that it would cost me $699 for them to get me the best possible loan forgiveness available and they'd file all of the paperwork for me. Premier also charges me $30/mo for "maintenance fees" to make sure I resubmit paperwork every year that the government requires. I received a notice in the mail through the federal government that it's time to update my info (Premier never reminded me, which is supposedly what I pay the monthly fee for.) I updated my information with the government and just received a letter that my payment is jumping to $800/month. I called to ask why it was jumping up so much and found out that Premier had lied on my original application and said that I'm single with 6 children, which is how they got my payment down to $63/month. (I am married with 2 kids, which they were told on the initial information I provided them.) I am beyond upset at this point! I also found out that I could have filed for this type of loan through the federal government on my own FOR FREE! I have been SCAMMED!

**OFFICE INFORMATION**

| Reference Number | Date Submitted: | OAG Office: | Language: | Print Date |
|---|---|---|---|---|
| OAG2017-000036225 | Feb 16 2017 9:57 AM | CHI | English | Feb 24 2017 8:02 AM |

CONFIDENTIAL by designation of the CFPB

CFPB-20211007-00000286
CFPB-20220119-00004602

**REQUESTED RELIEF:**
I filed a dispute with my credit card company to see if I can recoup the monthly fees I have been paying to Premier. I'm not sure that I'll ever get my initial $699 back. I am also worried about identity theft, as they have all of my personal information including social security number, birth date, address, etc.

**NOTIFY BUSINESS:** I have no objections to the content of this complaint being forwarded to the business or person the complaint is directed against.

By filing this complaint, I hereby give the business complained about my consent to communicate, including disclosure of non-public personal information, with the Office of the Attorney General about any and all matters connected with this complaint.

**OFFICE INFORMATION**

| Reference Number | Date Submitted | OAG Office | Language | Print Date | |
|---|---|---|---|---|---|
| OAG2017-000036225 | Feb 18 2017  9:51 AM | CHI | English | Feb 24 2017  8:02 AM | Page 2 of 2 |

Pls.' Ex. 2.25
P. 215

CONFIDENTIAL by designation of the CFPB

CFPB-20211007-00000287
CFPB-20220119-00004603



*XAVIER BECERRA*
*Attorney General*

*State of California*
*DEPARTMENT OF JUSTICE*

PUBLIC INQUIRY UNIT
P.O. BOX 944255
SACRAMENTO, CA 94244-2550
(916) 322-3360
TOLL FREE: (800) 952-5225
TTY: CA Relay Service
(800) 735-2922

March 24, 2017

PIU: 739056

Premier Student Loan Center
29901 Santa Margarita Pkwy.
Rancho Santa Margarita, CA 92688

**CORRESPONDENCE RECEIVED FROM:**

# REDACTED

Darien, IL REDACTED

The Consumer Law Section of the Attorney General's Office has received the enclosed complaint relating to your firm. We understand that there are always two sides to a problem, and we would appreciate your prompt review of this matter.

You should be aware that we do not directly represent the consumer in this instance. However, we analyze all complaints to determine whether grounds exist for further investigation or legal action under California consumer protection laws. Your response to each of the factual allegations in the complaint will help us determine whether legal action on our part is warranted.

We would appreciate receiving your response within the next 30 days. Please include the attached Company Response Form with your answer to this office. Also, please send a copy of your response to the consumer if appropriate. Please feel free to attach any documents you think are relevant in explaining your position. Naturally, in sending you this complaint, we make no assumption as to the truth of the allegations, but do appreciate your prompt response to our inquiry.

Thank you for your cooperation and assistance in responding to this matter.

Sincerely,

Jeanatte Salazar
Public Inquiry Unit

For      XAVIER BECERRA
         Attorney General

Enclosure

CONFIDENTIAL by designation of the CFPB

CFPB-20211007-00000288
CFPB-20220119-00004604

**XAVIER BECERRA**
Attorney General

**State of California**
**Office of the Attorney General**
**Department of Justice**

Return form to:
**Public Inquiry Unit**
P.O. Box 944255
Sacramento, CA 94244-2550
FAX: (916) 323-5341
EMAIL: PIU@doj.ca.gov

**Company Response Form**

**Premier Student Loan Center**

Complaint ID Number:  739056                              Staff:  Jeanatte Salazar

Name of consumer: REDACTED

Legal name of company: _____

Executive office address: _____

Contact person: _____

Telephone number: _____

**Response to complaint:**
(Please enter response below or attach this form to your response.)

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

Thank you for your assistance.

A copy of this reply will be sent to the consumer.

CONFIDENTIAL by designation of the CFPB

#16029



# LISA MADIGAN

Illinois Attorney General
Consumer Fraud Bureau

500 South Second Street
Springfield IL 62706
(217) 782-1090

100 W. Randolph Street
Chicago IL 60601
(312) 814-3000

TTY: (877) 844-5461
www.IllinoisAttorneyGeneral.gov

## CONSUMER COMPLAINTS ONLINE SUBMISSION FORM

### COMPLAINTANT

| | | | |
|---|---|---|---|
| **Name** | Mrs. REDACTED | **County** | REDACTED |
| **Address** | REDACTED | **Phone (Daytime)** | |
| | Darien IL REDACTED | **Phone (Evening)** | |
| | | **Email Address** | |

| | |
|---|---|
| **Senior Citizen** | No |
| **Veteran** | No |
| **Service Member** | No |

### NAME OF SELLER/PROVIDER OF SERVICE

| | |
|---|---|
| **Name** | Premier Student Loan Center |
| **Address** | 29901 Santa Margarita Parkway Rancho Santa Margarita CA 92688 |
| **Phone** | (855)782-0742x |
| **Website** | http://premierstudentloancenter.com |
| **Complained to company?** | No |

### ADDITIONAL SELLER/PROVIDER OF SERVICE

| | |
|---|---|
| **Name** | |
| **Address** | IL |
| **Phone** | |
| **Website** | |
| **Complained to Company?** | No |

### REFERRAL INFORMATION

| | | | |
|---|---|---|---|
| **Name** | Federal Trade Commission | **Court Action Pending?** | No |
| **Address** | 600 Pennsylvania Avenue, NW Washington DC 20580 | | |
| **Phone** | 20580 | **Website** | https://www.ftc.gov |

### TRANSACTION INFORMATION

| | | | |
|---|---|---|---|
| **Transaction Date** | 2015-12-17 | **Total cost** | $ 699.00 |
| **Signed a contract?** | No | **Amount paid to date** | $ 819.00 |
| **Product was advertised?** | No | **Method of payment** | Other (please specify):check & credit card |
| | | **Transaction Location** | Over the telephone: |

Registered a dispute with the credit card company: Yes

### COMPLAINT DESCRIPTION

I was looking up public service student loan forgiveness information and came across Premier Student Loan Center's website. I called them to see if I would qualify for loan forgiveness because I work in a public school. I was told I would qualify and that it would cost me $699 for them to get me the best possible loan forgiveness available and they'd file all of the paperwork for me. Premier also charges me $30/mo for "maintenance fees" to make sure I resubmit paperwork every year that the government requires. I received a notice in the mail through the federal government that it's time to update my info (Premier never reminded me, which is supposedly what I pay the monthly fee for.) I updated my information with the government and just received a letter that my payment is jumping to $800/month. I called to ask why it was jumping up so much and found out that Premier had lied on my original application and said that I'm single with 6 children, which is how they got my payment down to $63/month. (I am married with 2 kids, which they were told on the initial information I provided them.) I am beyond upset at this point! I also found out that I could have filed for this type of loan through the federal government on my own FOR FREE! I have been SCAMMED!

### OFFICE INFORMATION

| Reference Number | Date Submitted: | OAG Officer Language: | Print Date | |
|---|---|---|---|---|
| OAG2017000036225 | Feb 16 2017 9:31AM | CHI English | Feb 24 2017 8:02 AM | Page 1 of 2 |

CONFIDENTIAL by designation of the CFPB

Pls.' Ex. 2.25
P. 218
CFPB-20211007-00000290
CFPB-20220119-00004606

**REQUESTED RELIEF:**
I filed a dispute with my credit card company to see if I can recoup the monthly fees I have been paying to Premier. I'm not sure that I'll ever get my initial $699 back. I am also worried about identity theft, as they have all of my personal information including social security number, birth date, address, etc.

**NOTIFY BUSINESS:**   I have no objections to the content of this complaint being forwarded to the business or person the complaint is directed against.

By filing this complaint, I hereby give the business complained about my consent to communicate, including disclosure of non-public personal information, with the Office of the Attorney General about any and all matters connected with this complaint.

**OFFICE INFORMATION**

| Reference Number | Date Submitted: | OAG Office: | Language: | Print Date | |
|---|---|---|---|---|---|
| OAG2017-000036225 | Feb 18, 2017  9:51 AM | CHI | English | Feb 24, 2017 8:02 AM | Page 2 of 2 |

Pls.' Ex. 2.25
P. 219

CONFIDENTIAL by designation of the CFPB

CFPB-20211007-00000291
CFPB-20220119-00004607

Plaintiffs' Exhibit 2.26

# Exhibit 27

CFPB-20220119-00004608

| | |
|---|---|
| **From:** | Tom |
| **To:** | mwoodruff@premierstudentloancenter.com |
| **CC:** | monique@premierstudentloancenter.com |
| **Sent:** | 4/14/2017 4:56:36 PM |
| **Subject:** | Re: REDACTED |

I will call her and refund her money and let u know how to proceed Mckenna

Sent from my iPhone

On Apr 14, 2017, at 1:52 PM, <mwoodruff@premierstudentloancenter.com> <mwoodruff@premierstudentloancenter.com> wrote:

Hii,

This CL's IDR was denied due to family size. Her actual family size is just herself (1) but it was submitted as 8 (3,4). Fedloan servicing is requesting for names and SSNs for all dependents claimed. I cannot submit her as UE b/c she is PSLF and would not qualify if I do so.

I am not sure, nor am I comfortable with proceeding with this file. Please advise..

*McKenna Woodruff*
# PREMIER STUDENT LOAN CENTER
**Direct 949-534-0241**
**Toll Free 888-548-0476**
**Fax number 1-888-920-7098**
mwoodruff@premierstudentloancenter.com
www.premierstudentloancenter.com

**\*\*\*\*\* Email confidentiality notice \*\*\*\*\***
CONFIDENTIALITY STATEMENT: The information contained in this electronic transmission, and any attachments, may contain CONFIDENTIAL information. The information is intended only for use by the addressee named above. Any unauthorized use, disclosure, dissemination or copying of the contents of the information and any attachments contained in this electronic transmission is strictly prohibited. If you are not the intended addressee, please notify the sender immediately and delete this message.

CONFIDENTIAL by designation of the CFPB

Plaintiffs' Exhibit 2.27

# Exhibit 28

CFPB-20220119-00004610

| | |
|---|---|
| **From:** | tom@premierstudentloancenter.com |
| **To:** | pjohnson@premierstudentloancenter.com |
| **CC:** | cstark@premierstudentloancenter.com |
| **Sent:** | 3/28/2017 1:42:12 PM |
| **Subject:** | REDACTED |

Patrick please call client and offer her a full refund. She wants to see the paperwork we submitted on her behalf. Tell her we only have the PSLf application and we don't have the loan consolidation since we mailed it in. If she sees the loan consolidation. She will know we used a FS of 2 instead of 1 and go bezerk. Thank you for helping me and Christian out with this file. Thanks.

**From:** REDACTED          [mailto: REDACTED          |
**Sent:** Tuesday, March 28, 2017 9:43 AM
**To:** Tom Nelson
**Subject:** Re: Premier Student Loan Center

Hi Tom, I too am out sick so I didn't get in touch with your manager yesterday. I was wanting to have a copy of the documents that you sent on my behalf for the PSLF as well as the loan consolidation and I will contact your boss later in the week.

Thanks,

# REDACTED

Sent from my iPhone

On Mar 23, 2017, at 18:09, Tom Nelson <tom@premierstudentloancenter.com> wrote:

Hello REDACTED ,

I just wanted to inform you Patrick is out with the flu. He should be back in the office on Monday.I will tell him to call you.

Regards,

Tom

CONFIDENTIAL by designation of the CFPB

Plaintiffs' Exhibit 2.28

# Exhibit 29

CFPB-20220119-00004612

**From:** tom@premierstudentloancenter.com
**To:** jnuqui@premierstudentloancenter.com
**Sent:** 5/2/2017 3:40:29 PM
**Subject:** FW: REDACTED   -PSLC-REDACTED cancel and refund money

Please email client his login details to Fedloans. I cancelled and refunded him.

**From:** pjohnson@premierstudentloancenter.com [mailto:pjohnson@premierstudentloancenter.com]
**Sent:** Tuesday, May 2, 2017 12:35 PM
**To:** tom@premierstudentloancenter.com
**Subject:** REDACTED   -PSLC-REDACTED cancel and refund money

This client called in fuming that we lied about family size and him being married. Had a long convo with servicer.

*Patrick Johnson*

# PREMIER STUDENT LOAN CENTER

Direct 949-209-0065
**Fax number** 888-302-3033
pjohnson@premierstudentloancenter.com
www.premierstudentloancenter.com
http://www.forbes.com/sites/zackfriedman/2017/01/20/navient/#2966fc2f37c6

**\*\*\*\*\* Email confidentiality notice \*\*\*\*\***

CONFIDENTIALITY STATEMENT: The information contained in this electronic transmission, and any attachments, may contain CONFIDENTIAL information. The information is intended only for use by the addressee named above. Any unauthorized use, disclosure, dissemination or copying of the contents of the information and any attachments contained in this electronic transmission is strictly prohibited. If you are not the intended addressee, please notify the sender immediately and delete this message.

Pls.' Ex. 2.28
P. 228

CONFIDENTIAL by designation of the CFPB

CFPB-20211007-00000294
CFPB-20220119-00004613

Plaintiffs' Exhibit 2.29

# Exhibit 30

CFPB-20220119-00004614

| | |
|---|---|
| **From:** | tom@premierstudentloancenter.com |
| **To:** | mcamp@premierstudentloancenter.com |
| **Sent:** | 4/18/2017 6:06:48 PM |
| **Subject:** | FW: New Note Created On File: REDACTED - - REDACTED |

**From:** pjohnson@premierstudentloancenter.com [mailto:pjohnson@premierstudentloancenter.com]
**Sent:** Tuesday, April 18, 2017 2:33 PM
**To:** tom@premierstudentloancenter.com
**Cc:** mcamp@premierstudentloancenter.com
**Subject:** RE: New Note Created On File: REDACTED   - - REDACTED

Resold client on 615+30=645 Please make first payment around 06/15/2017

*Patrick Johnson*
# PREMIER STUDENT LOAN CENTER
Direct 949-209-0065
**Fax number** 888-302-3033
pjohnson@premierstudentloancenter.com
**www.premierstudentloancenter.com**
http://www.forbes.com/sites/zackfriedman/2017/01/20/navient/#2966fc2f37c6

***** Email confidentiality notice *****
CONFIDENTIALITY STATEMENT: The information contained in this electronic transmission, and any attachments, may contain CONFIDENTIAL information. The information is intended only for use by the addressee named above. Any unauthorized use, disclosure, dissemination or copying of the contents of the information and any attachments contained in this electronic transmission is strictly prohibited. If you are not the intended addressee, please notify the sender immediately and delete this message.

**From:** tom@premierstudentloancenter.com [mailto:tom@premierstudentloancenter.com]
**Sent:** Tuesday, April 18, 2017 11:49 AM
**To:** pjohnson@premierstudentloancenter.com
**Cc:** mcamp@premierstudentloancenter.com
**Subject:** FW: New Note Created On File: REDACTED   - - REDACTED

Patrick please resell client Asap. We can only use his FS of 4. His original application got denied because of FS that Andrew Lovelace put. Its been over a month now.

**From:** mcamp@premierstudentloancenter.com [mailto:mcamp@premierstudentloancenter.com]
**Sent:** Tuesday, April 18, 2017 11:34 AM
**To:** tom@premierstudentloancenter.com
**Subject:** New Note Created On File: REDACTED - - REDACTED

Note Type: Sales
Entered By: Maxwell Camp
Notified: monique@premierstudentloancenter.com, pjohnson@premierstudentloancenter.com, tom@premierstudentloancenter.com

update on resell?

Pls.' Ex. 2.29
P. 231

CONFIDENTIAL by designation of the CFPB

Plaintiffs' Exhibit 2.30

# Exhibit 31

CFPB-20220119-00004616

| | |
|---|---|
| **From:** | tom@premierstudentloancenter.com |
| **To:** | frank@premierstudentloancenter.com |
| **Sent:** | 4/25/2017 2:55:35 PM |
| **Subject:** | RE: REDACTEDAccount |

Please recertify REDACTED(dad) and REDACTED(son) for free this year. REDACTEDwill be handling both of their files.
Please give REDACTEDa call today.

They will decide if they want to pay for recertification next year.

**From:** frank@premierstudentloancenter.com [mailto:frank@premierstudentloancenter.com]
**Sent:** Tuesday, April 25, 2017 11:37 AM
**To:** tom@premierstudentloancenter.com
**Subject:** FW: REDACTEDAccount

This client did his re-cert on his own and found out we increased the family size.

*Frank Hernandez*
# PREMIER STUDENT LOAN CENTER
Direct 949-207-1079 Ext. 7005
**Toll Free 888-548-0476**
**Fax number** 888-302-3033
frank@premierstudentloancenter.com
**www.premierstudentloancenter.com**
***** Email confidentiality notice *****
CONFIDENTIALITY STATEMENT: The information contained in this electronic transmission, and any attachments, may contain CONFIDENTIAL information. The information is intended only for use by the addressee named above. Any unauthorized use, disclosure, dissemination or copying of the contents of the information and any attachments contained in this electronic transmission is strictly prohibited. If you are not the intended addressee, please notify the sender immediately and delete this message.

**From:** REDACTED[mailto:REDACTED
**Sent:** Monday, April 24, 2017 3:28 PM
**To:** frank@premierstudentloancenter.com
**Subject:** REDACTEDAccount

Hi Frank,

I have a few questions concerning my account. Can you please give me a call when you have a chance? REDACTED

Thanks!

REDACTED| The Boston Beer Company | Key Account Specialist—Los Angeles | REDACTED|
REDACTED

This message contains confidential information and is intended only for the individual named. If you are not the named addressee you should not disseminate, distribute or copy this email. Please notify the sender immediately by email if you have received this message by mistake and delete this email from your system. Thank you.

Pls.' Ex. 2.30
P. 234

CFPB-20211007-00000296
CFPB-20220119-00004617

Plaintiffs' Exhibit 2.31

# Exhibit 32

CFPB-20220119-00004618

| | |
|---|---|
| **From:** | tom@premierstudentloancenter.com |
| **To:** | wilson@premierstudentloancenter.com |
| **Sent:** | 5/10/2017 10:13:02 PM |
| **Subject:** | FW: New Note Created On File: REDACTED    -- REDACTED |

Did you call this client yet Visar?

**From:** mcamp@premierstudentloancenter.com [mailto:mcamp@premierstudentloancenter.com]
**Sent:** Wednesday, May 10, 2017 11:29 AM
**To:** tom@premierstudentloancenter.com
**Subject:** New Note Created On File: REDACTED   -- REDACTED

Note Type: Sales
Entered By: Maxwell Camp
Notified: monique@premierstudentloancenter.com, tom@premierstudentloancenter.com, vwilson@premierstudentloancenter.com

clients IDR denied due to FS. please refund. Visar will requote

CONFIDENTIAL by designation of the CFPB

Plaintiffs' Exhibit 2.32

# Exhibit 33

CFPB-20220119-00004620

| | |
|---|---|
| **From:** | tom@premierstudentloancenter.com |
| **To:** | salavila@premierstudentloancenter.com |
| **Sent:** | 5/8/2017 3:46:50 PM |
| **Subject:** | RE: New Note Created On File: REDACTED _ _ REDACTED |

Please change everything back to her personal info with servicer. I cancelled out her file and refunded her 5/6 payment.
Thanks

**From:** salavila@premierstudentloancenter.com [mailto:salavila@premierstudentloancenter.com]
**Sent:** Monday, May 8, 2017 11:44 AM
**To:** tom@premierstudentloancenter.com
**Subject:** New Note Created On File: REDACTED _ _ REDACTED

Note Type: Sales
Entered By: Sal Avila
Notified: tom@premierstudentloancenter.com

CLIENT TALKED TO FEDLOAN, SHE SAID WE MISS REPRESENTED HER BY PUTTING FAMILY SIZE OF 7
WHEN THATS NOT TRUE, AND SHES GONNA SEND FEDLOAN SERVICING HER OWN PAYSTUBS, AND
FAMILY SIZE APPLICATION

SHE ONLY WANTS A REFUND OF THE PAYMENT DRAFTED ON 5/6 SHE WILL CONTINUE TO WORK HER
FEDLOAN ON HER OWN

Pls.' Ex. 2.32
P. 240

CONFIDENTIAL by designation of the CFPB

CFPB-20211007-00000298
CFPB-20220119-00004621

Plaintiffs' Exhibit 2.33

# Exhibit 34

CFPB-20220119-00004622

**From:** tom@premierstudentloancenter.com
**To:** pjohnson@premierstudentloancenter.com
**CC:** monique@premierstudentloancenter.com
**Sent:** 6/16/2017 9:55:45 PM
**Subject:** FW: New Note Created On File: REDACTED - - REDACTED

Patrick please call client asap. She is Larissa's former client. We submitted her at a FS of 7 and her application got denied. Please read the notes and offer client a full refund. Ask Monique if we can fix the file for free or not because her current Fedloans account is locked. Email me back after you talk to the client.

Tom

**From:** monique@premierstudentloancenter.com [mailto:monique@premierstudentloancenter.com]
**Sent:** Friday, June 16, 2017 10:52 AM
**To:** tom@premierstudentloancenter.com
**Subject:** FW: New Note Created On File: REDACTED - - REDACTED
**Importance:** High

Tom, we may need to refund this client

**From:** salavila@premierstudentloancenter.com [mailto:salavila@premierstudentloancenter.com]
**Sent:** Friday, June 16, 2017 10:44 AM
**To:** monique@premierstudentloancenter.com
**Subject:** New Note Created On File: REDACTED - - REDACTED

Note Type: Sales
Entered By: Sal Avila
Notified: , monique@premierstudentloancenter.com

client is single no deps, morgan added 6 kids and her file icr denied and processed for fam 1
called cl left vm

Pls.' Ex. 2.33
P. 243

CONFIDENTIAL by designation of the CFPB

CFPB-20211007-00000299
CFPB-20220119-00004623

Plaintiffs' Exhibit 2.34

# Exhibit 35

CFPB-20220119-00004624

**From:** tom@premierstudentloancenter.com
**To:** cstark@premierstudentloancenter.com
**Sent:** 7/19/2017 7:15:23 PM
**Subject:** FW: New Note Created On File: REDACTED - - REDACTED

Please call client and try to resolve this matter asap. If he threatens to do a chargeback we will offer him a full refund.
They messed up on his family size.

Tom

**From:** swatson@premierstudentloancenter.com [mailto:swatson@premierstudentloancenter.com]
**Sent:** Wednesday, July 19, 2017 9:08 AM
**To:** tom@premierstudentloancenter.com
**Subject:** New Note Created On File: REDACTED - - REDACTED

Note Type: Sales
Entered By: Shanae Watson
Notified: , tom@premierstudentloancenter.com

CL said he has contacted his bank to have a lawyer get in contact with us because we did nothing for him.
Explained we did his consolidation but he said it was bull*.
CL said he is not dealing with us anymore and disconnected.

Pls.' Ex. 2.34
P. 246

CONFIDENTIAL by designation of the CFPB

Plaintiffs' Exhibit 2.35

# Exhibit 36

CFPB-20220119-00004626

**From:** tom@premierstudentloancenter.com
**To:** monique@premierstudentloancenter.com
**CC:** mwoodruff@premierstudentloancenter.com
**Sent:** 7/25/2017 5:57:02 PM
**Subject:** RE: New Note Created On File: REDACTED _ _ REDACTED

Mckenna I refunded client. Please call her and give her her options with her true FS. (Tell client we can't get her the low payment because she makes too much money) We will complete the file for free.

Tom

**From:** monique@premierstudentloancenter.com [mailto:monique@premierstudentloancenter.com]
**Sent:** Tuesday, July 25, 2017 9:50 AM
**To:** tom@premierstudentloancenter.com
**Subject:** New Note Created On File: REDACTED _ _ REDACTED

Note Type: General
Entered By: Monique Washington
Notified: mwoodruff@premierstudentloancenter.com, tom@premierstudentloancenter.com

tom please cancel and refund, as we rpr denied due to fs. mckenna please let her know we cannot help gher

Pls.' Ex. 2.35
P. 249

CONFIDENTIAL by designation of the CFPB

Plaintiffs' Exhibit 2.36

# Exhibit 37

CFPB-20220119-00004628

| | |
|---|---|
| **From:** | tom@premierstudentloancenter.com |
| **To:** | pjohnson@premierstudentloancenter.com |
| **CC:** | salavila@premierstudentloancenter.com |
| **Sent:** | 6/19/2017 12:52:30 PM |
| **Subject:** | RE: New Note Created On File: REDACTED _ _ REDACTED |

Patrick we are refunding her and finishing it for free. Please give her options with her real FS. Standard, Graduated, or the other options and let client choose. It got denied already because of the FS. Email me back after you talk to her Patrick.

Tom

**From:** pjohnson@premierstudentloancenter.com [mailto:pjohnson@premierstudentloancenter.com]
**Sent:** Monday, June 19, 2017 9:45 AM
**To:** tom@premierstudentloancenter.com
**Subject:** New Note Created On File: REDACTED _ _ REDACTED

Note Type: Sales
Entered By: Patrick Johnson
Notified: salavila@premierstudentloancenter.com, tom@premierstudentloancenter.com

what am I suppose to do here sal? are we refunding and doing this for free?

CONFIDENTIAL by designation of the CFPB

CFPB-20211007-00000302
CFPB-20220119-00004629

Plaintiffs' Exhibit 2.37

# Exhibit 38

CFPB-20220119-00004630

| | |
|---|---|
| **From:** | tom@premierstudentloancenter.com |
| **To:** | cstark@premierstudentloancenter.com |
| **Sent:** | 8/9/2017 4:47:12 PM |
| **Subject:** | FW: New Note Created On File: REDACTED - - REDACTED |

Please call client asap and offer him a full refund and let him know we will fix the file for free. Confirm his mailing address so I can mail him a refund check.

**From:** monique@premierstudentloancenter.com [mailto:monique@premierstudentloancenter.com]
**Sent:** Wednesday, August 9, 2017 1:41 PM
**To:** tom@premierstudentloancenter.com
**Subject:** New Note Created On File: REDACTED - - REDACTED

Note Type: General
Entered By: Monique Washington
Notified: cstark@premierstudentloancenter.com, tom@premierstudentloancenter.com

client received denial letter from fedloans due to fs 9 he is aware we used fake fs, please contact him asap

Pls.' Ex. 2.37
P. 255

CONFIDENTIAL by designation of the CFPB

CFPB-20211007-00000303
CFPB-20220119-00004631

Plaintiffs' Exhibit 2.38

# Exhibit 39

CFPB-20220119-00004632

| | |
|---|---|
| **From:** | tom@premierstudentloancenter.com |
| **To:** | jmiranti@premierstudentloancenter.com |
| **Sent:** | 7/31/2017 7:33:16 PM |
| **Subject:** | RE: New Note Created On File: REDACTED -- REDACTED |

She has one kid. Jon submitted it at 7.

**From:** jmiranti@premierstudentloancenter.com [mailto:jmiranti@premierstudentloancenter.com]
**Sent:** Monday, July 31, 2017 4:07 PM
**To:** tom@premierstudentloancenter.com
**Subject:** RE: New Note Created On File: REDACTED -- REDACTED

FS was 6?

**From:** tom@premierstudentloancenter.com [mailto:tom@premierstudentloancenter.com]
**Sent:** Monday, July 31, 2017 3:58 PM
**To:** jmiranti@premierstudentloancenter.com
**Subject:** RE: New Note Created On File: REDACTED -- REDACTED

Yes client granted a full refund. Look at the FS. Rep got commissons backed out.

**From:** jmiranti@premierstudentloancenter.com [mailto:jmiranti@premierstudentloancenter.com]
**Sent:** Monday, July 31, 2017 3:55 PM
**To:** tom@premierstudentloancenter.com
**Subject:** New Note Created On File: REDACTED -- REDACTED

Note Type: Sales
Entered By: Jordan Miranti
Notified: tom@premierstudentloancenter.com

Why did the client recieve a full refund if the process was submitted? She called in 2 months after submission... Is the rep getting charged back on this?

CONFIDENTIAL by designation of the CFPB

CFPB-20211007-00000304
CFPB-20220119-00004633

Plaintiffs' Exhibit 2.39

# Exhibit 40

CFPB-20220119-00004634

| | |
|---|---|
| **From:** | tom@premierstudentloancenter.com |
| **To:** | wilson@premierstudentloancenter.com |
| **CC:** | cstark@premierstudentloancenter.com; monique@premierstudentloancenter.com |
| **Sent:** | 7/14/2017 4:35:48 PM |
| **Subject:** | FW: Loan Summary Statement Received! |

Visar handle this asap. Her application got denied because of FS. Email me and Monique after you talk to client.

**From:** monique@premierstudentloancenter.com [mailto:monique@premierstudentloancenter.com]
**Sent:** Friday, July 14, 2017 1:31 PM
**To:** frank@premierstudentloancenter.com; tom@premierstudentloancenter.com; vwilson@premierstudentloancenter.com
**Subject:** RE: Loan Summary Statement Received!
**Importance:** High

We will have to refund and can cancel client due to fs denial tom

**From:** frank@premierstudentloancenter.com [mailto:frank@premierstudentloancenter.com]
**Sent:** Friday, July 14, 2017 12:04 PM
**To:** monique@premierstudentloancenter.com; tom@premierstudentloancenter.com; vwilson@premierstudentloancenter.com
**Subject:** FW: Loan Summary Statement Received!

*Frank Hernandez*
# PREMIER STUDENT LOAN CENTER
Direct 949-207-1079 Ext. 7005
**Toll Free 888-548-0476**
**Fax number** 888-302-3033
frank@premierstudentloancenter.com
www.premierstudentloancenter.com
***** Email confidentiality notice *****
CONFIDENTIALITY STATEMENT: The information contained in this electronic transmission, and any attachments, may contain CONFIDENTIAL information. The information is intended only for use by the addressee named above. Any unauthorized use, disclosure, dissemination or copying of the contents of the information and any attachments contained in this electronic transmission is strictly prohibited. If you are not the intended addressee, please notify the sender immediately and delete this message.

**From:** REDACTED [mailto:REDACTED                      |
**Sent:** Friday, July 14, 2017 11:59 AM
**To:** 'frank@premierstudentloancenter.com' <frank@premierstudentloancenter.com>
**Subject:** RE: Loan Summary Statement Received!

Whoever filled out his paperwork, stated that we have a household of 10 and the Fed Loan sent us a bill for almost $500 which is why he called them after his contact person was not returning any phone calls.

**From:** frank@premierstudentloancenter.com [mailto:frank@premierstudentloancenter.com]
**Sent:** Friday, July 14, 2017 2:56 PM
**To:** REDACTED <REDACTED                >
**Subject:** RE: Loan Summary Statement Received!

Redacted was approved for Public Service Loan Forgiveness and his loans are currently in the process of being

CONFIDENTIAL by designation of the CFPB

transferred to Fed Loan servicing where he will be in a 10 year term with them. So I am not to sure where the confusion is with this? He is at a $0.00 payment and is in the forgiveness program which he applied for which is legitimate as you can see from the application he and his employer filled out. You also qualify for the same thing as well which is why I sent you the application and also this email updating you on where your file is at in the process.

*Frank Hernandez*

# PREMIER STUDENT LOAN CENTER

Direct 949-207-1079 Ext. 7005
**Toll Free 888-548-0476**
**Fax number 888-302-3033**
frank@premierstudentloancenter.com
**www.premierstudentloancenter.com**
***** Email confidentiality notice *****

CONFIDENTIALITY STATEMENT: The information contained in this electronic transmission, and any attachments, may contain CONFIDENTIAL information. The information is intended only for use by the addressee named above. Any unauthorized use, disclosure, dissemination or copying of the contents of the information and any attachments contained in this electronic transmission is strictly prohibited. If you are not the intended addressee, please notify the sender immediately and delete this message.

**From:** REDACTED[mailto: REDACTED
**Sent:** Friday, July 14, 2017 11:51 AM
**To:** 'frank@premierstudentloancenter.com' <frank@premierstudentloancenter.com>
**Subject:** RE: Loan Summary Statement Received!

REDACTED

**From:** frank@premierstudentloancenter.com [mailto:frank@premierstudentloancenter.com]
**Sent:** Friday, July 14, 2017 2:17 PM
**To:** REDACTED<REDACTED            >
**Subject:** RE: Loan Summary Statement Received!

As you can see in this email your file has not been fully completed yet because this is a process which takes time to be completed and the services have been rendered and the work on your file has begun, which is why I sent you this email. Who is your husband so I can look up his file and see what is going on?

*Frank Hernandez*

# PREMIER STUDENT LOAN CENTER

Direct 949-207-1079 Ext. 7005
**Toll Free 888-548-0476**
**Fax number 888-302-3033**
frank@premierstudentloancenter.com
**www.premierstudentloancenter.com**
***** Email confidentiality notice *****

CONFIDENTIALITY STATEMENT: The information contained in this electronic transmission, and any attachments, may contain CONFIDENTIAL information. The information is intended only for use by the addressee named above. Any unauthorized use, disclosure, dissemination or copying of the contents of the information and any attachments contained in this electronic transmission is strictly prohibited. If you are not the intended addressee, please notify the sender immediately and delete this message.

**From:** REDACTED[mailto: REDACTED
**Sent:** Thursday, July 13, 2017 5:36 PM
**To:** Frank Hernandez <frank@premierstudentloancenter.com>
**Subject:** Re: Loan Summary Statement Received!

Frank,

I have contacted my bank and requested a stop payment for your company for any further transactions. We received

CONFIDENTIAL by designation of the CFPB

CFPB-20211007-00000306
CFPB-20220119-00004636

paperwork for my husband who has signed up through the company and have learned some facts from the US Department of Education. You are a third party company that I do not have to deal with, my money and paperwork has not been received yet from you which means your paid services were not provided, and the paperwork was filled out in error for my husband which sent them the red flag from the US Department of Education.

Have a good evening
REDACTED

Sent from my iPhone

On Jul 10, 2017, at 4:38 PM, Frank Hernandez <frank@premierstudentloancenter.com> wrote:

Hello <sup>REDACTED</sup> ,

Great News! I would like to inform you we have received your ten day letter from your new servicer and all of your loans were included in the consolidation! We now have 10 days to make any changes to your consolidation if you wish to remove or add loans. After this ten day period is over, your loans with your current servicer will be paid in full and taken over by your new servicer. We are still awaiting for the final approval for the Income Driven Plan which will take another 2-4 weeks. Once I get the final approval I will give you a call and walk you through your new online account! If you have any questions please feel free to contact me.

Frank Hernandez

PREMIER STUDENT LOAN CENTER

Direct 949-207-1079 Ext. 7005

Toll Free 888-548-0476

Fax number 888-302-3033

frank@premierstudentloancenter.com

www.premierstudentloancenter.com

***** Email confidentiality notice *****

CONFIDENTIALITY STATEMENT: The information contained in this electronic transmission, and any attachments, may contain CONFIDENTIAL information. The information is intended only for use by the addressee named above. Any unauthorized use, disclosure, dissemination or copying of the contents of the information and any attachments contained in this electronic transmission is strictly prohibited. If you are not the intended addressee, please notify the sender immediately and delete this message.

CONFIDENTIAL by designation of the CFPB

Plaintiffs' Exhibit 2.40

# Exhibit 41

CFPB-20220119-00004638

| From: | tom@premierstudentloancenter.com |
|---|---|
| To: | monique@premierstudentloancenter.com; wilson@premierstudentloancenter.com |
| CC: | cstark@premierstudentloancenter.com |
| Sent: | 7/14/2017 4:42:37 PM |
| Subject: | RE: Loan Summary Statement Received! |

6 FS was used for <sup>REDACTED</sup>
5 FS was used for his wife.

Either way visar needs to get the family size letter and resubmit it or we are going to refund them their money. Visar talk to client and have them fill out the Family Size letter. Monique should have a template. If they wont fill it out we are going to refund both client their money. Resolve this asap.

Tom

**From:** monique@premierstudentloancenter.com [mailto:monique@premierstudentloancenter.com]
**Sent:** Friday, July 14, 2017 1:38 PM
**To:** tom@premierstudentloancenter.com; vwilson@premierstudentloancenter.com
**Cc:** cstark@premierstudentloancenter.com
**Subject:** RE: Loan Summary Statement Received!

I don't see where we ever used a fs of 10 though..

**From:** tom@premierstudentloancenter.com [mailto:tom@premierstudentloancenter.com]
**Sent:** Friday, July 14, 2017 1:36 PM
**To:** vwilson@premierstudentloancenter.com
**Cc:** cstark@premierstudentloancenter.com; monique@premierstudentloancenter.com
**Subject:** FW: Loan Summary Statement Received!
**Importance:** High

Visar handle this asap. Her application got denied because of FS. Email me and Monique after you talk to client.

**From:** monique@premierstudentloancenter.com [mailto:monique@premierstudentloancenter.com]
**Sent:** Friday, July 14, 2017 1:31 PM
**To:** frank@premierstudentloancenter.com; tom@premierstudentloancenter.com; vwilson@premierstudentloancenter.com
**Subject:** RE: Loan Summary Statement Received!
**Importance:** High

We will have to refund and can cancel client due to fs denial tom

**From:** frank@premierstudentloancenter.com [mailto:frank@premierstudentloancenter.com]
**Sent:** Friday, July 14, 2017 12:04 PM
**To:** monique@premierstudentloancenter.com; tom@premierstudentloancenter.com; vwilson@premierstudentloancenter.com
**Subject:** FW: Loan Summary Statement Received!

*Frank Hernandez*
PREMIER STUDENT LOAN CENTER

Pls.' Ex. 2.40
P. 266

CONFIDENTIAL by designation of the CFPB

CFPB-20211007-00000309
CFPB-20220119-00004639

completed and the services have been rendered and the work on your file has begun, which is why I sent you this email. Who is your husband so I can look up his file and see what is going on?

*Frank Hernandez*

# PREMIER STUDENT LOAN CENTER

Direct 949-207-1079 Ext. 7005
**Toll Free 888-548-0476**
**Fax number** 888-302-3033
frank@premierstudentloancenter.com
**www.premierstudentloancenter.com**
***** Email confidentiality notice *****

CONFIDENTIALITY STATEMENT: The information contained in this electronic transmission, and any attachments, may contain CONFIDENTIAL information. The information is intended only for use by the addressee named above. Any unauthorized use, disclosure, dissemination or copying of the contents of the information and any attachments contained in this electronic transmission is strictly prohibited. If you are not the intended addressee, please notify the sender immediately and delete this message.

**From:** REDACTED [mailto: REDACTED
**Sent:** Thursday, July 13, 2017 5:36 PM
**To:** Frank Hernandez <frank@premierstudentloancenter.com>
**Subject:** Re: Loan Summary Statement Received!

Frank,

I have contacted my bank and requested a stop payment for your company for any further transactions. We received paperwork for my husband who has signed up through the company and have learned some facts from the US Department of Education. You are a third party company that I do not have to deal with, my money and paperwork has not been received yet from you which means your paid services were not provided, and the paperwork was filled out in error for my husband which sent them the red flag from the US Department of Education.

Have a good evening
REDACTED

Sent from my iPhone

On Jul 10, 2017, at 4:38 PM, Frank Hernandez <frank@premierstudentloancenter.com> wrote:

Hello REDACTED ,

Great News! I would like to inform you we have received your ten day letter from your new servicer and all of your loans were included in the consolidation! We now have 10 days to make any changes to your consolidation if you wish to remove or add loans. After this ten day period is over, your loans with your current servicer will be paid in full and taken over by your new servicer. We are still awaiting for the final approval for the Income Driven Plan which will take another 2-4 weeks. Once I get the final approval I will give you a call and walk you through your new online account! If you have any questions please feel free to contact me.

Frank Hernandez

Pls.' Ex. 2.40
P. 267

CONFIDENTIAL by designation of the CFPB

**PREMIER STUDENT LOAN CENTER**

Direct 949-207-1079 Ext. 7005

Toll Free 888-548-0476

Fax number 888-302-3033

frank@premierstudentloancenter.com

www.premierstudentloancenter.com

***** Email confidentiality notice *****

CONFIDENTIALITY STATEMENT: The information contained in this electronic transmission, and any attachments, may contain CONFIDENTIAL information. The information is intended only for use by the addressee named above. Any unauthorized use, disclosure, dissemination or copying of the contents of the information and any attachments contained in this electronic transmission is strictly prohibited. If you are not the intended addressee, please notify the sender immediately and delete this message.

CONFIDENTIAL by designation of the CFPB

CFPB-20211007-00000312
CFPB-20220119-00004641

Plaintiffs' Exhibit 2.41

# Exhibit 42

CFPB-20220119-00004642

| | |
|---|---|
| **From:** | tom@premierstudentloancenter.com |
| **To:** | monique@premierstudentloancenter.com |
| **CC:** | cstark@premierstudentloancenter.com |
| **Sent:** | 6/29/2017 1:19:12 PM |
| **Subject:** | RE: New Note Created On File: REDACTED      REDACTED |

Chrisitian please call client asap and apologize for the clerical error. Confirm her mailing address and so we can refund her mailing address.
Tell her we can fix the file for free and if she does please let Monique know. Monique can explain what options she has available.
Let me know if you need further help.

Tom

**From:** monique@premierstudentloancenter.com [mailto:monique@premierstudentloancenter.com]
**Sent:** Thursday, June 29, 2017 9:23 AM
**To:** tom@premierstudentloancenter.com
**Subject:** New Note Created On File: REDACTED      REDACTED

Note Type: General
Entered By: Monique Washington
Notified: aaron@premierstudentloancenter.com, tom@premierstudentloancenter.com

tom, this client called in and stated she did her own recertification and her payments increased drastically she wants to know why..what should i tell her? we used a diff family size?

CONFIDENTIAL by designation of the CFPB

CFPB-20211007-00000313
CFPB-20220119-00004643

Plaintiffs' Exhibit 2.42

# Exhibit 43

CFPB-20220119-00004644

| | |
|---|---|
| **From:** | tom@premierstudentloancenter.com |
| **To:** | cstark@premierstudentloancenter.com |
| **Sent:** | 8/22/2017 3:20:59 PM |
| **Subject:** | FW: New Note Created On File: REDACTED - - REDACTED |

Christian please call client and apologize for the FS error. (see notes) Confirm her mailing address so we can mail her out a refund check.

**From:** monique@premierstudentloancenter.com [mailto:monique@premierstudentloancenter.com]
**Sent:** Tuesday, August 22, 2017 10:57 AM
**To:** tom@premierstudentloancenter.com
**Subject:** New Note Created On File: REDACTED - - REDACTED

Note Type: General
Entered By: Monique Washington
Notified: tom@premierstudentloancenter.com

tom cancel and refund per notes below?

CONFIDENTIAL by designation of the CFPB

Plaintiffs' Exhibit 2.43

# Exhibit 44

CFPB-20220119-00004646

**From:** tom@premierstudentloancenter.com
**To:** cstark@premierstudentloancenter.com
**Sent:** 7/14/2017 5:07:05 PM
**Subject:** FW: New Note Created On File: REDACTED  -- REDACTED


Please call client asap. She found out we lied about her FS. Apologize and offer to fix it for free. I refunded her money already.

tom
**From:** bresendiz@premierstudentloancenter.com [mailto:bresendiz@premierstudentloancenter.com]
**Sent:** Friday, July 14, 2017 10:42 AM
**To:** tom@premierstudentloancenter.com
**Subject:** New Note Created On File: REDACTED  -- REDACTED

Note Type: Sales
Entered By: Briahna Resendiz
Notified: tom@premierstudentloancenter.com


Client wants to Drop from program. And wants a refund for first payment.

Said she was unable to get a hold of anyone- was upset and said that she knows we are fraudulent because she saw that we lied on her family size.

CONFIDENTIAL by designation of the CFPB

Plaintiffs' Exhibit 2.44

# Exhibit 45

CFPB-20220119-00004648

**From:** tom@premierstudentloancenter.com
**To:** cstark@premierstudentloancenter.com
**Sent:** 9/6/2017 3:10:37 AM
**Subject:** FW: New Note Created On File: REDACTED - - REDACTED

Did you call this client yet? I don't see any notes. Please try to resell him if not please refund him all of his money.

Tom

**From:** monique@premierstudentloancenter.com [mailto:monique@premierstudentloancenter.com]
**Sent:** Tuesday, September 5, 2017 10:14 AM
**To:** tom@premierstudentloancenter.com
**Subject:** New Note Created On File: REDACTED - - REDACTED

Note Type: General
Entered By: Monique Washington
Notified: jmcknight@premierstudentloancenter.com, tom@premierstudentloancenter.com

family size was denied, please advise his real family size is 1...

Pls.' Ex. 2.44
P. 280

CONFIDENTIAL by designation of the CFPB

# Plaintiffs' Exhibit 2.45

# Exhibit 46

CFPB-20220119-00004650

**From:** tom@premierstudentloancenter.com
**To:** frank@premierstudentloancenter.com
**Sent:** 9/6/2017 3:35:47 AM
**Subject:** FW: New Note Created On File: REDACTED-- REDACTED

Did you call this client yet Frank. Offer her a full refund and confirm her mailing address so I can send her a refund check. Tell her the programs has and her income is higher now thus the higher payment.

Regards,

Tom

**From:** monique@premierstudentloancenter.com [mailto:monique@premierstudentloancenter.com]
**Sent:** Tuesday, September 5, 2017 1:39 PM
**To:** tom@premierstudentloancenter.com
**Subject:** FW: New Note Created On File: REDACTED  -- REDACTED

Please advise

**From:** frank@premierstudentloancenter.com [mailto:frank@premierstudentloancenter.com]
**Sent:** Tuesday, September 5, 2017 1:20 PM
**To:** monique@premierstudentloancenter.com
**Subject:** New Note Created On File: REDACTED -- REDACTED

Note Type: General
Entered By: Frank Hernandez
Notified: monique@premierstudentloancenter.com, tom@premierstudentloancenter.com

This client was submitted last year to Fed Loans using a family size of 6 and the family size was denied, we wrote LOE and client found the LOE and was concerned about the fake letter so we did the fix with real family size at 3 and then it was approved for $46 with AGI at $50,000, clients income for this year is at $70,000 making payments increase to $279 now client is concerned why the payments were so high now. I do not know what to tell this client, we already used a fake family size, fake family size letter and she found out. Please advise.

Pls.' Ex. 2.45
P. 283

CONFIDENTIAL by designation of the CFPB

Plaintiffs' Exhibit 2.46

# Exhibit 47

CFPB-20220119-00004652

**From:**     tom@premierstudentloancenter.com
**To:**        cstark@premierstudentloancenter.com
**CC:**        monique@premierstudentloancenter.com
**Sent:**      8/1/2017 3:15:37 PM
**Subject:**   FW: New Note Created On File: REDACTED_ _ REDACTED

Christian please call client and offer her a full refund for all of her payments. (confirm her mailing address so I can write her a check) Just tell her the program went away or something and Monique will go over her options with her. Then transfer her to Monique and let Monique give her her options moving forward. We will fix the file for free this year.

**From:** monique@premierstudentloancenter.com [mailto:monique@premierstudentloancenter.com]
**Sent:** Tuesday, August 1, 2017 10:36 AM
**To:** tom@premierstudentloancenter.com
**Subject:** New Note Created On File: REDACTED_ _ REDACTED

Note Type: General
Entered By: Monique Washington
Notified: tom@premierstudentloancenter.com

tom, we have to cancel and refund her she was submitted as fs 9 lat year we submitted as fs 8 this year and it was denied her agi has not changed please advise

CONFIDENTIAL by designation of the CFPB

Plaintiffs' Exhibit 2.47

# Exhibit 48

CFPB-20220119-00004654

**From:** tom@premierstudentloancenter.com
**To:** cstark@premierstudentloancenter.com
**CC:** monique@premierstudentloancenter.com; jnuqui@premierstudentloancenter.com
**Sent:** 7/26/2017 5:35:59 PM
**Subject:** FW: New Note Created On File: REDACTED - - REDACTED

Christian please call client and let client know we aren't able to get him the quoted amount because his income came back too high. Therefore we are going to refund the clients money and complete the file for free.
After you refund the money, tell Jonathan to call client and go over with the client his options with his correct family size. Jonathan please submit whichever program the client wants to be placed in. We are only going to charge him for the recert fees. Let client know.

tom

**From:** jnuqui@premierstudentloancenter.com [mailto:jnuqui@premierstudentloancenter.com]
**Sent:** Wednesday, July 26, 2017 1:59 PM
**To:** tom@premierstudentloancenter.com
**Subject:** New Note Created On File: REDACTED - - REDACTED

Note Type: Sales
Entered By: Jonathan Nuqui
Notified: aaron@premierstudentloancenter.com, monique@premierstudentloancenter.com, tom@premierstudentloancenter.com

Clients recalculation application has been denied because he went from a family size of 1 to 4. Fed loans is requiring proof of the jump of the family size.

Pls.' Ex. 2.47
P. 289

CONFIDENTIAL by designation of the CFPB

Plaintiffs' Exhibit 2.48

# Exhibit 49

CFPB-20220119-00004656

| | |
|---|---|
| **From:** | tom@premierstudentloancenter.com |
| **To:** | 'Christian Stark' |
| **Sent:** | 8/12/2017 5:40:50 PM |
| **Subject:** | RE: New Note Created On File: REDACTED(Premier Plus) - - REDACTED |

Yah offer him a full refund. I don't know why Rachel used FS of 3 when he only makes $17,000 a year.

**From:** Christian Stark [mailto:cstark@premierstudentloancenter.com]
**Sent:** Saturday, August 12, 2017 2:37 PM
**To:** tom@premierstudentloancenter.com
**Subject:** Re: New Note Created On File: REDACTED(Premier Plus) - - REDACTED

I'll call him, but I thought we offer a  full refund to everyone who figures out family size? He'll just make a complaint if I don't offer his money back

Sent from my iPhone

On Aug 12, 2017, at 4:25 PM, <tom@premierstudentloancenter.com> <tom@premierstudentloancenter.com> wrote:

Please call client asap and apologize. Refund if necessary. Confirm his mailing address.

**From:** salavila@premierstudentloancenter.com [mailto:salavila@premierstudentloancenter.com]
**Sent:** Saturday, August 12, 2017 9:47 AM
**To:** tom@premierstudentloancenter.com
**Subject:** New Note Created On File: REDACTED    (Premier Plus) - - REDACTED

Note Type: Sales
Entered By: Sal Avila
Notified: monique@premierstudentloancenter.com, tom@premierstudentloancenter.com

fedloan called him and told him we used a family of 3 when he is single so he stopped payment us and did his own recert

Pls.' Ex. 2.48
P. 292

CONFIDENTIAL by designation of the CFPB

CFPB-20211007-00000321
CFPB-20220119-00004657

Plaintiffs' Exhibit 2.49

# Exhibit 50

CFPB-20220119-00004658

| | |
|---|---|
| **From:** | tom@premierstudentloancenter.com |
| **To:** | frank@premierstudentloancenter.com |
| **Sent:** | 9/30/2017 6:17:18 PM |
| **Subject:** | RE: New Note Created On File: REDACTED - - REDACTED |

We have been trying to call him to offer him a refund. Christian and I called him twice already. Were u able to reach him?

**From:** frank@premierstudentloancenter.com [mailto:frank@premierstudentloancenter.com]
**Sent:** Saturday, September 30, 2017 1:39 PM
**To:** tom@premierstudentloancenter.com
**Subject:** New Note Created On File: REDACTED - - REDACTED

Note Type: General
Entered By: Frank Hernandez
Notified: monique@premierstudentloancenter.com, tom@premierstudentloancenter.com

Should we just cancel this guy out and refund him? He was really rude at the fact that his payments can go up and last year we gave him a $0.00 using family size of 9.......

Pls.' Ex. 2.49
P. 295

CONFIDENTIAL by designation of the CFPB

CFPB-20211007-00000322
CFPB-20220119-00004659

Plaintiffs' Exhibit 2.50

# Exhibit 51

CFPB-20220119-00004660

| | |
|---|---|
| **From:** | tom@premierstudentloancenter.com |
| **To:** | monique@premierstudentloancenter.com |
| **CC:** | asarmadi@premierstudentloancenter.com; aaron@premierstudentloancenter.com |
| **Sent:** | 8/16/2017 2:36:57 AM |
| **Subject:** | RE: New Note Created On File: REDACTED _ _ REDACTED |

We refunded her old file because it was denied for FS. Only complete this file with true FS so we don't have to do it for free again this year. Looks like she makes $50,000. We can only help her with the true quoted amount. Antonio please resell her or else we are going to cancel her. I paused the payment for now.

**From:** monique@premierstudentloancenter.com [mailto:monique@premierstudentloancenter.com]
**Sent:** Tuesday, August 15, 2017 9:10 PM
**To:** tom@premierstudentloancenter.com
**Subject:** New Note Created On File: REDACTED _ _ REDACTED

Note Type: General
Entered By: Monique Washington
Notified: asarmadi@premierstudentloancenter.com, tom@premierstudentloancenter.com

tom be advised this is a duplicate file..client was enrolled

Pls.' Ex. 2.50
P. 298

CONFIDENTIAL by designation of the CFPB

CFPB-20211007-00000323
CFPB-20220119-00004661

Plaintiffs' Exhibit 2.51

# Exhibit 52

CFPB-20220119-00004662

| | |
|---|---|
| **From:** | tom@premierstudentloancenter.com |
| **To:** | jnuqui@premierstudentloancenter.com |
| **Sent:** | 9/20/2017 5:13:55 PM |
| **Subject:** | FW: REDACTED |

Please change everything back to clients address with servicer. We are going to refund her money and cancel her out.

Regards,

Tom

**From:** cstark@premierstudentloancenter.com [mailto:cstark@premierstudentloancenter.com]
**Sent:** Wednesday, September 20, 2017 2:12 PM
**To:** tom@premierstudentloancenter.com
**Subject:** REDACTED

Client spoke with fed loans and they informed her of the family size we had input on her application. Client is not too upset. I am unable to refund her through group ISO. Please issue refund via check. The address on her file is a verified mailing address.
Please call me with any questions. Thanking you in advance.

*Christian Stark*
# PREMIER STUDENT LOAN CENTER
Direct 949-202-1218
**Toll Free 888-548-0476**
**Fax number** 888-302-3033
cstark@premierstudentloancenter.com
**www.premierstudentloancenter.com**
http://www.ibrinfo.org/what.vp.html

**\*\*\*\*\* Email confidentiality notice \*\*\*\*\***

CONFIDENTIALITY STATEMENT: The information contained in this electronic transmission, and any attachments, may contain CONFIDENTIAL information. The information is intended only for use by the addressee named above. Any unauthorized use, disclosure, dissemination or copying of the contents of the information and any attachments contained in this electronic transmission is strictly prohibited. If you are not the intended addressee, please notify the sender immediately and delete this message.

Pls.' Ex. 2.51
P. 301

CONFIDENTIAL by designation of the CFPB

Plaintiffs' Exhibit 2.52

# Exhibit 53

CFPB-20220119-00004664

**From:**      tom@premierstudentloancenter.com
**To:**        cstark@premierstudentloancenter.com
**Sent:**      8/31/2017 4:25:09 PM
**Subject:**   FW: New Note Created On File: REDACTED - - REDACTED

Christian please call this client and refund him all of his money. Let him know he makes too much money currently and doesn't qualify for the $0 IBR plan.
**From:** monique@premierstudentloancenter.com [mailto:monique@premierstudentloancenter.com]
**Sent:** Thursday, August 31, 2017 10:20 AM
**To:** tom@premierstudentloancenter.com
**Subject:** New Note Created On File: REDACTED - - REDACTED

Note Type: General
Entered By: Monique Washington
Notified: cvance@premierstudentloancenter.com, tom@premierstudentloancenter.com


tom, denied due to fs please advise, paused payments

Pls.' Ex. 2.52
P. 304

CONFIDENTIAL by designation of the CFPB

CFPB-20211007-00000325
CFPB-20220119-00004665

Plaintiffs' Exhibit 2.53

# Exhibit 54

CFPB-20220119-00004666

| | |
|---|---|
| **From:** | Tom |
| **To:** | cstark@premierstudentloancenter.com; monique@premierstudentloancenter.com |
| **Sent:** | 9/5/2017 1:22:53 PM |
| **Subject:** | Fwd: New Note Created On File: REDACTED - - REDACTED |

Christian please call and try to resell
If you cant refund his money and cancel him out

Thanks

Sent from my iPhone

Begin forwarded message:

**From:** monique@premierstudentloancenter.com
**Date:** September 5, 2017 at 10:13:32 AM PDT
**To:** tom@premierstudentloancenter.com
**Subject: New Note Created On File:** REDACTED - - REDACTED

Note Type: General
Entered By: Monique Washington
Notified: jmcknight@premierstudentloancenter.com, tom@premierstudentloancenter.com

family size was denied, please advise his real family size is 1...

Pls.' Ex. 2.53
P. 307

CONFIDENTIAL by designation of the CFPB

CFPB-20211007-00000326
CFPB-20220119-00004667

Plaintiffs' Exhibit 2.54

# Exhibit 55

CFPB-20220119-00004668

| | |
|---|---|
| **From:** | tom@premierstudentloancenter.com |
| **To:** | monique@premierstudentloancenter.com |
| **CC:** | cstark@premierstudentloancenter.com |
| **Sent:** | 12/14/2017 9:41:34 PM |
| **Subject:** | RE: New Note Created On File: REDACTED (Premier Plus) - - REDACTED |

Christian please call client and offer her a full refund. For the PP payments and her enrollment fees. (confirm her mailing address so I can mail her a full refund check.) Let her know the programs changed and she only qualifies for a $315 payment a month based on her current income and with a FS of 5. We can do that for free if she agrees. Monique does she really have a FS of 5? We need to submit her file correctly this time. Back out all of Aaron Acostas commissions for this client.

Tom

**From:** monique@premierstudentloancenter.com [mailto:monique@premierstudentloancenter.com]
**Sent:** Thursday, December 14, 2017 9:04 AM
**To:** tom@premierstudentloancenter.com
**Subject:** New Note Created On File: REDACTED (Premier Plus) - - REDACTED

Note Type: General
Entered By: Monique Washington
Notified: tom@premierstudentloancenter.com

tom what do you want us to do with this client, we submitted her with 9 it was denied she needs to be resold with fs 5? what do we tell her?

Pls.' Ex. 2.54
P. 310

CONFIDENTIAL by designation of the CFPB

CFPB-20211007-00000327
CFPB-20220119-00004669

Plaintiffs' Exhibit 2.55

# Exhibit 56

CFPB-20220119-00004670

**From:** tom@premierstudentloancenter.com
**To:** monique@premierstudentloancenter.com
**Sent:** 9/5/2017 5:33:33 PM
**Subject:** RE: New Note Created On File: REDACTED - - REDACTED

We will refund all her money and fix the file for free. Just tell her the government rules changed and she makes more money. Please give her a call and confirm her mailing address and I will send her a full refund check.

**From:** monique@premierstudentloancenter.com [mailto:monique@premierstudentloancenter.com]
**Sent:** Tuesday, September 5, 2017 1:39 PM
**To:** tom@premierstudentloancenter.com
**Subject:** FW: New Note Created On File: REDACTED - - REDACTED

Please advise

**From:** frank@premierstudentloancenter.com [mailto:frank@premierstudentloancenter.com]
**Sent:** Tuesday, September 5, 2017 1:20 PM
**To:** monique@premierstudentloancenter.com
**Subject:** New Note Created On File: REDACTED - - REDACTED

Note Type: General
Entered By: Frank Hernandez
Notified: monique@premierstudentloancenter.com, tom@premierstudentloancenter.com

This client was submitted last year to Fed Loans using a family size of 6 and the family size was denied, we wrote LOE and client found the LOE and was concerned about the fake letter so we did the fix with real family size at 3 and then it was approved for $46 with AGI at $50,000, clients income for this year is at $70,000 making payments increase to $279 now client is concerned why the payments were so high now. I do not know what to tell this client, we already used a fake family size, fake family size letter and she found out. Please advise.

Pls.' Ex. 2.55
P. 313

CONFIDENTIAL by designation of the CFPB

CFPB-20211007-00000328
CFPB-20220119-00004671

Plaintiffs' Exhibit 2.56

# Exhibit 57

CFPB-20220119-00004672

| | |
|---|---|
| **From:** | tom@premierstudentloancenter.com |
| **To:** | monique@premierstudentloancenter.com |
| **Sent:** | 9/1/2017 4:21:27 PM |
| **Subject:** | RE: New Note Created On File: REDACTED - - REDACTED |

Please have processor call her and tell her we will only charge her to complete the rehab to get out of default but she wont qualify for any loan forgiveness. (She has made two payments and we wont charge her any further if she just does the rehab) If client doesn't agree we will refund and cancel her out.

Tom

**From:** cstark@premierstudentloancenter.com [mailto:cstark@premierstudentloancenter.com]
**Sent:** Friday, September 1, 2017 11:08 AM
**To:** pkelman@premierstudentloancenter.com
**Cc:** tom@premierstudentloancenter.com
**Subject:** FW: New Note Created On File: REDACTED  - - REDACTED

Victoria submitted this file with a family size of 8. And it was denied, this deal was pretty recent and a fam size of 8 is not acceptable. Please talk to her about this.

**From:** monique@premierstudentloancenter.com [mailto:monique@premierstudentloancenter.com]
**Sent:** Friday, September 1, 2017 10:47 AM
**To:** cstark@premierstudentloancenter.com
**Subject:** New Note Created On File: REDACTED    - - REDACTED

Note Type: General
Entered By: Monique Washington
Notified: cstark@premierstudentloancenter.com, tom@premierstudentloancenter.com

tom, we can only help her on her rehab, fs was denied. please advise

CONFIDENTIAL by designation of the CFPB

Plaintiffs' Exhibit 2.57

# Exhibit 58

CFPB-20220119-00004674

**From:**      tom@premierstudentloancenter.com
**To:**        cstark@premierstudentloancenter.com
**CC:**        frank@premierstudentloancenter.com; monique@premierstudentloancenter.com
**Sent:**      11/6/2017 4:35:32 PM
**Subject:**   FW: New Note Created On File: REDACTED    -- REDACTED

Christian please call client asap and offer him a full refund and apologize for the clerical error.

**From:** frank@premierstudentloancenter.com [mailto:frank@premierstudentloancenter.com]
**Sent:** Monday, November 6, 2017 1:04 PM
**To:** tom@premierstudentloancenter.com
**Subject:** New Note Created On File: REDACTED     -- REDACTED

Note Type: Sales
Entered By: Frank Hernandez
Notified: mmarasch@premierstudentloancenter.com, monique@premierstudentloancenter.com,
tom@premierstudentloancenter.com

Client called Fed Loans and they went over his application and they found out about his Family Size increase. What should we do moving forward? He was a problem in the beginning and asked a bunch of questions and I knew this was going to happen with him. Someone needs to reach out to him ASAP.

Pls.' Ex. 2.57
P. 319

CONFIDENTIAL by designation of the CFPB

CFPB-20211007-00000330
CFPB-20220119-00004675

Plaintiffs' Exhibit 2.58

# Exhibit 59

CFPB-20220119-00004676

| From: | tom@premierstudentloancenter.com |
| To: | frank@premierstudentloancenter.com |
| CC: | cstark@premierstudentloancenter.com |
| Sent: | 12/21/2017 4:38:00 PM |
| Subject: | FW: New Note Created On File: REDACTEDPREMIER PLUS - - REDACTED |

Christian please resolve and offer a full refund if necessary.

Tom

**From:** frank@premierstudentloancenter.com [mailto:frank@premierstudentloancenter.com]
**Sent:** Thursday, December 21, 2017 1:36 PM
**To:** tom@premierstudentloancenter.com
**Subject:** New Note Created On File: REDACTEDPREMIER PLUS - -REDACTED

Note Type: Sales
Entered By: Frank Hernandez
Notified: cstark@premierstudentloancenter.com, monique@premierstudentloancenter.com,
tom@premierstudentloancenter.com

This client called in upset because he is now figuring out that we only send 1 application in each year and is quiestioning why he is paying us for a 1 application thing, went over how as of now it is 1 application because he is unemployed but other docs are needed, and he started pointing out how he is the one who calls us to remind us when its time to re-certify when in reality we call him as scheduled however Navient sends him a reminder as well a month before us making it seem like we are not doing what we are supposed to be doing, client wants to cancel moving forward, did not request any refund.

He is requesting all documentation submitted on his behalf as well,and I do not know what to send him, I think he spoke to Navient and knows we upped the family size.

CONFIDENTIAL by designation of the CFPB

CFPB-20211007-00000331
CFPB-20220119-00004677

Plaintiffs' Exhibit 2.59

# Exhibit 60

CFPB-20220119-00004678

**From:**      tom@premierstudentloancenter.com
**To:**        thuq@premierstudentloancenter.com
**Sent:**      3/21/2018 3:51:04 PM
**Subject:**   FW: New Note Created On File: REDACTED. - REDACTED


Please write out and mail refund check.

Tom

**From:** cstark@slaccountmgmt.com
**Sent:** Wednesday, March 21, 2018 11:45 AM
**To:** tom@premierstudentloancenter.com
**Subject:** New Note Created On File: REDACTED- - REDACTED

Note Type: General
Entered By: Christian Stark
Notified: tom@premierstudentloancenter.com


Please send a check in the amount of $1,259.00 due to FS issues. I verified clients mailing address.

REDACTED
Asheville, NC REDACTED

Pls.' Ex. 2.59
P. 325

CONFIDENTIAL by designation of the CFPB

CFPB-20211007-00000332
CFPB-20220119-00004679

Plaintiffs' Exhibit 2.60

# Exhibit 61

CFPB-20220119-00004680

| | |
|---|---|
| **From:** | tom@premierstudentloancenter.com |
| **To:** | thuq@premierstudentloancenter.com |
| **Sent:** | 4/5/2018 4:05:09 AM |
| **Subject:** | FW: New Note Created On File: REDACTED( REDACTED) - - REDACTED |

Please write out refund check

**From:** cstark@slaccountmgmt.com
**Sent:** Wednesday, April 4, 2018 11:34 AM
**To:** tom@premierstudentloancenter.com
**Subject:** New Note Created On File: REDACTED    ( REDACTED) - - REDACTED

Note Type: General
Entered By: Christian Stark
Notified: tom@premierstudentloancenter.com

Please send a refund check in the amount of $1,229.00. Navient told the client how she can look at what we submitted on her behalf through their website. Client knows that we filed the wrong FS twice. She is ok with a full refund. I verified her mailing address below.

REDACTED
Shakopee, MN REDACTED

Pls.' Ex. 2.60
P. 328

CONFIDENTIAL by designation of the CFPB

Plaintiffs' Exhibit 2.61

# Exhibit 62

CFPB-20220119-00004682

| | |
|---|---|
| **From:** | tom@premierstudentloancenter.com |
| **To:** | aaron@premierstudentloancenter.com |
| **CC:** | cstark@premierstudentloancenter.com |
| **Sent:** | 3/12/2018 6:39:11 PM |
| **Subject:** | RE: New Note Created On File: REDACTED - - REDACTEDPlz handle this for me, or advise me how I should handle it and I will. |

Christian please call client to resolve the matter. Apologize for the clerical error and offer a full refund. Let her know we can fix her file for free if she wants.

Tom

**From:** aaron@premierstudentloancenter.com
**Sent:** Monday, March 12, 2018 3:38 PM
**To:** tom@premierstudentloancenter.com
**Subject:** FW: New Note Created On File: REDACTED - - REDACTEDPlz handle this for me, or advise me how I should handle it and I will.

Hello Tom,

Plz handle this for me or advise me how I should handle it and I will.

Ty so much.

**From:** fhernandez@slaccountmgmt.com <fhernandez@slaccountmgmt.com>
**Sent:** Monday, March 12, 2018 3:20 PM
**To:** aaron@premierstudentloancenter.com
**Subject:** New Note Created On File: REDACTED - - REDACTED

Note Type: Sales
Entered By: Frank Hernandez
Notified: aaron@premierstudentloancenter.com, monique@slaccountmgmt.com

Client called Fed Loans and they told her about Family Size of 6, she needs to speak to a manager ASAP. I told her I would call Fed Loans to see why they would have that and give her a call back. She is expecting a call soon.

CONFIDENTIAL by designation of the CFPB

Plaintiffs' Exhibit 2.62

# Exhibit 63

CFPB-20220119-00004684

**From:**    tom@premierstudentloancenter.com
**To:**      'Thu Quach'
**Sent:**    4/23/2018 3:15:51 PM
**Subject:**  FW: New Note Created On File: REDACTED - - REDACTED

Please write out refund check

**From:** cstark@slaccountmgmt.com
**Sent:** Monday, April 23, 2018 11:02 AM
**To:** tom@premierstudentloancenter.com
**Subject:** New Note Created On File: REDACTED  - - REDACTED

Note Type: General
Entered By: Christian Stark
Notified: tom@premierstudentloancenter.com

Please send a refund check to client in the amount of $956.00 due to FS error. Client verified mailing address is below.

REDACTED
Liverpool, NY REDACTED

CONFIDENTIAL by designation of the CFPB

Plaintiffs' Exhibit 2.63

# Exhibit 64

CFPB-20220119-00004686

**From:** tom@premierstudentloancenter.com
**To:** thuq@premierstudentloancenter.com
**Sent:** 3/31/2018 1:48:04 AM
**Subject:** FW: New Note Created On File: REDACTED - - REDACTED

Please write refund check.

**From:** cstark@slaccountmgmt.com
**Sent:** Friday, March 30, 2018 3:06 PM
**To:** tom@premierstudentloancenter.com
**Subject:** New Note Created On File: REDACTED - - REDACTED

Note Type: General
Entered By: Christian Stark
Notified: tom@premierstudentloancenter.com

Please send a refund check in the amount of $1,039 due to FS issues. I verified clients mailing address below. Client is satisfied with resolution.

REDACTED

Centerville, TX REDACTED

Pls.' Ex. 2.63
P. 337

CFPB-20211007-00000336
CFPB-20220119-00004687

Plaintiffs' Exhibit 2.64

# Exhibit 65

CFPB-20220119-00004688

| | |
|---|---|
| **From:** | Tom Nguyen |
| **To:** | thuq@premierstudentloancenter.com |
| **CC:** | albert@premierstudentloancenter.com; 'Kaine Wen' |
| **Sent:** | 9/11/2018 5:10:11 PM |
| **Subject:** | FW: New Note Created On File: REDACTED -- REDACTED |

Thu write refund check.

Tom

**From:** cstark@slaccountmgmt.com
**Sent:** Tuesday, September 11, 2018 2:07 PM
**To:** tom@premierstudentloancenter.com
**Subject:** New Note Created On File: REDACTED -- REDACTED

Note Type: General
Entered By: Christian Stark
Notified: chargeback@premierstudentloancenter.com, tom@premierstudentloancenter.com

Please send a refund check in the amount of $1,169.00 to clients verified mailing address below. Client caught FS errors and wrote a negative review on Premiers BBB in regards to FS errors.

REDACTED
Tampa, FL REDACTED

CONFIDENTIAL by designation of the CFPB

CFPB-20211007-00000337
CFPB-20220119-00004689

Plaintiffs' Exhibit 2.65

# Exhibit 66

CFPB-20220119-00004690

| | |
|---|---|
| **From:** | Tom Nguyen |
| **To:** | thuq@premierstudentloancenter.com |
| **Sent:** | 8/29/2018 3:14:09 PM |
| **Subject:** | FW: New Note Created On File: REDACTED - - REDACTED |

Write refund check

**From:** cstark@slaccountmgmt.com
**Sent:** Wednesday, August 29, 2018 12:04 PM
**To:** tom@premierstudentloancenter.com
**Subject:** New Note Created On File: REDACTED - - REDACTED

Note Type: General
Entered By: Christian Stark
Notified: chargeback@premierstudentloancenter.com, tom@premierstudentloancenter.com

Please send a refund check in the amount of $1, 235.00 to clients verified address below. Client caught family size errors on application.

REDACTED
Riverdale, GA REDACTED

CONFIDENTIAL by designation of the CFPB

CFPB-20211007-00000338
CFPB-20220119-00004691

Plaintiffs' Exhibit 2.66

# Exhibit 67

CFPB-20220119-00004692

**From:** Tom Nguyen
**To:** thuq@premierstudentloancenter.com
**Sent:** 8/22/2018 2:24:20 PM
**Subject:** FW: New Note Created On File: REDACTED  -- REDACTED

Write refund check

**From:** cstark@slaccountmgmt.com
**Sent:** Wednesday, August 22, 2018 10:04 AM
**To:** tom@premierstudentloancenter.com
**Subject:** New Note Created On File: REDACTED   -- REDACTED

Note Type: General
Entered By: Christian Stark
Notified: chargeback@premierstudentloancenter.com, tom@premierstudentloancenter.com

Please send a refund check in the amount of $689.75 to clients verified address. Client caught family size errors on his account and figured we'd use the same information on his wife's account. Client is satisfied with outcome.

REDACTED
Ammon, ID REDACTED

CONFIDENTIAL by designation of the CFPB

CFPB-20211007-00000339
CFPB-20220119-00004693

Plaintiffs' Exhibit 2.67

# Exhibit 68

CFPB-20220119-00004694

| | |
|---|---|
| **From:** | Tom Nguyen |
| **To:** | thuq@premierstudentloancenter.com |
| **Sent:** | 8/29/2018 5:35:15 PM |
| **Subject:** | FW: New Note Created On File: REDACTED _ _ REDACTED |

Write refund check

**From:** cstark@slaccountmgmt.com
**Sent:** Wednesday, August 29, 2018 12:53 PM
**To:** tom@premierstudentloancenter.com
**Subject:** New Note Created On File: REDACTED _ _ REDACTED

Note Type: General
Entered By: Christian Stark
Notified: chargeback@premierstudentloancenter.com, tom@premierstudentloancenter.com

Please send a refund check in the amount of $1,109.00 to clients verified mailing address below. Client caught family size errors.

REDACTED
Madison, TN REDACTED

CONFIDENTIAL by designation of the CFPB

Plaintiffs' Exhibit 2.68

# Exhibit 69

CFPB-20220119-00004696

| | |
|---|---|
| **From:** | Tom Nguyen |
| **To:** | thuq@premierstudentloancenter.com |
| **Sent:** | 8/28/2018 3:17:39 PM |
| **Subject:** | FW: New Note Created On File: REDACTED - - REDACTED |

Write refund check

**From:** cstark@slaccountmgmt.com
**Sent:** Tuesday, August 28, 2018 12:17 PM
**To:** tom@premierstudentloancenter.com
**Subject:** New Note Created On File: REDACTED - - REDACTED

Note Type: General
Entered By: Christian Stark
Notified: chargeback@premierstudentloancenter.com, tom@premierstudentloancenter.com

Please send a refund check in the amount on $1, 235.00 to clients verified mailing address below. FS errors caught on account.

REDACTED
Brooklyn, NY REDACTED

Pls. Ex. 2.68
P. 352

CONFIDENTIAL by designation of the CFPB

CFPB-20211007-00000341
CFPB-20220119-00004697

Plaintiffs' Exhibit 2.69

# Exhibit 70

CFPB-20220119-00004698

**From:** tom@premierstudentloancenter.com
**To:** jboylan@premierstudentloancenter.com
**Sent:** 5/11/2017 9:29:45 PM
**Subject:** Letter of Explanation for Family Size
**Attachments:** Letter of Explanation template.docx

Please have <sup>REDACTED</sup> fill out this document and scan and email it back to you. Then give it to a processor and have them resubmit the file with the letter. Thanks.

Tom

CFPB-20211022-00000001
CFPB-20220119-00004699

Date

**Fedloan Servicing**

Re: Letter of Explanation for Account #
Name-
SSN-
DOB-

To Whom It May Concern:

My name is        and this is my Letter of Explanation in regards to my Income Driven Repayment Plan application.

On my initial application to consolidate my student loans, I misunderstood "family size" to be the equivalent of "dependents" (as reported on my income tax returns). I am now aware that "family size" refers to individuals that I support on a regular financial basis.

Here is a full list of the individuals that I am supporting on a regular financial basis:

1.
2.
3.
4.
5.
6.

Please do let me know if I have made any errors in determining my actual "family size". If you have any further questions, feel free to contact me by mail. Thank you in advance.

Warm Regards,

CFPB-20211022-00000002
CFPB-20220119-00004700

Plaintiffs' Exhibit 2.70

# Exhibit 71

CFPB-20220119-00004701

| | |
|---|---|
| **From:** | tom@premierstudentloancenter.com |
| **To:** | monique@premierstudentloancenter.com |
| **Sent:** | 4/11/2017 3:36:14 PM |
| **Subject:** | FW: Premier Student Loan Center |
| **Attachments:** | student loan letter 4.11.17.pdf |

**From:** REDACTED [mailto:REDACTED |
**Sent:** Tuesday, April 11, 2017 12:32 PM
**To:** Tom Nelson
**Subject:** Re: Premier Student Loan Center

Here's the signed letter.

**From:** Tom Nelson <tom@premierstudentloancenter.com>
**Sent:** Monday, April 10, 2017 7:13 PM
**To:** REDACTED
**Subject:** Premier Student Loan Center

Hello REDACTED ,

I have attached the letter for Family Size that needs to be submitted to Fedloans with your application. Please review and fill it out. Sign it then scan and email it back to me. If you have any questions, feel free to email or call me at 949 207 1025.

Regards,

Tom Nelson

CONFIDENTIAL by designation of the CFPB

Date 4/10/17

**Fedloan Servicing**

Re: Letter of Explanation for Account #
Name- REDACTED
SSN- REDACTED
DOB- REDACTED 1974

To Whom It May Concern:

My name is REDACTED and this is my Letter of Explanation in regards to my Income Driven Repayment Plan application.

On my initial application to consolidate my student loans, I misunderstood "family size" to be the equivalent of "dependents" (as reported on my income tax returns). I am now aware that "family size" refers to individuals that I support on a regular financial basis.

Here is a full list of the individuals that I am supporting on a regular financial basis:

1. REDACTED
2.
3.
4.
5.
6.

Please do let me know if I have made any errors in determining my actual "family size". If you have any further questions, feel free to contact me by mail. Thank you in advance.

Warm Regards, REDACTED
REDACTED

CONFIDENTIAL by designation of the CFPB

Plaintiffs' Exhibit 2.71

# Exhibit 72

CFPB-20220119-00004704

| | |
|---|---|
| **From:** | tom@premierstudentloancenter.com |
| **To:** | albert@premierstudentloancenter.com |
| **Sent:** | 10/3/2016 6:00:04 PM |
| **Subject:** | RE: REDACTED |

He still needs to be requited with a FS of 9. He makes $77000 He told Pierre he makes $50,000.

---

**From:** albert@premierstudentloancenter.com [mailto:albert@premierstudentloancenter.com]
**Sent:** Monday, October 3, 2016 2:59 PM
**To:** tom@premierstudentloancenter.com
**Subject:** RE: REDACTED

Just continue with app. This was before we started the max 7 FS.

*Albert King*
# PREMIER STUDENT LOAN CENTER

Direct 949-207-1018
**Toll Free 888-548-0476**
**Fax number 888-302-3033**
albert@premierstudentloancenter.com
**www.premierstudentloancenter.com**
http://www.whitehouse.gov/issues/education/higher-education/ensuring-that-student-loans-are-affordable
http://www.bbb.org/sdoc/business-reviews/legal-document-assistance/premier-student-loan-center-in-rancho-santa-margarita-ca-172013295/

***** Email confidentiality notice *****

CONFIDENTIALITY STATEMENT: The information contained in this electronic transmission, and any attachments, may contain CONFIDENTIAL information. The information is intended only for use by the addressee named above. Any unauthorized use, disclosure, dissemination or copying of the contents of the information and any attachments contained in this electronic transmission is strictly prohibited. If

---

**From:** tom@premierstudentloancenter.com [mailto:tom@premierstudentloancenter.com]
**Sent:** Monday, October 3, 2016 2:43 PM
**To:** ALBERT@PREMIERSTUDENTLOANCENTER.COM; pkelman@premierstudentloancenter.com
**Cc:** frank@premierstudentloancenter.com
**Subject:** FW: REDACTED

Albert you or Pierre need to call client to resell. He makes too much money. Otherwise we are going to have to cancel him out and refund his money. Thanks

---

**From:** frank@premierstudentloancenter.com [mailto:frank@premierstudentloancenter.com]
**Sent:** Monday, October 3, 2016 2:29 PM
**To:** tom@premierstudentloancenter.com
**Subject:** REDACTED

I have tried getting a hold if this client ever since he enrolled and he never got back to me, I was attempting to submit his file any way but he needs to be re-quoted. What should we do?

*Frank Hernandez*
# PREMIER STUDENT LOAN CENTER

Direct 949-207-1079
**Toll Free 888-548-0476**
**Fax number 888-302-3033**
frank@premierstudentloancenter.com

Pls.' Ex. 2.71
P. 363

CONFIDENTIAL by designation of the CFPB

www.premierstudentloancenter.com
http://www.whitehouse.gov/issues/education/higher-education/ensuring-that-student-loans-are-affordable
http://www.bbb.org/sdoc/business-reviews/legal-document-assistance/premier-student-loan-center-in-rancho-santa-margarita-ca-172013295/

***** Email confidentiality notice *****

CONFIDENTIALITY STATEMENT: The information contained in this electronic transmission, and any attachments, may contain CONFIDENTIAL information. The information is intended only for use by the addressee named above. Any unauthorized use, disclosure, dissemination or copying of the contents of the information and any attachments contained in this electronic transmission is strictly prohibited. If you are not the intended addressee, please notify the sender immediately and delete this message.

Pls.' Ex. 2.71
P. 364

CONFIDENTIAL by designation of the CFPB

CFPB-20211007-00000132
CFPB-20220119-00004706

Plaintiffs' Exhibit 2.72

# Exhibit 73

CFPB-20220119-00004707

| | |
|---|---|
| **From:** | tom@premierstudentloancenter.com |
| **To:** | monique@premierstudentloancenter.com; jboylan@premierstudentloancenter.com; pkelman@premierstudentloancenter.com |
| **CC:** | 'Albert Kim'; 'Kaine Wen' |
| **Sent:** | 1/23/2018 12:45:06 AM |
| **Subject:** | RE: Files |

Hello Joseph and Pierre,

This is getting ridiculous guys. **I thought sales managers are supposed to review the agents submissions before the file is submitted. (Especially new sales agents)** We need a game plan to have a long term solution. It is wasting everyone's time. I thought it was addressed already. We already have customer service review their enrollment plans for the salesman and now Monique has to do quality control when it should be the sales managers job.

Tom

**From:** monique@premierstudentloancenter.com [mailto:monique@premierstudentloancenter.com]
**Sent:** Monday, January 22, 2018 9:32 PM
**To:** jboylan@premierstudentloancenter.com; pkelman@premierstudentloancenter.com
**Cc:** 'Albert Kim' ; tom@premierstudentloancenter.com
**Subject:** Files
**Importance:** High

Joseph,
Please send out an email regarding family size requirements. Your agents are using family sizes of 8,9 and 10! I know we spoke today on whether it was real fs or not and still sticking to 6 and 7 however 3 files same day pay so far and improper family sizes.. Please address asap

*Monique Washington*
# PREMIER STUDENT LOAN CENTER
Direct 949-207-1009
**Toll Free 888-548-0476**
**Fax number 1-888-761-5678**
Monique@premierstudentloancenter.com
www.premierstudentloancenter.com

***** Email confidentiality notice *****
CONFIDENTIALITY STATEMENT: The information contained in this electronic transmission, and any attachments, may contain CONFIDENTIAL information. The information is intended only for use by the addressee named above. Any unauthorized use, disclosure, dissemination or copying of the contents of the information and any attachments contained in this electronic transmission is strictly prohibited. If you are not the intended addressee, please notify the sender immediately and delete this message.

Plaintiffs' Exhibit 2.73

# Exhibit 74

CFPB-20220119-00004709

**To:** Joseph Boylan[jboylan@financialpreparationservices.com]; Calvin Ho[calvin@financialpreparationservices.com]; Advisor[advisor@financialpreparationservices.com]; Kaine Wen[kwen@slaccountmgmt.com]
**From:** Tom Nguyen
**Sent:** Tue 4/16/2019 11:59:48 PM
**Importance:** Normal
**Subject:** Sales Call Audit
**MAIL_RECEIVED:** Tue 4/16/2019 11:59:56 PM
sales call audit.xlsx

Hello Joseph,

Please relisten to the calls I highlighted in red. **All fake FS.** Please let me know **if** I made a mistake in any of them. However I am pretty thorough in listening for the FS. I did my audit by listening to clients that has a FS of 4 or higher. These clients were enrolled on 4/15/19.

Only 4 passed for FS out of the 10 I listened to. **So 6 failed.** Please write up the salesman, and let them know this can't be happening moving forward. See my notes and let me know if you have any questions. Please think of a plan where this wont occur at such a high rate moving forward also. Thank you.

Regards,

Tom

CFPB-20211007-00000141
CFPB-20220119-00004710

| Full Name | State | Next Payment Date | Payments | Balance | Enrolled Date | REDACTED | FS | Compliance Question |
|---|---|---|---|---|---|---|---|---|
| REDACTED | KY | 26-Apr-19 | 0 | 0 | 15-Apr-19 | | ok | ok |
| | LA | 25-Apr-19 | 0 | 0 | 15-Apr-19 | | | |
| | CA | 27-Apr-19 | 0 | 0 | 15-Apr-19 | | ok | ok |
| | WA | 22-Apr-19 | 0 | 0 | 15-Apr-19 | | | |
| | MI | 27-Apr-19 | 0 | 0 | 15-Apr-19 | | | |
| | TX | 23-Apr-19 | 0 | 0 | 15-Apr-19 | | | |
| | | | | | | | | |
| | NV | 26-Apr-19 | 0 | 0 | 15-Apr-19 | | | |
| | | | | | | | | |
| | MI | 16-Apr-19 | 0 | 0 | 15-Apr-19 | | | |
| | UT | 22-Apr-19 | 0 | 0 | 15-Apr-19 | | ok | ok |
| | TX | 19-Apr-19 | 0 | 0 | 15-Apr-19 | | | |
| | | | | | | | | |
| | KY | 15-May-19 | 1 | 0 | 15-Apr-19 | | | |
| | | | | | | | | |
| | CO | 27-Apr-19 | 0 | 0 | 15-Apr-19 | | | |
| | | | | | | | | |
| | NV | 26-Apr-19 | 0 | 0 | 15-Apr-19 | | | |
| | OH | 26-Apr-19 | 0 | 0 | 15-Apr-19 | | | |
| | NJ | 29-Apr-19 | 0 | 0 | 15-Apr-19 | | | |
| | TN | 20-Apr-19 | 0 | 0 | 15-Apr-19 | | | |
| | | | | | | | | |
| | SC | 15-May-19 | 1 | 0 | 15-Apr-19 | | | |
| | AL | 26-Apr-19 | 0 | 0 | 15-Apr-19 | | | |
| | CO | 22-Apr-19 | 0 | 0 | 15-Apr-19 | | | |
| | TN | 26-Apr-19 | 0 | 0 | 15-Apr-19 | | | |
| | FL | 15-May-19 | 1 | 0 | 15-Apr-19 | | | |
| | CA | 26-Apr-19 | 0 | 0 | 15-Apr-19 | | | |
| | NJ | 25-Apr-19 | 0 | 0 | 15-Apr-19 | | | |
| | CA | 18-Apr-19 | 0 | 0 | 15-Apr-19 | | | |
| | MO | 15-May-19 | 1 | 0 | 15-Apr-19 | | | |
| | NY | 17-Apr-19 | 0 | 0 | 15-Apr-19 | | | |
| | NJ | 26-Apr-19 | 0 | 0 | 15-Apr-19 | | | |
| | OH | 19-Apr-19 | 0 | 0 | 15-Apr-19 | | | |
| | TN | 15-May-19 | 1 | 0 | 15-Apr-19 | | | |
| | CA | 27-Apr-19 | 0 | 0 | 15-Apr-19 | | | |
| | CO | 26-Apr-19 | 0 | 0 | 15-Apr-19 | | | |
| | VA | 17-Apr-19 | 0 | 0 | 15-Apr-19 | | | |
| | MI | 15-Apr-19 | 0 | 0 | 15-Apr-19 | | | |
| | CO | 25-Apr-19 | 0 | 0 | 15-Apr-19 | | | |
| | NY | 25-Apr-19 | 0 | 0 | 15-Apr-19 | | | |
| | CO | 20-Apr-19 | 0 | 0 | 15-Apr-19 | | | |
| | KS | 26-Apr-19 | 0 | 0 | 15-Apr-19 | | | |
| | IL | 19-Apr-19 | 0 | 0 | 15-Apr-19 | | | |
| | GA | 25-Apr-19 | 0 | 0 | 15-Apr-19 | | | |
| | IL | 15-May-19 | 1 | 0 | 15-Apr-19 | | | |
| | AL | 25-Apr-19 | 0 | 0 | 15-Apr-19 | | | |
| | OK | 26-Apr-19 | 0 | 0 | 15-Apr-19 | | | |
| | OH | 19-Apr-19 | 0 | 0 | 15-Apr-19 | | | |

CFPB-20220119-00004711

Plaintiffs' Exhibit 2.74

| Full Name | State | Next Payment Date | Payments Made | Balance | Enrolled Date | Email | FS | Compliance Question |
|---|---|---|---|---|---|---|---|---|
| REDACTED | TN | 22-Apr-19 | 0 | 0 | 15-Apr-19 REDACTED | | ok | around 3 minutes of compliance questions sales agent totally lied about recert fees going towards student loans |
| | KY | 26-Apr-19 | 0 | 0 | 15-Apr-19 | | ok | ok |
| | LA | 29-Apr-19 | 0 | 0 | 15-Apr-19 | | | |
| | CA | 27-Apr-19 | 0 | 0 | 15-Apr-19 | | ok | ok |
| | WA | 22-Apr-19 | 0 | 0 | 15-Apr-19 | | | |
| | MI | 27-Apr-19 | 0 | 0 | 15-Apr-19 | | | |
| | TX | 23-Apr-19 | 0 | 0 | 15-Apr-19 | | | |
| | FL | 16-May-19 | 1 | 0 | 15-Apr-19 | | not ok client said FS is 3 agent put 5 | |
| | NY | 26-Apr-19 | 0 | 0 | 15-Apr-19 | | | |
| | TX | 22-Apr-19 | 0 | 0 | 15-Apr-19 | | not ok client said FS is 3 agent put 5 | ok |
| | MI | 18-Apr-19 | 0 | 0 | 15-Apr-19 | | ok | ok |
| | UT | 22-Apr-19 | 0 | 0 | 15-Apr-19 | | | |
| | TX | 19-Apr-19 | 0 | 0 | 15-Apr-19 | | | |
| | SC | 22-Apr-19 | 0 | 0 | 15-Apr-19 | | not ok client said FS is 3 agent put 5 | ok |
| | KY | 15-May-19 | 1 | 0 | 15-Apr-19 | | | |
| | MI | 3-May-19 | 1 | 0 | 15-Apr-19 | | not ok client said FS is 1 agent put 5 | |
| | CO | 27-Apr-19 | 0 | 0 | 15-Apr-19 | | | |
| | TX | 26-Apr-19 | 0 | 0 | 15-Apr-19 | | listen to around 31 minute of phone call salesman didn't even ask for FS..she just said highest I can go is FS is 6 and client said ok | didn't listen to compliance part |
| | NY | 29-Apr-19 | 0 | 0 | 15-Apr-19 | | | |
| | OH | 24-Apr-19 | 0 | 0 | 15-Apr-19 | | | |
| | NJ | 29-Apr-19 | 0 | 0 | 15-Apr-19 | | | |
| | TN | 26-Apr-19 | 0 | 0 | 15-Apr-19 | | | |
| | OK | 19-Apr-19 | 0 | 0 | 15-Apr-19 | | not ok client said FS of 1 agent put 4 | didn't listen to compliance part |
| | SC | 15-May-19 | 1 | 0 | 15-Apr-19 | | | |
| | AL | 26-Apr-19 | 0 | 0 | 15-Apr-19 | | | |
| | CO | 22-Apr-19 | 0 | 0 | 15-Apr-19 | | | |
| | TN | 26-Apr-19 | 0 | 0 | 15-Apr-19 | | | |
| | FL | 15-May-19 | 1 | 0 | 15-Apr-19 | | | |
| | CA | 26-Apr-19 | 0 | 0 | 15-Apr-19 | | | |
| | NJ | 25-Apr-19 | 0 | 0 | 15-Apr-19 | | | |
| | CA | 18-Apr-19 | 0 | 0 | 15-Apr-19 | | | |
| | MD | 15-May-19 | 1 | 0 | 15-Apr-19 | | | |
| | NY | 17-Apr-19 | 0 | 0 | 15-Apr-19 | | | |
| | RI | 26-Apr-19 | 0 | 0 | 15-Apr-19 | | | |
| | OH | 19-Apr-19 | 0 | 0 | 15-Apr-19 | | | |
| | TN | 15-May-19 | 1 | 0 | 15-Apr-19 | | | |
| | CA | 27-Apr-19 | 0 | 0 | 15-Apr-19 | | | |
| | CO | 26-Apr-19 | 0 | 0 | 15-Apr-19 | | | |
| | VA | 17-Apr-19 | 0 | 0 | 15-Apr-19 | | | |
| | MI | 19-Apr-19 | 0 | 0 | 15-Apr-19 | | | |
| | CO | 25-Apr-19 | 0 | 0 | 15-Apr-19 | | | |
| | NY | 25-Apr-19 | 0 | 0 | 15-Apr-19 | | | |
| | CO | 20-Apr-19 | 0 | 0 | 15-Apr-19 | | | |
| | KS | 26-Apr-19 | 0 | 0 | 15-Apr-19 | | | |
| | IL | 19-Apr-19 | 0 | 0 | 15-Apr-19 | | | |
| | GA | 25-Apr-19 | 0 | 0 | 15-Apr-19 | | | |

CFPB-20220119-00004713

REDACTED

| | | | | |
|---|---|---|---|---|
| IL | 15-May-19 | 1 | 0 | 15-Apr-19 REDACTED |
| AL | 25-Apr-19 | 0 | 0 | 15-Apr-19 |
| OK | 26-Apr-19 | 0 | 0 | 15-Apr-19 |
| OH | 19-Apr-19 | 0 | 0 | 15-Apr-19 |

CFPB-20220119-00004714

Plaintiffs' Exhibit 2.75

# Exhibit 75

CFPB-20220119-00004715

**From:** tom@premierstudentloancenter.com
**Sent:** Friday, April 13, 2018 1:54 PM
**To:** 'Albert Kim'; Monique Dinh
**CC:** 'Kaine Wen'
**Subject:** RE: Cancellation and Refund Policy

**Follow Up Flag:** Follow up
**Flag Status:** Flagged

Hello Everyone,

So to summarize if a file is submitted incorrectly, (which is in most cases, client is entitled to a full refund.). This will make it easier for
customer service representatives.

1. Clients are entitled to a full refund if there is anything wrong with their file. No negotiation regarding of partial refunds for these
   clients. Errors can be FS, Married submitted as single,  client didn't get their quoted amount, or client found out a processor called on
   their behalf to the servicer.

If a client's file is submitted correctly and complains that no one told him he can do it for free.

1. Customer Rep can offer to recertify him for free for the next year or offer half of his enrollment fees back. Just let client know that what
   PSLC does is document preparation similar to what a CPA does for tax clients. They offer to file paperwork for a fee. This usually resolves
   the problem with clients who say no one told them they can do it for free. If all else fails and client threatens any additional action. I just
   offer them a full refund.

Tom

---

**From:** Albert Kim <albert@premierstudentloancenter.com>
**Sent:** Friday, April 13, 2018 10:08 AM
**To:** Monique Dinh <monique@slaccountmgmt.com>
**Cc:** Kaine Wen <kaine@premierstudentloancenter.com>; tom@premierstudentloancenter.com
**Subject:** Re: Cancellation and Refund Policy

Sent from my iPhone

On Apr 13, 2018, at 6:22 PM, Monique Dinh <monique@slaccountmgmt.com> wrote:

> I think I can do my best and train all cs reps to be able to know when a refund will be necessary as for the client realizing they
> could have done it for free, I have some good people for retention on that and if that fails we can offer a partial refund, if that
> fails I just say cancel and refund

- I'm good with this

---

**From:** Kaine Wen <kaine@premierstudentloancenter.com>
**Sent:** Friday, April 13, 2018 9:18 AM
**To:** Monique Dinh <monique@slaccountmgmt.com>
**Cc:** Albert Kim <albert@premierstudentloancenter.com>; tom@premierstudentloancenter.com
**Subject:** Re: Cancellation and Refund Policy

In regards to the cancellation policy below I just want to advise you that we submit everyone as single whether
married or not so that technically will make everyone eligible for a refund and because of family size.

If the complaining client is single and the family size is correct (confirmed by client) - then that's when the CS Rep can negotiate a
partial refund.

So this policy is more of a case by case basis? Should refunds be approved by a manager before issued? Not all the
customer service reps will be able to recognize the terms of a refund listed below

Well that's why it's up to you to retrain the CS Dept. ;)

2. The only time that customer service can negotiate a partial refund is if the clients' file is submitted 100%
   correctly.

If negotiations attempts fail. CL is still requesting refund( ex. Didn't realize he/she could on her own for free ) is the policy at
that point to refund 100%?

Pls.' Ex. 2.75
P. 377

CFPB-20211007-00000145
CFPB-20220119-00004716

This is the tough one. **Tom** and **Monique**, please offer your thoughts!

Kaine Wen, Esq.
**Premier Student Loan Center**
Managing Partner
173 Technology Dr, Ste 202
Irvine, CA 92618
E-mail: kaine@premierstudentloancenter.com

*Confidentiality Disclaimer: This e-mail correspondence and its attachments (if any) are intended exclusively for the above named addressee(s) and intended to be privileged and confidential. If they have come to you in error, please immediately notify the sender about the error and delete all copies of this e-mail correspondence along with its attachments. Thank you.*

On Apr 13, 2018, at 8:52 AM, Monique Dinh <monique@slaccountmgmt.com> wrote:

Hi guys,
In regards to the cancellation policy below I just want to advise you that we submit everyone as single whether married or not so that technically will make everyone eligible for a refund and because of family size.
So this policy is more of a case by case basis? Should refunds be approved by a manager before issued? Not all the customer service reps will be able to recognize the terms of a refund listed below

**From:** Albert Kim <albert@premierstudentloancenter.com>
**Sent:** Thursday, April 12, 2018 9:19 PM
**To:** tom@premierstudentloancenter.com
**Cc:** Kaine Wen <kaine@premierstudentloancenter.com>; Monique Dinh <monique@slaccountmgmt.com>
**Subject:** Re: Cancellation and Refund Policy

Please see below.

Sent from my iPhone

On Apr 13, 2018, at 4:06 AM, <tom@premierstudentloancenter.com> <tom@premierstudentloancenter.com> wrote:

Hello Albert and Kaine,

This is what I am going to tell Monique and Customer Service the refund policy is, if you agree.

1. Clients are entitled to a full refund if there is anything wrong with their file. No negotiation regarding of partial refunds for these clients. Errors can be FS, Married submitted as single, or client didn't get their quoted amount.
Good- may want to add that processor called in as CL and CL found out?

2.
3. Clients will be fully refunded if they threaten a chargeback, leave a negative review, or threaten to go to a governmental agency or contact their lawyers no matter what.
Good

4.
5. The only time that customer service can negotiate a partial refund is if the clients' file is submitted 100% correctly.
If negotiations attempts fail. CL is still requesting refund( ex. Didn't realize he/she could do on her own for free ) is the policy at that point to refund 100%?

6.

Please offer any other suggestions or disagree with any of the above points. Once you guys both agree, I will roll this out to Monique and customer service. Monique will then add it to the training manual.

Tom

**From:** Monique Dinh <monique@slaccountmgmt.com>

CFPB-20211007-00000146
CFPB-20220119-00004717

**Sent:** Tuesday, April 10, 2018 3:54 PM
**To:** 'Albert Kim' <albert@premierstudentloancenter.com>; 'Kaine Wen' <kaine@premierstudentloancenter.com>
**Cc:** 'Tom' <tom@premierstudentloancenter.com>
**Subject:** Cancellation and Refund Policy

Hi Albert,
Just wanted to make sure we were all on the same page regarding the cancel and refund policy can you please confirm before I put It in writing in the training manual? Thanks!

**Monique Washington**
**Processing Department**

<image005.gif>

<image006.png> <image008.png>**SL Account Management**
    **Direct: (949) 202-1688**
    **Fax:   1-877-281-1365**
    **Email:Monique@slaccountmgmt.com**
    **Toll Free:  1-888-283-9631**

<image005.gif>

**\*\*\*\*\* Email confidentiality notice \*\*\*\*\***
CONFIDENTIALITY STATEMENT: The information contained in this electronic transmission, and any attachments, may contain CONFIDENTIAL information. The information is intended only for use by the addressee named above. Any unauthorized use, disclosure, dissemination or copying of the contents of the information and any attachments contained in this electronic transmission is strictly prohibited. If you are not the intended addressee, please notify the sender immediately and delete this message.

CFPB-20211007-00000147
CFPB-20220119-00004718

Plaintiffs' Exhibit 2.76

# Exhibit 76

CFPB-20220119-00004719

From: tom@premierstudentloancenter.com
Sent: Thursday, March 29, 2018 2:45 PM
To: Monique Dinh; jboylan@premierstudentloancenter.com; tscott@premierstudentloancenter.com
CC: 'Albert Kim'; 'Kaine Wen'
Subject: RE: Refunding clients

Hello Monique and Joey,

No we can't change the refund policy. If any agents complain let them speak to Joey or Albert.
Last time we delayed refunds our Chargebacks ratios spiked over 1% for two consecutive months. **(We almost lost our biggest merchant account because of delaying refunds.)** It took so much time and paperwork to get back into good graces with the merchant accounts. I had to write a detailed report on how we were going to lower our chargebacks. If our chargebacks go over 1% again, our merchant account will be up for review again. We do not want that to happen again.
Our chargeback ratios are around .75% now. Any drastic changes will probably move our CB ratios over 1%. If you guys have any great ideas, please suggest them and we can review it. However, we will definitely not delay refunds. **Agents can always re enroll clients after they are refunded.**
Let me know if you have any questions.

Regards,

Tom

---

From: Monique Dinh <monique@slaccountmgmt.com>
Sent: Thursday, March 29, 2018 10:02 AM
To: jboylan@premierstudentloancenter.com; tscott@premierstudentloancenter.com
Cc: Albert Kim <albert@premierstudentloancenter.com>; tom@premierstudentloancenter.com; Kaine Wen <kaine@premierstudentloancenter.com>
Subject: FW: Refunding clients
Importance: High

Hello,
Can we please revisit the cancellation policy with the company? I am getting numerous of agents upset about how fast we are cancelling a refunding clients and not pausing the file instead. Has anything changed since this last email regarding refunds?
Please advise

**Monique Washington**
Processing Department



**SL Account Management**
Direct: (949) 202-1688
Fax: 1-877-281-1365
Email: Monique@slaccountmgmt.com
Toll Free: 1-888-283-9631

***** Email confidentiality notice *****
CONFIDENTIALITY STATEMENT: The information contained in this electronic transmission, and any attachments, may contain CONFIDENTIAL information. The information is intended only for use by the addressee named above. Any unauthorized use, disclosure, dissemination or copying of the contents of the information and any attachments contained in this electronic transmission is strictly prohibited. If you are not the intended addressee, please notify the sender immediately and delete this message.

---

From: albert@premierstudentloancenter.com <albert@premierstudentloancenter.com>
Sent: Wednesday, January 10, 2018 12:08 PM
To: tom@premierstudentloancenter.com; cstark@premierstudentloancenter.com; dsparaco@premierstudentloancenter.com; monique@premierstudentloancenter.com
Cc: jboylan@premierstudentloancenter.com; pkelman@premierstudentloancenter.com; 'Kaine Wen' <kaine@premierstudentloancenter.com>
Subject: RE: Refunding clients

If a client calls the Processing Department or Customer Service asking for a refund, **NEVER** transfer the call back to the sales rep. If the Processing Department receives a call from a client asking for a refund, immediately transfer call to Customer Service. It is up to the Customer Service department and/or Tom to issue refunds or try to save clients. If I catch any sales rep delaying refunds by any means, it will result in an automatic termination of their position.

*Albert King*
## PREMIER STUDENT LOAN CENTER
Direct 949-207-1018
Toll Free 888-548-0476
Fax number 888-302-3033
albert@premierstudentloancenter.com
www.premierstudentloancenter.com
http://www.whitehouse.gov/issues/education/higher-education/ensuring-that-student-loans-are-affordable
http://www.bbb.org/sdoc/business-reviews/legal-document-assistance/premier-student-loan-center-in-rancho-santa-margarita-ca-172013295/
***** Email confidentiality notice *****
CONFIDENTIALITY STATEMENT: The information contained in this electronic transmission, and any attachments, may contain CONFIDENTIAL information. The information is intended only for use by the addressee named above. Any unauthorized use, disclosure, dissemination or copying of the contents of the information and any attachments contained in this electronic transmission is strictly prohibited. If

CFPB-20211007-00000149
CFPB-20220119-00004720

**From:** tom@premierstudentloancenter.com [mailto:tom@premierstudentloancenter.com]
**Sent:** Tuesday, January 9, 2018 4:53 PM
**To:** cstark@premierstudentloancenter.com; dsparaco@premierstudentloancenter.com; monique@premierstudentloancenter.com
**Cc:** jboylan@premierstudentloancenter.com; pkelman@premierstudentloancenter.com; 'Kaine Wen' <kaine@premierstudentloancenter.com>; 'Albert Kim' <albert@premierstudentloancenter.com>
**Subject:** Refunding clients

Hello Everyone,

Effectively immediately, if a client calls in and wants a refund whether it's a first payment or thereafter and there are inaccuracies on their file. Please have your salesman and processors **email customer service immediately to have the clients refunded ASAP**. We are not going to delay refunding clients anymore while the salesman tries to save the deal. **Our chargeback ratio is getting too high.**

We tried delaying refunding clients to allow the salesman to save the deals and our chargeback ratios have been spiking.

**The chargeback ratio was 1.71% last month and is currently at 1.37% this month.**

The salesman can try to save the deal after the client gets refunded. The salesman can tell the client we are not a scam because we offer a full 100% money back guarantee to the client if they are not satisfied. (Which the client can see when they get emailed the refund receipt.) **It is of upmost importance that we get this chargeback ratio down.** Please offer any suggestions if you have any and I will work with the sales department and processing department to have a better solution. However as of now, this will be the policy moving forward.

Regards,

Tom

CFPB-20211007-00000150
CFPB-20220119-00004721

Plaintiffs' Exhibit 2.77

# Exhibit 78

CFPB-20221128-00018268

| From: | Tom Nguyen |
|---|---|
| To: | 'Jimmy Lai'; 'Kaine Wen' |
| CC: | 'SamsonMerch Ly' |
| Sent: | 8/21/2018 3:03:31 AM |
| Subject: | RE: Mid REDACTED 6317 SL ACCOUNT MGMT |
| Attachments: | SL Account Mgt Chargeback Reduction Plan 2.docx |

Kaine please sign and email to Jimmy the revised Chargeback reduction plan. Thanks.

Tom

**From:** Jimmy Lai
**Sent:** Monday, August 20, 2018 6:40 PM
**To:** Kaine Wen
**Cc:** Tom ; SamsonMerch Ly
**Subject:** RE: Mid REDACTED 6317 SL ACCOUNT MGMT

Kaine/Tom,

I have revised the CB Reduction Plan to better fit what they want to hear.
Please place on company letterhead, sign and return if your in agreement.

Thanks,

**Jimmy Lai**
President
Swift Payments
Office: (949) 328-7528
Mobile: (949) 302-3248
Fax:     (949) 328-7535

The information contained in this transmission may contain privileged and confidential information. It is intended only for the use of the
addressee. If the person actually receiving this communication or any other reader of the communication is not the named recipient, or the
employee or agent responsible to deliver it to the recipient, any use, dissemination, distribution or copying of this communication is strictly
prohibited. If you have received this communication in error, please immediately notify us by return e-mail, and destroy this communication and
all copies thereof, including all attachments.

**From:** Kaine Wen <kaine@premierstudentloancenter.com>
**Sent:** Friday, August 17, 2018 4:43 PM
**To:** Jimmy Lai <jimmy.lai@swiftpaymentsinc.com>
**Cc:** Tom <tom@premierstudentloancenter.com>; SamsonMerch Ly <samson@merchantdept.com>
**Subject:** Re: Mid REDACTED 6317 SL ACCOUNT MGMT

Customers can charge back at any time. Why do they assume it's only before the initial services are rendered? Keep
in mind we provide ongoing services (recertification) and the contracts are for 120, 240, or 300 months. Frequently
customers just decide to be unscrupulous (since we have completed the work for them) and chargeback
EVERYTHING. And since we never contest chargebacks in order to minimize customer complaints, we end up just
eating all the chargebacks.

At the end of the day, if NMC is not comfortable with our CB percentages, just let us know and we will take our
business elsewhere. It's not worth all this nonstop headache when we have (in my opinion) been a model merchant.
We are already taking every proactive measure possible to minimize chargebacks, and ~0.7% is very good if you ask
me. Finally, there are plenty of reserve funds to offset the risk.

Pls.' Ex. 2.77
P. 386

CFPB-20211007-00000218
CFPB-20221128-00018269

Jimmy, John is your UW, you know best how to get him off our backs and just let us run and grow our business.

On Aug 17, 2018, at 4:10 PM, Jimmy Lai <jimmy.lai@swiftpaymentsinc.com> wrote:

Guys,

Please see below and advise

Thanks

Jimmy Lai

---

**From:** John F. Thompson <jfthompson@NationalMerchant.com>
**Sent:** Friday, August 17, 2018 3:40:25 PM
**To:** Jimmy Lai
**Subject:** RE: Mid REDACTED6317 SL ACCOUNT MGMT

Jimmy,

The Chargeback spreadsheet appears to be accurate; however, below are my concerns regarding the merchant's response to why they are receiving chargebacks:

The merchant stated that customer's are charging back their transactions because of customer remorse. If this is the case, why are customers chargeback back sales that occurred in April, May and June, in addition to July and August. We were lead to believe that all services were rendered within a 2 week period of time and in some rare cases up to 30 days; therefore, if customers are feeling remorse about their purchase, they would be charging back within 2 weeks to no more than 30 days after the transaction is placed. In many cases, customers are charging back up to 4 months after the transaction is placed. We need to know why chargeback exposure is over 4 months so far and increasing each month the merchant processes.

Thank you,

**John Thompson**
Associate Director of
Risk & Underwriting

office:     949. 419. 8400 x 1110
toll free:  800. 662. 8448
fax:        949. 265. 9053
email:      jfthompson@nationalmerchant.com

*The information contained in this transmission may contain privileged and confidential information. It is intended only for the use of the addressee. If the person actually receiving this communication or any other reader of the communication is not the named recipient, or the employee or agent responsible to deliver it to the recipient, any use, dissemination, distribution or copying of this communication is strictly prohibited. If you have received this communication in error, please immediately notify us by return e-mail, and destroy this communication and all copies thereof, including all attachments.*
***Go Green!*** *Please, consider the environment before printing this email.*

**From:** Jimmy Lai <jimmy.lai@swiftpaymentsinc.com>
**Sent:** Friday, August 17, 2018 3:21 AM
**To:** John F. Thompson <jfthompson@NationalMerchant.com>

CFPB-20211007-00000219
CFPB-20221128-00018270

**Subject:** FW: Mid REDACTED6317 SL ACCOUNT MGMT
**Importance:** High

John,

See below responses from merchant and attached docs.
Let me know if you have any questions.

Best,

JL

**From:** Kaine Wen <kaine@premierstudentloancenter.com>
**Sent:** Thursday, August 16, 2018 9:06 PM
**To:** Jimmy Lai <jimmy.lai@swiftpaymentsinc.com>
**Cc:** tom@premierstudentloancenter.com; Samson <samson@merchantdept.com>
**Subject:** Re: Mid REDACTED6317 SL ACCOUNT MGMT
**Importance:** High

Hi Jimmy,

*The above mentioned merchant is currently in review due to an increase in chargebacks. The merchant has processed $11,367,833.35 since they began processing in April, and the merchant has **342 chargebacks totaling $75,462.29**. These chargebacks began posting in April and have continued to increase each month.*

**$75,462.29/$11,367,833.35 = 0.66% CB Amount**
**$75,462.29//$10,412,875.31 = 0.72% CB Amount**

**342/50,982 = 0.67% CB Count**
**342/46,741 = 0.73% CB Count**

*The merchant verifies as a financial institution*

**Absolutely FALSE.**

*and the merchant's website is:http://www.slaccountmgmt.com/ . Based on a review of the merchant's website, the merchant appears to be offering assistance with filing paperwork and documentation for customers needing the merchant's services. We also immediately see the disclaimer when first viewing the merchant's website.*

**Absolutely TRUE.**

*Is your office aware of these chargebacks and have you been in contact with the merchant?*

**Say YES.**

*What is causing these chargebacks?*

**Typical cost of business. LOOK AT THE LIFETIME CB RATIOS.**

*What is the merchant doing to decrease these chargebacks?*

**Dedicated Customer Service Department. Pre-chargeback alerts. Liberal refund policy.**

*Has the merchant had the funds to pay for these chargebacks and can we expect any additional chargebacks to post to the account?*

CFPB-20211007-00000220
CFPB-20221128-00018271

**YES, look at the merchant's RESERVE FUND. Yes.**

*I am also attaching a chargeback reduction plan as this will be required for this merchant.*

**Have your team draft up the chargeback reduction plan for Tom's review. You can use the same one we used last time.**

If you need anything else from us, please reply to this e-mail and do not contact Tom directly as he has to go out-of-town this weekend.

Kaine

On Aug 16, 2018, at 1:04 PM, Jimmy Lai <jimmy.lai@swiftpaymentsinc.com> wrote:

Tom,

FYI....I need to address below issues ASAP.
Please let me know when you have time for a call to make sure I'm addressing the issues correctly.

Thanks,

Jimmy

**From:** John F. Thompson <jfthompson@NationalMerchant.com>
**Sent:** Thursday, August 16, 2018 12:20 PM
**To:** Jimmy Lai <jimmy.lai@swiftpaymentsinc.com>
**Subject:** FW: Mid REDACTED 8317 SL ACCOUNT MGMT
**Importance:** High

See below.

We need to address this immediately.

Thank you,

### John Thompson
Associate Director of
Risk & Underwriting

| | | |
|---|---|---|
| office: | 949. 419. 8400 x 1110 | |
| toll free: | 800. 662. 8448 | |
| fax: | 949. 265. 9053 | |
| email: | jfthompson@nationalmerchant.com | |

*The information contained in this transmission may contain privileged and confidential information. It is intended only for the use of the addressee. If the person actually receiving this communication or any other reader of the communication is not the named recipient, or the employee or agent responsible to deliver it to the recipient, any use, dissemination, distribution or copying of this communication is strictly prohibited. If you have received this communication in error, please immediately notify us by return e-mail, and destroy this communication and all copies thereof, including all attachments.*
*Go Green!* Please, consider the environment before printing this email.

Good Morning,

CFPB-20211007-00000221
CFPB-20211128-00018272

The above mentioned merchant is currently in review due to an increase in chargebacks. The merchant has processed $11,367,833.35 since they began processing in April, and the merchant has **342 chargebacks totaling $75,462.29**. These chargebacks began posting in April and have continued to increase each month.

Please see the activity below:

| Month | # Sales | TOT Sales Amt | A/T Sales | # Credits | TOT Credit Amt | A/T Credits | # CBKS | TOT CBKS Amt | % Amt Keyed |
|-------|---------|---------------|-----------|-----------|----------------|-------------|--------|--------------|-------------|
| DAILY | 1823 | 378,404.49 | 207.57 | 94 | 20,793.87 | 221.21 | 4 | 796.68 | 1.00 |
| 12 MONTH | 50982 | 11,367,833.35 | 222.98 | 4241 | 954,958.04 | 225.17 | 342 | 75,462.29 | 1.00 |
| AUG-18 | 8211 | 1,770,891.26 | 215.67 | 748 | 165,574.57 | 221.36 | 77 | 16,508.29 | 1.00 |
| JUL-18 | 14354 | 3,199,931.00 | 222.93 | 1182 | 264,648.71 | 223.90 | 116 | 25,298.01 | 1.00 |
| JUN-18 | 12944 | 2,898,364.67 | 223.92 | 1114 | 251,558.71 | 225.82 | 88 | 20,145.09 | 1.00 |
| MAY-18 | 9738 | 2,198,589.17 | 225.77 | 831 | 188,949.43 | 227.38 | 48 | 10,748.56 | 1.00 |
| APR-18 | 5734 | 1,300,053.25 | 226.73 | 366 | 84,226.62 | 230.13 | 13 | 2,762.34 | 1.00 |

The chargebacks are posting for both credit and fraud-related reasons.

The merchant verifies as a financial institution and the merchant's website is: http://www.slaccountmgmt.com/ . Based on a review of the merchant's website, the merchant appears to be offering assistance with filing paperwork and documentation for customers needing the merchant's services. We also immediately see the disclaimer when first viewing the merchant's website.

Is your office aware of these chargebacks and have you been in contact with the merchant? What is causing these chargebacks? What is the merchant doing to decrease these chargebacks? Has the merchant had the funds to pay for these chargebacks and can we expect any additional chargebacks to post to the account?

I am also attaching a chargeback reduction plan as this will be required for this merchant.

**Due to excessive amount of chargebacks, this is an underlined urgent issue, and we will need this information sent over by end of day, Monday, 8/20.**

Thank you in advance for your urgent assistance with this account.

CFPB-20211007-00000222
CFPB-20221128-00018273

*True Count Staffing Inc.*

*173 Technology Drive Suite 202*

*Irvine, CA 92618*

**Description of the Merchant Business**

SL Account Management is a document preparation company. SL Account Mgt's services include:

- Consultations to determine whether the client qualifies for any currently available programs.

- Organizing and preparing the documents required for the client to submit his or her application.

- Customer service to answer any questions or issues that may arise.

SL ACCOUNT MGT only provides document preparation services.

SL ACCOUNT MGT does not sell any products.

SL ACCOUNT MGT engages third-party marketing vendors to drive inbound leads.

SL ACCOUNT MGT does not do any internal marketing nor make any outbound marketing calls (besides client referrals).

SL ACCOUNT MGT's refund policy is to offer a full refund if the client is not 100% satisfied with SL ACCOUNT MGT's services.

**Explanation of the Problem**

1. SL ACCOUNT MGT has identified the primary contributing factor that led to excessive chargebacks since July/2018.
2. SL ACCOUNT MGT tweaked its refund policy so that Sales Advisors must first be able to speak to the client before the Customer Service or Billing Departments can process a refund. Unfortunately, due to the high rate of missed connections between the Sales Advisors and the clients, SL ACCOUNT MGT's refund policy was not being properly implemented. Beginning August/2018, SL ACCOUNT MGT reverted its refund policy so that the Customer Service and Billing Departments can and will process all refunds immediately upon clients' requests.

CFPB-20211007-00000223
CFPB-20221128-00018274

3. SL ACCOUNT MGT refunded the clients' money and found out the consumer initiated a chargeback after the refund was issued. This situation has been confirmed on multiple occasions since we started processing.
4. Some clients seemed to do a chargeback after the work was completed for them because they had buyers' remorse.
5. Customers can charge back at any time. Frequently, customers just decide to be unscrupulous (since we have completed the work for them) and chargeback EVERYTHING. And since we never contest chargebacks in order to minimize customer complaints, we end up just eating all the chargebacks.

Below is current processing stats from SL Account Mgt:

| Month | # Sales | TOT Sales Amt | A/T Sales | # Credits | TOT Credit Amt | A/T Credits | # CBKS | CB Ratio | TOT CBKS Amt | % Amt Keyed |
|-------|---------|---------------|-----------|-----------|----------------|-------------|--------|----------|--------------|-------------|
| DAILY | 1823 | 378,404.49 | 207.57 | 94 | 20,793.87 | 221.21 | 4 | 0.22 | 796.68 | 1 |
| 12 MONTH | 50982 | 11,367,833.35 | 222.98 | 4241 | 954,958.04 | 225.17 | 342 | 0.67 | 75,462.29 | 1 |
| 18-Aug | 8211 | 1,770,891.26 | 215.67 | 748 | 165,574.57 | 221.36 | 77 | 0.94 | 16,508.29 | 1 |
| 18-Jul | 14354 | 3,199,931.00 | 222.93 | 1182 | 264,648.71 | 223.9 | 116 | 0.81 | 25,298.01 | 1 |
| 18-Jun | 12944 | 2,898,364.67 | 223.92 | 1114 | 251,558.71 | 225.82 | 88 | 0.68 | 20,145.09 | 1 |
| 18-May | 9738 | 2,198,589.17 | 225.77 | 831 | 188,949.43 | 227.38 | 48 | 0.49 | 10,748.56 | 1 |
| 18-Apr | 5734 | 1,300,053.25 | 226.73 | 366 | 84,226.62 | 230.13 | 13 | 0.23 | 2,762.34 | 1 |

**Top 3  Chargeback Reason Codes are as followed:**

37 No Cardholder Authorization

SL Account Mgt process all payments via the NMI gateway which requires both AVS and CVV2 match to obtain an approval.

13 Consumer Disputes

SL Account Mgt has implemented a very liberal refund policy to ensure 100% customer satisfaction.

10 Fraud 1040/10.4 Other Fraud  - Card Absent

SL Account Mgt obtains both AVS and CVV2 match prior to approval and implemented a compliance script for consumers to acknowledge services requested.

**Tools and Processes Currently Utilized**

CFPB-20211007-00000224
CFPB-20221128-00018275

SL ACCOUNT MGT is currently utilizing all fraud and chargeback reduction tools made available to us. AVS  and CVV2 is required on the NMI gateway and must result in a positive match for us to settle sales and send product/services from inception of merchant relationship.

PinPoint Alert has been set up to help minimize potential chargebacks.

EIDS has been implemented to help resolve any incoming chargebacks in a timely fashion which will also further reduce the # of chargebacks coming in.

**Planned Chargeback/Fraud Reduction Initiatives and Tools**

SL ACCOUNT MGT is in the process of engaging with a company that specializes in chargeback solutions. Pre-chargeback alerts will allow SL ACCOUNT MGT to utilize its refund policy to prevent chargebacks. Post-chargeback recovery processes will help SL ACCOUNT MGT reverse fraudulent chargebacks. SL ACCOUNT MGT will also implement EIDS to better manage chargebacks in a timely manner.

**Summary Statement**

In conclusion, SL ACCOUNT MGT will issue refunds immediately upon clients request for any dissatisfied clients. We will also improve our customer service and compliance scripts, so the client is fully aware of what type of service SL ACCOUNT MGT will be providing them. This will decrease chargebacks moving forward and we expect to continue keeping chargeback ratio under 1%.

Name-Kaine Wen

Signature-

Date-8/21/2018

CFPB-20211007-00000225
CFPB-20221128-00018276

Plaintiffs' Exhibit 3

```
 1              UNITED STATES DISTRICT COURT

 2             CENTRAL DISTRICT OF CALIFORNIA

 3                      -- oOo --

 4

 5    THOMAS W. MCNAMARA, as the
      Court-Appointed Receiver for
 6    True Count Staffing, Inc.,
      d/b/a SL Account Management,
 7    Prime Consulting LLC, d/b/a
      Financial Preparation Services;
 8    TAS 2019 LLC d/b/a Trusted
      Account Services; First
 9    Priority LLC; and Horizon
      Consultants LLC, and their
10    successors, assigns, affiliates,
      or subsidiaries,
11
12            Plaintiff,
13        vs.                          Case No. 8:21-cv-01122-MWF
                                              (KSx)
14    NATIONAL MERCHANT CENTER, INC.,
      a California corporation; SHIH-
15    HAO LAI aka JIMMY LAI, an
      individual; SWIFT PAYMENTS, a
16    California corporation;
      DOES 1-10; and ROES 1-10,
17
              Defendants.
18    _____

19        VIDEO CONFERENCE DEPOSITION OF KENNY HUANG

20                 Walnut, California
                 Tuesday, October 4, 2022
21                 1:03 p.m. to 3:23 p.m.

22        By:  Gracie E. Becerra, CA CSR No. 13136

23                 Job No. 10108002

24

25
```

Pls.' Ex. 3
P. 395

CFPB-20221128-00018880

1                              -- o0o --

2              The deposition of Kenny Huang was taken in the
above-entitled matter pursuant to stipulation via video
3       conference by all counsel, Kenny Huang, and the court
reporter.
4
              The witness' physical location for the taking of
5       the deposition was:  Walnut, California.

6              The reporter's physical location for the taking of
the deposition was:  Fresno Deposition Reporters, 516 West
7       Shaw Avenue, Suite 111, Fresno, California.

8                              -- o0o --

9

10                    A P P E A R A N C E S

11      For the Receiver:

12          (APPEARED VIA VIDEO CONFERENCE)
            MCNAMARA SMITH LLP
13          By:  Cornelia J. B. Gordon
                 Attorney at Law
14          655 West Broadway
            Suite No. 900
15          San Diego, California 92101
            (619) 269-0400
16
        For the Defendant, National Merchant Center, Inc.:
17
            (APPEARED VIA VIDEO CONFERENCE)
18          HALPERN MAY YBARRA GELBERG, LLP
            By:  Aaron M. May
19               Attorney at Law
            550 South Hope Street
20          Suite No. 2330
            Los Angeles, California 90071
21          (213) 402-1900

22      Also appearing via video conference:

23          DJ Magee, Assistant to Cornelia J. B. Gordon
            Vincent Taisague, Aptus Monitor
24

25                             -- o0o --

**Page 2**

CFPB-20221128-00018881

```
 1                   I N D E X

 2   KENNY HUANG                                    Page

 3        Examination by Ms. Gordon                   6

 4        Examination by Mr. May                     50

 5
                      -- oOo --
 6

 7

 8

 9

10              INFORMATION TO BE SUPPLIED:

11                     (None.)

12

13

14

15

16      QUESTIONS WITNESS INSTRUCTED NOT TO ANSWER:

17                     (None.)

18

19

20

21

22

23

24

25
```

Kenny Huang

McNamara vs.
National Merchant Center, Inc.

```
 1                         E X H I B I T S

 2   Receiver's
     Exhibit No.         Description                        Page
 3
     EXHIBIT 1       Third Amended Subpoena to Testify         6
 4                   at a Deposition in a Civil Action

 5   EXHIBIT 2       Third Amended Subpoena to Produce         9
                     Documents, Information, Or Objects
 6                   or to Permit Inspection of Premises
                     in a Civil Action
 7
     EXHIBIT 3       2019 Form W-4 for Kenny Huang            11
 8                   with attached voided check

 9   EXHIBIT 4       Limited Liability Company               14
                     Articles of Organization
10                   Bates Nos. Lai-TAS_0000741 to 0000746

11   EXHIBIT 5       4/12/19 e-mail                          19
                     Bates Nos. REC_0000152178 to 0000152179
12
     EXHIBIT 6       7/1/19 e-mail with attached             19
13                   Merchant Processing Application
                     & Agreement
14                   Bates Nos. Lai-TAS_0004709 to 0004714

15   EXHIBIT 7       Merchant Processing Application         21
                     & Agreement
16                   Bates Nos. Lai-TAS_0000781 to 0000785

17   EXHIBIT 8       8/1/19 e-mail to Jimmy Lai with         21
                     attachments
18                   Bates Nos. Lai-TAS_0000739 to 0000770

19   EXHIBIT 9       Merchant Account Change                 29
                     Request Form
20                   Bates Nos. Lai-SWIFT_0006668 to 0006669

21   EXHIBIT 10      Merchant Account Change                 29
                     Request Form
22                   Bates Nos. Lai-SWIFT_0006670 to 0006671

23   EXHIBIT 11      9/9/19 e-mail with attached             30
                     HSBC letter
24                   Bates Nos. Lai-TAS_0000936 to 0000938

25
```

**Page 4**

Pls.' Ex. 3
P. 398

CFPB-20221128-00018883

```
 1                        EXHIBITS CONTINUED

 2    Receiver's
      Exhibit No.          Description                    Page
 3
      EXHIBIT 12    9/23/19 e-mail to Kenny Huang with      31
 4                  attached Business Deposit Account
                    Agreement
 5                  Bates Nos. Lai-SWIFT_0004907 to 0004910

 6    EXHIBIT 13    9/26/19 e-mail from TAS                 34
                    Bates No. Lai-SWIFT_0004879
 7
      EXHIBIT 14    11/1/19 e-mail to Kenny Huang           34
 8                  with attached Amended and Restated
                    Operating Agreement
 9                  Bates Nos. Lai-TAS_0003645 to 0003677

10    EXHIBIT 15    NMC Collection Demand Letter to         44
                    TAS 2019 LLC, 5/18/20
11                  Bates Nos. NMC012089 to NMC012090

12    EXHIBIT 16    Preliminary Report of Temporary         45
                    Receiver
13

14    Defendant's
      Exhibit No.          Description
15
      EXHIBIT 17    String of e-mails with the first        57
16                  e-mail dated 6/29/19
                    Bates Nos. Lai-TAS_0000786 to 0000789
17
      EXHIBIT 18    6/25/19 e-mail to Kenny Huang           59
18                  Bates Nos. REC_0000146732 to 0000146733

19

20

21

22

23

24

25
```

**www.aptusCR.com**

Pls.' Ex. 3
P. 399

CFPB-20221128-00018884

1    MS. GORDON:  Why don't we go off the record for a

2    minute.

3                        (Off the record.)

4    BY MS. GORDON:

5        Q.   So, Ken, you can take a minute to look at it.

6        A.   Okay.  And what was the question?

7        Q.   Have you seen this document before?

8        A.   No.

9        Q.   So if you look at it, you can see these are

10   Articles of Organization for a limited liability company

11   called TAS 2019, LLC.  Are you familiar with that company?

12       A.   Yes.

13       Q.   If you go to the last page of this document, you

14   can see -- I believe it says you are the hundred percent

15   owner -- or the manager of the company when it was

16   organized.  So were you the initial owner of this company

17   that I'm going to refer to as TAS?

18       A.   Yes.

19       Q.   And who asked you to be the owner of TAS?

20       MR. MAY:  Objection.  Lack of foundation, calls for

21   speculation.  Sorry.  I strike the second objection.

22       THE WITNESS:  Should I answer?

23       MR. MAY:  You can answer.  Yes.

24       THE WITNESS:  Kaine Wen.

25   ///

```
 1  BY MS. GORDON:
 2      Q.   How do you know Kaine Wen?
 3      A.   Longtime friend, family friend.
 4      Q.   And what did he tell you when he came to you
 5  asking you to become the owner of this company?
 6      A.   He had said if I want to help him out and I would
 7  just open a bank account and he trusted me with depositing
 8  funds in there.  And that's what I did.
 9      Q.   Did he explain what the company was in the
10  business of doing?
11      A.   TAS?
12      Q.   Yes.
13      A.   It was meant to be a -- a funds holder, like an
14  escrow account.
15      Q.   Did Kaine Wen explain to you why he couldn't, for
16  example, be the owner of TAS?
17      A.   No.
18      Q.   Did you receive anything in exchange for becoming
19  TAS's owner?
20      A.   No.
21      Q.   You mentioned that TAS was a funds account holder.
22  And TAS, to my knowledge, did essentially that function, it
23  was holding funds for this student loan debt relief business
24  that the receiver is representing the interests of.  Did you
25  have any experience in the fund escrow industry when TAS was
```

CFPB-20221128-00018895

1  formed?

2      MR. MAY:  Hold on.  I'm going to object.  Counsel

3  shouldn't be testifying about what facts are or are not.

4          And, Witness, you don't have to take what counsel

5  says as true.  That's just her argument.

6          So I just want to be clear you should not be

7  instructing the witness as to what facts are or are not.

8  There's lack of foundation and I move to strike that.  So I

9  just ask that you restate the question without reiterating

10  what you believe the facts may or may not be.

11          So I think your question was simple, right?  The

12  question was do you have experience in the escrow account or

13  something.  So if you can do that without...

14  BY MS. GORDON:

15      Q.   Yeah.  So Aaron is correct.  The core of my

16  question was whether or not you had experience in the escrow

17  industry when you became the owner of TAS?

18      A.   No.

19      Q.   Have you had experience in that industry since

20  then?

21      A.   No.

22      Q.   You can see that these resolutions are organizing

23  or creating the company of TAS.  Did you arrange for TAS,

24  the company, to be formed?

25      A.   What do you mean by arranged?  Excuse me.

CFPB-20221128-00018896

1      Q.   Well, if you take a look at the document, you can

2   see that it mentions --

3      MR. MAY:  It should be questions.  It shouldn't be,

4   like, statements about what you believe the documents do or

5   don't do, so -- but...

6      MS. GORDON:  I'm just trying to direct him --

7      MR. MAY:  Okay.

8      MS. GORDON:  -- to the portion of the document.  I'm

9   sorry.

10   BY MS. GORDON:

11      Q.   The initial resolutions, you can see it mentions

12   this Riley Park is the organizer of TAS 2019, LLC.  And

13   presumably, that's how TAS was created or organized.

14   Essentially, I'm -- what I'm asking, this might be a little

15   clearer, is did you have any role in setting up TAS?

16      MR. MAY:  Objection.  Vague.

17      THE WITNESS:  No.

18   BY MS. GORDON:

19      Q.   Do you know who did set up TAS?

20      A.   No.

21      Q.   And just to confirm, you've never seen this

22   document before, correct?

23      MR. MAY:  Asked and answered.

24      THE WITNESS:  Correct.

25      MS. GORDON:  I'm going to mark Exhibit 5.

CFPB-20221128-00018897

```
 1              (Exhibit 5 was marked and attached.)

 2    BY MS. GORDON:

 3         Q.   So you can see this is an e-mail dated April 12th,

 4    2019.  It's addressed to a number of recipients, including

 5    Tas2019llc@gmail.com and the initial line of the e-mail

 6    reads, "Good morning, Mr. Huang."  That Tas2019llc@gmail.com

 7    address, are you familiar with it?

 8         A.   No.

 9         Q.   In that same vein, did you ever have access to

10    that e-mail address?

11         A.   No.

12         Q.   And just to confirm, you never sent e-mails from

13    it, correct?

14         A.   Correct.

15         MS. GORDON:  I'm going to mark Exhibit 6.

16              (Exhibit 6 was marked and attached.)

17    BY MS. GORDON:

18         Q.   And you can take a minute to look at it.

19         A.   Okay.

20         Q.   If you go to the -- I believe it's the second

21    page, you see what appears to be a Merchant Processing

22    Application & Agreement for a company called National

23    Merchant Center, NMC.  Are you familiar with that company?

24         A.   No.

25         Q.   Have you seen this application before?
```

1      A.   No.

2      Q.   So looking at the first section, Merchant

3  Information, the mailing address is listed as 2614 El

4  Capitan Avenue.  Is that your mailing address?

5      A.   Yes.

6      Q.   And the mobile phone number listed, which is

7  (626) 429-8364, is that your phone number?

8      A.   Yes.

9      Q.   The other address listed in here for the location

10  or site address is 30 North Gould Street, Suite R, Sheridan,

11  Wyoming.  Are you familiar with that address?

12      A.   No.

13      Q.   If you go down to the bottom of the page, there is

14  what appears to be an e-signature under your name.  Did you

15  e-sign this document?

16      A.   No.

17      Q.   If you go back up, actually, to section 1, the

18  website address for the company is listed as

19  TrustedAccountServices.com.  Did you ever visit that website

20  address?

21      A.   No.

22      Q.   If you go to the second page, in section 4, Site

23  Inspection and Business Info, this lists -- or it's signed

24  by Shih-Hao Lai on June 30th, 2019.  Do you know who

25  Shih-Hao Lai is?

Page 20

CFPB-20221128-00018899

1    A.   No.

2    Q.   Did anyone in connection with TAS ever inspect the

3  property at 2614 El Capitan to your knowledge?

4    A.   No.

5  MS. GORDON:   I'm going to mark Exhibit 7.

6         (Exhibit 7 was marked and attached.)

7  BY MS. GORDON:

8    Q.   So this is another Merchant Processing Application

9  & Agreement.  And I want to go down to the bottom of this

10 page.  And you can see that next to the -- that e-signature

11 we saw before there appears to be a wet ink signature.  Is

12 that your signature?

13   A.   No.

14   Q.   So you never signed this document?

15   A.   Correct.

16   Q.   I'm sorry.  What was that?

17   A.   Correct.

18   Q.   And have you ever seen this document before?

19   A.   No.

20 MS. GORDON:   I'm going to mark Exhibit 8.

21        (Exhibit 8 was marked and attached.)

22 BY MS. GORDON:

23   Q.   This is an e-mail dated August 1, 2019.  I have a

24 few attachments that I'm going to ask you about, so you can

25 take a minute to look through it.

**Page 21**

CFPB-20221128-00018900

1   numbered Lai-TAS 0000762, which should be a voided check.

2   And we're going to share that on the screen too.  Earlier I

3   believe you mentioned that Kaine had asked you to open a

4   bank account for TAS; is that correct?

5        A.   Yes.

6        MR. MAY:  Objection.  Misstates prior testimony.

7   BY MS. GORDON:

8        Q.   And did you open a bank account for TAS?

9        A.   Yes.

10       Q.   What bank was that with?

11       A.   HSBC.

12       Q.   And does this appear to be an account you opened

13   for TAS at HSBC, the account listed on this check?

14       A.   Yes.

15       Q.   Did Kaine tell you why he needed you to open the

16   bank account?

17       A.   Yes.

18       Q.   And what did he tell you?

19       A.   That's where the funds would be held.

20       Q.   And by "the funds," you mean the funds held in

21   escrow?

22       A.   Correct.

23       Q.   I'm going to mark Exhibit 9.  And you can take a

24   minute to look at it, just let me know when you've finished.

25       A.   Okay.

CFPB-20221128-00018907

1   I'm going to mispronounce this, but Tuong Nguyen.  Are you

2   familiar with Mr. Nguyen?

3       A.   Yes.

4       Q.   And how do you know him?

5       A.   Friend of Kaine.

6       Q.   Did you meet him before or after you became the

7   owner of TAS?

8       A.   Before.

9       Q.   But you met him after you met Kaine Wen, correct?

10      A.   Correct.

11      Q.   I'm going to mark Exhibit 12.  And this is another

12  e-mail with a few attachments.  So you can take a minute to

13  look through them and just let me know when you're ready.

14      A.   Will do.  Okay.

15           (Exhibit 12 was marked and attached.)

16  BY MS. GORDON:

17      Q.   So the bottom e-mail in the chain appears to be

18  from Tuong21@hotmail.com, which I believe is Mr. Nguyen's

19  e-mail address.  It's addressed to you.  It appears to be,

20  "Hello, Kenny.  See attachments for the documents that Jimmy

21  Lee needed to add a signer to the TAS HSBC bank account."

22           Who is Jimmy Lee?

23      A.   I'm not sure.

24      Q.   So this e-mail is related to the TAS HSBC bank

25  account, it appears.  When you -- after you opened that

CFPB-20221128-00018910

1   account, did you do anything else related to the account?

2       MR. MAY:  I'm going to object to the first part of the

3   question as counsel testifying and move to strike.

4       THE WITNESS:  No.  I really didn't do anything related

5   to the account.

6   BY MS. GORDON:

7       Q.   So the next e-mail up in the chain is from that

8   e-mail address that you identified as yours.  And it says,

9   "Hi, Tuong.  Please see attached files and have Shih sign

10  right under my signature next to authorized signer only."

11  And if you take a look at the first attachment, which is on

12  the page Bates stamped Lai-SWIFT 0004908, it's what appears

13  to be a Business Deposit Account Agreement form for HSBC.

14          Taking a look at this, does this refresh your

15  recollection as to anything you might have done related to

16  the TAS HSBC bank account?

17      A.   That looks like my signature.

18      Q.   Do you remember filling out this form?

19      A.   Yes.

20      Q.   What did you understand the purpose of this form

21  was?

22      A.   To transfer the ownership.

23      Q.   The ownership of what?

24      A.   Of TAS.

25      Q.   And who asked you to do that, if anyone?

1      A.   Kaine.

2      Q.   Did he tell you why he needed you to transfer the

3   ownership?

4      A.   Most -- let's see.  Just I wasn't able to help

5   him, so it was being transferred to someone who could.

6      Q.   Why weren't you able to help him?

7      A.   No -- no -- I knew nothing -- I know nothing about

8   the -- the escrow fund service.

9      Q.   So did he tell you that he needed someone more

10  familiar with the escrow industry then?  Was that the reason

11  for the ownership change?

12     A.   I don't know why he -- he didn't tell me anything.

13  He just said that I wasn't able to do it for him.

14     Q.   Did you have online access to the HSBC bank

15  accounts for TAS?

16     MR. MAY:  I'm sorry.  Could you repeat that?

17  BY MS. GORDON:

18     Q.   Did you have online access to the HSBC bank

19  accounts for TAS?

20     A.   No.

21     Q.   Do you know if anyone else had online access to

22  those accounts?

23     MR. MAY:  Objection.  Lack of foundation.

24     THE WITNESS:  I'm not sure.

25  ///

CFPB-20221128-00018912

McNamara vs.
National Merchant Center, Inc.

```
 1       A.   No.

 2       Q.   Was that something that you tried to keep quiet?

 3       A.   I just didn't talk about it.

 4       Q.   Did you tell TAS's bank that you were just the

 5  paper owner?

 6       A.   I'm sorry.  Can you repeat -- repeat that?

 7       Q.   Sure.  Did you tell TAS's bank that you were just

 8  the paper owner?

 9       A.   TAS's bank?

10       Q.   Yeah.

11       A.   No.  I didn't -- I didn't tell anybody.

12       Q.   Did you disclose to TAS's credit card processors

13  that you were just the paper owner?

14       MS. GORDON:  Objection.

15       THE WITNESS:  No.

16       MS. GORDON:  Argumentative, lacks foundation, calls for

17  speculation.

18  BY MR. MAY:

19       Q.   Now, I'm trying to understand -- how long have you

20  known Kaine Wen?

21       A.   It's probably over 20 years.

22       Q.   And I think you testified that you transferred the

23  ownership because you weren't able to help him out.  Did I

24  get that basically right?

25       A.   I -- I just did whatever he told me to do and --
```

Page 54

```
 1   and that's what he said.
 2        Q.   So why would you just do whatever Kaine Wen told
 3   you to do?
 4        A.   At the time it was, you know, someone I had
 5   trusted like a -- like a brother and -- and that's about it.
 6        Q.   But when you started out, did you think you were
 7   going to be running a legitimate company or be the owner of
 8   a legitimate company?
 9        A.   No.
10        Q.   So from the beginning you thought this was a fraud
11   that you were going to be --
12        A.   No.  No.  Definitely not that.  Sorry.  I just
13   thought I was going to be holding funds and I didn't think
14   that there was going to have any -- any issues related to
15   that.
16        Q.   And when you say just holding funds, what do you
17   mean by that?
18        A.   That the -- there's deposits being made into the
19   bank accounts and that's about it.  No one was able to
20   access it.
21        Q.   And so why -- which funds were going to go into
22   that bank account?  Whose funds would you be holding?
23        A.   I -- I had no idea.
24        Q.   So did you -- was it your understanding that Kaine
25   Wen was the one -- you say you were the paper owner.  So was
```

Pls.' Ex. 3
P. 412

CFPB-20221128-00018934

1   somebody else actually running the company?

2        A.   I -- I -- I don't know.  I'm assuming Kaine.

3        Q.   You say you don't know because -- did you

4   authorize Kaine to sign documents on your behalf?

5        A.   No.

6        Q.   So what did you think was going to be happening

7   once you opened TAS and opened a bank account?

8        A.   It was supposed to be someplace where clients

9   could keep their funds secure, safe, and then Kaine

10  approached me about trusting me.  And so if -- if the money

11  was in -- under my name, he -- he felt that that was safe.

12       Q.   And so you were going to safeguard the money that

13  was in that account?

14       A.   I don't know about safeguard.  It was -- I wasn't

15  going to touch it.  No one was going to touch it.

16       Q.   And you understood that's where the deposits were

17  going to go until they were able to be released and clear to

18  where they needed to go?

19       A.   As far as I understood it, yes.

20       MR. MAY:  I'm going to show you an e-mail.  It's going

21  to take me a second.  What's the last -- we were on Exhibit

22  16; is that right?

23       THE REPORTER:  Yes.

24       MS. GORDON:  Yes.

25       MR. MAY:  Let me see if I can figure this out.  It

CFPB-20221128-00018935

Plaintiffs' Exhibit 4

Message

_____

**From:** Tuong Nguyen [tuong21@hotmail.com]
**Sent:** 9/23/2019 5:21:22 PM
**To:** Demo User [j_lai2@hotmail.com]; Kenny Huang [kennytkhuang@gmail.com]
**Subject:** Fw: Signer that needed to be added on all TAS HSBC bank accounts
**Attachments:** 9-17 (1).pdf; 9-17 (2).pdf; 9-17 (3).pdf

```
┌─────────────────────┐
│      EXHIBIT        │
│        12           │
│  Depo of K. Huang   │
│   October 4, 2022   │
└─────────────────────┘
```

Hello Shih (Jimmy) Lai,

Please print out these forms and bring them into HSBC Arcadia.

Call Jimmy Lee first to see when is the best time to come and what documents you need to bring in. Also let him know you are Kenny Huang's business partner. I think Kenny told Jimmy Lee about you already.
Here is Jimmy Lee's Contact Info:
626 679 6369

When you talk to Jimmy Lee, ask him if Kenny needs to come in and do anything. Hopefully Kenny doesn't need to come in with you.

Tom

_____

**From:** KENNY HUANG <kennytkhuang@gmail.com>
**Sent:** Monday, September 23, 2019 3:37 PM
**To:** Tuong Nguyen <tuong21@hotmail.com>
**Subject:** Re: Signer that needed to be added on all TAS HSBC bank accounts
Hi Tuong,

Please see attached files and have Shih sign right under my signature next to AUTHORIZED SIGNER ONLY

On Mon, Sep 16, 2019 at 11:44 PM Tuong Nguyen <tuong21@hotmail.com> wrote:
Hello Kenny,

See attachments for the documents that Jimmy Lee needed to add a signer to the TAS HSBC bank account. Please forward Jimmy these documents and ask him if he needs anything else. Once Jimmy Lee adds this person as a signer, he can handle most of the banking activities for TAS. If he can be introduced to Jimmy also, that would be helpful Kenny. Let me know if you have any questions.

Regards,

Tom

 **HSBC**

# Business Deposit Account Agreement

**Company Legal Name:** TAS 2019 LLC                    **Tax ID Number:** _____

("Customer")

The Customer agrees:

- the Transactional Signers listed below are authorized to sign checks, drafts or other orders with respect to any funds of the Customer with HSBC Bank USA, National Association, (the "Bank") and/or against the specific account(s) listed below, inclusive of any checks, drafts or other orders in favor of any of the individuals listed below;
- and certifies that the signatures appearing opposite each such individual's name is his/her true and genuine specimen signature of such individual;
- all signers herein are authorized to access any electronic signature platform used by the Bank from time to time and electronically sign this document;
- the designated Authorized Individuals per the Customer's resolutions or other authorizing documentation are hereby authorized to access any electronic signature platform used by the Bank from time to time to electronically execute any bank or service agreement, or any document, mandate or instruction otherwise authorized under the Customer's resolutions or other authorizing documentation; and
- an electronic signature will have the same legal validity, enforceability and admissibility as would an original wet signature upon which the Bank may rely.

Check one box:     ☐ New Account            ☑ Supersedes all Signers on Existing Account

Optional: Attach manner of signing if anything other than any one signer.

The undersigned acknowledges that the Bank may debit your checking account(s) based on a single signature, and any multiple signature requirement that you may have shared with the Bank is for your internal use only, notwithstanding any communication or instruction to the Bank to the contrary. The undersigned will therefore not hold the Bank liable for any failure to assure compliance with any such signature requirements for its account(s).

| Name of Transactional Signer<br>Include all Transactional Signers for this Account which will supersede any previous list provided to the Bank. | Signature<br>For those signatures already on file with the Bank or on the Customer Resolutions / authorization, indicate "Signature on File". | Title<br>Must match Title on Customer's Resolutions / authorization. If signer is not on the Customer's Resolutions, use official title only. |
|---|---|---|
| KENNY HUANG | *[signature]* | MANAGER |
| SHIH HAO LAI | | AUTHORIZED SIGNER |
| | | |
| | | |
| | | |

By signing this agreement, the Customer agrees to be bound by the Bank's Rules for Commercial Deposit Accounts as well as the Terms and Charges Disclosures, and other ancillary terms, conditions and disclosures (if applicable), as amended from time to time.  Also, and when required by regulation, by signing below I confirm that I provided HSBC a completed "Certification Regarding Beneficial Owners of Legal Entity Customers" form; or confirmed that the current certification form on file with HSBC, is up to date and accurate.

**To be executed by Authorized Individuals who are authorized to sign agreements with the Bank and in accordance with Customer Resolutions or other authorization documentation.**

*[signature]*
_____
Signature

KENNY HUANG, MANAGER
_____
Print Name and Title

9/17/2019
_____
Date

_____
Signature

_____
Print Name and Title

_____
Date

FOR BANK USE
Account #:

REDACTED 2019

 **HSBC**

# Business Deposit Account Agreement

Company Legal Name:  TAS 2019 LLC                                    Tax ID Number: _____

("Customer")

The Customer agrees:

- the Transactional Signers listed below are authorized to sign checks, drafts or other orders with respect to any funds of the Customer with HSBC Bank USA, National Association, (the "Bank") and/or against the specific account(s) listed below, inclusive of any checks, drafts or other orders in favor of any of the individuals listed below;
- and certifies that the signatures appearing opposite each such individual's name is his/her true and genuine specimen signature of such individual;
- all signers herein are authorized to access any electronic signature platform used by the Bank from time to time and electronically sign this document;
- the designated Authorized Individuals per the Customer's resolutions or other authorizing documentation are hereby authorized to access any electronic signature platform used by the Bank from time to time to electronically execute any bank or service agreement, or any document, mandate or instruction otherwise authorized under the Customer's resolutions or other authorizing documentation; and
- an electronic signature will have the same legal validity, enforceability and admissibility as would an original wet signature upon which the Bank may rely.

Check one box:     ☐ New Account            ☒ Supersedes all Signers on Existing Account

Optional: Attach manner of signing if anything other than any one signer.

The undersigned acknowledges that the Bank may debit your checking account(s) based on a single signature, and any multiple signature requirement that you may have shared with the Bank is for your internal use only, notwithstanding any communication or instruction to the Bank to the contrary. The undersigned will therefore not hold the Bank liable for any failure to assure compliance with any such signature requirements for its account(s).

| Name of Transactional Signer<br>Include all Transactional Signers for this Account, which will supersede any previous list provided to the Bank | Signature<br>For those signature(s) already on file with the Bank or on the Customer Resolutions / authorization, indicate "Signature on File". | Title<br>Must match Title on Customer's Resolutions / authorization. If signer is not on the Customer's Resolutions, use official title only. |
|---|---|---|
| KENNY HUANG |  | MANAGER |
| SHIH HAO LAI |  | AUTHORIZED SIGNER |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |

By signing this agreement, the Customer agrees to be bound by the Bank's Rules for Commercial Deposit Accounts as well as the Terms and Charges Disclosures, and other ancillary terms, conditions and disclosures (if applicable), as amended from time to time. Also, and when required by regulation, by signing below I confirm that I provided HSBC a completed "Certification Regarding Beneficial Owners of Legal Entity Customers" form, or confirmed that the current certification form on file with HSBC, is up to date and accurate.

**To be executed by Authorized Individuals who are authorized to sign agreements with the Bank and in accordance with Customer Resolutions or other authorization documentation.**

_____                        _____
Signature                                                                      Signature

KENNY HUANG, MANAGER
Print Name and Title                                                        Print Name and Title

9/17/2019
Date                                                                              Date

FOR BANK USE
Account #:

REDACTED

 **HSBC**

# Business Deposit Account Agreement

Company Legal Name:  TAS 2019 LLC                                    Tax ID Number: _____

("Customer")

The Customer agrees:

- the Transactional Signers listed below are authorized to sign checks, drafts or other orders with respect to any funds of the Customer with HSBC Bank USA, National Association, (the "Bank") and/or against the specific account(s) listed below, inclusive of any checks, drafts or other orders in favor of any of the individuals listed below;
- and certifies that the signatures appearing opposite each such individual's name is his/her true and genuine specimen signature of such individual;
- all signers herein are authorized to access any electronic signature platform used by the Bank from time to time and electronically sign this document;
- the designated Authorized Individuals per the Customer's resolutions or other authorizing documentation are hereby authorized to access any electronic signature platform used by the Bank from time to time to electronically execute any bank or service agreement, or any document, mandate or instruction otherwise authorized under the Customer's resolutions or other authorizing documentation; and
- an electronic signature will have the same legal validity, enforceability and admissibility as would an original wet signature upon which the Bank may rely.

Check one box:        ☐ New Account              ☑ Supersedes all Signers on Existing Account

Optional: Attach manner of signing if anything other than any one signer.

The undersigned acknowledges that the Bank may debit your checking account(s) based on a single signature, and any multiple signature requirement that you may have shared with the Bank is for your internal use only, notwithstanding any communication or instruction to the Bank to the contrary. The undersigned will therefore not hold the Bank liable for any failure to assure compliance with any such signature requirements for its account(s).

| Name of Transactional Signer<br>Include all Transactional Signers for this Account, which will supersede any previous list provided to the Bank. | Signature<br>For those signatures already on file with the Bank or on the Customer Resolutions / authorization, indicate "Signature on File". | Title<br>Must match Title on Customer's Resolutions / authorization. If signer is not on the Customer 'a Resolutions, use official Title only. |
|---|---|---|
| KENNY HUANG | _signature_ | MANAGER |
| SHIH HAO LAI | | AUTHORIZED SIGNER |
| | | |
| | | |
| | | |
| | | |

By signing this agreement, the Customer agrees to be bound by the Bank's Rules for Commercial Deposit Accounts as well as the Terms and Charges Disclosures, and other ancillary terms, conditions and disclosures (if applicable), as amended from time to time. Also, and when required by regulation, by signing below I confirm that I provided HSBC a completed "Certification Regarding Beneficial Owners of Legal Entity Customers" form, or confirmed that the current certification form on file with HSBC, is up to date and accurate.

**To be executed by Authorized Individuals who are authorized to sign agreements with the Bank and in accordance with Customer Resolutions or other authorization documentation.**

_signature_

Signature _____

KENNY HUANG, MANAGER
Print Name and Title

9/17/2019
Date _____

Signature _____

Print Name and Title _____

Date _____

FOR BANK USE
Account #

<span style="color:red">REDACTED</span>2019

Lai-SWIFT_0004910
CFPB-20221128-00018648

Plaintiffs' Exhibit 5

Page 1

CONSUMER FINANCIAL PROTECTION BUREAU

In the Matter of:          )
                           )   No. 2018-1938-02
PREMIER STUDENT LOAN       )
CENTER                     )

---

CONFIDENTIAL
INVESTIGATIVE HEARING UNDER OATH OF

JOVANI ORTUNO

Santa Ana, California

Friday, July 12, 2019
Volume I

Reported by:
ANGELA METZ
CSR No. 12454

JOB No. 46814

PAGES 1 - 179

Page 2

1                CONSUMER FINANCIAL PROTECTION BUREAU

2

3

4

5

6
     In the Matter of:          )
7                                )   No. 2018-1938-02
     PREMIER STUDENT LOAN        )
8    CENTER                      )

9

10

11   _____

12                                U.S. Attorneys Office
                                  Ninth Floor; Room 9032
13                                411 West 4th Street
                                  Santa Ana, California
14
                                  Friday,
15                                July 12, 2019

16

17          Whereupon, the investigational hearing

18   testimony of JOVANI ORTUNO commenced, pursuant to notice

19   at 8:59 a.m.

20

21

22

23

24

25

Page 3

1    APPEARANCES:

2    For Consumer Financial Protection Bureau:

3        Consumer Financial Protection Bureau
         BY:   JESSE D. STEWART
4        BY:   SARAH M. PREIS
         ATTORNEYS AT LAW
5        1700 G Street, NW
         Washington, DC 20552
6        (202) 435-9318
         jesse.stewart@cfpb.gov
7        sarah.preis@cfpb.gov

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

CFPB-20230125-00000003

Page 16

1    then it was through there.

2        Q.    Did you interview?

3        A.    Yes, I did.

4        Q.    Who did you interview with?

5        A.    The manager at the time.  Her name was Monique.

6        Q.    Do you remember her last name?

7        A.    I think I do but I'm not exactly sure because I

8    know she used an alias working there.  So I don't want to

9    give you guys the wrong last name.

10       Q.    Do you remember her aliases?

11       A.    Yes, Washington.

12             MS. PREIS:  Do you know why she used an aliases?

13             THE WITNESS:  I do not, no.

14   BY MR. STEWART:

15       Q.    And you said you started in October 2017?

16       A.    Yes, I do remember, towards the end.

17       Q.    What position did you have with Premier Student

18   Loan Center when you started?

19       A.    The job title was processor.

20       Q.    What were your responsibilities as a processor?

21       A.    Basically there was a sales team.  I don't know

22   how they work.  They gather the clients and then somebody,

23   at the time, would delegate the files to us, of the

24   clients.  We would contact them, basically set everything

25   up for them, get, you know, try to gather their proof of

Page 26

1    I don't remember.  I think that's more honest, I don't

2    remember.  I did see both Albert and Kaine at the new

3    building for SL Account Management, that I can say and I

4    did see Albert at the Premier Student Loan Center as well.

5        Q.   When you started working for Premier Student Loan

6    Center, where did you go to work?  What was the address?

7        A.   I don't know the exact address but it was on

8    Technology Drive in Irvine.  I want to say it was 173

9    Technology Drive but I don't remember specifically.

10       Q.   Did you go to that address to work for Premier

11   Student Loan Center the entire time until March 2018?

12       A.   Yes, correct.

13       Q.   In March 2018 when you started working for SL

14   Account Management, where did you go to work?

15       A.   It was still in Irvine.  It was a different

16   building.  The address I believe was 8 Hughes.  The

17   building was 8 Hughes, yeah.

18       Q.   And did you go to that same location to work for

19   SL Account Management until you stopped working for the

20   company?

21       A.   Yes.

22       Q.   When did you stop working for the company?

23       A.   I don't know the exact date but it was definitely

24   the last week of May of this year, 2019.  So I don't even

25   think I worked there in June.  It had to be the last week

CFPB-20230125-00000026

Page  83

1       Q.   What are those four boxes -- which of those four

2   boxes would Debt Pay Pro check?

3       A.   From what I remember it had to be in the

4   financial difficulties.  That's the one it checked.

5       Q.   So as a processor for the companies whenever you

6   submitted a forbearance request you would submit it

7   marking the basis for request as financial difficulties?

8       A.   Yeah, Debt Pay Pro, that's what it would

9   automatically check off, yeah.

10      Q.   You said the only thing you would fill in were

11  the dates for the forbearance?

12      A.   Yeah, and then the system would generate the

13  rest.

14      Q.   How did you determine the dates?

15      A.   We were instructed to put a forbearance for three

16  months for the client, that was always the case.

17      Q.   So you always completed the forbearance request

18  for three months?

19      A.   That's what management wanted and that's how they

20  instructed us always, three months, because -- just

21  because they didn't want their current servicer's payments

22  to affect the payments going to Premier.  I don't know if

23  that makes sense.

24      Q.   Describe that a little more?

25      A.   So obviously -- every client situation is

Page 84

1   different but for the most part, clients are being billed

2   by their current servicer.  So they don't -- so the point

3   of the forbearance was to pause the account the servicers

4   end.  So whoever that servicer is so they would stop

5   billing the client for three months and that way it would

6   be easy or easier for the client to just pay Premier.

7        Q.    When you refer to the servicer billing the

8   consumer, what is the servicer charging the consumer for,

9   for loan payments?

10       A.    Yeah.  So from what I understand every client has

11   a servicer that holds their loans and they're being

12   billed, you know, for the loans and they would tell us to

13   send the forbearance request so we can pause -- so they

14   can pause the payments on the servicers end while we work

15   on the file and they just pay the company and then once

16   everything is done, the consolidation will get them away

17   from that servicer.

18       Q.    During this forbearance period you mentioned the

19   consumer is paying the company.  What is the consumer

20   paying the company for?

21       A.    So they were paying Premier and SL Account

22   Management to do the document preparation for

23   consolidation programs and forgiveness programs.  That was

24   always the pitch.  That was what it was for what they

25   would tell us.

Plaintiffs' Exhibit 6

Case 8:19-cv-01998-MWF-KS   Document 423-6   Filed 01/30/23   Page 428 of 514   Page ID
                                    #:12198
In re True Count Staffing Inc. d/b/a
EM Account Mgmt (SLT)
CONFIDENTIAL                                                      REDACTED
                                                                 PER 12 USC 3413

**Preidis, Stephanie**

**Subject:**                    Clarification

1. Premier Student Loan Center (PSLC) - REDACTED**8157** will operate as usual as a document prep company
2. AL Account MGMT (SLAM) – will collect new payments for Premier Student Loan Center (PSLC)
   REDACTED**8157**.

Stephanie Preidis
Electronic Merchant Systems
216-654-0239 Direct
888-558-4367 Ext 5101
866-225-6197 Fax
spreidis@emscorporate.com
www.emscorporate.com

   

1

Response of Electronic Merchant Systems to  CFPB Civil Investigative Demand
dated 5/10/2019 - received 6/10/2019
SL1 - 33
Pls.' Ex. 6
P. 428
CFPB-20221128-00013462

Case 8:19-cv-01998-MWF-KS   Document 323-6   Filed 01/30/23   Page 429 of 514   Page ID
#:12199

In re True Count Staffing Inc. d/b/a
BE Account Mgmt FSLC9

UNREDACTED
12 USC 3413

CONFIDENTIAL

Preidis, Stephanie

| | |
|---|---|
| **From:** | Kaine Wen <kaine@premierstudentloancenter.com> |
| **Sent:** | Thursday, February 22, 2018 1:36 PM |
| **To:** | Preidis, Stephanie |
| **Subject:** | Re: Corporate Restructure |

Hi Stephanie,

Yes, that is correct.


Kaine

On Feb 22, 2018, at 8:46 AM, Preidis, Stephanie <spreidis@emscorporate.com> wrote:

> Good morning,
>
> I left you a voicemail, please disregard.. I just want to make sure before I go upstairs, we are leaving PSLC as is and opening the new SLAM account.
>
> Please confirm and thank you for your patience.
>
> Best regards.
>
>
> Stephanie Preidis
> Electronic Merchant Systems
> 888-558-4367 Ext 5101
> 866-225-6197 Fax
> spreidis@emscorporate.com
> www.emscorporate.com
>
> <image001.png><image002.png><image003.png><image004.png>
>
> **From:** Kaine Wen [mailto:kaine@premierstudentloancenter.com]
> **Sent:** Wednesday, February 21, 2018 3:11 PM
> **To:** Preidis, Stephanie
> **Subject:** Corporate Restructure
>
> Hi Stephanie,
>
> The reason that we are requesting a new merchant account under SLAM is because of a corporate restructure.
>
> Currently:
>
> PSLC has (4) Departments: Sales, Processing, Customer Service, Billing.
> PSLC is operating out of 173 Technology Dr, Ste 202, Irvine, CA 92618, a ~15,000 sf office space.

1

Response of Electronic Merchant Systems to  CFPB Civil Investigative Demand
dated 5/10/2019 - received 6/10/2019

SL1 - 34

Pls.' Ex. 6
P. 429
CFPB-20221128-00013463

Case 8:19-cv-01998-MWF-KS    Document 166    Filed 01/30/23    Page 430 of 514    Page ID
#:12200

In re True Count Staffing Inc. d/b/a
BE Account Mgmt  (SL1)

UNREDACTED
12 USC 3413

CONFIDENTIAL

Effective March 5:

PSLC's Sales Department will continue to operate out of 173 Technology.
PSLC's Processing, Customer Service, and Billing Departments will physically move to 8 Hughes #210, Irvine, CA 92618, a ~10,000 sf office space that is ~5 miles away from 173 Technology.
SLAM will be the new entity which encompasses PSLC's former Processing, Customer Service, and Billing Departments.

This is the most ideal way for PSLC (Sales Department) and SLAM (Processing, Customer Service, and Billing Departments) to manage their own physical offices.

Rest assured, there are absolutely no issues or concerns with PSLC or SLAM.

For SLAM, I would like to request as high a monthly volume as EMS is comfortable with. Please see attached processing and bank statements, for reference. As you will see, we are processing high volume with low chargeback ratios, and our financials are strong and stable:

Best,

**Kaine Wen, Esq.**
**Premier Student Loan Center**
Managing Partner
173 Technology Dr, Ste 202
Irvine, CA 92618
E-mail: kaine@premierstudentloancenter.com

*Confidentiality Disclaimer: This e-mail correspondence and its attachments (if any) are intended exclusively for the above named addressee(s) and intended to be privileged and confidential. If they have come to you in error, please immediately notify the sender about the error and delete all copies of this e-mail correspondence along with its attachments. Thank you.*

2

Response of Electronic Merchant Systems to  CFPB Civil Investigative Demand
dated 5/10/2019 - received 6/10/2019

SL1 - 35

Pls.' Ex. 6
P. 430
CFPB-20221128-00013464

Case 8:19-cv-01998-MWF-KS   Document 424-9   Filed 01/30/23   Page 431 of 514   Page ID #:12201

In re True Count Staffing Inc. d/b/a
SL Account Mgmt (SLAM)

UNREDACTED
12 USC 3413

CONFIDENTIAL

Preidis, Stephanie

| | |
|---|---|
| **From:** | Kaine Wen <kaine@premierstudentloancenter.com> |
| **Sent:** | Tuesday, February 20, 2018 3:46 PM |
| **To:** | Preidis, Stephanie |
| **Subject:** | Re: New Corp Info |

We do not have to resell our customers. Existing customers are already enrolled with PSLC and will continue to get serviced by SLAM. New customers will be enrolled by PSLC and serviced by SLAM.

On Feb 20, 2018, at 12:29 PM, Preidis, Stephanie <spreidis@emscorporate.com> wrote:

> But, why are you splitting up PSLC when business is so good?  It would seem to me that you would have to sell your customers all over again when they get to SLAM and it would be easier for them to cancel?
>
> Stephanie Preidis
> Electronic Merchant Systems
> 888-558-4367 Ext 5101
> 866-225-6197 Fax
> spreidis@emscorporate.com
> www.emscorporate.com
>
> <image001.png><image002.png><image003.png><image004.png>
>
> **From:** Kaine Wen [mailto:kaine@premierstudentloancenter.com]
> **Sent:** Tuesday, February 20, 2018 2:55 PM
> **To:** Preidis, Stephanie
> **Cc:** Tom Nelson
> **Subject:** Re: New Corp Info
>
> Hi Stephanie,
>
>> 1. We need more information as to why you are dividing the business (PSLC) and what you are collecting on?  PSLC will no longer process any payments (what are they selling), since it will only be a sales company, receiving commissions from SLAM for referrals.
>
> PSLC will sell document preparation services for federal student loan programs and handle all sales related questions.
> SLAM will process the documents (preparation for submission) for federal student loan programs and provide ongoing customer service for non-sales related questions.
>
>> How many companies will SLAM be collecting for?
>
> For now, SLAM will be processing the documents for PSLC only, but may take on other companies in the future.
>
>> 2. What is PSLC collecting on?

1

Response of Electronic Merchant Systems to  CFPB Civil Investigative Demand
dated 5/10/2019 - received 6/10/2019

SL1 - 36

Pls.' Ex. 6
P. 431
CFPB-20221128-00013465

Since we are not allowed a PSLC descriptor under a SLAM merchant account, we have no choice but to:

1. Keep our PSLC merchant account as-is (same ownership, same EIN, same descriptor).

This is so PSLC's existing customers, pre-March 5, will continue to see the PSLC descriptor.

2. SLAM would like to apply for a merchant account with EMS, under the same terms as PSLC.

This is for SLAM's customers, beginning March 5, and they will see the SLAM descriptor.

3. PSLC can provide SLAM with a cross-corporate guarantee, if necessary.


Best,

**Kaine Wen, Esq.**
**Premier Student Loan Center**
Managing Partner
173 Technology Dr, Ste 202
Irvine, CA 92618
E-mail: kaine@premierstudentloancenter.com

*Confidentiality Disclaimer: This e-mail correspondence and its attachments (if any) are intended exclusively for the above named addressee(s) and intended to be privileged and confidential. If they have come to you in error, please immediately notify the sender about the error and delete all copies of this e-mail correspondence along with its attachments. Thank you.*



On Feb 20, 2018, at 11:39 AM, Preidis, Stephanie <spreidis@emscorporate.com> wrote:

Kaine,

Thank you for your explanation but we still need this one small part answered:

1. We need more information as to why you are dividing the business (PSLC) and what you are collecting on?  PSLC will no longer process any payments (what are they selling), since it will only be a sales company, receiving commissions from SLAM for referrals. How many companies will SLAM be collecting for?
2. What is PSLC collecting on?

Please advise.

Stephanie Preidis
Electronic Merchant Systems
888-558-4367 Ext 5101
866-225-6197 Fax

: 2

Response of Electronic Merchant Systems to  CFPB Civil Investigative Demand
dated 5/10/2019 - received 6/10/2019

SL1 - 37

Pls.' Ex. 6
P. 432
CFPB-20221128-00013466

Case 8:19-cv-01998-MWF-KS   Document 191-9   Filed 01/30/23   Page 433 of 514   Page ID
#:12203

In re True Count Staffing Inc. d/b/a
BE Account Mgmt (SL6)

UNREDACTED
15 USC 3413

CONFIDENTIAL

spreidis@emscorporate.com
www.emscorporate.com

<image001.png><image002.png><image003.png><image004.png>

---

**From:** Kaine Wen [mailto:kaine@premierstudentloancenter.com]
**Sent:** Tuesday, February 20, 2018 3:06 AM
**To:** Preidis, Stephanie
**Cc:** Tom Nelson
**Subject:** Re: New Corp Info

Hi Stephanie,

I honestly don't know how else I can explain this, but let me try again:

Currently:

PSLC is the front-end Sales company.
PSLC is the back-end Processing company.
PSLC collects the payments from the clients.

Effective March 5:

PSLC will be the front-end Sales company.
SLAM will be the back-end Processing company.
PSLC will refer enrolled clients to SLAM for processing.
SLAM will collect the payments from the clients.
SLAM will pay PSLC a percentage of the collected payments, for PSLC's client referrals.

Since PSLC can't be used as the descriptor on SLAM accounts, let's just keep things simple:

1. Keep our PSLC merchant account as-is (same ownership, same EIN, same descriptor).
2. SLAM would like to apply for a merchant account with EMS, under the same terms as PSLC.
3. PSLC can provide SLAM with a cross-corporate guarantee, if necessary.

Can we try to expedite the SLAM application and approval? I think you can use the second DocuSign form. Please let me know if you have any further questions.

Thank you.


Best,

**Kaine Wen, Esq.**
**Premier Student Loan Center**
Managing Partner
173 Technology Dr, Ste 202
Irvine, CA 92618
E-mail: kaine@premierstudentloancenter.com

*Confidentiality Disclaimer: This e-mail correspondence and its attachments (if any) are intended*

3

Response of Electronic Merchant Systems to  CFPB Civil Investigative Demand
dated 5/10/2019 - received 6/10/2019

SL1 - 38

Pls.' Ex. 6
P. 433
CFPB-20221128-00013467

CONFIDENTIAL

SER 12 USC 3413

*exclusively for the above named addressee(s) and intended to be privileged and confidential. If they have come to you in error, please immediately notify the sender about the error and delete all copies of this e-mail correspondence along with its attachments. Thank you.*

On Feb 19, 2018, at 11:25 AM, Preidis, Stephanie <spreidis@emscorporate.com> wrote:

Kaine,

I need definite answers to these questions or you are not going to get approved for your new account.

1. PSLC can't be used as the descriptor on SLAM accounts
2. . The red is a confusing concept.  Why are you dividing the businesses?
3. The owner of EMS wants clarification as to all the payments and companies you will be collecting on.

Please call me for further clarification.

Stephanie Preidis
Electronic Merchant Systems
888-558-4367 Ext 5101
866-225-6197 Fax
spreidis@emscorporate.com
www.emscorporate.com

<image001.png><image002.png><image003.png><image004.png>

**From:** Kaine Wen [mailto:kaine@premierstudentloancenter.com]
**Sent:** Friday, February 16, 2018 3:02 PM
**To:** Preidis, Stephanie
**Cc:** Tom Nelson
**Subject:** Re: New Corp Info

Hi Stephanie,

I have CC'ed Tom, our Accounting Manager, on this e-mail.

1. The descriptor has to reflect the new name of the business, MC/VISA rules and regulations....can have nothing to do with PSLC

Effective March 5, PSLC will no longer board new clients. However, all of PSLC's existing clients already processing through EMS are accustomed to seeing the PSLC descriptor. If we switch to the SLAM descriptor, this will cause confusion and lead to chargebacks.

That's why SLAM would like to have two MIDs with EMS:

1. Switch current PSLC merchant account ownership to SLAM, but keep the PSLC descriptor - this will be for all existing clients already assigned to EMS.

4

CONFIDENTIAL

2. Create new SLAM merchant account, with the SLAM descriptor - this will be for all new clients effective March 5.

      2. We need more information as to why you are dividing the businesses.

PSLC currently has four separate Departments under one company: Sales, Processing, Customer Service, and Billing. Effective March 5, PSLC is ceasing its Processing, Customer Service, and Billing Departments and only retaining its Sales Department. Thereafter, PSLC will handle the "front end" (sales). SLAM will handle the "back end" (processing, customer service, and billing).

      3. The owner of EMS wants clarification as to all the payments you will be collecting.

Effective March 5, SLAM will be collecting ALL client payments (both existing clients and new clients). PSLC will focus strictly on sales (signing up new clients), and SLAM will service (processing, customer service, and billing) ALL the clients. PSLC will no longer process any payments, since it will only be a sales company, receiving commissions from SLAM for referrals.

Please feel free to reach out with any additional questions.

Best,

Kaine

On Feb 16, 2018, at 2:05 PM, Preidis, Stephanie <spreidis@emscorporate.com> wrote:

Hello,

Hope you are enjoying your trip overseas.. we have some issues with your accounts:
1. The descriptor has to reflect the new name of the business, MC/VISA rules and regulations....can have nothing to do with PSLC
2. We need more information as to why you are dividing the businesses.
3. The owner of EMS wants clarification as to all the payments you will be collecting.

Please advise.

Stephanie Preidis
Electronic Merchant Systems
888-558-4367 Ext 5101
866-225-6197 Fax
spreidis@emscorporate.com
www.emscorporate.com

Response of Electronic Merchant Systems to  CFPB Civil Investigative Demand
dated 5/10/2019 - received 6/10/2019

SL1 - 40

Pls.' Ex. 6
P. 435
CFPB-20221128-00013469

CONFIDENTIAL

<image001.png><image002.png><image003.png><image004.png>

---

**From:** Kaine Wen [mailto:kaine@premierstudentloancenter.com]
**Sent:** Wednesday, February 14, 2018 1:30 PM
**To:** Preidis, Stephanie
**Cc:** Pattee, David
**Subject:** Re: New Corp Info

Hi Stephanie (and David),

> 1.   What exactly are you accepting payments for? I need to know everything that PSLC assists their clients with and what and how SLAM will be collecting payments for...................

SLAM is the back-end Processing Department and will collect payment for PSLC's student loan document preparation services.

> 2.   Per your email on 2/7/18 at 12:48 pm: please do not change the descriptor, as we want to avoid customer confusion. The descriptor is Premier Student Loan Center and we can't keep PSLC if we are changing the Corporate and dba.

I am pasting the below from my e-mail dated Feb 7:

*1. For Premier Student Loan Center's ("PSLC") existing merchant account, number* REDACTED*8157, with $425k monthly volume limit:*
*- Please change ownership from PSLC to our new company True Count Staffing Inc. d/b/a SL Account Mgmt ("SLAM"). SLAM will handle all of our payment processing. I have the corporate documents and DBA documents ready.*
*- Please do not change the descriptor, as we want to avoid customer confusion.*
*- We will provide new SLAM bank account information for deposits.*

*2. Add a second MID, also under SLAM, with additional monthly volume.*
*- We will use this MID to process new customer payments.*
*- Please have the descriptor reflect "SL Account Mgmt".*
*- We will provide new SLAM bank account information for deposits.*

*The reason for the changes is because PSLC will no longer be processing any customer payments. SLAM will be processing all customer payments. SLAM needs the original descriptor for PSLC's current customers. SLAM needs the new descriptor for its customers moving forward.*

To further clarify:

PSLC's existing customers have been seeing the PSLC descriptor on their payment transactions. We want to continue to keep the PSLC descriptor for these clients. If we change the descriptor to SLAM, there will surely be customer confusion which will likely lead to chargebacks.

6

Response of Electronic Merchant Systems to CFPB Civil Investigative Demand
dated 5/10/2019 - received 6/10/2019

SL1 - 41

Pls.' Ex. 6
P. 436
CFPB-20221128-00013470

In re True Count Staffing Inc. d/b/a
SLAM Account Mgmt - SL49

Case 8:19-cv-01998-MWF-KS   Document 262-9   Filed 01/30/23   Page 437 of 514   Page ID
#:12207

UNREDACTED
15 USC 3413

CONFIDENTIAL

For all "new" customers, beginning approximately March 5, SLAM will explain that it is the back-end Processing Department for PSLC and alert the clients that the payment transaction will reflect the SLAM descriptor.

Best,

Kaine

On Feb 14, 2018, at 1:20 PM, Preidis, Stephanie <spreidis@emscorporate.com> wrote:

There are a couple of issues that we need clarification on:

1. What exactly are you accepting payments for?  I need to know everything that PSLC assists their clients with and what and how SLAM will be collecting payments for...................
2. Per your email on 2/7/18 at 12:48 pm:  please do not change the descriptor, as we want to avoid customer confusion:  The descriptor is Premier Student Loan Center and we can't keep PSLC if we are changing the Corporate and dba.

Please advise.

Stephanie Preidis
Electronic Merchant Systems
888-558-4367 Ext 5101
866-225-6197 Fax
spreidis@emscorporate.com
www.emscorporate.com

<image001.png><image002.png><image003.png><image004.png>

**From:** Kaine Wen [mailto:kaine@premierstudentloancenter.com]
**Sent:** Wednesday, February 14, 2018 1:00 PM
**To:** Preidis, Stephanie
**Subject:** Re: New Corp Info

The slaccountmgmt.com website will soft-launch by the start of next week.

On Feb 14, 2018, at 12:45 PM, Preidis, Stephanie <spreidis@emscorporate.com> wrote:

Hello,

7

Response of Electronic Merchant Systems to  CFPB Civil Investigative Demand
dated 5/10/2019 - received 6/10/2019

SL1 - 42

Pls.' Ex. 6
P. 437
CFPB-20221128-00013471

CONFIDENTIAL

When will your website be up and running?

Stephanie Preidis
Electronic Merchant Systems
888-558-4367 Ext 5101
866-225-6197 Fax
spreidis@emscorporate.com
www.emscorporate.com

<image001.png><image002.png><image003.png><image004.png>

**From:** Kaine Wen [mailto:kaine@premierstudentloancenter.com]
**Sent:** Monday, February 12, 2018 12:13 PM
**To:** Preidis, Stephanie
**Subject:** Re: New Corp Info

Hi Stephanie,

Did you send them to the updated e-mail address, kaine@slaccountmgmt.com?

I am out of the country this week so we will have to communicate by e-mail, my apologies in advance.


Best,

Kaine




On Feb 12, 2018, at 11:54 AM, Preidis, Stephanie <spreidis@emscorporate.com> wrote:

The DocuSigns were resent earlier this morning.  Please call me if you do not receive them.

Sorry for the inconvenience.

Stephanie Preidis
Electronic Merchant Systems
888-558-4367 Ext 5101
866-225-6197 Fax
spreidis@emscorporate.com
www.emscorporate.com


-----Original Message-----
From: Preidis, Stephanie

8

Response of Electronic Merchant Systems to  CFPB Civil Investigative Demand
dated 5/10/2019 - received 6/10/2019

SL1 - 43

Pls.' Ex. 6
P. 438
CFPB-20221128-00013472

Case 8:19-cv-01998-MWF-KS   Document 229-9   Filed 01/30/23   Page 439 of 514   Page ID
#:12209

In re True Count Staffing Inc. d/b/a
BE Account Mgmt   SL#9

UNREDACTED
15 USC 3413

CONFIDENTIAL

Sent: Saturday, February 10, 2018 12:04 PM
To: Kaine Wen
Subject: Re: New Corp Info

For some reason, I can't open and resend your DocuSigns.  Will have to resend on Monday.

Sent from my iPad

On Feb 9, 2018, at 6:16 PM, Kaine Wen <kaine@premierstudentloancenter.com> wrote:

Nothing in my Junk Mail. If they are Docusign links, the size of the file shouldn't matter.

On Feb 9, 2018, at 3:13 PM, Preidis, Stephanie <spreidis@emscorporate.com> wrote:

Look in you junk mail:.......large file.

Sent from my iPad

On Feb 9, 2018, at 5:33 PM, Kaine Wen <kaine@premierstudentloancenter.com> wrote:

Here is the voided check for True Count:

On Feb 9, 2018, at 1:44 PM, Kaine Wen
<kaine@premierstudentloancenter.com<mailto:kaine@premierstudentloancenter.com>> wrote:

Hi Stephanie,

I did not receive the two Docusign emails, can you resend?

9

Response of Electronic Merchant Systems to  CFPB Civil Investigative Demand
dated 5/10/2019 - received 6/10/2019

SL1 - 44

Pls.' Ex. 6
P. 439
CFPB-20221128-00013473

Case 8:19-cv-01998-MWF-KS   Document 442-6   Filed 01/30/23   Page 440 of 514   Page ID
#:12210

In re True Count Staffing Inc. d/b/a
SL Account Mgmt

UNREDACTED
4th USC 3413

CONFIDENTIAL

Best,

Kaine

On Feb 9, 2018, at 1:23 PM, Preidis, Stephanie <spreidis@emscorporate.com<mailto:spreidis@emscorporate.com>> wrote:

Hello,

I did two complete sets of paperwork. I'm not sure what will be required but more is always better and then we can throw what we don't need away (Iron Mountain). I thought you were staying in the same location? Also, I need a voided check with the business name imprinted on the check or a bank letter.

Have a wonderful weekend.

Stephanie Preidis
Electronic Merchant Systems
888-558-4367 Ext 5101
866-225-6197 Fax
spreidis@emscorporate.com<mailto:spreidis@emscorporate.com>
www.emscorporate.com<http://www.emscorporate.com/>

<image001.png><http://www.twitter.com/EMScorporate><image002.png><http://www.youtube.com/emscorporate><image003.png><http://www.facebook.com/emscorporate><image004.png><http://www.linkedin.com/company/electronic-merchant-systems>

From: Kaine Wen [mailto:kaine@premierstudentloancenter.com]
Sent: Friday, February 9, 2018 4:15 AM
To: Preidis, Stephanie
Subject: New Corp Info

Hi Stephanie,

I apologize for not providing the new corporate information to you earlier, but here they are:

True Count Staffing Inc.
d/b/a SL Account Mgmt
EIN: REDACTED4249
Years in Business: 1

8 Hughes, #210
Irvine, CA 92618
(424) 333-8290

Kaine Wen
kaine@slaccountmgmt.com<mailto:kaine@slaccountmgmt.com>
B4717851
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

10

Response of Electronic Merchant Systems to CFPB Civil Investigative Demand
dated 5/10/2019 - received 6/10/2019

SL1 - 45

Pls.' Ex. 6
P. 440
CFPB-20221128-00013474

Case 8:19-cv-01998-MWF-KS   Document 423-3   Filed 01/30/23   Page 441 of 514   Page ID #:12211

In re True Count Staffing Inc. d/b/a
REMIT Account Mgmt (...)

UNREDACTED

CONFIDENTIAL

USC 3413

Owner, 100%
777 E Sierra Madre Ave
Azusa, CA 91702
Years at Residence: 3.5

JP Morgan Chase Bank
Business Checking Account
Routing Number: 322271627
Account Number: REDACTED 1126

Also, the Credit Repair and Debt Relief Addendums do NOT apply to us.

Please revise and resend, thank you!

Best,

Kaine Wen, Esq.
Premier Student Loan Center
Managing Partner
173 Technology Dr, Ste 202
Irvine, CA 92618
E-mail: kaine@premierstudentloancenter.com<mailto:kaine@premierstudentloancenter.com>

Confidentiality Disclaimer: This e-mail correspondence and its attachments (if any) are intended exclusively for the above named addressee(s) and intended to be privileged and confidential. If they have come to you in error, please immediately notify the sender about the error and delete all copies of this e-mail correspondence along with its attachments. Thank you.

<True Count Voided Check.pdf>

Response of Electronic Merchant Systems to  CFPB Civil Investigative Demand
dated 5/10/2019 - received 6/10/2019

SL1 - 46
Pls.' Ex. 6
P. 441
CFPB-20221128-00013475

Plaintiffs' Exhibit 7

REDACTED
PER 12 USC 3413

DocuSign Envelope ID: DEC01BE6-0424-4D9A-AB20-DB5C0AF9717A

0415 AR

**electronic merchant systems**  **N·1 Merrick Bank**  CHESAPEAKE BANK

5005 Rockside Road, Penthouse 100,
Independence, Ohio 44131
Phone: 800-726-2117
Fax: 216-674-3110
www.emscorporate.com

**MERCHANT AGREEMENT**

Merchant acknowledges that its obligations to EMS and Bank under this agreement relate to the processing of transactions on behalf of Merchant and that, as such, this agreement is solely commercial and business purposes, and not for personal, family or household purposes.

☐ Chesapeake Bank Kilmarnock, VA   ☐ Merrick Bank South Jordan, UT
Merrick Bank 135 Crossways Park Drive North, Suite A, Woodbury, NY 11797   800-267-2256
Chesapeake Bank 5000 Foundation Bl, Williamsburg, VA 23188   757-941-1335

**Merchant Number** Redacted 8157

| MCC | | MN | |
|---|---|---|---|
| Office Number 160 | Account Mgr Michael Anthony | | Account Rep Stephanie Preidis |

## BUSINESS NAME (S)

| Corporate or Legal Name Consumer Advocacy Center Inc. | | No. Locations 2 | Doing Business As Premier Student Loan Center | | |
|---|---|---|---|---|---|
| Corporate Address 29901 Santa Margarita Pkwy Suite 200F | | | Same As Corporate ☐ | Location Address | |
| City Rancho Santa Margarita | State CA | Zip 92688 | City | State | Zip |
| Telephone Number (888) 548-0476 | Fax Number ( ) | | Telephone Number ( ) | Alternate Phone ( ) | |
| Federal Tax ID REDACTED 0303 | Contact Person | | Email Address kaine@premierstudentloancenter.com | | Mail To: ☐ Corporate ☐ Location |

## MERCHANT PROFILE

| | PROCESSING HISTORY | |
|---|---|---|
| Type of Ownership ☐ Sole Proprietor ☒ Corporation ☐ Partnership ☐ LLC | Type of Goods Sold ___ SIC/MCC | Has the business or any associated owner ever been terminated as a VISA®/MasterCard®/Discover®/American Express® merchant? | ☐ YES ☒ NO |
| Length of Ownership YRS 15 MOS | Length at Location YRS 1 MOS | Year Business Established 2014 | Do you currently accept VISA®/MasterCard®/Discover®/American Express®? If YES, please submit 3 most current monthly statements. | ☐ YES ☒ NO |
| Web Address http:premierstudentloancenter.com/ | | Are there third parties/payment applications involved with your payment process? If YES, identify. NO | ☐ YES ☐ NO |

## CREDIT CARD TRANSACTION PROFILE

| | Is your business PCI compliant? YES | ☒ YES ☐ NO |
|---|---|---|
| ☐ Retail | On Premise Sales ___ % Sales Swiped Through POS terminal ___ % | |
| ☐ Restaurant w/Tip | Off Premise Sales ___ % | Has your business had any ongoing or prior data compromise investigations? NO | ☐ YES ☐ NO |
| ☐ Lodging | Mail Order ___ % | Additional Services    Merchant Number |
| ☐ Trade/Craft Shows | Sales Keyed Into POS terminal ___ % | American Express _____ ☐ EDC ☐ Auth |
| ☐ Mail/Phone Order | Telephone Order ___ % 100 % | Diners Club _____ ☐ EDC ☐ Auth |
| ☒ Internet | Internet 100 % | |
| ☐ Service | MUST TOTAL 100%    MUST TOTAL 100% | |

## OWNERS AND OFFICERS

| Name (1) Please Print Kaine Wen | Title Gen Counsel | Residential Address, City, State, Zip, County Redacted | | Drivers License Number |
|---|---|---|---|---|
| SSN 3143 | Equity Ownership 5% % | Time at Residence YRS MOS ☐ Own ☐ Rent | Date of Birth REDACTED 1977 | Residence Telephone ( 424-333-8290 |
| Name (2) Please Print | Title | Residential Address, City, State, Zip, County | | Drivers License Number |
| SSN | Equity Ownership % | Time at Residence YRS MOS ☐ Own ☐ Rent | Date of Birth / / | Residence Telephone ( ) |
| BANK REFERENCE JP Morgan Chase Bank | Account # REDACTED 1522 | Telephone Number ( ) | Contact |
| TRADE REFERENCE Jay LaRue | Account # | Telephone Number 714-619-5730 | Contact |
| TRADE REFERENCE | Account # | Telephone Number ( ) | Contact |
| TRADE REFERENCE | Account # | Telephone Number ( ) | Contact |

## MERCHANT SITE INSPECTION REPORT (must be completed by sales representative)

| Merchant Location Area Is Zoned Square Footage | ☐ Shopping Center ☐ Commercial ☐ 0-250 | ☐ Retail Storefront ☐ Residential ☐ 251-500 | ☐ Residence ☐ Industrial ☐ 501-2000 | ☐ Mobile Merchant ☐ 2001+ | ☐ Office Building |
|---|---|---|---|---|---|

Does the inventory, merchandise, and staff appear to be consistent with the type of business? ☐ YES ☐ NO  If no, please explain:

| The Merchant ☐ Owns ☐ Leases | Landlord's Name Or Mortgage Holder | | | Telephone Number ( ) |
|---|---|---|---|---|

General Comments by Inspector

| I hereby verify that I ☐ have ☐ have not physically inspected the business premises of the merchant at this address and the information stated above is correct to the best of my knowledge. | Signature of Rep/Inspector | Date 10.13.15 |
|---|---|---|

©2015 Electronic Merchant Systems    Electronic Merchant Systems is a registered ISO/MSP of Chesapeake Bank, and Merrick Bank.

Response of Electronic Merchant Systems to CFPB Civil Investigative Demand
dated 5/10/2019 - received 6/10/2019

PSL - 1
Pls.' Ex. 7
P. 443
CFPB-20221128-00013260

In re Consumer Advocacy Center Inc. d/b/a
Premier Student Loan Center ("PSL")

UNREDACTED
PER 12 USC 3413



DocuSign Envelope ID: DEC01BE6-0424-4D9A-AB20-DB5C0AF9717A

## MERCHANT AGREEMENT

0415 AR

### DEBIT / CREDIT AUTHORIZATION

MERCHANT hereby authorizes BANK and EMS in accordance with this MERCHANT Agreement to initiate debit/credit entries to MERCHANTS' checking account as indicated below. This authority is to remain in full force and effect during the term of the Agreement. This authorization extends to such entries in said account concerning lease, rental or purchase agreement applying to POS terminal, accompanying equipment, check guarantee fees and/or gift/loyalty card fees.

**DO NOT USE A DEPOSIT TICKET**
**MAKE SURE CHECK IS VOIDED PROPERLY**
**CHECK MUST BE MICR ENCODED WITH ABA ROUTING NUMBER AND ACCOUNT NUMBER**
**MAKE SURE CHECK IS PRE-PRINTED WITH MERCHANT BUSINESS NAME**

*(left margin: STAPLE CHECK HERE)*

### AMERICAN EXPRESS CARD ACCEPTANCE

☐ By checking this box, Merchant elects to accept payments via American Express (Ineligible Merchants will not be enrolled). Merchant may opt out of accepting American Express Cards at any time without directly or indirectly affecting its rights to accept other Cards.

☐ By checking this box, Merchant opts out of receiving future commercial marketing communications from American Express. Note that you may continue to receive marketing communications while American Express updates its records to reflect your choice. Opting out of commercial marketing communications will not preclude you from receiving important transactional or relationship messages from American Express.

### SCHEDULE OF FEES

| | | | | | |
|---|---|---|---|---|---|
| ☐ VISA/MasterCard/Discover* | Discount | 2.75 % + | .20 ¢ Transaction | $0.30 Batch Headers | |
| ☐ American Express* | Discount | % + | ¢ Transaction | $0.60 Voice ARU | |
| ☐ Interchange Plus | Discount | % + | ¢ Transaction | $15.00 Monthly 100K Data and Breach Protection | 5.00 |
| ☐ Pin Debit Network | Discount | % + | ¢ Transaction | $25.00 Monthly Minimum (Visa/MasterCard/Discover/American Express Discount) | |
| ☐ Quote Rates | | % + | ¢ Transaction | $75.00 Semi-Annual Technology Upgrade and Update | |
| ☐ Quote Rates | | % + | ¢ Transaction | $20.00 Monthly Access and Online Statements | 5.00 |
| ☐ Quote Rates | | % + | ¢ Transaction | $0.25 Third party authorizations per Transaction | |
| ☐ Quote Rates Authorize.Net | 19.00 % + | ¢ Transaction | | |
| ☐ eCommerce | Monthly $ | % + | ¢ Transaction | | |

Additional charge of $.10 and 2.35% of sales amount for International, commercial, or Transactions that do not meet the least qualified interchange rate qualification criteria for credit card and unregulated signature debit transactions. Fees of $25.00 per retrieval request, $45.00 per chargeback and $45.00 per returned ACH item. For restaurants, supermarkets, hotel, passenger transport and gas station merchants, standard, reward, and world Visa/MasterCard credit cards and unregulated signature debit cards will be surcharged .65%. Card association's network transaction fees, assessments and $.10 will be charged to the merchant on every transaction. PIN debit network fees include base switch, acquirer, interchange and authorization expenses. All signature debit card sales will be surcharged $.10 per transaction. Regulated signature debit card transactions will process at the lowest qualified credit card rate unless otherwise specified. Unregulated signature debit card transactions will process at the corresponding credit card rate unless otherwise specified. Merchant will pay all applicable Card Brand registration fees. Section 6 of this Agreement provides more detail as to how Merchant fees contained in this Schedule of Fees are calculated. This Schedule of Fees does not provide all information pertinent to this Merchant Agreement. Merchant is advised to thoroughly review this Agreement, including the attached terms and conditions, and to contact EMS or Bank with any questions. **THE ABOVE SCHEDULE OF FEES IS PREDICATED ON THE FOLLOWING:** MY BUSINESS:

MAX MONTHLY SALES VOLUME: $ 150,000   AVERAGE TICKET SIZE:$ 450   HIGHEST TICKET SIZE: $ 4,500

OFFICERS AND OWNERS OF MERCHANT WARRANT THAT THE AVERAGE MONTHLY SALES VOLUME AND AVERAGE TICKET SIZE ARE ACCURATE AND ACKNOWLEDGE THAT ANY VARIANCE MAY RESULT IN THE DELAY OR THE WITHHOLDING OF FUNDS SETTLEMENT OR TERMINATION OF THE MERCHANT AGREEMENT. All information contained in the attached Merchant Application was completed by MERCHANT or any of its owners and/or authorized officers of Merchant, who hereby represent and warrant that all such information and documentation submitted in connection with this Merchant Application is true, complete and correct. No spaces were left incomplete, N/A or None is to be filled in any space where applicable. Merchant acknowledges having received and read a copy of this agreement, including the attached Terms and Conditions which are incorporated herein by reference, that it agrees to be bound by the agreement and all of its terms, and that the agreement shall not be effective until approved by Bank and EMS. THIS IS AN AUTOMATICALLY RENEWABLE 24 MONTH MERCHANT CONTRACT, CANCELLATION DURING THE TERM WILL RESULT IN A $350 EARLY TERMINATION FEE. MERCHANT AGREES TO COMPLY WITH PCI COUNCIL DATA SECURITY STANDARDS (HEREINAFTER DEFINED) WITHIN 90 DAYS AFTER SIGNING THIS AGREEMENT. FAILURE TO DO SO WILL RESULT IN AN ADDITIONAL $50.00 MONTHLY FEE UNTIL MERCHANT BECOMES COMPLIANT. AN INVESTIGATIVE CONSUMER REPORT MAY BE MADE IN CONNECTION WITH THE ATTACHED APPLICATION. MERCHANT AUTHORIZES BANK, EMS, AND THEIR AGENTS AND AFFILIATES, OR ANY CREDIT REPORTING AGENCY EMPLOYED BY THEM TO INVESTIGATE THE REFERENCES GIVEN OR ANY OTHER STATEMENTS OR DATA OBTAINED FROM MERCHANT, OR ANY OF THE UNDERSIGNED PRINCIPALS, FOR THE PURPOSE OF THIS APPLICATION OR ANY APPLICATION FOR ACCOMPANYING POS EQUIPMENT FINANCING.

### AGREED AND ACCEPTED

IMPORTANT INFORMATION ABOUT PROCEDURES FOR OPENING A NEW ACCOUNT. To help the government fight the funding of terrorism and money laundering activities, Federal law requires all financial institutions to obtain, verify, and record information that identifies each person who opens an account. What this means for you. When you open an account, we will ask for your name, address, date of birth, and other information that will allow us to identify you. We may also ask to see your driver's license or other identifying documents.

Premier Student Loan Center
Print Merchant Name

(1) Sign X _Kaine Wen_   General Counsel   11/2/2015
87483AE8A34E4C8...   Title   Date

### CORPORATE RESOLUTION

The person(s) signed by #1 and #2 have the authority to execute this Merchant Agreement with BANK and EMS on behalf of the corporation.

Sign X _Kaine Wen_   General Counsel   11/2/2015
87483AE8A34E4C8...   Title   Date

By my signature, I verify that I already own a manual imprinter and will provide imprinted sales drafts whenever necessary.

Sign X _____
Title   Date

### PERSONAL GUARANTY FROM OWNER/OFFICER

In consideration of BANK and EMS entering into this Merchant Agreement ("Agreement") with the above named Merchant, the undersigned (jointly and severally if more than one) hereby absolutely and unconditionally guaranties(s) the full and prompt payment by MERCHANT of any and all amounts it owes to BANK and EMS, and the performance of all MERCHANT'S obligations, under this Agreement as may be subsequently amended from time to time, whether before or after termination or expiration of the Agreement. This Guaranty is a guaranty of payment, and not of collection, and a debt of the undersigned guarantor(s) for his or her own account. The undersigned guarantor(s) agree(s) to pay or perform upon demand and waive(s) any notice, presentment, demand, collection from others or any delay in enforcement. This Guaranty includes (i) any amount returned by the BANK and EMS after receipt due to any bankruptcy or similar law and (ii) BANK's and EMS's expenses including attorney fees and costs. Any sums owing by the MERCHANT to the undersigned guarantor(s) shall be subordinated to sums owed to BANK and EMS. This Guaranty is continuing, binding upon heirs and successors and may not be changed except in writing and signed by BANK and EMS. The undersigned hereby authorize(s) BANK and EMS to obtain from any credit reporting agency/and/or EXPERIAN/EQUIFAX pertaining to the undersigned and give(s) BANK and EMS continuing authority to obtain such information in connection with the maintenance, renewal or extension of the Agreement. Guarantor(s) acknowledge(s) and agree(s) that this guaranty is made as part of a transaction primarily for business and commercial purposes and is not primarily for personal, family, or household purposes.

(1) Sign X _Kaine Wen_   11/2/2015   Kaine Wen
87483AE8A34E4C8...   NO TITLE PERMITTED   Date   PLEASE PRINT NAME

(2) Sign X _____
NO TITLE PERMITTED   Date   PLEASE PRINT NAME

### EMS AND BANK USE ONLY

EMS Approval _____   Declined By _____
Signature   Title   Date   Signature   Title   Date

Bank Approval _____   TERMINAL ID NUMBER _____
Signature   Title   Date

Merchant Setup _____ (Initials)   MERCHANT NUMBER _____

©2015 Electronic Merchant Systems   Electronic Merchant Systems is a registered ISO/MSP of Chesapeake Bank, and Merrick Bank.

Response of Electronic Merchant Systems to  CFPB Civil Investigative Demand
dated 5/10/2019 - received 6/10/2019

PSL - 2
Pls.' Ex. 7
P. 444
CFPB-20221128-00013261

UNREDACTED
PER 12 USC 3413

In re Consumer Advocacy Center Inc. d/b/a
Premier Student Loan Center ("PSL")

CONFIDENTIAL

MERCHANT AGREEMENT   841246

Premier Student Loan Center

DocuSign Envelope ID: DEC01BE6-0924-4B9A-AB20-DB5C0AF9717A

**THIS MERCHANT AGREEMENT** (the "Agreement"), which includes the attached Merchant Application (the "Application"), is made and entered into by and among Chesapeake Bank, a national banking association, or Merrick Bank, a national banking association, depending upon which such institution is setting Transactions for Merchant ("Bank"), France David Corporation, an Ohio corporation doing business as Electronic Merchant Systems ("EMS"), and the undersigned Merchant ("Merchant") and its guarantor(s).

WHEREAS, Bank is engaged in the business of providing settlement services to Merchants that accept a valid credit card or valid off-line debit card (hereinafter, each a "Card") of Visa(R), U.S.A., Inc. ("Visa"), MasterCard(R) International, Inc. ("MasterCard"), Discover(R) Financial Services ("Discover"), American Express(R) Travel Related Services Company, Inc. ("American Express") or other credit card brands (hereinafter, each a "Card Brand" and, collectively, the "Card Brands") for payment for goods and/or services sold, rented or rendered by Merchant; and

WHEREAS, EMS is registered with Visa as an Independent Sales Organization, with MasterCard as a Member Service Provider, and with American Express as an OptBlue(R) Participant Sales Entity and has agreed with the Bank to provide credit card processing, authorization and related services for Merchants that use Bank's settlement services for Card transactions (individually, a "Transaction" and, collectively, "Transactions"); and

WHEREAS, Merchant desires to use the services of Bank and EMS to authorize, process and settle Transactions undertaken by any authorized user of a Card (collectively, the "Services") in accordance with the rules, regulations, procedures and requirements imposed or adopted by Visa, MasterCard, American Express or other Card Brands as amended from time to time (the "Rules") and on the terms and conditions hereinafter set forth.

NOW, THEREFORE, in consideration of the foregoing and of the representations, covenants and agreements set forth in this Agreement, the parties hereby agree as follows:

**1. Acceptance/Acceptance of Cards.** Merchant shall honor and accept, without discrimination, all valid Cards when properly presented as payment by a cardholder or authorized user and upon obtaining authorization for such Transaction at advance from the authorization center in accordance with the terms and conditions of this Agreement. Merchant shall not accept a Card for any unlawful transaction. Merchant will submit all authorized Transactions for its business exclusively to Bank and EMS. Merchant shall, for all Card Brand fines, fees, penalties and all other assessments or indebtedness levied by Card Brands and/or regulatory agencies to Bank or EMS which are attributable...

**2. Point of Sale Devices.** (a) Merchant shall utilize and maintain, at Merchant's expense, Point of Sale ("POS") devices and terminal(s), proprietary software and related equipment approved by Bank and EMS for all Transactions...

**3. Card Brand and Payment Card Industry Rules.** (a) Merchant shall fully comply with and abide by the Rules (including without limitation the following which Merchant acknowledges are strictly enforced by Visa, MasterCard and American Express)...

**4. Mail, Telephone, E-Commerce (Internet), Recurring and Pre-Authorized Transactions.** (a) Merchant understands that mail, telephone and e-commerce (Internet) Transactions have a substantially higher risk of Chargeback and cardholder dispute than Card "present" Transactions, as Merchant will not have an imprinted or magnetically "swiped" Transaction with the cardholder's signature on the sales draft...

**5. Telephone, E-Commerce (Internet), Recurring and Pre-Authorized Transactions.** (a) Merchant understands that mail, telephone and e-commerce (Internet) Transactions...

**6. Fraudulent Sales, Factoring or Laundering.** Merchant shall never accept or deposit or enter into a POS terminal a Transaction not authorized by the Cardholder, or a Transaction made by any entity other than the Merchant...

**7. Authorization.** Approval by, or on behalf of, a cardholder's bank or the bank that issued the Card (hereinafter, "Authorization") is required on all Transactions...

Response of Electronic Merchant Systems to  CFPB Civil Investigative Demand
dated 5/10/2019 - received 6/10/2019

PSL - 3

Pls.' Ex. 7

P. 445

CFPB-20221128-00013262

UNREDACTED

In re Container Advocacy Center d/b/a
Premier Student Loan Center ("PSL")

CONFIDENTIAL
PER 12 USC 3413

DocuSign Envelope ID: DEC01BE6-0424-4D9A-AB20-DB5C0AF9717A

MERCHANT AGREEMENT 6412A

*[Page consists of dense, small-print legal text of a Merchant Agreement organized in numbered sections, including:]*

**7. Settlement.**

**8. Payment.**

**9. Discount Fees, Transaction Fees, and Access Fees.**

**10. Sales Drafts.**

**11. Retention of Records.**

**12. Chargebacks.**

**13. Returns and Credits.**

Response of Electronic Merchant Systems to CFPB Civil Investigative Demand
dated 5/10/2019 - received 6/10/2019

PSL - 4

Pls.' Ex. 7
P. 446

CFPB-20221128-00013263

In re Consumer Advocacy Center Inc. d/b/a
Premier Student Loan Center ("PSL")

UNREDACTED
CONFIDENTIAL
PER 12 USC 3413

Premier Student Loan Center

DocuSign Envelope ID: DEC01BE0-0424-4D9A-AB20-DB5C0AF9717A

MERCHANT AGREEMENT 8418-A

Response of Electronic Merchant Systems to  CFPB Civil Investigative Demand
dated 5/10/2019 - received 6/10/2019

PSL - 5

Pls.' Ex. 7
P. 447
CFPB-20221128-00013264

CONFIDENTIAL

In re Consumer Advocacy Center Inc. d/b/a Premier Student Loan Center ("PSL")

UNREDACTED PER 12 USC 3413

DocuSign Envelope ID: DEC01BE6-0424-4D9A-AB20-DB5C0AF9717A

MERCHANT AGREEMENT 0418AR

**22. Severability.** If any part of this Agreement is held unenforceable or invalid or prohibited by law, said part shall be deemed stricken therefrom and this Agreement shall be read and interpreted as though said part did not exist, and shall not affect the validity or enforcement of any other provision.

**23. Waiver.** Neither the failure nor any delay on the part of Bank or EMS to exercise any right, remedy, power or privilege hereunder shall operate as a waiver nor be construed as an agreement to modify the terms of this Agreement, nor shall any single or partial exercise of any right, remedy, power or privilege with respect to any occurrence be construed as a waiver of such right, remedy, power or privilege with respect to any other occurrence. No waiver by a party hereunder shall be effective unless it is in writing and signed by the party making such waiver, and then such waiver shall apply only to the extent specifically stated in such writing.

**24. Entire Agreement.** This Agreement, including the Application and any other documents executed in conjunction herewith, constitutes and expresses the entire agreement and understanding between the Merchant, Bank and EMS with respect to the subject matter hereof and supersedes all prior and contemporaneous agreements and understandings, inducements, or conditions, by Bank, EMS or its sales representative, whether expressed or implied, oral or written. Neither this Agreement nor any portion or provision hereof may be changed, waived or amended orally or in any manner other than be a writing specifically identified as such and signed by the duly authorized representatives of Bank and EMS. This Agreement is not effective and may not be modified in any respect without the express written consent of Bank. Merchant and Guarantor(s) acknowledge and agree (i) that this Agreement is made as part of a transaction solely for business and commercial purposes and is not primarily for personal, family, or household purposes, and (ii) that Bank, EMS and Merchant are "business association(s)" as defined in Ohio Revised Code Section 169.01(B)(2).

**25. Assignment and Delegation.** This Agreement may be assigned by Bank. . EMS may subcontract, sublicense, assign, license, franchise, or in any manner extend or transfer to any third party any right or obligation of EMS set forth herein but only as may be approved by Bank and permitted under the Rules. This Agreement may not be assigned by Merchant without Bank's and EMS's prior written consents and any purported assignment without such consents shall be void. This Agreement shall be binding on the parties and their permitted heirs, successors, and assigns. Bank (and EMS, if and to the extent permitted under the Rules) reserves the right, in its sole discretion, to delegate or assign to third parties the performance of certain of Bank's (or EMS's, if applicable) servicing of settlement obligations to Merchant. The relationship of Bank, EMS and Merchant is solely that of independent parties contracting for services..

**26. Disputes, Governing Law, Jurisdiction, and Venue.** Bank and EMS shall have the absolute right to initiate or defend any and all disputes arising from this Agreement with Merchant. This Agreement shall be governed by and construed in accordance with the laws of the State of Ohio. In the event of a claim by Bank and/or EMS for the failure of a Merchant to pay any Chargebacks, fees, settlement costs or other amounts due hereunder, Merchant and guarantor(s) of Merchant's obligations and duties hereunder agree that personal jurisdiction and exclusive venue of any such claim shall lie in the federal or state courts of Cuyahoga County, Ohio, and Merchant and any guarantors do each hereby waive all objections to said jurisdiction and agree to submit thereto. Each party is responsible for its own costs and expenses, except that Merchant and/or guarantors shall be liable jointly and severally for all costs and expenses of Bank and EMS (including attorneys fees in connection with the enforcement of this Agreement), as a result of any breach or the collection of any sums due to Bank or EMS hereunder. In connection with any claim by Bank and/or EMS for the failure of a Merchant and/or guarantor(s) to pay any Chargebacks, fees, settlement costs or other amounts due hereunder, Merchant and guarantor(s) hereby waive any right to assert any counterclaim or affirmative defense for set off or other relief against Bank and/or EMS, it being the parties' intention that any such counterclaims are subject to arbitration in accordance with the procedures set forth in Section 27 and that no such arbitration proceeding shall be commenced until after a final unappealed judgment is entered in the court proceedings. The parties hereby waive any right to trial by jury in connection with any dispute between them. Any claims concerning errors in the Fees charged hereunder must be made in writing within six months of the occurrence of the error on which the claim is based, and must specify the grounds for the claim. No such claim for Fees charged hereunder may be filed for Arbitration or in Court until thirty days after a written claim for such was first timely made. Merchant acknowledges and agrees that, in addition to clearing and settling Transactions, Bank collects fees, costs, and other charges due from Merchant under the Agreement at EMS' instruction. Merchant agrees that Bank has no duty to verify, audit, review or otherwise oversee the fees, costs, or other charges that Bank collects from Merchant.

**27. Arbitration.** Except as expressly provided in Section 26 any claim or dispute arising out of or related to this Agreement shall be finally resolved by final and binding arbitration. Whenever a party shall decide to institute arbitration proceedings, it shall give written notice to that effect to the other parties. The party giving such notice shall refrain from instituting the arbitration proceedings for a period of thirty (30) days following such notice to allow the parties to attempt to resolve the dispute between or among themselves. If the parties are still unable to resolve the dispute, the party giving notice may institute the arbitration proceeding under the rules of the American Arbitration Association ("AAA Rules"). There shall be no right or authority for any claims or disputes to be arbitrated on a class action basis. Arbitration shall exclusively and solely be held in Cleveland, Ohio. The arbitration shall be conducted before a single arbitrator mutually chosen by the parties, but if the parties have not agreed upon a single arbitrator within fifteen (15) days after notice of the institution of the arbitration proceeding, then the arbitration shall be conducted by a panel of three (3) arbitrators. In such case, Merchant, on the one hand, and Bank and/or EMS on the other, shall within thirty (30) days after notice of the institution of the arbitration proceedings appoint one arbitrator. The presiding arbitrator shall then be appointed in accordance with AAA Rules. Decisions of the arbitrator(s) shall be final and binding on the parties. The arbitrator shall have the authority to award any remedy or relief a court of the State of Ohio could order or grant, including, without limitation, specific performance of any obligation created under this Agreement, the awarding of the issuance of an injunction or the imposition of sanctions for abuse or frustration of the arbitration process. Judgment upon the award of the arbitrator may be entered in any court of competent jurisdiction and enforced with full judicial effect thereafter. All fees and expenses of the arbitration shall be borne by the parties equally and each party shall bear the expense of its own counsel, experts, witnesses, and preparation and presentations, provided, however, that the arbitrator(s) is/are authorized to award the prevailing party such sums as shall be deemed proper for the time, expense and inconvenience of arbitration, including arbitration fees and expenses and attorney fees and expenses. Except to the extent that entry of judgment and any subsequent enforcement may require disclosure, all matters relating to the arbitration, including the award, shall be held in confidence by the parties..

**28. Compliance and Disclosure of Information; Patriot Act.** Merchant shall provide such information and certifications as Bank and EMS may reasonably require from time to time in reviewing Merchant's compliance with the terms and conditions of this Agreement and the Rules. Merchant further agrees to produce and make available for inspection by Bank, EMS or its officers, agents or representatives, such books and records of Merchant as Bank or EMS may deem reasonably necessary to be adequately informed of the business practices and financial condition of Merchant, or the ability of Merchant to observe or perform its obligations to Bank and EMS pursuant to this Agreement. Merchant further agrees to provide to Bank or EMS within seven (7) days of notice such information as Bank or EMS may request including but not limited to, credit reports, personal and/or business financial statements, income tax returns, or other such information as Bank or EMS may request. Merchant grants to Bank and EMS continuing authority to conduct credit checks and background investigation and inquiries concerning Merchant and its owner(s) including, but not limited to, character and business references and the financial condition of Merchant and Merchant's owner(s). Merchant expressly authorizes Bank, EMS or its agents and representatives to provide and receive such information from any and all third parties directly, without further consent or authorization on the part of Merchant. Bank and EMS may share with others its credit, sales and other information. Merchant will not transfer, sell, or merge or liquidate its business or assets or otherwise transfer control of its business, change its ownership in any amount or respect, engage in any joint venture partnership or similar business arrangement, change its basic nature or method of business, types of products sold or engage in sales by phone, internet, or mail order without providing notice to Bank or EMS and providing Bank or EMS with the opportunity to terminate this Agreement. Merchant acknowledges that Bank has implemented a customer identification program as required under the USA Patriot Act and other similar state laws and regulations. Merchant agrees to make available to Bank and/or EMS such information as may be required by Bank in connection with its customer identification program and/or as required under the USA Patriot Act and related state laws and regulations. Merchant hereby expressly consents to disclosure by EMS of Transaction data, Merchant data, and other information about the Merchant to American Express, and, further, expressly consents to American Express' use of such information to perform its responsibilities in connection with its Card program, promote the American Express network, perform analytics and create reports, and for any other lawful business purposes, including commercial marketing communications purposes and important transactional or relationship communications from American Express. American Express may use the information obtained in this application at the time of setup to screen and/or monitor Merchant in connection with Card marketing and administrative purposes.

**29. Amendments.** This Agreement is not effective until, and not before, it is signed by the Bank, and may not be modified in any respect without the express written agreement of the Bank. This Agreement may be amended by Bank and EMS from time to time upon written notice. Any amendment to the fees and rates set forth in the Schedule of Fees, including any additional fees, shall be effective on 30 days written notice. Any other amendment to this Agreement shall be effective on the effective date specified in the notice unless otherwise provided for herein. In the event of any amendment of the terms and conditions of this Agreement or of the fees payable to Bank or EMS hereunder, Merchant shall have the right to terminate this Agreement without the payment of the termination fee provided in Section 18 above by providing Bank and EMS written notice of such termination within 30 days after Merchant received notice of the amendment, except as otherwise required by the Rules. No such termination shall effect any obligation of Merchant to pay any fees, charges, or other obligations incurred by Merchant under this Agreement prior to the date of termination. To the extent not inconsistent with the foregoing, Merchant's submission of transactions to Bank and EMS on or after any amendment effective date constitutes acceptance of such amendment. Any unrelated alteration or modification to the preprinted form of this Agreement has no effect and, at the Bank and EMS's discretion, may render this Agreement void.

**30. Privacy.** Merchant acknowledges that it has read, understood, and hereby accepts EMS' Privacy Policy which is posted online at www.emscorporate.com/privacypolicy.

**31. Survival.** All representations, warranties and covenants shall survive the termination of this Agreement.

**32. Construction.** The captions contained in this Agreement are for the convenience of the parties and shall not be construed or interpreted to limit or otherwise define the scope of this Agreement.

**33. Counterparts.** This Agreement may be executed in one or more counterparts, each of which shall be deemed to be an original, such counterparts to constitute but one and the same instrument.

**34. Exclusive Agent.** For purposes of this Agreement and performance of the Services by EMS, (a) EMS is the exclusive agent of Bank, (b) Bank is at all times and entirely responsible for and in control of EMS's performance hereunder, and (c) Bank must approve, in advance, any fee to or obligation of Merchant arising from or related to performance of this Agreement.

**35. Default Interest Rate.** Merchant agrees that all amounts due and payable by Merchant to Bank or EMS under this Agreement shall accrue interest at the rate of one and one-half percent (1.50%) per month, or the maximum interest rate permissible under law, whichever is lesser, beginning as of date due and continuing following any judgment obtained by Bank or EMS against Merchant until paid in full.

**36. Financial Accommodation.** The acquisition, processing and settlement of Transactions is a financial accommodation and, as such, in the event Merchant becomes a debtor in bankruptcy, this Agreement cannot be assigned or enforced and Bank and EMS shall be excused from performance hereunder.

**37. Covenants applicable to American Express acceptance.** The provisions of the American Express Operating Guide are incorporated herein by reference and made a part hereof (see http://www.americanexpress.com/merchantopguide). Merchant hereby expressly authorizes EMS to submit Transactions to, and receive settlement from, American Express on behalf of the Merchant. American Express is hereby conferred third-party beneficiary rights, but not obligations, to this Agreement that will fully provide American Express with the ability to enforce the terms of this Agreement against the Merchant. Merchant may, at any time, opt out of accepting American Express Cards without directly or indirectly affecting its rights to accept other Cards.

Merchant acknowledges that it may be converted from the OptBlue® Program to a direct Card acceptance relationship with American Express if and when it becomes a High CV Merchant in accordance with the Rules and expressly agrees that upon conversion, (i) the Merchant will be bound by American Express' then-current Card Acceptance Agreement; (ii) American Express will set pricing and other fees payable by the Merchant for American Express Card acceptance; and (iii) Authorization or other Transaction Fees may still be payable to EMS pursuant to the Schedule of Fees in this Agreement. Neither Bank nor EMS is a party to the American Express Card acceptance agreement.

Merchant may not bill or collect from any Card Member for any purchase or payment on the American Express Card unless Chargeback has been exercised, the Merchant has fully paid for such Charge, and it otherwise has the right to do so.

Merchant's refund policies for purchases on the American Express Card must be at least as favorable as its refund policy for purchase on any other Card and the refund policy be disclosed to Card Members at the time of purchase and in compliance with Applicable Law.

Any and all American Express Card Member Information is confidential and the sole property of the Issuer, American Express or its Affiliates. Except as otherwise specified, Merchant must not disclose American Express Card Member Information, nor use nor store it, other than to facilitate Transactions at Merchant's establishments in accordance with this Agreement. Merchant must ensure that it and any third parties it enlists to facilitate Transaction processing complies with the American Express Technical Specifications (valid and accurate data must be provided for all data elements in accordance with the American Express Technical Specifications). Failure to comply with the American Express Technical Specifications may impact Merchant's ability to successfully process Transactions. Merchants may be assessed non-compliance fees if Merchant fails to comply with the Technical Specifications. To ensure compliance with the Technical Specifications, Merchants should work with EMS.

If a Merchant closes any of its Establishments, Merchant must follow these guidelines: (i) notify EMS immediately; (ii) policies must be conveyed to the Card Member prior to completion of the Charge and printed on the copy of a receipt or Charge Record the Card Member signs; (iii) if not providing refunds or exchanges, post notices indicating that all sales are final (e.g., at the front doors, by the cash registers, on the Charge Record and on websites and catalogs); (iv) return and cancellation policies must be clearly disclosed at the time of sale; and (v) for Advance Payment Charges or Delayed Delivery Charges, Merchant must either deliver the goods or services for which Merchant has already charged the Card Member or issue Credit for any portion of the Charge for which Merchant has not delivered the goods or services.

This Agreement shall be effective only upon acceptance and/or signature by EMS and Bank. Merchant's submission of transactions under this Agreement shall constitute Merchant's acknowledgment of acceptance of this Agreement by Bank and EMS notwithstanding the absence of any Bank or EMS signature. Any application fee paid to Bank or EMS is nonrefundable whether or not Merchant and this Agreement are accepted by Bank and EMS.

Premier Student Loan Center

Merchant Name (Print)

DocuSigned by:

By: Kaine Wen  11/2/2015

87483AE0A34E4C8...

Authorized Signature  Date

Kaine Wen

DS KW

Authorized Signer's Name (Print)

Its: ______________________

______________________

Guarantor  Date

______________________

Guarantor  Date

ELECTRONIC MERCHANT SYSTEMS

By: ______________________

Date

Its: ______________________

BANK

By: ______________________

Date

Its: ______________________

BANK

Response of Electronic Merchant Systems to CFPB Civil Investigative Demand dated 5/10/2019 - received 6/10/2019

PSL - 6

Pls.' Ex. 7

P. 448

CFPB-20221128-00013265

In re Consumer Advocacy Center Inc. d/b/a
Premier Student Loan Center ("PSL")

CONFIDENTIAL

UNREDACTED
PER 12 USC 3413



## Certificate Of Completion

Envelope Number: DEC01BE604244D9AAB20DB5C0AF9717A

Subject: Documents for your DocuSign Signature

Source Envelope:

| | | |
|---|---|---|
| Document Pages: 17 | Signatures: 11 | Status: Completed |
| Certificate Pages: 4 | Initials: 2 | |
| AutoNav: Enabled | | Envelope Originator: |
| EnvelopeId Stamping: Enabled | | Stephanie Preidis |
| | | 5005 Rockside Rd |
| | | Independence, OH  44121 |
| | | spreidis@emscorporate.com |
| | | IP Address: 206.183.14.57 |

### Record Tracking

| | | |
|---|---|---|
| Status: Original | Holder: Stephanie Preidis | Location: DocuSign |
| 10/30/2015 2:36:49 PM PT | spreidis@emscorporate.com | |

| Signer Events | Signature | Timestamp |
|---|---|---|
| Kaine Wen | | Sent: 10/30/2015 2:39:41 PM PT |
| kaine@premierstudentloancenter.com | *Kaine Wen* | Viewed: 11/2/2015 1:32:04 PM PT |
| Security Level: Email, Account Authentication (None) | 87c183AE9A34E4C8 | Signed: 11/2/2015 4:01:28 PM PT |
| | Using IP Address: 24.250.84.78 | |
| Electronic Record and Signature Disclosure: | | |
| Accepted: 11/2/2015 4:00:26 PM PT | | |
| ID: 7e2b3d26-4692-4116-bc63-2f12ab9f17fc | | |

| In Person Signer Events | Signature | Timestamp |
|---|---|---|

| Editor Delivery Events | Status | Timestamp |
|---|---|---|

| Agent Delivery Events | Status | Timestamp |
|---|---|---|

| Intermediary Delivery Events | Status | Timestamp |
|---|---|---|

| Certified Delivery Events | Status | Timestamp |
|---|---|---|

| Carbon Copy Events | Status | Timestamp |
|---|---|---|

| Notary Events | | Timestamp |
|---|---|---|

| Envelope Summary Events | Status | Timestamps |
|---|---|---|
| Envelope Sent | Hashed/Encrypted | 10/30/2015 2:39:41 PM PT |
| Certified Delivered | Security Checked | 11/2/2015 1:32:04 PM PT |
| Signing Complete | Security Checked | 11/2/2015 4:01:29 PM PT |
| Completed | Security Checked | 11/2/2015 4:01:29 PM PT |

### Electronic Record and Signature Disclosure

Response of Electronic Merchant Systems to  CFPB Civil Investigative Demand
dated 5/10/2019 - received 6/10/2019

PSL - 7

Pls.' Ex. 7
P. 449
CFPB-20221128-00013266

CONFIDENTIAL
UNREDACTED
PER 12 USC 3413

Electronic Record and Signature Disclosure created on: 3/30/2010 11:54:02 AM
Parties agreed to: Kaine Wen

## Merchant Disclosure

From time to time, Electronic Merchant Systems (we, us or Company) may be required by law to provide to you certain written notices or disclosures. Described below are the terms and conditions for providing to you such notices and disclosures electronically through the DocuSign, Inc. (DocuSign) electronic signing system. Please read the information below carefully and thoroughly, and if you can access this information electronically to your satisfaction and agree to these terms and conditions, please confirm your agreement by clicking the â€˜I agreeâ€™ button at the bottom of this document.

## Getting paper copies

At any time, you may request from us a paper copy of any record provided or made available electronically to you by us. You will have the ability to download and print documents we send to you through the DocuSign system during and immediately after signing session and, if you elect to create a DocuSign signer account, you may access them for a limited period of time (usually 30 days) after such documents are first sent to you. After such time, if you wish for us to send you paper copies of any such documents from our office to you, you will be charged a $0.00 per-page fee. You may request delivery of such paper copies from us by following the procedure described below.

## Withdrawing your consent

If you decide to receive notices and disclosures from us electronically, you may at any time change your mind and tell us that thereafter you want to receive required notices and disclosures only in paper format. How you must inform us of your decision to receive future notices and disclosure in paper format and withdraw your consent to receive notices and disclosures electronically is described below.

## Consequences of changing your mind

If you elect to receive required notices and disclosures only in paper format, it will slow the speed at which we can complete certain steps in transactions with you and delivering services to you because we will need first to send the required notices or disclosures to you in paper format, and then wait until we receive back from you your acknowledgment of your receipt of such paper notices or disclosures. To indicate to us that you are changing your mind, you must withdraw your consent using the DocuSign â€˜Withdraw Consentâ€™ form on the signing page of a DocuSign envelope instead of signing it. This will indicate to us that you have withdrawn your consent to receive required notices and disclosures electronically from us and you will no longer be able to use the DocuSign system to receive required notices and consents electronically from us or to sign electronically documents from us.

## All notices and disclosures will be sent to you electronically

Unless you tell us otherwise in accordance with the procedures described herein, we will provide electronically to you through the DocuSign system all required notices, disclosures, authorizations, acknowledgements, and other documents that are required to be provided or made available to you during the course of our relationship with you. To reduce the chance of you inadvertently not receiving any notice or disclosure, we prefer to provide all of the required notices and disclosures to you by the same method and to the same address that you have given us. Thus, you can receive all the disclosures and notices electronically or in paper format through the paper mail delivery system. If you do not agree with this process, please let us know as described below. Please also see the paragraph immediately above that describes the consequences of your electing not to receive delivery of the notices and disclosures

Response of Electronic Merchant Systems to  CFPB Civil Investigative Demand
dated 5/10/2019 - received 6/10/2019

PSL - 8

Pls.' Ex. 7
P. 450
CFPB-20221128-00013267

UNREDACTED
PER 12 USC 3413

CONFIDENTIAL

electronically from us.

**How to contact Electronic Merchant Systems:**
You may contact us to let us know of your changes as to how we may contact you electronically, to request paper copies of certain information from us, and to withdraw your prior consent to receive notices and disclosures electronically as follows:
To contact us by email send messages to: rcoolidge@emscorporate.com

**To advise Electronic Merchant Systems of your new e-mail address**
To let us know of a change in your e-mail address where we should send notices and disclosures electronically to you, you must send an email message to us at rcoolidge@emscorporate.com and in the body of such request you must state: your previous e-mail address; your new e-mail address. We do not require any other information from you to change your email address.
In addition, you must notify DocuSign, Inc. to arrange for your new email address to be reflected in your DocuSign account by following the process for changing e-mail in the DocuSign system.

**To request paper copies from Electronic Merchant Systems**
To request delivery from us of paper copies of the notices and disclosures previously provided by us to you electronically, you must send us an e-mail to rcoolidge@emscorporate.com and in the body of such request you must state your e-mail address, full name, US Postal address, and telephone number. We will bill you for any fees at that time, if any.

**To withdraw your consent with Electronic Merchant Systems**
To inform us that you no longer want to receive future notices and disclosures in electronic format you may:
   i. decline to sign a document from within your DocuSign session, and on the subsequent page, select the check-box indicating you wish to withdraw your consent, or you may;
   ii. send us an e-mail to rcoolidge@emscorporate.com and in the body of such request you must state your e-mail, full name, US Postal Address, and telephone number. We do not need any other information from you to withdraw consent. The consequences of your withdrawing consent for online documents will be that transactions may take a longer time to process.

**Required hardware and software**

| Operating Systems: | Windows® 2000, Windows® XP, Windows Vista®; Mac OS® X |
|---|---|
| Browsers: | Final release versions of Internet Explorer® 6.0 or above (Windows only); Mozilla Firefox 2.0 or above (Windows and Mac); Safariâ„¢ 3.0 or above (Mac only) |
| PDF Reader: | Acrobat® or similar software may be required to view and print PDF files |
| Screen Resolution: | 800 x 600 minimum |
| Enabled Security Settings: | Allow per session cookies |

** These minimum requirements are subject to change. If these requirements change, you will be asked to re-accept the disclosure. Pre-release (e.g. beta) versions of operating systems and browsers are not supported.

**Acknowledging your access and consent to receive materials electronically**

CFPB-20221128-00013268

CONFIDENTIAL

In re Consumer Advocacy Center Inc. d/b/a
Premier Student Loan Center ("PSL")

UNREDACTED
PER 12 USC 3413

To confirm to us that you can access this information electronically, which will be similar to other electronic notices and disclosures that we will provide to you, please verify that you were able to read this electronic disclosure and that you also were able to print on paper or electronically save this page for your future reference and access or that you were able to e-mail this disclosure and consent to an address where you will be able to print on paper or save it for your future reference and access. Further, if you consent to receiving notices and disclosures exclusively in electronic format on the terms and conditions described above, please let us know by clicking the â€˜I agreeâ€™ button below.

By checking the â€˜I agreeâ€™ box, I confirm that:

- I can access and read this Electronic CONSENT TO ELECTRONIC RECEIPT OF ELECTRONIC CONSUMER DISCLOSURES document; and

- I can print on paper the disclosure or save or send the disclosure to a place where I can print it, for future reference and access; and

- Until or unless I notify Electronic Merchant Systems as described above, I consent to receive from exclusively through electronic means all notices, disclosures, authorizations, acknowledgements, and other documents that are required to be provided or made available to me by Electronic Merchant Systems during the course of my relationship with Electronic Merchant Systems.

Response of Electronic Merchant Systems to  CFPB Civil Investigative Demand
dated 5/10/2019 - received 6/10/2019

PSL - 10

Pls.' Ex. 7
P. 452
CFPB-20221128-00013269

In re Consumer Advocacy Center Inc. d/b/a
Premier Student Loan Center ("PSL")
CONFIDENTIAL
UNREDACTED
PER 12 USC 3413

DocuSign Envelope ID: 166284E6-5588-4C8B-B38A-7B883487B231

CC101/11-14A

## DEBT RELIEF SERVICE MERCHANT AGREEMENT ADDENDUM

This Checklist is an Addendum to the Merchant Agreement ("Agreement") dated November 4, 20 15 between Premier Student Loan Center , (the "Merchant") and ELECTRONIC MERCHANT SYSTEMS ("EMS").

### Merchant represents and warrants each of the following by checking it and signing below:

☒ Merchant is engaged in the business of offering debt relief services and has obtained, and throughout the term of the Agreement will maintain, all local, state, and federal licenses, registrations, and approvals required to conduct such business.

☒ Merchant understands, currently fully complies with, and during the term of the Agreement, will fully comply with all relevant provisions of all of the following as amended from time to time:

- Section 5 of the Federal Trade Commission Act, 15 U.S.C. §5;[1]
- the Electronic Funds Transfer Act, 15 U.S.C. § 1693, et seq., ("EFTA") and all regulations implementing the EFTA including without limitation Regulation E, 12 C.F.R. §1005.1, et seq.;[2]
- the Fair Credit Reporting Act, 15 U.S.C. § 1681, et seq. ("FCRA") and all regulations implementing the FCRA including without limitation Regulation V, 12 C.F.R. §1022.1, et seq.;
- the Telemarketing and Consumer Fraud and Abuse Prevention Act, 15 U.S.C. §6101, et seq. ("TCFAPA"), and all regulations implementing the TCFAPA including without limitation the Telemarketing Sales Rule ("TSR"), 16 C.F.R. Part 310;.
- the Consumer Financial Protection Act of 2010, 12 U.S.C. §5531, et seq. ("CFPA") and all regulations implementing the CFPA including without limitation Regulation O, the Mortgage Assistance Relief Services rules, 12 C.F.R. §1015.1, et seq.;
- the Truth In Lending Act, 15 U.S.C. § 1601, et seq. ("TILA") and all regulations implementing the TILA including without limitation Regulation Z, 12 C.F.R. §1026.1, et seq.;
- the Telephone Consumer Protection Act, 47 U.S.C. §227, et seq. ("TCPA") and all regulations implementing the TCPA including without limitation 47 C.F.R. §64.1200, et seq.;
- x  the Electronic Signatures in Global and National Commerce Act, 15 U.S.C. §7001, et seq.; and
- all other applicable federal, state, and local laws, rules, and regulations including, without limitation, those referring, relating or pertaining to the foregoing, consumer privacy and protection, credit, lending, finance, usury, and banking, and with the Rules (as defined in the Agreement).

☒ Merchant will immediately notify EMS and Bank in writing of any inquiry, investigation, complaint, charge, subpoena, claim, request for information, judgment, injunction, restraining order, cease and desist order, any similar judicial, quasi-judicial, administrative, or executive order, or any license or permit revocation or cancellation, by any local, state or federal law enforcement or regulatory agency, entity, or official in connection with or relating to Merchant's business including without limitation any complaints, charges or claims against Merchant by any customers of Merchant or by any local, state or federal official.

☒ In addition to the indemnity obligations set forth in the Agreement, Merchant will also indemnify and hold EMS and Bank harmless from and against any and all losses, costs, liabilities, damages and expenses (including attorneys' fees and collection costs) resulting from or incurred in connection with any breach of the Agreement including and as modified by this Addendum, resulting from or incurred in connection with any inquiry, investigation, complaint, charge, subpoena, claim, or request for information of or against Merchant, or against or involving EMS or Bank in connection with Merchant, by any local, state or federal law enforcement or regulatory agency in connection with or relating to Merchant's business including without limitation any complaints, charges or claims by any customers of Merchant or by any local, state or federal official.

☐ Merchant understands that EMS or Bank may terminate the Agreement effective immediately in the event of any breach of this addendum or as otherwise set forth in the Agreement.

| ELECTRONIC MERCHANT SYSTEMS | MERCHANT: Premier Student Loan Center |
|---|---|
| By: _____ | By: _kaine Wen_ |
| | Print: Kaine Wen |
| Its: _____ | Its: kw |
| Dated: _____ | Dated: 11/4/2015 |

[1] The U.S. Code is available at http://uscode.house.gov/,
[2] The electronic Code of Federal Regulations is available at http://www.ecfr.gov/cgi-bin/ECFR?page=browse.

Response of Electronic Merchant Systems to  CFPB Civil Investigative Demand
dated 5/10/2019 - received 6/10/2019

PSL - 11
Pls.' Ex. 7
P. 453
CFPB-20221128-00013270

The Consumer Advocacy Center Inc. d/b/a
Premier Student Loan Center ("PSL")

UNREDACTED
PER 12 USC 3413



## Certificate Of Completion

Envelope Number: 166284E855884C8BB38A7B883487B231
Subject: Documents for your DocuSign Signature
Source Envelope:
Document Pages: 2                     Signatures: 2
Certificate Pages: 4                  Initials: 0
AutoNav: Enabled
EnvelopeId Stamping: Enabled

Status: Completed

Envelope Originator:
Stephanie Preidis
5005 Rockside Rd
Independence, OH  44121
spreidis@emscorporate.com
IP Address: 96.43.151.8

### Record Tracking

Status: Original
        11/4/2015 6:54:50 AM PT

Holder: Stephanie Preidis
        spreidis@emscorporate.com

Location: DocuSign

### Signer Events

Kaine Wen
kaine@premierstudentloancenter.com
Security Level: Email, Account Authentication
(None)

**Signature**

Using IP Address: 71.165.27.59

**Timestamp**

Sent: 11/4/2015 6:59:38 AM PT
Viewed: 11/4/2015 10:42:29 AM PT
Signed: 11/4/2015 10:42:59 AM PT

Electronic Record and Signature Disclosure:
    Accepted: 11/4/2015 10:42:29 AM PT
    ID: 858ab96d-d35e-4aca-bc28-4acc33dcafaa

| In Person Signer Events | Signature | Timestamp |
| --- | --- | --- |

| Editor Delivery Events | Status | Timestamp |
| --- | --- | --- |

| Agent Delivery Events | Status | Timestamp |
| --- | --- | --- |

| Intermediary Delivery Events | Status | Timestamp |
| --- | --- | --- |

| Certified Delivery Events | Status | Timestamp |
| --- | --- | --- |

| Carbon Copy Events | Status | Timestamp |
| --- | --- | --- |

| Notary Events | Status | Timestamp |
| --- | --- | --- |

| Envelope Summary Events | Status | Timestamps |
| --- | --- | --- |
| Envelope Sent | Hashed/Encrypted | 11/4/2015 6:59:38 AM PT |
| Certified Delivered | Security Checked | 11/4/2015 10:42:29 AM PT |
| Signing Complete | Security Checked | 11/4/2015 10:43:00 AM PT |
| Completed | Security Checked | 11/4/2015 10:43:00 AM PT |

### Electronic Record and Signature Disclosure

Response of Electronic Merchant Systems to  CFPB Civil Investigative Demand
dated 5/10/2019 - received 6/10/2019

PSL - 12
Pls.' Ex. 7
P. 454
CFPB-20221128-00013271

CONFIDENTIAL

REDACTED
PER 12 USC 3413

Electronic Record and Signature Disclosure created on: 3/30/2010 11:54:02 AM
Parties agreed to: Kaine Wen

Merchant Disclosure
From time to time, Electronic Merchant Systems (we, us or Company) may be required by law to
provide to you certain written notices or disclosures. Described below are the terms and
conditions for providing to you such notices and disclosures electronically through the
DocuSign, Inc. (DocuSign) electronic signing system. Please read the information below
carefully and thoroughly, and if you can access this information electronically to your
satisfaction and agree to these terms and conditions, please confirm your agreement by clicking
the â€˜I agreeâ€™ button at the bottom of this document.
Getting paper copies
At any time, you may request from us a paper copy of any record provided or made available
electronically to you by us. You will have the ability to download and print documents we send
to you through the DocuSign system during and immediately after signing session and, if you
elect to create a DocuSign signer account, you may access them for a limited period of time
(usually 30 days) after such documents are first sent to you. After such time, if you wish for us to
send you paper copies of any such documents from our office to you, you will be charged a
$0.00 per-page fee. You may request delivery of such paper copies from us by following the
procedure described below.
Withdrawing your consent
If you decide to receive notices and disclosures from us electronically, you may at any time
change your mind and tell us that thereafter you want to receive required notices and disclosures
only in paper format. How you must inform us of your decision to receive future notices and
disclosure in paper format and withdraw your consent to receive notices and disclosures
electronically is described below.
Consequences of changing your mind
If you elect to receive required notices and disclosures only in paper format, it will slow the
speed at which we can complete certain steps in transactions with you and delivering services to
you because we will need first to send the required notices or disclosures to you in paper format,
and then wait until we receive back from you your acknowledgment of your receipt of such
paper notices or disclosures. To indicate to us that you are changing your mind, you must
withdraw your consent using the DocuSign â€˜Withdraw Consentâ€™ form on the signing page
of a DocuSign envelope instead of signing it. This will indicate to us that you have withdrawn
your consent to receive required notices and disclosures electronically from us and you will no
longer be able to use the DocuSign system to receive required notices and consents electronically
from us or to sign electronically documents from us.
All notices and disclosures will be sent to you electronically
Unless you tell us otherwise in accordance with the procedures described herein, we will provide
electronically to you through the DocuSign system all required notices, disclosures,
authorizations, acknowledgements, and other documents that are required to be provided or
made available to you during the course of our relationship with you. To reduce the chance of
you inadvertently not receiving any notice or disclosure, we prefer to provide all of the required
notices and disclosures to you by the same method and to the same address that you have given
us. Thus, you can receive all the disclosures and notices electronically or in paper format through
the paper mail delivery system. If you do not agree with this process, please let us know as
described below. Please also see the paragraph immediately above that describes the
consequences of your electing not to receive delivery of the notices and disclosures

CONFIDENTIAL

UNREDACTED
PER 12 USC 3413

electronically from us..

**How to contact Electronic Merchant Systems:**
You may contact us to let us know of your changes as to how we may contact you electronically,
to request paper copies of certain information from us, and to withdraw your prior consent to
receive notices and disclosures electronically as follows:
To contact us by email send messages to: rcoolidge@emscorporate.com

**To advise Electronic Merchant Systems of your new e-mail address**
To let us know of a change in your e-mail address where we should send notices and disclosures
electronically to you, you must send an email message to us at rcoolidge@emscorporate.com and
in the body of such request you must state: your previous e-mail address, your new e-mail
address. We do not require any other information from you to change your email address.
In addition, you must notify DocuSign, Inc. to arrange for your new email address to be reflected
in your DocuSign account by following the process for changing e-mail in the DocuSign system..

**To request paper copies from Electronic Merchant Systems**
To request delivery from us of paper copies of the notices and disclosures previously provided
by us to you electronically, you must send us an e-mail to rcoolidge@emscorporate.com and in
the body of such request you must state your e-mail address, full name, US Postal address, and
telephone number. We will bill you for any fees at that time, if any.

**To withdraw your consent with Electronic Merchant Systems**
To inform us that you no longer want to receive future notices and disclosures in electronic
format you may:
> i. decline to sign a document from within your DocuSign session, and on the subsequent
> page, select the check-box indicating you wish to withdraw your consent, or you may;
> ii. send us an e-mail to rcoolidge@emscorporate.com and in the body of such request you
> must state your e-mail, full name, US Postal Address, and telephone number. We do not
> need any other information from you to withdraw consent. The consequences of your
> withdrawing consent for online documents will be that transactions may take a longer time
> to process.

**Required hardware and software**

| Operating Systems: | Windows® 2000, Windows® XP, Windows Vista®; Mac OS® X |
| --- | --- |
| Browsers: | Final release versions of Internet Explorer® 6.0 or above (Windows only); Mozilla Firefox 2.0 or above (Windows and Mac); Safari™ 3.0 or above (Mac only) |
| PDF Reader: | Acrobat® or similar software may be required to view and print PDF files |
| Screen Resolution: | 800 x 600 minimum |
| Enabled Security Settings: | Allow per session cookies |

** These minimum requirements are subject to change. If these requirements change, you will be
asked to re-accept the disclosure. Pre-release (e.g. beta) versions of operating systems and
browsers are not supported.

**Acknowledging your access and consent to receive materials electronically**

CONFIDENTIAL

UNREDACTED
PER 12 USC 3413

To confirm to us that you can access this information electronically, which will be similar to other electronic notices and disclosures that we will provide to you, please verify that you were able to read this electronic disclosure and that you also were able to print on paper or electronically save this page for your future reference and access or that you were able to e-mail this disclosure and consent to an address where you will be able to print on paper or save it for your future reference and access. Further, if you consent to receiving notices and disclosures exclusively in electronic format on the terms and conditions described above, please let us know by clicking the â€˜I agreeâ€™ button below.

By checking the â€˜I agreeâ€™ box, I confirm that:

- I can access and read this Electronic CONSENT TO ELECTRONIC RECEIPT OF ELECTRONIC CONSUMER DISCLOSURES document; and

- I can print on paper the disclosure or save or send the disclosure to a place where I can print it, for future reference and access; and

- Until or unless I notify Electronic Merchant Systems as described above, I consent to receive from exclusively through electronic means all notices, disclosures, authorizations, acknowledgements, and other documents that are required to be provided or made available to me by Electronic Merchant Systems during the course of my relationship with Electronic Merchant Systems.

Plaintiffs' Exhibit 8

| To: | Jimmy[jimmy-l@profitwentkis.com] |
| --- | --- |
| Cc: | Samson[samson@merchantdept.com]; Tom Nelson[tom@premierstudentloancenter.com] |
| From: | Kaine Wen |
| Sent: | Wed 2/7/2018 10:58:20 PM |
| Subject: | Corporate Restructure |

Hi Jimmy,

Following up on previous conversations, here is our request for Premier Student Loan Center's ("PSLC") existing merchant account, currently with $1.2M monthly volume limit:

- Please change merchant account ownership from PSLC to the new company True Count Staffing Inc. d/b/a SL Account Mgmt ("SLAM"). SLAM will handle all of our payment processing. I have the corporate documents and DBA documents ready.
- Please do not change the descriptor, as we want to avoid customer confusion.
- We will provide new SLAM bank account information for deposits.

The reason for the change is because PSLC (Sales Department) will no longer be processing any customer payments. Instead, SLAM (Billing Department) will be processing all customer payments.

Please forward me the necessary application forms and documents for completion, and feel free to reach out if you have any questions.

Thank you.


Best,

**Kaine Wen, Esq.**
**Premier Student Loan Center**
Managing Partner
173 Technology Dr, Ste 202
Irvine, CA 92618
E-mail: kaine@premierstudentloancenter.com

*Confidentiality Disclaimer: This e-mail correspondence and its attachments (if any) are intended exclusively for the above named addressee(s) and intended to be privileged and confidential. If they have come to you in error, please immediately notify the sender about the error and delete all copies of this e-mail correspondence along with its attachments. Thank you.*

Plaintiffs' Exhibit 9

<u>DEFENDANT KAINE WEN'S RESPONSE AND OBJECTIONS TO FIRST REQUESTS FOR ADMISSION</u>

I, pursuant to Federal Rules of Civil Procedure 26 and 36, hereby respond and object to Plaintiffs' First Requests for Admission ("the Requests").

<u>GENERAL STATEMENT AND OBJECTIONS</u>

The following responses are based upon information presently available to me and are made without prejudice to the right to utilize subsequently discovered facts or witnesses or documents or things or legal arguments. I specifically reserve the right to modify and/or supplement these responses if and to the extent required or permitted under the Federal Rules of Civil Procedure.

The continuing and specific objections to the Requests are subject to all objections as to competence, relevance, materiality, propriety, admissibility, and any and all other objections and grounds which would require the exclusion of any evidence disclosed herein if the evidence were produced and sought to be introduced into evidence in Court, including the following general objections:

1.  I object to the Requests to the extent that they seek information that is protected from disclosure by the attorney-client privilege, the attorney work product doctrine, or any other recognized privilege.

2.  I object to the Requests to the extent that they require me to search for and produce documents or information that are not within my possession, custody, or control.

3.  I object to the Requests to the extent they seek information or documents that cannot be located by me after reasonably diligent inquiry, are readily available from public sources, or are available to Plaintiffs' Counsel from another source or by other means that are more convenient, more appropriate, less burdensome, or less expensive.

4.  I object to the Requests to the extent they seek legal conclusions and/or would require me to reach a legal conclusion in order to prepare a response.

5.  I object to the Requests to the extent they are argumentative, prejudicial, improper, incorrect, vague, and/or ambiguous.

6.  I object to the Definitions to the extent that certain Definitions imply legal conclusions.

<u>RESPONSES</u>

1. The Company offered services to alter the terms of payment of consumers' federal student loans by preparing and submitting applications for loan consolidation for consumers.

**ADMIT**

2. The Company offered services to alter the terms of payment of consumers' federal student loans by preparing and submitting applications for IDR Plans for consumers.

**ADMIT**

3. The Company offered services to alter the terms of payment of consumers' federal student loans by preparing and submitting applications for loan forgiveness for consumers.

**ADMIT**

4. The Company engaged in Telemarketing or arranged for others to engage in Telemarketing to market Student Loan Debt-Relief services to Consumers.

**ADMIT**

5. The Company sought to induce consumers to purchase their services during telephone calls.

**ADMIT**

6. The Company sold Student Loan Debt-Relief services to consumers during telephone calls.

**ADMIT**

7. The Company offered or provided services purporting to assist consumers with modifying the terms of any extension of credit.

**DENY**

8. The Company, including at times through one or more of the Payment Companies, collected fees from consumers before the consumers had been approved for IDR Plans.

**ADMIT as to some consumers. However, I have made reasonable inquiry and the information I know or can readily obtain is insufficient to enable me to admit or deny this request with respect to all consumers, and I am therefore unable to admit or deny this request based on lack of knowledge or information.**

9. The Company, including at times through one or more of the Payment Companies, collected fees from consumers while the consumers' loans were in forbearance.

**ADMIT as to some consumers. However, I have made reasonable inquiry and the information I know or can readily obtain is insufficient to enable me to admit or**

**deny this request with respect to all consumers, and I am therefore unable to admit or deny this request based on lack of knowledge or information.**

10. For consumers for whom the Company submitted an IDR Plan application, the Company, including at times through one or more of the Payment Companies, collected fees from the consumers before the consumers had made a payment under the corresponding approved IDR Plan.

**ADMIT as to some consumers. However, I have made reasonable inquiry and the information I know or can readily obtain is insufficient to enable me to admit or deny this request with respect to all consumers, and I am therefore unable to admit or deny this request based on lack of knowledge or information.**

11. For consumers for whom the Company submitted a loan consolidation application, the Company, including at times through one or more of the Payment Companies, collected fees from the consumers before the consumers had made a payment on the corresponding consolidated loan.

**ADMIT as to some consumers. However, I have made reasonable inquiry and the information I know or can readily obtain is insufficient to enable me to admit or deny this request with respect to all consumers, and I am therefore unable to admit or deny this request based on lack of knowledge or information.**

12. For consumers for whom the Company submitted a loan forgiveness application, the Company, including at times through one or more of the Payment Companies, collected fees from the consumers before the consumers' loans were forgiven.

**ADMIT as to some consumers. However, I have made reasonable inquiry and the information I know or can readily obtain is insufficient to enable me to admit or deny this request with respect to all consumers, and I am therefore unable to admit or deny this request based on lack of knowledge or information.**

13. The Company's service agreements called for consumers to pay monthly fees in exchange for Student Loan Debt-Relief services over the course of 10 or 20 years.

**ADMIT as to some service agreements and consumers, DENY as to all service agreements and consumers.**

14. The Company, including at times through one or more of the Payment Companies, collected monthly fees from consumers in exchange for Student Loan Debt-Relief services.

**ADMIT as to some consumers, DENY as to all consumers.**

15. The Company, including at times through one or more of the Payment Companies, collected monthly fees from consumers in exchange for preparing and submitting consumers' annual IDR Plan recertifications.

**ADMIT as to some consumers, DENY as to all consumers.**

16. The Company, including at times through one or more of the Payment Companies, collected monthly fees from consumers for preparing recertification paperwork for IDR Plans before submitting recertification paperwork to student loan servicers.

**ADMIT as to some consumers, DENY as to all consumers.**

17. The Company, including at times through one or more of the Payment Companies, collected monthly fees from consumers for preparing recertification paperwork for IDR Plans before consumers made any payments on recertified IDR Plans.

**ADMIT as to some consumers, DENY as to all consumers.**

18. The Company at times did not obtain information about whether a consumer made an initial payment under an approved IDR Plan.

**ADMIT**

19. At times, student loan servicers denied applications for IDR Plans submitted by the Company on behalf of consumers.

**ADMIT**

20. At times, student loan servicers denied applications for IDR Plans submitted by the Company after discovering the application submitted by the Company stated a family size higher than a consumer's actual family size as defined by the Department of Education.

**I have made reasonable inquiry and the information I know or can readily obtain is insufficient to enable me to admit or deny this request, and I am therefore unable to admit or deny this request based on lack of knowledge or information.**

21. When student loan servicers denied applications for IDR Plans submitted by the Company on behalf of consumers, the Company had at times already collected at least a portion of its fees from those consumers.

**ADMIT**

22. After approval of a loan consolidation request submitted by the Company on behalf of a consumer, the Company did not obtain information about whether the consumer made an initial payment on any resulting consolidated loan.

**I have made reasonable inquiry and the information I know or can readily obtain is insufficient to enable me to admit or deny this request, and I am therefore unable to admit or deny this request based on lack of knowledge or information.**

23. The Company did not track when consumers made a student loan payment following approval of an IDR Plan application.

**I have made reasonable inquiry and the information I know or can readily obtain is insufficient to enable me to admit or deny this request, and I am therefore unable to admit or deny this request based on lack of knowledge or information.**

24. Ex. 1, bates stamped PSL003-2491_0003, is a true and correct copy of a letter directed to Albert Kim and Premier Student Loan Center from the Better Business Bureau, dated April 11, 2017.

**I have made reasonable inquiry and the information I know or can readily obtain is insufficient to enable me to admit or deny this request, and I am therefore unable to admit or deny this request based on lack of knowledge or information.**

25. Ex. 2, bates stamped PSL003-2491_0004 to PSL003-2491_0005, is a true and correct copy of a letter you wrote to the Better Business Bureau, dated April 17, 2017.

**ADMIT**

26. Ex. 3, bates stamped T-016102-00017823 to T-016102-00017823_0004, is a true and correct copy of an email you forwarded to Albert Kim, dated February 26, 2019.

**I have made reasonable inquiry and the information I know or can readily obtain is insufficient to enable me to admit or deny this request, and I am therefore unable to admit or deny this request based on lack of knowledge or information.**

27. Not including fees collected through AMP, RAM or TAS, the Company did not hold or arrange for a third-party to hold fees that it collected from consumers in Dedicated Client Accounts.

**ADMIT**

28. Not including any fees collected through AMP, RAM or TAS, the Company did not hold or arrange for a third-party to hold fees that it collected from consumers in Dedicated Client

Accounts where the entity administering the account was not owned or controlled or in any way affiliated with CAC, True Count, or Prime.

**ADMIT**

29. The Company did not use funds collected from consumers to make payments to consumers' student loan servicers.

**ADMIT as to some consumers. However, I have made reasonable inquiry and the information I know or can readily obtain is insufficient to enable me to admit or deny this request with respect to all consumers, and I am therefore unable to admit or deny this request based on lack of knowledge or information.**

30. Funds held by RAM, AMP, and TAS that were collected from consumers in connection with the consumers' purchase of the Company's services were never used to pay the consumers' student loan debts.

**I have made reasonable inquiry and the information I know or can readily obtain is insufficient to enable me to admit or deny this request, and I am therefore unable to admit or deny this request based on lack of knowledge or information.**

31. The Company did not provide proof to RAM that a consumer had made an initial payment that complied with 16 C.F.R. § 310.4(a)(5)(i)(A)-(B).

**I have made reasonable inquiry and the information I know or can readily obtain is insufficient to enable me to admit or deny this request, and I am therefore unable to admit or deny this request based on lack of knowledge or information.**

32. The Company did not provide proof to AMP that a consumer had made an initial payment that complied with 16 C.F.R. § 310.4(a)(5)(i)(A)-(B).

**I have made reasonable inquiry and the information I know or can readily obtain is insufficient to enable me to admit or deny this request, and I am therefore unable to admit or deny this request based on lack of knowledge or information.**

33. The Company did not provide proof to TAS that a consumer had made an initial payment that complied with 16 C.F.R. § 310.4(a)(5)(i)(A)-(B).

**I have made reasonable inquiry and the information I know or can readily obtain is insufficient to enable me to admit or deny this request, and I am therefore unable to admit or deny this request based on lack of knowledge or information.**

34. The Company did not use any purported providers of Dedicated Client Accounts to hold payments from consumers other than RAM, AMP, and TAS.

**ADMIT**

35. You created the email account <u>tas2019llc@gmail.com</u>.

**ADMIT**

36. You had access to the email account <u>tas2019llc@gmail.com</u> and reviewed emails sent to that email address.

**ADMIT**

37. You sent emails from the account <u>tas2019llc@gmail.com</u>.

**ADMIT**

38. You reviewed and approved contracts for use by TAS with consumers.

**ADMIT**

39. You reviewed and approved sales scripts that represented that TAS was an independent third-party that held consumer fees in dedicated customer accounts.

**I have made reasonable inquiry and the information I know or can readily obtain is insufficient to enable me to admit or deny this request, and I am therefore unable to admit or deny this request based on lack of knowledge or information.**

40. You exercised managerial control over TAS.

**DENY**

41. Prior to October 22, 2019, you were aware that Michael Tabin is the name of a fictional person.

**ADMIT**

42. Ex. 4, bates stamped T-016554-00308113 to T-016554-00308114, is a true and correct copy of an email and attachment sent to you by Christian Sangalang, dated February 27, 2019.

**I have made reasonable inquiry and the information I know or can readily obtain is insufficient to enable me to admit or deny this request, and I am therefore unable to admit or deny this request based on lack of knowledge or information.**

43. Ex. 5, bates stamped T-016554-00298407, is a true and correct copy of an email to you from Albert Kim, dated March 1, 2019.

**I have made reasonable inquiry and the information I know or can readily obtain is insufficient to enable me to admit or deny this request, and I am therefore unable to admit or deny this request based on lack of knowledge or information.**

44. Ex. 6, bates stamped T-016102-00006861 to T-016102-00006861_0002 and T-016102-00006863 to T-016102-00006863_0005, is a true and correct copy of an email chain and attachment sent to you by Le Ho, dated April 18, 2019.

**I have made reasonable inquiry and the information I know or can readily obtain is insufficient to enable me to admit or deny this request, and I am therefore unable to admit or deny this request based on lack of knowledge or information.**

45. From December 1, 2017, through October 22, 2019, the Company's "Document Preparation and Service Agreement" included the following statement: No Advance Fees. Per the attached Client Trust Account Authorization, Company does not take any advance fees from Client. Company will designate an independent third-party dedicated account provider ("DAP") to collect and deposit payments that Client has agreed to make with Company, pursuant to the Fee and Service Schedule of this Agreement, and to deposit and hold Client's funds in a trust account established and serviced by the DAP. The DAP will not disburse any Client fees until Client has received a consolidation, adjustment, or otherwise satisfactory result, and Client completes one payment towards such.

**ADMIT as to some of the time period. However, I have made reasonable inquiry and the information I know or can readily obtain is insufficient to enable me to admit or deny this request with respect to the entire time period, and I am therefore unable to admit or deny this request based on lack of knowledge or information.**

46. From December 1, 2017 through October 22, 2019, the Company included a provision in its "Document Preparation and Service Agreement" indicating that it did not take "any advance fees."

**ADMIT as to some of the time period. However, I have made reasonable inquiry and the information I know or can readily obtain is insufficient to enable me to admit or deny this request with respect to the entire time period, and I am therefore unable to admit or deny this request based on lack of knowledge or information.**

47. You knew that the Company charged and received fees before consumers' applications for loan consolidations were approved by their student loan servicer.

**ADMIT as to some of the time period, DENY as to the entire time period.**

48. You knew that the Company charged and received fees before consumers' applications for IDR Plans were approved by their student loan servicer.

**ADMIT as to some of the time period, DENY as to the entire time period.**

49. You knew that the Company charged and received fees before consumers' applications for loan forgiveness were approved by their student loan servicer.

**ADMIT as to some of the time period, DENY as to the entire time period.**

50. You knew that the Company charged and received fees before consumers' applications for loan consolidations were approved by the Department of Education.

**ADMIT as to some of the time period, DENY as to the entire time period.**

51. You knew that the Company charged and received fees before consumers' applications for IDR Plans were approved by the Department of Education.

**ADMIT as to some of the time period, DENY as to the entire time period.**

52. You knew that the Company charged and received fees before consumers' applications for loan forgiveness were approved by the Department of Education.

**ADMIT as to some of the time period, DENY as to the entire time period.**

53. You knew that the Company charged and received fees for consumers' applications for loan consolidations before consumers had made the first payments to their student loan servicers under the altered student loan terms that resulted from the applications referred to in this paragraph.

**ADMIT as to some of the time period, DENY as to the entire time period.**

54. You knew that the Company charged and received fees for consumers' applications for IDR Plans before consumers had made the first payments to their student loan servicers under the altered student loan terms that resulted from the applications referred to in this paragraph.

**ADMIT as to some of the time period, DENY as to the entire time period.**

55. You knew that the Company charged and received fees for consumers' applications for loan forgiveness before consumers had made the first payments to their student loan servicers under the altered student loan terms that resulted from the applications referred to in this paragraph.

**ADMIT as to some of the time period, DENY as to the entire time period.**

56. During some Telemarketing calls, the Company represented to consumers that fees paid by consumers to the Company would be applied towards the consumers' student loans.

**ADMIT**

57. During some Telemarketing calls, the Company represented to consumers that fees paid by consumers to the Company would be the only payments consumers would owe on their student loans after being accepted into an IDR Plan or loan-forgiveness program.

**ADMIT**

58. During some Telemarketing calls, the Company represented to consumers that the fees it charged were necessary to participate and remain enrolled in student loan-forgiveness plans.

**I have made reasonable inquiry and the information I know or can readily obtain is insufficient to enable me to admit or deny this request, and I am therefore unable to admit or deny this request based on lack of knowledge or information.**

59. During some Telemarketing calls, the Company represented to consumers that the fees it charged were necessary to participate and remain enrolled in IDR Plans.

**I have made reasonable inquiry and the information I know or can readily obtain is insufficient to enable me to admit or deny this request, and I am therefore unable to admit or deny this request based on lack of knowledge or information.**

60. During some Telemarketing calls, the Company represented to consumers that, shortly after consumers enrolled in the Company's services, consumers' student loans would be forgiven in whole or in part.

**ADMIT**

61. During some Telemarketing calls, the Company told consumers that they were approved for a specific lower monthly payment on their student loans.

**ADMIT**

62. During some Telemarketing calls, the Company represented that consumers' lower monthly student loan payment would be in place over the entire loan term.

**ADMIT**

63. During some Telemarketing calls, the Company represented to consumers that they qualified for or were eligible for lower monthly student loan payments, where such payment amounts had been calculated based on an incorrect family size.

    **ADMIT**

64. During some Telemarketing calls, the Company represented to consumers that they qualified for or were eligible for lower monthly student loan payments, where such payment amounts had been calculated based on a consumer being single, when the consumer was actually married.

    **ADMIT**

65. During some Telemarketing calls, the Company represented to consumers that they qualified for or were eligible for lower monthly student loan payments, where such payment amounts had been calculated based on an incorrect income amount.

    **ADMIT**

66. During some Telemarketing calls, the Company represented to consumers that consumers' monthly student loan payment amount had been lowered for the entire loan term.

    **ADMIT**

67. The Company submitted forbearance requests to student loan servicers on behalf of consumers.

    **ADMIT**

68. At times, the Company did not inform consumers that it would submit forbearance requests to student loan servicers on the consumers' behalf.

    **ADMIT**

69. The Company did not inform consumers that it would include false information about consumers' family size in the applications for IDR Plans that it prepared and submitted to student loan servicers on their behalf.

    **I have made reasonable inquiry and the information I know or can readily obtain is insufficient to enable me to admit or deny this request, and I am therefore unable to admit or deny this request based on lack of knowledge or information.**

70. The Company did not inform consumers that it would include false information about consumers' marital status in the applications for IDR Plans that it prepared and submitted to student loan servicers on their behalf.

**I have made reasonable inquiry and the information I know or can readily obtain is insufficient to enable me to admit or deny this request, and I am therefore unable to admit or deny this request based on lack of knowledge or information.**

71. The Company did not inform consumers that it would include false information about consumers' income in the applications for IDR Plans that it prepared and submitted to student loan servicers on their behalf.

**I have made reasonable inquiry and the information I know or can readily obtain is insufficient to enable me to admit or deny this request, and I am therefore unable to admit or deny this request based on lack of knowledge or information.**

72. At times, the Company listed employed consumers who did not provide proof of income to the Company as unemployed in the consumers' applications for IDR Plans.

**ADMIT**

73. At times, the Company submitted applications for IDR Plans to consumers' student loan servicers that listed family sizes greater than the family sizes provided to the Company by the corresponding consumers.

**ADMIT**

74. CAC and True Count submitted applications for IDR Plans to consumers' student loan servicers that listed married consumers as single.

**ADMIT**

75. Ex. 7, bates stamped E-014954-00229430 to E-014954-00229430_0002, is a true and correct copy of an email chain between you, Albert Kim, Nguyen, and Dinh, dated April 2018.

**I have made reasonable inquiry and the information I know or can readily obtain is insufficient to enable me to admit or deny this request, and I am therefore unable to admit or deny this request based on lack of knowledge or information.**

76. Ex. 8, bates stamped T-016554-00260216 to T-016554-00260216_0005, is a true and correct copy of an email chain between you, Albert Kim, Dinh, and Nguyen, dated April 2018.

**I have made reasonable inquiry and the information I know or can readily obtain is insufficient to enable me to admit or deny this request, and I am therefore unable to admit or deny this request based on lack of knowledge or information.**

77. Ex. 9, bates stamped E-014954-00199193 to E-014954-00199193_0002, is a true and correct copy of an email chain that includes an email from Albert Kim dated April 9, 2018, that includes the following statement: "ALL FTC, CFPB, FCC, AG, and 3 letter agency calls, emails, and voicemails must be immediately reported to me."

**I have made reasonable inquiry and the information I know or can readily obtain is insufficient to enable me to admit or deny this request, and I am therefore unable to admit or deny this request based on lack of knowledge or information.**

78. Ex. 10, bates stamped T-016554-00488794 to T-016554-00488794_0001, is a true and correct copy of an email you received from Albert Kim, dated November 8, 2018.

**I have made reasonable inquiry and the information I know or can readily obtain is insufficient to enable me to admit or deny this request, and I am therefore unable to admit or deny this request based on lack of knowledge or information.**

79. In November 2018, it was the Company's policy that processors should not verify the consumer's family size or income in Debt Pay Pro (DPP) before submitting an application on the consumer's behalf to a student loan servicer or the Department of Education (DOE).

**OBJECTION: The request is vague, unintelligible, or ambiguous as to "the Company's policy."**

80. Ex. 11, bates stamped T-016554-00276465, is a true and correct copy of emails you received from Erica Tabin and Nguyen dated April 23, 2019.

**I have made reasonable inquiry and the information I know or can readily obtain is insufficient to enable me to admit or deny this request, and I am therefore unable to admit or deny this request based on lack of knowledge or information.**

81. Ex. 12, bates stamped T-016102-00003933, is a true and correct copy of an email you received from Matt Weinberg, dated August 30, 2019.

**I have made reasonable inquiry and the information I know or can readily obtain is insufficient to enable me to admit or deny this request, and I am therefore unable to admit or deny this request based on lack of knowledge or information.**

82. Ex. 13, bates stamped T-016102-00004010 to T-016102-00004010_0006, is a true and correct copy of an attachment to Ex. 12.

**I have made reasonable inquiry and the information I know or can readily obtain is insufficient to enable me to admit or deny this request, and I am therefore unable to admit or deny this request based on lack of knowledge or information.**

83. Ex. 13, bates stamped T-016102-00004010 to T-016102-00004010_0006, is a true and correct copy of a document that was used in August 2019 to train Company employees.

**I have made reasonable inquiry and the information I know or can readily obtain is insufficient to enable me to admit or deny this request, and I am therefore unable to admit or deny this request based on lack of knowledge or information.**

84. Admit that 777sierramadre@gmail.com was your email address.

**ADMIT**

85. Admit that kainewen@gmail.com was your email address.

**ADMIT**

86. Admit that kainedai@yahoo.com was your email address.

**ADMIT**

87. Admit that kainedai@hotmail.com was your email address.

**ADMIT**

88. Admit that supacpeon@gmail.com was your email address.

**ADMIT**

89. Admit that supacpeon@hotmail.com was your email address.

**ADMIT**

90. Admit that kwen@premierstudentloancenter.com was your email address.

**ADMIT**

91. Admit that kaine@premierstudentloancenter.com was your email address.

**ADMIT**

92. Admit that kwen@slaccountmgmt.com was your email address.

**ADMIT**

93. Admit that kaine@slaccountmgmt.com was your email address.

**ADMIT**

94. Admit that kwen@financialpreparationservices.com was your email address.

**ADMIT**

95. Admit that kaine@financialpreparationservices.com was your email address.

**ADMIT**

96. At times you used the email address 777sierramadre@gmail.com for conducting business for the SLDR Companies.

**ADMIT**

97. At times you used the email address kainewen@gmail.com for conducting business for the SLDR Companies.

**ADMIT**

98. At times you used the email address supacpeon@gmail.com for conducting business for the SLDR Companies.

**I have made reasonable inquiry and the information I know or can readily obtain is insufficient to enable me to admit or deny this request, and I am therefore unable to admit or deny this request based on lack of knowledge or information.**

99. At times you used the email address supacpeon@hotmail.com for conducting business for the SLDR Companies.

**I have made reasonable inquiry and the information I know or can readily obtain is insufficient to enable me to admit or deny this request, and I am therefore unable to admit or deny this request based on lack of knowledge or information.**

100. Ex. 14, bates stamped T-016102-00076784, includes a true and correct copy an email sent to your kainewen@gmail.com email address.

**ADMIT**

101. Ex. 15, bates stamped T-016102-00069311, includes a true and correct copy of an email you sent from your kainewen@gmail.com email address.

**ADMIT**

102. Ex. 16, bates stamped AW_0000254, is a true and correct copy of a document signed by you on October 01, 2015.

**ADMIT**

103. Ex. 16, bates stamped AW_0000254, contains your signature.

**ADMIT**

104. You were an owner and officer of CAC.

**ADMIT**

105. You exercised substantial managerial responsibility for and control over CAC's business practices from November 2015 through September 2018.

**ADMIT as to some of the time period, DENY as to the entire time period.**

106. You were a signatory on CAC's bank accounts.

**ADMIT**

107. You entered into contractual relationships on CAC's behalf with payment processors.

**ADMIT**

108. You responded on CAC's behalf to certain consumer complaints.

**ADMIT**

109. You reviewed consumer marketing materials for the Company.

**I have made reasonable inquiry and the information I know or can readily obtain is insufficient to enable me to admit or deny this request, and I am therefore unable to admit or deny this request based on lack of knowledge or information.**

110. You reviewed the Company's scripts created for use by employees in the sales and processing departments.

**ADMIT as to some of the Company's scripts created for use by employees in the sales and processing departments, DENY as to all of the Company's scripts created for use by employees in the sales and processing departments.**

111. You were an account signatory on bank accounts in True Count's name.

**ADMIT**

112. You were an owner and officer of True Count.

**ADMIT**

113. You were a signatory on bank accounts held in True Count's name.

**ADMIT**

114. You exercised substantial managerial responsibility for and control over True Count's business practices from March 2018, through October 22, 2019.

**ADMIT**

115. You exercised substantial managerial responsibility for and control over Prime's business practices from September 2018, through October 22, 2019.

**ADMIT as to some of the time period. However, I have made reasonable inquiry and the information I know or can readily obtain is insufficient to enable me to admit or deny this request with respect to the entire time period, and I am therefore unable to admit or deny this request based on lack of knowledge or information.**

116. In connection with a Telemarketing transaction, you provided, offered to provide, or arranged for others to provide goods or services to customers in exchange for consideration.

**ADMIT**

117. Ex. 17, bates stamped T-013145-00001002_0602 to T-013145-00001002_0604, is a true and correct copy of a document signed by you, dated August 21, 2018, that you or someone acting on your behalf submitted to National Merchant Center.

**I have made reasonable inquiry and the information I know or can readily obtain is insufficient to enable me to admit or deny this request, and I am therefore unable to admit or deny this request based on lack of knowledge or information.**

118. Ex. 18, bates stamped T-016554-00367368, is a true and correct copy of a calendar invite
Albert Kim sent to you at your kaine@premierstudentloancenter.com email address entitled
"Change DBA for all Corps to avoid complaints every 6 months."

**I have made reasonable inquiry and the information I know or can readily obtain is
insufficient to enable me to admit or deny this request, and I am therefore unable
to admit or deny this request based on lack of knowledge or information.**

119. Ex. 19, bates stamped T-011255-00000183_0002 to T-011255-00000183_0003, is a true
and correct copy of a letter dated March 13, 2017, that you sent to the State of Oregon's
Department of Consumer and Business Services Division of Financial Regulation.

**ADMIT**

120. When you sent the letter attached as Ex. 19, bates stamped T-011255-00000183_0002 to
T-011255-00000183_0003, you knew that it was the Company's practice to submit applications
for forbearance, consolidation, and IDR Plans on behalf of consumers directly to student loan
servicers.

**I have made reasonable inquiry and the information I know or can readily obtain is
insufficient to enable me to admit or deny this request, and I am therefore unable
to admit or deny this request based on lack of knowledge or information.**

121. Ex. 20, bates stamped T-016554-00499265_0005, is a true and correct copy of a letter
signed by you, dated February 20, 2018.

**ADMIT**

122. When you signed the letter attached as Ex. 20, bates stamped T-016554-00499265_0005,
you knew that it was the Company's practice to submit applications for forbearance,
consolidation, and IDR Plans on behalf of consumers directly to student loan servicers.

**I have made reasonable inquiry and the information I know or can readily obtain is
insufficient to enable me to admit or deny this request, and I am therefore unable
to admit or deny this request based on lack of knowledge or information.**

123. Attached as Ex. 21, bates stamped T-013145-00001001, is a true and correct copy of an
email you sent on February 7, 2018, to Jimmy Lai, in which you identified yourself as Managing
Partner of Premier Student Loan Center.

**I have made reasonable inquiry and the information I know or can readily obtain is
insufficient to enable me to admit or deny this request, and I am therefore unable
to admit or deny this request based on lack of knowledge or information.**

124. When the Company received correspondence regarding a consumer complaint from a state law enforcement agency or regulator, you at times reviewed the correspondence.

> **ADMIT**

125. When the Company received correspondence regarding a consumer complaint from a state law enforcement agency or regulator, you at times responded to the agency on behalf of the Company.

> **ADMIT**

126. Ex. 22, bates stamped T-016102-00133867 to T-016102-00133867_0003, is a true and correct copy of an email chain that includes emails you sent and received in August 2019.

> **I have made reasonable inquiry and the information I know or can readily obtain is insufficient to enable me to admit or deny this request, and I am therefore unable to admit or deny this request based on lack of knowledge or information.**

127. Ex. 23, bates stamped T-016102-00004094 to T-016102-00004094_0001, is a true and correct copy of an email chain dated August 28, 2019, between you, Albert Kim, Sangalang, Nguyen, and Ho.

> **I have made reasonable inquiry and the information I know or can readily obtain is insufficient to enable me to admit or deny this request, and I am therefore unable to admit or deny this request based on lack of knowledge or information.**

128. The Re-Verification Campaign discussed on pp. 14-16 of ECF 48, excerpted and attached hereto as Ex. 24, was limited to consumers who had not yet made a payment to the Company.

> **I have made reasonable inquiry and the information I know or can readily obtain is insufficient to enable me to admit or deny this request, and I am therefore unable to admit or deny this request based on lack of knowledge or information.**

129. The Re-Verification Campaign discussed on pp. 14-16 of ECF 48 did not involve outreach to consumers who had signed up with the Company prior to June 2019.

> **I have made reasonable inquiry and the information I know or can readily obtain is insufficient to enable me to admit or deny this request, and I am therefore unable to admit or deny this request based on lack of knowledge or information.**

130. Prior to August 26, 2019, the Company did not have a practice of routinely monitoring or auditing sales calls to identify misrepresentations about the benefits of their services to consumers.

**OBJECTION: The request is vague, unintelligible, or ambiguous as to the precise meaning of "routinely."**

131. Prior to August 26, 2019, the Company did not have a practice of routinely monitoring or auditing sales calls to identify misrepresentations or omissions related to family size.

**OBJECTION: The request is vague, unintelligible, or ambiguous as to the precise meaning of "routinely."**

132. The Company charged at least $106,088,102.51 in fees to consumers.

**I have made reasonable inquiry and the information I know or can readily obtain is insufficient to enable me to admit or deny this request, and I am therefore unable to admit or deny this request based on lack of knowledge or information.**

133. The Company refunded $11,030,345.59 to consumers.

**I have made reasonable inquiry and the information I know or can readily obtain is insufficient to enable me to admit or deny this request, and I am therefore unable to admit or deny this request based on lack of knowledge or information.**

134. It was the Company's practice to record payments from consumers in DPP.

**I have made reasonable inquiry and the information I know or can readily obtain is insufficient to enable me to admit or deny this request, and I am therefore unable to admit or deny this request based on lack of knowledge or information.**

135. It was the Company's practice to record refunds it issued to consumers in DPP.

**I have made reasonable inquiry and the information I know or can readily obtain is insufficient to enable me to admit or deny this request, and I am therefore unable to admit or deny this request based on lack of knowledge or information.**

136. It was the Company's practice to record fees it received from consumers in its Quickbooks software program.

**I have made reasonable inquiry and the information I know or can readily obtain is insufficient to enable me to admit or deny this request, and I am therefore unable to admit or deny this request based on lack of knowledge or information.**

137. It was the Company's practice to record refunds it issued to consumers in its Quickbooks software program.

**I have made reasonable inquiry and the information I know or can readily obtain is insufficient to enable me to admit or deny this request, and I am therefore unable to admit or deny this request based on lack of knowledge or information.**

138. Ex. 25, bates stamped T-016554-00230800 to T-016554-00230800_0001, is a true and correct copy of CAC's 2015 profit and loss statement.

**I have made reasonable inquiry and the information I know or can readily obtain is insufficient to enable me to admit or deny this request, and I am therefore unable to admit or deny this request based on lack of knowledge or information.**

139. The Company, through CAC, received $23,515.49 in income from "document preparation services" in 2015.

**I have made reasonable inquiry and the information I know or can readily obtain is insufficient to enable me to admit or deny this request, and I am therefore unable to admit or deny this request based on lack of knowledge or information.**

140. Ex. 26, bates stamped T-018351-00001038 to T-018351-00001038_0003, is a true and correct copy of CAC's 2016 profit and loss statement.

**I have made reasonable inquiry and the information I know or can readily obtain is insufficient to enable me to admit or deny this request, and I am therefore unable to admit or deny this request based on lack of knowledge or information.**

141. The Company, through CAC, received $2,098,618.78 in "document preparation income" in 2016.

**I have made reasonable inquiry and the information I know or can readily obtain is insufficient to enable me to admit or deny this request, and I am therefore unable to admit or deny this request based on lack of knowledge or information.**

142. The Company, through CAC, paid $299.67 in refunds in 2016.

**I have made reasonable inquiry and the information I know or can readily obtain is insufficient to enable me to admit or deny this request, and I am therefore unable to admit or deny this request based on lack of knowledge or information.**

143. Ex. 27, bates stamped T-018351-00001042 to T-018351-00001042_0003, is a true and correct copy of CAC's 2017 profit and loss statement.

**I have made reasonable inquiry and the information I know or can readily obtain is insufficient to enable me to admit or deny this request, and I am therefore unable to admit or deny this request based on lack of knowledge or information.**

144. The Company, through CAC, received $13,639,070.94 in "document preparation income" in 2017.

> **I have made reasonable inquiry and the information I know or can readily obtain is insufficient to enable me to admit or deny this request, and I am therefore unable to admit or deny this request based on lack of knowledge or information.**

145. The Company, through CAC, paid $97,232.80 in refunds in 2017.

> **I have made reasonable inquiry and the information I know or can readily obtain is insufficient to enable me to admit or deny this request, and I am therefore unable to admit or deny this request based on lack of knowledge or information.**

146. In total, CAC received $22,783,590.53 in fees from consumers.

> **I have made reasonable inquiry and the information I know or can readily obtain is insufficient to enable me to admit or deny this request, and I am therefore unable to admit or deny this request based on lack of knowledge or information.**

147. In total, CAC refunded $550,830.65 in fees initially paid by consumers.

> **I have made reasonable inquiry and the information I know or can readily obtain is insufficient to enable me to admit or deny this request, and I am therefore unable to admit or deny this request based on lack of knowledge or information.**

148. In total, True Count received $60,826,504.52 in fees from consumers.

> **I have made reasonable inquiry and the information I know or can readily obtain is insufficient to enable me to admit or deny this request, and I am therefore unable to admit or deny this request based on lack of knowledge or information.**

149. In total, True Count refunded $6,179,675.28 in fees paid by consumers.

> **I have made reasonable inquiry and the information I know or can readily obtain is insufficient to enable me to admit or deny this request, and I am therefore unable to admit or deny this request based on lack of knowledge or information.**

150. First Priority collected fees from consumers who had enrolled in the Company's Student Loan Debt-Relief services.

> **I have made reasonable inquiry and the information I know or can readily obtain is insufficient to enable me to admit or deny this request, and I am therefore unable to admit or deny this request based on lack of knowledge or information.**

151. Horizon collected fees from consumers who had enrolled in the Company's Student Loan Debt-Relief services.

**I have made reasonable inquiry and the information I know or can readily obtain is insufficient to enable me to admit or deny this request, and I am therefore unable to admit or deny this request based on lack of knowledge or information.**

152. TAS collected fees from consumers who had enrolled in the Company's Student Loan Debt-Relief services.

**ADMIT**

153. "Document preparation services" in Ex. 25 refers to fees paid by consumers in exchange for the Company's purported document preparation services.

**I have made reasonable inquiry and the information I know or can readily obtain is insufficient to enable me to admit or deny this request, and I am therefore unable to admit or deny this request based on lack of knowledge or information.**

154. "Document preparation income" in Exs. 26 and 27 refers to fees paid by consumers in exchange for the Company's purported document preparation services.

**I have made reasonable inquiry and the information I know or can readily obtain is insufficient to enable me to admit or deny this request, and I am therefore unable to admit or deny this request based on lack of knowledge or information.**

Dated: October 17, 2022                              Respectfully Submitted

By: Kaine Wen

Plaintiffs' Exhibit 10

## DEFENDANT KAINE WEN'S RESPONSE AND OBJECTIONS TO SECOND REQUESTS FOR ADMISSION

I, pursuant to Federal Rules of Civil Procedure 26 and 36, hereby respond and object to Plaintiffs' Second Requests for Admission ("the Requests").

## GENERAL STATEMENT AND OBJECTIONS

The following responses are based upon information presently available to me and are made without prejudice to the right to utilize subsequently discovered facts or witnesses or documents or things or legal arguments. I specifically reserve the right to modify and/or supplement these responses if and to the extent required or permitted under the Federal Rules of Civil Procedure.

The continuing and specific objections to the Requests are subject to all objections as to competence, relevance, materiality, propriety, admissibility, and any and all other objections and grounds which would require the exclusion of any evidence disclosed herein if the evidence were produced and sought to be introduced into evidence in Court, including the following general objections:

1. I object to the Requests to the extent that they seek information that is protected from disclosure by the attorney-client privilege, the attorney work product doctrine, or any other recognized privilege.

2. I object to the Requests to the extent that they require me to search for and produce documents or information that are not within my possession, custody, or control.

3. I object to the Requests to the extent they seek information or documents that cannot be located by me after reasonably diligent inquiry, are readily available from public sources, or are available to Plaintiffs' Counsel from another source or by other means that are more convenient, more appropriate, less burdensome, or less expensive.

4. I object to the Requests to the extent they seek legal conclusions and/or would require me to reach a legal conclusion in order to prepare a response.

5. I object to the Requests to the extent they are argumentative, prejudicial, improper, incorrect, vague, and/or ambiguous.

6. I object to the Definitions to the extent that certain Definitions imply legal conclusions.

## RESPONSES

155. The Company, including through Horizon, controlled the DPP Account.

**OBJECTION: The request is vague, unintelligible, or ambiguous as to "controlled the DPP Account."**

156. The Company, including through Horizon, controlled the DPP Account from October 24, 2015, through October 22, 2019.

**OBJECTION: The request is vague, unintelligible, or ambiguous as to "controlled the DPP Account."**

157. Ex. 1, bates stamped T-031904-00163464 through 3465, is a true and accurate copy of emails that You sent and received, dated September 2018.

**I have made reasonable inquiry and the information I know or can readily obtain is insufficient to enable me to admit or deny this request, and I am therefore unable to admit or deny this request based on lack of knowledge or information.**

158. The reference on the first page of Ex. 1, bates stamped T-031904-00163464, to the "'Enrolled today' report in DPP" refers to the Company's tracking through the DPP Account of Consumers enrolled in the Company's Student Loan Debt-Relief services.

**I have made reasonable inquiry and the information I know or can readily obtain is insufficient to enable me to admit or deny this request, and I am therefore unable to admit or deny this request based on lack of knowledge or information.**

159. The Company used the DPP Account to record Consumer enrollments in its Student Loan Debt-Relief services.

**ADMIT**

160. The Company used the DPP Account to store contracts with Consumers for the Company's Student Loan Debt-Relief services.

**ADMIT**

161. The Company used the DPP Account to access recordings of sales calls between its representatives and Consumers for the Company's Student Loan Debt-Relief services.

**I have made reasonable inquiry and the information I know or can readily obtain is insufficient to enable me to admit or deny this request, and I am therefore unable to admit or deny this request based on lack of knowledge or information.**

162. You executed an assignment agreement transferring ownership of the DPP Account to SL Account Management in February 2018.

**I have made reasonable inquiry and the information I know or can readily obtain is insufficient to enable me to admit or deny this request, and I am therefore unable to admit or deny this request based on lack of knowledge or information.**

163. SL Account Management was a dba for True Count.

    **ADMIT**

164. Ex. 2, bates stamped T-031904-00234335 and T-031904-00234337, is a true and accurate copy of emails with an attachment that You sent and received, dated December 21, 2018.

    **I have made reasonable inquiry and the information I know or can readily obtain is insufficient to enable me to admit or deny this request, and I am therefore unable to admit or deny this request based on lack of knowledge or information.**

165. Ex 3, bates stamped T-016102-00114643 through 4645, is a true and accurate copy of an email and attachment that Hu sent to Debt Pay, Inc. representatives, copying You, dated December 22, 2018.

    **I have made reasonable inquiry and the information I know or can readily obtain is insufficient to enable me to admit or deny this request, and I am therefore unable to admit or deny this request based on lack of knowledge or information.**

166. The attachment at page three of Ex. 3, bates stamped T-016102-00114645, contains Your signature on behalf of SL Account Mgmt.

    **I have made reasonable inquiry and the information I know or can readily obtain is insufficient to enable me to admit or deny this request, and I am therefore unable to admit or deny this request based on lack of knowledge or information.**

167. SL Account Mgmt was a dba for True Count.

    **ADMIT**

168. You agreed to transfer the DPP Account to Horizon in December 2018.

    **I have made reasonable inquiry and the information I know or can readily obtain is insufficient to enable me to admit or deny this request, and I am therefore unable to admit or deny this request based on lack of knowledge or information.**

169. After the assignment of the DPP Account to Horizon, the Company continued to use the DPP Account through October 22, 2019.

**I have made reasonable inquiry and the information I know or can readily obtain is insufficient to enable me to admit or deny this request, and I am therefore unable to admit or deny this request based on lack of knowledge or information.**

170. It was the Company's practice to record or cause to be recorded in the DPP Account the amount of each Consumer Fee, which record was made at or near the time of the Consumer Fee by one or more Persons with knowledge of the Consumer Fee.

**I have made reasonable inquiry and the information I know or can readily obtain is insufficient to enable me to admit or deny this request, and I am therefore unable to admit or deny this request based on lack of knowledge or information.**

171. It was the Company's practice to record or cause to be recorded in the DPP Account the date each Consumer Fee was processed, which record was made at or near the time the Consumer Fee was processed and by one or more Persons with knowledge of the Consumer Fee.

**I have made reasonable inquiry and the information I know or can readily obtain is insufficient to enable me to admit or deny this request, and I am therefore unable to admit or deny this request based on lack of knowledge or information.**

172. It was the Company's practice to record or cause to be recorded in the DPP Account the date each Consumer Fee cleared, which record was made at or near the time the Consumer Fee was cleared and by one or more Persons with knowledge of the Consumer Fee.

**I have made reasonable inquiry and the information I know or can readily obtain is insufficient to enable me to admit or deny this request, and I am therefore unable to admit or deny this request based on lack of knowledge or information.**

173. It was the Company's practice to record or cause to be recorded in the DPP Account the address of the Consumers who paid a Consumer Fee, which record was made at or near the time the Company received information about the address and by one or more Persons with knowledge of the address.

**I have made reasonable inquiry and the information I know or can readily obtain is insufficient to enable me to admit or deny this request, and I am therefore unable to admit or deny this request based on lack of knowledge or information.**

174. It was the Company's practice to record or cause to be recorded in the DPP Account the amount of each refund issued to a Consumer for a Consumer Fee, which record was made at or near the time the Company issued the refund and by one or more Persons with knowledge of the refund.

**I have made reasonable inquiry and the information I know or can readily obtain is insufficient to enable me to admit or deny this request, and I am therefore unable to admit or deny this request based on lack of knowledge or information.**

175. It was the Company's practice to record or cause to be recorded in the DPP Account the date that it issued each refund to a Consumer for a Consumer Fee, which record was made at or near the time the Company issued the refund and by one or more Persons with knowledge of the refund.

**I have made reasonable inquiry and the information I know or can readily obtain is insufficient to enable me to admit or deny this request, and I am therefore unable to admit or deny this request based on lack of knowledge or information.**

176. It was the Company's practice to record or cause to be recorded in the DPP Account each contract with Consumers for the Company's Student Loan Debt-Relief services, which record was made at or near the time the Company received the executed contract by one or more Persons with knowledge of the contract.

**I have made reasonable inquiry and the information I know or can readily obtain is insufficient to enable me to admit or deny this request, and I am therefore unable to admit or deny this request based on lack of knowledge or information.**

177. In the course of regularly conducted business activity and as a regular practice, the Company recorded and maintained information in the DPP Account about Consumer Fees, including the date and amount of Consumer Fees charged, and the address of Consumers who paid a Consumer Fee.

**I have made reasonable inquiry and the information I know or can readily obtain is insufficient to enable me to admit or deny this request, and I am therefore unable to admit or deny this request based on lack of knowledge or information.**

178. In the course of regularly conducted business activity and as a regular practice, the Company recorded and maintained information in the DPP Account about refunds issued to Consumers for Consumer Fees, including the date and amount of refunds issued to Consumers for Consumer Fees.

**I have made reasonable inquiry and the information I know or can readily obtain is insufficient to enable me to admit or deny this request, and I am therefore unable to admit or deny this request based on lack of knowledge or information.**

179. In the course of regularly conducted business activity and as a regular practice, the Company recorded and maintained in the DPP Account contracts with Consumers for the Company's Student Loan Debt-Relief services.

**I have made reasonable inquiry and the information I know or can readily obtain is
insufficient to enable me to admit or deny this request, and I am therefore unable
to admit or deny this request based on lack of knowledge or information.**

180. The DPP Account contains records of regularly conducted activity.

**I have made reasonable inquiry and the information I know or can readily obtain is
insufficient to enable me to admit or deny this request, and I am therefore unable
to admit or deny this request based on lack of knowledge or information.**

181. The DPP Account contains records made at or near the time of the occurrence of the
matters set forth by, or from information transmitted by, a person with knowledge of those
matters.

**I have made reasonable inquiry and the information I know or can readily obtain is
insufficient to enable me to admit or deny this request, and I am therefore unable
to admit or deny this request based on lack of knowledge or information.**

182. The DPP Account contains records kept in the course of regularly conducted business
activity.

**OBJECTION: The request is vague, unintelligible, or ambiguous as to "records
kept in the course of regularly conducted business activity."**

183. The DPP Account contains records made by regularly conducted business activity as a
regular practice.

**OBJECTION: The request is vague, unintelligible, or ambiguous as to "records
made by regularly conducted business activity as a regular practice."**

184. Ex. 4, bates stamped T-016102-00243265, is a true and accurate copy of emails sent to
You on April 24, 2019.

**I have made reasonable inquiry and the information I know or can readily obtain is
insufficient to enable me to admit or deny this request, and I am therefore unable
to admit or deny this request based on lack of knowledge or information.**

185. The reference in Ex. 4, bates stamped T-016102-00243265, to "There are 2 ways to listen
to Sales calls," refers to listening to recordings of sales calls between the Company's
representatives and Consumers for the Company's Student Loan Debt-Relief services.

**I have made reasonable inquiry and the information I know or can readily obtain is
insufficient to enable me to admit or deny this request, and I am therefore unable
to admit or deny this request based on lack of knowledge or information.**

186. The reference in Ex. 4, bates stamped T-016102-00243265, to the "Call Search Function in CallerReady" is to a function available through the Company's account with CallerReady.com to access recorded sales calls between the Company's representatives and Consumers relating to the Company's Student Loan Debt-Relief services.

**I have made reasonable inquiry and the information I know or can readily obtain is insufficient to enable me to admit or deny this request, and I am therefore unable to admit or deny this request based on lack of knowledge or information.**

187. At times, the Company used CallerReady.com to maintain recordings of calls between its representatives and Consumers for the Company's Student Loan Debt-Relief services.

**I have made reasonable inquiry and the information I know or can readily obtain is insufficient to enable me to admit or deny this request, and I am therefore unable to admit or deny this request based on lack of knowledge or information.**

188. From September 2018, through October 22, 2019, the Company used CallerReady.com to maintain recordings of calls between its representatives and Consumers for the Company's Student Loan Debt-Relief services.

**I have made reasonable inquiry and the information I know or can readily obtain is insufficient to enable me to admit or deny this request, and I am therefore unable to admit or deny this request based on lack of knowledge or information.**

189. The CallerReady.com recordings of calls between the Company's representatives and Consumers were records of regularly conducted activity.

**I have made reasonable inquiry and the information I know or can readily obtain is insufficient to enable me to admit or deny this request, and I am therefore unable to admit or deny this request based on lack of knowledge or information.**

190. The CallerReady.com recordings of calls between the Company's representatives and Consumers were records made at or near the time of the occurrence of the matters set forth by, or from information transmitted by, a person with knowledge of those matters.

**I have made reasonable inquiry and the information I know or can readily obtain is insufficient to enable me to admit or deny this request, and I am therefore unable to admit or deny this request based on lack of knowledge or information.**

191. The CallerReady.com recordings of calls between the Company's representatives and Consumers were kept in the course of regularly conducted business activity.

**I have made reasonable inquiry and the information I know or can readily obtain is
insufficient to enable me to admit or deny this request, and I am therefore unable
to admit or deny this request based on lack of knowledge or information.**

192. The CallerReady.com recordings of calls between the Company's representatives and
Consumers were records made by regularly conducted business activity as a regular practice.

**I have made reasonable inquiry and the information I know or can readily obtain is
insufficient to enable me to admit or deny this request, and I am therefore unable
to admit or deny this request based on lack of knowledge or information.**

193. At times, the Company used QuickBooks to maintain financial records, including profit and
loss, general ledger, and balance statements.

**ADMIT**

194. From October 2015, through August 2019, the Company used QuickBooks to maintain
financial records, including profit and loss, general ledger, and balance statements.

**I have made reasonable inquiry and the information I know or can readily obtain is
insufficient to enable me to admit or deny this request, and I am therefore unable
to admit or deny this request based on lack of knowledge or information.**

195. From October 2015, through August 2019, the Company used QuickBooks to maintain
financial records that tracked revenue received from Consumer Fees and refunds issued to
Consumers.

**I have made reasonable inquiry and the information I know or can readily obtain is
insufficient to enable me to admit or deny this request, and I am therefore unable
to admit or deny this request based on lack of knowledge or information.**

196. The Company's QuickBooks financial records were records of regularly conducted activity.

**I have made reasonable inquiry and the information I know or can readily obtain is
insufficient to enable me to admit or deny this request, and I am therefore unable
to admit or deny this request based on lack of knowledge or information.**

197. The Company's QuickBooks financial records were records made at or near the time of the
occurrence of the matters set forth by, or from information transmitted by, a person with
knowledge of those matters.

**I have made reasonable inquiry and the information I know or can readily obtain is
insufficient to enable me to admit or deny this request, and I am therefore unable
to admit or deny this request based on lack of knowledge or information.**

198. The Company's QuickBooks financial records were kept in the course of regularly conducted business activity.

**I have made reasonable inquiry and the information I know or can readily obtain is insufficient to enable me to admit or deny this request, and I am therefore unable to admit or deny this request based on lack of knowledge or information.**

199. The Company's QuickBooks financial records were records made by regularly conducted business activity as a regular practice.

**I have made reasonable inquiry and the information I know or can readily obtain is insufficient to enable me to admit or deny this request, and I am therefore unable to admit or deny this request based on lack of knowledge or information.**

200. Ex. 5, bates stamped T-016102-00076540 and T-016102-00076542, is a true and accurate copy of emails and an attachment that You sent and received, dated April 3, 2018.

**I have made reasonable inquiry and the information I know or can readily obtain is insufficient to enable me to admit or deny this request, and I am therefore unable to admit or deny this request based on lack of knowledge or information.**

201. The attachment to Ex. 5, bates stamped T-016102-00076542, is an invoice for the DPP Account that You received from Debt Pay, Inc.

**I have made reasonable inquiry and the information I know or can readily obtain is insufficient to enable me to admit or deny this request, and I am therefore unable to admit or deny this request based on lack of knowledge or information.**

202. Ex. 6, bates stamped T-016102-00044936 through 4938, is a true and accurate copy of emails and an attachment that You sent and received, dated July 5, 2018.

**I have made reasonable inquiry and the information I know or can readily obtain is insufficient to enable me to admit or deny this request, and I am therefore unable to admit or deny this request based on lack of knowledge or information.**

203. The attachment at the last page to Ex. 6, bates stamped T-016102-00044938, is an invoice for the DPP Account that You received from Debt Pay, Inc.

**I have made reasonable inquiry and the information I know or can readily obtain is insufficient to enable me to admit or deny this request, and I am therefore unable to admit or deny this request based on lack of knowledge or information.**

204. Ex. **7**, bates stamped T-016102-00226642 through 6644, is a true and accurate copy of an email You received from Debt Pay, Inc., dated October 3, 2019.

**I have made reasonable inquiry and the information I know or can readily obtain is insufficient to enable me to admit or deny this request, and I am therefore unable to admit or deny this request based on lack of knowledge or information.**

205. The attachment to Ex. **7**, bates stamped T-016102-00226644, is an invoice for the DPP Account that You received from Debt Pay, Inc.

**I have made reasonable inquiry and the information I know or can readily obtain is insufficient to enable me to admit or deny this request, and I am therefore unable to admit or deny this request based on lack of knowledge or information.**

206. From April 2018, until October 2019, You received invoices for services provided through the DPP Account.

**I have made reasonable inquiry and the information I know or can readily obtain is insufficient to enable me to admit or deny this request, and I am therefore unable to admit or deny this request based on lack of knowledge or information.**

207. Ex. **8**, bates stamped T-016102-00273120 through 3122, is a true and accurate copy of an email and attachment that You sent to Albert Kim and Nguyen, dated October 27, 2018.

**I have made reasonable inquiry and the information I know or can readily obtain is insufficient to enable me to admit or deny this request, and I am therefore unable to admit or deny this request based on lack of knowledge or information.**

208. You created the attachment to Ex. **8**, bates stamped T-016102- 00273122.

**I have made reasonable inquiry and the information I know or can readily obtain is insufficient to enable me to admit or deny this request, and I am therefore unable to admit or deny this request based on lack of knowledge or information.**

209. Ex. **9**, bates stamped T-031904-00168259, is a true and accurate copy of an email that You sent on September **11**, 2018.

**I have made reasonable inquiry and the information I know or can readily obtain is insufficient to enable me to admit or deny this request, and I am therefore unable to admit or deny this request based on lack of knowledge or information.**

210. By writing, "Confirmed," in Ex. **9**, bates stamped T-031904-00168259, You authorized You, Albert Kim, Nguyen, Ho, and Hu to request support for the DPP Account.

**I have made reasonable inquiry and the information I know or can readily obtain is insufficient to enable me to admit or deny this request, and I am therefore unable to admit or deny this request based on lack of knowledge or information.**

211. Ex. 10, bates stamped T-031904-00179026 through 9028, is a true and accurate copy of an email that You sent, dated November 8, 2017.

**I have made reasonable inquiry and the information I know or can readily obtain is insufficient to enable me to admit or deny this request, and I am therefore unable to admit or deny this request based on lack of knowledge or information.**

212. Your statement in the first page of Ex. 10, bates stamped T-031904-00179026, that "DPP then will run the CC according to the payment schedule that we set up with the customer" refers to how the Company used the DPP Account to schedule and charge Consumer Fees.

**I have made reasonable inquiry and the information I know or can readily obtain is insufficient to enable me to admit or deny this request, and I am therefore unable to admit or deny this request based on lack of knowledge or information.**

213. The DPP Account was used to automatically charge Consumer Fees to Consumers in accordance with the payment schedule set forth in the Company's contracts with Consumers for the Company's Student Loan Debt-Relief services.

**I have made reasonable inquiry and the information I know or can readily obtain is insufficient to enable me to admit or deny this request, and I am therefore unable to admit or deny this request based on lack of knowledge or information.**

214. Ex. 11, bates stamped T-031904-00187126, is a true and accurate copy of an email that You sent to Albert Kim and Nguyen, dated September 14, 2016.

**I have made reasonable inquiry and the information I know or can readily obtain is insufficient to enable me to admit or deny this request, and I am therefore unable to admit or deny this request based on lack of knowledge or information.**

215. Ex. 12, bates stamped T-031904-00189322, is a true and accurate copy of an email that You received from Albert Kim, dated September 27, 2015.

**I have made reasonable inquiry and the information I know or can readily obtain is insufficient to enable me to admit or deny this request, and I am therefore unable to admit or deny this request based on lack of knowledge or information.**

216. The reference in Ex. 12, bates stamped T-031904-00189322, to "the task [sic] that need to be done by September 15" refers to tasks relating to starting up the Company, including establishing the DPP Account.

**I have made reasonable inquiry and the information I know or can readily obtain is insufficient to enable me to admit or deny this request, and I am therefore unable to admit or deny this request based on lack of knowledge or information.**

217. The Company's sole source of revenue was from Consumer Fees for Student Loan Debt Relief services.

**I have made reasonable inquiry and the information I know or can readily obtain is insufficient to enable me to admit or deny this request, and I am therefore unable to admit or deny this request based on lack of knowledge or information.**

Dated: October 18, 2022                          Respectfully Submitted

By: Kaine Wen

Plaintiffs' Exhibit 11



# STATE OF MINNESOTA

### OFFICE OF THE ATTORNEY GENERAL

**LORI SWANSON**
ATTORNEY GENERAL

. May 29, 2018

SUITE 1200
445 MINNESOTA STREET
ST. PAUL, MN 55101-2130
TELEPHONE: (651) 296-9412

Office of the Minnesota Secretary of State
Business Services
Retirement Systems of Minnesota Building
60 Empire Drive, Suite 100
St. Paul, MN 55103

> **Re:** **In the Matter of Premier Student Loans, Inc., d/b/a Premier Student Loan Center..**

Dear Sir or Madam:

Enclosed herewith and served upon you in accordance with Minnesota Statutes sections 5.25 and 303.13, please find two copies of a cover letter and Civil Investigative Demand in the above-referenced matter. Please direct one copy of the cover letter and Civil Investigative Demand to the following address via certified mail:

> Premier Student Loans, Inc.
> c/o Kaine Wen
> 173 Technology Drive, Suite 202
> Irvine, CA 92618

The $50 filing fee to accept and forward service of process should be withdrawn from the Minnesota Attorney General's Office's prepaid account with the Secretary of State, **Account No. 2886**.

Please contact me if you have any questions. I thank you for your attention to this matter.

Sincerely,

EVAN ROMANOFF
Assistant Attorney General

(651) 757-1454 (Voice)
(651) 296-7438 (Fax)

Enclosures: Correspondence to Premier Student Loans, Inc. (2)
Civil Investigative Demand (2)

TTY: (651) 297-7206 • Toll Free Lines: (800) 657-3787 (Voice), (800) 366-4812 (TTY) • www.ag.state.mn.us
An Equal Opportunity Employer Who Values Diversity ♻Printed on 50% recycled paper (15% post consumer content)
CONFIDENTIAL
Pls.' Ex. 11
P. 498
CFPB-20220721-00000001



# STATE OF MINNESOTA

### OFFICE OF THE ATTORNEY GENERAL

SUITE 1200
445 MINNESOTA STREET
ST. PAUL, MN 55101-2130
TELEPHONE: (651) 296-9412

LORI SWANSON
ATTORNEY GENERAL

. May 29, 2018

Premier Student Loans, Inc.
c/o Kaine Wen
173 Technology Drive, Suite 202
Irvine, CA  92618

> **Re:    In the Matter of Premier Student Loans, Inc., d/b/a Premier Student Loan
> Center.**

Dear Mr. Wen:

Enclosed and served upon you as principal and registered agent of Premier Student
Loans, Inc. is a Civil Investigative Demand issued by the Minnesota Attorney General's Office.

Pursuant to Minn. Stat. § 8.31, Premier Student Loans, Inc. is required to answer
interrogatories and produce documents within twenty (20) days of service of this Civil
Investigative Demand.  Please note that a representative of Premier Student Loans, Inc. need not
appear at this Office, but may submit the answers to interrogatories and produce copies of the
requested documents by mail.

I thank you for your attention to this matter.

Sincerely,

EVAN ROMANOFF
Assistant Attorney General

(651) 757-1454 (Voice)
(651) 296-7438 (Fax)

Enclosure:    Civil Investigative Demand

TTY: (651) 297-7206 • Toll Free Lines: (800) 657-3787 (Voice), (800) 366-4812 (TTY) • www.ag.state.mn.us
An Equal Opportunity Employer Who Values Diversity        ❁Printed on 50% recycled paper (15% post consumer content)
CONFIDENTIAL
Pls.' Ex. 11
P. 499

CFPB-20220721-00000002

STATE OF MINNESOTA
OFFICE OF THE ATTORNEY GENERAL
CIVIL INVESTIGATIVE DEMAND

In the Matter of Premier Student Loans, Inc., d/b/a
Premier Student Loan Center.

**DEMAND FOR ANSWERS
TO INTERROGATORIES AND
REQUESTS FOR DOCUMENTS**

TO:   Premier Student Loans, Inc., c/o Kaine Wen, 173 Technology Drive, Suite 202, Irvine,
CA 92618.

The Attorney General of the State of Minnesota has information providing reasonable

grounds to believe that Premier Student Loans, Inc. and Consumer Advocacy Center Inc., doing

business as Premier Student Loan Center (collectively, "Premier Student Loan Center"), has

violated, or is about to violate the following Minnesota laws:  Minn. Stat. § 325F.69 (Prevention

of Consumer Fraud Act); Minn. Stat. § 325D.44 (Deceptive Trade Practices Act); and Minn.

Stat. § 332B.03-.12 (Debt Settlement Services Act).  Specifically, the Attorney General has

reasonable grounds to believe that Premier Student Loan Center has engaged in unlawful,

deceptive, and/or fraudulent practices through its marketing, selling, and provision of goods or

services related to repayment of student loans.

If you do not comply with this Civil Investigative Demand, the Attorney General may

apply to the District Court for an order compelling compliance in accordance with Minn. Stat.

§ 8.31, subd. 2a.

Pursuant to the authority vested in the Attorney General of the State of Minnesota and,

more particularly, pursuant to Minn. Stat. § 8.31, it is hereby demanded that the following

interrogatories be answered and sworn upon oath and, with the requested documents, be

provided to Evan Romanoff, Assistant Attorney General, Minnesota Attorney General's Office,

445 Minnesota Street, Suite 1200, St. Paul, Minnesota 55101, within twenty (20) days of the

receipt of this Civil Investigative Demand.

CONFIDENTIAL
Pls.' Ex. 11
P. 500
CFPB-20220721-00000003

All documents and information produced in response to this Civil Investigative Demand shall be governed by the provisions of the Minnesota Government Data Practices Act, Minn. Stat. §§ 13.01-13.90.

## DEFINITIONS

Unless otherwise defined in this Civil Investigative Demand, the following terms shall have these meanings:

1.  "Premier Student Loan Center," "you," or "your" means Premier Student Loans, Inc., Consumer Advocacy Center Inc., Premier Student Loan Center, Premier Student Loan Center Limited, and all of their merged or acquired predecessors, successors, divisions, parents, subsidiaries, affiliates, unincorporated divisions, joint ventures, operations under assumed names, and any other organization in which you have a management or controlling interest.  The term "Premier Student Loan Center," "you" or "your" also includes all present and former directors, officers, members, managers, employees, independent contractors, agents, consultants, and other persons working for or on behalf of Premier Student Loan Center, including but not limited to Albert Kim, Albert King, Kaine Wen, Calvin Ho, and Jordan Miranti.

2.  "Document" means the original and copies, identical or non-identical, of any electronically stored information or handwritten, typewritten, electronic, printed, recorded or graphic matter of any kind in your possession, custody, or control, including electronic databases.

3.  "Person" means any natural person, corporation, partnership, limited liability company, or association of persons, and encompasses the plural as well as the singular.

4.  "Contract" or "Agreement" means any oral or written contract, arrangement or understanding, whether formal or informal, between or among two or more persons or entities, together with all modifications or amendments thereto.

5.  "Relate," "relating to," "related to" or "regarding" means referring, discussing, concerning or pertaining in any way, directly or indirectly.

6.  "Minnesota consumer" means any person with an address in the State of Minnesota or a telephone number with one of the following prefixes:  218, 320, 507, 612, 651, 763, or 952.

7.  "Identify," when used in connection with a Minnesota consumer, means to provide the consumer's name, mailing address, e-mail address, and telephone number.

8.  Any word or term not defined herein or by law is to be given its ordinary meaning or construction.

CONFIDENTIAL

## **INSTRUCTIONS**

1.  Electronically stored information and hard copy documents should be produced in accordance with the production format instructions attached hereto as "Exhibit A."

2.  All documents and data compilations that relate to the subject matter of these interrogatories and requests for production of documents must be preserved, and any ongoing process of document destruction involving such documents or data must cease. Failure to preserve such documents or data will be regarded by the State as spoliation of evidence.

3.  If any document or data compilation relating to the subject matter of this Civil Investigative Demand is or has been discarded, destroyed, or redacted in whole or in part, please immediately notify the State of:  (a) the date of the discard, destruction, or redaction; (b) the reason for the discard, destruction, or redaction; and (c) the person who discarded, destroyed, or redacted the document or data compilation.

4.  Preface each answer and response with the interrogatory or document request to which it is addressed.  If you are unable to fully answer or respond, submit as much information as is available, explain why your answer or response is incomplete, and state the source or sources from which a complete answer or response may be obtained.

5.  Produced documents should be segregated and clearly marked or labeled as to the specific request to which they are responsive and are being produced.  Each produced document should be Bates numbered.

6.  The information demanded should always be interpreted to be inclusive rather than exclusive, including interpreting the following as appropriate:  the singular form of a word as plural, and vice versa; "and" to include "or," and vice versa; and the past tense to include the present tense, and vice versa.

7.  If you object to any interrogatory or request for production of documents in whole or in part on the basis of any claimed privilege or protection, identify the statement, communication, or subject matter for which you claim privilege or protection and set forth the factual basis on which you base your privilege or protection claim.

8.  Whenever a response to a request for production of documents would include documents or materials that are subject to updates and revisions, include all versions of such documents or materials.  For each version, state the approximate date you began using it, and, if applicable, the approximate date you stopped using it.

9.  Whenever these interrogatories or requests seek information specific to persons or activities in Minnesota that you are unable to produce separately, you should provide the information without regard to geographic limitation.

3

CONFIDENTIAL

CFPB-20220721-00000005

10.     The following Interrogatories and Requests for Production of Documents are continuing
        in nature, and require further and supplemental production by you as and whenever you
        acquire, make or discover additional responsive information and documents.

11.     Provide all information and documents for the period from May 1, 2012 through the date
        of your response, unless otherwise specifically indicated.  If it is necessary to refer to a
        prior time to fully answer an Interrogatory or respond to a Document Request, you should
        do so.

## INTERROGATORIES

### INTERROGATORY NO. 1:

Identify each person who assisted you in answering these Interrogatories and Document

Requests, and for each such person, identify the Interrogatories and Document Requests the

person assisted in gathering.

### INTERROGATORY NO. 2:

Identify all of your parents, subsidiaries, and affiliates, and describe the duties of each

entity and the dates during which they performed such duties.  Include in your answer all

assumed names you hold or do business under.

### INTERROGATORY NO. 3:

Describe the relationship between Premier Student Loans, Inc. and Consumer Advocacy

Center Inc., and describe the duties of each of the entities.

### INTERROGATORY NO. 4:

Identify all federal, state, and local government licenses, registrations, certifications, and

charters under which Premier Student Loan Center has operated in Minnesota.

### INTERROGATORY NO. 5:

Identify all current and former owners, board members, directors, officers, principals,

managers, and executives of Premier Student Loan Center.  For each such person, identify the

4

following:  full legal name; street address; telephone number; email address; ownership interests in Premier Student Loan Center (if any), and beginning and ending dates of such ownership interests; and positions held with Premier Student Loan Center, including a description of the duties, and beginning and ending dates of such positions.

**INTERROGATORY NO. 6:**

Identify and describe all products or services relating to student loans that Premier Student Loan Center markets, offers, or provides to Minnesota consumers.

**INTERROGATORY NO. 7:**

Identify all methods by which Premier Student Loan Center has solicited Minnesota consumers to purchase its products and services described in your answer to Interrogatory No. 6, including but not limited to communications via websites and social media, telephone calls, text messages, emails, Instant Messages, U.S. Mail, radio, television, and live events, and identify all promotional materials, advertisements, and other means of solicitation.

**INTERROGATORY NO. 8:**

Identify and describe how Premier Student Loan Center acquires leads or obtains information about Minnesota consumers who may be solicited to enter into an agreement to purchase your products and services described in your answer to Interrogatory No. 6, including all sources from which Premier Student Loan Center acquires such information and the information acquired, including but not limited to the consumers' names address, telephone number, email addresses, financial information, student loan information, usernames, passwords, Social Security numbers, and all other information provided to Premier Student Loan Center.  In doing so, identify and describe the manner and source from which Premier Student Loan Center obtains the information, including but not limited to lead generators, loan servicers, the U.S.

CONFIDENTIAL
Pls.' Ex. 11
P. 504
CFPB-20220721-00000007

Department of Education, the National Student Loan Data System, Federal Student Aid's online system, and any other person or database.

**INTERROGATORY NO. 9:**

Identify all persons, businesses, and any other entities with which Premier Student Loan Center contracts or has contracted to identify leads about Minnesota consumers or to provide phone or Internet support for sales calls to Minnesota consumers for your products and services described in your answer to Interrogatory No. 6. For each such person or entity, state the name, address, telephone number, and email address; the beginning and end date of the contract(s) with the person or entity; and the product(s) or service(s) provided to Premier Student Loan Center under the contract(s). For each person or entity identified, state how and when the person or entity was compensated, and identify all Minnesota consumers the person or entity referred to Premier Student Loan Center.

**INTERROGATORY NO. 10:**

Identify all website uniform resource locators (URL) that you have registered or used for the purpose of advertising your products and services described in your answer to Interrogatory No. 6 online.

**INTERROGATORY NO. 11:**

Identify all Google AdWords or any other search engine paid advertisements you use to market or advertise your products and services described in your answer to Interrogatory No. 6 to Minnesota consumers, and for each Google AdWord or other search engine paid advertisement identified, state the number of hits and leads produced each month in Minnesota.

CONFIDENTIAL
CFPB-20220721-00000008

**INTERROGATORY NO. 12:**

Describe each step Premier Student Loan Center takes to ensure that Minnesota consumers understand the terms and consent to enter into an agreement to purchase your products and services described in your answer to Interrogatory No. 6, including a description of each disclosure made to Minnesota consumers about the terms of any contract, when and how the disclosures were made, and who made the disclosures.

**INTERROGATORY NO. 13:**

Identify when and how the total cost of your products and services described in your answer to Interrogatory No. 6 is disclosed to Minnesota consumers.

**INTERROGATORY NO. 14:**

Identify and describe each step Premier Student Loan Center takes to ensure that it does not collect payment from Minnesota consumers until after its products and services described in your answer to Interrogatory No. 6 are fully performed or delivered.

**INTERROGATORY NO. 15:**

Describe all training provided to Premier Student Loan Center employees, agents, or representatives related to the marketing, sale, or provision of your products and services described in your answer to Interrogatory No. 6.

**INTERROGATORY NO. 16:**

Identify and describe the compensation structure for Premier Student Loan Center employees, agents, or representatives, including but not limited to all forms of incentive compensation or bonuses paid.

CONFIDENTIAL
Pls.' Ex. 11
P. 506
CFPB-20220721-00000009

**INTERROGATORY NO. 17:**

Identify and describe the processes, procedures, systems, equipment, and software that Premier Student Loan Center has utilized, if any, to record (whether by audio tape, computer, or otherwise), track, account for, analyze, or assess, calls made or received by its officers, managers, employees, independent contractors, agents, and/or representatives relating to the marketing, sale, or provision of its products and services described in your answer to Interrogatory No. 6, to Minnesota consumers, including without limitation: the policies and procedures relating to when Premier Student Loan Center records calls from or to Minnesota consumers; the classes of employees or agents who record calls from or to Minnesota consumers; the equipment and software used to record calls from or to Minnesota consumers; the file type of recorded calls from or to Minnesota consumers; the amount of time and form in which Premier Student Loan Center retains recorded calls from or to Minnesota consumers; the format of stored recorded calls from or to Minnesota consumers; and the policies or procedures relating to when Premier Student Loan Center reviews recorded calls from or to Minnesota consumers for quality control purposes.

**INTERROGATORY NO. 18:**

Identify in a spreadsheet (in excel format) each Minnesota consumer with whom Premier Student Loan Center has contracted to provide its products and services described in your answer to Interrogatory No. 6.

**INTERROGATORY NO. 19:**

For each Minnesota consumer identified in your answer to Interrogatory Number 18, identify in a spreadsheet (in excel format) the date of the consumer's contract with Premier

CONFIDENTIAL

CFPB-20220721-00000010

Student Loan Center, the amount of initial payment and date you processed initial payment; and amount of any subsequent payments and the dates of each such payment.

**INTERROGATORY NO. 20:**

Identify whether Premier Student Loan Center has ever been a party to any legal proceeding, including but not limited to governmental investigations, related to the marketing, sale, or provision of its products and services described in your answer to Interrogatory No. 6, and if so, identify the investigating entity, court caption, location, and case number.

## DOCUMENT REQUESTS

**DOCUMENT REQUEST NO. 1:**

Produce all documents referenced or used in any of your answers to the above interrogatories, and identify the interrogatory for which such documents are responsive.

**DOCUMENT REQUEST NO. 2:**

Produce all documents that identify the form of business organization under which you, your parents, subsidiaries, and affiliates have operated. For each such entity, include documents related to formation, governance, and license(s) to conduct business in Minnesota.

**DOCUMENT REQUEST NO. 3:**

Produce copies of all organization charts for Premier Student Loan Center.

**DOCUMENT REQUEST NO. 4:**

Produce all contracts that govern the relationship between Premier Student Loan Center and any of its merged or acquired predecessors, successors, divisions, parents, subsidiaries, affiliates, unincorporated divisions, joint ventures, operations under assumed names, and any other organization in which you have a management or controlling interest.

9

CONFIDENTIAL

CFPB-20220721-00000011

**DOCUMENT REQUEST NO. 5:**

For each Minnesota consumer identified in your answer to Interrogatory Number 18, produce all correspondence, including but not limited to emails, with or regarding the consumer.

**DOCUMENT REQUEST NO. 6:**

For each Minnesota consumer identified in your answer to Interrogatory Number 18, produce all recordings of telephone calls Premier Student Loan Center had with or regarding the consumer.

**DOCUMENT REQUEST NO. 7:**

For each Minnesota consumer identified in your answer to Interrogatory Number 18, produce all transcripts, notes, emails, text messages, web chats, or other memorializations of any communications with or regarding the consumer.

**DOCUMENT REQUEST NO. 8:**

For each Minnesota consumer identified in your answer to Interrogatory Number 18, produce all application materials, contracts, and other documents used by Premier Student Loan Center in offering or providing its products and services described in your answer to Interrogatory No. 6 to the consumer, including but not limited to documents used to apply for consolidation and/or any repayment plans with the United States Department of Education.

**DOCUMENT REQUEST NO. 9:**

Produce all materials used to market or sell Premier Student Loan Center's products and services described in your answer to Interrogatory No. 6 to Minnesota consumers, including but not limited to all versions of Premier Student Loan Center's websites and other social media, telephone scripts or recorded messages, radio and television advertisements, Google AdWords, and exemplar copies of all text messages, e-mails, Instant Messages, and U.S. Mail solicitations.

CONFIDENTIAL

Pls.' Ex. 11
P. 509

CFPB-20220721-00000012

**DOCUMENT REQUEST NO. 10:**

For each Google AdWord or any other search engine paid advertisements identified in your answer to Interrogatory Number 11, produce all documents and reports summarizing or relating to the number of hits and/or leads produced in Minnesota or relating to Minnesota consumers.

**DOCUMENT REQUEST NO. 11:**

Produce all guidelines, policies, procedures, training manuals, scripts, memos, communications, or other documents that refer to, relate to, or memorialize Premier Student Loan Center's marketing, sale, or provision of its products and services described in your answer to Interrogatory No. 6 to Minnesota consumers.

**DOCUMENT REQUEST NO. 12:**

For each person or entity identified in your answer to Interrogatory Number 9, produce all contracts between Premier Student Loan Center and the person or entity.

**DOCUMENT REQUEST NO. 13:**

Produce all documents related to your compensation structure, including all forms of incentive compensation or bonuses paid, including but not limited to written and electronic guidelines, manuals, policies, instructions, memos, letters, emails, or other documents.

**DOCUMENT REQUEST NO. 14:**

For each proceeding, investigation (formal or informal), inquiry, and/or lawsuit initiated by a government body or private citizen identified in your answer to Interrogatory No. 20, produce all pleadings, discovery requests (including Civil Investigative Demands, Interrogatories, Subpoenas, Document Requests, Requests for Admission, Requests for Statements), your answers to interrogatories and responses to requests for admissions, settlement

11

CONFIDENTIAL
CFPB-20220721-00000013

agreements (including Assurances of Voluntary Compliance or Discontinuance), consent judgments and judgments.

**DOCUMENT REQUEST NO. 15:**

Produce copies of Premier Student Loan Center's general ledger, quarterly financial statements, and any documents that show its income and expenses and profits and losses.

Dated:  *May 29, 2018*

LORI SWANSON
Attorney General
State of Minnesota

EVAN ROMANOFF
Assistant Attorney General
Atty. Reg. No. 0398223
445 Minnesota Street, Suite 1200
St. Paul, Minnesota 55101-2130
Telephone:  (651) 757-1454
Fax:  (651) 296-7438

*Attorneys for State of Minnesota*

12

CONFIDENTIAL

STATE OF MINNESOTA
OFFICE OF THE ATTORNEY GENERAL
CIVIL INVESTIGATIVE DEMAND

In the Matter of Premier Student Loans, Inc.,
d/b/a Premier Student Loan Center.

**CID EXHIBIT A -
PRODUCTION FORMAT
INSTRUCTIONS**

I.      **Instructions for the Production Format of Electronically Stored Information ("ESI"):**

A.      ESI should be produced in a format consistent with loading into a document review tool, including static images, native documents, extracted text, and associated metadata identified in Paragraph (G) below.  If you are unable to produce ESI in this manner, then you must provide the information in native format with unaltered metadata.

B.      ESI should be produced as Group IV single page TIFF format files imaged at 300 dpi.  Electronic mail shall include attachments to the email and indicate whether and to whom the email was a reply or was forwarded.  Color pages will be produced as single-page JPGs.  Black and white pages will be produced in 1 bit format.  You should make diligent efforts to produce any electronically-stored spreadsheet (e.g. Microsoft Excel), presentation (e.g. Microsoft PowerPoint), other proprietary-type data in the form(s) in which the ESI is ordinarily and customarily maintained in the usual course of business or, if not reasonably usable in that form, in such other form as is reasonably usable, rather than in TIFF or portable document file (.pdf) format, with a slipsheet TIFF indicating a native document has been produced.  Also, documents that can become unwieldy when converted to TIFF should be produced in native format.

C.      Documents should be uniquely and sequentially Bates Numbered with both the Bates number and any other necessary endorsement burned into each image.  Native files endorsements must be identified on associated slip sheet and metadata load file.

D.      ESI may be produced on CD/DVD, other portable media, or via a secure file-sharing system.

E.      If the use of a native file requires proprietary software, you must inform the Minnesota Attorney General's Office of that fact.

F.      Extracted or OCR text must be provided for each document.

G.      Extracted metadata will be produced for each document in the form of a delimited .dat file, and include the following fields:

| Bates_Begin | The bates label of the first page of the document |
|---|---|
| Bates_End | The bates label of the last page of the document |
| Attach_Begin | The bates label of the first page of a family of documents (*e.g.*, email and attachment) |
| Attach_End | The bates label of the last page of a family of documents |
| File_Size | Size of the original file processed, regardless of whether the file is produced in native format |
| File_Extension | The file extension of the original file produced, regardless of whether the file is produced in native format |
| Sent_Date | For email, the sent date of the message |
| Sent_Time | For email, the sent time of the message |
| Date Received | For email, the date the message was received |
| Time Received | For email, the time the message was received |
| Create_Date | For e-files or attachments, the document's creation date or operating system creation date |
| Create_Time | For e-files or attachments, the document's creation time or operating system creation time |
| Modified_Date | For e-files or attachments, the document's last modified date or operating system last modified date |
| Modified_Time | For e-files or attachments, the document's last modified time or operation system last modified time |
| Author | The author of a stand-alone e-file or attachment |
| From | The sender of an email message |
| To | The recipient(s) of an email message, in a semi-colon delimited multi-value list |
| CC | The copyee(s) of an email message, in a semi-colon delimited multi-value list |
| BCC | The blind copyee(s) of an email message, in a semi-colon delimited multi-value list |
| Email Message ID | Microsoft Outlook or similar number in other message systems |
| Email Subject | Email subject |
| File Name | File Name of Native/Original file |
| Document Title | Title of native file extracted from file properties |
| Custodian | The custodian in whose file the document was found |
| Duplicate Custodian | Other custodians with same document prior to de-duplication |
| Original_Filepath | The path to the email in the mailbox or stand-alone e-file |
| MD5 | The calculated MD5 hash value of the document |
| Native_File | The file path to the location of the native file, if produced |

2

EXHIBIT A
CONFIDENTIAL
CFPB-20220721-00000016

| Conf_Desig | The confidentiality designation, if any, for the document |
| Text_Path | The file path to the location of the text file in the production |
| Has Redactions | Yes/No if document has been redacted |
| Pages | Number of pages in a document |
| SHA1 Hash | Identifying value of an electronic record assigned using algorithm |

If a field contains privileged information, the field will be left blank. Reasons for withholding a document or any redactions for privilege will be recorded on a privilege log, which will be produced, upon request, in native electronic format.

H.   You should globally de-duplicate all ESI before production. Duplicate custodians will be tracked and information on duplicate custodians will be provided in the production via metadata (see paragraph (G)).

I.   Passwords for documents, files, compressed archives, and encrypted media should be provided separately either via e-mail or in a separate cover letter not included with the media.

J.   All productions must be free of computer viruses and malware.

K.   You should communicate any problems associated with producing ESI in the above format prior to the release of data to the Minnesota Attorney General's Office, to ensure the format of the production is appropriate.

## II.   Instructions for the Production Format of Hard Copy Documents:

A.   To the extent any discoverable information is preserved only in printed form, such information should be produced as Group IV single-page TIFF format files imaged at 300 DPI as set forth above.

B.   Extracted or OCR text must be provided for each document.

C.   The following metadata should be produced for each document in the form of a delimited .dat file, and include the following fields:

| Bates_Begin | The bates label of the first page of the document |
| Bates_End | The bates label of the last page of the document |
| Custodian | The custodian in whose file the document was found |
| Is Hard Copy | Y/N field indicating if the document is a hard copy |
| Conf_Desig | The confidentiality designation, if any, for the document |

3

EXHIBIT A
CONFIDENTIAL
Pls.' Ex. 11
P. 514
CFPB-20220721-00000017