# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

Bureau of Consumer Financial
Protection, et al.,

     Plaintiffs,

     v.

Consumer Advocacy Center Inc., d/b/a
Premier Student Loan Center, et al.,

     Defendants.

CASE NO. 8:19-cv-01998 MWF (KS)

**[PROPOSED] FINAL JUDGMENT
AND ORDER AS TO DEFENDANT
KAINE WEN**

Court:  Hon. Michael W. Fitzgerald
Date:   March 20, 2023
Time:   10:00 AM
Place:  Courtroom 5A

     Plaintiffs the Bureau of Consumer Financial Protection (Bureau), the State of Minnesota, the State of North Carolina, and the People of the State of California (collectively, Plaintiffs) have filed a motion for partial summary judgment pursuant to Federal Rule of Civil Procedure 56 against Defendant Kaine Wen (Defendant Wen). After considering the pleadings, declarations, exhibits, summary judgment briefing, and the entire record in this matter, this Court hereby orders and adjudges

1

**FINAL JUDGMENT AND ORDER AS TO DEFENDANT KAINE WEN**

that the Plaintiffs' motion for partial summary judgment is **GRANTED**.

**IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** as follows:

### FINDINGS

### I

1.     Plaintiffs commenced this civil action on October 21, 2019, to obtain injunctive, equitable, and monetary relief and civil penalties from multiple defendants, including Defendant Wen in his individual capacity and as trustee of the Kaine Wen 2017 Trust.

2.     Plaintiffs alleged that from at least November 2015 until October 2019, Defendant Wen and his co-defendants operated a nationwide debt-relief enterprise that deceived federal-student-loan borrowers and collected over $95 million in illegal advance fees.

3.     The operative complaint, the Third Amended Complaint (ECF Nos. 314-315), alleged violations of sections 1031(a) and 1036(a) of the Consumer Financial Protection Act of 2010 (CFPA), 12 U.S.C. §§ 5531(a), 5536(a); the Telemarketing and Consumer Fraud and Abuse Prevention Act (TCFAPA), 15 U.S.C. § 6102(c)(2), based on alleged violations of the Telemarketing Sales Rule (TSR), 16 C.F.R. pt. 310; the Minnesota Prevention of Consumer Fraud Act (MNCFA), Minn. Stat. §§ 325F.68-.694; the Minnesota Uniform Deceptive Trade Practices Act (MNDTPA), Minn. Stat. §§ 325D.43-.48; the North Carolina Debt Adjusting Act (NCDAA), N.C. Gen. Stat. § 14-423 *et seq.*; the North Carolina Unfair and Deceptive Practices Act (NCUDPA), N.C. Gen. Stat. § 75-1.1; and the California Unfair Competition Law (UCL), Cal. Bus. & Prof. Code § 17200 *et seq.*, in connection with the Defendants' marketing and sale of Debt-Relief Services. The Third Amended Complaint also included claims for avoidance of fraudulent transfers under the Federal Debt Collection Procedures Act, 28 U.S.C.

**FINAL JUDGMENT AND ORDER AS TO DEFENDANT KAINE WEN**

§§ 3001-3308, and the California Uniform Voidable Transactions Act, Cal. Civ. Code §§ 3439-3439.14.

4.    Plaintiffs sought permanent injunctive relief, damages, rescission or reformation of contracts, refunds of moneys paid, restitution, disgorgement or compensation for unjust enrichment, civil money penalties, and other monetary and equitable relief.

5.    This Court has subject-matter jurisdiction over this action because it was brought under Federal consumer financial law, 12 U.S.C. § 5565(a)(1), presents a federal question, 28 U.S.C. § 1331, and the Bureau is an agency of the United States, 28 U.S.C. § 1345. This Court has supplemental jurisdiction over the States' (as defined below) claims pursuant to 28 U.S.C. § 1367. Venue is proper in this district pursuant to 12 U.S.C. § 5564(f), because Defendant Wen is located, resides, or does business in this district.

6.    The Third Amended Complaint states claims against Defendant Wen upon which relief can be granted.

7.    There is no genuine issue as to any material fact concerning the liability of Defendant Wen for the unlawful practices charged against him in Counts I through III, V, VII, IX, XI, XVII through XX, and XXII of the Third Amended Complaint, or the amount of redress and civil money penalties resulting from Defendant Wen's unlawful practices.

8.    From at least November 5, 2015, through October 23, 2019, the Student Loan Debt-Relief Companies (as defined below) operated as a common enterprise controlled by Wen and his business partner. Accordingly, each may be held liable for the illegal acts and practices of the others, *FTC. v. Grant Connect, LLC*, 763 F.3d 1094, 1105 (9th Cir. 2014); *FTC v. Network Servs. Depot, Inc.*, 617 F.3d 1127, 1142-43 (9th Cir. 2010); *FTC v. All. Document Preparation*,

**FINAL JUDGMENT AND ORDER AS TO DEFENDANT KAINE WEN**

296 F. Supp. 3d 1197, 1203-1204 (C.D. Cal. 2017).

9.     The Student Loan Debt-Relief Companies are "covered person[s]" as that term is defined by the CFPA, 12 U.S.C. § 5481(6)(A), (19), because they engaged in offering or providing services which purported to modify the terms of consumers' federal student loans.

10.     Defendant Wen is a "related person" as that term is defined by the CFPA, 12 U.S.C. § 5481(25)(C), because he owned, controlled, and managed the Student Loan Debt-Relief Companies, and materially participated in the conduct of their affairs.

11.     Defendant Wen is a "covered person" as that term is defined by the CFPA, 12 U.S.C. § 5481(6)(A), (19), because he is a "related person," 12 U.S.C. § 5481(25)(B).

12.     The Student Loan Debt-Relief Companies engaged in a "debt-relief service" as defined in the TSR, 16 C.F.R. § 310.2(o), because they offered and provided services that purported to renegotiate, settle, or alter the terms of payment or other terms of the debt for consumers' unsecured federal student loans by submitting requests for loan consolidation and income driven repayment plans to consumers' student-loan servicers.

13.     The Student Loan Debt-Relief Companies engaged in "telemarketing" and are "telemarketers," as defined in the TSR, 16 C.F.R. § 310.2(gg), (ff), because they offered and provided debt-relief services to consumers nationwide through a plan, program, or campaign by initiating and receiving telephone calls with consumers and employing more than one interstate telephone call.

14.     The Student Loan Debt-Relief Companies are "sellers," as defined in the TSR, 16 C.F.R. § 310.2(dd), because they offered and provided these services to consumers in exchange for payment of fees in connection with a telemarketing

**FINAL JUDGMENT AND ORDER AS TO DEFENDANT KAINE WEN**

transaction.

15.    The Student Loan Debt-Relief Companies are therefore "sellers" and "telemarketers" of a "debt relief service" and engaged in "telemarketing," as defined in the TSR, 16 C.F.R. § 310.2(o), (y), (dd), (ff), (gg).

16.    Defendant Wen is a "seller" of a "debt relief service" as defined in the TSR, 16 C.F.R. § 310.2(o), (dd), because he exercised control over the Student Loan Debt-Relief Companies and arranged for them to provide debt-relief services in exchange for consideration.

