EXHIBIT 1

# SETTLEMENT AGREEMENT AND MUTUAL RELEASE

1. **PARTIES**

    This Settlement Agreement and Mutual Release (the "Agreement") is entered into by and between National Merchant Center ("NMC"), on the one hand, and Thomas W. McNamara, as the Court-appointed receiver (the "Receiver") in *Bureau of Consumer Financial Protection, et al. v. Consumer Advocacy Center Inc., et al.*, U.S.D.C. (C.D. Cal.), Case No. 8:19-cv-01998-MWF (KSx) (the "CFPB Action") for the following entities: True Count Staffing Inc., d/b/a SL Account Management; Prime Consulting LLC, d/b/a Financial Preparation Services; TAS 2019 LLC d/b/a Trusted Account Services; First Priority LLC; and Horizon Consultants LLC, (collectively "Receivership Defendants"), on the other hand, in full and complete settlement of the lawsuit styled *McNamara v. National Merchant Center, Inc., et al.*, U.S.D.C. (C.D. Cal), Case No. 8:21-cv-01122-MWF (KSx) (the "Action") as well as any claims that could have been asserted therein. For purposes of this Agreement, NMC and the Receiver may be referred to individually as a "Party" and collectively as the "Parties."

2. **RECITALS**

    2.1    On October 21, 2019, the Bureau of Consumer Financial Protection, among others, filed a lawsuit against Consumer Advocacy Center Inc. dba Premier Student Loan Center, among others, in the United States District Court for the Central District of California, initiating the CFPB Action.

    2.2    On October 21, 2019, Thomas W. McNamara was initially appointed as the Receiver over the Receivership Defendants as those entities are defined in the *Ex Parte* Temporary Restraining Order with Asset Freeze, Appointment of Receiver and Other Equitable Relief which was entered in the CFPB Action on October 21, 2019.

    2.3    On November 15, 2019, the Court in the CFPB Action issued a Stipulated Preliminary Injunction with Asset Freeze, Appointment of Receiver, and Other Equitable Relief whereby it reaffirmed the Receiver's appointment and tasked him with, among other things, identifying, preserving, and recovering assets of the Receivership Estate.

    2.4    Since the time of the Receiver's appointment, certain disputes and controversies have arisen among the Parties with regard to NMC's receipt of certain monies from the Receivership Estate.

    2.5    On May 27, 2020, the parties engaged in an unsuccessful mediation before the Honorable John Zebrowski (Retired) in an effort to resolve the Parties' disputes and controversies.

    2.6    With the Parties unable to settle their disputes and controversies, on June 28, 2021, the Receiver, in his capacity as the receiver of the Receivership Defendants, commenced the Action against NMC, Shih-Hao Lai aka Jimmy Lai ("Lai"), and Swift Payments ("Swift") (collectively "Defendants").

2.7     On March 16, 2022, after its motion to dismiss was granted in part and denied in part, NMC filed its answer and brought certain counterclaims against the Receiver, which were thereafter stayed by the Court on motion by the Receiver, with NMC permitted to move to lift the litigation stay in place in the CFPB Action.

2.8     After engaging in substantial written, document, and deposition discovery beginning in early 2022, on August 19, 2022, the Receiver and Defendants attended a mediation of the Action before Bruce Isaacs, Esq., which mediation was unsuccessful.

2.9     The Action and the Parties' respective claims, counterclaims, allegations, assertions, and defenses, and each of them, which are or could have been set forth therein shall constitute the "Dispute."

2.10    Without any admission of liability by any of the Parties and without conceding the respective positions of any of the Parties, the Parties desire to settle and dispose of, fully and completely, the Dispute.

2.11    Therefore, in consideration of the mutual covenants set forth herein, and for good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the Parties hereby agree to the settlement of the Dispute on the terms and conditions below, all of which shall be considered material to this Agreement.

3.   **EFFECTIVE DATE**

3.1     The "Effective Date" of this Agreement is the date on which the last Party signs this Agreement.

4.   **SETTLEMENT CONTINGENCY**

4.1     This Agreement is not binding on the Parties unless and until the District Court in the Action enters an order approving of the Agreement.

4.2     Within seven (7) days of the Effective Date, the Receiver shall file a motion in the CFPB Action seeking the District Court's approval of this Agreement. The Parties shall take all reasonably necessary actions that may become necessary to secure a prompt and favorable determination by the District Court.

