**BUREAU OF CONSUMER FINANCIAL PROTECTION**
SARAH PREIS (DC Bar No. 997387)
(admitted *pro hac vice*)
Tel.: (202)-435-9318
Email: sarah.preis@cfpb.gov
JESSE STEWART (NY Bar No. 5145495)
(admitted *pro hac vice*)
Tel.: (202)-435-9641
Email: jesse.stewart@cfpb.gov
N. NATHAN DIMOCK (DC Bar No. 487743)
(admitted *pro hac vice*)
Tel.: (202) 435-9198
Email: nathan.dimock@cfpb.gov
1700 G Street, NW
Washington, DC 20552
Fax: (844) 826-5016
LEANNE E. HARTMANN (CA Bar No. 264787)
(Local Counsel for the Bureau of Consumer Financial Protection)
301 Howard Street, Suite 1200
San Francisco, CA 94105
Email: leanne.hartmann@cfpb.gov/Fax: (415) 844-9788
*Attorneys for Plaintiff the Bureau of Consumer Financial Protection*

\*Additional Counsel for Plaintiffs Listed on Next Page*

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| Bureau of Consumer Financial Protection, et al.,<br><br>    Plaintiffs,<br><br>    v.<br><br>Consumer Advocacy Center Inc., d/b/a Premier Student Loan Center, et al.,<br><br>    Defendants. | CASE NO. 8:19-cv-01998 MWF (KS)<br><br>**REPLY IN SUPPORT OF PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT**<br><br>Court: Hon. Michael W. Fitzgerald<br>Date: April 24, 2023<br>Time: 10:00 am<br>Place: Courtroom 5A |

*Additional Counsel for Plaintiffs Listed Below:

**THE PEOPLE OF THE STATE OF CALIFORNIA**
HYDEE FELDSTEIN SOTO, City Attorney (CA. Bar No. 106866)
CHRISTINA V. TUSAN, Supvr. Assistant City Attorney (CA. Bar No. 192203)
WILLIAM PLETCHER, Deputy City Attorney (CA. Bar No. 212664)
MIGUEL RUIZ, Deputy City Attorney (CA. Bar No. 240387)
Office Of the City Attorney
200 N. Main Street, 500 City Hall East
Los Angeles, CA 90012-4131
Tel.: (213) 473-6908/Fax: (213) 978-8112
Emails: christina.tusan@lacity.org / william.pletcher@lacity.org
*Attorneys for Plaintiff the People of the State of California*

**THE STATE OF MINNESOTA**
EVAN ROMANOFF (Attorney Reg. No. 0398223)
(admitted *pro hac vice*)
Assistant Attorney General
445 Minnesota Street, Suite 1200
St. Paul, MN 55101-2130
Tel.: (651) 728-4126
Email: evan.romanoff@ag.state.mn.us
*Attorney for Plaintiff the State of Minnesota*

**THE STATE OF NORTH CAROLINA**
M. LYNNE WEAVER (N.C. Bar No. 19397)
(admitted *pro hac vice*)
North Carolina Department of Justice
114 W. Edenton Street
Raleigh, NC 27602
Tel.: (919) 716-6000/Fax: (919) 716-6050
Email: lweaver@ncdoj.gov
*Attorney for Plaintiff the State of North Carolina*

# Table of Contents

Table of Authorities…………………………………………………….. v

INTRODUCTION……………………………………………………....1

ARGUMENT ...................................................................................1

I.   The Bureau's statutory funding mechanism is constitutional and offers no reason to deny summary judgment ....................................................1

II.  There is no genuine issue of material fact and summary judgment is appropriate.........................................................................................6

    A. Wen's Opposition relies on improper evidence and therefore fails to raise a genuine issue of material fact……………………………………6

    B. Even crediting Wen's improper evidence, he fails to raise a genuine issue of material fact to avoid summary judgment………………………6

        1.   There is no genuine issue of material fact that the Company collected illegal fees in violation of the TSR…………………………………...6

        2.   There is no genuine issue of material fact that the Company engaged in deception in violation of the TSR and CFPA……………………...7

        3.   There is no genuine issue of material fact that Wen is directly liable for, and substantially assisted in, the Company's violations of the TSR and CFPA…………………………………………………..8

            a.   Wen's liability after June 2017………………………….9

            b.   Wen's liability from November 2015 through June 2017……………………………………………………10

III. The civil money penalties Plaintiffs seek are not constitutionally excessive and are appropriate under the applicable statutes ............................................13

IV. Wen has not rebutted the Bureau's showing that he is liable for $95 million in consumer redress....................................................................................17

V.  Plaintiffs' requested injunctive relief is appropriate.........................................19

1   CONCLUSION ................................................................................................21

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# Table of Authorities

**Cases**

*Anderson v. Liberty Lobby, Inc.*,
  477 U.S. 242 (1986) .........................................................................................7

*Califano v. Yamasaki*,
  442 U.S. 682 (1979) .......................................................................................19

*Campbell v. United States*,
  365 U.S. 85 (1961) .........................................................................................15

*CFPB v. CashCall, Inc.*,
  35 F.4th 734 (9th Cir. 2022)................................................ 9, 10, 12, 18

*CFPB v. CashCall. Inc.*,
  No. 15 C 7522, 2023 WL 2009938 (C.D. Cal. Feb. 10, 2023) ...................... 3, 18

*CFPB v. Consumer First Legal Grp., LLC*,
  6 F.4th 694 (7th Cir. 2021)................................................................. 18, 20

*CFPB v. Ctr. for Excellence in Higher Educ.*,
  No. 19 C 00877, 2022 WL 4182301 (D. Utah Sept. 13, 2022)............................3

*CFPB v. D & D Mktg., Inc.*,
  No. 15 C 9692, 2016 WL 8849698, (C.D. Cal. Nov. 17, 2016) .............. 3, 11, 13

*CFPB v. Daniel A. Rosen, Inc.*,
  No. 21 C 07492, 2022 WL 1514439 (C.D. Cal. Apr. 5, 2022) ................... 11, 13

*CFPB v. Gordon*,
  819 F.3d 1179 (9th Cir. 2016).........................................................................11

*CFPB v. GST Factoring, Inc.*,
  2020 WL 13220063 (C.D. Cal. Dec. 3, 2020).................................................21

*CFPB v. L. Offs. of Crystal Moroney, P.C.*,
  2023 WL 2604254 (2d Cir. Mar. 23, 2023) ................................. 2, 3, 4

*CFPB v. Morgan Drexen, Inc.*,
  60 F. Supp. 3d 1082 (C.D. Cal. 2014)......................................................3

*CFPB v. Nesheiwat*,
  2022 WL 17958636 (9th Cir. Dec. 27, 2022) ........................................ 18, 19, 20

*CFPB v. TransUnion*,
  No. 22 C 1880, 2022 WL 17082529 (N.D. Ill. Nov. 18, 2022) ............................3

*Cincinnati Soap Co. v. United States*,
  301 U.S. 308 (1937) ....................................................................2

*Clinton v. Jones*,
  520 U.S. 681 (1997) ....................................................................4

*Collins v. Yellen*,
  141 S. Ct. 1761 (2021) ..................................................................5

