**BUREAU OF CONSUMER FINANCIAL PROTECTION**
SARAH PREIS (DC Bar No. 997387)
(admitted *pro hac vice*)
Tel.: (202)-435-9318
Email: sarah.preis@cfpb.gov
JESSE STEWART (NY Bar No. 5145495)
(admitted *pro hac vice*)
Tel.: (202)-435-9641
Email: jesse.stewart@cfpb.gov
N. NATHAN DIMOCK (DC Bar No. 487743)
(admitted *pro hac vice*)
Tel.: (202) 435-9198
Email: nathan.dimock@cfpb.gov
1700 G Street, NW
Washington, DC 20552
Fax: (844) 826-5016
LEANNE E. HARTMANN (CA Bar No. 264787)
(Local Counsel for the Bureau of Consumer Financial Protection)
301 Howard Street, Suite 1200
San Francisco, CA 94105
Email: leanne.hartmann@cfpb.gov/Fax: (415) 844-9788
*Attorneys for Plaintiff the Bureau of Consumer Financial Protection*

*Additional Counsel for Plaintiffs Listed on Next Page*

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| Bureau of Consumer Financial Protection, et al.,<br><br>      Plaintiffs,<br><br>      v.<br><br>Consumer Advocacy Center Inc., d/b/a Premier Student Loan Center, et al.,<br><br>      Defendants. | CASE NO. 8:19-cv-01998 MWF (KS)<br><br>**PLAINTIFFS' CONSOLIDATED RESPONSE TO WEN'S OBJECTIONS TO PORTIONS OF THE NGUYEN AND KIM DECLARATIONS**<br><br>Court:  Hon. Michael W. Fitzgerald<br>Date:   April 24, 2023<br>Time:  10:00 AM<br>Place:  Courtroom 5A |

*Additional Counsel for Plaintiffs Listed Below:

**THE PEOPLE OF THE STATE OF CALIFORNIA**
HYDEE FELDSTEIN SOTO, City Attorney (CA. Bar No. 106866)
CHRISTINA V. TUSAN, Supvr. Assistant City Attorney (CA. Bar No. 192203)
WILLIAM PLETCHER, Deputy City Attorney (CA. Bar. No. 212664)
MIGUEL RUIZ, Deputy City Attorney (CA. Bar No. 240387)
Office Of the City Attorney
200 N. Main Street, 500 City Hall East
Los Angeles, CA 90012-4131
Tel.: (213) 473-6908/Fax: (213) 978-8112
Emails: christina.tusan@lacity.org / william.pletcher@lacity.org
*Attorneys for Plaintiff the People of the State of California*

**THE STATE OF MINNESOTA**
EVAN ROMANOFF (Attorney Reg. No. 0398223)
(admitted *pro hac vice*)
Assistant Attorney General
445 Minnesota Street, Suite 1200
St. Paul, MN 55101-2130
Tel.: (651) 728-4126
Email: evan.romanoff@ag.state.mn.us
*Attorney for Plaintiff the State of Minnesota*

**THE STATE OF NORTH CAROLINA**
M. LYNNE WEAVER (N.C. Bar No. 19397)
(admitted *pro hac vice*)
North Carolina Department of Justice
114 W. Edenton Street
Raleigh, NC 27602
Tel.: (919) 716-6000/Fax: (919) 716-6050
Email: lweaver@ncdoj.gov
*Attorney for Plaintiff the State of North Carolina*

**Plaintiffs' Consolidated Response to Wen's Evidentiary Objections to Portions of the Nguyen and Kim Declarations**

Defendant Wen raises multiple evidentiary objections to portions of the declarations of Albert Kim (ECF 436) and Tuong Nguyen (ECF 438) (Pls.' Exs. 1 & 2, respectively). As set forth below, Wen's hearsay objections are misplaced, and his arguments based on lack of foundation and/or knowledge by the declarant often ignore passages preceding and/or following the objected to statements, which establish the necessary foundation and/or knowledge of the declarant. Therefore, for the reasons stated below, the Court should overrule Wen's evidentiary objections. Plaintiffs address each challenged passage in turn.

