Andrew M. Greene (SBN 167386)
agreene@mcnamarallp.com
Cornelia J. B. Gordon (SBN 320207)
cgordon@mcnamarallp.com
McNamara Smith LLP
655 West Broadway, Suite 900
San Diego, California 92101
Telephone: 619-269-0400
Facsimile:  619-269-0401

*Attorneys for Receiver,*
*Thomas W. McNamara*

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| Bureau of Consumer Financial Protection; et al.,<br><br>　　　　　Plaintiffs,<br><br>　　v.<br><br>Consumer Advocacy Center Inc., d/b/a Premier Student Loan Center; et al.,<br><br>　　　　　Defendants. | Case No. 8:19-cv-01998-MWF (KSx)<br><br>**DECLARATION OF THOMAS W. MCNAMARA IN SUPPORT OF RECEIVER'S SIXTH INTERIM APPLICATION FOR ORDER APPROVING FEES AND EXPENSES OF THE RECEIVER AND PROFESSIONALS**<br><br>JUDGE: Hon. Michael W. Fitzgerald<br>CTRM: 5A<br>DATE: August 21, 2023<br>TIME: 10:00 a.m. |

Case No. 8:19-cv-01998-MWF (KSx)
MCNAMARA DECL. ISO RECEIVER'S SIXTH INTERIM FEE APPLICATION

I, Thomas W. McNamara, hereby declare as follows:

1. I am the Court-appointed receiver ("Receiver") in this matter. I have personal knowledge of the facts set forth in this declaration except where, as noted, those facts have been obtained by staff acting at my direction. If called as a witness, I could and would competently testify to the facts stated herein.

2. By this Sixth Interim Fee Application, I seek approval for the payment of fees and expenses for the 13-month period of May 1, 2022 through May 31, 2023 as detailed below.

**Receivership Activities**

3. Receivership activities during the period covered by this Application have been reported in detail in the Receiver's Fifth Interim Status Report filed concurrently herewith.

4. In summary, during this period, my team and I vigorously litigated and ultimately settled an action (the "NMC Action") against National Merchant Center, Inc. ("NMC"), and its employee/agent, Jimmy Lai ("Lai"); communicated and coordinated with Defendant Kaine Wen ("Wen") in connection with the obligations imposed to transfer cryptocurrency under an Order to Show Cause ("OSC"), prepared a status report for the Court and attended the OSC hearing; coordinated the transfer of cryptocurrency to receivership accounts; liquidated jewelry and automobiles surrendered in settlements; reviewed and provided extensive subpoenaed materials to the CFPB; and completed a significant payroll tax reconciliation project involving the review and reconciliation of payroll reporting for approximately 1,000 employees of the Receivership Entities.

5. The professional services related to these activities are further detailed in the respective invoices submitted with this Fee Application.

6. As of May 31, 2023, the receivership bank accounts hold cash funds of $1,621,856.42.

///

**Professional Fees and Expenses**[1]

**Receiver and Staff**

7. The fees for my time as receiver and professional staff during this period total $110,415.50 as set forth in the invoices from Regulatory Resolutions which are attached as Exhibit A. The two separate invoices represent: (1) fees and costs associated with receivership activities in the underlying case; and (2) fees and costs associated with the NMC Action.

8. The invoices from Regulatory Resolutions also include expenses totaling $791.11, as detailed in Exhibit A.

**Receiver's Counsel**

9. For this 13-month period, fees for my counsel, McNamara Smith LLP ("McNamara Smith"), total $301,551.50. The firm has been directly involved in all receivership activities and their services are more thoroughly described in the invoices in Exhibit B. As noted above, fees and costs have been tracked in two

///

---

[1] Mindful of my obligation to maximize the value of the Receivership Estate, I examined both my and my counsel's bills very carefully and cut time as I reviewed the fee application. As for the receivership, I struck time in the NMC receivership matter resulting in a 10% fee reduction and in main receivership matter resulting in a 3% fee reduction. The majority of counsel's fees related to the NMC litigation which was hard fought every step of the way. As detailed in my *in camera* declaration supporting the proposed settlement in that case, I believed and believe that pursuing the litigation was the right thing to do for the Receivership Estate. The size of the NMC settlement was ultimately not dictated by the bona fides of the case, but rather by the defendants' capacity to avoid payment of a judgment and their ability to fund a settlement. *See* ECF No. 432 for a complete explanation. In light of this settlement, I dramatically reduced my counsel's time related to the NMC litigation, to ensure the fees were congruent with the tangible benefits realized by the Estate. In particular, I excised from the fee application over 48% of attorney and paralegal time expended litigating the NMC Action. This was a financially painful exercise, but I undertook it to bring the invoice more in line with the settlement amount ultimately realized in the NMC Action. Additionally, I reviewed and cut counsel's time in the main receivership matter, resulting in a 10% reduction in those fees. I recall your Honor's explanation that when in private practice you preferred to include write-offs on the client bill (and your partner's preference not to do so). I have not included the prebills identifying the write-offs in this publicly filed fee application, but I am happy to provide the prebills *in camera* so you can see the scale, scope, and particulars of the extensive write-offs.

separate invoices: (1) fees and costs associated with receivership activities in the underlying case; and (2) fees and costs associated with the NMC Action.

10. The McNamara Smith attorneys and their staff have substantial experience with issues revolving around regulatory receiverships. The attorneys' fees were incurred primarily in conducting extensive written discovery and multiple depositions, retaining and preparing expert witnesses, providing feedback for expert reports, and otherwise preparing for trial in the NMC action; ultimately negotiating and settling the NMC Action and obtaining the Court's approval thereof; responding to and providing extensive subpoenaed materials to the CFPB; coordinating the transfer of Wen's cryptocurrency to receivership accounts; and liquidating jewelry and automobiles surrendered in settlements.

11. The rates charged reflect a discount from the firm's standard billing rates.

12. The invoices from McNamara Smith also include expenses totaling $74,545.52, as detailed in Exhibit B. The primary components of those expenses relate to the NMC Action and include expert witness fees ($39,502.50), deposition transcripts ($11,556.62), court reporters ($9,937.07), the services of private investigators ($4,880.60), legal research (3,696.95), and mediation fees ($2,950.00).

13. I submit to the Court that the identified services provided by me, as receiver, and by the other designated professionals, were necessary and appropriate and brought significant value to the receivership. I have monitored the efforts of the team and have reviewed and approved the invoices which are the subject of this Sixth Interim Fee Application. I request that the Court approve immediate payment of these invoices.

///

///

///

1   I declare under penalty of perjury under the laws of the United States that
2   the foregoing is true and correct.
3   Executed this 21st day of July, 2023, in San Diego, California.

/s/ Thomas W. McNamara
Thomas W. McNamara