# EXHIBIT 1

# SETTLEMENT AGREEMENT AND MUTUAL RELEASE

1. **PARTIES**

    This Settlement Agreement and Mutual Release (the "Agreement") is entered into by and between Shih-Hao Lai aka Jimmy Lai ("Lai") and Swift Payments ("Swift), on the one hand, and Thomas W. McNamara, as the Court-appointed receiver (the "Receiver") in *Bureau of Consumer Financial Protection, et al. v. Consumer Advocacy Center Inc., et al.*, U.S.D.C. (C.D. Cal.), Case No. 8:19-cv-01998-MWF (KSx) (the "CFPB Action"), on the other hand, in full and complete settlement of the lawsuit styled *McNamara v. National Merchant Center, Inc., et al.*, U.S.D.C. (C.D. Cal), Case No. 8:21-cv-01122-MWF (KSx) (the "Action"). For purposes of this Agreement, Lai and Swift may collectively be referred to as "Defendants." Further, Defendants and the Receiver may be referred to individually as a "Party" and collectively as the "Parties."

2. **RECITALS**

    2.1   On October 21, 2019, the Bureau of Consumer Financial Protection, among others, filed a lawsuit against Consumer Advocacy Center Inc. dba Premier Student Loan Center, among others, in the United States District Court for the Central District of California, initiating the CFPB Action.

    2.2   On October 21, 2019, Thomas W. McNamara was initially appointed as the Receiver over the Receivership Defendants as those entities are defined in the *Ex Parte* Temporary Restraining Order with Asset Freeze, Appointment of Receiver and Other Equitable Relief which was entered in the CFPB Action on October 21, 2019.

    2.3   On November 15, 2019, the Court in the CFPB Action issued a Stipulated Preliminary Injunction with Asset Freeze, Appointment of Receiver, and Other Equitable Relief whereby it reaffirmed the Receiver's appointment and tasked him with, among other things, identifying, preserving, and recovering assets of the Receivership Estate.

    2.4   Since the time of the Receiver's appointment, certain disputes and controversies have arisen among the Parties with regard to Defendants' receipt of certain monies from the Receivership Estate.

    2.5   On June 28, 2021, the Receiver commenced the Action against Defendants and National Merchant Center, Inc. ("NMC") and filed a First Amended Complaint on October 18, 2021.

    2.6   After engaging in substantial written, document, and deposition discovery beginning in early 2022, on August 19, 2022, the Receiver and Defendants attended a mediation of the Action before Bruce Isaacs, Esq., which mediation was unsuccessful.

    2.7   The Action and the Parties' respective claims, counterclaims, allegations, assertions, and defenses, and each of them, which are or could have been set forth therein shall constitute the "Dispute."

      2.8    Without any admission of liability by any of the Parties and without conceding the respective positions of any of the Parties, the Parties desire to settle and dispose of, fully and completely, the Dispute.

      2.9    Therefore, in consideration of the mutual covenants set forth herein, and for good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the Parties hereby agree to the settlement of the Dispute on the terms and conditions below, all of which shall be considered material to this Agreement.

## 3. EFFECTIVE DATE

      3.1    The "Effective Date" of this Agreement is the date on which the last Party signs this Agreement.

## 4. SETTLEMENT CONTINGENCY

      4.1    This Agreement is not binding on the Parties unless and until the District Court in the Action enters an order approving of the Agreement.

      4.2    Within seven (7) days of the Effective Date, the Receiver shall file a motion in the Action seeking the District Court's approval of this Agreement. The Parties shall take all reasonably necessary actions that may become necessary to secure a prompt and favorable determination by the District Court.

      4.3    In the event that the District Court does <u>not</u> approve of this Agreement, the Parties shall meet and confer and make all reasonably necessary changes to the Agreement, provided that the changes remain consistent with the Settlement Amount and Related Terms identified in Section 5, and then promptly reapply for a approval.

          4.3.1    The Parties' obligations under Section 4.3 shall continue until the Parties reasonably determine that material changes to the Settlement Amount and Related Terms identified in Section 5 are required in order to secure approval of the Agreement. In such an event, the Parties shall have the option to continue settlement negotiations or declare an impasse, in which event this Agreement and all exhibits hereto are null and void.

