109:21:02

                        UNITED STATES DISTRICT COURT

2              CENTRAL DISTRICT OF CALIFORNIA - WESTERN DIVISION

3              HONORABLE MICHAEL W. FITZGERALD, U.S. DISTRICT JUDGE

4

5

6    BUREAU OF CONSUMER FINANCIAL      )
     PROTECTION,                       )
     et al.,                           )
7                                      )
              Plaintiffs,              )
8                                      )   8:19-CV-1998-MWF
                   vs.                 )
9                                      )
     CONSUMER ADVOCACY CENTER, INC.,   )
10   et al.,                           )
                                       )
11            Defendants.              )
     _____

12

13

14                    REPORTER'S TRANSCRIPT OF HEARING

15                       Los Angeles, California

16                       Monday, May 1, 2023

17

18

19              _____

20

21

22

23                    AMY DIAZ, RPR, CRR, FCRR
                      Federal Official Reporter
24                    350 West 1st Street, #4455
                      Los Angeles, CA 90012

25

         *Please order court transcripts here:  www.amydiazfedreporter.com*

```
 1          APPEARANCES OF COUNSEL:

 2
            For the Plaintiffs:
 3

 4                      CONSUMER FINANCIAL PROTECTION BUREAU
                        By:  Jesse Stewart, Attorney at Law
 5                           Stephanie Garlock, Attorney at Law
                             Nathan Dimock, Attorney at Law
 6                      1700 G Street NW
                        Washington, DC 20552
 7
                        LOS ANGELES CITY ATTORNEY
 8                      By:  Christina Tusan, Assistant City Attorney
                        City Hall East
 9                      200 North Main Street, 5th Floor
                        Los Angeles, California 90012
10
                        NORTH CAROLINA DEPARTMENT OF JUSTICE
11                      By:  Margaret Weaver, Attorney at Law
                        114 West Edenton Street
12                      Raleigh, North Carolina 27602

13                      OFFICE OF THE MINNESOTA ATTORNEY GENERAL
                        By:  Evan Romanoff, Assistant Attorney General
14                      445 Minnesota Street, Suite 1200
                        St. Paul, Minnesota 55101
15

16

17
            For the Defendants:
18

19                      Kaine Wen, Pro Se

20

21

22

23

24

25
```

```
 1   09:40:26              THE CLERK:  Calling item number one, case number
 2   09:40:29    SACV-19-1998-MWF, Bureau of Consumer Financial Protection, et
 3   09:40:36    al. vs. Consumer Advocacy Center, et al.
 4   09:40:42              Counsel, please rise and state your appearance for
 5   09:40:44    the record.
 6   09:40:45              MR. STEWART:  Good morning, Your Honor.  Jesse
 7   09:40:47    Stewart, counsel for the Bureau of Consumer Financial
 8   09:40:50    Protection.
 9   09:40:52              MS. GARLOCK:  Good morning, Your Honor.  Stephanie
10   09:40:53    Garlock, counsel for the Bureau of Consumer Financial
11   09:40:57    Protection.
12   09:40:59              MS. TUSAN:  Good morning, Your Honor.  Christina
13   09:41:01    Tusan for the State of California.
14   09:41:03              MS. WEAVER:  Good morning.  Lynne Weaver for the
15   09:41:06    State of North Carolina.
16   09:41:06              THE CLERK:  And the telephonic appearances, please?
17   09:41:14              MR. ROMANOFF:  Apologize, Nathan.  You can go first.
18   09:41:18              MR. DIMOCK:  Good morning, Your Honor.  Nathan
19   09:41:20    Dimock on behalf of the Consumer Financial Protection Bureau.
20   09:41:23              MR. ROMANOFF:  Good morning, Your Honor.  Evan
21   09:41:24    Romanoff on behalf of the State of Minnesota.
22   09:41:26              THE COURT:  All right.
23   09:41:28              THE CLERK:  Mr. Wen, please?
24   09:41:30              MR. WEN:  Good morning, Your Honor.  Kaine Wen, pro
25   09:41:32    per.
```

09:41:32          THE COURT:  Good morning, counsel.  Good morning,

09:41:34    Mr. Wen.

