UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA - WESTERN DIVISION

THE HONORABLE MICHAEL W. FITZGERALD, U.S. DISTRICT JUDGE

BUREAU OF CONSUMER FINANCIAL PROTECTION, ET AL.,

        PLAINTIFFS,

VS.

CONSUMER ADVOCACY CENTER, INC., ET AL.,

        DEFENDANTS.

CASE NUMBER SACV-19-1998-MWF

REPORTER'S TRANSCRIPT OF PROCEEDINGS

LOS ANGELES, CALIFORNIA

MONDAY, SEPTEMBER 18, 2023

RECEIVER'S MOTION RE ORDER TO SHOW CAUSE

REPORTED BY:

MARY RICKEY, CSR 11252, RPR
FEDERAL OFFICIAL CONTRACT
COURT REPORTER

**APPEARANCES OF COUNSEL:**

**FOR PLAINTIFF BUREAU OF CONSUMER FINANCIAL PROTECTION:**

    JESSE D. STEWART, ESQ.
    (APPEARING TELEPHONICALLY)
    CONSUMER FINANCIAL PROTECTION BUREAU
    1700 G STREET N.W.
    WASHINGTON, DC 20552
    JESSE.STEWART@CFPB.GOV

**FOR PLAINTIFF THE PEOPLE OF THE STATE OF CALIFORNIA:**

    MIGUEL JESUS RUIZ, DEPUTY CITY ATTORNEY
    LOS ANGELES CITY ATTORNEY'S OFFICE
    201 NORTH FIGUEROA STREET, 13TH FLOOR
    LOS ANGELES, CA 90012
    MIGUEL.J.RUIZ@LACITY.ORG

**FOR DEFENDANT KAINE WEN:**

    KAINE WEN, PRO SE
    REG. NO. 79766-112
    146 BISHOP LANDING
    IRVINE, CA 92620
    KAINEWEN@GMAIL.COM

**ALSO PRESENT:**

    THOMAS W. MCNAMARA, PARTNER
    (RECEIVER)
    MCNAMARA SMITH, LLP
    655 W. BROADWAY, SUITE 900
    SAN DIEGO, CA 92101-8484
    TMCNAMARA@MCNAMARALLP.COM

    EVAN J. DAVIS, ESQ.
    HOCHMAN SALKIN TOSCHER PEREZ, P.C.
    9100 WILSHIRE BLVD., SUITE 900W
    BEVERLY HILLS, CA 90212-3432
    DAVIS@TAXLITIGATOR.COM

```
 1        LOS ANGELES, CALIFORNIA; MONDAY, SEPTEMBER 18, 2023

 2                         10:06 A.M.

 3                          - - - -

 4        THE CLERK:  ITEM 2, SACV-19-1998-MWF, BUREAU

 5   OF CONSUMER FINANCIAL PROTECTION VERSUS CONSUMER ADVOCACY

 6   CENTER, INC., ET AL.

 7        COUNSEL MAY PLEASE STATE THEIR APPEARANCES FOR

 8   THE RECORD.

 9        MR. RUIZ:  GOOD MORNING, YOUR HONOR.

10   MIGUEL RUIZ FOR THE PEOPLE OF THE STATE OF CALIFORNIA.

11        MR. McNAMARA:  GOOD MORNING, YOUR HONOR.

12   TOM MCNAMARA.  I'M THE RECEIVER.

13        THE COURT:  GOOD MORNING.

14        MR. WEN:  THIS IS KAINE WEN, DEFENDANT.

15        GOOD MORNING.

16        THE COURT:  MR. WEN.

17        AND I UNDERSTAND IT, LAWYERS FOR THE BUREAU

18   ARE ON THE PHONE; IS THAT CORRECT?

19        MR. STEWART:  THAT'S CORRECT, YOUR HONOR.

20        THIS IS JESSE STEWART FOR THE BUREAU OF

21   CONSUMER FINANCIAL PROTECTION.

22        THE COURT:  THANK YOU.

23        MR. MCNAMARA.

24        MR. McNAMARA:  YOUR HONOR, AS YOU KNOW, WE

25   WERE FORCED TO FILE AN ORDER TO SHOW CAUSE RE CONTEMPT
```

