Logan D. Smith (SBN 212041)
lsmith@mcnamarallp.com
McNamara Smith LLP
655 West Broadway, Suite 900
San Diego, California 92101
Telephone: 619-269-0400
Facsimile:  619-269-0401

*Attorneys for Receiver,*
*Thomas W. McNamara*

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| Bureau of Consumer Financial Protection; et al., | Case No. 8:19-cv-01998-MWF (KSx) |
|---|---|
| Plaintiffs, | **RECEIVER'S RESPONSE TO ORDER RE: KAINE WEN'S COMPLIANCE WITH FINAL JUDGMENT** |
| v. | |
| Consumer Advocacy Center Inc., d/b/a Premier Student Loan Center; et al., | JUDGE: Hon. Michael W. Fitzgerald<br>CTRM:  5A |
| Defendants. | |

The court-appointed receiver Thomas W. McNamara ("Receiver") respectfully submits this response to Defendant Kaine Wen's Declaration in accordance with the Court's Order requiring the Receiver to set forth his position regarding (1) whether Kaine Wen is in full compliance with the Final Judgment and (2) whether the Receiver's OSC Motion for contempt is now moot.  Having reviewed the Declaration, the Receiver offers the following: (1) Mr. Wen is not in full compliance with the Final Judgment, given his admitted failure to comply with the Court's requirements that he turn over control of unhosted Bitcoin and Ethereum digital currencies; and (2) based on evidence of Mr. Wen's long history of a lack of candor and noncompliance with the Court's Orders, and because the

sole evidence of his inability to turn over the unhosted digital currencies is his statement (ECF No. 465), which cannot be credited, the Receiver believes the OSC motion is not moot.

As discussed in more detail below, to this day, Mr. Wen remains obligated under several Court Orders to turn over tens of millions of dollars in cryptocurrency assets. The Receiver previously requested that the Court order Mr. Wen:

1. To show cause why he should not be held in contempt for his violations of the Final Judgment;
2. To immediately transfer all virtual currency identified in the Final Judgment (with the exception of the virtual currency already transferred or made available to the Receiver), or to provide information and hardware necessary to access those assets (passcodes, pins, or keys);
3. Turn over the Escher prints;
4. To provide a sworn statement attesting to his compliance; and
5. If he fails to comply, to pay a fine of $1,000 each day to coerce compliance.

The Receiver believes that relief is still appropriate, but he respectfully defers to the Court as to the appropriate relief needed to compel Mr. Wen's compliance, given the circumstances and history here.

The Court has previously held Mr. Wen in contempt with respect to these cryptocurrency assets, specifically ordering him to "immediately transfer to the Receiver the cryptocurrency assets … subject to the asset freeze … [in] the PI Order…" and "all other cryptocurrency assets that he holds or controls as of the date of the Transfer Order." (ECF No. 418 at 11.) In that same Order, the Court ordered Mr. Wen to pay $1,000 for each day after January 17, 2023 that he remained out of compliance. *Id.* That contempt has not been purged.

The Court also held that "there was clear and convincing evidence that Defendant [Wen] has significant undisclosed cryptocurrency assets" in its July 2023 Order on the CFPB's motion for summary judgment (ECF No. 455 at 23). As detailed below, Mr. Wen's remains out of compliance with his obligations under the Final Judgment.

Based on a review of the Final Judgment, Mr. Wen's declaration, relevant supporting materials, and prior Court filings, the assets Mr. Wen has – and has not – turned over to the Receiver or the CFPB are summarized below.

### 1. Assets Transferred by Mr. Wen

Mr. Wen has complied with the asset transfers required in the Final Judgment as to the following assets:

1. Mr. Wen's assets in the Bank of New York Mellon Corporation were transferred to the CFPB,[1] as required by Paragraph 67(a) of the Final Judgment;
2. Mr. Wen's assets in a Wells Fargo bank account were transferred to the CFPB, as required by Paragraph 67(b) of the Final Judgment;
3. Mr. Wen turned over the assets in the Binance.com account to the Receiver, as required by Paragraph 67(e) of the Final Judgment;
4. Mr. Wen turned over the Stellar Lumen and Monero to the Receiver, as required by Paragraph 67(f) of the Final Judgment;
5. Mr. Wen turned over his two Audemars Piguet Royal Oak Offshore watches and his Breitling Super Avenger watch to the Receiver, as

///
///
///

---

[1] Mr. Wen's Declaration states that this account was transferred to the Receiver; however, his accounts at Mellon Bank and Wells Fargo were transferred by the banks to the CFPB, not to the Receiver.

required by Paragraphs 67(g), 67(h) & 67(i) of the Final Judgment[2];
and

6. Mr. Wen turned over the 3.584 carat diamond, as required by Paragraph 67(j) of the Final Judgment.[3]

### 2. Assets **NOT** Transferred by Mr. Wen

Mr. Wen has not complied with the asset transfers required in the Final Judgment as to the following assets:

1. Mr. Wen has not turned over the Bitcoin addresses identified in Paragraph 67(c) of the Final Judgment. Mr. Wen admits this in Paragraphs 35 of his Declaration; Mr. Wen claims that he "do[es] not have the ability to turn over the bitcoin because [he] do[e]s not own, possess, control, have custody of, or otherwise … hold[], directly or indirectly, the unhosted virtual currency wallet addresses, and [he] do[es] not have access to the unhosted virtual currency wallet addresses either." Wen Declaration (ECF No. 500) ¶ 35. As discussed below, Mr. Wen's claim should not be credited;

2. Mr. Wen has not turned over the Ethereum addresses identified in Paragraph 67(d) of the Final Judgment. Mr. Wen admits this in Paragraph 36 of his Declaration; Mr. Wen claims that he "do[es] not have the ability to turn over the ethereum because [he] do[e]s not own, possess, control, have custody of, or otherwise … hold[],

---

[2] Mr. Wen was requested to provide the watch documentation and boxes at the time the watches were turned over. He failed to do so. This substantially reduced the watches' market value and expected sales prices.

