UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NEW YORK

| | |
|---|---|
| CONSUMER FINANCIAL PROTECTION BUREAU, et al.<br><br>                        Plaintiffs,<br><br>vs.<br><br>STRATFS, LLC (f/k/a STRATEGIC FINANCIAL SOLUTIONS, LLC), et al.<br><br>                       Defendants, and<br><br>STRATEGIC ESOP, et al.,<br><br>                       Relief Defendants. | Case No. 1:24-cv-00040-EAW-MJR |

**RECEIVER'S RESPONSE TO DEFENDANTS JASON BLUST AND LIT DEF STRATEGIES, LLC'S POST-HEARING BRIEF**

## INTRODUCTION

The contemptuous conduct of Defendants Jason Blust and Lit Def Strategies LLC is extraordinary. In their Post Hearing Brief, however, they have little to say about the facts and instead offer meritless procedural maneuvers and objections. Their recently-raised jurisdictional challenge under 28 U.S.C. § 636 has no merit, because they consented to the Magistrate Judge's jurisdiction by briefing this very motion for the past year and extensively participating in a determinative hearing on the motion before Magistrate Judge Roemer last May. Under Supreme Court precedent, their conduct constitutes implied consent. *See Roell v. Withrow*, 538 U.S. 580, 590 (2003). Their argument can be rejected summarily.

As to their other limited arguments on the merits, they likewise collapse under scrutiny. The contemptuous conduct extends well beyond the knowing operation of Lit Def after the TRO. While this alone was egregious, that aspect of contempt was purged; however, Blust and Lit Def have remained in contempt for the past year, because the operations of Fidelis have continued ***to this day*** under the nominal control of Individual Defendant Cameron Christo. Perhaps most troubling of all, the efforts to keep Fidelis out of the Receivership have extended to the submission of a total of six false and misleading declarations by Blust himself (one), Michelle Hinds Gallagher (two), and Christo (three). And when given an opportunity by the Court to explain their conduct and tell their story, all three – Blust, Hinds, and Christo – invoked their Fifth Amendment rights. Under these circumstances, the contempt is clear, and the sanctions needed to coerce compliance must be significant, as detailed in the Receiver's Post-Hearing Brief.

In their Post-Hearing Brief, Blust and Lit Def try to frame the remainder of the OSC Motion as a narrow perjury dispute rather than what it is: a systemic refusal to surrender control

of Fidelis, which involved participating in a fraud on the Court. The record is unequivocal: Blust dictates Fidelis's payroll, hiring/firing, vendor contracts, and work assignments, and he even redirected a $750,000 payment owed to Lit Def to Fidelis to fund early operations.

Each day of noncompliance compounds the harm to the receivership estate – Fidelis remains in the hands of frontman Christo, and the risks of Asset dissipation and destruction of evidence are substantial. Had Blust complied with the TRO and PI at the outset, as required, this motion would never have been necessary. Instead, he, Hinds, and Christo coordinated false testimony to the Court. That has necessitated voluminous briefing, disputes over evidence, and an evidentiary hearing – all while Fidelis remains shielded from the Receiver. In light of this egregious conduct, the Court should hold Blust and Lit Def in contempt, mandate immediate surrender of Fidelis, award fees and costs, and impose daily fines during the period of noncompliance.

## ARGUMENT

**A.  Blust and Lit Def Consented to Determination of the Blust OSC Motion by the Magistrate Judge**

As discussed more fully in the Receiver's Post-Hearing Brief (Dkt. No. 622 at 38-40), Blust and Lit Def consented to have the Magistrate Judge determine the Blust OSC Motion under 28 U.S.C. § 636 by filing multiple briefs and voluntarily appearing at the May 23, 2024 hearing on this motion without raising any objection under Section 636.[1]  *See Roell,* 538 U.S. at 590 (2003) (implied consent exists when party aware of right to refuse consent under § 636 and

---

[1] Blust and Lit Def voluntarily appeared at the May 23, 2024 hearing, understanding that Judge Roemer could rule on the motion immediately; in fact, Judge Roemer determined that a further evidentiary hearing with testimony from key witnesses would be necessary only ***after*** hearing arguments from counsel (including from Blust and Lit Def's counsel) on May 23rd.  Thus, their choice not to object under Section 636 or request a *de novo* hearing before the District Court prior to or during that hearing unmistakably constitutes implied consent under *Roell*.