17.    From at least November 5, 2015, through October 23, 2019, in connection with telemarketing debt-relief services, the Student Loan Debt-Relief Companies requested and received enrollment and monthly fees from consumers before the Student Loan Debt-Relief Companies renegotiated, settled, reduced, or otherwise altered the terms of at least one of such consumers' debt and before consumers made at least one payment pursuant to any settlement agreement, debt management plan, or other valid contractual agreement between consumers and their creditors. These fees were not placed in an account that was used for payments to creditors and were not otherwise maintained in a way that complied with the independent escrow account exception set forth in 16 C.F.R. § 310.4(a)(5)(ii). The Student Loan Debt-Relief Companies therefore violated the TSR, 16 C.F.R. § 310.4(a)(5)(i).

18.    From at least November 5, 2015, through October 23, 2019, in connection with telemarketing debt-relief services, the Student Loan Debt-Relief Companies misrepresented, expressly or by implication, the following:

a.  the purpose of their fees, specifically that fees paid by consumers were payments toward consumers' outstanding loan debt, that these fees were all consumers owed on their loans, and that the fees were a necessary cost

5

**FINAL JUDGMENT AND ORDER AS TO DEFENDANT KAINE WEN**

to participate in an income-driven repayment plan; and

b.  the nature and benefits of their services, specifically that their fees were consumers' new monthly loan payment, that consumers' repayment amount would be lower based on false information about consumers' family size and marital status, that the consumers' new payment amount would last for the entire term of the loan, that consumers' loans would be forgiven if they enrolled in the Student Loan Debt-Relief Company's services; and that it was the Student Loan Debt-Relief Companies' practice to falsify consumers' family size and marital status to consumers' student-loan servicers.

These representations and omissions were material. The Student Loan Debt-Relief Companies therefore violated the TSR, 16 C.F.R. § 310.3(a)(2)(iii), (x).

19.    From at least November 5, 2015, through October 23, 2019, in connection with telemarketing debt-relief services, Defendant Wen (a) participated directly in, or had the authority to control, the acts or practices described in Paragraphs 17-18, and (b) had knowledge of those acts and practices, was recklessly indifferent to the acts or practices, or was aware of a high probability of the illegal conduct along with an intentional avoidance of the truth, *see CFPB v. CashCall, Inc.*, 35 F.4th 734, 749 (9th Cir. 2022); *see also In re Sanctuary Belize Litig.*, No. PJM 18-3309, 2019 WL 1934673, at *2 (D. Md. Apr. 30, 2019). Defendant Wen therefore violated the TSR, 16 C.F.R. § 310.3(a)(2)(iii), (x), and 16 C.F.R. § 310.4(a)(5)(i).

20.    From at least November 5, 2015, through October 23, 2019, in connection with telemarketing debt-relief services, Defendant Wen provided substantial assistance or support to the Student Loan Debt-Relief Companies while Defendant Wen knew or consciously avoided knowing that the Student Loan Debt-

**FINAL JUDGMENT AND ORDER AS TO DEFENDANT KAINE WEN**

Relief Companies were engaged in acts or practices that constituted deceptive and abusive conduct in violation of the TSR, as set forth in this Order. Defendant Wen therefore violated the TSR, 16 C.F.R. § 310.3(b).

21.     From at least November 5, 2015, through October 23, 2019, in connection with offering or providing student loan debt-relief services, the Student Loan Debt-Relief Companies misrepresented, expressly or by implication, the following:

    a.  the purpose of their fees, specifically that fees paid by consumers were payments toward the consumers' outstanding loan debt, that these fees were all consumers owed on their loans, and that the fees were a necessary cost to participate in an income-driven repayment plan; and

    b.  the nature and benefits of their services, specifically that their fees were consumers' new monthly loan payment, that consumers' repayment amount would be lower based on false information about consumers' family size and marital status, that the consumers' new payment amount would last for the entire term of the loan, that consumers' loans would be forgiven if they enrolled in the Student Loan Debt-Relief Company's services; and that it was the Student Loan Debt-Relief Companies' practice to falsify consumers' family size and marital status to consumers' student-loan servicers.

These representations and omissions were material and likely to mislead consumers acting reasonably under the circumstances. The Student Loan Debt-Relief Companies therefore violated the CFPA, 12 U.S.C. §§ 5531(a), 5536(a)(1)(B).

22.     From at least November 5, 2015, through October 23, 2019, in connection with offering or providing student loan debt-relief services, Defendant

**FINAL JUDGMENT AND ORDER AS TO DEFENDANT KAINE WEN**

Wen (a) participated directly in, or had the authority to control, the acts or practices described in Paragraph 21, and (b) had knowledge of those acts and practices, was recklessly indifferent to the acts or practices, or was aware of a high probability of the illegal conduct along with an intentional avoidance of the truth, *see CashCall*, 35 F.4th at 749. Defendant Wen therefore violated the CFPA, 12 U.S.C. §§ 5531(a), 5536(a)(1)(B).

23.     From at least November 5, 2015, through October 23, 2019, in connection with the offering or provision of student loan debt-relief services, Defendant Wen provided substantial assistance to the Student Loan Debt-Relief Companies while Defendant Wen knew, or recklessly avoided knowing, the Student Loan Debt-Relief Companies' material misrepresentations or omissions to consumers. Defendant Wen therefore violated the CFPA, 12 U.S.C. § 5536(a)(3).

24.     From at least November 5, 2015, through October 23, 2019, Defendant Wen violated the TSR as a "covered person" by charging and collecting illegal advance fees and engaging in deceptive conduct, as further set forth in this Order. Defendant Wen therefore also violated a rule under section 1031 of the CFPA regarding unfair, deceptive, or abuse acts or practices, 12 U.S.C. § 5536(a)(1)(A), 15 U.S.C. § 6102(c).

25.     By reason of the facts described in Paragraph 21, the Student Loan Debt-Relief Companies violated the MNCFA, Minn. Stat. §§ 325F.68-.694, and the MNDTPA, Minn. Stat. §§ 325D.43-.48.

26.     By reason of the facts described in Paragraphs 21-22, the violation described in Paragraph 25, and by Defendant Wen's participation, direction, management, or control of the Student Loan Debt Relief Companies, Defendant Wen violated the MNCFA, Minn. Stat. §§ 325F.68-.694, and the MNDTPA, Minn. Stat. §§ 325D.43-.48. *See State v. Alpine Air Products, Inc.*, 490 N.W.2d 888,

897-98 (Minn. Ct. App. 1992), *aff'd*, 500 N.W.2d 788 (Minn. 1993); *Meyer v. Dygert*, 156 F. Supp. 2d 1081, 1086-87 (D. Minn. 2001).

27.     By reason of the facts described in Paragraph 17, and because the Student Loan Debt-Relief Companies collected fees from consumers before fully rendering services purporting to reduce, settle, or alter the terms of payment on their student loans, the Student Loan Debt-Relief Companies violated the NCDAA, N.C. Gen. Stat. § 14-424.

28.     By reason of the facts described in Paragraph 21, the Student Loan Debt-Relief Companies violated the NCUDPA, N.C. Gen. Stat. § 75-1.1(a).