4.3     In the event that the District Court does <u>not</u> approve of this Agreement, the Parties shall meet and confer and make all reasonably necessary changes to the Agreement, provided that the changes remain consistent with the Settlement Amount and Related Terms identified in Section 5, and then promptly reapply for approval.

4.3.1    The Parties' obligations under Section 4.3 shall continue until the Parties reasonably determine that material changes to the Settlement Amount and Related Terms identified in Section 5 are required in order to secure approval of the Agreement. In such an event, the Parties shall have the option to continue settlement negotiations or any Party may declare an impasse, in which event this Agreement and all exhibits hereto are null and void.

   4.4  This Agreement is expressly premised, in significant part, on the truthfulness, accuracy, and completeness of NMC's financial statements and most recent tax return, which have been provided to the Receiver and which NMC asserts and represents are truthful, accurate, and complete, which include:

     4.4.1 Financial statement of NMC for the period December 1, 2021 to November 30, 2022;

     4.4.2 NMC's Federal and State Tax Returns for the year 2021 (December 1, 2020 through November 30, 2021).

     4.4.3 The Receiver represents that he has not disseminated NMC's financial statements and tax returns or the information therein to anyone. The Receiver agrees he will not disseminate NMC's financial statements and tax returns or the information therein to anyone, except if necessary to the Court under seal, and will destroy all copies of NMC's financial statements and tax returns within ten business days after the Court's approval or non-approval of the settlement.

**5.  SETTLEMENT AMOUNTS AND RELATED TERMS**

   5.1  In consideration for the promises made in this Agreement and in full payment of any monies due, NMC shall cause to be paid to the Receiver Three Hundred Forty Thousand Dollars ($340,000) in United States currency as follows:

     5.1.1 $50,000 shall be paid on or before April 20th, 2023;

     5.1.2 $50,000 shall be paid on or before June 20, 2023;

     5.1.3 $60,000 shall be paid on or before January 20, 2024 ("January 2024 Payment");

     5.1.4 $60,000 shall be paid on or before January 20, 2025 ("January 2025 Payment");

     5.1.5 $60,000 shall be paid on or before January 20, 2026 ("January 2026 Payment");

     5.1.6 $60,000 shall be paid on or before January 20, 2027.

     5.1.7 NMC shall be permitted, at its election, to defer the January 2024 Payment, the January 2025 Payment, and/or the January 2026 Payment, only if NMC can demonstrate that its net income ("Net Income") for the year immediately preceding the initial due date for the payment in question does not exceed $100,000. Any payment which NMC elects to defer shall be referred to as a "Deferred Payment" herein. Net Income is to be measured by providing to the Receiver on or before the Deferred Payment's initial due date by, (1) financial statements for the fiscal year preceding the initial due date of the Deferred Payment along with an attestation under oath that such financial statements are true and accurate and (2) its most recent Federal and State Tax Returns. The Receiver agrees that he will not disseminate NMC's financial statements or tax returns to anyone and

will destroy all copies of NMC's financial statements and tax return in his possession within ten (10) business days of receipt or until any dispute regarding deferral eligibility is resolved, whichever is later. NMC further agrees that the January 2024 Payment, the January 2025 Payment, and/or the January 2026 Payment may each be deferred up to and not exceeding one year, and that any deferred payment shall accrue interest at the interest rate of 7% per annum running from that payment's initial due date, until paid. Failure to pay in full a Deferred Payment, including accrued interest, by January 20 of the following year shall constitute an Event of Default, as such term is defined in Section 6.1 below;

        5.1.8   For sake of clarity, the payments referred to above in paragraphs 5.1.1, 5.1.2, and 5.1.6 may not be deferred, and failure to make any of the payments by the dates specified therein shall constitute an Event of Default, as such term is defined in Section 6.1 below. Moreover, the Parties contemplate that all sums due under this Agreement will be paid on or before January 20, 2027 and NMC's failure to do so shall also constitute a default as such term is defined in Section 6.1 below.

    5.2   In consideration of and as security for the promises made in this Agreement, NMC shall provide the Receiver with a Stipulation of Judgment in the form attached hereto as <u>Exhibit A</u>, which Stipulation of Judgment shall not be filed by the Receiver or the Receiver's designee unless an Event of Default occurs as such term is defined in Section 6.1 below.