*Community Financial Services Ass'n, Ltd. v. CFPB*,
  51 F.4th 616 (5th Cir. 2022).........................................................3, 4

*Creative Computing v. Getloaded.com LLC*,
  386 F.3d 930 (9th Cir. 2004) ...........................................................20

*Excelsior Coll. v. Frye*,
  345 F. App'x 241 (9th Cir. 2009)........................................................20

*Free Enter. Fund v. Pub. Co. Acct. Oversight Bd.*,
  561 U.S. 477 (2010) ....................................................................5

*FTC v. Com. Planet, Inc.*, 815 F.3d 593 (9th Cir. 2016).................................. 17, 18

*FTC v. Consumer Health Benefits Ass'n*,
  No. 10 C 3551, 2011 WL 13254502 (E.D.N.Y. Oct. 12, 2011) .................. 12, 13

*FTC v. Figgie Int'l, Inc.*,
  994 F.2d 595 (9th Cir. 1993)............................................................7

*FTC v. Gill*,
  71 F. Supp. 2d 1030 (C.D. Cal. 1999) ...................................................8

*FTC v. Grant Connect, LLC*,
  763 F.3d 1094 (9th Cir. 2014) .................................................................19

*FTC v. John Beck Amazing Profits LLC*,
  888 F.Supp.2d 1006 (C.D. Cal. 2012) ....................................................21

*FTC v. Mortgage Relief Advocates LLC*,
  No. 14 C 5434, 2015 WL 11257575 (C.D. Ca. July 1, 2015) ...............20

*FTC v. Nudge, LLC*,
  No. 19 C 00867, 2021 WL 3145700 (D. Utah July 26, 2021) ...................... 11, 13

*FTC v. Publ'g Clearing House, Inc.*,
  104 F.3d 1168 (9th Cir. 1997) .................................................. 11, 12, 16

*FTC v. Stefanchik*,
  559 F.3d 924 (9th Cir. 2009) .....................................................................7

*Great-West Life & Annuity Ins. Co. v. Knudson*,
  534 U.S. 204 (2002) ...............................................................................18

*Horne v. Dep't of Agric.*,
  569 U.S. 513 (2013) ...............................................................................14

*Horne v. U.S. Dep't of Agric.*,
  673 F.3d 1071 (9th Cir. 2012) ................................................................13

*In re Sanctuary Belize Litig.*,
  2019 WL 1934673 (D. Md. Apr. 30, 2019) ...........................................12

*Lamb-Weston, Inc. v. McCain Foods, Ltd.*,
  941 F.2d 970 (9th Cir. 1991) ..................................................................19

*Litton Indus., Inc. v. FTC*,
  676 F.2d 364 (9th Cir. 1982) ..................................................................19

*Liu v. SEC*,
  140 S. Ct. 1936 (2020) ..................................................................... 1, 17

REPLY IN SUPPORT OF PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT

*Lockyer v. Mirant Corp.*,
   398 F.3d 1098 (9th Cir. 2005) ..................................................................3

*Nationwide Life Ins. Co. v. Richards*,
   541 F.3d 903 (9th Cir. 2008) ................................................................16

*OPM v. Richmond*,
   496 U.S. 414 (1990) ...............................................................................2

*People ex rel. Feuer v. Superior Ct. (Cahuenga's the Spot)*,
   234 Cal.App.4th 1360 (2015) ...............................................................17

*PHH Corp. v. CFPB*,
   881 F.3d 75 (D.C. Cir. 2018)..............................................................2, 3

*Resort Car Rental System, Inc. v. FTC*,
   518 F.2d 962 (9th Cir. 1975) ................................................................8

*SEC v. Murphy*,
   50 F.4th 832 (9th Cir. 2022) ......................................................... 13, 14

*Seila Law LLC v. CFPB*,
   140 S. Ct. 2183 (2020) .......................................................................2, 4

*State v. Alpine Air Prod., Inc.*,
   490 N.W.2d 888 (Minn. App. 1992) ....................................................17

*United States v. Alexander*,
   106 F.3d 874 (9th Cir. 1997) ..............................................................16

*United States v. Bajakajian*,
   524 U.S. 321 (1998) .............................................................................13

*United States v. Mackby*,
   221 F. Supp. 2d 1106 (N.D. Cal. 2002).............................................13

*Villiarimo v. Aloha Island Air, Inc.*,
   281 F.3d 1054 (9th Cir. 2002) ............................................................11

REPLY IN SUPPORT OF PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT

**Statutes**

1 Stat. 232 ................................................................................................................2

12 U.S.C. § 16 ..........................................................................................................2

12 U.S.C. § 1755 ......................................................................................................2

12 U.S.C. § 243 ........................................................................................................2

12 U.S.C. § 4516 ......................................................................................................3

12 U.S.C. § 5491(a) ..................................................................................................4

12 U.S.C. § 5497(a) ...............................................................................................2, 4

12 U.S.C. § 5536(a)(3) ...........................................................................................13

12 U.S.C. § 5565(a)(1), (2)(B)-(C), (E) ................................................................17

12 U.S.C. § 5565(c) ........................................................................................... 14, 15

12 U.S.C. § 1815(d) .................................................................................................3

12 U.S.C. § 1820(e) .................................................................................................3

12 U.S.C. § 5481(12), (14) ....................................................................................16

12 U.S.C. § 5538(a) ...............................................................................................16

12 U.S.C. § 5561(5) ...............................................................................................16

12 U.S.C. § 5496(a)-(b), (c)(2) ................................................................................4

28 U.S.C. § 1746 ......................................................................................................6

31 U.S.C. § 1349(a) .................................................................................................6

31 U.S.C. § 1350 ......................................................................................................6

**Other Authorities**

Cal. Bus. & Prof. Code § 17206 ............................................................................17

**Regulations**

12 C.F.R. § 1015.5(a)............................................................................................16

16 C.F.R. § 310.4(a)(5)(i)(A), (B) ..........................................................................7

16 C.F.R. § 310.4(a)(5)(ii) ......................................................................................7

16 C.F.R. § 310.4(a)(5)(ii)(C)..................................................................................7

REPLY IN SUPPORT OF PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT

**Constitutional Provisions**

U.S. Const. Art. I, § 9, cl. 7.............................................................................2

**INTRODUCTION**

Wen's opposition (Opposition) to Plaintiffs' motion for partial summary judgment (Motion) raises a laundry list of unavailing arguments that provide no basis to deny Plaintiffs' Motion. Wen's Appropriations Clause argument is meritless and, as the Second Circuit recently observed, finds no support in the text of the Constitution or in Supreme Court precedent. Wen also asserts that there are genuine issues of material fact that preclude summary judgment, but primarily relies on his self-serving and uncorroborated declaration, which is not signed under penalty of perjury and does not create a genuine issue of material fact. But even crediting the deficient declaration, Wen fails to create a genuine issue of material fact as to his liability from November 5, 2015, through October 23, 2019. Finally, contrary to Wen's contentions, the civil money penalties authorized by the Consumer Financial Protection Act (CFPA) and state law are not unconstitutionally excessive; the redress Plaintiffs seek is appropriate and nothing in *Liu v. SEC*, 140 S. Ct. 1936 (2020), provides otherwise; and the injunctive relief requested in the Motion and proposed order is justified. Therefore, Plaintiffs respectfully request that the Court grant the Motion.