## I.   Plaintiffs' Response to Wen's Evidentiary Objections to Portions of the Nguyen Declaration (ECF 438).

| Proffered Evidence: | Objection: | Plaintiffs' Response: |
|---|---|---|
| (1) Nguyen Decl., ¶ 3 at 1:10-12: "Sometime in 2015, Wen reached out to me and asked if I wanted to be part of a student loan document preparation company that he was forming with Kim." | **Fed. R. Evid. 803** <br><br> The declarant's statement as to what was "asked" is inadmissible hearsay. | **Fed. R. Evid. 801(d)(2) Statements That Are Not Hearsay/An Opposing Party Statement** <br><br> Statement of a party opponent that (A) "was made by the party in an individual or representative capacity . . .." <br><br> Here, Wen is a party opponent as to Plaintiffs, the challenged passage is his statement, and Plaintiffs, who are party opponents as to Wen, are offering the statement against him. Therefore, the challenged statement is not hearsay pursuant to Fed. R. Evid. 801(d)(2). |

| (2) Nguyen Decl., ¶ 68 at 9:19-22: "I refused to re-submit the application since it had already been denied. Based on my discussions with Kim, my understanding is that Kim then spoke to Wen about the situation, and that following their conversation, Wen drafted the Letter of Explanation template." | **Fed. R. Evid. 803**<br><br>The declarant's statement as to "discussions" is inadmissible hearsay. The statement as to "my understanding is that Kim then spoke to Wen about the situation, and that following their conversation, Wen drafted the Letter of Explanation template." is double inadmissible hearsay. | **Fed. R. Evid. 801(d)(2) Statements That Are Not Hearsay/An Opposing Party Statement**<br><br>Statement of a party opponent that (A) "was made by the party in an individual or representative capacity . . . or (C) was made by a person whom the party authorized to make a statement on the subject."<br><br>Here, both Wen and Kim are party opponents as to Plaintiffs, the challenged passage constitutes statements of party opponents, and Plaintiffs, who are party opponents as to Wen and Kim, are offering the statement against a party opponent. Therefore, the challenged statement is not hearsay pursuant to Fed. R. Evid. 801(d)(2)(A).<br><br>Additionally, Wen admits that he and Kim were majority partners in the Company's operations. Wen Decl. at ¶ 7. And Wen further purports that for a period of time he authorized and often deferred to Kim in making business decisions and running the Company. Wen Decl. at ¶ 55. To the extent that this is Wen's |

| | | |
|---|---|---|
| | | contention, which Plaintiffs do not concede is true, Wen authorized Kim, his partner, to communicate with Nguyen regarding business operations, which would include the creation of, and reason behind, the Letter of Explanation. Therefore, the statements are not hearsay pursuant to Fed. R. Evid. 801(d)(2)(C). |
| Nguyen Decl., ¶ 74 at 10:20-23: "Kim and Wen were aware that salespeople were making the misrepresentations described above and that it was the Company's practice to submit applications for IDR plans with an inflated family size and to list married clients as single." | **Fed. R. Evid. 602**<br><br>The declarant's statement as to what Wen was "aware" of lacks personal knowledge. Fed. R. Evid. 602 provides: "A witness may testify to a matter only if evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter." | The Nguyen declaration, when read in context, includes statements sufficient to support a finding that Nguyen has personal knowledge of Wen's awareness of misrepresentations by the Company's salespeople. In paragraph 75, Nguyen declares he personally "raised concerns about misrepresentations by salespeople on several occasions during discussions with Kim and Wen about refunds to particular consumers. During those discussions, I told them that the Company should refund the consumer and not pay the salesperson." Then, in the next paragraph, Nguyen explains how Wen reacted to Nguyen having told him about the misrepresentations. In paragraph 76 Nguyen |