      4.4    This Agreement is expressly premised, in significant part, on the truthfulness, accuracy, and completeness of Defendants' sworn financial statements and most recent tax returns, which have been provided to the Receiver and which Defendants hereby represent and assert are truthful, accurate, and complete, which include:

          4.4.1    Defendants' sworn financial statement(s) for the period January 1, 2022 to December 31, 2022;

          4.4.2    Defendants' Federal and State Tax Returns for the year 2021.

5. **SETTLEMENT AMOUNTS AND RELATED TERMS**

    5.1    In consideration for the promises made in this Agreement and in full payment of any monies due, Defendants shall cause to be paid to the Receiver Seventy Five Thousand Dollars ($75,000) in United States currency as follows:

    5.1.1    $75,000 shall be paid in twelve (12) equal installments of $7,083.33, with the first payment to be made days on or before March 31, 2023, and the remaining eleven (11) payments to be made on or before the 15th day of every four months that follows until paid in full, resulting in the following payment schedule:

| Date | Amount |
| --- | --- |
| March 31, 2023 | $6,250.00 |
| July 15, 2023 | $6,250.00 |
| November 15, 2023 | $6,250.00 |
| March 15, 2024 | $6,250.00 |
| July 15, 2024 | $6,250.00 |
| November 15, 2024 | $6,250.00 |
| March 15, 2025 | $6,250.00 |
| July 15, 2025 | $6,250.00 |
| November 15, 2025 | $6,250.00 |
| March 15, 2026 | $6,250.00 |
| July 15, 2026 | $6,250.00 |
| November 15, 2026 | $6,250.00 |

    5.2    In consideration of and as security for the promises made in this Agreement, Defendants shall provide the Receiver with a Stipulation of Judgment in the form attached hereto as <u>Exhibit A</u>, which Stipulation of Judgment shall not be filed by the Receiver or the Receiver's designee unless an Event of Default occurs as such term is defined in Section 6.1 below.

    5.3    In the event that the Receiver's right to file <u>Exhibit A</u> vests pursuant to this Agreement, the Receiver or the Receiver's designee may, upon ninety-six (96) hour notice to Defendants and their counsel, Felix T. Woo, and subject to the terms of the Stipulation of Judgment, file the Stipulation of Judgment and, if necessary, appear *ex parte* in the Action to have Judgment entered. Defendants waive their right to assert any procedural or substantive defenses and/or objections to the entry of judgment, other than a claim that they have complied with their obligations under this Agreement, or a claim that the Receiver or the Receiver's designee is not entitled to entry of judgement under the terms of this Agreement.

    5.4    All payments from Lai and Swift are to be made by wire or cashier's check payable to "True Count Staffing Receivership." If by cashier's check, it will be delivered via overnight mail to McNamara Smith LLP, Attn: Jill Jacobs, 655 West Broadway, Suite 900, San Diego, California 92101, unless the Receiver has provided prior notice and payment instructions in writing to Defendants, the payments should be made directly to the CFPB as set forth more fully in paragraph 5.6 below.

5.5     Within seven (7) days of the Effective Date, and as a condition to the receipt of any monies described in this Agreement, the Receiver shall provide Defendants with a valid W-9.

5.6     The Parties agree and understand that the Receiver and the affairs of the Receivership could conclude prior to the completion of Defendants' payment obligations described herein. The Parties agree that the conclusion of the Receivership shall have no impact whatsoever on Defendants' obligations under this Agreement. In the event that Defendants have not completed their obligations under this Agreement by the conclusion of the Receivership, the Receiver, with the CFPB's consent, shall provide notice and payments instructions to Defendants that all remaining payments under this Agreement should be made directly to the CFPB as the Receiver's designee. The Parties further agree that if the Receiver provides such notice designating the CFPB, all of the Receiver's rights and obligations under this Agreement shall inure to the benefit of the CFPB upon termination of the Receivership, and the CFPB will have the right to enforce this Agreement as if it were a direct party to this Agreement.

## 6. EVENTS OF DEFAULT

6.1     The following shall constitute an "Event of Default" under this Agreement: (i) if any payment under this Agreement is not paid when due and Defendants fail to cure by ensuring that payment is received within 30 days of written notice of the breach; or (ii) the commencement by Defendants or by their respective creditors of any bankruptcy, insolvency, reorganization, receivership, or liquidation case, action, or proceeding or any other proceedings for relief under any bankruptcy law or any other law for the relief of debtors or affecting the rights of creditors generally. Upon an Event of Default, all amounts then remaining due under this Agreement shall be accelerated to immediately become due and payable at that time.