09:41:35          My tentative view is to grant the Bureau's requests

09:41:45    in almost entirely.  I am not inclined to order Mr. Wen to

09:41:54    perform the cooperation duties, assuming that they are

09:41:59    defined sufficiently to meet the requirements of Rule 65,

09:42:03    which I have doubts about.

09:42:06          I further think that they would just involve us

09:42:12    endlessly in litigation as to what fell within the Fifth

09:42:17    Amendment, whether it was capable or not.

09:42:19          Ultimately, I'm not going to hold Mr. Wen in

09:42:22    contempt for failing to do those things.  If I'm not going to

09:42:25    hold him in contempt, then there is no purpose in including

09:42:28    them.  Again, assuming that Rule 65 gave me the discretion to

09:42:31    do so in the first place.

09:42:32          I certainly understand Mr. Wen's arguments against

09:42:36    the amount of the civil penalties.  When I first approached

09:42:41    it, I was a little -- the amount just seemed so outlandish,

09:42:47    really.  It's obviously much more than you can ever hope to

09:42:50    pay, Mr. Wen.  So I guess in that sense it doesn't matter

09:42:53    whether -- it could be billions of dollars, I suppose, and

09:42:55    it's not going to get paid.

09:42:57          But because of that, I question that, and also just

09:43:02    seemed, just because we are calling something a civil

09:43:04    penalty, to entirely remove it from even the Seventh

1  09:43:10  Amendment, as well, but nonetheless, there are, you know,

2  09:43:14  essentially algorithms here.  There is a basis to do it.  And

3  09:43:19  it does seem that the law authorizes it.

4  09:43:22       So with those preliminary thoughts, I'll first hear

5  09:43:27  from Mr. Wen, I'll hear from the Bureau, and then, Mr. Wen,

6  09:43:32  I'll give you the last word here.

7  09:43:35       So, Mr. Wen, what would you like to say, to either

8  09:43:40  emphasize on the arguments already made, or tell me why in

9  09:43:43  the tentative I'm making a mistake?  You know, just now is

10 09:43:48  your chance to talk to me.

11 09:43:53       MR. WEN:  Good morning, Your Honor.

12 09:43:54       THE COURT:  Good morning.

13 09:43:55       MR. WEN:  I guess the first issue I want to discuss

14 09:44:01  is what I already mentioned in the opposition brief, in that

15 09:44:04  the standard for a motion for summary judgment is that the

16 09:44:07  motion may only be granted if there is no genuine issue as to

17 09:44:10  any material fact.  The Court does not need to weigh the

18 09:44:15  evidence, but determine whether there is a genuine dispute.

19 09:44:19       Here, there are numerous genuine disputes of

20 09:44:23  material facts, including who settled the business practices

21 09:44:25  and policies, ownership and decisionmaking, my level of

22 09:44:29  involvement in the first 20 months, corrective actions taken

23 09:44:34  towards compliance under the guidance of attorneys, and so

24 09:44:37  forth; as well, the credibility of Kim and Nguyen are at

25 09:44:42  issue here.

1 09:44:44        Plaintiffs rely heavily on Kim and Nguyen's

2 09:44:47   declarations in their motion for summary judgment.  Kim and

3 09:44:50   Nguyen are co-owners of the business, and also defendants in

4 09:44:54   this case.  They settled with plaintiffs, and they attempt to

5 09:45:00   foist undue responsibility onto me as part of the cooperation

6 09:45:03   clauses in their settlements.

7 09:45:05        I have not yet had a chance to cross-examine or

8 09:45:07   depose them.  I applied and it was denied.

9 09:45:11        The second major issue is, as you noted in the

10 09:45:17  tentative, is the limitation on damages.  Plaintiffs were

11 09:45:20  seeking over $95 million in restitution based on the

12 09:45:25  business's net revenues.  I contend that the amount of

13 09:45:29  damages should be limited to net profits rather than net

14 09:45:33  revenues under *Liu vs. SEC*.

15 09:45:37        Plaintiffs, and also the tentative, both cite the

16 09:45:42  *CashCall* case.  And in that case, it states that,

17 09:45:47  "Restitution may be measured by the full amount lost by

18 09:45:51  consumers, rather than by a defendant's profits.  Using net

19 09:45:56  revenues for restitution, therefore, is a possibility and not

20 09:45:58  a requirement."