1  AGAINST MR. WEN. AFTER YOUR ORDER, THE FINAL JUDGMENT
2  WAS ENTERED, IT REQUIRED MR. WEN TO DO A NUMBER OF THINGS
3  INCLUDING TURNING OVER ASSETS TO THE RECEIVERSHIP.
4      WE CONTACTED HIM PRETTY CLOSELY AFTER WE GOT
5  THE ORDER. WE ASKED FOR HIM TO COMPLY WITH THE ORDER AS
6  THE ORDER'S TERMS REQUIRED.
7      WE DIDN'T HEAR FROM HIM. WE REACHED OUT FOUR,
8  FIVE, SIX DIFFERENT TIMES, SENT EMAILS, MADE TELEPHONE
9  CALLS, AND GOT NO RESPONSE WHATSOEVER. ULTIMATELY
10 LEADING US -- REALLY WE HAD NO CHOICE BUT TO BRING THIS
11 ORDER TO SHOW CAUSE BEFORE THE COURT.
12     AND WHILE I KNOW YOU HAVE A LOT OF OTHER
13 THINGS TO DO, OUR HANDS WERE FORCED. WE REALLY COULDN'T
14 DO ANYTHING MORE, AND WE WEREN'T GETTING ANY SORT OF
15 RESPONSES.
16     **THE COURT:** HAVE YOU DISCUSSED WITH MR. DAVIS,
17 WHO I SEE IN THE COURTROOM, WHAT SHOULD HAPPEN WITH THE
18 WATCH AND ALL OF THAT?
19     MY INSTINCT IS THAT THE CRIMINAL CASE SHOULD
20 PREVAIL HERE, BUT WHAT IS THE RECEIVER'S POSITION IN THAT
21 REGARD?
22     **MR. McNAMARA:** YOUR HONOR, I HAVE NOT HAD AN
23 OPPORTUNITY TO TALK TO MR. DAVIS. I JUST MET HIM.
24     I'LL LEAVE IT TO THE COURT ULTIMATELY TO
25 DETERMINE WHICH ORDER PREVAILS. I DO KNOW THAT,

1  ULTIMATELY, THE FUNDS FROM THE SALE OF THE WATCHES AND
2  OTHER ITEMS WOULD GO BACK TO THE CONSUMER PROTECTION
3  FINANCIAL BUREAU AND ULTIMATELY THE CONSUMERS.  SO
4  THERE'S SOME BENEFIT THERE.
5         I KNOW THE TAX DIVISION HAS SOME RULES ABOUT
6  WHEN THEY STAND BY AND LET THIS SORT OF ORDER TAKE ITS
7  PLACE WHERE ULTIMATELY IT'S GOING TO BENEFIT THE
8  CONSUMERS, BUT I HAVE NOT HEARD FROM ANYBODY ABOUT THAT,
9  AND I DON'T HAVE PARTICULARS.  I THINK THE CASE IS
10 SEALED.  SO I DON'T HAVE THE PARTICULARS.
11        I LEARNED MORE ABOUT IT IN MR. WEN'S
12 OPPOSITION DECLARATION THAN I KNEW ANYTHING ABOUT THE
13 CRIMINAL CASE BEFORE THAT.
14        SO I'M A LITTLE BIT AT A LOSS TO DETERMINE
15 WHICH SIDE SHOULD GO FORWARD.
16        **THE COURT:**  ALL RIGHT.
17        MR. DAVIS, I KNOW YOU AREN'T COUNSEL OF RECORD
18 FOR MR. WEN IN THIS CASE, AND I DON'T WANT TO BE --
19 NONETHELESS, IS THERE ANYTHING THAT YOU WOULD LIKE TO
20 SAY?
21        **MR. DAVIS:**  CERTAINLY, YOUR HONOR.
22        SO, AS THE COURT INDICATED, I WAS BROUGHT ON
23 TO DEAL WITH THE CRIMINAL RESTITUTION AND ANY I.R.S.
24 ASSESSMENTS STEMMING FROM THE CRIMINAL CASE.  FOR SOME
25 REASON, THAT JUDGMENT IS STILL SEALED.