[3] In his Second Supplemental Declaration, Mr. Wen describes a supposed conflict between his criminal restitution and his redress obligations which caused him to delay turning the items over for ten months. Despite Mr. Wen's counsel's arguments otherwise, the Department of Justice agreed with the Receiver that the redress obligation took priority over the restitution order (the TRO in this case, which froze Wen's assets for consumer redress, was entered years before Mr. Wen's criminal sentence and restitution order).

    directly or indirectly, the unhosted virtual currency wallet addresses, and [he] do[es] not have access to the unhosted virtual currency wallet addresses either." Wen Declaration (ECF No. 500) ¶ 36. As discussed below, Mr. Wen's contention should not be credited;

3.  Mr. Wen has not turned over a Reus car stereo, as required under Paragraph 67(k) of the Final Judgment. Mr. Wen attests he does not have possession of the radio, since it was in a leased car that he has returned;[4] and

4.  Mr. Wen has not turned over three Escher prints, as required under Paragraph 67(l) of the Final Judgment. Mr. Wen claims he does not have possession of them and that the prints were kept at Defendants' office. This is not supported by any of the contemporary evidence – the prints were not identified on the videos or photographs taken at any of the Defendants' offices upon initial entry and are not listed on any of the Receiver's contemporaneous inventories. Mr. Wen's claim regarding the prints (first raised last year) is also seemingly inconsistent with earlier financial disclosure documents he completed.[5]

### 3. The Receiver's Position as to Mr. Wen's Compliance and OSC Contempt Motion

Mr. Wen's failures to transfer the Bitcoin and Ethereum do constitute material violations of the provisions in the Final Judgment. The Judgment, issued on July 7, 2023, required him to transfer within 10 business days the virtual

---

[4] The Receiver does not consider the failure to turn over the car stereo to be a material violation of the Final Judgment.

[5] Again, while the Receiver does not believe Mr. Wen's statement about the prints is true (and his statement is the only evidence to support his claim), the Receiver does not consider Mr. Wen's failure to turn over the prints, standing alone, as contemptuous.

currency identified in paragraphs 67(c) and (d). By his own admission, he has not. And this failure to turn over the unhosted cryptocurrency or any information and/or hardware needed to access it (*e.g.*, passcodes, pins, or keys) violates his obligations in the Final Judgment.

As the Court is already aware (*see* ECF No. 418 at 4-5), the heightened concern with the failure to turn over these cryptocurrencies relates to the fact that they are held in *unhosted wallets*. As discussed by the expert witness in cryptocurrency offered by the CFPB (Pamela Clegg), unlike cryptocurrency held in hosted wallets, which are held at third party institutions, cryptocurrency held in unhosted wallets can be easily concealed. *See* Clegg Declaration (ECF Nos. 364-3, 365-3) ¶¶ 32-33. This is because only people with direct access to the unhosted wallet can control or confirm control of the cryptocurrency held at these addresses. *See id.*

Furthermore, the Court previously held that there was clear and convincing evidence that Mr. Wen violated previous orders because "it was highly probable that Wen controlled undisclosed cryptocurrency accounts." (ECF No. 418 at 10.) In reaching that finding, the Court relied on Pamela Clegg's detailed expert declaration, showing that Mr. Wen controlled unhosted cryptocurrency assets that he was ordered by the Court to turn over in the Final Judgment. *See id*. ¶¶ 116-119. Specifically, as of the date of her report, Ms. Clegg identified that Mr. Wen most likely controlled digital currency at 25 unhosted Bitcoin addresses and 2 Ethereum addresses. *See id*. ¶¶ 116-119; ECF No. 418 at 7-8. As of today, this cryptocurrency is worth tens of millions of dollars.

With respect to these very assets, the Court previously found Mr. Wen in contempt in January 2023, holding Mr. Wen "has refused to identify and transfer assets from the 25 unhosted wallets with Bitcoin and 2 unhosted wallets with Ether attributed to him in Ms. Clegg's report." ECF No. 418 at 10. The Court also found that "Wen's naked assertions that he does not own any bitcoin, does not

control the addresses identified by Ms. Clegg, and cannot reach Sea who holds Ether for Wen does not 'categorically and in detail' document why he cannot comply." *Id.*

To this date, Mr. Wen has still presented no credible evidence explaining how he no longer has control or ownership of these assets. Rather, it is his word – and his word alone – that he offers to support his claim that he does not own or control the cryptocurrency held in unhosted wallets. Given Mr. Wen's conduct in this case, including the conduct that previously led the Court to hold him in contempt (ECF No. 418), his lack of candor about his assets, and his pattern of non-compliance in this case (*see id.*), his word is insufficient to credit this claim. In order to protect the Receivership Estate and ensure that the cryptocurrency assets are recovered, the Receiver must report to the Court that he does not believe the OSC Motion seeking to hold Mr. Wen in contempt is moot.

Dated: September 6, 2024         MCNAMARA SMITH LLP

By:   /s/ Logan D. Smith
      Logan D. Smith
      *Attorneys for Receiver,*
      *Thomas W. McNamara*

# **CERTIFICATE OF SERVICE**

I hereby certify that on the 6th day of September, 2024, I caused the foregoing to be electronically filed with the Clerk of the Court using the CM/ECF system, which will send notification of the filing to all participants in the case who are registered CM/ECF users.

 /s/ Logan D. Smith
Logan D. Smith
*Attorney for Receiver,*
*Thomas W. McNamara*