2

instead voluntarily chooses to litigate matter before magistrate judge); *Astra USA, Inc. v. Bildman*, 375 F. App'x 129, 132 (2d Cir. 2010) (defendants implicitly consented to magistrate judge's jurisdiction by appearing without objection before and filing various submissions with Magistrate Judge); *Nitto v. Fairbrother*, 2023 WL 5098146, at *1-2 (W.D.N.Y. Mar. 16, 2023) (parties consented to magistrate judge's authority by litigating summary judgment motion before judge without raising objection under 28 U.S.C. § 636). The jurisdictional objections recently offered serve no purpose other than burdening the Court more and delaying a final determination of this motion and the imposition of sanctions.[2]

**B.     The OSC Motion is Procedurally Sound and Based on Blust and Lit Def's Continued Violations of the TRO and PI**

Blust and Lit Def argue that while they violated the TRO by continuing to operate Lit Def after entry of the TRO, the Receiver should have filed a second contempt motion to address Blust's perjurious declaration of March 14, 2024. This argument grossly mischaracterizes the initial grounds for the Blust OSC Motion and misunderstands the intertwined relationship between the continuing contempt and the submission of false testimony coordinated among Blust, Hinds, and Christo.[3] Simply put, the grounds for contempt are Blust and Lit Def's

---

[2] Blust and Lit Def's extended discussion of the contours of Section 636 jurisdiction (*see* Dkt. No. 619 at 2-4) is irrelevant, because they long since waived the issue by consenting to the Magistrate Court's jurisdiction. These arguments are addressed more fully in the Receiver's Post-Hearing Brief. Notably, Blust and Lit Def have withdrawn their stated objection to the Magistrate Judge conducting a fact-finding hearing (Dkt. No. 619 at 1) and instead apparently now only seek for the District Court to hold a de novo hearing after the Magistrate Court has certified the facts and made only recommendations as to potential sanctions.

[3] Tellingly, Blust and Lit Def claim that the Receiver is relying on Blust's perjury as an independent grounds for contempt "without so stating specifically[.]" Dkt. No. 619 at 5. The Receiver has not "so stat[ed] specifically" because that has never been the Receiver's position. Blust's false and misleading declaration is highly relevant to the Blust OSC Motion and the determination of penalties, but central grounds for the motion are Blust and Lit Def's violations of the TRO and PI.

3

violations of the TRO and the PI (which replaced the TRO). This is made clear in the initial Contempt Motion filed on February 26, 2024, which identified the specific provisions of the TRO that were being violated, including Section XIII regarding "Cooperation with Receiver." *See* Dkt. No.179-1 at 17-19. In fact, the initial Memorandum for the Blust OSC Contempt Motion directly included **in bold font** the exact language from subsections B.1 and B.7 of Section XIII of the TRO that Lit Def and Blust were actively violating. *See* Dkt. No. 179-1 at 18.[4] On page 16 of the Receiver's Memorandum, the Receiver specifically informed Blust and Lit Def they were violating the TRO via, among other things, their continued operations of Lit Def through Fidelis: "It appears that Lit Def and Blust have been transacting Lit Def business via Lit Def itself and/or through Fidelis. It now also appears that Fidelis is handling some, or perhaps, all, of the work relating to the Intervenor Law Firm clients' matters, which had previously been handled by Lit Def… If that is the case, it would appear that Lit Def and Blust are in violation of not only TRO Section XIII.B.1's restraint on transacting business, but also TRO Sections XIII.B.2 & 3's restraints on 'transferring' ESI and Assets of the Receivership Defendants to others." Dkt. No 179-1 at 19.[5] As Blust and Lit Def are well aware, the PI replaced the TRO, extending all of these provisions. *See* Dkt. No. 184.

In light of such clarity, Blust and Lit Def's extended argument that there are somehow procedural defects under Federal R. Civ. P. 7 – and incredibly that Blust was denied his "due

---

[4] Section XIII.B.1 & B.7 discusses respectively the TRO's prohibitions on "directly or indirectly… transacting any of the business of the Receivership Defendants" and "Doing any act … whatsoever to interfere with the Receiver's taking custody, control, possession, or managing of the Assets or Documents of the Receiver."

[5] This is also spelled out in, among other filings, the Receiver's Post-Hearing Brief. *See* Dkt. No. 622 at 29-32 (explaining the specific grounds for contempt), where we set forth evidence establishing how Blust and Lit Def have egregiously violated the TRO and PI in several respects over the past year.

4

process rights to fair notice" (Dkt. No. 619 at 8) – rings especially hollow. Blust has known since the OSC Motion was filed exactly how he was violating the TRO and PI and exactly how he could quickly remedy the contempt. But he instead made a decision to submit a false declaration to support the Fidelis Receivership Defendant motion and was otherwise content to sit on the sidelines for the past year, all the while sanctioning the outlandish arguments made by Christo and Fidelis and otherwise taking no steps (such as withdrawing his declaration) to assist the Receiver in bringing Fidelis and its Assets into the receivership.[6]

It is in this context that the submission of false declarations by Blust, Hinds, and Christo has such significance: their coordinated testimony was intended to conceal Blust's control of Fidelis as part of his wrongful efforts to keep Fidelis out of the receivership. *Id.* at 37. But because all of this motion practice ultimately arose from Blust's response to the initial contempt motion and refusal to turn over Fidelis, Blust should certainly be held responsible for the harm he has caused to the receivership estate. In short, while Blust's perjury is not an independent grounds for contempt, it is profoundly relevant to the *magnitude* of the harm caused by the contemptuous conduct of Blust, Hinds, and Christo and the calculation of appropriate penalties for the contempt.