29.     By reason of the facts described in Paragraphs 17-19 and 21-22, the violations described in Paragraphs 27-28, and by Defendant Wen's participation, direction, management, or control of the Student Loan Debt Relief Companies, Defendant Wen violated the NCUDPA, N.C. Gen. Stat. § 75-1.1, and the NCDAA, N.C. Gen. Stat. § 14-424. *See State ex rel. Cooper v. NCCS Loans, Inc.*, 624 S.E.2d 371, 380 (N.C. Ct. App. 2005); *State ex rel. Easley v. Rich Food Servs., Inc.*, 535 S.E.2d 84, 93 (N.C. Ct. App. 2000).

30.     By reason of the facts described in Paragraph 21, the Student Loan Debt-Relief Companies violated the UCL, Cal. Bus. & Prof. Code § 17200. *See Cel-Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co.*, 973 P.2d 527, 539-40 (1999).

31.     By reason of the facts and violations described in Paragraphs 17-19, 21-22, and 30, and by Defendant Wen's participation, direction, management, or control of the Student Loan Debt Relief Companies, Defendant Wen violated the UCL, Cal. Bus. & Prof. Code § 17200. *See* Cal. Bus. & Prof. Code § 17201; *Cel-Tech Commc'ns*, 973 P.2d at 539-40.

32.     As no material facts are in dispute, and the undisputed evidence establishes Defendant Wen's liability as to the claims set forth in Counts I through

**FINAL JUDGMENT AND ORDER AS TO DEFENDANT KAINE WEN**

III, V, VII, IX, XI, XVII through XX, and XXII in the Third Amended Complaint, Plaintiffs are entitled to judgment as a matter of law pursuant to Rule 56(a) of the Federal Rules of Civil Procedure on those claims.

33.     Sections 1054 and 1055 of the CFPA, 12 U.S.C. §§ 5564 and 5565; the TCFAPA, 15 U.S.C. 6103(a); Minnesota law, Minn. Stat. § 8.31; North Carolina law, N.C. Gen. Stat. §§ 14-425, 75-14, 75-15.1, and 75-15.2; and California law, Cal. Bus. & Prof. Code §§ 17203 and 17206, empower this Court to order injunctive and other equitable relief against Defendant Wen for violations of the TSR, CFPA, MNCFA, MNDTPA, NCDAA, NCUDPA, and UCL, and to award restitution, damages, refund of moneys, and disgorgement of ill-gotten gains resulting from Defendant Wen's unlawful practices, and civil money penalties for violations of the Federal consumer financial laws and the States' laws.

34.     From at least November 2015 through October 2019, defendants collected approximately $95,057,757 in fees paid by Affected Consumers (as defined below). The Bureau is entitled to relief in the amount of $95,057,757 against Defendant Wen as redress for the fees paid by Affected Consumers, as set forth below. This redress will provide the relief sought by the States for Affected Consumers in their respective states.

35.     Defendant Wen has recklessly violated the TSR and the CFPA, warranting second-tier civil money penalties of $147,985,000 to the Bureau. 12 U.S.C. § 5565(c)(2)(B).

36.     By reason of Defendant Wen's violations of the state laws set forth in this Order, and under Cal. Bus. Prof. Code § 17206, Minn. Stat. § 8.31, and N.C. Gen. Stat. § 75-15.2, Defendant Wen is liable for civil money penalties to each State, as set forth below.

37.     This action and the relief awarded herein are in addition to, and not in

lieu of, other remedies as may be provided by law, including both civil and criminal remedies.

38.     Entry of this Judgment is in the public interest.

## DEFINITIONS

## II

The following definitions apply to this Order:

39.     "Affected Consumers" includes any consumer who paid any of the Defendants or their officers, agents, servants, employees, or attorneys for any Debt-Relief Service from November 5, 2015, to October 23, 2019.

40.     "Assets" means any legal or equitable interest in, right to, or claim to any real, personal, or intellectual property owned or controlled by, or held, in whole or in part for the benefit of, or subject to access by any Defendant or Relief Defendant, wherever located, whether in the United States or abroad. This includes, but is not limited to, chattel, goods, instruments, equipment, fixtures, general intangibles, effects, leaseholds, contracts, mail or other deliverables, shares of stock, commodities, futures, inventory, checks, notes, accounts, credits, receivables (as those terms are defined in the Uniform Commercial Code), funds, cash, and trusts, including but not limited to any trust held for the benefit of Defendant Wen.

41.     "Assisting Others" includes, but is not limited to:

a.  consulting in any form whatsoever;

b.  providing paralegal or administrative support services;

c.  performing customer service functions, including but not limited to, receiving or responding to consumer complaints;

d.  formulating or providing, or arranging for the formulation or provision of, any advertising or marketing material, including but not limited to,

any telephone sales script, direct mail solicitation, or the text of any Internet website, email, or other electronic communication or advertisement;

e. formulating or providing, or arranging for the formulation or provision of, any marketing support material or service, including but not limited to, web or Internet Protocol addresses or domain name registration for any Internet websites, affiliate marketing services, or media placement services;

f. providing names of, or assisting in the generation of, potential customers;

g. performing marketing, billing, or payment services of any kind; and

h. acting or serving as an owner, officer, director, manager, or principal of any entity.

42. "Bankruptcy Proceedings" means *In re Consumer Advocacy Center Inc.*, Case No. 19-10655, pending in the United States Bankruptcy Court, Southern District of Florida, Fort Lauderdale Division, and *In re Anan Enterprise, Inc.*, Case No. 2:20-bk-19228-ER, pending in the United States Bankruptcy Court, Central District of California, Los Angeles Division.

43. "Bureau" means the Bureau of Consumer Financial Protection.

44. "Consumer Financial Product or Service" is synonymous in meaning and equal in scope to the definition of the term in the CFPA, 12 U.S.C. § 5481(5), and, subject to applicable restrictions contained in the CFPA, includes but is not limited to:

a. providing financial advisory services to consumers on individual consumer financial matters or relating to proprietary financial products or services, including providing credit counseling to any consumer or providing services to assist a consumer with debt management or debt

**FINAL JUDGMENT AND ORDER AS TO DEFENDANT KAINE WEN**

settlement, modifying the terms of any extension of credit, or avoiding foreclosure; and

b. engaging in deposit-taking activities, transmitting or exchanging funds, or otherwise acting as a custodian of funds or any financial instrument for use by or on behalf of a consumer.

45. "Debt-Relief Service" means any program or service represented, directly or by implication, to renegotiate, settle, or in any way alter the terms of payment or other terms of the debt between a consumer and one or more unsecured creditors or debt collectors, including but not limited to, a reduction in the balance, interest rate, or fees owed by a consumer to an unsecured creditor or debt collector.

46. "Defendant Wen" means Defendant Kaine Wen, a/k/a Wenting Kaine Dai, Wen-Ting Dai, Wen Ting Dai, Kaine Dai, and Kaine Wen Dai, in his individual capacity and as trustee of the Kaine Wen 2017 Trust, and any other names by which he may be known.