    5.3   In the event that the Receiver's right to file <u>Exhibit A</u> vests pursuant to this Agreement, the Receiver or the Receiver's designee may, upon ninety-six (96) hour notice to NMC and its counsel, Aaron May, and subject to the terms of the Stipulation of Judgment, file the Stipulation of Judgment and, if necessary, appear *ex parte* in the Action to have Judgment entered. NMC waives its right to assert any procedural or substantive defenses and/or objections to the entry of judgment, other than a claim that it has complied with its obligations under this Agreement, or a claim that the Receiver or the Receiver's designee is not entitled to entry of judgment under the terms of this Agreement.

    5.4   All payments from NMC are to be made by wire or ACH pursuant to instructions provided by the Receiver upon request or cashier's check payable to "True Count Staffing Receivership," and delivered via overnight mail to McNamara Smith LLP, Attn: Jill Jacobs, 655 West Broadway, Suite 900, San Diego, California 92101, unless the Receiver has provided prior notice and payment instructions in writing to NMC that the payments should be made directly to the CFPB as set forth more fully in paragraph 5.6 below.

    5.5   Within seven (7) days of the Effective Date, and as a condition to the receipt of any monies described in this Agreement, the Receiver shall provide NMC with a valid W-9.

    5.6   The Parties agree and understand that the Receiver and the affairs of the Receivership Estate could conclude prior to the completion of NMC's payment obligations described herein. The Parties agree that the conclusion of the Receivership Estate shall have no impact whatsoever on NMC's obligations under this Agreement. In the event that NMC has not completed its obligations under this Agreement by the conclusion of the

Receivership, the Receiver, with the CFPB's consent, shall provide notice and payments instructions to NMC that all remaining payments under this Agreement should be made directly to the CFPB as the Receiver's designee. The Parties further agree that if the Receiver provides such notice designating the CFPB, all of the Receiver's rights and obligations under this Agreement shall inure to the benefit of the CFPB upon termination of the Receivership, and the CFPB will have the right to enforce this Agreement as if it were a direct party to this Agreement.

6. **EVENTS OF DEFAULT**

    6.1    The following shall constitute an "Event of Default" under this Agreement: (i) if any payment under this Agreement is not paid when due (including failure to pay in full, including accrued interest, a Deferred Payment within one (1) year of its initial due date) and NMC fails to cure by ensuring that payment, along with any applicable interest, is received within thirty (30) days of written notice of the breach; or (ii) the commencement by NMC or its creditors of any bankruptcy, insolvency, reorganization, receivership, or liquidation case, action, or proceeding, or any other proceedings for relief under any bankruptcy law or any other law for the relief of debtors or affecting the rights of creditors generally. Upon an Event of Default, all amounts then remaining due under this Agreement shall be accelerated to immediately become due and payable at that time.

7. **DISMISSAL OF ACTION**

    7.1    Within ten (10) days following the Court's approval of this Agreement, the Parties shall file a stipulation of dismissal, requesting dismissal of the Receiver's First Amended Complaint and NMC's counterclaims with prejudice. The stipulation of dismissal shall further request and be contingent upon the Court's issuance of an order of dismissal reserving jurisdiction to enforce this Agreement if necessary.

8. **RELEASES**

    8.1    In consideration of the Agreement and terms contained herein, and contingent upon the Court's approval of this Agreement and except for the rights and obligations created by this Agreement, the Parties and the Receivership Defendants mutually release and forever discharge each other, and their parent and subsidiary companies and each of their past and present officers, directors, agents, shareholders, partners, members, insurers, heirs, relatives, representatives, employees, contractors, successors, predecessors, affiliated companies, alter egos, assigns, and attorneys from any and all acts, occurrences, costs, proceedings, obligations, damages, injuries, contracts, agreements, promises, losses, harms, expenses, fees, judgments, actions, causes of action, suits, claims, debts, demands, and liabilities, and any and all other claims of every kind, nature, and description whatsoever, both in law and equity, whether known or unknown, whether suspected or unsuspected, whether accrued or un-accrued, whether now or heretofore existing, whether premised on contract, statute, tort or other theory of recovery, whether for any compensatory, punitive, penalty, statutory, contract or tort damages, including without limitation, claims that were or could have been asserted in, the Action or Dispute.