**ARGUMENT**

**I.     The Bureau's statutory funding mechanism is constitutional and offers no reason to deny summary judgment.**

Wen first contends that the Court should deny Plaintiffs' motion because the mechanism Congress used to fund the Bureau "violates the Appropriations Clause" and its underlying "separation of powers principle[s]." Opp'n at 8–13. This challenge is meritless, and any purported constitutional defect with the Bureau's funding mechanism would not be grounds to dismiss this action in any event.

The Appropriations Clause provides that "[n]o Money shall be drawn from the Treasury, but in Consequence of Appropriations made by Law." U.S. Const.

Art. I, § 9, cl. 7. As the Supreme Court has long emphasized, the "command of the
Appropriations Clause" is "straightforward and explicit": "'It means simply that no
money can be paid out of the Treasury unless it has been appropriated by an Act of
Congress.'" *OPM v. Richmond*, 496 U.S. 414, 424 (1990) (quoting *Cincinnati
Soap Co. v. United States*, 301 U.S. 308, 321 (1937)). "[I]n other words, the
payment of money from the Treasury must be authorized by a statute." *Id.*

The Bureau's funding is so authorized. The CFPA authorizes the Bureau
Director to request a transfer "from the combined earnings of the Federal Reserve
System" of an "amount," up to an inflation-adjusted cap, that the Director
"determine[s] . . . to be reasonably necessary to carry out the authorities of the
Bureau." 12 U.S.C. § 5497(a)(1), (2). As the Second Circuit recently concluded,
"[b]ecause the CFPB's funding structure was authorized by Congress and bound
by specific statutory provisions, . . . [it] does not offend the Appropriations
Clause." *CFPB v. L. Offs. of Crystal Moroney, P.C.*, -- F.4th --, 2023 WL 2604254,
at *4 (2d Cir. Mar. 23, 2023).

Historical practice confirms that Congress's choice to fund the Bureau
through a standing appropriation in the Bureau's organic statute is constitutional.
Since the Founding Era, Congress has chosen to fund important programs through
sources other than annual spending bills. *See, e.g.*, 1 Stat. 232 (1792) (funding the
Post Office through postage rates). Congress has also long "create[d] governmental
institutions reliant on fees, assessments, or investments rather than the ordinary
appropriations process," and courts have recognized that such mechanisms are
"consistent with the Appropriations Clause." *PHH Corp. v. CFPB*, 881 F.3d 75, 95
(D.C. Cir. 2018) (en banc), *abrogated in part on other grounds by Seila Law LLC
v. CFPB*, 140 S. Ct. 2183 (2020). Today, there are numerous such agencies. *See,
e.g.*, 12 U.S.C. § 16 (Office of Comptroller of Currency); *id.* § 243 (Federal
Reserve Board); *id.* § 1755 (National Credit Union Administration); *id.* §§

1815(d), 1820(e) (Federal Deposit Insurance Corporation); *id.* § 4516 (Federal

Housing Finance Agency).

Ignoring this longstanding precedent and historical practice, Wen bases his constitutional argument entirely on the Fifth Circuit's outlier decision in *Community Financial Services Ass'n, Ltd. v. CFPB* (*CFSA*), 51 F.4th 616 (5th Cir. 2022)—which the Supreme Court will review next Term.[1] But *every* other court to consider the question, save the Fifth Circuit, has held that Congress didn't violate the Appropriations Clause when it passed a statute authorizing the Bureau to spend money from a specified source for specified purposes.[2]

Wen also fails to grapple with how badly mistaken the Fifth Circuit was in *CFSA*. As the Second Circuit recently recognized, *CFSA*'s reasoning and conclusion "find no support" "in Supreme Court precedent," "in the Constitution's text," or "in the history of the Appropriations Clause." *L. Offs. of Crystal Moroney*, 2023 WL 2604254, at *5.

---

[1] In a footnote, Wen alternately requests (Opp'n at 9 n.2) a stay until the Supreme Court resolves *CFSA*—a delay that could stretch until June of 2024. Wen does not even attempt to demonstrate that a stay is justified. *See Lockyer v. Mirant Corp.*, 398 F.3d 1098, 1110 (9th Cir. 2005) (setting forth the factors a court must consider before staying litigation). It would not be. A stay would set back the final resolution of this already-three-year-old case, prejudicing Plaintiffs. Wen therefore "must make out a clear case of hardship or inequity in being required to go forward." *Id.* at 1109. Wen has not done so. *See id.* at 1112 ("being required to defend a suit, without more, does not constitute a 'clear case of hardship or inequity.'").

[2] *See, e.g.*, *L. Offs. of Crystal Moroney*, 2023 WL 2604254, at *4–6; *PHH Corp.*, 881 F.3d at 95–96; *CFPB v. CashCall. Inc.*, No. 15-cv-7522-JFW, 2023 WL 2009938, at *3 (C.D. Cal. Feb. 10, 2023); *CFPB v. TransUnion*, No. 1:22-cv-1880, 2022 WL 17082529, at *5 (N.D. Ill. Nov. 18, 2022); *CFPB v. Ctr. for Excellence in Higher Educ.*, No. 2:19-cv-00877, 2022 WL 4182301, at *6 (D. Utah Sept. 13, 2022); *CFPB v. D & D Mktg., Inc.*, No. 2:15-cv-9692-PSG, 2016 WL 8849698, at *5 (C.D. Cal. Nov. 17, 2016); *CFPB v. Morgan Drexen, Inc*., 60 F. Supp. 3d 1082, 1089 (C.D. Cal. 2014).

In particular, the Fifth Circuit erred in concluding that Congress has somehow conceded "indirect control" over the Bureau's funding because it comes from the Federal Reserve. Opp'n at 9–10 (quoting *CFSA*, 51 F.4th at 638–39). The Bureau is part of the Federal Reserve System, 12 U.S.C. § 5491(a), and draws its funds from the combined earnings of the System, *id.* § 5497(a). The Federal Reserve Board is responsible for transferring the funds to the Bureau, but that role is purely ministerial and in no way insulates the Bureau from congressional control. Congress is free to modify the Bureau's funding at any time by simply passing a statute. The location of those funds within the Federal Reserve—rather than in a Treasury account—does not somehow strip Congress of its plenary authority over the Bureau's funding. Nor does it detract from the numerous mechanisms the CFPA gives for Congress to oversee the Bureau's spending.[3] *See* 12 U.S.C. §§ 5496(a)-(b), (c)(2), 5497(a)(5), (e)(4) (requiring audits, reports, and appearances before Congress concerning Bureau spending).

More to the point, these concerns are irrelevant to the Appropriations Clause analysis. As the Second Circuit recently observed, "[n]othing in the Constitution . . . requires that agency appropriations . . . be drawn from a particular 'source.'" *L. Offs. of Crystal Moroney*, 2023 WL 2604254, at *5. "Certainly, 'if the Framers of the Constitution had thought it necessary to' impose" such a limit, "'they would have' done so." *Id.* (quoting *Clinton v. Jones*, 520 U.S. 681, 706 (1997)).