| | | declares that "Neither Kim nor Wen indicated to me that they would take any action to stop salespeople from making these kinds of statements, and based on what I observed they never took any action following those discussions." *See, e.g., Barthelemy v. Air Lines Pilots Ass'n*, 897 F.2d 999, 1018 (9th Cir. 1990) (noting that generally "Rule 56(e)'s requirements of personal knowledge and competence to testify . . . may be inferred" if it is clear from the context of the affidavit that the affiant is testifying from personal knowledge). As a result, Nguyen had sufficient personal knowledge of Wen's awareness of the misrepresentations to testify competently pursuant to Fed. R. Evid. 602. |
|---|---|---|
| (4) Nguyen Decl., ¶ 75 at 10"24-27: "I raised concerns about misrepresentations by salespeople on several occasions during discussions with Kim and Wen about refunds to particular consumers. During those discussions, I told them that the Company should refund the consumer and not pay the salesperson." | **Fed. R. Evid. 803**<br><br>The declarant's statement as to discussions and what was told is inadmissible hearsay. | **Fed. R. Evid. 801(d)(2) Statements That Are Not Hearsay/An Opposing Party Statement**<br><br>Statement of a party opponent that (A) "was made by the party in an individual or representative capacity . . .."<br><br>Here, Wen is a party opponent as to Plaintiffs, |

| | | |
|---|---|---|
| | | the challenged passage as to "discussions" with Kim and Wen would include his statement, and Plaintiffs, who are party opponents as to Wen, are offering the statement against him. Therefore, the challenged statement is not hearsay pursuant to Fed. R. Evid. 801(d)(2).<br><br>In addition, the statement is not hearsay because it is not made to prove the truth of the matter asserted, but instead to show the effect it had on the listener. Fed. R. Evid. 801(c)(2). In the following paragraphs, Nguyen explains how Wen reacted to Nguyen having told him about the misrepresentations. In paragraph 76, Nguyen declares that "[n]either Kim nor Wen indicated to me that they would take any action to stop salespeople from making these kinds of statements, and based on what I observed they never took any action following those discussions." |
| (5) Nguyen Decl., ¶ 121 at 16:19-22: "At some point in 2019, I recall discussions with Kim and Wen about forming their own dedicated account provider. They planned to pay Jimmy | **Fed. R. Evid. 803**<br><br>The declarant's statement as to discussions and what was planned is inadmissible hearsay. | **Statements That Are Not Hearsay/An Opposing Party Statement**<br><br>Statement of a party opponent that (A) "was |

| | | |
|---|---|---|
| Lai $1 per month for each client who made a payment through the dedicated account provider." | **Fed. R. Evid. 602**<br><br>The declarant's statement as to what was "planned" lacks personal knowledge.<br><br>Fed. R. Evid. 602 provides: "A witness may testify to a matter only if evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter." | made by the party in an individual or representative capacity . . .."<br><br>Here, Wen is a party opponent as to Plaintiffs, the challenged passage is his statement, and Plaintiffs, who are party opponents as to Wen, are offering the statement against him. Therefore, the challenged statement is not hearsay pursuant to Fed. R. Evid. 801(d)(2).<br><br>Moreover, Nguyen demonstrates personal knowledge in a preceding paragraph. In paragraph 116, Nguyen explains that "[m]y understanding is that First Priority stopped enrolling clients through AMP and RAM. After that time, I recall Kim sharing that the Company couldn't find another dedicated account provider willing to do business with the Company (specifically, True Count)." Then in paragraph 121, he explains the conversations and steps that were taken by Kim and Wen as a result of no longer processing clients through RAM and AMP. In the full passage in paragraph 121, Nguyen provides additional details that are omitted from the portion of paragraph 121 |

that Wen challenges, and which further demonstrate Nguyen's knowledge of the situation: "At some point in 2019, I recall discussions with Kim and Wen about forming their own dedicated account provider. They planned to pay Jimmy Lai $1 per month for each client who made a payment through the dedicated account provider. Up to that point, Lai had worked at National Merchant Center, one of the Company's biggest merchant account providers, and had helped the Company get more processing volume and figure out how to keep chargebacks down." *See, e.g., Barthelemy*, 897 F.2d at 1018 (noting that generally "Rule 56(e)'s requirements of personal knowledge and competence to testify . . . may be inferred" if it is clear from the context of the affidavit that the affiant is testifying from personal knowledge). As a result, Nguyen had sufficient personal knowledge of Kim's and Wen's plan to form their own dedicated account provider to testify competently pursuant to Fed. R. Evid. 602.