## 7. DISMISSAL OF ACTION

Within ten (10) days following the Court's approval of this Agreement, the Parties shall file a stipulation of dismissal, requesting dismissal of the Receiver's First Amended Complaint against Defendants with prejudice. The stipulation of dismissal shall further request and be contingent upon the Court's issuance of an order of dismissal reserving jurisdiction to enforce this Agreement if necessary.

## 8. RELEASES

8.1     In consideration of the Agreement and terms contained herein, and contingent upon the Court's approval of this Agreement and Defendants' satisfaction of their obligations under this Agreement, the Parties mutually release and forever discharge each other, and their parent, subsidiary companies and each of their officers, directors, agents, shareholders, partners, insurers, heirs, relatives, representatives, employees, successors, assigns, and attorneys from all acts, occurrences, costs, proceedings, obligations, claims, debts, demands, and liabilities, and any and all other claims of every kind, nature, and description whatsoever, both in law and equity, whether known or unknown, whether suspected or unsuspected, whether accrued or un-accrued, whether now or heretofore existing, whether premised on contract, statute, tort or other theory of

recovery, for any compensatory, punitive, penalty, statutory, contract or tort damages, including without limitation, claims that were or could have been asserted in, the Action or Dispute.

    8.2    Except as expressly provided herein, all rights under Section 1542 of the California Civil Code are expressly waived by the Parties, who have read Section 1542 of the California Civil Code, and understand that it provides as follows:

> **A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS THAT THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE AND THAT, IF KNOWN BY HIM OR HER, WOULD HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR OR RELEASED PARTY.**

The Parties expressly waive and relinquish every right or benefit they may have under Section 1542 of the California Civil Code arising out of or related to the facts, transactions, or occurrences alleged in the Dispute to the fullest extent possible. In connection with this waiver, the Parties acknowledge that they are aware that facts may hereafter be discovered in addition to or different from those now known or believed to be true with respect to this release, but that it is the intention of the Parties to hereby fully, finally, and forever release and discharge each other, and thus this release shall remain in effect as a full and complete release notwithstanding the later discovery or existence of any such additional or different facts.

9.    **MUTUAL REPRESENTATIONS AND WARRANTIES**

    Each of the Parties to this Agreement represents, warrants, and agrees as follows:

    9.1    Each Party has received independent legal advice from their attorney with respect to the rights, obligations, and advisability of entering into the settlement pursuant to this Agreement and with respect to the rights, obligations, and advisability of executing this Agreement. Each Party hereto declares that it has fully reviewed this Agreement prior to signing it, knows and understands its contents, and that it has executed this Agreement voluntarily.

    9.2    Each Party to this Agreement has made such investigation of the facts pertaining to this settlement and this Agreement and of all the matters pertaining thereto as it deems necessary.

    9.3    Each person executing this Agreement on behalf of the respective Parties warrants that he, she, or it is empowered to do so and thereby binds his, her, or its respective Party.

    9.4    Each person executing this Agreement on behalf of the respective Parties warrants that he, she, or it has not heretofore assigned, transferred, or granted, or purported to assign, transfer, or grant, any of the claims, demands, and cause or causes of action disposed of herein.

    9.5    Each Party acknowledges that no other person, nor any attorney of any other person, has made any promise, representation or warranty whatsoever, expressed or implied, not contained herein, concerning the subject matter hereof, to induce the Parties to execute or authorize the execution of this Agreement, and acknowledges that it has not executed or

authorized the execution of this Agreement in reliance upon any such promise, representation or warranty not contained herein. No Party relies upon any statement of any other Party in executing this Agreement, except as expressly stated herein.

      9.6    This Agreement effects the settlement of claims which are denied and contested, and nothing contained herein shall be construed as an admission by any Party hereto of any liability of any kind to any other party. Each of the Parties hereto denies any liability in connection with any claim and intends merely to avoid litigation and buy its peace. This Agreement shall not be admissible as evidence in any proceeding other than a proceeding to enforce an obligation of a Party hereto.

      9.7    Defendants represent that they have accurately disclosed their financial condition to the Receiver and have not fraudulently transferred any assets to any individuals or made any effort to artificially reduce their assets available for settlement.

## 10. MISCELLANEOUS

      10.1    This Agreement shall be deemed to have been executed and delivered within the State of California, and the rights and obligations of the Parties hereto shall be construed and enforced in accordance with and governed by the laws of the State of California.