21 09:46:00        And then further, "Perhaps net revenues would

22 09:46:05  overstate a defendant's unjust gains.  That was the

23 09:46:09  defendant's burden to prove."

24 09:46:11        Plaintiffs have made no effort to actually calculate

25 09:46:15  my earnings from the business; whereas, I discussed the net

profits in paragraphs 195 through 249 of my declaration, and I also submitted supporting evidence.

In total, the business's net profits, according to my calculations, was less than $23 million. Plaintiffs and through the Receiver have received over $25 million. My personal net profits were approximately $1.55 million. And plaintiff have already received over $3 million through my mother.

I believe I have met my burden of a genuine dispute as to what the net profits were. And, you know, damages in the amount of $95 million, not even tackling the civil fines and penalties of $140 million, is grossly disproportionate to what I actually earned from the business.

Kim and Nguyen, the codefendants and co-owners, each settled for less than a couple hundred thousand dollars, to the best of my calculations.

So not only have I turned over over $3 million through my mother, and I made less than Kim, one of the codefendants, everything that I turned over, you know, were income that I had prior to getting involved in this business.

Overall, I've turned over, you know, double what I received from the student loan business. I'm going to lose everything I have, including a lot of earnings that I made prior to getting involved in this business at all. It's impacted me and my family. I have been incarcerated. My

1 09:48:11  mother has lost her house, lost her retirement savings.

2 09:48:14  You know, I realize that I made very poor decisions

3 09:48:17  with regards to this business, but what I'm really looking

4 09:48:20  for is kind of a path forward, so I can kind of move on, and

5 09:48:25  I don't see that right now.  I don't even know what I can do

6 09:48:27  with a judgment for 200 -- over $200 million.  Like you said,

7 09:48:32  it might as well be $1 billion.

8 09:48:34  THE COURT:  All right.  Thank you, Mr. Wen.

9 09:48:36  Let me hear from the Bureau.  You know, Mr. Wen has

10 09:48:40  laid out some real legal issues here.  Of course, the fact

11 09:48:44  that it's the plaintiff moving for summary judgment is itself

12 09:48:48  a rare thing, hardly -- I should say uncommon.  It's not all

13 09:48:54  that rare, but it's not typically what happens.

14 09:48:57  And it does, then, show that in order to get summary

15 09:49:00  judgment, there just has to be just one possible view of the

16 09:49:04  evidence, even assuming here that it would ultimately be an

17 09:49:08  equitable matter, and there wouldn't be a jury.  Still, there

18 09:49:11  is a difference between, say, what I would do here, which is

19 09:49:14  to say I must do it, as opposed to what I might choose to do

20 09:49:18  if there had been a trial.

21 09:49:20  And then it -- again, likewise, with -- there is a

22 09:49:25  difference -- I wrote -- the tentative is the way it is in

23 09:49:29  large part because of *CashCall*, but Mr. Wen makes the

24 09:49:34  obvious, but important argument that the point here isn't

25 09:49:38  really, could this conceivably be justified, but is this the

09:49:42   1   amount that the law dictates?  Because otherwise, we could

09:49:46   2   have a trial even if it was just on the damages.

09:49:50   3        And again, to the extent that there is some

09:49:54   4   equitable -- I'm using equitable -- I should say issues of

09:49:58   5   fairness, not in a traditional, legal, equitable meaning, but

09:50:02   6   rather, just in a sense of fairness that while, assuming that

09:50:07   7   the Bureau is correct, and that was my tentative view that

09:50:11   8   summary judgment is appropriate here, then is it the case

09:50:16   9   that any fair-minded judge would issue the relief that is

09:50:22   10  sought here?  Because otherwise, we could just have a trial

09:50:25   11  on what the relief should be.

09:50:28   12        So with those thoughts, let me hear from the Bureau.

09:50:38   13        MR. STEWART:  Thank you, Your Honor.  Jesse Stewart

09:50:44   14  for Plaintiff the Bureau of Consumer Financial Protection.