1　　　　　　SO I UNDERSTAND THE RECEIVER'S INABILITY TO
2　REALLY KNOW WHAT WAS GOING ON, ALTHOUGH IT WAS FAIRLY
3　DESCRIBED, AT LEAST IN PART, IN SOME OF THE PAPERS FILED
4　WITH THE COURT.
5　　　　　　I REACHED OUT FIRST TO THE U.S. ATTORNEY'S
6　OFFICE THAT HAD SENT A LETTER PROBABLY A MONTH AND A HALF
7　AGO, TWO MONTHS AGO, TO MR. WEN TO SEE IF I COULD FIND
8　SOMEONE TO DISCUSS IS THIS A SITUATION IN WHICH THE U.S.
9　ATTORNEY'S OFFICE OR THE I.R.S. WANTS TO ASSERT PRIORITY
10　BECAUSE, YOU KNOW, THERE ARE RULES AND THEY'RE NOT EASY
11　TO UNDERSTAND, AND THERE'S DISCRETION AND THAT SORT OF
12　THING.
13　　　　　**THE COURT:** DISCRETION ON THE PART OF THE U.S.
14　ATTORNEY'S OFFICE AND THE TAX DIVISION OR ON THE PART OF
15　THE COURT?
16　　　　　**MR. DAVIS:** ON THE PART OF THE I.R.S. I THINK
17　THE COURT -- ABSENT THE EXERCISE OF DISCRETION, THE
18　COURT, IN OUR VIEW, WOULD HAVE TO DECIDE THAT THE FIRST
19　IN TIME WAS THE FIRST IN RIGHT.
20　　　　　　SO I REACHED OUT TO ZORAN SEGINA, A.U.S.A.,
21　WHO THE COURT MAY KNOW, WHO SUGGESTED -- FIRST, HE AGREED
22　WITH AT LEAST THE CONCEPT, AND HE DIDN'T GET INTO THE
23　DETAILS, BUT THAT THE GOVERNMENT MIGHT BE IN FIRST, THE
24　I.R.S. MIGHT BE IN FIRST POSITION.
25　　　　　　BUT HE SUGGESTED THAT I REACH OUT TO A REVENUE

1  OFFICER, WHO I DID A COUPLE OF TIMES, AND THEN I WORKED
2  MY WAY UP THE CHAIN ON FRIDAY.  WE STILL DON'T HAVE A
3  REVENUE OFFICER ASSIGNED.
4         SO IT'S STILL AN OPEN QUESTION WHETHER THE
5  I.R.S. AND THE DEPARTMENT OF JUSTICE, THE U.S. ATTORNEY'S
6  OFFICE, WOULD ASSERT PRIORITY.  I SUSPECT THEY WILL, BUT
7  WE DON'T HAVE THE ANSWER YET.
8         SO I WOULD SUGGEST PERHAPS POSTPONING THIS TO
9  GIVE US ENOUGH TIME TO ENGAGE WITH THE I.R.S. AND THE
10 U.S. ATTORNEY'S OFFICE TO DETERMINE ARE THEY GOING TO SAY
11 THEY HAVE PRIORITY OVER ASSETS AND THEN LOOP IN THE
12 RECEIVER AT THAT POINT.
13        **THE COURT:**  AND WHAT ABOUT MR. WEN'S
14 SUGGESTION THAT HE PHYSICALLY GIVE UP THE TANGIBLE ASSETS
15 TO THE CLERK?
16        I'VE HAD THAT HAPPEN IN INSURANCE CASES FOR
17 INTERPLEADER.  OBVIOUSLY, I'VE NEVER HAD IT HAPPEN WITH A
18 WATCH.  SO I DON'T KNOW.  I'LL HAVE TO TALK TO THE CLERK
19 TO SEE IF THE CLERK WANTS A WATCH.
20        BUT WHAT'S YOUR SUGGESTION OR WHAT'S YOUR
21 POSITION VIS-A-VIS THAT SUGGESTION WHICH MR. WEN MADE IN
22 HIS OPPOSITION?
23        **MR. DAVIS:**  MY VIEW, IT'S REALLY UP TO THE
24 RECEIVER.  IF THEY'RE COMFORTABLE WITH MR. WEN'S
25 REPRESENTATION TO THE COURT THAT HE'S NOT GOING TO