C.   **Blust Controls Fidelis**

The evidence overwhelmingly demonstrates that Jason Blust exercises substantial control over Fidelis. Indeed, Blust and Lit Def now admit that Blust has "overall supervisory authority over the quality of litigation support offered by both LitDef and Fidelis[.]" (Dkt. No. 619 at 8-

---

[6] While the Receiver has not requested a separate sanction against Blust explicitly for the false declaration, the Court clearly has ample authority and discretion to order such a sanction *sua sponte* if it so chooses. *See, e.g., Thomas Am. Corp. v. Fitzgerald*, 175 F.R.D. 462, 463 (S.D.N.Y. 1997) (sanctioning party *sua sponte* for filing declaration containing false statements).

5

9). This is merely a tortured rephrasing of the fact that Blust exercises control over Fidelis. This admission alone would be sufficient to establish the control necessary to make Fidelis a Receivership Defendant, but here, there is far more evidence.

Contrary to Blust's self-serving reframing, the evidence confirms Blust does far more than supervise the "*quality*" of the work performed by Fidelis's employees. Without question, the evidence establishes that Blust controls Fidelis's business operations, down to *how much Fidelis pays its employees, where they are assigned, what vendors are told, and what computers employees used*. See generally Dkt. No. 622 at 8-10 (discussing Blust's control over Fidelis employee compensation). Importantly, Blust also arranged for a $750,000 payment due to Lit Def from StratFS to go instead to Fidelis to fund early operations.[7] Blust now unpersuasively attempts to downplay the fact as "perhaps raising question with respect to the bookkeeping practices of StratFS." See Dkt. No. 619 at 12 n.2. Despite Blust's fervent wishes otherwise, this was not a bookkeeping mistake at StratFS.[8] Notably, the Receiver has provided evidence demonstrating Blust's control of Fidelis's operations and finances even without having access to Fidelis's internal financials (because Blust and Christo have refused to turn over those documents despite clear obligations to do so under the PI and TRO).

---

[7] *See* Receiver's Hearing Brief, Dkt. No. 576 at 28-32, for a detailed discussion of this transaction.

[8] Blust and Lit Def's new stance with respect to the $750,000 is confusing. *See* Dkt. No. 619 at 12 n.2. They now apparently admit that StratFS and Sasson devised the plan to conceal the Rufty settlement from their auditors, but then attempt to deflect blame away from Blust by calling it a "$750,000 expenditure" and avoiding mention of the fact that it was a reimbursement *for Blust and Lit Def* that was instead diverted to Fidelis. *See* Dkt. No. 619 at 12 n. 2. Stunningly, Blust and Lit Def claim that this revelation "adds nothing to [the Receiver's] allegation that the Blust Declaration is materially false" (*id.*), even though Blust's declaration expressly states: "Nor did I divert assets or resources of LDS to Fidelis." Dkt. No. 211 ¶ 7.

Adverse inferences are more than justified here, given, among other things, Blust, Hinds, and Christo's conduct. Blust and Lit Def make the incredible claim that an adverse inference is not appropriate because the Receiver has not been deprived of discovery.[9] Of course, the Receiver has been denied discovery: notably, there has been no opportunity to cross-examine Blust, Hinds, or Christo and to impeach them on the numerous falsehoods contained in their declarations. And while it is true that Lit Def grudgingly produced some documents to the Receiver (only after a contempt motion was filed), numerous other sources of evidence have never been produced by Blust, Fidelis, or Christo, including Fidelis's financial records and information on its assets.

Blust offers no cognizable argument that the Court should decline to take adverse inferences. In contrast, the Receiver has been careful to support all proposed inferences with independent corroborative evidence. *See* Dkt. No. 622 at 11-17 (discussing supporting evidence) and 31-36 (discussing adverse inferences from the invocations of Blust, Hinds, and Christo).