47. "Defendants" means Corporate Defendants and Individual Defendants, individually, collectively, or in any combination, and each of them by whatever names each might be known:

a. "Corporate Defendants" means Consumer Advocacy Center Inc., True Count Staffing Inc., Prime Consulting LLC, TAS 2019 LLC, Horizon Consultants LLC, and First Priority LLC, collectively, or in any combination, and their successors and assigns, and each of them by any other names by which they might be known, including South Coast Financial Center, Direct Account Services, Financial Loan Advisors, Account Preparation Services, Administrative Financial, Tangible Savings Solutions, Coastal Shores Financial Group, First Choice Financial Centre (a/k/a First Choice Financial Center), Administrative

Account Services, Primary Account Solutions, Prime Document
Services, Financial Accounting Center, Doc Management Solutions,
ALW Loans, Administrative Accounting Center, Best Choice Financial
Center, First Document Services, Global Direct Accounting Solutions,
Keystone Document Center, Pacific Palm Financial Group, Pacific
Shores Advisory, Sequoia Account Management, Signature Loan
Solutions, Yellowstone Account Services, ClearStudentLoanDebt, Clear
Student Loan Debt, Trusted Account Services, Premier Student Loan
Center, and Priority Account Management; and

b. "Individual Defendants" means Albert Kim, a/k/a Albert King; Kaine
Wen, a/k/a Wenting Kaine Dai, Wen-Ting Dai, Wen Ting Dai, Kaine
Dai, and Kaine Wen Dai, in his individual capacity and as trustee of the
Kaine Wen 2017 Trust; and Tuong Nguyen, a/k/a Tom Nelson,
collectively, or in any combination, and each of them by any other names
by which they might be known.

48.    "Effective Date" means the date on which this Order is entered by the
Court.

49.    "Enforcement Director" means the Assistant Director of the Office of
Enforcement for the Bureau, or his or her delegate.

50.    "Person(s)" means an individual, partnership, company, corporation,
association (incorporated or unincorporated), trust, estate, cooperative
organization, or other entity.

51.    "Plaintiffs" means the Bureau, the State of Minnesota, the State of
North Carolina, and the People of the State of California, collectively, or in any
combination.

52.    "Receiver" means Thomas W. McNamara.

14

**FINAL JUDGMENT AND ORDER AS TO DEFENDANT KAINE WEN**

53.     "Receivership Defendants" means True Count Staffing Inc., Prime Consulting LLC, TAS 2019 LLC, Horizon Consultants LLC, and First Priority LLC, collectively, or in any combination, and their successors and assigns.

54.     "Related Consumer Action" means a private action by or on behalf of one or more consumers or an enforcement action by another governmental agency brought against Defendant Wen based on substantially the same facts as described in the Third Amended Complaint.

55.     "Relief Defendants" means:

a.  Infinite Management Corp., f/k/a Infinite Management Solutions Inc.; Hold the Door, Corp.; TN Accounting Inc.; Mice and Men LLC; 1st Generation Holdings, LLC; and Anan Enterprise, Inc., collectively, or in any combination, and their successors and assigns, and each of them by any other names by which they might be known; and

b.  Sarah Kim and Judy Dai, in her individual capacity and as trustee of the Judy Dai 2017 Trust, and any other names by which each of them might be known.

56.     "Service Provider" means any person that provides a material service to a covered person, in connection with the offering or provision by such covered person of a Consumer Financial Product or Service, including a person that—(i) participates in designing, operating, or maintaining the Consumer Financial Product or Service; or (ii) processes transactions relating to the Consumer Financial Product or Service (other than unknowingly or incidentally transmitting or processing financial data in a manner that such data is undifferentiated from other types of data of the same form as the person transmits or processes). "Service Provider" does not include a person solely by virtue of such person offering or providing to a covered person—(i) a support service of a type provided to

**FINAL JUDGMENT AND ORDER AS TO DEFENDANT KAINE WEN**

businesses generally or a similar ministerial service; or (ii) time or space for an advertisement for a Consumer Financial Product or Service through print, newspaper, or electronic media.

57.    "States" means the State of Minnesota, the State of North Carolina, and the People of the State of California.

58.    "Student Loan Debt-Relief Companies" means Consumer Advocacy Center Inc., True Count Staffing Inc., and Prime Consulting LLC, collectively, and their successors and assigns, and each of them by any other names by which they might be known.

## CONDUCT RELIEF

## III

## Permanent Ban on Engaging in Consumer Financial Products or Services

## It is ORDERED that:

59.    Defendant Wen, whether acting directly or indirectly, is permanently restrained from:

a.    advertising, marketing, promoting, offering for sale, selling, or providing any Consumer Financial Product or Service; and

b.    Assisting Others in advertising, marketing, promoting, offering for sale, selling, or providing any Consumer Financial Product or Service.

Nothing in this Order shall be read as an exception to this Paragraph.

## IV

## TSR and CFPA Injunctive Provisions

60.    Defendant Wen and his officers, agents, servants, employees, and attorneys, and all other Persons in active concert or participation with them who

receive actual notice of this Order, whether acting directly or indirectly, shall be permanently restrained and enjoined from:

    a.  violating sections 1031(a) and 1036(a)(1)(B), (a)(3) of the CFPA, 12 U.S.C. §§ 5531(a), 5536(a)(1)(B), (a)(3);

    b.  violating the TSR, 16 C.F.R. §§ 310.3(a)(2)(iii), (a)(2)(x), (b), 310.4(a)(5); and

    c.  in connection with the advertising, marketing, promotion, offering for sale, sale, or performance of any Consumer Financial Product or Service, misrepresenting, or Assisting Others in misrepresenting, expressly or impliedly:

        i.  the benefits that a consumer will receive from the product or service, including but not limited to, the amount of savings a consumer will receive from purchasing, using, or enrolling in the Consumer Financial Product or Service;

        ii.  the time required to achieve benefits from the Consumer Financial Product or Service;

        iii.  any aspect of the nature or terms of a refund, cancellation, exchange, or repurchase policy of the Consumer Financial Product or Service, including but not limited to, the likelihood of a consumer obtaining a full or partial refund or the circumstances in which a full or partial refund will be granted to the consumer; and

        iv.  the total costs or any other material term, fact, restriction, limitation, or condition of the Consumer Financial Product or

**FINAL JUDGMENT AND ORDER AS TO DEFENDANT KAINE WEN**

Service.

# V

## State Injunctive Provisions

**It is FURTHER ORDERED that**:

61.     Defendant Wen and his officers, agents, servants, employees, and attorneys, and all other Persons in active concert or participation with them who receive actual notice of this Order, shall be permanently restrained and enjoined from violating:

a.  the Minnesota Uniform Deceptive Trade Practices Act, Minn. Stat. § 325D.44; and

b.  the Minnesota Consumer Fraud Act, Minn. Stat. § 325F.69.

62.     Defendant Wen and his officers, agents, servants, employees and attorneys, and all other Persons in active concert or participation with any of them who receive actual notice of this Order, shall be permanently restrained and enjoined from violating:

a.  the North Carolina Debt Adjusting Act, N.C. Gen. Stat. § 14-423, *et seq.*; and

b.  the North Carolina Unfair and Deceptive Practices Act, N.C. Gen. Stat. § 75-1.1.