8.2     Except as expressly provided herein, all rights under Section 1542 of the California Civil Code are expressly waived by the Parties, who have read Section 1542 of the California Civil Code, and understand that it provides as follows:

> **A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS THAT THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE AND THAT, IF KNOWN BY HIM OR HER, WOULD HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR OR RELEASED PARTY.**

The Parties expressly waive and relinquish every right or benefit they may have under Section 1542 of the California Civil Code arising out of or related to the facts, transactions, or occurrences alleged in the Dispute to the fullest extent possible. In connection with this waiver, the Parties acknowledge that they are aware that facts may hereafter be discovered in addition to or different from those now known or believed to be true with respect to this release, but that it is the intention of the Parties to hereby fully, finally, and forever release and discharge each other, and thus this release shall remain in effect as a full and complete release notwithstanding the later discovery or existence of any such additional or different facts.

9.     **MUTUAL REPRESENTATIONS AND WARRANTIES**

Each of the Parties to this Agreement represents, warrants, and agrees as follows:

9.1     Each Party has received independent legal advice from their attorneys with respect to the rights, obligations, and advisability of entering into the settlement pursuant to this Agreement and with respect to the rights, obligations, and advisability of executing this Agreement. Each Party hereto declares that it has fully reviewed this Agreement prior to signing it, knows and understands its contents, and that it has executed this Agreement voluntarily.

9.2     Each Party to this Agreement has made such investigation of the facts pertaining to this settlement and this Agreement and of all the matters pertaining thereto as it deems necessary.

9.3     Each person executing this Agreement on behalf of the respective Parties warrants that he, she, or it is empowered to do so and thereby binds his, her, or its respective Party.

9.4     Each person executing this Agreement on behalf of the respective Parties warrants that he, she, or it has not heretofore assigned, transferred, or granted, or purported to assign, transfer, or grant, any of the claims, demands, and cause or causes of action disposed of herein.

9.5     Each Party acknowledges that no other person, nor any attorney of any other person, has made any promise, representation, or warranty whatsoever, expressed or implied, not contained herein, concerning the subject matter hereof, to induce the Parties to

execute or authorize the execution of this Agreement, and acknowledges that it has not executed or authorized the execution of this Agreement in reliance upon any such promise, representation or warranty not contained herein. No Party relies upon any statement of any other Party in executing this Agreement, except as expressly stated herein.

9.6    This Agreement effects the settlement of claims which are denied and contested, and nothing contained herein shall be construed as an admission by any Party hereto of any liability of any kind to any other party. Each of the Parties hereto denies any liability in connection with any claim and intends merely to avoid litigation and buy its peace. This Agreement shall not be admissible as evidence in any proceeding other than a proceeding to enforce an obligation of a Party hereto.

9.7    NMC represents and warrants, and the Receiver has no information to the contrary, that the financial records it has submitted to the Receiver are true and accurate. NMC further represents that it has accurately disclosed its present financial condition to the Receiver and has not transferred assets for the purpose of reducing their assets available for settlement.

10.    **MISCELLANEOUS**

10.1    This Agreement shall be deemed to have been executed and delivered within the State of California, and the rights and obligations of the Parties hereto shall be construed and enforced in accordance with and governed by the laws of the State of California without regard for any conflict of law principles.

10.2    Except as provided herein, each Party shall bear its own attorneys' fees and costs incurred up to and including the preparation, execution and delivery of this Agreement. In the event of a breach of this Agreement, in addition to all available remedies the breaching Party will be responsible to the non-breaching Party for all reasonable attorneys' fees and costs incurred by the non-breaching Party to enforce this Agreement.

10.3    This Agreement is the complete and entire agreement and mutual release by and among the Parties with respect to the subject matter hereof and supersedes all prior and contemporaneous oral and written agreement(s), representation(s), negotiation(s), and/or discussion(s). This Agreement shall not be modified by any Party by any oral representation(s) made before or after the Effective Date of this Agreement. This Agreement may be amended or modified only by an agreement in writing signed by the Parties. Any amendment(s) or modification(s) must be in writing and signed by the party or a duly authorized representative of the Party against whom such amendment(s) or modification(s) is/are sought to be enforced.

10.4    This Agreement is binding upon and shall inure to the benefit of the Parties hereto, their respective officers, directors, agents, parents, subsidiaries, shareholders, partners, insurers, heirs, relatives, representatives, affiliates, employees, successors, assigns, and attorneys.

10.5    Each Party has cooperated in the drafting and preparation of this Agreement. Hence, in any construction to be made of the Agreement, the same shall not be construed against any Party.