Finally, even if this Court agreed with the Fifth Circuit that there is a

---

[3] In his opposition, Wen quotes the Supreme Court's discussion of the Bureau's funding in *Seila Law*. *See* Opp'n at 10 (quoting *Seila Law*, 140 S. Ct. at 2204). In that discussion, however, the Court only expressed concerns over the *Executive*'s ability to control the Bureau—not Congress's. The Court said nothing to suggest the Bureau's funding is inconsistent with the Appropriations Clause or otherwise problematic on its own. To the contrary, the Court emphasized that "the Director's insulation from removal" was "[t]he only constitutional defect we have identified in the CFPB's structure." *Id.* at 2209 (plurality op.).

1  constitutional defect in the Bureau's statutory funding mechanism—and disagreed

2  with every other court to consider the question—that still would not justify

3  denying the pending summary judgment motion or dismissing any portion of this

4  case, as Wen suggests. *See* Opp'n at 10, 12–13. To begin, Wen does not explain

5  how any defect with the *Bureau*'s funding would preclude the *state* Plaintiffs from

6  pursuing their TSR and state-law claims. *See* Mot. at 10-27. It would not, so

7  summary judgment for the state Plaintiffs on those counts would remain

8  appropriate.

9          Even as to the Bureau, Wen would not be entitled to the relief he seeks. If

10 the Court were concerned about specific aspects of the Bureau's funding

11 mechanism—for example, the provision requiring the Bureau to maintain an

12 account at a Federal Reserve bank, *see* Opp'n at 10—then the appropriate remedy

13 would be to simply hold the problematic provisions invalid while leaving the rest

14 of the funding mechanism in place, *see Free Enter. Fund v. Pub. Co. Acct.*

15 *Oversight Bd.*, 561 U.S. 477, 508 (2010). And even if any defective provision were

16 not severable from the rest of the funding mechanism, Wen still has not established

17 entitlement to the drastic remedy he seeks. Although Wen claims he was "harmed"

18 by the Bureau's funding mechanism, he has not demonstrated that the Bureau

19 would have acted differently had it been funded by (what Wen would consider to

20 be) a "valid" appropriation. *See Collins v. Yellen*, 141 S. Ct. 1761, 1789 (2021)

21 (holding that a party can obtain relief because of an agency official's

22 unconstitutional insulation from removal if the party can show that the removal

23 restriction itself "inflicted harm"); *id.* at 1801–02 (Kagan, J., concurring in part)

24 ("agree[ing]" with the majority that a party must show that the unconstitutional

25 provision actually "affected the complained-of decision"). Finally, the remedy

26 Wen seeks—dismissal—is inconsistent with those Congress has established for

27 unauthorized Executive Branch spending. When such violations occur, Congress

28

has not authorized the unwinding of otherwise-valid government actions. *See*
31 U.S.C. §§ 1349(a), 1350. For these reasons, Wen's constitutional challenge to
the Bureau's funding mechanism—even if accepted—provides no reason to deny
Plaintiffs' summary judgment motion.

## II.   There is no genuine issue of material fact and summary judgment is appropriate.

Wen also asserts that there are genuine issues of material fact to preclude
summary judgment. Opp'n at 17-21. As set forth in the Motion and below, Wen's
arguments fail.

### A. Wen's Opposition relies on improper evidence and therefore fails to raise a genuine issue of material fact.

Wen relies extensively on two declarations in his attempt to create a genuine
dispute as to material facts: his own declaration and the declaration of Kenneth Hu,
Def.'s Ex. 52. As set forth in Plaintiffs' Evidentiary Objections submitted with this
Reply, these declarations should be stricken or disregarded by the Court for
noncompliance with 28 U.S.C. § 1746.[4]

### B. Even crediting Wen's improper evidence, he fails to raise a genuine issue of material fact to avoid summary judgment.

#### 1.   There is no genuine issue of material fact that the Company collected illegal fees in violation of the TSR.

The Company charged illegal fees in violation of the TSR from November 5,
2015, to October 23, 2019, as shown by the undisputed facts. *See, e.g.*, UF 20, 61,
104-16, 169, 212-13. Wen acknowledges that the Company collected advance fees
and does not contest the Company's liability for charging advance fees. *See* Wen
Decl. ¶ 88; Opp'n at 17-21. There is therefore no genuine issue that the Company

---

[4] Wen also relies on other improper evidence, as further set forth in Plaintiffs'
Evidentiary Objections, filed with this Reply.

violated the advance fee ban. *See* 16 C.F.R. § 310.4(a)(5)(i)(A), (B); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986). To the extent the Company used RAM, AMP, and TAS to hold consumer fees, Wen does not dispute that the Company never made payments to creditors on behalf of consumers.[5] UF 119. The Company thus violated the advance fee ban by collecting fees through those companies. *See* 16 C.F.R. § 310.4(a)(5)(ii) (permitting a debt relief provider to request or require consumers "to place funds in an account to be used for the debt relief provider's fees *and* for payments to creditors or debt collectors in connection with the renegotiation, settlement, reduction, or other alteration of the terms of payment or other terms of a debt.") (emphasis added); *see also* Telemarketing Sales Rule, 75 Fed. Reg. 48458-01,48490 n. 444 (Aug. 10, 2010).

### 2. There is no genuine issue of material fact that the Company engaged in deception in violation of the TSR and CFPA.

Wen does not dispute that the Company engaged in deception. UF 74-91, 98-103, 123-134; Opp'n at 17-21. Rather, Wen contends that deception did not occur in every case. UF 74, 76, 78-79, 83-84, 86, 89, 98-100, 102-103, 129, 131. But Plaintiffs need not prove that all consumers were deceived. *See FTC v. Stefanchik*, 559 F.3d 924, 929 (9th Cir. 2009); *FTC v. Figgie Int'l, Inc.*, 994 F.2d 595, 605-06 (9th Cir. 1993).

Further, the evidence Wen offers to support his contention that not all consumers were deceived does nothing to rebut Plaintiffs' evidence. Most of the evidence Wen cites dates to practices the Company purportedly implemented in

---

[5] Further, RAM, AMP, and TAS had very limited roles, collecting less than $3.2 million of the $95 million collected from consumers. UF 122; Wen Decl. ¶¶ 119, 123-124; Pls.' Ex. 12 (Heidari Decl.) ¶¶ 14-15. Further, TAS was not independent of the Company, *see* UF 132, 176, 178-86, 192-95, thus providing an additional reason why the fees it collected violated the TSR. *See* 16 C.F.R. § 310.4(a)(5)(ii)(C).

September 2019 or later. UF 74, 76, 78-79, 86, 89, 98, 129, 131; Def.'s Ex. 26 ¶ 4, 14; Wen Decl. ¶¶ 189-92. Just a month later, the Receiver took control of the Company and concluded it still could not be operated lawfully and profitably.[6] Pls.' Ex. 89 at 1336. Regardless, none of the evidence Wen cites establishes that the Company cured any prior sales misrepresentations. *See Resort Car Rental System, Inc. v. FTC*, 518 F.2d 962, 964 (9th Cir. 1975) (FTC Act violated if advertising "induces the first contact through deception, even if the buyer later becomes fully informed before entering the contract."). And to the extent that Wen cites to evidence suggesting that some consumers were satisfied, *see* Def.'s Ex. 26 ¶¶ 10-13, he cites no evidence showing that the Company adequately explained any prior misrepresentations to those consumers. *See Resort Car Rental*, 518 F.2d at 964. Regardless, some satisfied customers is not a defense to Plaintiffs' claims of deception. *See FTC v. Gill*, 71 F. Supp. 2d 1030, 1049 n. 21 (C.D. Cal. 1999) (finding even satisfied customers are injured when that satisfaction arises out of defendants' illegal practices), *aff'd* 265 F.3d 944 (9th Cir. 2001)

### 3. There is no genuine issue of material fact that Wen is directly liable for, and substantially assisted in, the Company's violations of the TSR and CFPA.