## II. Plaintiffs' Response to Wen's Evidentiary Objections to Portions of the Kim Declaration (ECF 436).

| Proffered Evidence: | Objection: | Plaintiffs' Response: |
|---|---|---|
| (2) Kim Decl., ¶ 9, at 2:4-7: "Although Wen was an owner of CAC, he wasn't listed as an owner in corporate registration documents provided to the California Secretary of State. We trusted each other, and we didn't think it was necessary to have him listed too." | **Fed. R. Evid. 602**<br><br>The declarant's statement as to what Wen thought ("we didn't think") lacks personal knowledge.<br>Fed. R. Evid. 602 provides: "A witness may testify to a matter only if evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter." | In his declaration, Kim demonstrates personal knowledge of the Company's ownership structure and Wen was his business partner. *See, e.g.*, Kim Decl. ¶ 2 ("Kaine Wen ("Wen") and I owned Consumer Advocacy Center Inc. ("CAC")." *See also* Pls. Ex. 1.1 (Ex. 1 to Kim Decl.) (copy of ownership agreement between Kim and Wen). Given that Kim was involved in setting up the ownership structure, he would have knowledge of how that structure came about. *See, e.g., Barthelemy*, 897 F.2d at 1018 (noting that generally "Rule 56(e)'s requirements of personal knowledge and competence to testify . . . may be inferred" if it is clear from the context of the affidavit that the affiant is testifying from personal knowledge). As a result, Kim had sufficient personal knowledge of the Company's structure and how that structure came about to testify competently pursuant to Fed. R. Evid. 602. |

| | | |
|---|---|---|
| (3) Kim Decl., ¶ 12 at 2:15-17: "By the time we decided to make True Count the back-end processing company for CAC, we had discussed making it look like CAC and True Count were two separate companies owned by two separate people." | **Fed. R. Evid. 803**<br><br>The declarant's statement as to what was discussed is inadmissible hearsay. | **Fed. R. Evid. 801(d)(2) Statements That Are Not Hearsay/An Opposing Party Statement**<br><br>Statement of a party opponent that (A) "was made by the party in an individual or representative capacity . . .."<br><br>Here, Wen is a party opponent as to Plaintiffs, the challenged passage is his statement, and Plaintiffs, who are party opponents as to Wen, are offering the statement against him. Therefore, the challenged statement is not hearsay pursuant to Fed. R. Evid. 801(d)(2).<br><br>In addition, the statement is not hearsay because it is not made to prove the truth of the matter asserted, but instead to show the effect it had on the listener. Fed. R. Evid. 801(c)(2). In the following paragraphs, Kim explains the steps that he and Wen took as a result of their discussions about CAC and True Count. In paragraph 14, Kim declares: "In March 2018, Wen and I shifted CAC's Processing, Customer Service, and Billing Departments to True Count. As part of this shift, |

| | | we had CAC terminate the employees in its Processing Department, and then we re-hired them to work for True Count." Then, in paragraphs 16-18, Kim further declares that he and Wen shut down CAC and moved its operations to Prime, then recruited Ho to become Prime's owner on paper. |
|---|---|---|
| (4) Kim Decl., ¶ 13 at 2:18-22: "Wen and I learned from talking to other people who had worked in the industry that student-loan debt- relief companies were often structured into more than one company so that if the government came after the front-end sales company, the back-end processing company could keep managing and charging the customers." | **Fed. R. Evid. 602**<br><br>The declarant's statement as to what Wen "learned" lacks personal knowledge. Fed. R. Evid. 602 provides: "A witness may testify to a matter only if evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter." | In his declaration, Kim demonstrates personal knowledge as to what he and Wen learned from talking to other people as he states that he and Wen both spoke to other people, then states what they learned from those people. *See, e.g., Barthelemy*, 897 F.2d at 1018 (noting that generally "Rule 56(e)'s requirements of personal knowledge and competence to testify . . . may be inferred" if it is clear from the context of the affidavit that the affiant is testifying from personal knowledge). |
| (5) Kim Decl., ¶ 18 at 3:6-7: "Although Wen and I owned and controlled Prime, we asked Ho if he would agree to be the owner of Prime on paper, and he did." | **Fed. R. Evid. 803**<br><br>The declarant's statement as to what was asked is inadmissible hearsay. | **Fed. R. Evid. 801(d)(2) Statements That Are Not Hearsay/An Opposing Party Statement**<br><br>Statement of a party opponent that (A) "was made by the party in an individual or representative |