      10.2    Except as provided herein, each Party shall bear its own attorneys' fees and costs incurred up to and including the preparation, execution and delivery of this Agreement. In the event of a breach of this Agreement, in addition to all available remedies the breaching Party will be responsible to the non-breaching Party for all reasonable attorneys' fees and costs incurred by the non-breaching Party to enforce this Agreement.

      10.3    This Agreement is the complete and entire agreement and mutual release by and among the Parties with respect to the subject matter hereof and supersedes all prior and contemporaneous oral and written agreement(s), representation(s), negotiation(s), and/or discussion(s). This Agreement shall not be modified by any Party by any oral representation(s) made before or after the Effective Date of this Agreement. This Agreement may be amended or modified only by an agreement in writing signed by the Parties. Any amendment(s) or modification(s) must be in writing and signed by the party or a duly authorized representative of the Party against whom such amendment(s) or modification(s) is/are sought to be enforced.

      10.4    This Agreement is binding upon and shall inure to the benefit of the Parties hereto, their respective officers, directors, agents, parents, subsidiaries, shareholders, partners, insurers, heirs, relatives, representatives, affiliates, employees, successors, assigns, and attorneys.

      10.5    Each Party has cooperated in the drafting and preparation of this Agreement. Hence, in any construction to be made of the Agreement, the same shall not be construed against any Party.

      10.6    The Parties agree, for their respective selves, principals, agents, representatives, employees, attorneys, successors and assigns, that they will abide by the terms of this Agreement, which terms are meant to be contractual, and further agree that they will do such acts and prepare, execute, file, and/or deliver such documents as may be required in order to carry out

the purposes and intent of this Agreement. The Parties to this Agreement shall use their best efforts, including all efforts that may become necessary by order of the Court or otherwise, to effectuate this Agreement and its terms.

      10.7    Any provision of this Agreement that is prohibited or unenforceable in any jurisdiction shall, as to such jurisdiction, be ineffective to the extent of such prohibition or unenforceability without invalidating the remaining provisions hereof, and any such prohibition or unenforceability in any jurisdiction shall (to the full extent permitted by law) not invalidate or render unenforceable such provision in any other jurisdiction.

      10.8    The U.S. District Court for the Central District of California shall retain jurisdiction over this Agreement notwithstanding the dismissal of the Action, and this Agreement may be enforced by motion in the Action.

      10.9    Any notices required or permitted to be given pursuant to this Agreement shall be given in writing to the Parties and their respective counsel and shall be delivered via email. For purposes of notifying the Receiver, Defendants should notify the following:

      Thomas W. McNamara
      Regulatory Resolutions
      tmcnamara@regulatoryresolutions.com

      And

      Andrew M. Greene
      McNamara Smith LLP
      agreene@mcnamarallp.com

For purposes of notifying Defendants, the Receiver should notify the following:

      Jimmy Lai
      Swift Payments
      jimmy.lai@swiftpaymentsinc.com

      And

      Felix T. Woo
      FTW Law Group, APC
      fwoo@ftwlawgroup.com

This Agreement may be executed in counterparts, and when each Party has signed and delivered at least one such counterpart, each counterpart shall be deemed an original, and, when taken together with other signed counterparts, shall constitute one Agreement, which shall be binding upon and effective as to all Parties. Signatures may be transmitted by facsimile or electronically via PDF and will have the same force and effect as an original.

**READ CAREFULLY BEFORE SIGNING.**

Thomas W. McNamara, not individually, but solely as Court-appointed Receiver in *Bureau of Consumer Financial Protection, et al. v. Consumer Advocacy Center Inc., et al.*, U.S.D.C. (C.D. Cal.), Case No. 8:19-cv-01998-MWF (KSx)

Dated: 2/10, 2023

By: _____
Thomas W. McNamara

**Shih-Hao Lai aka Jimmy Lai**

Dated: February 2, 2023

By: _____
Jimmy Lai

**Swift Payments**

Dated: February 2, 2023

By: _____
Jimmy Lai, President

**APPROVED AS TO FORM:**

**McNamara Smith LLP**

Dated: February 7, 2023

By: _____
Andrew M. Greene
Attorneys for Thomas W. McNamara, Court-appointed Receiver

**FTW Law Group, APC**

Dated: February 7, 2023

By: _____
Felix T. Woo
Attorneys for Shih-Hao Lai aka Jimmy Lai and Swift Payments