09:50:46   15        I would like to first address Mr. Wen's argument

09:50:53   16  with respect to whether there is a genuine issue as to

09:50:55   17  liability, and then my colleague, Stephanie Garlock, will

09:50:59   18  address the arguments regarding restitution.

09:51:01   19        Mr. Wen marks approximately 75 facts of the 225

09:51:11   20  facts that the plaintiffs put forward in the consolidated

09:51:14   21  statement of facts as disputed.  Of those 75 facts,

09:51:19   22  approximately 63 do not actually involve any sort of material

09:51:26   23  dispute that raises a genuine issue.

09:51:29   24        Many claim only that Wen does not -- disputes the

09:51:35   25  extent to which the particular fact occurred in every case.

1 09:51:37    That does not raise a genuine issue with respect to those

2 09:51:40    facts.

3 09:51:41        And it really boils down to 12 facts of the 75 that

4 09:51:48    Wen marks as disputed that Wen actually submits evidence to

5 09:51:55    support his position in disputing the fact.

6 09:51:58        And those 12 facts raise his position with respect

7 09:52:03    to his involvement, participation in and control of the

8 09:52:07    entities before June 2017.

9 09:52:11        As the Court notes in the tentative, there are

10 09:52:14   sufficient other undisputed facts to find him liable for the

11 09:52:18   entire period from October 2015 through October 2019.

12 09:52:24       And in any event, those 12 facts rely primarily on

13 09:52:29   Mr. Wen's declaration, which is the sort of conclusory and

14 09:52:36   self-serving declaration that does not create a genuine issue

15 09:52:39   at summary judgment.  Including because with respect to his

16 09:52:41   ownership and control, there are -- there is documentary

17 09:52:44   evidence establishing his significant control of the

18 09:52:48   entities, his ability to sign for the entities.  Starting in

19 09:52:51   2015, that he represented himself as an officer or owner of

20 09:52:54   the entities.  That he represented himself as a general

21 09:52:57   counsel of CAC.  Those facts show his degree of control of

22 09:53:03   the entities, and a self-serving declaration with a

23 09:53:06   conclusory statement about his limited involvement does not

24 09:53:10   change that in terms of whether there is an issue for summary

25 09:53:15   judgment.

09:53:15    So this isn't really about a credibility

09:53:19 determination.  There are sufficient facts, without even

09:53:23 looking at the facts that Kaine Wen disputes, and the

09:53:28 statements that Kaine Wen disputes with respect to the Kim

09:53:30 and Tuong Nguyen declarations, that would allow this Court to

09:53:36 rule on summary judgment in favor of the Bureau for the

09:53:38 entire time period.

09:53:40    But furthermore, there is also documentary evidence

09:53:42 backing up Mr. Wen's control and involvement in the entities

09:53:45 sufficient to support summary judgment, and not credit -- or

09:53:50 not find that Mr. Wen's self-serving declaration raises a

09:53:54 genuine issue with respect to the earlier period.

09:53:58    So unless the Court has any questions about that

09:54:07 issue now, with your permission, I would like to turn it over

09:54:11 to my colleague, Stephanie Garlock, to address restitution.

09:54:15    THE COURT:  Lay out for me the legal basis that

09:54:19 Mr. Wen's own declaration isn't creating this.

09:54:22    I mean, ordinarily something that is -- ordinarily,

09:54:30 a declaration of someone who has certain knowledge is

09:54:38 sufficient to create a genuine issue.  You know, and

09:54:44 obviously, as you point out, there are times where that is

09:54:47 not the case.

09:54:48    One is if it is simply a sham where the testimony

09:54:52 has changed, especially after a sworn deposition, you know,

09:54:55 the deponent says the light was red, and then realizing that

109:55:00     that means summary judgment will be granted, runs in with a

209:55:03     declaration saying that the light is green.

309:55:05          The other thing is, and this is that instead of

409:55:09     saying, I did not do this, this, this, this, this, then

509:55:16     there -- it's essentially saying, I am not liable.  I did

609:55:19     nothing wrong.  Where it simply is a legal assertion

709:55:24     masquerading as a dispute of fact.