1  DISPOSE OF THE WATCHES, THEN WE MIGHT AS WELL JUST LEAVE
2  THEM IN HIS HANDS.  I THINK HE WAS JUST OFFERING THAT TO
3  DEMONSTRATE THAT HE UNDERSTANDS HE'S NOT KEEPING THEM.
4           THAT REALLY IS IN THE NATURE OF AN
5  INTERPLEADER.  I DON'T THINK IT'S TECHNICALLY ONE, BUT IN
6  MY MIND, IT'S UP TO THE RECEIVER, IF THE RECEIVER WANTS
7  TO DO THAT.  I SUSPECT THE COURT WOULD RATHER NOT HAVE
8  THOSE THINGS.
9           **THE COURT:**  CORRECT.
10          **MR. DAVIS:**  BUT IT'S REALLY JUST A SHOW OF
11 GOOD FAITH, YOUR HONOR.
12          **THE COURT:**  THANK YOU.
13          MR. WEN, WHAT DO YOU HAVE TO SAY IN OPPOSITION
14 TO THE REMAINDER OF THE REQUEST, THE TANGIBLE ASSETS
15 ASIDE?
16          **MR. WEN:**  I LEAVE IT UP TO MR. DAVIS TO
17 CONTACT THE DEPARTMENT OF JUSTICE.  I HAVE NO ISSUES WITH
18 WHATEVER I'M ADVISED BY MY ATTORNEY IN THAT MATTER.
19          **THE COURT:**  I'M JUST SAYING AS TO THE OTHER --
20 ASIDE FROM YIELDING UP THE WATCHES, THE OTHER REQUESTS --
21          YOU KNOW, ESSENTIALLY, THE GIST OF YOUR
22 OPPOSITION, OF COURSE, IS THAT YOU REALLY ARE NOT IN A
23 POSITION TO DO WHAT IT IS YOU'RE BEING ASKED TO DO.
24          I'M ASKING IS THERE'S ANYTHING YOU WISH TO SAY
25 IN REGARD TO THAT?

1     **MR. WEN:** MY UNDERSTANDING IS I HAVE ORDERS
2  THAT CONFLICT WITH EACH OTHER.  I'M JUST WORRIED ABOUT
3  GETTING IN TROUBLE WITH THE CRIMINAL CASE IF I DO
4  ANYTHING.  SO THAT'S WHY I HAD TO BRING ON MR. DAVIS TO
5  ASSIST ME WITH THAT.
6          (MR. WEN CONFERS WITH ATTORNEY.)
7          **MR. WEN:** YOUR HONOR, ARE YOU ASKING ABOUT THE
8  NON-WATCHES?
9          **THE COURT:** CORRECT.
10         **MR. WEN:** OKAY.  SPECIFICALLY, I ADDRESS
11 EVERYTHING IN MY OPPOSITION, MY DECLARATION.  I DON'T
12 HAVE ACCESS TO THOSE ITEMS.  I DON'T OWN OR CONTROL THOSE
13 ITEMS.  SO I'M NOT ABLE TO TURN IT OVER.
14         **THE COURT:** NO, THAT'S FINE.  IT'S JUST
15 ESPECIALLY AFTER REVIEWING EVERYTHING, I JUST WANTED TO
16 SEE IF THERE WAS ANYTHING ELSE YOU WANTED TO SAY IN THAT
17 REGARD.
18         MR. MCNAMARA, WHAT IS IT THAT LEADS THE
19 RECEIVER TO BELIEVE, PUTTING THE WATCHES ASIDE, THAT
20 MR. WEN, IN FACT, HAS POSSESSION, CUSTODY, OR CONTROL
21 OVER ANY OTHER ASSETS?
22         **MR. McNAMARA:** YOUR HONOR, THERE ARE REALLY
23 TWO COMPONENTS.
24         THERE'S THE CRYPTOCURRENCY THAT WE'VE GONE
25 ROUND AND ROUND -- OR AT LEAST THE AGENCY AND THE COURT