**D.     Blust and Lit Def's Discussion of Settlement Negotiations is Irrelevant**

Finally, Blust and Lit Def argue that any award of fees and costs for contempt should be cut off as of May 23, 2024. Dkt. No. 619 at 14-15. They claim that during the hearing on that day, the Receiver acknowledged that contempt relating to Blust operating Lit Def after the TRO appeared to have been purged. *See id.* at 13-14. But this is a distortion of the record; the Receiver was clear, and has been clear all along, that the contempt relating to Blust's post-TRO operation of Lit Def itself had been purged, but all matters relating to Fidelis and Blust's filing of

---

[9] *See* Dkt. No. 619 at 12 ("it can hardly be said that the Receiver has been denied access to discovery"). This is a remarkable assertion – and one that is incorrect. In civil cases, adverse inferences may of course be drawn by the trier of fact for any general purpose. *See In re Adler, Coleman Clearing Corp.*, 1998 WL 182808, at *3 (Bankr. S.D.N.Y. Apr. 17, 1998) (collecting cases). And the Court has broad authority in this equitable proceeding to do so here.

7

a false declaration had yet to be dealt with. Indeed, the Court expressly acknowledged this at the time, remarking "That's all the sanction, as far as I can tell, [the Receiver is] asking for *with regard to Lit Def keeping going*" (*see* Transcript of May 23, 2024 Hearing, Dkt. No. 477-47, at 79:19-20) (emphasis added), and scheduled an evidentiary hearing to address the Fidelis-related issues and required Blust, Hinds, and Christo to testify.

Blust's contempt relating to Fidelis has never been resolved and remains ongoing, as does the resultant harm to the receivership estate. That contempt is a much broader issue and extends over a much longer time horizon, and it involves other people who also violated the PI; crucially, it specifically involved Blust's decision, in coordination with Hinds and Christo, to try to keep Fidelis out of the Receivership by falsely claiming under oath, among other things, that Blust had no control over Fidelis.

Blust and Lit Def refer to settlement communications between their counsel and the Receiver regarding the Blust OSC Motion. Setting aside whether it is proper to rely on settlement communications which relate to the very issue before the Court, *see* Fed R. Evid. 408,[10] these communications still have no relevance here, given all they establish are a few sparse communications mostly relating to the Receiver's document requests to Blust and Lit Def and proposed keyword searches. *See* Dkt. No. 620-1. It is clear from Blust and Lit Def's filings that settlement discussions regarding the Blust OSC Motion were cursory at best, and the reason is simple: Blust has never offered or demonstrated any willingness to comply with the PI with respect to Fidelis. The fact that Blust's counsel made settlement overtures in May 2024 and February 2025 has no bearing on the appropriate sanctions here. Blust has always known how to

---

[10] Under Federal Rule of Evidence 408, "statement[s] made during compromise negotiations about the claim" are not admissible to "prove or disprove the validity or amount of a disputed claim or to impeach by a prior inconsistent statement or a contradiction."

8

purge his contempt: cooperate by revoking his false declaration and honoring his obligations under the TRO and PI by, among other things, turning over Fidelis, its operations, and its Assets. *See* Dkt. No. 620 at 2-3.

Since filing the Blust OSC Motion in February 2024, the Receiver's position regarding Blust and Fidelis has been clear: Blust owns or controls Fidelis, in whole or in part; Fidelis is a Receivership Entity; and Blust is refusing to bring it into compliance with the PI. That was the case in February 2024, and it is still the case today. The financial cost to the receivership estate continues to mount, and Blust has still not made any offer to turn Fidelis over to the Receiver. Blust's patent violations of the TRO and PI, exacerbated by his fraudulent conduct in contesting this motion, warrant the remedies requested by the Receiver.

## **CONCLUSION**

In light of the foregoing, the Receiver respectfully requests that the Court allow the Receiver's Blust OSC Motion and issue an order (1) holding Lit Def and Blust in contempt of both the TRO and PI; (2) requiring Lit Def and Blust to cooperate immediately and completely with the Receiver, including turning over to the Receiver all Assets and corporate records of Fidelis and turning over control of all business operations of Fidelis to the Receiver, and providing a complete financial accounting of Fidelis, including all transfers to or from third parties; (3) imposing a fine on Lit Def and Blust of $1,000 per day for every day of noncompliance; (4) holding Lit Def and Blust responsible for all fees and costs incurred by the Receiver in connection with the Blust OSC Motion; and (5) holding Lit Def and Blust liable for

9

fees and costs incurred by the Receiver in connection with the Fidelis Motion Challenging the Receivership Defendant designation.

Dated: March 4, 2025                **MCNAMARA SMITH LLP**

By:   /s/ Logan D. Smith
Logan D. Smith  (*Pro Hac Vice*)
Alexander D. Wall (*Pro Hac Vice*)
McNamara Smith LLP
655 West Broadway, Suite 900
San Diego, California 92101
Telephone:  (619) 269-0400
Facsimile:  (619) 269-0401
Email:  lsmith@mcnamarallp.com;
awall@mcnamarallp.com

*Attorneys for Court-appointed Receiver,
Thomas W. McNamara*