63.     Under the Court's inherent equitable powers and as authorized by California Business and Professions Code section 17203, this Court is empowered to "make such orders or judgments . . . as may be necessary to prevent the use or employment by any person of any practice which constitutes unfair competition . . ." Cal. Bus & Prof Code § 17203. Accordingly, Defendant Wen and his officers, agents, servants, employees, and attorneys, and all other persons in active concert or participation with them, whether acting directly or indirectly, are

18

**FINAL JUDGMENT AND ORDER AS TO DEFENDANT KAINE WEN**

permanently restrained from:

a. violating California Business and Professions Code section 17200, *et seq.*, through unlawful, fraudulent and/or unfair acts or practices, including but not limited to:

    i. violating sections 1031(a) and 1036(a)(1)(B), (a)(3) of the CFPA, 12 U.S.C. §§ 5531(a), 5536(a)(1)(B), (a)(3); and

    ii. violating the TSR, 16 C.F.R. §§ 310.3(a)(2)(iii), (a)(2)(x), (b), 310.4(a)(5).

# VI

# Customer Information

**It is FURTHER ORDERED that**:

64.    Defendant Wen and his officers, agents, servants, employees, and attorneys, and all other Persons in active concert or participation with any of them, who receive actual notice of this Order, whether acting directly or indirectly, may not:

a. disclose, use, or benefit from customer information, including the name, address, telephone number, email address, social security number, other identifying information, or any data that enables access to a customer's account (including a credit card, bank account, or other financial account), that Defendants obtained before the Effective Date in connection with the offering or providing of Debt-Relief Services; and

b. attempt to collect, sell, assign, or otherwise transfer any right to collect payment from any consumer who purchased or agreed to purchase a Debt-Relief Service from any Defendant.

However, customer information may be disclosed if requested by a government agency or required by law, regulation, or court order.

**FINAL JUDGMENT AND ORDER AS TO DEFENDANT KAINE WEN**

## MONETARY PROVISIONS

## VII

### Order to Pay Redress

**It is FURTHER ORDERED that**:

65.     A judgment for monetary relief is entered in favor of Plaintiffs and against Defendant Wen. Defendant Wen is liable, jointly and severally, in the amount of $95,057,757, for the purpose of providing redress to Affected Consumers. The monetary judgment set forth in this Section is immediately due and payable to the Bureau upon entry of this Order and is enforceable by Plaintiffs against Defendant Wen or any Asset owned by, on behalf of, for the benefit of, or in trust by or for Defendant Wen.

66.     Except as necessary to effectuate the transfers required by Paragraph 112, this Order grants to the Bureau all rights and claims that Defendant Wen has to all Assets frozen by the Preliminary Injunction entered on November 15, 2019 (ECF No. 103) and all Assets attributed to Defendant Wen in the Report of Pamela A. Clegg dated March 29, 2022 (ECF No. 364-3, 365-3), including but not limited to the Assets identified in Paragraph 67, and Defendant Wen shall forfeit any rights to those Assets.

Provided, however, that the following Assets shall be released to Defendant Wen: the personal property identified as furniture, household goods, appliances, computer equipment, home electronics, and personal electronics on Defendant Wen's Amended and Corrected Individual Financial Statement (as of November 1, 2019), executed on December 17, 2020 (ECF No. 365-6, Ex. 7 at 168-173).

67.     Any Person located within this Court's jurisdiction that holds, controls, or maintains accounts or Assets of, on behalf of, or for the benefit of Defendant Wen, shall turn over such account or Asset to the Bureau, the Receiver,

**FINAL JUDGMENT AND ORDER AS TO DEFENDANT KAINE WEN**

or the Bureau's designated agent, at the Bureau's sole discretion, within ten (10) business days of receiving notice of this Order by any means, including but not limited to via facsimile or email. Any such turnover to the Bureau must be by wire transfer to the Bureau or to the Bureau's agent and according to the Bureau's wiring instructions. The Assets that must be turned over pursuant to this Paragraph include but are not limited to the following:

    a.  all Assets in the Bank of New York Mellon Corporation account number ending in 1000 in the name of the Kaine Wen 2017 Trust;

    b.  all Assets in the Wells Fargo Bank, N.A. checking account ending in account number 3052 in the name of the Kaine Wen 2017 Trust;

    c.  all bitcoin held at the following bitcoin addresses as of the date of this Order:

        i.  1FaQ7TNzt9uGCTiZ65qiBBUimaV4nqSHSF

        ii.  1CnrRf645iE1SmSyLRcHxida7HKwaSxFJs

        iii.  17DveKFbhpNJYXAGAqRkYYFAERAnJ7PFCt

        iv.  1LMoynaFJVnUey4mqT4itpeqcn4TRCgWbM

        v.  1LARuJ5G4uU699tmdbdZQPuXTTLhhUFoYa

        vi.  1NZ7a1jjc5aib7SoGShkvvZi7SfrtcWAtG

        vii.  1EzNbQxehk5pxHcYyhXoCGikXPfMkPDdkM

        viii.  1BaUoNXvo84n1gVXxPdqb9dKaSR7DgE98Y

        ix.  1N1DwLGUq87m3uWqX3QT76uHfQMNkVK6sZ

        x.  1Mu5PY6iFhpts9m1JyJs1imyZdUQ27Xask

        xi.  1mgGejBqKFrMTayWwKj27ZQAGgszycPwT

        xii.  1KNeuQiYVx1XqqhJ7WiSJ7VNo4RkHNQw5V

        xiii.  189oB9QGHAQLHenzuwLVFc6Y47cGswsoHc

        xiv.  1Bu4zay9qUdMB234h2uuSFd9bnhtUJGAT2

**FINAL JUDGMENT AND ORDER AS TO DEFENDANT KAINE WEN**

xv.   1aQv6sy8mQP4wfH9Kcy5GPbiY8gSyH1P7

xvi.   1Gk6oDyWuMhFT8UWiZLfi2uC6t97nybEtK

xvii.   12NBMijDzDsxAuwRLFU6tAtJhRExxcvCbZ

xviii.   37JRJeB4zBCyHKFrfkxJ9qKDDyE26phd5R

xix.   3GAyQ4r3vf5g62dW5T1GLVmeMjN73E6Ynh

xx.   1JA73SXeybusqMMJBdFEqwdWJV81tAgHQ9

xxi.   1kJdtoMuReQar9bcUnPAwH2YBBuyCwDWY

xxii.   1XSB1Yr7XTT8UbM43fMwTRa9MroDtmeXG

xxiii.   15NEe5BJLSSuWat1jhjoWm1rTt3GyLnpmg

xxiv.   1EqMERSMYRYTQxWTb611qvBKXTogZq3m5U

xxv.   3CvGqmQwqzRbpVupLB3c2CLNagKhxf9t5P

d.   all ether held at the following ether addresses as of the date of this Order:

   i.   0x4d586195aeed6b32b62daaaa60122ed9088990d4

   ii.   0x6644b681eAB811591C146A3E54BBf6d91cb6d455

e.   all Assets in the Binance.com cryptocurrency account associated with the user ID number ending in 7692 in the name of Defendant Wen;

f.   approximately 170,000 Stellar Lumen and 100 Monero that Defendant Wen transferred to the Receiver on or about November 29, 2022, pursuant to this Court's Order (ECF No. 405);

g.   Audemars Piguet Royal Oak Offshore watch (black);

h.   Audemars Piguet Royal Oak Offshore watch (white);

i.   Breitling Super Avenger watch (blue);

j.   3.584 carat diamond (round), ASG ending in 6001;

k.   Reus car stereo system, Stage 2; and

l.   Escher prints (3 prints).