10.6    The Parties agree, for their respective selves, principals, agents, representatives, employees, attorneys, successors, and assigns, that they will abide by the terms of this Agreement, which terms are meant to be contractual, and further agree that they will do such acts and prepare, execute, file, and/or deliver such documents as may be required in order to carry out the purposes and intent of this Agreement. The Parties to this Agreement shall use their best efforts, including all efforts that may become necessary by order of the Court in the Action or otherwise, to effectuate this Agreement and its terms.

10.7    Any provision of this Agreement that is prohibited or unenforceable in any jurisdiction shall, as to such jurisdiction, be ineffective to the extent of such prohibition or unenforceability without invalidating the remaining provisions hereof, and any such prohibition or unenforceability in any jurisdiction shall (to the full extent permitted by law) not invalidate or render unenforceable such provision in any other jurisdiction.

10.8    The U.S. District Court for the Central District of California shall retain jurisdiction over this Agreement notwithstanding the dismissal of the Action, and this Agreement may be enforced by motion in the Action.

10.9    Any notices required or permitted to be given pursuant to this Agreement shall be given in writing to the Parties and their respective counsel and shall be delivered via email. For purposes of notifying the Receiver, Defendants should notify the following:

>   Thomas W. McNamara
>   Regulatory Resolutions
>   tmcnamara@regulatoryresolutions.com

>   And

>   Andrew M. Greene
>   McNamara Smith LLP
>   agreene@mcnamarallp.com

For purposes of notifying NMC, the Receiver should notify the following:

>   Roman Balanko
>   National Merchant Center, Inc.
>   roman@nationalmerchant.com

>   And

>   Aaron M. May
>   Halpern May Ybarra Gelberg LLP
>   Aaron.may@halpernmay.com

8

EXHIBIT 1
Page 9

This Agreement may be executed in counterparts, and when each Party has signed and delivered at least one such counterpart, each counterpart shall be deemed an original, and, when taken together with other signed counterparts, shall constitute one Agreement, which shall be binding upon and effective as to all Parties. Signatures may be transmitted by facsimile or electronically via PDF and will have the same force and effect as an original.

**READ CAREFULLY BEFORE SIGNING.**

**Thomas W. McNamara, not individually, but solely as Court-appointed Receiver of and on behalf of the Receivership Defendants in *Bureau of Consumer Financial Protection, et al. v. Consumer Advocacy Center Inc., et al.*, U.S.D.C. (C.D. Cal.), Case No. 8:19-cv-01998-MWF (KSx)**

Dated: 2/10, 2023

By: _____
Thomas W. McNamara

**National Merchant Center, Inc.**

Dated: February 07, 2023

By: _____
Roman Balanko
Its CEO

9

EXHIBIT 1
Page 10

**APPROVED AS TO FORM:**

                                                **McNamara Smith LLP**

Dated: February 8, 2023      By: _____
                                                 Andrew M. Greene
                                          Attorneys for Thomas W. McNamara, Court-appointed Receiver

                                          **Halpern May Ybarra Gelberg LLP**

Dated: February 10, 2023      By: _____
                                                 Aaron M. May
                                          Attorneys for National Merchant Center, Inc.

# EXHIBIT A

EXHIBIT 1
Page 12

Logan D. Smith (SBN 212041)
lsmith@mcnamarallp.com
Andrew M. Greene (SBN 167386)
agreene@mcnamarallp.com
Cornelia J. B. Gordon (SBN 320207)
cgordon@mcnamarallp.com
McNamara Smith LLP
655 West Broadway, Suite 900
San Diego, California 92101
Telephone: 619-269-0400
Facsimile:  619-269-0401

*Attorneys for Receiver,*
*Thomas W. McNamara*

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| THOMAS W. MCNAMARA, as the Court-Appointed Receiver for True Count Staffing Inc., d/b/a SL Account Management; Prime Consulting LLC, d/b/a Financial Preparation Services; TAS 2019 LLC d/b/a Trusted Account Services; First Priority LLC; and Horizon Consultants LLC, and their successors, assigns, affiliates, or subsidiaries,<br><br>Plaintiff,<br><br>v.<br><br>NATIONAL MERCHANT CENTER, INC., a California corporation; SHIH-HAO LAI aka JIMMY LAI, an individual; SWIFT PAYMENTS, a California corporation; DOES 1-10; and ROES 1-10,<br><br>Defendants. | Case No. 8:21-cv-01122-MWF (KSx)<br><br>**STIPULATED JUDGMENT**<br><br>JUDGE:   Michael W. Fitzgerald<br>CTRM:    5A<br><br>Related Case:<br>*Bureau of Consumer Financial Protection, et al. v. Consumer Advocacy Center, Inc. d/b/a Premier Student Loan Center, et al.*<br>Central District of California<br>Case No. 8:19-cv-01998-MWF (KSx) |