As set forth in the Motion, "[u]nder the CFPA and TSR, an individual may be liable for conduct related to corporate violations of the CFPA and the TSR where '(1) he participated directly in the deceptive acts or had the authority to control them and (2) he had knowledge of the misrepresentations, was recklessly indifferent to the truth or falsity of the misrepresentation, or was aware of a high probability of fraud along with an intentional avoidance of the truth.'" Mot. at 17:25-18:8. "Under the TSR, a person may be liable for substantially assisting any

---

[6] Indeed, the summary judgment record shows that misrepresentations continued in the days immediately before the TRO. *See* Pls.' Ex. 13.4-.5.

seller or telemarketer when that person knows or consciously avoids knowing that the seller or telemarketer is engaged in any act or practice that violates the TSR." Mot. at 21:4-8. Under the CFPA, "it is unlawful for 'any person to knowingly or recklessly provide substantial assistance to a covered person' engaging in unfair, deceptive, or abusive acts or practices." Mot. at 21:8-12. The evidence shows that Wen's conduct meets these standards.

### a. Wen's liability after June 2017.

There is no genuine issue of material fact that Wen is liable directly and for substantially assisting the Company's violations since at least July 2017, based on his undisputed ownership and involvement in the Company and his actual knowledge of, or reckless indifference to, the illegal conduct. Wen does not dispute that he was directly participating in the Company's affairs and aware of or recklessly indifferent to the Company's illegal activity by July 2017, at the latest. Wen controlled True Count, owned at least 47.5 percent of CAC, and controlled Prime with Kim. UF 5-6, 8, 17, 139. Wen regularly participated in the Company's activities by July 2017, including preparing "numerous compliance memos" relating to Company sales and processing. *See* Wen Decl. ¶¶ 68, 147; Def.'s Ex. 37. In July 2017, Wen was involved in engaging counsel experienced with the student loan industry. *See* Wen Decl. ¶¶82-83; Def.'s Ex. 11. Also in July 2017, Wen responded to an email from that counsel warning that the Company's "model should be done no-advance fee" and "IMPORTANTLY: you are on the hook (liable) for any marketing misrepresentations that your sales representatives make." Def.'s Ex. 12; UF 173. Upon engaging such counsel for CAC, and as CAC's professed general counsel, *see* Def.'s Ex. 1, Wen was or should have been aware of the requirements of the TSR and CFPA. *See CFPB v. CashCall, Inc.*, 35 F.4th 734, 749 (9th Cir. 2022) (illegal activity contrary to advice of counsel was reckless).

Wen's communications with counsel show his actual awareness, in early February 2018 at the latest, that the TSR advance fee ban applied to the Company. Def.'s Exs. 13-14. Wen admits that by late 2017 or early 2018, he knew employees were adding dependents to consumers' actual family sizes and listing married consumers as single when offering or performing the Company's services. UF 154, 156, 160; Wen Decl. ¶¶ 125, 131. Wen does not dispute that he agreed that the Company should use numerous fictitious names to dilute the number of consumer complaints against it, he responded to consumer complaints and inquiries from law enforcement, he knew that CAC had negative online reviews, and he helped retain a reputation management company to "develop a positive online presence." UF 161-163, 166. Although Wen asserts that he sought to engage counsel and bring the Company into compliance, *see, e.g.*, Wen Decl. ¶¶ 175-187, Wen does not dispute that the Company continued charging illegal advance fees and engaging in deception until October 2019. *See supra*, Section II(B)(1)-(2). Thus, the summary judgment record shows there is no genuine issue of material fact as to Wen's liability starting in June 2017. *See CashCall, Inc.*, 35 F.4th at 749.

**b. Wen's liability from November 2015 through June 2017.**

There is no genuine issue of material fact that Wen is liable directly and for substantially assisting the Company's violations starting in November 2015, based on his undisputed ownership and involvement in the Company and reckless indifference to the illegal conduct. In an attempt to avoid liability, Wen nonetheless tries to claim "limited knowledge" of the Company's business practices prior to June 2017, *see* Wen Decl. ¶¶ 20-66. But Wen's self-serving and conclusory declaration is contradicted by other evidence, including Wen's own, *see, e.g.*, Def.'s Ex. 1 (Wen claiming to be CAC's general counsel in November 2015), and therefore does not create a genuine issue of material fact as to his

degree of knowledge and control.[7] *See CFPB v. Gordon*, 819 F.3d 1179, 1194 (9th Cir. 2016) (conclusory and self-serving affidavit insufficient to raise "triable issue" where it lacks "detailed facts and any supporting evidence") (citation omitted); *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1061 (9th Cir. 2002) ("this court has refused to find a 'genuine issue' where the only evidence presented is 'uncorroborated and self-serving' testimony") (citation omitted). But even crediting Wen's declaration, Wen fails to create a genuine issue of material fact.

By his own admission, Wen had sufficient control, involvement in the Company, and relevant knowledge to be liable. A person's role and authority within a company can demonstrate the requisite control and level of knowledge for direct liability. *See FTC v. Publ'g Clearing House, Inc.*, 104 F.3d 1168, 1170-71 (9th Cir. 1997). With respect to substantial assistance, the plaintiff need show "only . . . more than causal or incidental assistance" but "not a direct connection between the assistance and the [underlying law] violations." *CFPB v. Daniel A. Rosen, Inc.*, No. 2:21-cv-07492-VAP-(JDEx), 2022 WL 1514439, at *4 (C.D. Cal. Apr. 5, 2022); *see also D & D Mktg.*, 2016 WL 8849698, at *11-12 (similar standard under CFPA). As for the degree of knowledge for substantial assistance, deliberately avoiding information to ensure ignorance of TSR violations is ineffective for avoiding liability and "[k]nowledge or conscious avoidance of knowledge may be inferred when the person providing assistance receives complaints about violations." *FTC v. Nudge, LLC*, No. 2:19-cv-00867-DBB-DAO, 2021 WL 3145700, at *5 (D. Utah July 26, 2021) (citation omitted). For example, recklessness may be found when individuals oversee activities like reviewing consumer complaints, cancellation and refund practices, and training. *See FTC v. Consumer Health Benefits Ass'n*, No. 10 Civ. 3551 (ILG) (RLM), 2011 WL

---

[7] Further, Wen's declaration should be stricken or disregarded in its entirety as set forth in Plaintiffs' Evidentiary Objections and Section II(A), *supra*.

13254502, at *4 (E.D.N.Y. Oct. 12, 2011).