| | | capacity . . .." |
|---|---|---|
| | | Here, Wen is a party opponent as to Plaintiffs, the challenged passage is his statement, and Plaintiffs, who are party opponents as to Wen, are offering the statement against him. Therefore, the challenged statement is not hearsay pursuant to Fed. R. Evid. 801(d)(2). |
| | | In addition, the statement is not hearsay because it is not made to prove the truth of the matter asserted, but instead to show the effect it had on the listener. Fed. R. Evid. 801(c)(2). Specifically, Ho became the owner of Prime on paper. |
| (6) Kim Decl., ¶ 49 at 6:25-28: "49. When the Company began operating, it did not have any policy prohibiting employees from inflating consumers' family size in the course of selling or performing its services, and Wen and I knew our employees were using fake family sizes." | **Fed. R. Evid. 602**<br><br>The declarant's statement as to what Wen "knew" lacks personal knowledge. Fed. R. Evid. 602 provides: "A witness may testify to a matter only if evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter." | Kim demonstrates personal knowledge in the paragraphs surrounding paragraph 49 of his declaration.<br><br>Kim explains how he and Wen discussed the Company's operations. *See, e.g.*, Kim Decl. ¶ 37 ("Wen also communicated about the Company with me and other Company employees in person, through phone calls, by text, and through instant messaging applications like Skype, |

Signal, and iMessage.").

Kim explains how he learned of family size issue. *See, e.g.*, Kim Decl. ¶ 50 ("I learned through consumer complaints and discussions with others at the Company that student loan adjustment applications submitted by the Company on behalf of consumers were sometimes denied because student loan servicers suspected the family size listed by the Company was too high.").

And Kim further explains how he and Wen discussed the issue, thus demonstrating how Wen came to know about the issue. *See, e.g.*, Kim Decl. ¶ 51 ("In approximately 2016 or 2017, Wen, Nguyen and I discussed the fact that some consumers' applications were getting denied because of the Company's use of a fake family size. At that point, Wen agreed to limit employees to inflating consumers' family size up to 7. Based on our experience, Wen and I thought a maximum family size of 7 would make it less likely that a consumer's application would be denied."). *See, e.g., Barthelemy*, 897 F.2d at

| | | 1018 (noting that generally "Rule 56(e)'s requirements of personal knowledge and competence to testify . . . may be inferred" if it is clear from the context of the affidavit that the affiant is testifying from personal knowledge). |
| --- | --- | --- |
| (7) Kim Decl., ¶ 51 at 7:5-10: "51. In approximately 2016 or 2017, Wen, Nguyen and I discussed the fact that some consumers' applications were getting denied because of the Company's use of a fake family size. At that point, Wen agreed to limit employees to in inflating consumers' family size up to 7. Based on our experience, Wen and I thought a maximum family size of 7 would make it less likely that a consumer's application would be denied." | **Fed. R. Evid. 803** The declarant's statement as to what was asked is inadmissible hearsay. **Fed. R. Evid. 602** The declarant's statement as to what Wen "thought" lacks personal knowledge. Fed. R. Evid. 602 provides: "A witness may testify to a matter only if evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter." | **Fed. R. Evid. 801(d)(2) Statements That Are Not Hearsay/An Opposing Party Statement** Statement of a party opponent that (A) "was made by the party in an individual or representative capacity . . .." Here, Wen is a party opponent as to Plaintiffs, the challenged passage is his statement, and Plaintiffs, who are party opponents as to Wen, are offering the statement against him. Therefore, the challenged statement is not hearsay pursuant to Fed. R. Evid. 801(d)(2). Further, in his declaration, Kim demonstrates personal knowledge as to what Wen learned. Kim explains how he and Wen discussed the Company's operations. *See, e.g.*, Kim Decl. ¶ 37 ("Wen also communicated about |

the Company with me and other Company employees in person, through phone calls, by text, and through instant messaging applications like Skype, Signal, and iMessage.").