809:55:27          And that seems to me here what the Bureau is saying

909:55:30     here, but what -- given that essentially the matters that are

1009:55:36    within the scope of the declaration are things that Mr. Wen

1109:55:40    would reasonably -- or again, the third thing would just be

1209:55:42    that somebody is asserting something when it's clear that he

1309:55:45    or she has really no basis to be testifying about it.

1409:55:48          So here, that is not the case clearly with Mr. Wen.

1509:55:53          So what is, then, the basis here for saying that his

1609:55:58    assertions do not -- however implausible they might be,

1709:56:02    because that is not what I'm doing here, of course, on

1809:56:05    summary judgment, what is your basis for saying that his

1909:56:08    declaration should not be itself sufficient to create a

2009:56:15    genuine issue of material fact?

2109:56:18          MR. STEWART:  With respect to at least some of the

2209:56:19    statements that Mr. Wen makes in his declaration, he makes

2309:56:22    what are effectively contemporaneous statements about his

2409:56:25    control and involvement in the entities in his declaration.

2509:56:29    Some of those statements are contradicted by statements

09:56:32    Mr. Wen made at the time.

09:56:35            For example, defendant or plaintiffs produced an

09:56:39    exhibit that showed that -- which is a summary judgment

09:56:43    exhibit, which showed that Mr. Wen signed a document saying

09:56:47    he was a 50 percent owner of CAC.  In his declaration, he

09:56:52    claims to be less than that.  Mr. Wen claimed he could not

09:56:55    control the entities, and that Mr. Kim -- in his declaration,

09:56:57    Mr. Wen claimed that he could not control the entities, and

09:57:00    that Mr. Kim was the one running the operation.  Yet, Mr. Wen

09:57:06    signed a document that went to a bank and a payment

09:57:11    processor, providing a personal guarantee as an owner or

09:57:14    officer for CAC, and representing himself as a general

09:57:17    counsel in November of 2015.

09:57:19            So a declaration such as Mr. Wen's that purports to

09:57:25    revise history in a way that contradicts documentary evidence

09:57:30    of his own statements, effectively, is not the kind of

09:57:33    declaration that creates a genuine issue.

09:57:35            And I think a good analogy would be the *CFPB v.*

09:57:39    *Gordon* case, 819 F.3d 1179, in the Ninth Circuit in 2016.

09:57:45    There, the Court rejected the conclusory and self-serving

09:57:49    declaration of the defendant, which was contradicted by the

09:57:51    Bureau of summary judgment evidence, including the

09:57:53    declaration and testimony of the individual defendants,

09:57:56    business associates, and the defendant's own prior written

09:57:59    statements.

1  09:58:00    I think we have very similar facts here, Your Honor.

2  09:58:03    And I think based on *Gordon*, there is strong Ninth Circuit

3  09:58:06    precedent to find that to the extent Mr. Wen creates any

4  09:58:09    genuine issue by his declaration, that is not the -- or to

5  09:58:14    the extent that Mr. Wen attempts to create any sort of issue

6  09:58:17    with his declaration, that is not the sort of genuine issue

7  09:58:20    of material fact that would preclude summary judgment here.

8  09:58:23    As I said before, though, I believe that the record

9  09:58:26    provides sufficient evidence without getting to that to rule

10 09:58:30    in the Bureau's favor.

11 09:58:31    THE COURT:  Thank you.

12 09:58:32    Mr. Wen, let me hear from you in regard to this,

13 09:58:34    since there is going to be someone else arguing about the

14 09:58:37    relief.

15 09:58:39    MR. WEN:  Sure.  What would you like to hear?

16 09:58:41    THE COURT:  Well, what do you have to say in

17 09:58:44    rebuttal to what we just heard?  In particular, why in your

18 09:58:47    view does your declaration create genuine issues of material

19 09:58:50    fact?

20 09:58:51    MR. WEN:  Well, Your Honor, so Mr. Stewart indicates

21 09:58:56    that he narrowed it down to 12 actual material disputes.

22 09:59:03    I do want to note that it really only takes one

23 09:59:06    material dispute, one genuine dispute of material fact, in

24 09:59:10    order to not issue the -- in order to not grant the motion

25 09:59:13    for summary judgment.