1  AND THE DEFENDANT WENT ROUND AND ROUND AGAIN.  A FINAL
2  JUDGMENT REQUIRED HIM TO TURN THOSE OVER.  I ASSUME THAT
3  HE'S GOT ACCESS AND SHOULD DO THAT.
4         THE COURT IS MUCH MORE FAMILIAR WITH THE
5  CRYPTO ISSUE THAN EVEN I AM.  SO I DON'T NEED TO EXPOUND
6  ON THAT.
7         I THINK THE OTHER ISSUE THAT I WAS CONCERNED
8  ABOUT WAS THE CLAIM IN THE OPPOSITION DECLARATION THAT
9  THESE THREE ESCHER PRINTS, WHICH ARE WORTH $104,000,
10 APPARENTLY --
11         **THE COURT:**  EACH OR COLLECTIVELY?
12         **MR. McNAMARA:**  I'M GOING BY WHAT HE PROVIDED
13 IN HIS FINANCIAL DISCLOSURE STATEMENT, AND IT APPEARS TO
14 BE GROSS BETWEEN THE THREE.
15         I CAN TELL THE COURT THAT WHEN HE INCLUDED HIS
16 FINANCIAL STATEMENTS, THE FINANCIAL DECLARATION, HE
17 INDICATED THOSE WERE IN IRVINE, THE SAME PLACE HE
18 INDICATED THEY WERE FOR THE WATCHES AND FOR THE DIAMOND
19 AND FOR EVERYTHING ELSE.  HE HAD THEM IN HIS POSSESSION
20 IS OUR POSITION.
21         FOR THE FIRST TIME, HE CLAIMED IN THIS
22 OPPOSITION, FOUR YEARS AFTER, THAT SOMEHOW THEY WERE AT
23 THE HUGHES LOCATION.
24         YOUR HONOR, THERE WERE THREE LOCATIONS.  THIS
25 WAS A BIG OPERATION.  THERE WERE THREE DIFFERENT

1  LOCATIONS.  THE HUGHES LOCATION -- I TALKED TO
2  CORNELIA GORDON, WHO FILED A DECLARATION HERE.  SHE WAS
3  AT THAT LOCATION.  I VISITED THAT LOCATION IMMEDIATELY
4  THAT DAY AS WELL.  THERE WERE NO ESCHER PRINTS THAT WE
5  SAW OR WE OBSERVED.
6          WE WENT BACK AND LOOKED AT THE INVENTORY FOR
7  THAT PARTICULAR OFFICE.  NO PRINTS, NO ESCHER PRINTS.
8  WE LOOKED AT THE PICTURES TAKEN FROM THAT OFFICE ON THAT
9  DAY.  NO ESCHER PRINTS.  WE LOOKED AT THE VIDEO ON THAT
10 DAY.  NO ESCHER PRINTS.
11         SO WE'RE LEFT WITH ONLY MR. WEN'S CLAIM FOUR
12 YEARS LATER THAT HE DOESN'T HAVE POSSESSION OF THOSE AND
13 SOMEHOW THEY ARE AT THE HUGHES LOCATION.
14         I DON'T KNOW WHAT TO DO ABOUT THAT, BUT I CAN
15 TELL YOU THAT I HAVE GRAVE DOUBTS ABOUT THE CLAIM.
16         **THE COURT:**  THANK YOU.
17         AGAIN, MR. WEN, DID YOU WANT TO SAY ANYTHING
18 IN REGARD TO THE ESCHER PRINTS?
19         **MR. WEN:**  YES.  THE ESCHER PRINTS WERE
20 PURCHASED BY THE BUSINESS AND LEFT AT THE BUSINESS.
21         MR. MCNAMARA INDICATED THAT HE'S REVIEWED ALL
22 THE PICTURES OR WHATEVER THE INVENTORY WAS OF THE SITE.
23 I'M GLAD TO TAKE A LOOK AT THAT AND SEE IF I CAN LOCATE
24 IT.
25         I'M NOT SURE THEY'RE EXPERTS AND THEY