**FINAL JUDGMENT AND ORDER AS TO DEFENDANT KAINE WEN**

68.     Defendant Wen shall cooperate fully with the Bureau, the Receiver, or the Bureau's agent and shall execute any instrument or document presented by them, and take any other actions necessary or appropriate to effect the transfers and liquidation required by Paragraphs 66-67 and 112-113. All property transferred to the Receiver under Paragraph 67 shall constitute assets of the receivership estate. Defendant Wen shall forfeit any rights and claims to the funds in the receivership estate, including but not limited to all funds held, obtained, or to be obtained by the Receiver since the inception of the receivership whether through this Order or otherwise.

69.     With regard to any redress that Defendant Wen pays under this Section, if Defendant Wen receives, directly or indirectly, any reimbursement or indemnification from any source, including but not limited to payment made under any insurance policy, or if Defendant Wen secures a tax deduction or tax credit with regard to any federal, state, or local tax, Defendant Wen must: (a) immediately notify the Enforcement Director and States in writing, and (b) within 10 days of receiving the funds or monetary benefit, Defendant Wen must transfer the full amount of such funds or monetary benefit (Additional Payment) to the Bureau or to the Bureau's agent according to the Bureau's wiring instructions.

70.     Any funds received by the Bureau in satisfaction of this judgment will be deposited into a fund or funds administered by the Bureau or to the Bureau's agent according to applicable statutes and regulations to be used for redress for Affected Consumers, including but not limited to refund of moneys, restitution, damages or other monetary relief, and for any attendant expenses for the administration of any such redress.

71.     If the Bureau determines, in its sole discretion, that providing redress to consumers is wholly or partially impracticable or if funds remain after the

administration of redress is completed, the money will not revert to Defendant Wen. Defendant Wen will have no right to challenge the Bureau's choice of remedies under this Section and will have no right to contest the manner of distribution chosen by the Bureau.

72.     Payment of redress to any Affected Consumer under this Order may not be conditioned on that Affected Consumer waiving any right.

# VIII

## Order to Pay Civil Money Penalty to Plaintiffs

**It is FURTHER ORDERED that**:

73.     Under sections 1042(a) and 1055(c) of the CFPA, 12 U.S.C. §§ 5552(a) and 5565(c), Cal. Bus. Prof. Code § 17206, Minn. Stat. § 8.31, and N.C. Gen. Stat. § 75-15.2, by reason of the violations of law alleged in the Third Amended Complaint and taking into account the factors in 12 U.S.C. § 5565(c)(3), Defendant Wen must pay a civil money penalty of $148,000,000 to Plaintiffs.

74.     Of the civil money penalty ordered in Paragraph 73, $5,000 shall be paid to each State as set forth in Paragraph 112.

75.     Within 10 days of the Effective Date, Defendant Wen must pay $147,985,000 to the Bureau by wire transfer to the Bureau or to the Bureau's agent in compliance with the Bureau's wiring instructions.

76.     The civil money penalty paid to the Bureau under this Order will be deposited in the Civil Penalty Fund of the Bureau as required by section 1017(d) of the CFPA, 12 U.S.C. § 5497(d).

77.     The civil money penalty paid to Minnesota under this Order will be remitted to the general fund of the State of Minnesota pursuant to Minn. Stat. §§ 8.31 and 16A.151.

78.     Defendant Wen must treat all civil money penalties paid under this

Order as a penalty paid to the government for all purposes. Regardless of how such funds are used, Defendant Wen may not:

    a. claim, assert, or apply for a tax deduction, tax credit, or any other tax benefit for any civil money penalty paid under this Order; or

    b. seek or accept, directly or indirectly, reimbursement or indemnification from any source, including but not limited to payment made under any insurance policy, with regard to any civil money penalty paid under this Order.

79. The civil penalty imposed by the Order represents penalties paid to the United States Government and the States, respectively, is not compensation for actual pecuniary loss, and, thus, as to the Defendant Wen, are not subject to discharge under the Bankruptcy Code under 11 U.S.C. § 523(a)(7).

# IX

## Additional Monetary Provisions

**It is FURTHER ORDERED that**:

80. In the event of any default on Defendant Wen's obligations to make payment under this Order, interest, computed under 28 U.S.C. § 1961, as amended, will accrue on any outstanding amounts not paid from the date of default to the date of payment, and will immediately become due and payable.

81. Defendant Wen relinquishes all dominion, control, and title to the funds and all other Assets transferred or paid under this Order to the fullest extent permitted by law and no part of the funds or other Assets may be returned to Defendant Wen. The Bureau, in its sole discretion, may apply any funds paid to it under this Order to satisfy the order to pay redress in Section VII or the civil money penalty owed to the Bureau as set forth in Section VIII.

82. The facts alleged in the Third Amended Complaint will be taken as

**FINAL JUDGMENT AND ORDER AS TO DEFENDANT KAINE WEN**

true and given collateral estoppel effect, without further proof, in any proceeding based on the entry of the Order, or in any subsequent civil litigation by or on behalf of the Plaintiffs, including in a proceeding to enforce their rights to any payment or monetary judgment under this Order, such as a non-dischargeability complaint in any bankruptcy case.

83.     The facts alleged in the Third Amended Complaint establish all elements necessary to sustain an action by the Plaintiffs under section 523(a)(2)(A) of the Bankruptcy Code, 11 U.S.C. § 523(a)(2)(A), and for such purposes this Order will have collateral estoppel effect against Defendant Wen, even in his capacity as debtor-in-possession.

84.     Under 31 U.S.C. § 7701, Defendant Wen, unless he has already done so, must furnish to Plaintiffs any taxpayer-identifying numbers associated with him or his Assets, which may be used for purposes of collecting and reporting on any delinquent amount arising out of this Order.

85.     Within 30 days of the entry of a final judgment, order, or settlement in a Related Consumer Action, Defendant Wen must notify the Enforcement Director of the final judgment, order, or settlement in writing. That notification must indicate the amount of redress, if any, that Defendant Wen paid or is required to pay to consumers and describe the consumers or classes of consumers to whom that redress has been or will be paid. To preserve the deterrent effect of the civil money penalty in any Related Consumer Action, Defendant Wen may not argue that he is entitled to, nor may Defendant Wen benefit by, any offset or reduction of any monetary remedies imposed in the Related Consumer Action because of the civil money penalty paid in this action or because of any payment that the Bureau makes from the Civil Penalty Fund. If the court in any Related Consumer Action offsets or otherwise reduces the amount of compensatory monetary remedies

**FINAL JUDGMENT AND ORDER AS TO DEFENDANT KAINE WEN**

imposed against Defendant Wen based on the civil money penalty paid in this action or based on any payment that the Bureau makes from the Civil Penalty Fund, Defendant Wen must, within 30 days after entry of a final order granting such offset or reduction, notify the Bureau and pay the amount of the offset or reduction to the U.S. Treasury. Such a payment will not be considered an additional civil money penalty and will not change the amount of the civil money penalty imposed in this action.