This Stipulated Judgment is made by and between Defendant and Counter-Complainant National Merchant Center, Inc. ("**NMC**") and Plaintiff and Counter-Defendant Thomas W. McNamara, the Court-appointed receiver in *Bureau of Consumer Financial Protection, et al. v. Consumer Advocacy Center Inc., et al.*, U.S.D.C. (C.D. Cal.), Case No. 8:19-cv-01998-MWF (KSx) ("**Receiver**") as follows:

1. This document constitutes a Stipulated Judgment against NMC and in favor of the Receiver in the amount of Three Hundred Forty Thousand Dollars and 00/100ths Dollars ($340,000.00), plus any accrued interest, less any amounts paid by NMC pursuant to the Settlement Agreement and Mutual Release executed by and between NMC and Receiver (the "**Agreement**"), which terms are incorporated herein by this reference.

2. Receiver or his designee (*e.g.*, the Consumer Financial Protection Bureau ("CFPB")) is permitted to apply for entry of this Stipulated Judgment as set forth in the Agreement. Specifically, Receiver shall not seek entry of this Stipulated Judgment unless NMC defaults under the terms of the Agreement, as set forth more fully therein. Should NMC fail to timely tender the sums due the Receiver as set forth in the Agreement, Receiver or his designee shall provide thirty (30) days' notice after delivery, as described in paragraph 4 below, to NMC at the address(es) set forth below, and provide NMC the opportunity to cure such default. If cure is not made within thirty (30) days, Receiver or his designee shall thereafter be entitled to file and record this Stipulated Judgment ninety-six (96) hours after notifying NMC and its counsel of Receiver's or his designee's intent to do so.

3. NMC waives its right to assert any procedural or substantive defenses and/or objections to the entry of judgment, other than a claim that it has complied with its obligations under this Agreement, or a claim that the Receiver or his designee is not entitled to entry of judgement under the terms of this Agreement.

4. All notices under this Stipulated Judgment shall be in writing and shall be deemed effective on the date of delivery if delivered personally or by overnight mail, or on the third calendar day after mailing if mailed by first class mail, registered or certified, postage prepaid, and shall be addressed as follows or as may be amended by a written communication delivered pursuant to this paragraph:

>To NMC: Aaron M. May
>Halpern May Ybarra Gelberg LLP
>550 S. Hope Street, Suite 2330
>Los Angeles, CA 90071
>Aaron.May@halpernmay.com

>To Receiver: Andrew M. Greene
>McNamara Smith LLP
>655 West Broadway, Suite 900
>San Diego, CA 92101
>agreene@mcnamarallp.com

5. By entering into this Stipulated Judgment, no party to this matter makes any admission as to any issue in this litigation and/or any other matter concerning the parties to this litigation.

6. NMC further agrees that in the event the Receiver designates the CFPB as his designee pursuant to the terms of the Agreement, the CFPB shall have all rights and remedies the Receiver would otherwise have under the Agreement to enter and enforce this Stipulated Judgment.

///
///
///
///
///
///
///
///

IN WITNESS WHEREOF, the parties hereto have executed this Stipulated Judgment on the day and year indicated below.

**Thomas W. McNamara, not individually, but solely as Court-appointed Receiver in *Bureau of Consumer Financial Protection, et al. v. Consumer Advocacy Center Inc., et al.*, U.S.D.C. (C.D. Cal.), Case No. 8:19-cv-01998-MWF (KSx)**

Dated:_____, 2023   By:_____
                               Thomas W. McNamara

**National Merchant Center, Inc.**

Dated: _____, 2023   By:_____
                               Roman Balanko
                               Its CEO

**APPROVED AS TO FORM:**

**McNamara Smith LLP**

Dated: _____, 2023   By:_____
                               Andrew M. Greene
                               Attorneys for Thomas W. McNamara,
                               Court-appointed Receiver

**Halpern May Ybarra Gelberg LLP**

Dated: _____, 2023   By:_____
                               Aaron M. May
                               Attorneys for National Merchant Center, Inc.