Here, Wen at least occasionally communicated with Kim about CAC beginning in 2015. UF 140, 142. Wen was an account signatory for eight merchant accounts and bank accounts in CAC's and True Count's names, including for merchant accounts active in 2015 through 2017. UF 143; Pls.' Ex. 12 (Heidari Decl.) App. D. Wen helped establish and maintain the merchant accounts. UF 144. Wen received and had access to information about the Company's merchant account and payment processing transactions, including refunds and chargeback information. UF 145. Wen responded to select consumer complaints and inquiries from law enforcement. UF 166. On November 2, 2015, Wen signed a bank document as CAC's General Counsel. Def.'s Ex. 1. On November 4, 2015, Wen signed a "debt relief service merchant agreement addendum," where he agreed that CAC "is engaged in the business of offering debt relief services" and "understands, currently fully complies with, and during the term of the Agreement, will fully comply with all relevant provisions" of the TSR and CFPA. Pls.' Ex. 7 at 453-54. Since April 2016, Wen was aware of the fees CAC charged and had received a copy of CAC's consumer fee agreement. UF 146; Def.'s Ex. 4. Wen was informed about family size inaccuracies as early as September 2016. UF 154; Pls.' Exs. 62-64. In April 2017, Wen was further informed by the BBB that "[m]ultiple sources state" CAC charged upfront fees and some consumers alleged that CAC falsified information about their household. Pls.' Ex. 65 at 1162-64. Wen does not deny receiving these communications in 2016 and 2017. UF 158. The summary judgment record thus shows there is no genuine issue of material fact as to Wen's liability starting in November 2015. *See CashCall,* 35 F.4th at 749; *Publ'g Clearing House*, 104 F.3d at 1170-71; *In re Sanctuary Belize Litig.*, No. PJM 18-3309, 2019 WL 1934673, at *2 (D. Md. Apr. 30, 2019) (standard for individual liability under the TSR is the same as the standard under the FTC Act).

Finally, even if Wen had created a genuine issue of material fact as to his direct liability before June 2017, which he has not, there is no genuine issue of material fact as to Wen's liability for substantial assistance during this period. Thus, the summary judgment record shows that Wen is liable for substantially assisting the Company's TSR and CFPA violations starting in November, 2015. *See* 12 U.S.C. § 5536(a)(3); *Daniel A. Rosen, Inc.*, 2022 WL 1514439, at *4; *Nudge*, No. 2021 WL 3145700, at *5; *D & D Mktg.*, 2016 WL 8849698, at *11-12; *Consumer Health Benefits*, 2011 WL 13254502, at *4.

### III.    The civil money penalties Plaintiffs seek are not constitutionally excessive and are appropriate under the applicable statutes.

Wen next contends that the penalties that Plaintiffs seek are unconstitutionally excessive under the Eighth Amendment. *See* Opp'n at 13–17. The Court should reject this argument.

"A civil penalty violates the Excessive Fines Clause 'if it is grossly disproportional to the gravity of a defendant's offense.'" *SEC v. Murphy*, 50 F.4th 832, 849 (9th Cir. 2022) (quoting *United States v. Bajakajian*, 524 U.S. 321, 334 (1998)). But, because "judgments about the appropriate punishment for an offense belong in the first instance to the legislature," *Bajakajian*, 524 U.S. at 336, any penalty that "is within the bounds set by the penalty statute" is entitled to "substantial deference," *Murphy*, 50 F.4th at 849. Indeed, "[t]he Ninth Circuit and other federal courts have consistently found that civil penalty awards in which the amount of the award is less than the statutory maximum do not run afoul of the Excessive Fines Clause." *United States v. Mackby*, 221 F. Supp. 2d 1106, 1110 (N.D. Cal. 2002), *aff'd*, 339 F.3d 1013 (9th Cir. 2003); *see also Horne v. U.S. Dep't of Agric.*, 673 F.3d 1071, 1082 (9th Cir. 2012) (explaining that statutory authorization for "steeper fine," "while not dispositive, weighs heavily against finding the fine grossly disproportional to the . . . offense"), *rev'd on other grounds*

*sub nom. Horne v. Dep't of Agric.*, 569 U.S. 513 (2013).

Under the CFPA, "[a]ny person that violates . . . any provision of Federal consumer financial law shall forfeit and pay a civil penalty." 12 U.S.C. § 5565(c)(1). Given Wen's recklessness in violating the law, as well as the magnitude of the resulting consumer loss he caused, the Bureau has requested up to the maximum amount the CFPA authorizes for reckless violations like Wen's— up to $34,065 per day, or approximately $148 million in total.[8] Mot. at 29. Thus, the statutorily authorized penalty the Bureau seeks is not grossly disproportional. *See Murphy*, 50 F.4th at 849–50 (listing relevant factors).

Although Wen invokes the Eighth Amendment, his arguments ultimately concern application of the civil penalty calculation that Congress authorized under 12 U.S.C. § 5565(c). The appropriate amount of the penalty under the statute is one that this Court must determine based on Wen's degree of scienter and the factors set forth in the statute. *See id.* The Bureau's request for a substantial penalty of up to $148 million is authorized by statute after considering the factors set forth in 12 U.S.C. § 5565(c)(3).[9]

First, Wen argues that Plaintiffs have not shown violations "on each of the 1,449 days" for which Plaintiffs seek a penalty. Opp'n at 15:13-17 & n.4. The CFPA provides for a penalty to be charged "for each day during which such violation continues." 12 U.S.C. § 5565(c)(2)(B). The statute does not require a showing that a violation occurred every day. *See id.* The summary judgment record

---

[8] The state Plaintiffs have each requested a $5,000 penalty to be paid from the penalty awarded the Bureau based on their respective state statutes. Mot. at 30-31.
[9] The statutory factors are: (A) the size of financial resources and good faith of the person charged; (B) the gravity of the violation or failure to pay; (C) the severity of the risks to or losses of the consumer, which may take into account the number of products or services sold or provided; (D) the history of previous violations; and (E) such other matters as justice may require. 12 U.S.C. § 5565(c)(3).

shows that there is no genuine issue of material fact that Wen's violations continued for 1,449 days from November 5, 2015, through October 23, 2019. *See* Mot. at 29; Section II, *infra*. The Bureau has therefore identified the correct maximum penalty amount.

Next, Wen argues that the Bureau "has failed to offer any facts or evidence" to support the requested penalty. Opp'n at 15. His assertion is incorrect and Wen has cited no authority that it is the Bureau's burden to prove or disprove any of the statutory factors. Wen is best positioned to offer evidence in the first instance with respect to the factors he contends are applicable. *See Campbell v. United States,* 365 U.S. 85, 96 (1961) (noting that the court does not place the "burden upon a litigant of establishing facts peculiarly within the knowledge of his adversary"). The only arguments Wen raises in his opposition for mitigating the penalty relate to 1) his purported lack of involvement in and knowledge of the illegal conduct, 2) his calculation of the requested penalty as "nearly 100 times the amount of money Wen actually received from the business" (emphasis omitted), 3) his claim that he does "not have money or assets," and 4) his claim that he does not have a "history of previous violations." Opp'n at 16-17. None of these arguments provides a basis for Wen to avoid a substantial penalty.