Kim explains how he learned of the family size issue. *See, e.g.*, Kim Decl. ¶ 50 ("I learned through consumer complaints and discussions with others at the Company that student loan adjustment applications submitted by the Company on behalf of consumers were sometimes denied because student loan servicers suspected the family size listed by the Company was too high.").

And Kim further explains how he and Wen discussed the issue, thus demonstrating how Wen came to know about the family size issue. *See, e.g.*, Kim Decl. ¶ 51 ("In approximately 2016 or 2017, Wen, Nguyen and I discussed the fact that some consumers' applications were getting denied because of the Company's use of a fake family size. At that point, Wen agreed to limit employees to inflating consumers' family size up

| | | to 7. Based on our experience, Wen and I thought a maximum family size of 7 would make it less likely that a consumer's application would be denied."). *See, e.g., Barthelemy*, 897 F.2d at 1018 (noting that generally "Rule 56(e)'s requirements of personal knowledge and competence to testify . . . may be inferred" if it is clear from the context of the affidavit that the affiant is testifying from personal knowledge). |
|---|---|---|
| (8) Kim Decl., ¶ 54 at 7:17-18: "54. Prior to April 2018, Wen and I also became aware that employees were listing all married clients as single in student loan adjustment applications." | **Fed. R. Evid. 602**<br><br>The declarant's statement as to what Wen "became aware" of lacks personal knowledge.<br>Fed. R. Evid. 602 provides: "A witness may testify to a matter only if evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter." | In his declaration, Kim demonstrates how his personal knowledge came about, and how that knowledge was shared with Wen. For example, in the second sentence in paragraph 54 of Kim's declaration, which Wen omits, Kim declares that he and Wen communicated about the issue. Kim states, "Exhibit 5 (CFPB-20211007-00000110-112) is a true and correct copy of an email exchange from April 2018 that includes me, Wen, and other employees regarding this practice."<br><br>Additionally, in the next paragraph of his declaration, Kim states that he and Wen discussed the issue. *See* |

| | | |
|---|---|---|
| | | Kim Decl. ¶ 55 ("Prior to April 2018, Wen and I discussed the fact that Company employees listed married clients as single in DPP and in student loan adjustment applications submitted on behalf of consumers."). *See, e.g., Barthelemy*, 897 F.2d at 1018 (noting that generally "Rule 56(e)'s requirements of personal knowledge and competence to testify . . . may be inferred" if it is clear from the context of the affidavit that the affiant is testifying from personal knowledge). |
| (9) Kim Decl., ¶ 55 at 7:22-24: "Prior to April 2018, Wen and I discussed the fact that Company employees listed married clients as single in DPP and in student loan adjustment applications submitted on behalf of consumers." | **Fed. R. Evid. 803**<br><br>The declarant's statement as to what was asked is inadmissible hearsay. | **Fed. R. Evid. 801(d)(2) Statements That Are Not Hearsay/An Opposing Party Statement**<br><br>Statement of a party opponent that (A) "was made by the party in an individual or representative capacity . . .."<br><br>Here, Wen is a party opponent as to Plaintiffs, the challenged passage is his statement, and Plaintiffs, who are party opponents as to Wen, are offering the statement against him. Therefore, the challenged statement is not hearsay pursuant to Fed. R. Evid. |

| | | 801(d)(2). |
|---|---|---|
| (10) Kim Decl., ¶ 71 at 9:27-10:2: "Wen and I knew that employees told consumers that their loans would be forgiven immediately and that monthly payments to the Company would go toward paying off their loans. Wen and I also knew these statements were incorrect." | **Fed. R. Evid. 602**<br><br>The declarant's statement as to what Wen "knew" lacks personal knowledge. Fed. R. Evid. 602 provides: "A witness may testify to a matter only if evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter." | Kim demonstrates personal knowledge in the paragraphs surrounding paragraph 71 of his declaration. *See* Kim Decl. ¶ 70 ("The top three things I remember consumers complaining about were (1) Company employees told consumers that their loans would be forgiven immediately; (2) Company employees told consumers that their monthly payments to the Company would go towards paying off their loans; and (3) Company employees used an incorrect, higher family size in the consumer's student loan adjustment application."); Kim Decl. ¶ 72 ("I know Wen was aware of the content of consumer complaints because I discussed them with him. At times Nguyen was part of these discussions since he sometimes raised consumer complaints with me and Wen."); Kim Decl. ¶ 75 ("The Company also received consumer complaints that were forwarded by state law enforcement agencies. Wen was responsible for responding to all of those.") *See, e.g., Barthelemy*, 897 |