1  09:59:19        Mr. Stewart states that there is no -- I don't want

2  09:59:27   to mischaracterize what he said, but he essentially, my

3  09:59:31   understanding, is saying that it's not really a credibility

4  09:59:33   issue with the Kim and Nguyen declarations, that there is

5  09:59:37   enough evidence without the declarations.

6  09:59:39        But I would argue differently, because the

7  09:59:42   plaintiffs relied really heavily on the Kim and Nguyen

8  09:59:47   declarations, and they are self-serving declarations where

9  09:59:51   credibility is a main issue there.  And I have -- like I

10 09:59:54   said, I have not had the opportunity to cross-examine or

11 09:59:57   depose them.

12 09:59:58        You know, as far as the fact of ownership of the

13 10:00:07   company, Mr. Stewart says I have indicated in the past that I

14 10:00:12   did sign a document where I was 50 percent owner of the

15 10:00:14   business, but I also submitted a document where there was a

16 10:00:19   merchant account application where I was only 47.5 percent

17 10:00:22   owner of the business.

18 10:00:24        I -- if given the opportunity to depose Kim and

19 10:00:28   Nguyen, it is my belief that they will reverse what they

20 10:00:33   wrote in the declaration, and admit that Nguyen was also an

21 10:00:37   owner of the business.

22 10:00:38        So there are numerous disputed facts here, you know,

23 10:00:44   including decisionmaking.  And Mr. Stewart says I am only

24 10:00:51   relying on my own self-serving statements in my declaration,

25 10:00:55   but even in their own declarations from, for example, Nguyen,

1 10:01:00  Nguyen indicates numerous times that it was Kim who was in

2 10:01:03  control of this business, both sales and the processing side,

3 10:01:09  when I wasn't there the first 20 months.

4 10:01:11          And, you know, that is not something that I'm just

5 10:01:14  saying by myself.  Their own witness is saying that.

6 10:01:16          And all of -- all of these issues are important

7 10:01:24  because plaintiffs are seeking damages based on the standard

8 10:01:35  of reckless indifference.  And, you know, the five factors

9 10:01:40  listed, all of these disputed facts, even though they may be

10 10:01:46  partial, or -- again, even though they are disputed, they --

11 10:01:52  they do go towards, you know, ultimately resolving whether I

12 10:01:58  was recklessly indifferent in this business or a different

13 10:02:02  standard, perhaps lower standard, and that will alter the,

14 10:02:06  you know, the amount of damages.

15 10:02:07          THE COURT:  That is something -- I'm going to take

16 10:02:10  this under submission, Mr. Wen, and when I do so, I'll

17 10:02:14  consider the points that you've raised, and then also your

18 10:02:17  point about whether it's -- at some point if it just makes

19 10:02:20  sense to say as a matter of law that some of these, you know,

20 10:02:24  subtle issues can, in fact, only come out one way.

21 10:02:27          But for now, let me hear, then, about the statutory

22 10:02:32  penalties and the injunctive relief, and then I'll give

23 10:02:38  Mr. Wen a chance to respond to that.

24 10:02:41          MS. GARLOCK:  Good morning, Your Honor.

25 10:02:58          Just to clarify, I will be addressing the Bureau's

1  10:03:01  request for restitution, but if you have any other questions

2  10:03:04  about civil money penalties or injunctive relief, Mr. Stewart

3  10:03:08  can step back up.

4  10:03:09          And so I wanted to address a couple of Mr. Wen's

5  10:03:13  arguments about the request for restitution on sort of the

6  10:03:19  baseline question about the applicability of *Liu.*  Your

7  10:03:24  Honor's tentative order, we think it is just right, *Liu* does

8  10:03:27  not limit the availability of a net revenues calculation for

9  10:03:32  restitution.

10  10:03:32          So I wanted to turn to Mr. Wen's argument that the

11  10:03:36  Court, you know, net profits remains available, and should be

12  10:03:40  the appropriate measure here.

13  10:03:42          I think, you know, first, as the Ninth Circuit noted

14  10:03:47  in *CashCall*, net revenues and nonprofits are just, they are

15  10:03:52  different remedies.  And, you know, a backing out expenses is

16  10:03:57  only available when we are seeking net profits.  And the

17  10:04:00  Bureau here is seeking net remedies because that is the

18  10:04:03  remedy that would make consumers whole.