1  RECOGNIZE ALL OF THE ESCHER PRINTS BECAUSE THERE ARE, YOU

2  KNOW, NUMEROUS IN EXISTENCE.  I'M HAPPY TO TAKE A LOOK AT

3  THE PICTURES AND SEE IF I CAN IDENTIFY IT.

4         **THE COURT:**  WELL, YOU MUST KNOW -- THERE

5  CERTAINLY ARE NUMEROUS ESCHER PRINTS, BUT I PRESUME WE

6  ALL KNOW WHICH THREE IMAGES ARE IN THESE PRINTS, OR IS IT

7  SIMPLY JUST AN ITEM THAT'S BEEN MENTIONED AND WE -- WHEN

8  I SAY "WE," COLLECTIVELY, THE PARTIES HERE -- ARE UNAWARE

9  OF WHAT THOSE PARTICULAR IMAGES CONSIST OF?

10        **MR. McNAMARA:**  I BELIEVE AT ONE TIME,

11 YOUR HONOR, WE ACTUALLY LOOKED THEM UP AND HAD A SENSE

12 WHAT THEY WERE AND LOOKED LIKE.

13        AND THE PERSON WHO -- CORNELIA GORDON, WHO WAS

14 AT THE SITE ON THAT DAY AND WHO LOOKED THROUGH THE VIDEOS

15 AND LOOKED THROUGH THE PICTURES AND WAS, AGAIN, AT THE

16 SITE THAT DAY, DID NOT SEE THEM THERE.

17        SO IT'S DIFFICULT FOR ME TO BELIEVE THAT

18 SOMEBODY WOULD PUT $104,000 PRINTS AT THE HUGHES

19 LOCATION, WHICH WAS -- AMONG THE THREE LOCATIONS, IT WAS

20 KIND OF A STORAGE AREA FOR LARGE, YOU KNOW -- I MEAN,

21 IT WAS NOT PARTICULARLY WHERE YOU WOULD PUT $104,000

22 PRINTS.

23        **THE COURT:**  ALL RIGHT.  I'LL TAKE THIS UNDER

24 SUBMISSION.

25        MR. DAVIS, JUST WORK WITH THE RECEIVER'S

```
1    COUNSEL HERE ON WHAT SHOULD HAPPEN WITH THE WATCHES.
2              MR. WEN, MAINTAIN CUSTODY OF THE WATCHES,
3    OBVIOUSLY, AND WAIT TO SEE WHETHER THE I.R.S. IS
4    ASSERTING A PRIORITY HERE.
5              THANK YOU, COUNSEL.
6              (10:18 A.M., THE PROCEEDINGS ADJOURN.)
7                          - - - - -
```

CERTIFICATE

I HEREBY CERTIFY THAT PURSUANT TO SECTION 753, TITLE 28, UNITED STATES CODE, THE FOREGOING IS A TRUE AND CORRECT TRANSCRIPT OF THE STENOGRAPHICALLY REPORTED PROCEEDINGS HELD IN THE ABOVE-ENTITLED MATTER AND THAT THE TRANSCRIPT PAGE FORMAT IS IN CONFORMANCE WITH THE REGULATIONS OF THE JUDICIAL CONFERENCE OF THE UNITED STATES.

DATED THIS 2ND DAY OF NOVEMBER 2023.

_____
MARY R. RICKEY
CSR 11252, RPR
FEDERAL OFFICIAL
CONTRACT COURT REPORTER