86.     Upon written request of a representative of Plaintiffs, any consumer reporting agency must furnish consumer reports to Plaintiffs concerning Defendant Wen under section 604(a)(1) of the Fair Credit Reporting Act, 15 U.S.C.§ 1681 b(a)(1), which may be used for purposes of collecting and reporting on any delinquent amount arising out of this Order.

# X

## Lifting of Asset Freeze

**It is FURTHER ORDERED that**:

87.     The freeze on the Assets of Defendant Wen is modified to permit the payments and other transfers of Assets identified in Sections VII, VIII, IX, and XVII of this Order. Upon completion of all payments and other obligations identified in Sections VII, VIII, IX, and XVII of this Order, the freeze of Defendant Wen's Assets pursuant to the Preliminary Injunction entered on November 15, 2019 (ECF 103), shall be dissolved.

**FINAL JUDGMENT AND ORDER AS TO DEFENDANT KAINE WEN**

# COMPLIANCE PROVISIONS

# XI

## Reporting Requirements

**It is FURTHER ORDERED that**:

88.     Defendant Wen must notify Plaintiffs of any development that may affect compliance obligations arising under this Order, including but not limited to, a dissolution, assignment, sale, merger, or other action that would result in the emergence of a successor company; the creation or dissolution of a subsidiary, parent, or affiliate that engages in any acts or practices subject to this Order; the filing of any bankruptcy or insolvency proceeding by or against Defendant Wen; or a change in Defendant Wen's name or address. Defendant Wen must provide this notice at least 30 days before the development or as soon as practicable after learning about the development, whichever is sooner.

89.     Within 7 days of the Effective Date, Defendant Wen must:

a.  designate at least one telephone number and email, physical, and postal address as points of contact that Plaintiffs may use to communicate with him;

b.  identify all businesses for which Defendant Wen is the majority owner, or that he directly or indirectly controls, by all of their names, telephone numbers, and physical, postal, email, and Internet addresses;

c.  describe the activities of each such business, including the products and services offered, and the means of advertising, marketing, and sales;

d.  identify all Defendant Wen's telephone numbers and all email, Internet, physical, and postal addresses, including all residences; and

e.  describe in detail Defendant Wen's involvement in any business for which he performs services in any capacity or which he wholly or

**FINAL JUDGMENT AND ORDER AS TO DEFENDANT KAINE WEN**

partially owns, including his title, role, responsibilities, participation,

authority, control, and ownership.

90.     Defendant Wen must report any change in the information required to

be submitted under Paragraph 89 at least 30 days before the change or as soon as

practicable after learning about the change, whichever is sooner.

91.     One year after the Effective Date, Defendant Wen must submit to the

Enforcement Director an accurate written compliance progress report sworn to

under penalty of perjury (Compliance Report), which, at a minimum:

a. lists each applicable paragraph and subparagraph of this Order and
   describes in detail the manner and form in which Defendant Wen has
   complied with each such paragraph and subparagraph of this Order; and

b. attaches a copy of each Order Acknowledgment obtained under Section
   XII, unless previously submitted to the Bureau.

## XII

## Order Distribution and Acknowledgment

**It is FURTHER ORDERED that**:

92.     Within 7 days of the Effective Date, Defendant Wen must submit to

the Enforcement Director an acknowledgment of receipt of this Order, sworn under

penalty of perjury.

93.     Within 30 days of the Effective Date, Defendant Wen, for any

business for which he is the majority owner or which he directly or indirectly

controls, must deliver a copy of this Order to each of its board members and

executive officers, as well as to any managers, employees, Service Providers, or

other agents and representatives who have responsibilities related to the subject

matter of the Order.

94.     For 5 years from the Effective Date, Defendant Wen, for any business

29

**FINAL JUDGMENT AND ORDER AS TO DEFENDANT KAINE WEN**

for which he is the majority owner or which he directly or indirectly controls, must deliver a copy of this Order to any business entity resulting from any change in structure referred to in Section XI, any future board members and executive officers, as well as to any managers, employees, Service Providers, or other agents and representatives who will have responsibilities related to the subject matter of the Order before they assume their responsibilities.

95.     Defendant Wen must secure a signed and dated statement acknowledging receipt of a copy of this Order, ensuring that any electronic signatures comply with the requirements of the E-Sign Act, 15 U.S.C. § 7001 *et seq.*, within 30 days of delivery, from all Persons receiving a copy of this Order under this Section.

96.     Within 90 days of the Effective Date, Defendant Wen must provide the Bureau with a list of all Persons and their titles to whom this Order was delivered through that date under Paragraphs 93-94 and a copy of all signed and dated statements acknowledging receipt of this Order under Paragraph 95.

# XIII

## Recordkeeping

**It is FURTHER ORDERED that**:

97.     Defendant Wen must create, for at least 10 years from the Effective Date, the following business records for any business for which Defendant Wen, individually or collectively with any other Defendant, is a majority owner or which Defendant Wen directly or indirectly controls: all documents and records necessary to demonstrate full compliance with each provision of this Order, including all submissions to any Plaintiff. Defendant Wen must retain these documents for at least 10 years after creation and make them available to Plaintiffs upon any Plaintiff's request.

**FINAL JUDGMENT AND ORDER AS TO DEFENDANT KAINE WEN**

98.     Defendant Wen must maintain, for at least 10 years from the
Effective Date or 5 years after creation, whichever is longer:

a. copies of all sales scripts; training materials; advertisements; websites; and other marketing materials, including any such materials used by a third party on Defendant Wen's behalf, relating to any Consumer Financial Product or Service;

b. for each individual consumer and his or her enrollment in that Consumer Financial Product or Service: the consumer's name, address, phone number, email address; amount paid, quantity of Consumer Financial Products or Services purchased, description of the Consumer Financial Product or Service purchased, the date on which the Consumer Financial Product or Service was purchased, a copy of any promotional or welcome materials provided, and, if applicable, the date and reason the consumer left the program;

c. for all Consumer Financial Products or Services, accounting records showing the gross and net revenues generated by the Consumer Financial Product or Service;

d. all consumer complaints and refund requests (whether received directly or indirectly, such as through a third party) relating to a Consumer Financial Product or Service, and any responses to those complaints or requests;

e. records showing, for each employee providing services related to a Consumer Financial Product or Service, that Person's name, telephone number, email, physical, and postal address, job title or position, dates of service, and, if applicable, the reason for termination; and

f. records showing, for each Service Provider providing services related to

**FINAL JUDGMENT AND ORDER AS TO DEFENDANT KAINE WEN**

a Consumer Financial Product or Service, the name of a point of contact, and that Person's telephone number, email, physical, and postal address, job title or position, dates of service, and, if applicable, the reason for termination.