In seeking to reduce his penalty, Wen argues that he had limited involvement in and knowledge of the illegal conduct. Opp'n at 16. But as set forth in Plaintiffs' Motion and Section II(B), *supra*, Wen was substantially involved in the conduct and acted at least recklessly. Wen also argues that the penalty is not proportionate to his earnings. Opp'n at 16. The statutory factors do not require such proportionality, *see* 12 U.S.C. § 5565(c)(3). Instead, the statute requires consideration of the "risks to or losses of the consumer," *id.,* which here amount to $95 million, *see supra*, Section II(B); UF 212.

Although Wen claims to have limited financial assets, the Court has already

found by clear and convincing evidence that Wen has significant cryptocurrency assets.[10] *See* ECF 418 at 10. That finding is law of the case and Wen has provided no grounds to depart from that finding. *See United States v. Alexander*, 106 F.3d 874, 876 (9th Cir. 1997). Further, when this Court ordered Wen to detail his assets and transfers related to cryptocurrency, Wen refused to provide that information and asserted the Fifth Amendment privilege against self-incrimination. ECF 418 at 3-4. Wen should therefore be precluded from now submitting evidence, in the form of his unsworn declaration, that he has does not have cryptocurrency. *See, e.g.*, *Nationwide Life Ins. Co. v. Richards*, 541 F.3d 903, 910-11 (9th Cir. 2008).

Wen also claims he does not have a history of previous violations, citing only to his declaration. Opp'n. at 16; Wen Decl. ¶ 250. But Wen executed a stipulation in a California bar disciplinary proceeding in which he admitted to collecting fees from a consumer in 2015 through CAC for purported loan modification services that were never rendered. *See* Pls.' Ex. 13.3; Pls.' Ex. 95 at 1403-04. This conduct is similar to Wen's TSR violations in this case and appears to violate Federal consumer financial law. *See* 12 U.S.C. §§ 5481(12), (14), 5538(a), 5561(5); 12 C.F.R. § 1015.5(a). Wen's conclusory and unsworn statement about his history of prior violations, which does not address his California bar disciplinary proceeding, is the sort of "conclusory, self-serving affidavit" that is "insufficient to create a genuine issue of material fact." *See Publ'g Clearing House*, 104 F.3d at 1171.

Finally, Wen does not argue that a penalty of $5,000 for each state Plaintiff is unconstitutionally excessive, nor is there any authority supporting such an

---

[10] As a result, the Court held Wen in contempt on January 6, 2023. ECF 418. As of the date of this submission, Wen has not purged his contempt. *See id.*; ECF 420.

Reply in Support of Plaintiffs' Motion for Partial Summary Judgment

argument.[11] For the foregoing reasons and as set forth in the Motion, there is no genuine issue of material fact as to Wen's liability for a substantial civil money penalty of up to $148 million.

## IV.    Wen has not rebutted the Bureau's showing that he is liable for $95 million in consumer redress.

The Motion established that Wen is liable (jointly and severally with the Company) for $95,057,756.92 in legal restitution, refund of moneys, or damages.[12] *See* Mot. at 31-32. Wen's response does not dispute that this amount is appropriate as a refund of moneys or damages. UF 212-13. Wen argues only that the amount is unwarranted as restitution under *Liu v. SEC*, in which the Supreme Court upheld the SEC's ability to seek disgorgement of profits for securities-law violations but emphasized that such awards must deduct defendants' legitimate business expenses. 140 S. Ct. 1936, 1950 (2020). Wen argues that, under *Liu*, any calculation of restitution based on net revenues as opposed to profits would overstate his unjust gains. *See* Opp'n at 21-25.

Wen's argument is foreclosed by the Ninth Circuit's holding in *CashCall*. The court there held that "restitution may be measured by the full amount lost by

---

[11] Indeed, California law requires penalties of up to $2,500 for each violation, Cal. Bus. & Prof. Code § 17206, Minnesota law provides for up to $25,000 in penalties for each violation, *see State v. Alpine Air Prod., Inc.*, 490 N.W.2d 888, 896 (Minn. App. 1992), and North Carolina law provides for up to $5,000 for each violation, N.C. Gen. Stat. § 75-15.2. Moreover, for California's UCL cause of action, the *amount* of civil penalties are not elements of the cause of action and thus not a basis to deny a motion for summary judgment. *See People ex rel. Feuer v. Superior Ct. (Cahuenga's the Spot)*, 234 Cal.App.4th 1360, 1381-83 (2015).

[12] *See also* 12 U.S.C. § 5565(a)(1), (2)(B)-(C), (E) (specifically authorizing these forms of relief); *FTC v. Com. Planet, Inc.*, 815 F.3d 593, 600-01 (9th Cir. 2016) ("If an individual may be held personally liable for corporate violations of the FTC Act under this test, nothing more need be shown to justify imposition of joint and several liability for the corporation's restitution obligations."), *abrogated on other grounds by AMG Cap. Mgmt., LLC v. FTC*, 141 S. Ct. 1341 (2021).

---

17

consumers"—here, the amount of illegal advance fees the Company took, minus refunds—"rather than [by] a defendant's profits." *CashCall*, 35 F.4th at 751 (brackets and quotation marks omitted). While the court stated that, in a particular case, "[p]erhaps net revenues would overstate [a defendant's] unjust gains," "that was [the defendant's] burden to prove." *Id.* Wen has made no effort to do so here and so has not met his burden.

Wen seeks support in a Seventh Circuit decision that interpreted *Liu* to govern "all categories of equitable relief," including equitable restitution. Opp'n at 23 (quoting *CFPB v. Consumer First Legal Grp., LLC*, 6 F.4th 694, 710 (7th Cir. 2021)). To the extent there is any conflict between that ruling and the Ninth Circuit's decision in *CashCall*, the Ninth Circuit's holding of course controls. But even on its own terms, the Seventh Circuit's decision is inapplicable here because the award that Plaintiffs seek in this case is for *legal*—not equitable—restitution.[13]

Wen also appears to object that he should not have to pay amounts already contributed as restitution by other defendants. *See* Opp'n at 25. But as Plaintiffs

---

[13] "[F]or restitution to lie in equity, the action generally must seek … to restore to the plaintiff *particular funds or property* in the defendant's possession." *Great-West Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204, 214 (2002) (emphasis added). Where a plaintiff instead seeks "a judgment imposing a merely personal liability upon the defendant to pay a sum of money," "the plaintiff's claim [i]s considered legal." *Id.* at 213 (quotation marks omitted); *accord CashCall*, 35 F.4th at 750. Plaintiffs here seek a money judgment imposing personal liability on Wen. Their claim is thus for legal restitution. *See CashCall, Inc.*, 2023 WL 2009938, at *7 ("In this case, the CFPB has continuously sought, what by its nature is, legal restitution."), *appeal pending*, No. 22-55259. Thus, neither *Liu* nor the Seventh Circuit's decision interpreting *Liu* as governing all forms of equitable relief has relevance here. *See CFPB v. Nesheiwat*, No. 21-56052, 2022 WL 17958636, at *2 (9th Cir. Dec. 27, 2022) (holding *Liu* inapplicable because "[t]he district court awarded 'legal restitution'"). For that reason, Wen is also incorrect to suggest that *Liu* means he cannot be held jointly and severally liable. *See* Opp'n at 21-22; *see also Com. Planet*, 815 F.3d at 600-01 (holding that joint-and-several liability was proper for award of legal restitution).