| | | |
|---|---|---|
| | | F.2d at 1018 (noting that generally "Rule 56(e)'s requirements of personal knowledge and competence to testify . . . may be inferred" if it is clear from the context of the affidavit that the affiant is testifying from personal knowledge). |
| (11) Kim Decl., ¶ 90 at 12:19-24: "In approximately late 2017/early 2018, Wen and I attended a conference on student loan debt relief in Las Vegas. At the conference, we learned about the FTC's "Game of Loans" lawsuits against a bunch of other student-loan debt-relief providers who were charging advance fees. What we learned made us more worried about the government finding out that we weren't complying with the TSR. | **Fed. R. Evid. 602**<br><br>The declarant's statement as to what Wen "learned" and was "worried" regarding lacks personal knowledge.<br><br>Fed. R. Evid. 602 provides: "A witness may testify to a matter only if evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter." | In his declaration, Kim demonstrates personal knowledge of what he and Wen learned and felt about the FTC's "Game of Loans" lawsuits. Kim explains what was discussed at the conference (i.e., what they learned), how they learned it, and how they felt about learning it. There is nothing objectionable about Kim testifying as to his becoming more worried and to his observation that Wen also became more worried. In addition, the surrounding paragraphs explain how Kim and Wen learned about the TSR advance fee rules, how the BBB had inquired about the Company's advance fee practices, and how he and Wen discussed the issue (including in an attached email), and how Kim knew that Wen was aware that the Company charged advance fees based |

| | | on their conversations. *See, e.g.*, Kim Decl. ¶¶ 84-89. Kim then goes on to explain what he and Wen did in an unsuccessful attempt to comply with the advance fee rules as a result of what they had learned and their concerns. *See, e.g.,* Kim Decl. ¶¶ 91-93. Thus, Kim demonstrates personal knowledge. *See, e.g., Barthelemy*, 897 F.2d at 1018 (noting that generally "Rule 56(e)'s requirements of personal knowledge and competence to testify . . . may be inferred" if it is clear from the context of the affidavit that the affiant is testifying from personal knowledge). |

Dated: April 10, 2023                    Respectfully Submitted,

                                         */s/ Jesse Stewart*
                                         Jesse Stewart (NY Bar No. 5145495)
                                         (Admitted *pro hac vice*)
                                         N. Nathan Dimock (DC Bar No. 487743)
                                         (Admitted *pro hac vice*)
                                         *Attorney for Plaintiff Bureau of Consumer*
                                         *Financial Protection*

                                         By: */s/ M. Lynne Weaver*
                                         M. Lynne Weaver (NC Bar No. 19397)
                                         (Admitted *pro hac vice*)
                                         Special Deputy Attorney General
                                         North Carolina Department of Justice
                                         *Attorney for Plaintiff State of North Carolina*

                                         By: */s/ Evan Romanoff*
                                         Evan Romanoff (Atty. Reg. No. 398223)
                                         (Admitted *pro hac vice*)
                                         Assistant Attorney General
                                         *Attorney for Plaintiff State of Minnesota*

                                         By: */s/ Christina Tusan*
                                         Christina Tusan
                                         Assistant City Attorney
                                         Office of the City Attorney
                                         Consumer and Workplace
                                         Protection Unit
                                         *Attorney for Plaintiff the People of the State of*
                                         *California*

   I, Jesse Stewart, attest that all other signatories listed, and on whose behalf the filing is submitted, concur in the filing's content and have authorized the filing.

                                         */s/ Jesse Stewart*
                                         Jesse Stewart