19  10:04:06          As the Ninth Circuit also recognized in *CashCall*, a

20  10:04:11  District Court can only deny a request for restitution

21  10:04:16  consistent with the statute.  And the CFPA makes clear that

22  10:04:21  one of its goals is to protect consumers from wrongdoing, and

23  10:04:26  to ensure that consumers are made whole by allowing for

24  10:04:32  remedies like restitution and remedies like refund of monies.

25  10:04:36  So we think that is appropriate here.

1  10:04:38    Of course, there are all sorts of different ways to

2  10:04:40    calculate remedies, and it might be appropriate to do net

3  10:04:43    profits if there were a different scheme, if defendants had

4  10:04:48    taken a lot of money and invested it and made some great

5  10:04:51    amount out of it.  That is the type of instance where net

6  10:04:58    profits might be available, but this is not one of them.

7  10:05:00    And last, I want to address Mr. Wen's argument that

8  10:05:06    a net revenues calculation would overstate the gains either

9  10:05:09    of the company or of him personally.

10 10:05:13    In terms of him personally, we are asking to hold

11 10:05:17    Mr. Wen jointly and severally liable for the restitution

12 10:05:21    obligation, and that follows naturally after finding that he

13 10:05:26    is individually liable.  That is what the Ninth Circuit has

14 10:05:29    made clear in *Commerce Planet*, and we think that fully

15 10:05:33    controls here.

16 10:05:34    In cases like *Commerce Planet*, and *FTC vs. Figgie*,

17 10:05:39    the Ninth Circuit grappled with similar arguments by someone

18 10:05:42    who, you know, did not take the full profits out of the

19 10:05:45    scheme, but made clear that the burden is on the wrongdoer

20 10:05:51    who has taken something from consumers.  They bear the burden

21 10:05:56    of making consumers whole.

22 10:06:01    And lastly, you know, to the extent that the Court

23 10:06:06    is interested in a net profits analysis, I think that this is

24 10:06:09    not even an instance where we could do one.  Mr. Wen has not

25 10:06:15    met his burden to show what the profits to the company were.

His statement that, you know, there were only 20 something
million dollars in net profits is not -- is not based on
sufficient evidence in the record.  And under the Ninth
Circuit's two-step burden shifting framework, you know,
regardless -- which, of course, does not account for expenses
anyways, it would still be his burden.

And last, related to that point, the Ninth Circuit
in *CashCall* has that line saying that perhaps net revenues
would overstate his gains.  That is not -- that is not a
comment on the availability of net profits or importing an
expenses analysis into the standard two-step burden shifting
framework.  Mr. Wen could show that the 95 million that the
Bureau has requested, he could try to put forward evidence
that that overstates the amount of revenue that the company
actually received, but he has not done so.

THE COURT:  All right.  Thank you.

Mr. Wen?

MR. WEN:  Your Honor, I did want to point out that
plaintiffs have made absolutely no effort to try to attempt
to calculate the net profits of the business.

Plaintiffs' counsel indicated that I have not met my
burden, but I don't agree.  I believe I submitted evidence
from the company's QuickBooks files that plaintiffs provided
in discovery that do show how the funds from the business
were used.  And it does show that, I don't even remember the