99.    Defendant Wen must make these materials available to Plaintiffs upon any Plaintiff's request.

## XIV

## Notices

**It is FURTHER ORDERED that**:

100.    Unless otherwise directed in writing by the Bureau, Defendant Wen must provide all submissions, requests, communications, or other documents relating to this Order in writing, with the subject line, "*CFPB, et al., v. CAC, et al.*, Case No. 8:19-cv-01998-MWF-KS" and send them by overnight courier or first-class mail to the below address and contemporaneously by email to Enforcement_Compliance@cfpb.gov:

> Assistant Director for Enforcement
> Bureau of Consumer Financial Protection
> ATTENTION: Office of Enforcement
> 1700 G Street, N.W.
> Washington, D.C. 20552

101.    Unless otherwise directed by a representative of the State of Minnesota in writing, all submissions to the State of Minnesota pursuant to this Order must be sent by overnight courier or first-class mail to the below address and contemporaneously by email to evan.romanoff@ag.state.mn.us:

> Evan Romanoff, Assistant Attorney General
> Office of the Minnesota Attorney General

**FINAL JUDGMENT AND ORDER AS TO DEFENDANT KAINE WEN**

445 Minnesota Street, Suite 1200

St. Paul, MN 55101

102.  Unless otherwise directed by a representative of the State of North Carolina in writing, all submissions to the State of North Carolina pursuant to this Order must be sent by overnight courier or first-class mail to the below address and contemporaneously by email to lweaver@ncdoj.gov:

M. Lynne Weaver, Special Deputy Attorney General

North Carolina Department of Justice

114 W. Edenton Street

Raleigh, NC 27603

103.  Unless otherwise directed by the State of California in writing, all submissions to the State of California pursuant to this Order must be sent by overnight courier or first-class mail to the below address and contemporaneously by email to christina.tusan@lacity.org:

Christina Tusan

Supervising Deputy City Attorney

Los Angeles City Attorney's Office

200 N. Main Street, 5th Floor

Los Angeles, CA 90012

## XV

## Cooperation with Plaintiffs

**It is FURTHER ORDERED that:**

104.  Defendant Wen must cooperate fully with Plaintiffs in this matter and in any investigation or litigation related to or associated with the conduct described in the Third Amended Complaint, including related to the Bankruptcy Proceedings. Defendant Wen must provide truthful and complete information, evidence, and

**FINAL JUDGMENT AND ORDER AS TO DEFENDANT KAINE WEN**

testimony. Defendant Wen must appear for interviews, discovery, hearings, trials, and any other proceedings that any Plaintiff may reasonably request upon 10 days written notice, or other reasonable notice, at such places and times as Plaintiff may designate, without the service of compulsory process.

105.   Defendant Wen must cooperate fully to help Plaintiffs determine the identity, location, and contact information of any Defendant or Relief Defendant and any Person who might have contact information for any Defendant or Relief Defendant. Defendant Wen must provide such information in his or his agents' possession or control within 14 days of receiving a written request from any Plaintiff.

106.   Defendant Wen must cooperate fully to help Plaintiffs determine the identity and location of, and the amount of injury sustained by, each Affected Consumer. Defendant Wen must provide such information in his or his agents' possession or control within 14 days of receiving a written request from any Plaintiff.

# XVI

## Compliance Monitoring

**It is FURTHER ORDERED that**:

107.   Within 14 days of receipt of a written request from any Plaintiff, Defendant Wen must submit additional compliance reports or other requested information, which must be sworn under penalty of perjury; provide sworn testimony; or produce documents.

108.   For purposes of this Section, Plaintiffs may communicate directly with Defendant Wen, unless Defendant Wen retains counsel related to these communications.

**FINAL JUDGMENT AND ORDER AS TO DEFENDANT KAINE WEN**

109.   Defendant Wen must permit Plaintiffs' representatives to interview any employee or other Person affiliated with Defendant Wen who has agreed to such an interview regarding: (a) this matter; (b) anything related to or associated with the conduct described in the Third Amended Complaint; or (c) compliance with this Order. The Person interviewed may have counsel present. Nothing in this Order will limit the Bureau's lawful use of civil investigative demands under 12 C.F.R. § 1080.6 or any Plaintiff's use of other compulsory process.

110.   Plaintiffs are authorized by this Order to use all other lawful means, including posing, through representatives, as consumers, suppliers, or other individuals or entities, to Defendant Wen or any individual or entity affiliated with Defendant Wen, without the necessity of identification or prior notice, and may record any communications that occur in the course of such contacts.

# XVII

## Receivership

**It is FURTHER ORDERED that**:

111.   The receivership imposed by this Court shall continue in the manner set forth in the Preliminary Injunction issued on November 15, 2019 (ECF 103), as to all Defendants and Relief Defendants, except as modified by this Section and Section X, and the Receiver shall continue to have the full powers of an equity receiver, as an agent of the Court, pursuant to Sections XIV and XV of the Preliminary Injunction, which shall remain in effect until further order of the Court.

112.   Within 14 days of liquidating any of Defendant Wen's Assets transferred pursuant to Paragraph 67, the Receiver shall transfer $5,000 to the State of Minnesota, $5,000 to the North Carolina Attorney General, and $5,000 to the People of the State of California from the Defendant Wen's Assets maintained in

**FINAL JUDGMENT AND ORDER AS TO DEFENDANT KAINE WEN**

the Receiver's account. Provided, however, that following liquidation of any Assets identified in Paragraph 67 by the Receiver, if the total proceeds after deduction for liquidation costs are less than $15,000, the Receiver shall distribute such proceeds to each of the States in equal pro rata shares. These transfers shall be made to satisfy the civil money penalties to the States as set forth in Section VIII. Any remaining Assets of Defendant Wen controlled by the Receiver shall be transferred to the Bureau as set forth in Paragraph 113.

113.   The Receiver shall promptly take all steps necessary to liquidate any of Defendant Wen's Assets transferred to him pursuant to Paragraph 67 using any commercially reasonable means, including auction and/or private sale, and all such sales shall be deemed authorized and approved under 28 U.S.C. § 2004 without further notice, hearing, or court order. After such liquidation, the Receiver shall remit the net proceeds to the Bureau or its designated representative as payment toward the monetary judgments entered against Defendant Wen within 21 days of each such sale or liquidation, subject to Paragraph 115.

114.   The Receiver may abandon, without further court order, any Assets transferred to him pursuant to Paragraph 67 that he deems in his discretion to be of inconsequential or no value.

115.   The Receiver and his representatives shall continue to be entitled to reasonable compensation for the performance of their duties pursuant to this Order from the Assets of the Receivership Defendants. The Receiver and his representatives shall not increase their hourly rates without prior approval of the Court.

**FINAL JUDGMENT AND ORDER AS TO DEFENDANT KAINE WEN**

# XVIII

## Retention of Jurisdiction

**It is FURTHER ORDERED that**:

116.   The Court will retain jurisdiction of this matter for the purpose of enforcing this Order.

# XIX

## Service

**IT IS FURTHER ORDERED that**:

117.   This Order may be served upon Defendant Wen by electronic mail, certified mail, or United Parcel Service, either by the United States Marshal, the Clerk of the Court, or any representative or agent of the Bureau.

It is **SO ORDERED**, this ___ day of _____, 2023.

_____

Michael W. Fitzgerald

United States District Judge

---

37

**FINAL JUDGMENT AND ORDER AS TO DEFENDANT KAINE WEN**