1  have indicated, Mot. at 32 n.11, they are not seeking a double recovery of any
2  amounts they receive or have received through other judgments.

3  **V.  Plaintiffs' requested injunctive relief is appropriate.**

4  　　Finally, Wen argues that the Court should strike all the non-monetary
5  provisions of Plaintiffs' proposed final judgment and order (Proposed Judgment).
6  Wen's argument is without merit. The non-monetary provisions, which include
7  prohibitions on Wen's future conduct and compliance provisions, are within the
8  Court's "considerable discretion," to fashion appropriate injunctive relief, *Lamb-*
9  *Weston, Inc. v. McCain Foods, Ltd.*, 941 F.2d 970, 974 (9th Cir. 1991). Although
10 injunctive relief should not be "more burdensome to the defendant than necessary
11 to provide complete relief to the plaintiffs," *Califano v. Yamasaki*, 442 U.S. 682,
12 702 (1979), a court is "not limited to prohibiting the illegal practice in the precise
13 form in which it is found to have existed in the past," *FTC v. Grant Connect, LLC*,
14 763 F.3d 1094, 1105 (9th Cir. 2014) (quotation omitted). Here, broad injunctive
15 relief is appropriate.

16 　　Section III of the Proposed Judgment, which prohibits Wen from, directly or
17 indirectly, advertising, marketing, promoting, offering for sale, selling, or
18 providing any consumer financial product or service is broad in scope and term by
19 design because Wen's conduct displays a "blatant and utter disregard of the law."
20 *Nesheiwat*, WL 17958636, at *3 (quotation omitted). Courts may grant "fencing
21 in" relief that goes beyond the particular "product or group of products" involved
22 in the violation, particularly where, as here, the defendant's unlawful conduct is
23 "easily transferable" to other markets. *Litton Indus., Inc. v. FTC*, 676 F.2d 364,
24 370-72 (9th Cir. 1982) (quotation omitted). Wen played an essential role in
25 facilitating the Company's illegal conduct, *see* UF 5-8, 15-20, 61, 74-91, 98-119,
26 *supra*, Section II(B); he was aware of the illegal advance fees and took steps to
27 conceal them, *see supra*, Section II(B), UF 154-63, 167-195; he intentionally

28

destroyed evidence after being advised by counsel not to do so, UF 200-07; he

obstructed this litigation by his refusal to respond to or participate in discovery,

ECF 398; and he has displayed contempt for the Court's orders and sought to

conceal his assets, ECF 418. Given Wen's demonstrated willingness to ignore the

law, he presents an ongoing risk to consumers and this Court should close all roads

to future violations by banning Wen from conducting any business relating to any

consumer financial product or service. *See Nesheiwat*, 2022 WL 17958636, at *3;

*see also Excelsior Coll. v. Frye*, 345 F. App'x 241, 244 (9th Cir. 2009) (affirming a

"broad injunction" in light of "willful" conduct); *Creative Computing v.

Getloaded.com LLC*, 386 F.3d 930, 937-38 (9th Cir. 2004) (affirming an

"extraordinarily broad" injunction, including based on "past egregious conduct").[14]

　　Turning to the compliance provisions of the Proposed Judgment, Wen's

objections to those provisions, which include reporting (section XI), recordkeeping

(section XIII), and monitoring (section XVI) requirements, are without merit.[15]

Courts regularly impose these types of provisions to ensure compliance with

provisions of the injunction. *See, e.g., FTC v. Mortgage Relief Advocates LLC*, 14-

cv-5434-MWF, 2015 WL 11257575, at *9 (C.D. Ca. July 1, 2015) (monitoring);

[14] Wen's reliance (Opp'n at 26) on *Consumer First Legal Group, LLC*, 6 F.4th 694
is misplaced. The court found a broad injunction was not necessary to protect
consumers against future harm, including because it determined that the
defendants' conduct was not knowing or reckless. *Id.* at 712-13. As discussed
above, Wen's conduct was knowing and reckless. *See supra*, Section II(B). As for
the remaining conduct provisions of the Proposed Judgment, Sections IV through
VI, Wen provides no explanation for how these provisions, which prohibit him
from violating the law or using consumer information, are inappropriate or impose
any burden on him.
[15] Section XV requires Wen to cooperate with Plaintiffs in connection with this
case, including cooperation to assist Plaintiffs in locating consumers and
determining the amount of their injury. Such cooperation clearly will further
Plaintiffs' efforts to provide relief to consumers affected by Wen's unlawful
conduct.

*see also FTC v. John Beck Amazing Profits LLC*, 888 F.Supp.2d 1006, 1016 (C.D. Cal. 2012) (reporting and recordkeeping). And courts have required these provisions for longer than five years where, as here, the defendant has a history of prior violations. *See, e.g.*, *John Beck Amazing Profits*, 888 F.Supp.2d at 1016 (20 years).[16]

## CONCLUSION

For the foregoing reasons, the Court should enter Plaintiffs' Proposed Judgment.

Dated: April 10, 2023                    Respectfully Submitted,


By: */s/ Jesse Stewart*
Jesse Stewart (NY Bar No. 5145495)
(Admitted *pro hac vice*)
N. Nathan Dimock (DC Bar No. 487743)
(Admitted *pro hac vice*)
*Attorney for Plaintiff Bureau of Consumer Financial Protection*


By: */s/ M. Lynne Weaver*
M. Lynne Weaver (NC Bar No. 19397)
(Admitted *pro hac vice*)
Special Deputy Attorney General
North Carolina Department of Justice
*Attorney for Plaintiff State of North Carolina*

---

[16] For the reasons set forth above, Wen's argument that he cannot turn over his cryptocurrency as part of a judgment are unavailing. *See supra*, Section III. Finally, the Proposed Judgment (paragraph 69) appropriately prohibits Wen from obtaining or retaining any tax benefit because of payments he makes to remedy harm caused to consumers. Courts have ordered similar provisions. *See e.g., CFPB v. GST Factoring, Inc.*, 8:20-cv-01239, 2020 WL 13220063, at *5 (C.D. Cal. Dec. 3, 2020).

By: */s/ Evan Romanoff*
Evan Romanoff (Atty. Reg. No. 398223)
(Admitted *pro hac vice*)
Assistant Attorney General
*Attorney for Plaintiff State of Minnesota*

By: */s/ Christina Tusan*

Christina Tusan
Assistant City Attorney
Office of the City Attorney
Consumer and Workplace
Protection Unit
*Attorney for Plaintiff the People of the State of California*

I, Jesse Stewart, attest that all other signatories listed, and on whose behalf the filing is submitted, concur in the filing's content and have authorized the filing.

*/s/ Jesse Stewart*
Jesse Stewart

## CERTIFICATE OF COMPLIANCE WITH L.R. 11-6.1

The undersigned, counsel of record for Plaintiff the Bureau of Consumer Financial Protection, certifies that this Reply contains 6,918 words, which complies with the word limit of L.R. 11-6.1.

Dated: April 10, 2023

By:    */s/ Jesse Stewart*
Jesse Stewart