| | |
|---|---|
| 1 10:08:18 | exact number, I think 72 million of the 95 million were |
| 2 10:08:21 | legitimate business expenses.  So I did put forth the |
| 3 10:08:24 | evidence. |
| 4 10:08:25 | And plaintiffs also put forth absolutely, you know, |
| 5 10:08:29 | no effort to try to account for what has already been |
| 6 10:08:35 | received.  So according to my calculations, over 25 million |
| 7 10:08:40 | has already been received by plaintiffs; yet they ask for a |
| 8 10:08:45 | restitution amount of the full $95 million.  So again, a lot |
| 9 10:08:49 | of this, you know, is at issue. |
| 10 10:08:54 | That is all I have in regards to restitution. |
| 11 10:09:01 | THE COURT:  Thank you. |
| 12 10:09:02 | The matter is taken under submission.  As the |
| 13 10:09:05 | parties both recognize, of course, the real issue here isn't |
| 14 10:09:10 | so much had there been a trial who should win, but should the |
| 15 10:09:16 | plaintiffs prevail on summary judgment?  And again, there is |
| 16 10:09:22 | enough of a legal gloss to these arguments that in the |
| 17 10:09:26 | tentative I reached a conclusion that the Bureau could. |
| 18 10:09:31 | But, you know, obviously Mr. Wen has raised some |
| 19 10:09:36 | points, both about the applicability of his own declaration, |
| 20 10:09:40 | and then the lack of ability to cross-examine other |
| 21 10:09:46 | declarants.  And then, of course, at some point I'm just left |
| 22 10:09:51 | with my initial response when I first started looking at the |
| 23 10:09:55 | case, which is just how can it be the case as a matter of law |
| 24 10:09:59 | that the restitution has to be an amount that is really -- I |
| 25 10:10:05 | don't want to say outlandish, but just kind of breathtaking. |

1 10:10:08            So I'll wrestle with all of those and try to get out

2 10:10:13   an order as soon as I can.

3 10:10:14            Thank you, counsel.  Thank you, Mr. Wen.

4 10:10:18            MR. WEN:  Thank you, Your Honor.

5 10:10:20            MR. STEWART:  If I may ask for --

6 10:10:22            THE COURT:  If you would please rise when you

7 10:10:23   address the Court.

8 10:10:24            MR. STEWART:  Sorry.  If I may ask for one

9 10:10:26   clarification with respect to the -- you said the amount of

10 10:10:29  restitution.

11 10:10:30            THE COURT:  Yeah.

12 10:10:31            MR. STEWART:  Are you also referring to the amount

13 10:10:33  of civil money penalties?

14 10:10:34            THE COURT:  Correct.  No.  I mean, let me just say,

15 10:10:38  the total -- the amount of money here, which is obviously

16 10:10:41  more than not only Mr. Wen could pay, but virtually anyone

17 10:10:45  could ever pay, is that -- just let me put it this way:  It's

18 10:10:51  just, when you combine that with the plaintiff being the one

19 10:10:53  who is seeking summary judgment, this is not a typical case

20 10:10:57  for summary judgment.

21 10:10:58            So that is where I started with this, that is where

22 10:11:00  I'm coming back on that.  So I'll wrestle with that and get

23 10:11:04  an order out.

24 10:11:05            I mean, the issue here, as we've discussed, is

25 10:11:08  should there be a trial here or not?  That is what we are

| | |
|---|---|
| 1 10:11:11 | discussing here.  So that is what I have wrestled with, and I |
| 2 10:11:15 | will continue to think about now that I've heard your |
| 3 10:11:18 | arguments.  Thank you. |
| 4 10:11:19 | MS. GARLOCK:  Your Honor, could I make one final |
| 5 10:11:21 | point? |
| 6 10:11:21 | THE COURT:  That is? |
| 7 10:11:22 | MS. GARLOCK:  I just wanted to mention this is very |
| 8 10:11:23 | similar to the John Bent case, which I was involved with for |
| 9 10:11:26 | the FTC, where 487 million was ordered, and he took in about |
| 10 10:11:30 | $1 million.  And the Court really looked at the egregiousness |
| 11 10:11:33 | of the conduct.  And here we have 80,000 consumers who have |
| 12 10:11:35 | suffered, and he knew about the conduct and let it continue. |
| 13 10:11:38 | So I would ask the Court to consider that. |
| 14 10:11:39 | THE COURT:  Which is mentioned in the tentative. |
| 15 10:11:41 | And if you were making a closing argument, those would be |
| 16 10:11:46 | excellent points. |
| 17 10:11:47 | The question here is whether they are appropriate -- |
| 18 10:11:49 | they are sufficiently strong to prevail on summary judgment. |
| 19 | *****      *****      ***** |
| 20 | |
| 21 | |
| 22 | |
| 23 | |
| 24 | |
| 25 | |

1    I certify that the foregoing is a correct transcript from the

2    record of proceedings in the above-titled matter.

3

4

5

6    ---------------------------

7

8    Amy C. Diaz, RPR, CRR                October 3, 2023

9    S/  Amy Diaz

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25